# EXHIBIT "C"

000084

# LEASE

## 101 East El Camino Real
## Mountain View, California

**VO Limited Partnership**

as Landlord

and

**Houtan Petroleum, Inc.**
a California corporation
as Tenant

## INDEX

                                                      **Page(s)**

ARTICLE 1   PREMISES, BUILDING, AND COMMON AREAS ............... 1

ARTICLE 2   LEASE TERM ............... 3

ARTICLE 3   BASE RENT ............... 5

ARTICLE 4   ADDITIONAL RENT ............... 6

ARTICLE 5   USE OF PREMISES ............... 8

ARTICLE 6   SERVICES AND UTILITIES ............... 13

ARTICLE 7   REPAIRS ............... 14

ARTICLE 8   ADDITIONS AND ALTERATIONS ............... 14

ARTICLE 9   COVENANT AGAINST LIENS ............... 16

ARTICLE 10  INSURANCE ............... 16

ARTICLE 11  DAMAGE AND DESTRUCTION ............... 19

ARTICLE 12  NONWAIVER ............... 20

ARTICLE 13  CONDEMNATION ............... 21

ARTICLE 14  ASSIGNMENT AND SUBLETTING ............... 21

ARTICLE 15  SURRENDER OF PREMISES; OWNERSHIP AND REMOVAL OF TRADE FIXTURES ............... 25

ARTICLE 16  HOLDING OVER ............... 27

ARTICLE 17  ESTOPPEL CERTIFICATES ............... 27

ARTICLE 18  SUBORDINATION ............... 28

ARTICLE 19  DEFAULTS; REMEDIES ............... 28

ARTICLE 20  COVENANT OF QUIET ENJOYMENT ............... 30

ARTICLE 21  SECURITY DEPOSIT ............... 30

ARTICLE 22  SUBSTITUTION OF OTHER PREMISES ............... 30

ARTICLE 23  SIGNS ............... 31

ARTICLE 24  COMPLIANCE WITH LAW ............... 31

ARTICLE 25  LATE CHARGES ............... 31

**Page(s)**

ARTICLE 26  LANDLORD'S RIGHT TO CURE DEFAULT; PAYMENTS BY TENANT .................................................................................................. 32

ARTICLE 27  ENTRY BY LANDLORD ............................................................................ 32

ARTICLE 28  TENANT PARKING .................................................................................... 33

ARTICLE 29  MISCELLANEOUS PROVISIONS .............................................................. 33

EXHIBITS

A      LEGAL DESCRIPTION OF PREMISES

A-1    OUTLINE OF PREMISES

B      DESCRIPTION OF ADJACENT PROPERTY

C      TENANT IMPROVEMENT WORK LETTER

D      NOTICE OF LEASE TERM DATES

E      RULES AND REGULATIONS

F      FORM OF TENANT'S ESTOPPEL CERTIFICATE

G      FORM OF HAZARDOUS MATERIALS DISCLOSURE CERTIFICATE

H.     Guaranty of Lease

(iii)

000087

## LEASE

This Lease (the "**Lease**"), dated for reference purposes only as of the date set forth in Section 1 of the Summary of Basic Lease Information (the "**Summary**"), below, is made by and between V.O. Limited Partners, a California limited partnership ("**Landlord**"), and ~~Hedia~~ Houlan Petroleum, Inc., a California corporation ("**Tenant**").

### SUMMARY OF BASIC LEASE INFORMATION

| TERMS OF LEASE | | DESCRIPTION |
|---|---|---|
| 1. | Date: | September ___, 2007 |
| 2. | Premises | As described in Article 1 |
| 3. | Lease Term (Article 2). | |
| | 3.1 Interim Term Commencement Date | The date Landlord delivers to Tenant possession of the Premises. Target Interim Term Commencement Date is November 1, 2007 |
| | 3.2 Primary Term Commencement Date | The first to occur of (i) completion of Tenant's Work; (ii) Tenant opens for business; ~~and~~ or (iii) the first anniversary of the Interim Term Date |
| | 3.3 Lease Expiration Date: | 12:00 midnight on the last day of the fifteenth Lease Year, subject to extension pursuant to Lease Section 2.4 |
| | 3.4 Option Term | 2 options to extend the Term for 5 years each |
| 4. | Base Rent (Article 3): | |

| Period | Interim Monthly Base Rent |
|---|---|
| Interim Term Commencement Date through date Tenant begins physical demolition of improvements on the Premises ("**Demolition Commencement Date**") | $7,000 |
| Demolition Commencement Date through 150th day thereafter | $0 |
| 151st day after Demolition | |

