1   Thomas P. Bleau, Esq., SBN 152945
2   Gennady L. Lebedev, Esq., SBN 179945
    BLEAU / FOX, A P.L.C.
3   3575 Cahuenga Boulevard West, Suite 580
    Los Angeles, California 90068
    Telephone  :  (323) 874-8613
4   Facsimile  :  (323) 874-1234
    e-mail:     bleaushark@aol.com
5   e-mail:     glebedev@bleaufox.com

6   Attorneys for Plaintiff,
    HOUTAN PETROLEUM, INC.

7

8

ORIGINAL
FILED

NOV − 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9        UNITED STATES DISTRICT COURT IN AND FOR

10           THE NORTHERN DISTRICT OF CALIFORNIA

11  HOUTAN PETROLEUM, INC.          ) CASE NO.

12               Plaintiff,          **CV 07        5627**

    vs.

13                                   NOTICE  OF  EX  PARTE
14  CONOCOPHILLIPS COMPANY, a        APPLICATION, APPLICATION FOR
    Texas Corporation and DOES 1     TEMPORARY   RESTRAINING
15  through 10, Inclusive            ORDER/PRELIMINARY
                                     INJUNCTION;  MEMORANDUM OF
16               Defendants.         POINTS AND AUTHORITIES

17                                   (DECLARATIONS OF THOMAS P.
                                     BLEAU   AND   ED   HADDAD;
18                                   [PROPOSED]   ORDER   FOR
                                     TEMPORARY    RESTRAINING
19                                   ORDER, filed concurrently herewith)

20       TO  DEFENDANT,  CONOCOPHILLIPS  COMPANY  AND  TO  ITS

21  ATTORNEYS OF RECORD:

22       NOTICE IS HEREBY GIVEN THAT PLAINTIFF, HOUTAN PETROLEUM,

23  INC., HEREBY APPLIES EX PARTE to the United States District Court, for the

24  Northern District of California, for a Temporary Restraining Order/Preliminary

25  Injunction to compel, prohibit, restrain and enjoin Defendant, CONOCOPHILLIPS

26  COMPANY, its officers, agents, servants, employees and attorneys, and all those in

27  active concert or participation with it from disturbing the status quo by ordering the

28  Defendant CONOCOPHILLIPS COMPANY as follows with regard to Plaintiff:

-1-
NOTICE OF TRO/PRELIMINARY INJUNCTION

1.     From taking any further action to interfere with Plaintiff, Houtan Petroleum, Inc.'s, assumption of immediate possession as the tenant at the premises located at 101 E. El Camino Real, Mountain View, California 94040 upon the termination of ConocoPhillips' right to grant possession of such premises October 31, 2007;

2.     From removing, or causing, in any manner to be removed any equipment or improvements located at the premises located at 101 E. El Camino Real, Mountain View, California 94040;

3.     Compelling it to resume its franchise relationship with Plaintiff, Houtan Petroleum, Inc., including but not limited to the delivery of motor fuel and electronic processing of credit card sales transactions pursuant to its franchise agreement with Plaintiff;

4.     Being compelled by this Court to continue to sell and supply Union 76 branded fuel to Plaintiff under the existing retail sales agreement between Plaintiff and Defendant.

This Application will be made on the ground that immediate and irreparable harm will result to Plaintiff, Houtan Petroleum, Inc., unless the activities described herein are enjoined and compelled pending trial in this action. This Application is made pursuant to the Federal *Petroleum Marketing Practices Act* Title 15, United States Code Section 2801, et seq., 2802, et seq., 2804, et seq., 2805, et seq., Federal *Rule of Civil Procedure* Rule 65, and relevant case law.

Most importantly, unless the honorable Court grants Plaintiff's request for a Temporary Restraining Order and Preliminary Injunction, Plaintiff will be unable to sell Union 76 branded gasoline or accept credit cards at the pump, causing it to lose its unique goodwill and possible closure of the station.

This application will be based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Thomas P. Bleau, Ed Haddad, the Complaint filed concurrently herewith, all pleadings and papers on file in this action

1   and upon such other and further oral and documentary evidence as may be presented

2   at the time of an eventual hearing on this application.

3       On Friday, November 2, 2007, Plaintiff's counsel, Thomas P. Bleau, of the firm

4   Bleau / Fox, a professional law corporation, transmitted a letter via facsimile and first

5   class United States mail advising Adam Friedenberg and Clement Glynn of the firm

6   Glynn & Finley, legal counsel for ConocoPhillips in this matter,   that the moving

7   Plaintiff would be filing the instant ex-parte application for temporary restraining

8   order/preliminary injunction in the Northern District of California, at the Phillip

9   Burton United States Courthouse, 16th Floor, 450 Golden Gate Avenue, San

10  Francisco, CA 94102-3434. (*Please see*,  Declaration of Thomas P. Bleau).

11      Based on conversations with such opposing counsel, ConocoPhillips intends to

12  oppose the instant Application.

13      The Court is respectfully requested to grant the instant application for

14  temporary restraining Order immediately and set the matter for an Order to Show

15  Cause Re: issuance of a Preliminary Injunction and to set a briefing schedule that

16  would allow for ConocoPhillips' timely opposition, Plaintiff's expected reply papers

17  and the Court's due consideration of the matters before it prior to the hearing.

