1   GLYNN & FINLEY, LLP
    CLEMENT L. GLYNN, Bar No. 57117
2   ADAM FRIEDENBERG, Bar No. 205778
    One Walnut Creek Center
3   100 Pringle Avenue, Suite 500
    Walnut Creek, CA 94596
4   Telephone: (925) 210-2800
    Facsimile: (925) 945-1975
5   Email: cglynn@glynnfinley.com
           afriedenberg@glynnfinley.com
6
    Attorneys for Defendant
7   ConocoPhillips Company

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11  HOUTAN PETROLEUM, INC.          )    **Case No. 3:07-cv-5627**
                                    )
12              Plaintiff,          )    **DEFENDANT CONOCOPHILLIPS**
                                    )    **COMPANY'S RESPONSE TO ORDER**
13      vs.                         )    **TO SHOW CAUSE RE PRELIMINARY**
                                    )    **INJUNCTION**
14  CONOCOPHILLIPS COMPANY, a Texas )
    corporation and DOES 1 through 10, )  **Date:  November 16, 2007**
15  Inclusive                       )    **Time:  10:00 a.m.**
                                    )    **Judge: Hon. Samuel Conti**
16              Defendants.         )
                                    )    **Accompanying Documents:**
17  ─────────────────────────────── )
                                         **1) Declaration of Dan Pellegrino**
18                                       **2) Declaration of Richard L. Mathews**
                                         **3) Declaration of Adam Friedenberg**
19                                       **4) Declaration of Jay Rollins**

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────────

1

**TABLE OF CONTENTS**

2

**Page**

3

4   I.    INTRODUCTION ........................................................................................- 1 -

5   II.   FACTUAL BACKGROUND ....................................................................- 2 -

6         A.   The Ground Lease..........................................................................- 2 -

7         B.   The Franchise Agreement .............................................................- 2 -

8         C.   ConocoPhillips Voluntarily Seeks an Extension of the Ground Lease ..........................- 4 -

9

10        D.   Houtan Petroleum's Negotiations with V.O. Limited ...................- 5 -

11        E.   The Bona Fide Offer ......................................................................- 5 -

12        F.   Houtan Petroleum Prevents ConocoPhillips From Complying With Its Obligations Under the Ground Lease ............................- 7 -

13

14        G.   Houtan Petroleum Refuses to Cease Using the Union 76 Marks ...................- 7 -

15  III.  ARGUMENT ............................................................................................- 8 -

16        A.   Houtan Petroleum Cannot Show Sufficiently Serious Questions Going to the  Merits Demonstrating a Fair Ground for Litigation...................- 8 -

17

18             1.   Expiration of the Ground Lease was a proper basis for termination. .........................- 8 -

19             2.   ConocoPhillips gave proper and sufficient notice of termination. ...................- 9 -

20                  a.   ConocoPhillips gave timely notice of termination. ................- 9 -

21                       i.   ConocoPhillips provided more than 90 days' notice of   termination in the Franchise Agreement itself................- 9 -

22

23                       ii.  Even had Franchise Agreement not provided notice of   termination, ConocoPhillips provided a timely confirming notice.................- 10 -

24

25                  b.   ConocoPhillips made a bona fide offer to sell Houtan  Petroleum all equipment and improvements at the Station. .................- 12 -

26

27             3.   ConocoPhillips' continued performance of the Franchise Agreement is a legal impossibility.................- 13 -

28

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.    ConocoPhillips will voluntarily agree not to remove or demolish its equipment and improvements *pendente lite*. .................................................................- 14 -

B.    The balance of hardships compels denial of a preliminary injunction. .........................- 15 -

C.    Under the PMPA, ConocoPhillips is entitled to immediate return of the  Union 76 Marks and other property. ..........................................................................- 16 -

1.    The Court should order Houtan Petroleum to immediately cease  using, and return to ConocoPhillips, the Union 76 Marks. ..........................................................- 16 -

2.    Houtan Petroleum's willful infringement of the Union 76 Marks  independently justifies termination of the Franchise Agreement. ....................................- 17 -

IV.    CONCLUSION ..............................................................................- 18 -

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## Cases

4

*Daniel S. Boschert, Inc. v. Shell Oil Co.*, 666 F.Supp. 948, 950 (N.D. Tex. 1987)..................- 14 -

5

*De Fosses v. Wallace Energy, Inc.*, 836 F.2d 22, 27 (1st Cir. 1987).......................................- 10 -

6

*Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir. 1980)............................................- 18 -

7

*Hutchens v. Eli Roberts Oil Co.*, 838 F.2d 1138, 1143 (11th Cir. 1988)................................- 10 -

8

*Loomis v. Gulf Oil Corp.*, 567 F.Supp. 591, 597 (M.D. Fla. 1983).........................................- 17 -

9

*Maintanis v. Shell Oil Co.*, Bus. Franchise Guide (CCH) ¶ 8160 (D. Mass. 1984) ................- 17 -

10

*Mariniello v. Shell Oil Co.*, 511 F.2d 853, 858 (3rd Cir. 1975) .............................................- 18 -

11

*Mohammed v. Chevron U.S.A. Inc.*, 738 F. Supp. 1383, 1385 (M.D. Fla. 1990)............- 6 -, -12-

12

*Persaud v. Exxon Corp.*, 867 F. Supp. 128, 141 (E.D.N.Y. 1994) .........................................- 17 -

13

*Shell Oil Co. v. Gross*, 1986 WL 8957, *2 (N.D. Ill. 1986) ...................................................- 18 -

14

## Statutes

15

16

15 U.S.C. § 2802(b) ..................................................................................................................- 8 -

17

15 U.S.C. § 2802(b)(4) .....................................................................................................- 12 -, - 13 -

18

15 U.S.C. § 2802(c) .......................................................................................................- 9 -, - 12 -

19

15 U.S.C. § 2804(a) ..................................................................................................................- 9 -

20

15 U.S.C. § 2804(b)(1) ......................................................................................................- 11 -, - 12 -

21

22

23

24

25

26

27

28

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  **I.    INTRODUCTION**

2          Plaintiff fails to demonstrate an entitlement to preliminary injunctive relief.

3  Plaintiff was able to obtain a temporary restraining order by misrepresenting and omitting crucial

4  facts:  most significantly, Plaintiff contends ConocoPhillips failed to provide 90 days' notice of

5  termination of its franchise agreement when in reality Plaintiff signed such a notice 117 days

6  prior to the termination date.