-1-

000088

| | |
|---|---|
| Commencement Date through Primary Term Commencement Date | $7,000 |
| **Period** | **Monthly Base Rent** |
| Primary Term Commencement Date through the end of the first Lease Year | $15,000 |
| Annual Adjustments on each CPI Adjustment Date (at the beginning of each Lease Year, commencing with the first day of the second Lease Year) | Monthly Base Rent increases in accordance with Section 3.1 |
| Option Term Rent | See Section 2.4.2 |

5. Tenant's Share (Article 4):   NA

6. Permitted Use (Article 5):   Retail sale of gasoline and diesel fuel for passenger cars and light trucks; Mini-market retail store

7. Security Deposit (Article 21):   None

8. Address of Tenant   [tenant to provide]

9. Address of Landlord   c/o DeAnza Properties
920 Fremont Street
S/vale ~~Mountain View~~, Ca 94087

12. Guarantor   Ali Bozorghadad

-2-

000089

# ARTICLE 1
# PREMISES AND COMMON AREAS

1.1     Premises and Common Areas.

    1.1.1  **The Premises**.  Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the premises described on Exhibit A attached hereto (the "**Premises**"), including all buildings and improvements owned by Landlord and located thereon. "Premises" includes any improvements owned by or constructed by or for Tenant during the Term. The outline of the Premises is set forth in Exhibit A-1 attached hereto. The lease of the Premises is upon and subject to the terms, covenants and conditions herein set forth, and Tenant covenants as a material part of the consideration for this Lease to keep and perform each and all of such terms, covenants and conditions by it to be kept and performed and that this Lease is made upon the condition of such performance. Landlord shall not be obligated to provide or pay for any improvement work or services related to the Premises or the improvements on the Premises.

    1.1.2  **As Is Lease**.

        A.     The Premises has been leased for a period of approximately forty two years to third parties who have operated gasoline service stations and related businesses thereon during that period. The current tenant occupies the Premises pursuant to that certain Primary Lease dated August 13, 1965, as amended October 20, 1987 (the "**Existing Lease**"). For the past 10 years Tenant, or an entity related to Tenant, has operated the service station business on the Premises pursuant to agreements with ConocoPhillips Company, the current tenant ("**Existing Tenant**"). This Lease will commence on the termination of the Existing Lease and Existing Tenant's vacation of the Premises. Under the Existing Lease the Existing Tenant has certain rights to remove the improvements, fixtures and personal property existing on the Premises. Additionally, the Existing Tenant may be obligated to perform certain "closure" activities with regard to the existing business on the Premises. Tenant will accept possession of the Premises on the Interim Term Commencement Date in their existing condition as of the Interim Term Commencement Date, which Tenant acknowledges may, or may not, include some or any of the existing improvements (including the underground tanks, piping, or above ground improvements). To the extent the Existing Tenant elects not to remove some, or all, of its improvements (and/or is not required to do so under Applicable Law (as defined below)), Landlord shall have no obligation to do so, and Landlord shall deliver to Tenant possession of the Premises with such improvements as the Existing Tenant leaves on the Premises. Tenant acknowledges that neither Landlord nor any agent of Landlord has made any representation or warranty regarding the condition of the Premises or with respect to the suitability of the Premises for the conduct of Tenant's business. Tenant is in possession of the Premises as of the date this Lease is signed, is knowledgeable regarding the condition of the Premises, and has taken such steps as Tenant has deemed necessary to determine from the Existing Tenant the condition in which the Existing Tenant will leave the Premises on the termination of the Existing Lease.

        B.     Except for any representations set forth herein in writing, there are no warranties or representations, express or implied, by Landlord to Tenant and Tenant

000090

acknowledges that the execution of this Lease is and will be based solely upon Tenant's knowledge of, inspection and investigation of the Premises. Tenant acknowledges that Landlord has not made any representations or warranties other than as contained herein as to any matters concerning the Premises. Tenant independently has satisfied itself regarding the following characteristics of the Premises: topography, availability of utilities, general plan designation, zoning, soil, subsoil, presence or absence of fill, presence or absence of Hazardous Materials (as defined below) location of existing underground appurtenances, the purposes for which the Premises or any part thereof may be used, drainage, flood zone designation, access to public roads, and applicable environmental laws, rules, or regulations. The failure on the part of the Tenant to procure in writing express warranties or representations regarding Premises characteristics shall constitute a conclusive admission that Tenant has relied on its investigation and judgment as to all matters relating to the Premises. Tenant represents that it has, prior to the execution of this Lease, made investigations and tests of the Premises, including inquiry from governmental agencies and quasigovernmental agencies having jurisdiction over the Premises, soils testing, tests and inspection for presence of Hazardous Materials and such other examination of the Premises as Tenant has deemed necessary to determine the condition of the Premises and that Tenant, except as specifically set out in this Lease, by execution hereof accepts the Premises in the condition and state in which they exist, as of the Interim Term Commencement Date, "as is." The taking of possession of the Premises by Tenant shall conclusively establish that the Premises and the Building were at such time in condition and repair acceptable to Tenant.