18

19                                  Respectfully submitted,

    Dated: November 5, 2007        BLEAU / FOX, A
20                                  Professional Law Corporation

21

22                                  By:

23                                  Thomas P. Bleau, Esq.
                                    Gennady L. Lebedev, Esq.
24                                  Attorneys for Plaintiff,
                                    HOUTAN PETROLEUM, INC.

25

26

27

28

NOTICE OF TRO/PRELIMINARY INJUNCTION

1

2

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................ii

**MEMORANDUM OF POINTS AND AUTHORITIES**........................1

**I.    INTRODUCTION**...............................................................1

**II    SUMMARY OF ARGUMENT**..........................................3

**III.   LEGAL ARGUMENT**........................................................8

A.    **THIS COURT HAS THE AUTHORITY TO ISSUE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION UNDER THE RELAXED STANDARD OF THE PMPA SECTION 2805(b)**.................................................4

B.    **THIS COURT ALSO HAS THE AUTHORITY TO ISSUE A PRELIMINARY INJUNCTION UPON APPLICATION BY A PARTY UNDER THE FEDERAL RULE OF CIVIL PROCEDURE 65**............................5

C.    **UNDER SECTION 2805(b) OF THE PMPA, INJUNCTIVE RELIEF IS APPROPRIATE IN THE INSTANT CASE**..................7

D.    **PLAINTIFF MEETS THE RELAXED STANDARDS SET FORTH IN THE PMPA GOVERNING THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER**

    1.    **Plaintiff Has Met All Of The Requirements For Obtaining Injunctive Relief Under The PMPA**........................7

    2.    **The PMPA and Relevant Case Law Supports Plaintiff's Application For a Temporary Restraining Order and Preliminary Injunction**......................9

    3.    **ConocoPhillips' Notice Of Termination Was Untimely Under The PMPA**........................11

    4.    **ConocoPhillips' Offer Was Not Bona Fide Under The PMPA**........................12

    5.    **The Balance of Hardships Falls In Plaintiff's Favor**...............14

    6.    **No Bond Should Be Required In This Case Or A Minimal Bond Should Be Required**.........................15

**V.    CONCLUSION**........................................................15

i

# TABLE OF AUTHORITIES

***Federal Cases***

*Ajir v. Exxon Corp.* 855 F.Supp.294, 297 (N.D.Cal. 1994)...................................9, 10

*Adirondack Appliance Repair, Inc. v. Adirondack Appliance Parts, Inc.*
     148 A.D.2d 796, 538 N.Y.S.2d 118 (3d Dep't 1989).........................................6

*Advocacy Organization v. Mercy Hospitals,*
     987 F.Supp. 967 (E.D. Mich. 1997).................................................................10

*Arnold v. Amoco Oil Co.* 872 F.Supp. 1493 (W.D. Va. 1995)..................................13

*Beachler v. Amoco Oil Co.* 112 F.3d 902 (7th Cir. 1997)........................................9, 10

*Covey v. Union Oil co. of Cal.* 820 F.Supp. 1257 (D. Or. 1993)................................10

*Daniels v. Dilmar Oil Co.*
     502 F.Supp. 178 (D.C.S.C., 1980)..............................................................14, 15

*Darling v. Mobil Oil Corp.* 864 F.2d 981, 983 (2d Cir. 1989).....................................9

*Davy v. Murphy Oil*, 488 F. Supp. 1013 (W.D.Mich.1980)........................................11

*Doebereiner v. Sohio Oil Company*
     880 F.2d 329 (11 Cir. 1989)...........................................................................10

*Dollar Rent A Car v. Travelers Indem. Co.*
     774 F.2d 1371 (9th Cir. 1985)...........................................................................5

*DuFresne's Auto Service, Inc. v. Shell Oil Company*
     992 F.2d 920 (9th Cir. 1993).............................................................................11

*Dunkin' Donuts, Inc. v. Dowco, Inc.*, 1998 U.S. Dist. LEXIS 4526...........................6

*Ellis v. Mobil Oil* 969 F.2d 784, 788 (9th Cir. 1992)...............................................9, 13

*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir. 1987)......................5

*Hanes v. Mid-America Petroleum, Inc.*
     577 F. Supp. 637, 647 (D. Mo. 1983)..............................................................12

*Harris v. BPWCP Enterprises, LLC* 107 F.Supp.2d 921 (S.D. Ohio 2000)...............9

*Khorenian v. Union Oil Company of California*

761 F.2d 533, 535 (9th Cir. 1985)................................................................6, 7

*Mobil Oil Corporation v. Virginia Gasoline Marketers and Automotive*

 *Repair Association,* 34 F.3d 220 (4th Cir. 1994)................................................11

*National Center for Immigrant Rights, Inc. v. I.N.S.*

 743 F.2d 1365 (9th Cir. 1984). ...........................................................................5

*Oparaocha v. Sun Co.,* 3 F. Supp. 2d 4, 7 (D.D.C. 1998)........................................12

*People Ex.Rel. Van De Kamp v. Tahoe Regional Plan*

 766 F.2d 1319 (9th Cir. 1985)...........................................................................15

*Persaud v. Exxon Corporation,*

 867 F.Supp. 128, 137 and ftn 4 (E.D.N.Y. 1994)................................................6

*Pruitt v. New Eng. Petroleum L.P.,*

 2006 U.S. Dist. LEXIS 85961 (D. Conn. 2006)...........................................11, 12

*Rhodes v. Amoco Oil Co.,* 143 F.3d 1369 (10th Cir. 1998)...........................10, 13, 14