7          Plaintiff also misleadingly suggests that termination would cause the Station to

8  shut down, leaving him with no income or livelihood.  This too is false.  First, the Station would

9  not shut down because ConocoPhillips has already offered to leave its equipment and

10  improvements in place pending the litigation, and Plaintiff need only secure an alternative fuel

11  source (as he has in fact already done).  Moreover, Plaintiff is a corporation operating numerous

12  other service stations, not an individual franchisee with no other means of support.

13          Plaintiff does not contend that ConocoPhillips' loss of its right to grant possession

14  to Houtan Petroleum is an impermissible basis for termination under the PMPA.  Indeed, it is

15  beyond dispute that it would be impossible for ConocoPhillips to sublease to Houtan Petroleum a

16  property which it does not own or lease (and which Houtan Petroleum itself now leases directly

17  from the property owner).  Instead, Houtan Petroleum apparently contends that ConocoPhillips

18  violated the PMPA when it sent Houtan Petroleum a second, confirming notice of termination

19  (i.e., subsequent to the notice to which Houtan Petroleum agreed in the Franchise Agreement).

20  But this makes no sense; the Franchise Agreement did not even become effective until 60 days

21  prior to the termination date.  In other words, the only possible way ConocoPhillips could have

22  provided 90 days' notice was to provide such notice in the Franchise Agreement itself.  *And that*

23  *is precisely what ConocoPhillips did.*

24          In actuality what plaintiff seeks to do is use the Court to coerce Conoco to sell its

25  station fixtures for less than their value.  There is no emergency justifying injunctive relief.  The

26  Court should reject Houtan Petroleum's invitation to endorse its negotiation tactics -- tactics that

27  are in fact contrary to the PMPA.  If Plaintiff wants to litigate the property value, ConocoPhillips

28

1   is willing to enter an appropriate stipulation to leave the equipment and improvements in place in

2   the interim.  But Plaintiff has failed to demonstrate any basis justifying injunctive relief.

3   **II.      FACTUAL BACKGROUND**

4        **A.      The Ground Lease**

5            ConocoPhillips does not own the Station property.  (Declaration of Richard L.

6   Mathews ("Mathews Decl."), ¶ 3.)  Rather, pursuant to the Ground Lease, ConocoPhillips

7   formerly leased the property from a third-party, V.O. Limited Partners ("V.O. Limited").  (*Id.*,

8   Ex. A.)  The Ground Lease expired on October 31, 2007.[1]  (Mathews Decl.., ¶ 4.)

9   ConocoPhillips owns the structures, equipment and improvements at the Station.  (*Id.*, ¶ 3.)

10  Under the Ground Lease, ConocoPhillips was entitled "to place and maintain [on the Station

11  Premises] all structures, improvements and equipment which [ConocoPhillips] may desire . . .

12  and to remove [such] structures, improvements or equipment . . . *at any time during the term*

13  *hereof or within ten (10) days after termination of this lease*."  (Mathews Decl., Ex. A at ¶ 6

14  (emphasis added).)

15       **B.      The Franchise Agreement**

16           Houtan Petroleum has operated the Station as a ConocoPhillips franchisee for

17  several years.  Pursuant to successive three-year franchise agreements, ConocoPhillips granted

18  Houtan Petroleum a limited license to use its Union 76 trademarks, trade dress and other

19  symbols (the "Union 76 Marks"), and subleased the Station premises to Houtan Petroleum.

20  (Pellegrino Decl., ¶ 2)  The governing agreement immediately preceding that at issue was for a

21  three year term; it expired on August 31, 2007.  (*Id.*, ¶ 3.)  As the Ground Lease was scheduled

22  to expire less than two months later, on October 31, 2007, ConocoPhillips could not offer

23  Houtan Petroleum another three year sublease of the Station premises.  (*Id.*)

24

25  [1] The Ground Lease originally was for a 25 year term, commencing on March 1, 1966, and
    expiring on February 28, 1991.  (Mathews Decl., Ex. A at ¶ 2.)  A subsequent modification

26  extended the expiration date to October 31, 2002, and granted ConocoPhillips an option for one
    additional five year term.  (*Id.*, Ex. B at ¶¶ 1, 4.)  ConocoPhillips exercised that option, and the

27  Ground Lease thus expired on October 31, 2007.  (Mathews Decl., ¶ 4.)  ConocoPhillips has no
    further option to renew the Ground Lease.

28

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   Houtan Petroleum nonetheless wished to continue its franchise relationship with

2 ConocoPhillips as long as possible, even though Houtan Petroleum was fully aware that a new

3 agreement with a September 1, 2007, effective date would likely terminate less than two months

4 later. (*Id.*, ¶ 4.) Indeed, ConocoPhillips explicitly advised Houtan Petroleum that

5 ConocoPhillips had no further right to renew or extend the Ground Lease. (*Id.*, ¶¶ 3-4.)

6 ConocoPhillips further advised Houtan Petroleum that if ConocoPhillips was unable to negotiate

7 an extension with V.O. Limited, the Ground Lease would expire on October 31, 2007, just

8 several weeks after commencement of the proposed new Franchise Agreement. (*Id.*) Such an

9 expiration and non-renewal of the Ground Lease would result in ConocoPhillips losing any right

10 to occupy the Station, much less sublease it to Houtan Petroleum. (*Id.*)

11   Notwithstanding this risk, and with full knowledge of its potential consequences,

12 Houtan Petroleum still wished to renew its franchise relationship with ConocoPhillips. (*Id.*, ¶ 4.)

13 Thus the parties entered a new Union 76 Dealer Station Lease and Motor Fuel Supply

14 Agreement (the "Franchise Agreement"). (Haddad Decl.,[2] Ex. A.)

15   Although the Franchise Agreement was ostensibly for a term of three years

16 commencing on September 1, 2007, and expiring August 31, 2010, it included notice of