      C.    Tenant understands that the Premises has been used for the storage and dispensing of Hazardous Materials (as defined below) during the term of the Existing Lease and that during that period the Premises may have been contaminated by Hazardous Materials.

      1.1.3  **The Shopping Center**. The Premises are a part of a shopping center project known as Mountain View Shopping Center. The property described on Exhibit B attached hereto (the "**Adjacent Property**") is operated by Landlord as a shopping center. The term "Shopping Center," as used in this Lease, shall mean (i) the Premises and any improvements Tenant constructs thereon, (ii) the Adjacent Property, (iii) the Common Areas (defined below) on the Premises and the Adjacent Property, and (iv) at Landlord's discretion, any additional real property, areas, land, buildings or other improvements added thereto.

      1.1.4  **Common Areas**. "**Common Areas**" means those portions of the Premises and the Adjacent Property that are used in common, from time to time, by the owners, tenants, customers, suppliers, vendors and contractors of the Shopping Center, such as, for example, driveways for vehicular ingress and egress, walkways for pedestrian ingress and egress. Landlord and Landlord's tenants, customers of tenants, vendors, suppliers and contractors shall have the non-exclusive right to use the driveways and walkways over the Premises for ingress and egress to the Adjacent Property. Tenant and Tenant's customers, vendors, suppliers and contractors shall have the non-exclusive right to use the driveways and walkways over the Adjacent Property for ingress and egress to the Premises. Landlord reserves the right to close temporarily, make alterations or additions to, or change the location of elements on the Adjacent Property Common Areas.

000091

## ARTICLE 2
## LEASE TERM

2.1    **Interim Term**. The terms and provisions of this Lease shall be effective as of the date of this Lease. The Interim Term shall be that period between the Interim Term Commencement Date set forth in Section 3.1 of the Summary ("**Interim Term Commencement Date**") and the Primary Term Commencement Date set forth in Section 3.2 of the Summary ("**Primary Term Commencement Date**").

2.2    **Primary Term**. The Primary Term shall be that period between the Primary Term Commencement Date set forth in Section 3.2 of the Summary ("**Primary Term Commencement Date**") and the Lease Expiration Date set forth in Section 3.3 of the Summary ("**Lease Expiration Date**").

2.3    **Term**. The term of this Lease (the "Term") shall commence on the Interim Term Commencement Date (the "**Lease Commencement Date**"), and shall terminate on the **Lease Expiration Date** unless this Lease is sooner terminated as hereinafter provided or unless extended pursuant to Section 2.4. "**Lease Termination Date**" means the last day of the Term, or any date of earlier Lease termination. For purposes of this Lease, the term "**Lease Year**" shall mean each consecutive twelve (12) month period during the Primary Term, as extended, if applicable; provided, however, that if the Primary Term Commencement Date is not the first day of a month, then the first Lease Year shall include that fractional portion of the calendar month in which the Primary Term Commencement Date occurs and the first full twelve calendar months thereafter. At any time during the Lease Term, Landlord may deliver to Tenant a notice in the form as set forth in Exhibit D, attached hereto, as a confirmation only of the information set forth therein, which Tenant shall execute and return to Landlord within five (5) days after receipt.

2.4    **Option to Extend Term**. Tenant shall have the option to extend the Term for two consecutive periods of five years each, commencing at the expiration of the initial Lease Term, or the first extended term, as the case may be. The manner of Tenant's right to exercise its options to extend the Term and the rent determination for any extended term are set out below. "Term" includes any extended term.

        2.4.1    **Option Exercise**. Tenant may exercise an option to extend the Term (as previously extended, if applicable), only if at the time of exercise and at commencement date of the applicable extended Term, Tenant is not in default, after notice and the expiration of any applicable cure period, under this Lease. In order to exercise an option, Tenant must deliver to Landlord written notice of exercise to extend not later than the one hundred eightieth (180th) day before, and no sooner than the two hundred seventieth (270th) day before, the expiration of the initial Term, or the first extended Term, as the case may be. If Tenant fails to deliver timely notice to Landlord of Tenant's exercise of its option, then the option right (and the right to exercise any successive option) shall automatically expire and be of no further force or effect. If Tenant properly exercises its option to extend the Term, then the Term shall be extended for the described period on all the same terms and conditions as set out in this Lease, except the Base Rent for the extended Term shall be determined in accordance with Section 2.4.2 below.