*R.J. Reynolds Tobacco Co v. Phillip Morris Inc.*

 60 F. Supp. 2d 502 (D.N.C. 1999)......................................................................6

*Sandlin v. Texaco Refining and Marketing, Inc.,*

 900 F.2d 1479 (10th Cir. 1990).....................................................................10, 13

*Slatky v. Amoco Oil Co.* 830 F.2d 476 (3rd Cir. 1987)....................................10, 13, 14

*State of Alaska v. Native Village of Venetie,* 856 F.2d 1384 (9th Cir. 1988)................5

*Zipper v. Sun Co., Inc.* 947 F. Supp. 62, 68 (E.D.N.Y. 1996)..................................12

**Federal Statutes**

FRCP 65.......................................................................................................5

15 U.S.C. §2802...............................................................3, 8, 9, 10, 12, 13

15 U.S.C. §2804...........................................................................1, 3, 8, 10, 11

15 U.S.C. §2805(b)......................................................................4, 5, 7, 14, 15

**Other Authority**

Schwarzer, et al., *Federal Civil Procedure Before*

 *Trial* ¶ 13:44 at 13-14 (1999)..........................................................................5

Shwarzer, et al., *Federal Civil Procedure Before
   Trial* ¶ 13:46 at 13-15 (1999)..................................................................................6

Table of Contents / Table of Authorities

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The instant action arises out of a blatant failure by ConocoPhillips Company ("ConocoPhillips") to comply with the express notice requirements of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §2804(a)(2), as well as a failure to provide Plaintiff, Houtan Petroleum, Inc. ("Houtan"), with a "Bona Fide" offer for the sale of improvements and equipment located at the gasoline service station located at 101 E. El Camino Real, Mountain View, California 94040 (hereinafter referred to as the "Premises").

Plaintiff Houtan is a ConocoPhillips franchisee, operating a gasoline service station at the Premises under the Union 76 brand. Houtan has been at that location under the Union 76 brand for approximately the last 10 years, since approximately September 1997. (Haddad decl., ¶3). The latest Franchise Agreement was entered into with ConocoPhillips, on March 30, 2007, the term of the agreement commencing on September 1, 2007 and expiring on August 31, 2010. (Haddad decl., ¶4, Exh. "A").

Until October 31, 2007, ConocoPhillips leased the subject Premises from a third party landlord, pursuant to a master lease which by its terms, expired on October 31, 2007. (Haddad decl., ¶5).

Nevertheless, despite the fact that the PMPA required ConocoPhillips to give Plaintiff ninety (90) days written notice of its intention to terminate its franchise relationship with Plaintiff, such notice was not given until September 18, 2007, only 43 days prior to the termination date of October 31, 2007. (Haddad decl., ¶7, Exh. "B").

On October 16, 2007, Plaintiff Houtan and the landlord of the subject Premises, V.O. Limited Partners, entered into a long term lease agreement with the effective date of November 1, 2007, pursuant to which Houtan acquired legal

possession of the Premises.  (Haddad decl., ¶8, Exh. "C").

On October 18, 2007, Houtan notified ConocoPhillips that it would be acquiring possession of the premises from the landlord and demanded that ConocoPhillips sell its improvements and equipment to Houtan.  (Haddad decl., ¶9, Exh. "D").

In response, on October 22, 2007, ConocoPhillips sent Plaintiff an "Offer to Sell Improvements."  This offer indicated that Houtan could buy ConocoPhillips' improvements and equipment at the Premises for $340,000, but only if the offer is accepted within a mere 7 days by October 29, 2007 and ConocoPhillips is provided with a certified check for the full purchase price within a mere 9 days, by no later than 12:00 noon on October 31, 2007.  (Haddad decl., ¶10, Exh. "E").

Regardless, on October 30, 2007, ConocoPhillips notified the Landlord that it intended to start removing its equipment and improvements from the subject Premises on November 1, 2007.  (Haddad decl., ¶12, Exh. "G").  On October 31, 2007, ConocoPhillips sent bulldozers to the Premises to begin removal of its equipment and improvements.  Plaintiff, being in lawful possession of the Premises, refused to cooperate with such activities and prevented ConocoPhillips from removing the equipment and improvements for the time being.  (Haddad decl., ¶13, Exh. "H").  On November 1, 2007, the Landlord also confirmed with ConocoPhillips of the Landlord's lease agreement with Plaintiff and the fact that the Landlord could not authorize ConocoPhillips to remove the improvements and equipment from the Premises.  (Haddad decl., ¶14, Exh. "I").

Nevertheless, as of 12:00 noon on October 31, 2007, ConocoPhillips cut off the fuel supply and stopped processing all credit card sale transactions at the station.  This has already resulted in significant damages to Plaintiff and stands to result in substantial irreparable harm to its goodwill if the franchise relationship is not resumed.  (Haddad decl., ¶¶ 15, 16, 17).