17 termination pursuant to the PMPA. Indeed, the Franchise Agreement advised, and Houtan

18 Petroleum agreed, that ConocoPhillips would terminate, effective October 31, 2007:

19    There is a possibility that the term of the underlying lease to the Station
     might expire and not be renewed upon the underlying lease's expiration
20    date. DEALER hereby acknowledges CONOCOPHILLIPS' disclosure to
     DEALER that this Agreement and the Station herein are subject to all the
21    terms and conditions of an underlying lease held by CONOCOPHILLIPS
     in the property and premises, **which underlying lease expires on**
22    **October 31, 2007** and that such underlying lease may expire and may not
     be renewed during the Term of this Agreement. Thereby, the DEALER is
23    hereby on notice that this Agreement **is hereby terminated** on the date
     the underlying lease expires or on a prior date in the event
24    CONOCOPHILLIPS' lessor terminates the underlying lease or the
     underlying lease otherwise requires early termination.

25

26

27 [2] The "Haddad Decl." is the Declaration of Ed Haddad which Houtan Petroleum submitted in
  support of its ex parte application.
28

1                                  CONOCOPHILLIPS is under no obligation to seek an extension or
renewal, or exercise any renewal options it may have, of such underlying

2                                  lease, but may do so at its discretion.

3     (*Id.* at 000063 (Addendum 1) (original and added emphasis).)  ConocoPhillips provided Houtan

4     Petroleum a copy of the Franchise Agreement and notice of termination in May 2007, more than

5     five months prior to the termination.  (Pellegrino Decl., ¶ 5.)  Houtan Properties acknowledged

6     the termination notice by executing the Franchise Agreement , and specifically initialing the

7     included notice of termination, on July 6, 2007, 117 days prior to the termination.[3]  (Haddad

8     Decl., Ex. A at pp. 3, 29.)

9         **C.**      **ConocoPhillips Voluntarily Seeks an Extension of the Ground Lease**

10           As Houtan Petroleum agreed in the Franchise Agreement, ConocoPhillips had a

11    contractual obligation to seek extension or renewal of the Ground Lease.  Nevertheless,

12    ConocoPhillips *did* attempt to secure such an extension, so that termination of the Franchise

13    Agreement would not be necessary and Houtan Petroleum could continue to operate the Station

14    without interruption.  (Mathews Decl., ¶ 5.)  Throughout 2007, ConocoPhillips attempted to

15    engage the lessor (V.O. Limited) in discussions or negotiations regarding an extension or

16    renewal of the Ground Lease.  (*Id.*)

17           V.O. Limited eventually ceased responding to ConocoPhillips' communications.

18    (*Id.*)  Accordingly, on September 17, 2007, ConocoPhillips advised V.O. Limited that if it did

19    not respond by September 21, 2007, to ConocoPhillips' request to extend the Ground Lease,

20    ConocoPhillips would consider such silence a rejection.  (*Id.*, ¶ 6, Ex. C.)  V.O. Limited never

21    responded to ConocoPhillips' September 17 letter.  (*Id.*, ¶ 6.)

22           As the Ground Lease was to expire on October 31, 2007, ConocoPhillips was left

23    with no choice but to proceed with the termination that had been noticed in the Franchise

24    Agreement, to which Houtan Petroleum had already agreed.  On September 18, 2007, 17 days

---

25    [3] In his declaration in support of the ex parte application, Houtan Petroleum president "Ed
Haddad" states that "[t]he latest Franchise Agreement was entered into with ConocoPhillips

26    Company, on March 30, 2007. . . ."  (Docket No. 5 at ¶ 4.)  This is not true.  In fact, Ed
Bozorghadad, identified in the Franchise Agreement as Houtan Petroleum's President, executed

27    the Franchise Agreement on Houtan Petroleum's behalf on July 6, 2007.  (Haddad Decl., Ex. A
at p. 29.)  (Our understanding is that "Ed Haddad," "Ed Hadad" and "Ed Bozorghadad" are the

28    same individual.)

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   after the Franchise Agreement became effective, ConocoPhillips sent Houtan Petroleum a

2   confirming notice (the Second Notice) that the termination would proceed as Houtan Petroleum

3   agreed in the Franchise Agreement.  The Second Notice did not convey any new information to

4   Houtan Petroleum.  Rather, it confirmed what ConocoPhillips had advised, and Houtan

5   Petroleum had agreed to, on July 6, 2007:  that due to the imminent expiration of the Ground

6   Lease, and ConocoPhillips' consequent loss of its right to grant possession of the Station

7   property, the Franchise Agreement would terminate on October 31, 2007, at 12:00 p.m.  (*Id.*)

8          **D.      Houtan Petroleum's Negotiations with V.O. Limited**

9                  While ConocoPhillips was attempting to secure an extension of the Ground

10  Lease, Houtan Petroleum was independently negotiating directly with V.O. Limited.  Houtan

11  Petroleum's ex parte motion does not disclose when these negotiations began. At any rate,

12  Houtan Petroleum and V.O. Limited apparently executed a lease on October 16, 2007.  (Haddad

13  Decl., Ex. C at 00128.)

14                 Houtan Petroleum, however, did not advise ConocoPhillips prior to October 16

15  that such an agreement was imminent.  Neither did Houtan Petroleum provide ConocoPhillips a

16  copy of the lease upon its execution.  (Mathews Decl., ¶ 7.)  (In fact, Houtan Petroleum did not

17  provide a copy of the lease agreement to ConocoPhillips at any time prior to commencing this

18  litigation.)  On October 18, Houtan Petroleum advised ConocoPhillips for the first time that it

19  had leased the Station property directly from V.O. Limited.  (*Id.*)  But Houtan Petroleum still did

20  not provide ConocoPhillips with either a copy of the lease agreement or any verification from

21  V.O. Limited of such an agreement.  (*Id.*)  Houtan Petroleum likewise failed to advise

22  ConocoPhillips at any time prior to filing its ex parte application of the duration of the claimed

23  agreement or whether the agreement authorized continued operation of a service station.