2.4.2 **Option Term Rent**. On the first day of each extended Term, (each a "**Market Rent Adjustment Date**"), the Base Rent shall be increased to the "Market Rental Value" of the Premises ("**MRV**"), or in accordance with Section 2.4.2(2), as the case may be, as follows:

1) Six months prior to each Market Rent Adjustment Date, Landlord and Tenant shall attempt to agree upon what the new MRV will be on the adjustment date. If agreement cannot be reached within thirty days, then:

   a) Within thirty days after the expiration of the period in (1) above, Landlord and Tenant shall immediately appoint a mutually acceptable appraiser or broker to establish the new MRV. Any associated costs will be split equally between the parties. If the parties are able to agree upon a single appraiser or broker, that person shall determine the new MRV, subject to the limitations in Section 2.4.2(2). If Landlord and Tenant are unable to agree upon a mutually acceptable appraiser or broker within the thirty day period, then

   b) Both Landlord and Tenant shall each immediately make a reasonable determination of the MRV and submit such determination, in writing, to arbitration in accordance with the following provisions:

      i) Within 15 days thereafter, Landlord and Tenant shall each select a broker ("**Consultant**") of their choice to act as an arbitrator. The two Consultants so appointed shall immediately select a third mutually acceptable Consultant to act as a third arbitrator.

      ii) The 3 Consultants shall within thirty days of the appointment of the third arbitrator reach a decision as to what the actual MRV for the Premises is, and whether Landlord's or Tenant's submitted MRV is the closest thereto. The decision of a majority of the arbitrators shall be binding on the parties. Subject to the limitations in Section 2.4.2(2), the submitted MRV which is determined to be the closest to the actual MRV shall be the MRV for the option period following the Market Rent Adjustment Date.

      iii) If either of the parties fails to appoint an arbitrator within the specified 15 days, the arbitrator timely appointed by one of them shall reach a decision on his or her own, and said decision shall be binding on the parties.

      iv) The entire cost of such arbitration shall be paid by the party whose submitted MRV is not selected, ie. The one that is NOT the closest to the actual MRV.

2) Notwithstanding the foregoing, the new MRV shall not be less than the rent payable for the month immediately preceding the commencement of the relevant option term. Upon the establishment of each Market Rental Value:

   a) the new MRV will become the new "Base Rent" for the purpose of calculating any further adjustments, and

    b) the first month of each option term shall become the new "Base Month" for the purpose of calculating any further adjustments.

    2.4.3  **Option Not Assignable**. The option to extend the Term is personal to Tenant and may not be assigned to any third party.

    2.5  **Delay in Delivery of Possession**. Notwithstanding the Target Commencement Date, for any reason if Landlord is unable to deliver possession of the Premises to Tenant on the Target Commencement Date, Landlord shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease or the obligations of Tenant hereunder, but in such case, the Term shall not commence until Landlord has delivered possession of the Premises to Tenant. Tenant understands that the Premises is subject to the Existing Lease and that Landlord will deliver possession of the Premises to Tenant promptly upon the Existing Tenant's vacation of the Premises and compliance with all of its duties and obligations with regard to the surrender condition of the Premises and the Existing Tenant's compliance with Applicable Law related to the cessation of its operation on the Premises.

## ARTICLE 3
## BASE RENT

    3.1  **Base Rent**. Tenant shall pay, without prior notice or demand, to Landlord or, at Landlord's option, at such other place as Landlord may from time to time designate in writing, by a check for currency which, at the time of payment, is legal tender for private or public debts in the United States of America, base rent ("**Base Rent**") as set forth in Section 4 of the Summary.

    3.1.1  **CPI Adjustment**. Except for any Market Rent Adjustment Date on which Base Rent shall be adjusted pursuant to Section 2.4.2, during the Term on the first day of each Lease Year after the first Lease Year (each, a "**CPI Adjustment Date**"), the Base Rent shall be subject to upward adjustment based upon any increase in the Applicable CPI (as defined below) over the Applicable CPI for the immediately prior CPI Adjustment Date (except that the first adjustment after the Primary Term Commencement Date and the first adjustment after each Market Rate Adjustment Date shall reflect the increase from the Applicable CPI for the preceding Primary Term Commencement Date, or the applicable Market Rent Adjustment Date, as the case may be). "**CPI**" or "**CPI Index**" means the "Consumer Price Index for All Urban Consumers (1982-84= 100), in San Francisco-Oakland Metropolitan Area, All Items" published by the United States Department of Labor, Bureau of Labor Statistics. If the present base of the CPI Index is changed, the new base shall be converted to the base now used. If the Bureau of Labor Statistics fails to publish the CPI Index throughout the Term, the then most similar index published by the Bureau or by any other branch or department of the U.S. Government shall be used, and if none is so published, then another index using the most closely comparable statistics on the purchasing power of the consumer dollar and published by a responsible financial authority shall be used. The first adjustment shall occur effective on the first day of the second Lease Year. The "**Applicable CPI**" for the Primary Term Commencement Date means the CPI published nearest to, and before, the Primary Term Commencement Date and the Applicable CPI for each CPI Adjustment Date means the CPI published nearest to, and before, the applicable

000094