The extremely short, as well as unlawful, notice that ConocoPhillips

1  provided to Plaintiff prior to its effective date of termination, was not enough time
2  for Plaintiff to secure a fuel supply agreement with another branded supplier of
3  gasoline and specifically with another supplier of Union 76 branded gasoline,
4  commonly referred to as a "jobber." (Haddad decl., ¶18). Additionally, the mere
5  nine (9) days that ConocoPhillips gave Houtan Petroleum to come up with
6  $340,000 to purchase its equipment and improvements was grossly inadequate.
7  (Haddad decl., ¶19). Moreover, ConocoPhillips' asking price for the extremely old
8  equipment and improvements at the Premises exceeds and fails to approach fair
9  market value, also in violation of the PMPA. (Haddad decl., ¶¶ 20, 21, 22, 23).
10       Unless this honorable Court enjoins ConocoPhillips from terminating its
11  franchise relationship and orders it to continue such relationship during the
12  pendency of this case, Plaintiff, will be irreparably harmed as a result of losing
13  substantial amount of its goodwill that it has built up over the last 10 years.
14  (Haddad decl., ¶¶ 24, 25). If ConocoPhillips is not ordered to resume supply of
15  gasoline and processing of credit card transactions and is allowed to remove the
16  equipment and improvements Houtan Petroleum would be put out of business
17  completely. (Haddad decl., ¶26).
18       Consequently, Plaintiff prays that the Court preserve the status quo by
19  ordering ConocoPhillips to resume its supply of gasoline and processing of credit
20  card transaction during the pendency of this lawsuit so that Plaintiff can preserve
21  its goodwill until all of the issues can be resolved on the merits.

22                                         **II**
23                         **SUMMARY OF ARGUMENT**
24       As explained above and in Mr. Haddad's declaration, ConocoPhillips
25  provided grossly untimely notice of termination and failed to make a bona fide
26  offer of its interest in the improvements and equipment as required by the PMPA,
27  15 U.S.C. §§ 2804(a)(1) and 2802(b)(4)(C)(i). Thus, ConocoPhillips has failed to
28  comply with the express termination/non-renewal requirements of the PMPA.

ConocoPhillips's lack of good faith and fair dealing, short notice to consider and accept its offer and pretextual attempt to remove equipment and buldoze the property despite its clear and obvious failure to comply with the notice requirements unambiguously expressed in the PMPA is evidenced by its conduct. ConocoPhillips true motive and intent in refusing to give timely notice and make a bona fide offer of its interest in the improvements and equipment at the leasehold premises appears to be its own fear that Plaintiff will stay in business at a busy intersection in an upper scale neighborhood under another brand, effectively going into competition with ConocoPhillips.

Given ConocoPhillips' blatant failure to comply with the PMPA, it must be enjoined from terminating its franchise relationship with Plaintiff and ordered to resume fuel supply and processing of credit card transactions during the pendency of this action.

## III

## LEGAL ARGUMENT

A.  **THIS COURT HAS THE AUTHORITY TO ISSUE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION UNDER THE RELAXED STANDARD OF THE PMPA SECTION 2805(b).**

Title 15, United States Code Section 2805(b) states in pertinent part:

> (1) In any action under subsection (a) of this section, the court shall grant such equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of section 2802 or 2803 of this title, including mandatory or prohibitive injunctive relief, and interim equitable relief."
>
> \*\*\*
>
> (2) ... [T]he court shall grant a preliminary injunction if --
>
> > (A)  the franchisee shows--
> >
> > > (i)   the franchise of which he is a party has been terminated..., and
> > >
> > > (ii)  there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

-4-

(iii)   The court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted."

**B.   THIS COURT ALSO HAS AUTHORITY TO ISSUE A PRELIMINARY INJUNCTION UPON APPLICATION BY A PARTY UNDER FEDERAL RULE OF CIVIL PROCEDURE 65.**

In addition to the less rigorous standard for a T.R.O./Preliminary Injunction under the PMPA, the Court has authority to issue a Preliminary Injunction under Federal *Rule of Civil Procedure* 65. Under such Rule 65, the traditional test for granting injunctive relief requires the plaintiff to demonstrate: (1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the plaintiff; and (4) whether any public interest favors granting an injunction. *See Dollar Rent A Car v. Travelers Indem. Co,*, 774 F.2d 1371, 1374 (9th Cir. 1985); *see also* Schwarzer, et al., *Federal Civil Procedure Before Trial* ¶ 13:44 at 13-14 (1999).

The Ninth Circuit also uses an alternative test which requires the plaintiff to demonstrate either: a combination of probable success on the merits and the possibility of irreparable injury; or serious questions going to the merits and that the balance of hardships tips sharply in the plaintiff's favor. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987). These two tests are not consistent. Rather they represent a continuum of equitable discretion, whereby "the greater the relative hardship to the moving party, the less probability of success must be shown." *National Center for Immigrant Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1369 (9th Cir. 1984). Or as stated in another case: "The critical element in determining the test is to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th

Cir. 1988); *see also* Schwarzer, et al., *Federal Civil Procedure Before Trial*, ¶ 13:46 at 13-15 (1999).

Finally, lost goodwill and customer confusion can establish the irreparable injury necessary for injunctive relief. *Dunkin Donuts Incorporated v. Dowco, Inc..* 1998 U.S. LEXIS 4526 *8 (D.N.Y 1999), *citing, Adirondack Appliance Repair, Inc. v. Adirondack Appliance Parts, Inc.* 148 A.D.2d 796, 538 N.Y.S.2d 118 (3d Dep't 1989); *R.J. Reynolds Tobacco Co v. Phillip Morris Inc.*, 60 F. Supp. 2d 502, 509 (D.N.C. 1999) (irreparable injury requirement satisfied in the form of threatened injury in the form of lost goodwill, including threatened loss of market share and threatened loss of existing and potential customers).