24          **E.      The Bona Fide Offer**

25                 Also on October 18, Houtan Petroleum demanded that ConocoPhillips sell

26  Houtan Petroleum all of ConocoPhillips' structures, improvements and equipment at the Station.

27  (Haddad Decl., Ex. D.)  Significantly, Houtan Petroleum did not then advise ConocoPhillips that

28

1    it believed the termination was untimely because ConocoPhillips did not provide it more than 90

2    days prior to the termination date. (*Id.*)

3            On October 23, 2007, just five days after Houtan Petroleum's demand,

4    ConocoPhillips hand delivered the Bona Fide Offer, which offered to sell all such structures,

5    improvements and equipment to Houtan Petroleum for $340,022.00. (Mathews Decl., ¶ 7, Ex.

6    D; Pellegrino Decl., ¶ 6.) The Bona Fide Offer was based on an independent appraisal prepared

7    by a licensed third-party appraiser. (Mathews Decl., ¶ 7, Ex. E.) It required Houtan Petroleum's

8    acceptance by October 29 and full performance no later than October 31. (*Id.*.) The purpose of

9    these short time windows was not to impede Houtan Petroleum's ability to close a purchase.

10   Rather, these constraints were unavoidable as the Ground Lease obligated ConocoPhillips either

11   to remove the structures, improvements and equipment no later than November 10 (10 days after

12   expiration of the Ground Lease) or forfeit them. (Mathews Decl., Ex. A.) ConocoPhillips could

13   not have made the Bona Fide Offer any earlier because Houtan Petroleum did not tell

14   ConocoPhillips Houtan Petroleum had secured a lease of the Station premises until October 18.

15           Houtan Petroleum rejected the Bona Fide Offer. It advised ConocoPhillips that it

16   believed that the Bona Fide Offer exceeded the true value of the structures, improvements and

17   equipment located at the Station Property. Houtan Petroleum has never provided ConocoPhillips

18   with any appraisal or alternative evidence of valuation. [4]

19

20

21

22

23

_____

24   [4] Mr. Haddad opines in his declaration that the value of the structures, improvements and
     equipment "does not exceed $120,000." (Docket No. 5, ¶ 22.) He provides no foundation for
25   this opinion, or even the calculations or evaluative methodology on which it is based. (*Id.*) The
     Haddad Declaration is therefore insufficient and inadmissible to contradict, or establish a
26   valuation alternative to, the appraisal on which ConocoPhillips based its Bona Fide Offer. *See
     Mohammed v. Chevron U.S.A. Inc.*, 738 F. Supp. 1383, 1385 (M.D. Fla. 1990). As Plaintiff had
27   the burden to submit supporting evidence with its motion, it is not permitted to try to correct this
28   failure on reply.

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

**F.    Houtan Petroleum Prevents ConocoPhillips From Complying With Its Obligations Under the Ground Lease**

Houtan Petroleum rejected the Bona Fide Offer on October 29, 2007.  (Mathews Decl., ¶ 8.)  Under the Ground Lease, ConocoPhillips had less than two weeks left to remove its structures, improvements and equipment from the Station premises.  (*Id.*)  It was therefore critical that ConocoPhillips promptly commence removal operations to ensure timely removal and prevent a forfeiture of its property.[5]  Houtan Petroleum, however, refused to allow ConocoPhillips to access the Station Property for this purpose.

**G.    Houtan Petroleum Refuses to Cease Using the Union 76 Marks**

Pursuant to the notice of termination set forth in the Franchise Agreement, as well as the confirmation provided in the Second Notice, the Franchise Agreement terminated effective October 31, 2007, at 12:00 p.m.  (Haddad Decl., Ex. A at 000063 (Addendum 1).)  Consequently, under both the PMPA and the express terms of the Franchise Agreement, Houtan Petroleum was obligated immediately to cease using the Union 76 Marks.  Indeed, ¶ 10(d) of the Franchise Agreement provides:

> [u]pon expiration, termination, nonrenewal or cancellation of this Agreement, for any reason, DEALER shall immediately cease and discontinue the use of said Union 76 Marks or any marks or names confusingly similar thereto in DEALER's operations or in advertising and promotions and return to CONOCOPHILLIPS all signs and advertising materials containing such Union 76 Marks.

(Haddad Decl., Ex. A at 000020).

On October 31 and again on November 2, ConocoPhillips advised Houtan Petroleum in writing that continued use of the Union 76 Marks would be improper and in violation of the Franchise Agreement and applicable law.  (Declaration of Adam Friedenberg ("Friedenberg Decl."), Exs. A, B.)  Although Houtan Petroleum had not yet obtained, or even sought, a Court order permitting its continued use of the Union 76 Marks, Houtan Petroleum

---

[5] Removal was not simply a matter of demolishing existing structures.  Rather, the equipment and improvements include underground storage tanks, fuel dispensers, piping and other salvageable items with significant reuse or resale value to ConocoPhillips.  (Mathews Decl., ¶ 8, Ex. E.)

1   refused to remove or cover the Union 76 Marks.  (Pellegrino Decl., ¶¶ 7-8.)  In direct violation

2   of the Franchise Agreement and the Lanham Act, Houtan Petroleum continued to operate the

3   Station using the Union 76 Marks for several more days, waiting until November 5 to seek a

4   temporary restraining order.  (*Id.*)

5          As the Franchise Agreement had terminated, ConocoPhillips ceased fuel

6   deliveries to the Station.  On November 2, Houtan Petroleum's owner and president, Ed Haddad,

7   wrote ConocoPhillips and advised that if ConocoPhillips did not deliver fuel, Houtan Petroleum

8   would purchase fuel "from an independent source."  (Declaration of Jay Rollins ("Rollins

9   Decl."), Ex. A.)  Houtan Petroleum did just that, purchasing and reselling non-ConocoPhillips

10  fuel while still displaying the Union 76 Marks.  (Pellegrino Decl., ¶ 7.)