Under the facts presented by Plaintiff, a Preliminary Injunction should issue as requested.

**C.    UNDER SECTION 2805(b) OF THE PMPA, INJUNCTIVE RELIEF IS APPROPRIATE IN THE INSTANT CASE.**

In *Persaud v. Exxon Corporation*, 867 F.Supp. 128, 137 and ftn 4 (E.D.N.Y. 1994), the Court stated that the three part test for determining whether a franchisee is entitled to an injunction is much less rigorous than the standards normally governing whether a federal court should grant an injunction.

In *Khorenian v. Union Oil Company of California*, 761 F.2d 533, 535 (9th Cir. 1985), the Court stated:

> The test for the issuance of a preliminary injunction under the PMPA is more liberal than that in the general run of cases. Once a franchisee establishes that he will incur the greater hardship (which should not be difficult in most PMPA cases),     he need only show 'a reasonable chance of success on the merits.' [citations.] Moreover, in contrast to Rule 65 of the Federal Rules of Civil Procedure, the PMPA does not require the franchisee to make a strong showing of irreparable harm.

> *     *     *     *     *

> Furthermore, the Act provides that once the franchisee establishes that the franchise relationship has been terminated or that it has not been renewed, the franchisor 'shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or non-renewal was permitted' under one of the statutorily enumerated grounds. [citations.] Reading Section 2805 as a whole, a franchisee is entitled to a preliminary injunction if the balance of hardship tips in his favor and there is a

-6-

'reasonable chance' that the franchisor will be unable to prove that the non-renewal was permissible under the Act.  In short, in order to rebut the franchisor's showing, the franchisee need only show the existence of 'sufficiently serious questions' as to the propriety of non-renewal under the Act to present a 'fair ground' for litigation." (Id. At 535-536.).

Thus, issuance of a temporary restraining order and preliminary injunction enjoining ConocoPhillips from terminating the franchise agreement until the facts alleged can be adjudicated is mandatory and appropriate under the PMPA under the facts presented by Plaintiff.  Thus, a temporary restraining order and preliminary injunction should issue to prohibit Defendant, ConocoPhillips, from disturbing the status quo by ordering it to refrain from interfering with Plaintiff's business by attempting to remove the equipment and improvements on the property and and by ordering it to resume supply of fuel and processing of credit card sales at Plaintiff's station which is to continue pursuant to its franchise agreement during the pendency of this action.

**D.    PLAINTIFF MEETS THE RELAXED STANDARDS SET FORTH IN THE PMPA GOVERNING THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER.**

**1.    Plaintiff Has Met All Of The Requirements For Obtaining Injunctive Relief Under The PMPA.**

In the action at hand, Plaintiff has established the following requirements under PMPA Section 2805(b)(2)(A) and (B):

    a.    The franchise relationship to which the Plaintiff is party has been terminated;

    b.    There exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

    c.    On balance, the hardships imposed upon the franchisor by the issuance of a temporary restraining order/preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such temporary restraining order/preliminary injunctive relief were not granted.

-7-

1         Although Plaintiff's franchise agreement was not due to expire for another

2    two and one half years, until August 31, 2010, ConocoPhillips notified Plaintiff

3    that such agreement would be terminated effective October 31, 2007, due to

4    ConocoPhillips loss of its underlying lease with the Landlord.  The sufficiently

5    serious questions going to the merits of ConocoPhillips' termination exist to make

6    such questions fair ground for litigation because, ConocoPhillips notice of

7    termination was given less than 90 days prior to the termination date as required by

8    Section 2804(a)(2) of the PMPA.  Additionally, ConocoPhillips offer to sell the

9    equipment and improvements exceeded and failed to approach fair market value

10   and gave Plaintiff only 7 days to accept and 9 days to tender payment, and  in

11   violation of Section 2802(c)(4)(C)(i).  Additionally, ConocoPhillips has engaged in

12   bad faith tactics to make sure that Plaintiff will lose his filling station business and

13   be unable to remain in possession of the premises.

14        The PMPA was designed to afford a petroleum franchisee a reasonable

15   opportunity to stay in business if the franchisor decided to abandon the

16   leased/owned marketing premises.  The timing, manner and content of

17   ConocoPhillips's offer has not given Plaintiff a reasonable opportunity to do so.

18   Plaintiff alleges that ConocoPhillips' decision to terminate/non-renew Plaintiff's

19   franchise relationship was in bad faith and not in the normal course of business in

20   violation of Plaintiff's PMPA rights.  ConocoPhillips has an independent

21   obligation to provide Plaintiff with proper notice of termination and to come

22   forward with a bona fide offer to assign all of the franchisor's interest in the leased

23   marketing premises so that Plaintiff can have a reasonable opportunity to stay in

24   business.  ConocoPhillips has failed to do so and should not be rewarded for its

25   blatant violation of the law that was clearly expressed and intended by Congress.

26   Without this Court's intervention, ConocoPhillips will continue to do everything

27   within its power to make sure that Plaintiff cannot stay in business.