11  **III.   ARGUMENT**

12          ConocoPhillips does not dispute that under the PMPA a franchisee may obtain

13  preliminary injunctive relief upon a lesser standard than is ordinarily required, but provisional

14  relief is not mandatory.  Rather, as Plaintiff acknowledges, it must still demonstrate:  1)

15  sufficiently serious questions going to the merits of Plaintiff's claim that the termination was

16  unlawful to demonstrate a fair ground for litigation; and 2) that denial of injunctive relief would

17  cause greater hardship to Plaintiff than imposition of such relief would cause to ConocoPhillips.

18  (Mot. at 4-5.) Houtan Petroleum has not made either showing.  The Court should therefore

19  dissolve its temporary restraining order and deny the requested preliminary injunction.

20  **A.     Houtan Petroleum Cannot Show Sufficiently Serious Questions Going to the
            Merits Demonstrating a Fair Ground for Litigation.**

21

22

23          **1.     Expiration of the Ground Lease was a proper basis for termination.**

24          Under the PMPA, a franchisor may terminate any franchise upon "[t]he

25  occurrence of an event which is relevant to the franchise relationship and as a result of which

26  termination of the franchise or nonrenewal of the franchise relationship is reasonable. . . ." 15

27  U.S.C. § 2802(b).  Such an event includes

28

(4) loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if- . . . (C) in a situation in which the franchisee acquires possession of the leased premises effective immediately after the loss of the franchisor to grant possession (through an assignment pursuant to subparagraph (B) or by obtaining a new lease or purchasing the marketing premises from the landowner), the franchisor . . . (i) made a bona fide offer to sell, transfer or assign to the franchisee the interest of the franchisor in any improvements or equipment located on the premises. . . .

15 U.S.C. § 2802(c).

This is precisely what occurred here. The parties knew ConocoPhillips could lose the right to grant possession of the Station Property when the Ground Lease expired. The Franchise Agreement provided timely notice of termination to Houtan Petroleum, which, given Houtan Petroleum's agreement to lease the property directly from V.O. Limited, was already well aware of the impending termination. ConocoPhillips then made the Bona Fide Offer four days after Houtan Petroleum advised ConocoPhillips it had acquired a right to possess the Station premises. The termination was therefore proper under the PMPA.

**2.    ConocoPhillips gave proper and sufficient notice of termination.**

**a.    ConocoPhillips gave timely notice of termination.**

**i.    ConocoPhillips provided more than 90 days' notice of termination in the Franchise Agreement itself.**

The PMPA ordinarily requires a franchisor to provide at least 90 days' notice of termination of a franchise agreement. 15 U.S.C. § 2804(a). Here, the Ground Lease was to expire on October 31, 2007, two months after the Franchise Agreement became effective. Thus, it would have been impossible for ConocoPhillips to provide 90 days' notice after commencement of the Franchise Agreement. This is precisely why ConocoPhillips provided the required notice contemporaneously with, and indeed as part of, the Franchise Agreement itself. Addendum 1 to the Franchise Agreement specifically advised, and Houtan Petroleum agreed, that the Ground Lease

expires on **October 31, 2007** and that such underlying lease may expire and may not be renewed during the Term of this [Franchise] Agreement. Thereby, the DEALER is hereby on notice that this [Franchise] Argreement **is hereby terminated** on the date the underlying lease expires or on a prior date in the event

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

CONOCOPHILLIPS' lessor terminates the underlying lease or the underlying lease otherwise requires early termination.

(Haddad Decl., Ex. A at 000063 (original and added emphasis).)

ConocoPhillips provided this notice to Houtan Petroleum in May 2007, *five months* prior to the termination date. (Pellegrino Decl., ¶ 5.) Houtan Petroleum executed the Franchise Agreement on July 6, 2007, 117 days prior to the effective date of termination. (Haddad Decl., Ex. A at 000037.) *Its president separately initialed the notice of termination.* (*Id.* at 000063.) It is thus beyond dispute that ConocoPhillips provided more than the required 90 days' notice. *See Hutchens v. Eli Roberts Oil Co.*, 838 F.2d 1138, 1143 (11th Cir. 1988) (franchisor provided adequate notice of termination due to expiration of underlying ground lease where franchisee "was fully aware that [a third-party] owned the premises, and the lease between [franchisee] and [franchisor] clearly states that it expires upon the termination of [franchisor's] underlying lease"); *De Fosses v. Wallace Energy, Inc.*, 836 F.2d 22, 27 (1st Cir. 1987) (notice of termination due to imminent expiration of underlying property lease provided at time of franchise agreement sufficient).

Houtan Petroleum's claim that ConocoPhillips failed to provide 90 days' notice of termination raises serious questions under Rule 11. The Franchise Agreement provided explicit notice. As Houtan Petroleum cannot show any reasonable ground on which to challenge the basis or timing of termination, it cannot demonstrate a sufficiently serious question on the merits to show a fair ground for litigation. Therefore, Houtan Petroleum cannot meet even the PMPA's more lenient standard for injunctive relief. The Court should vacate its temporary restraining order and deny the requested preliminary injunction.

      **ii.    Even had Franchise Agreement not provided notice of termination, ConocoPhillips provided a timely confirming notice.**

Plaintiff's claim appears to be that ConocoPhillips violated the PMPA by sending the Second Notice less than 90 days' prior to termination. Plaintiff cites no authority holding that the Second Notice was even required, in light of the notice of termination set forth in the

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   Franchise Agreement that Houtan Petroleum's president had initialed.  But even had

2   ConocoPhillips not given more than 90 days' notice, a franchisor is not required to provide 90

3   days' notice of termination "[i]n circumstances in which it would not be reasonable for the

4   franchisor to" do so. 15 U.S.C. § 2804(b)(1).   In such a case, the "franchisor shall furnish

5   notification to the franchisee affected thereby on the earliest date on which furnishing of such

6   notification is reasonably practicable." *Id.*

7          Here, 90 days' notice (beyond that specifically provided in the Franchise

8   Agreement itself) was impossible.  Indeed, to provide such notice would have required

9   ConocoPhillips to do so on August 2, 2007, one month *before the Franchise Agreement became*

10  *effective.*  But ConocoPhillips had already provided the required notice in the Franchise