28        There is no evidence to suggest that ConocoPhillips will suffer any financial

-8-

1   detriment whatsoever if ConocoPhillips is ordered to continue its franchise
2   relationship with Plaintiff for which it also is paid handsomely for.  The landlord
3   has already expressed its consent to Plaintiff's continued presence and operations
4   on the property. Moreover, the PMPA preempts any other obligations under
5   California law that may conflict with it.  Regardless, any injustice ConocoPhillips
6   might claim is a result of its own conduct.

7       Thus, there are sufficiently serious questions surrounding ConocoPhillips'
8   grounds for termination to warrant issuance of a temporary restraining order and
9   preliminary injunction.

10      **2.    The PMPA and Relevant Case Law Supports Plaintiff's
           Application For a Temporary Restraining Order and Preliminary
11         Injunction.**

12      The instant Application is brought under the Petroleum Marketing Practices
13  Act ("PMPA") 15 U.S.C. §2082, et seq., the overriding purpose of which "is to
14  protect the franchisee's reasonable expectation of continuing the franchise
15  relationship. [citations omitted].  Therefore, the Act is to be liberally construed
16  consistent with the goal of protecting franchisees." *Ajir v. Exxon Corp.* 855
17  F.Supp.294, 297 (N.D.Cal. 1994), See, also, *Ellis v. Mobil Oil* 969 F.2d 784, 788
18  (9th Cir. 1992).  Additionally, the PMPA provides franchisees with certain
19  protections against arbitrary termination or non-renewal. See, *Beachler v. Amoco*
20  *Oil Co.* (7th Cir. 1997) 112 F.3d 902, 904; *Darling v. Mobil Oil Corp.* (2d Cir.
21  1989) 864 F.2d 981, 983 (the "overriding purpose" of the PMPA is to provide
22  "protection for franchisees from arbitrary and discriminatory terminations or
23  nonrenewals," *quoting,* S. Rep. No. 731, 95th Cong., 2d Sess. 15, reprinted in U.S.
24  Code Cong. & Admin. News 873, 874); *Harris v. Equilon Enterprises, LLC* 107
25  F.Supp.2d 921, 924 (S.D. Ohio 2000) ("Congress enacted the PMPA in 1978 to
26  protect franchisees from arbitrary or discriminatory termination or nonrenewal of
27  their franchises.").

28      One such protection is the requirement that any franchisor who decides to

1   terminate or non-renew for a reason other than franchisee misconduct must do so

2   "in good faith and in the normal course of business." *Rhodes v. Amoco Oil Co.,*

3   143 F.3d 1369, 1371 (10th Cir. 1998); 15 U.S.C. §2802(b)(3)(D).

4       A second protection is that the franchisor must provide the franchisee with

5   statutory notice of its intent to terminate the franchise ninety (90) days prior to the

6   date on which such termination takes effect. 15 U.S.C. §2804(a)(2).

7       A third protection is that a franchisor that has elected to terminate or non-

8   renew for business reasons must make a bona fide offer to sell, transfer or assign"

9   its interest in the premises to the franchisee or offer such franchisee a right of first

10  refusal as to any third party offer received. See, 15 U.S.C. §2802(c)(4)(C)(i);

11  *Covey v. Union Oil co. of Cal.* 820 F.Supp. 1257, 1259 (D. Or. 1993). The bona

12  fide offer provision "assure[es] the franchisee an opportunity to continue to earn a

13  livelihood from the property while permitting the distributor to end the franchise

14  relationship." *Sandlin v. Texaco Refining and Marketing, Inc.,* 900 F.2d 1479,

15  1481 (10th Cir. 1990) (quoting *Slatky v. Amoco Oil Co.* 830 F.2d 476, 484(3rd Cir.

16  1987).

17      The PMPA must be given a liberal construction consistent with its

18  overriding purpose to protect franchisees. *Ajir, supra,* 855 F.Supp. at 297; *Unocal*

19  *Corp. v. Kaabipour* 177 F.3d 755 (9th Cir. 1999); *Beachler, supra,* 112 F.3d at 904.

20      In *Doebereiner v. Sohio Oil Company*, 880 F.2d 329, 331-332 (11 Cir.

21  1989), the Court set forth the purpose behind the PMPA:

22          The legislative history of the PMPA reveals that the Act was
        designed to protect franchisees from arbitrary or discriminatory

23          termination or non-renewal. (Citation omitted.) Congress sought
        to equalize the obvious disparity in bargaining power between major

24          oil companies and service station operators. (Citations omitted.) ...
        To attain these ... goals, Congress specifically set forth the permissible

25          grounds for termination or non-renewal of franchise relationships, and
        bestowed on federal courts jurisdiction to remedy violations of the

26          Act.

27      This case is precisely the type of case which Congress had in mind when it

28  enacted the PMPA. The PMPA is intended to protect gas station franchise owners

from arbitrary and discriminatory termination or nonrenewal of their franchises with large oil corporations and gasoline distributors, and to remedy the disparity in bargaining power between the parties to gasoline franchise contracts. *DuFresne's Auto Service, Inc. v. Shell Oil Company*, 992 F.2d 920, 925 (9th Cir. 1993) and *Mobil Oil Corporation v. Virginia Gasoline Marketers and Automotive Repair Association*, 34 F.3d 220, 223 (4th Cir. 1994).