11  Agreement.  Plaintiff apparently contends that ConocoPhillips was also required to serve the

12  Second Notice 90 days prior to termination.  Neither law nor logic compels such an absurdity.

13  In fact, Plaintiff can cite no authority holding that the Second Notice was required.

14          Thus, even had ConocoPhillips not provided notice of termination in the

15  Franchise Agreement, it would not have been "reasonably practicable" to provide 90 days'

16  notice of termination once it became clear that ConocoPhillips could not secure an extension of

17  the Ground Lease.  ConocoPhillips was forced to proceed with the termination as scheduled (and

18  as Houtan Petroleum had been notified) when it learned in September that it would be unable to

19  secure an extension of the Ground Lease.  When it became clear to ConocoPhillips that it would

20  thereby lose its right to continue subleasing the Station to Houtan Petroleum, it immediately

21  provided Houtan Petroleum the confirmatory Second Notice, *even though the parties had*

22  *already agreed to such termination in the Franchise Agreement.*

23          " 'The purpose of the PMPA's notice of termination requirements is to give the

24  dealer sufficient advance warning of the impending termination so that he may make appropriate

25  arrangements.' " *De Fosses*, 836 F.2d at 29.  Here, the notice in the Franchise Agreement, which

26  Houtan Petroleum signed and agreed to 117 days before the termination date, did just that.

27  Moreover, Houtan Petroleum was negotiating directly with V.O. Limited, and ultimately secured

28  its own direct lease of the Station Property, to commence upon expiration of the Ground Lease.

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    Thus, Plaintiff *had* actual notice that the Franchise Agreement would terminate pursuant to the

2    notice set forth in the Franchise Agreement.  Even were the Second Notice of Termination

3    mandatory and subject to the timing requirements of the PMPA, and Plaintiff submits no

4    authority for such a proposition, ConocoPhillips complied with those requirements by providing

5    that notice "on the earliest date . . . reasonably practicable." 15 U.S.C. § 2804(b)(1).

6              **b.    ConocoPhillips made a bona fide offer to sell Houtan**
                      **Petroleum all equipment and improvements at the Station.**
7

8              Where a franchisor terminates a franchise agreement due to the loss of its ground

9    lease of the station property, and the franchisee thereafter acquires possession of the property,

10   the franchisor must make a bona fide offer to sell all station equipment and improvements to the

11   franchisee.  15 U.S.C. § 2802(b)(4).[6]  The franchisor's obligation to make such an offer,

12   however, arises only upon the franchisee's notification that it has acquired possession of the

13   station premises.  15 U.S.C. § 2802(c)(4)(C)(i).  Moreover, the franchisee is required to provide

14   such notice "not later than 30 days after notification" of termination of the franchise agreement.

15   *Id*.  Here, Houtan Petroleum was notified of the termination in May 2007 and signed the notice

16   of termination on July 6, 2007, but did not notify ConocoPhillips it acquired possession of the

17   station until October 18, 2007.

18             Notwithstanding Houtan Petroleum's failure to comply with the PMPA, and even

19   though Houtan Petroleum refused to provide ConocoPhillips a copy of its claimed lease or even

20   confirmation from V.O. Limited of the existence of such a lease, ConocoPhillips immediately

21   prepared the Bona Fide Offer and hand delivered it to Houtan Petroleum.  (Matthews Decl., ¶ 7;

22   Pellegrino Decl., ¶ 6.)  The Bona Fide Offer was based on an independent, third-party appraisal,

23   prepared by a licensed appraiser.  (Mathews Decl., ¶ 7, Ex. E.)  Although "Ed Haddad"

24   speculates that the equipment and improvements could not be worth more than $120,000, Houtan

25   Petroleum provides no competent appraisal or other evidence to support that speculation.  *See*

26   *Mohammed*, 738 F. Supp at 1385.  For this independent reason, Houtan Petroleum cannot show

27

28   _____
     [6] Excluding trademarks and trade dress, as discussed infra.

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  any fair ground for litigation, and its request for preliminary injunctive relief must therefore be

2  denied.

3          **3.  ConocoPhillips' continued performance of the Franchise Agreement**

4              **is a legal impossibility.**

5        Houtan Petroleum's ex parte application asks the Court to order the impossible:  it

6  asks the Court to compel ConocoPhillips to "resume its franchise relationship with Plaintiff."

7  The Franchise Agreement, however, is first and foremost a lease (or, here, a sublease) of real

8  property.  (The full title of the Franchise Agreement is the "Union 76 *Dealer Station Lease* and

9  *Motor Fuel Supply Agreement*" (emphasis added).)  There is no dispute that the Ground Lease

10  has expired, and that ConocoPhillips consequently has no right or ability to continue to sublease

11  the Station property to Houtan Petroleum.  Indeed, Houtan Petroleum itself claims the exclusive

12  right to possess and occupy the premises.  Hence, it would be impossible to comply with any

13  such order, even were there legal grounds for its issuance.

14        Houtan Petroleum seeks to obscure this fatal defect by asking the Court to compel

15  continued performance of only *certain* provisions of the Franchise Agreement.  Houtan

16  Petroleum apparently even asks the Court to rewrite the contract to grant it a right to use

17  ConocoPhillips' equipment and improvements without making any rental payment to

18  ConocoPhillips. Plaintiff thus does not ask the Court to maintain the status quo.  Rather,

19  Plaintiff's true request is for a judicially supervised provisional reformation of the Franchise

20  Agreement.  The court is not permitted to grant such relief.  The Franchise Agreement has been

21  terminated.  There is no legal basis on which the Court can resurrect portions of it.

22        The Franchise Agreement provided a single Monthly Rent Amount, attributable to

23  Houtan Petroleum's use of:  1) the real property on which the Station lies; 2) the Union 76

24  Marks; and 3) the equipment and improvements.  (Haddad Decl., Ex. A at 000041.)  The

25  Franchise cannot be divided into separate segments. Both the Franchise Agreement and the

26  PMPA itself anticipated such a problem and provided a clear solution:  a franchisor may

27  terminate the franchise agreement -- not discrete sections of the Franchise Agreement -- upon

28  expiration of an underlying lease.  15 U.S.C. § 2802(b)(4).