### 3.    **ConocoPhillips' Notice Of Termination Was Untimely Under The PMPA.**

Under the facts of the underlying case, ConocoPhillips' termination of Plaintiff's franchise could not have been proper without timely notice under the requirements of the PMPA, §2804(a) which provides as follows:

> 2804(a) General requirements applicable to the franchisor. Prior to termination of any franchise or nonreweal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee which is a party to such franchise or such franchise relationship-
>
> > 2804(a)(1) in the manner described in this section; and 2804(a)(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

Subsection (b) of Section 2804 provides in relevant part as follows:

> 2804(b)(1) In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to t he date on which termination or nonrenewal takes effect, as required by subsection (a)(2)-
>
> > 2804(b)(1)(A) such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing such notification is reasonably practicable...

Courts construe the PMPA notice requirements strictly. *Pruitt v. New Eng. Petroleum L.P.*, 2006 U.S. Dist. LEXIS 85961 (D. Conn. 2006) (*citing, Ceraso, 326 F.3d at 314* and *Escobar v. Mobil Oil Corp.*, 678 F.2d 398, 400 n.2 (2d Cir. 1982); *see also, Davy v. Murphy Oil*, 488 F. Supp. 1013, 1016 (W.D.Mich.1980) (Failure to comply with the notice provision, even if the defect is only a minor or technical one, is grounds to enjoin the termination or nonrenewal of the franchise

-11-

1  relationship). Additionally, it is the franchisor who bears the burden of proving

2  that its notice of termination complies with the PMPA. *Pruitt v. New Eng.*

3  *Petroleum L.P.*, *supra*, (citing 15 U.S.C. § 2805(c)).

4      The 90-days notice requirement is an important provision of the PMPA and

5  should not be lightly excused. *Oparaocha v. Sun Co.*, 3 F. Supp. 2d 4, 7 (D.D.C.

6  1998) (*citing, Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d 54 (2d Cir. 1984)); see

7  also, *Zipper v. Sun Co., Inc.* 947 F. Supp. 62, 68 (E.D.N.Y. 1996) (finding less

8  than 90-days notice to be invalid in a situation where franchisee was delinquent in

9  paying the franchisor for money that was allegedly due) (*quoting, Wisser Co., Inc.*

10 *v. Mobil Oil Corp.*, 730 F.2d 54, 60 (2d Cir. 1984)). In fact, the 90-days notice is

11 so important that failure to comply with the requirement can show a "willful

12 disregard" of the PMPA so as to warrant imposition of exemplary damages. *See*

13 *e.g., Oparaocha v. Sun Co., supra.*

14      Thus where a franchisor improperly terminates a plaintiff's franchise, the

15 plaintiff is accordingly entitled to have its franchise reinstated, subject to a later

16 termination consistent with applicable law. Since the PMPA requires both notice

17 and proper grounds, it is not necessary for the Court to consider the propriety of the

18 grounds for termination when the notice was inadequate. *Hanes v. Mid-America*

19 *Petroleum, Inc.*, 577 F. Supp. 637, 647 (D. Mo. 1983).

20      In the instant case, there simply no evidence that it would not have been

21 reasonable for ConocoPhillips to give Plaintiff the requisite 90-days notice. In

22 fact, it would be disingenuous for ConocoPhillips to argue otherwise, because it

23 undisputably must have known when its franchise relationship with the third party

24 landlord was going to end, causing it to lose its right of possession. Consequently,

25 ConocoPhillips failure to comply with the PMPA notice requirement was

26 inexcusable.

27      **4.    ConocoPhillips' Offer Was Not Bona Fide Under The PMPA.**

28      Section 2802(c)(4)(C)(i) of the PMPA provides:

-12-

2802(c)(4)(C)  in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately after the loss of the right of the franchisor to grant possession (through an assignment pursuant to subparagraph (B) or by obtaining a new lease or purchasing the marketing premises from the landowner), the franchisor (if requested in writing by the franchisee not later than 30 days after notification was given pursuant to section 2804 of this title), **during the 90-day period after notification was given** pursuant to section 2804 of this title.

2802(c)(4)(C)(i)  **made a bona fide offer to sell, transfer, or assign to the franchisee the interest of the franchisor in any improvements or equipment located on the premises**... (emphasis added).

ConocoPhillips failed to comply with this provision because its offer gave Plaintiff a mere 7 days to accept the offer and a mere 9 days to tender full payment. Furthermore, the offer failed to approach fair market value as further explained below.

Whether a bona fide offer has been made "is measured by an objective market standard. To be objectively reasonable, an offer must 'approach [] fair market value.'" *Ellis, supra* 969 F.2d at 787 (quoting *Slatky, supra*, 830 F.2d at 485); *Arnold v. Amoco Oil Co.* 872 F.Supp. 1493, 1500 (W.D. Va. 1995). Accordingly, the offer should reflect what a willing purchaser would pay for the items. "The offer to buy at fair market value... assur[es] the franchisee an opportunity to continue to earn a livelihood from the property while permitting the distributor to recover the fair market value of the property sold and to end the franchise relationship." *Ellis, supra*, 969 F.2d at 788. What constitutes a bona fide offer is determined on a case-by-case basis. *Id.*

In *Rhodes v. Amoco Oil Company* (supra) the Court underscored the language in *Sadlin v. Texaco Refining and Marketing* 900 F.2d 1480, 1481 (1990) and *Slatky v. Amoco Oil Co.* 830 F.2d 476, 484 (1987) as follows:

the bona fide offer provision therefore serves as a second, and distinct, layer of protection, assuring the franchisee an opportunity to continue to earn a livelihood from the property while permitting the distributor to end the franchise relationship." *Rhodes v. Amoco Oil Company* 143 F.3d at 1371 (quoting, *Sadlin v. Texaco Refining and Marketing* 900 F.2d at 1481

-13-

(quoting, *Slatky v. Amoco Oil Co.* 830 F.2d at 484)).