1    Now that the Ground Lease has expired, Houtan Petroleum has decided it prefers

2  to disregard its contractual commitments and PMPA obligations.  The PMPA does not grant

3  franchisees the expectation of a perpetual franchise.  *See, e.g., Daniel S. Boschert, Inc. v. Shell*

4  *Oil Co.*, 666 F.Supp. 948, 950 (N.D. Tex. 1987).  "[I]t is clear that Congress did not intend for

5  franchisors and franchisees to be bound together indefinitely. . . . [the PMPA] was not designed

6  to create what is tantamount to a permanent estate in the franchise relationship."  *Id*.

7  ConocoPhillips has provided statutorily permissible notice for an indisputably appropriate

8  reason.  The PMPA thus provides no basis for maintaining segments of the Franchise

9  relationship.  Such is not a "fair ground" for litigation.

10

11

**4.    ConocoPhillips will voluntarily agree not to remove or demolish its equipment and improvements *pendente lite*.**

12    As discussed, Plaintiff's real agenda is to use the Court's process to force

13  ConocoPhillips to make a distress sale of its valuable equipment.  The method Plaintiff has

14  chosen is illicit.  Despite its disagreement with such tactics, ConocoPhillips will stipulate not to

15  remove the equipment and improvements pending determination on the merits of its value.

16  ConocoPhillips sought to remove its property only after V.O. Limited refused to extend

17  ConocoPhillips' 10 day deadline to remove the equipment.  (Mathews Decl., ¶ 8.)  (Indeed, even

18  after the Court entered its temporary restraining order, V.O. Limited, after conferring with

19  Plaintiff's counsel, has continued to insist that ConocoPhillips must remove its equipment and

20  improvements no later than November 10.  Thus it may be necessary for ConocoPhillips to

21  commence an action against V.O. Limited to preserve its removal rights.)

22    ConocoPhillips has offered not to remove its equipment and improvements

23  subject to the agreement of Houtan Petroleum and V.O. Limited that ConocoPhillips' time to do

24  so under the Ground Lease would be tolled.  Houtan Petroleum and V.O. Limited refused to

25  make such a commitment.  ConocoPhillips remains willing to make this accommodation,

26  provided that the parties, including V.O. Limited, are able to agree on:  1) an appropriate interim

27  rental payment; 2) an allocation of responsibility for environmental compliance and other

28

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    maintenance and repair obligations; and 3) an appropriate manner and time for removal in the

2    event Houtan Petroleum ultimately declines to purchase this property.

3        **B.**    **The balance of hardships compels denial of a preliminary injunction.**

4        There is no supportable ground for injunctive relief.  But even if there were, the

5    balance of hardships would tip sharply in ConocoPhillips' favor.  Houtan Petroleum's ex parte

6    application utterly fails to demonstrate any hardship that would result from ConocoPhillips'

7    exercise of its contractual and statutory right to terminate the Franchise Agreement.  None exists.

8     As shown, to prevent any interruption to its business, Houtan Petroleum need only purchase

9    ConocoPhillips' improvements or accept ConocoPhillips' offer to leave this property in place

10   pending party negotiation or judicial determination of an appropriate purchase price.  Houtan

11   Petroleum would then be able to continue operating the Station, as it has continuously since

12   termination of the Franchise Agreement.

13       Continued fuel supply by ConocoPhillips is not essential to avoid interruption to

14   Houtan Petroleum's business.  Houtan Petroleum continued operating throughout the period

15   preceding the Court's temporary restraining order.  It simply purchased fuel elsewhere (and

16   improperly sold it using the Union 76 Marks in violation of the PMPA and the Lanham Act).

17   Moreover, Houtan Petroleum and its counsel have advised ConocoPhillips that Houtan

18   Petroleum already has a fuel supply agreement with ARCO, another major petroleum franchisor.

19   (Friedenberg Decl., ¶ 3.)  Continued supply by ConocoPhillips is therefore irrelevant to Houtan

20   Petroleum's ability to continue operating the Station, and Plaintiff's submission to the Court is,

21   in this additional aspect, deceptive.

22       Moreover, denial of injunctive relief would not deprive Houtan Petroleum of any

23   property or other legitimate rights.  Houtan Petroleum lost any right to use the Union 76 marks

24   or ConocoPhillips' equipment and improvements upon termination of the Franchise Agreement.

25   This is not an unfair or unanticipated result, but rather one which Houtan Petroleum explicitly

26   acknowledged and agreed to.  (Haddad Decl., Ex. A at 000063 (Addendum 1).)

27       Unable to demonstrate any true hardship, Plaintiff instead suggests that denial of

28   injunctive relief would cause Houtan Petroleum to "lose [its] only source of income," "be placed

1    out of work," lose its business and "be placed on the brink of bankruptcy." (Docket No. 3 at

2    14:26-28.) Plaintiff submits no competent evidence to support these false assertions. In truth,

3    Houtan Petroleum is "currently operating 9 different gasoline service stations." (Haddad Decl., ¶

4    21). Moreover, termination of the Franchise Agreement does not require that Houtan Petroleum

5    shut down the Station, because ConocoPhillips will stipulate to leave the equipment and

6    improvements in place pending the litigation. It need only continue to purchase fuel from

7    sources other than ConocoPhillips (as Houtan Petroleum seamlessly did prior to entry of the

8    Court's temporary restraining order). There is thus no basis on which to accept Plaintiff's

9    demonstrably false cries of imminent insolvency.

10         ConocoPhillips, on the other hand would face substantial hardship if the requested

11   preliminary injunction were granted. It would be obliged to continue supplying a franchisee

12   without that has already breached the Franchise Agreement and the law by using the Union 76

13   Marks to sell fuel obtained from other sources. Perhaps more significantly, it would be forced to

14   leave its fuel storage and dispensation system at a station site over which it has no control (as it

15   is no longer party to the underlying property lease) and has no right of entry. Given the

16   significant and complicated environmental protection issues associated with any service station,

17   it would be extremely inequitable to force ConocoPhillips to face such risk with no ability to

18   supervise or ensure prudent station practices and compliance with applicable regulations.

19   Plaintiff's desire to gain leverage in its price negotiation with ConocoPhillips could never justify

20   subjecting ConocoPhillips to such risks.