Thus, the *Rhodes* court held that:

[T]he franchisor is not automatically entitled to immunity from having its offer scrutinized and from that offer's bona fides being tested against other evidence as to what "approached fair market value." Hence the franchisor may not avoid the raising of a genuine issue of fact concerning his offer, and may not obtain a summary judgment merely because he has based the offer in question on the results of an independent appraisal. That approach would not protect the franchisee in a case, which we would hope would be the unusual one, in which the appraisal is flawed "through sloppiness or mere error." *Rhodes v. Amoco Oil Company* 143 F.3d at 1372.

ConocoPhillips offer was not "bona fide" if the offered sale price was above and did not approach the fair market value. See, *Rhodes v. Amoco Oil Company* 143 F.3d 1369, 1372 (1998) (holding that while a bona fide offer was not necessarily the equivalent of the property's fair market value, an offer was required to approach fair market value in order to be considered bona fide).

ConocoPhillips's offer failed to approach fair market value because of the substantial discrepancy between the offer and Mr. Haddad's estimate of the maximum value of the items based on his experience with gasoline stations of over 20 years. (Haddad decl., ¶22). *Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1374, n.5 (10th Cir. 1998). The Court in *Rhodes v. Amoco Oil Co.* found that fair grounds for litigation exist and the question must be submitted to a jury when the difference in competing values is in excess of ten to fifteen percent. Here, the discrepancy between Mr. Haddad's maximum of $120,000 and ConocoPhillips' offer of $340,000 is substantially more than that.

### 5.    The Balance Of Hardships Falls In Plaintiff's Favor.

Lastly, in *Daniels v. Dilmar Oil Co.*, 502 F.Supp. 178 (D.C.S.C., 1980), the Court, in balancing the hardships mandated by Section 2805(b)(2)(B) of the PMPA, stated:

Without an injunction, [franchisee] would lose his only source of income; he would be placed out of work; [franchisee] would have to dismiss his employees, and [franchisee's] business would be lost. In effect, without the injunction, [franchisee] would be placed on the brink of bankruptcy. On the other hand, the effect of an injunction

-14-

would be minimal on [franchisor]. Business and rent would continue as usual with [franchisor] realizing income from the premises as well as profit on goods sold to [franchisee] ... Based on the foregoing, it is the opinion of this Court that a Temporary Restraining Order/Preliminary Injunction should be issued. (*Id.* at p. 181.)

There is no evidence to suggest that ConocoPhillips will suffer any financial detriment whatsoever if it is compelled to resume the franchise relationship and is prevented from removing the equipment and improvements from the premises during the pendency of this action.

Finally, any injustice ConocoPhillips might claim is a result of its own conduct i.e., its own failure to give proper statutory notice to Plaintiff and make a bona fide offer to sell the equipment and improvements at the premises.

### 6.    No Bond Should Be Required In This Case Or A Minimal Bond Should Be Required.

15 U.S.C. Section 2805(b)(3) does not require a bond to be posted in cases such as this. Further, case authority recognizes a bond can be dispensed with when requiring it would deny access to judicial review. *People Ex.Rel. Van De Kamp v. Tahoe Regional Plan*, 766 F.2d 1319 (9th Cir. 1985).

In the present case, there is little if any potential damage to ConocoPhillips, since if it prevails at trial, Plaintiff will simply continue to purchase fuel from ConocoPhillips pursuant to its existing franchise agreement and will have the right to purchase the equipment or improvements at a price that approaches fair market value. There is a great deal of disparity of economic power between the parties. Plaintiff should not be punished because he is unfortunate enough to be involved in a dispute with a gigantic oil company.

Therefore, the Court should not require the posting of a bond or should permit a minimal bond to be posted.

V

CONCLUSION

Based on the foregoing, it is respectfully requested that Plaintiff's

-15-

1    Application be granted in the form of the Proposed Temporary Restraining Order

2    lodged concurrently with this Application. The Court should grant a Temporary

3    Restraining Order and Preliminary Injunction restraining, enjoining and ordering

4    ConocoPhillips and its representatives to resume its franchise relationship and from

5    changing the status quo by (1) continuing to refuse to supply fuel to Plaintiff's

6    station,(2) continuing to resume the processing of credit card transactions at the

7    station and (3) attempting to remove its equipment and improvements from the

8    station premises.

9                                                 Respectfully submitted,

10   Dated: November 5, 2007                      BLEAU / FOX, A
                                                  Professional Law Corporation
11

12                                                By:_____

13                                                    Thomas P. Bleau, Esq.
                                                     Gennady L. Lebedev, Esq.
14                                                   Attorneys for Plaintiff,
                                                     HOUTAN PETROLEUM, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28