21        **C.    Under the PMPA, ConocoPhillips is entitled to immediate return of the Union 76 Marks and other property.**

22

23             **1.    The Court should order Houtan Petroleum to immediately cease using, and return to ConocoPhillips, the Union 76 Marks.**

24        As shown, ConcocoPhillips has properly terminated the Franchise Agreement in

25   accordance with its terms and the provisions of the PMPA. As a matter of law, therefore,

26   Houtan Petroleum must immediately cease using, and return to ConcocoPhillips, all trademarks,

27

28

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   trade dress, and other property owned by the franchisor.[7]  Indeed, where a franchisee seeks, but

2   is denied, injunctive relief forestalling termination, the franchisor is entitled to automatic

3   repossession of the station premises.  *Persaud v. Exxon Corp.*, 867 F. Supp. 128, 141 (E.D.N.Y.

4   1994); *Maintanis v. Shell Oil Co.*, Bus. Franchise Guide (CCH) ¶ 8160 (D. Mass. 1984).  In

5   *Maintanis*, the Court found "[c]learly, Congress intended to allow franchisees who meet the

6   [more lenient PMPA] statutory standard to remain in possession pending litigation, but the fact

7   that it carefully delineated such a standard implies that franchisees not meeting the standard are

8   not so protected."  *Id.* at p. 14, 390.  Thus, the Court granted the franchisor's motion for

9   preliminary repossession.  *Id.*; *see also Loomis v. Gulf Oil Corp.*, 567 F.Supp. 591, 597 (M.D.

10  Fla. 1983) (franchisor entitled to repossess station without establishing elements of preliminary

11  injunction and on less than 90 days notice).

12          As the Franchise Agreement has terminated, Houtan Petroleum has no further

13  right to use ConocoPhillips' property or the Union 76 Marks.  As noted, ConocoPhillips remains

14  willing to leave all other equipment and improvements in place for the time being.  We

15  respectfully submit, however, that the Court should order Houtan Petroleum forthwith to comply

16  with the PMPA and the Franchise Agreement and cease using the Union 76 Marks.

17          **2.    Houtan Petroleum's willful infringement of the Union 76 Marks
                     independently justifies termination of the Franchise Agreement.**
18

19          Under the PMPA and the express terms of the Franchise Agreement, Houtan

20  Petroleum was obligated to cease using and displaying the Union 76 Marks immediately upon

21  termination of the Franchise Agreement.  Houtan Petroleum failed to take down and return the

22  Union 76 Marks.  (Pellegrino Decl., ¶¶ 7-8.)  Houtan Petroleum thereafter purchased and resold

23  non-ConocoPhillips gasoline, using the Union 76 Marks, in violation of the Franchise

24  Agreement, even after ConocoPhillips reminded Houtan Petroleum that to do so would violate

25  the Franchise Agreement and the PMPA (not to mention federal trademark law).[8]  (Rollins Decl.,

---

26  [7] The Franchise Agreement likewise imposes such a requirement.  (Haddad Decl., Ex. A at ¶
        10(d).)
27

28  [8] Houtan Petroleum will undoubtedly argue that it was entitled to sell non-ConocoPhillips fuel
        because it posted small signs disclosing its fuel was not obtained from ConocoPhillips pursuant

1    Ex. A; Pellegrino Decl., ¶¶ 7-8; Friedenberg Decl., Exs. A, B.)

2          This all preceded by several days Houtan Petroleum's commencement of this

3    litigation. Such self-help demonstrates a lawlessness that bars entry into a Court of equity. *See,*

4    *e.g., Shell Oil Co. v. Gross*, 1986 WL 8957, *2 (N.D. Ill. 1986). If Houtan Petroleum truly

5    believed it had a right to continue using the Union 76 Marks pending litigation of its PMPA

6    claim, its only permissible remedy was to seek immediate preliminary injunctive relief. *Id.*

7    Pending such a provisional order, however, Houtan Petroleum had no right to continue using the

8    Union 76 Marks.  Moreover, the Court's later entry of a temporary restraining order (based on

9    the misleading ex parte application submitted) permitting such use does not operate retroactively

10   to endorse such conduct.  Rather, Houtan Petroleum's continued use of the Union 76 Marks after

11   termination and before entry of the temporary restraining order was a willful violation of the

12   Franchise Agreement, the PMPA and the Lanham Act.

13         Such willful misbranding alone warrants immediate termination of the Franchise

14   Agreement. *See, Shell Oil Co. v. Gross*, 1986 WL 8957 at 2 (citations omitted).  Thus, for this

15   independent reason, Plaintiff cannot demonstrate a sufficiently serious question on the merits to

16   show a fair ground for litigation.

17   **IV.    CONCLUSION**

18         For all the foregoing reasons, ConocoPhillips submits the Court should vacate its

19   temporary restraining order and deny Houtan Petroleum's request for entry of a preliminary

20   injunction.

21

22

23   to California Business and Professions Code, § 21140.1.  However, the Union 76 Marks
     remained on display, and were far more visible, and from a far greater distance, than Houtan
     Petroleum's disclaimers. (Pellegrino Decl., Ex. B)  The California Business and Professions
24   Code cannot displace the requirements of the PMPA or the Lanham Act.  Rather, to the extent
     Business and Professions Code § 21140.1 purports to permit a dealer to continue to use a
25   franchisor's trademarks to attract customers after the franchisee's license to do so terminated, it
     would necessarily be preempted by the Lanham Act.  *See Golden Door, Inc. v. Odisho*, 646 F.2d
26   347, 352 (9th Cir. 1980) quoting *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 858 (3rd Cir. 1975)
     ("[i]f state law would permit confusing or deceptive trademarks to operate, infringing on the
27   guarantee of exclusive use to federal trademark holders, then the state law would, under the
     Supremacy Clause, be invalid").
28

1      Dated:  November 9, 2007

2                                             GLYNN & FINLEY, LLP

3                                             CLEMENT L. GLYNN
ADAM FRIEDENBERG
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA  94596

By _____
Attorneys for Defendant
ConocoPhillips Company

- 19 -

CONOCOPHILLIPS' RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION