GLYNN & FINLEY, LLP
CLEMENT L. GLYNN, Bar No. 57117
ADAM FRIEDENBERG, Bar No. 205778
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
Telephone: (925) 210-2800
Facsimile: (925) 945-1975
Email: cglynn@glynnfinley.com
       afriedenberg@glynnfinley.com

Attorneys for Defendant
ConocoPhillips Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUTAN PETROLEUM, INC.,<br><br>           Plaintiff,<br><br>vs.<br><br>CONOCOPHILLIPS COMPANY, A Texas corporation and DOES 1 through 10, Inclusive,<br><br>           Defendants. | Case No. 07-CV-5627 SC<br><br>**DECLARATION OF DAN PELLEGRINO IN SUPPORT OF DEFENDANT CONOCOPHILLIPS COMPANY'S RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:  November 16, 2007<br>Time:  10:00 a.m.<br>Judge: Hon. Samuel Conti |

I, Dan Pellegrino, say:

1. I am employed by ConocoPhillips as Account Representative, South Bay Area. I have personal knowledge of facts hereinafter set forth, and if called as a witness could and would competently testify thereto.

2. I am the ConocoPhillips account representative for the service station located at 101 East El Camino Real, Mountain View, California, 94040 (the "Station"). Until October 31, 2007, at 12:00 p.m., Houtan Petroleum operated the Station as a Union 76 franchisee under a succession of franchise agreements. (ConocoPhillips owns the Union 76 brand, and all associated trademarks, trade names, trade dress, symbols and insignia.) Houtan Petroleum also operates five other Union 76 stations in California.

3. The franchise agreement that immediately preceded that at issue in this litigation was a three year agreement that expired on August 31, 2007. In early 2007, I began discussions with Houtan Petroleum's president, Ed Hadad, regarding the parties' relationship. As ConocoPhillips did not own the Station property, and its lease from the property owner was scheduled to expire on October 31, 2007, ConocoPhillips could not guarantee Houtan Petroleum that the sublease and franchise relationship could continue for another three years. In the event ConocoPhillips was unable to renew its underlying lease of the Station property, there was obviously no way it would be able to continue to sublease the Station to Houtan Petroleum. ConocoPhillips had no further right to renew or extend the underlying property lease.

4. Throughout 2007, I explained all of this to Mr. Hadad in numerous conversations during routine meetings and visits to the Station. Mr. Hadad told me that Houtan Petroleum still wanted to continue its franchise relationship with ConocoPhillips, even though Houtan Petroleum understood that such an agreement might terminate on October 31, 2007. Mr. Hadad told me that Houtan Petroleum still wanted to renew its franchise relationship with ConocoPhillips.

5. In May 2007, I personally delivered a new Union 76 Dealer Station Lease and Motor Fuel Supply Agreement (the "Franchise Agreement") to Mr. Hadad. This is the same agreement that is attached as Exhibit A to Mr. Hadad's declaration in support of Houtan Petroleum's ex parte motion.

6. On October 23, 2007, I personally delivered to Mr. Hadad an offer by ConocoPhillips to sell Houtan Petroleum all ConocoPhillips' equipment, improvements and structures at the Station (the "Bona Fide Offer"). The Bona Fide Offer is attached hereto as Exhibit A.

7. ConocoPhillips' last fuel delivery to the Station occurred on November 1. Based on the Station's historical purchase and sales volume, this shipment would have lasted less than two days. However, on November 4, 2007, I drove by the Station, and it was still operating and selling fuel. On the fuel pumps were signs indicating that the station was selling non-ConocoPhillips gasoline. However, all of the Union 76 signs and logos were still on display.

1  None had been removed. In addition, ConocoPhillips' computerized automatic tank gauges, which
2  measure fuel levels at the Station, indicate that the fuel volume at the Station increased (i.e.,
3  resulting from a fuel delivery) on November 3. ConocoPhillips did not deliver fuel to the Station
4  on November 3.

5        8.    I took photos of the station during my November 4 visit. True and correct
6  copies of these photos are attached hereto collectively as <u>Exhibit B</u>.

8        I declare under penalty of perjury, under the laws of the State of California, that the
9  foregoing is true and correct. Executed this 9th day of November, 2007, at Rio Del Mar,
10 California.

                                Dan Pellegrino

- 3 -
DECLARATION OF DAN PELLEGRINO

*EXHIBIT A*



Dick Mathews
Real Estate Manager

ConocoPhillips Company
76 Broadway
Sacramento, CA 95818
phone 916-558-7607
fax 916-558-7696

October 22, 2007

Houtan Petroleum ("DEALER")
101 E. El Camino Real
Mountain View, CA 94040

RE:  Offer to Sell Improvements at Site #255661, located at
     101 E. El Camino Real, Mountain View, California ("Station").

OFFER TO SELL IMPROVEMENTS

Dear DEALER,

By hand delivered letter on September 18, 2007, you were notified of the Notice of Termination ("Notice") of the Union 76 Dealer Station Lease and Motor Fuel Supply Agreement, with an effective date of September 1, 2007, , 2007 ("Agreement"), which Notice terminates your franchise relationship with CONOCOPHILLIPS COMPANY, a Delaware corporation ("COP") for the above referenced Station. The termination of the Agreement shall be effective at 12:00 noon on October 31, 2007 ("Termination Date").

The reason for the termination is that, despite COP's efforts to get additional tenancy at the Station you operate, the underlying ground lease between COP the third party landlord shall expire on October 31, 2007. The duration of the lease and the fact it might expire during the term of the franchise were disclosed to you. Under these facts, it would not have been reasonable for COP to furnish not less than 90 days notice.

You have informed COP on October 18, 2007 that you have obtained a lease with the third party landlord for the Station and have requested from COP a bona fide offer to purchase the improvements and equipment at the Station.

In accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq., COP offers to sell you our interest in the improvements and equipment located on the marketing premises.

This offer is conditioned upon COP being paid by certified check the sum of Three Hundred Forty Thousand Dollars ($340,000.00) for the improvements and equipment located at the Station (summarized on the attached Bill of Sale, Schedule 1, and Attachment "A" to Bill of Sale).

Please note that under the Lease, COP has only 10 days after expiration of the Lease to remove the improvements and equipment. Thus, your written notification to COP of your acceptance and/or rejection of the offer to purchase COP's interest in the improvements and equipment must be provided to COP no later than 5:00 p.m. PT on

<u>October 29, 2007</u>. COP must receive your certified check for the full purchase price no later than 12:00 noon on <u>October 31, 2007</u>. <u>Escrow Information will follow.</u>

Sincerely,

*[signature]*

R. L. (Dick) Mathews
Contractor – ConocoPhillips Real Estate Department

**Acknowledged/agreed to:**

Houtan Petroleum - Dealer

By: _____

Its: _____

Date: _____

Attachments:

Bill of Sale with Schedule 1 ("Property") and Attachment "A" to Bill of Sale.

cc:  Dan Pellegrino, Account Representative
     Phillip Bonina, Director, Real Estate
     David Nash, Contracts Administration
     Station File 255661

# BILL OF SALE
(Including Tanks)

In consideration of the covenants and agreements herein contained and in further consideration of Three Hundred Forty Thousand Dollars ($340,000.00) paid to it by Houtan Petroleum, with an address of 101 E. El Camino Real, Mountain View, California 94040 ("Buyer"), the receipt of which is hereby acknowledged, ConocoPhillips Company, successor by merger and name change to Tosco Corporation, having an office at 3611 Harbor Boulevard, Suite 200, Santa Ana, California 92704 ("Seller"), does hereby transfer and convey to Buyer all of Seller's right, title, and interest in and to the personal property described in Schedule 1 attached hereto and made a part hereof located at Site No 255661, 101 E. El Camino Real, Mountain View, CA ("Property").

TO HAVE AND TO HOLD unto Buyer and buyer's representatives, heirs, devisees, successors, and assigns forever. Buyer acknowledges that Seller is selling only such right, title, or interest in the Property as Seller may have without Seller representing or warranting the extent of Seller's right, title or interest therein. Buyer shall pay any federal, state or local sales, use or value added tax which may be due as a result of this transfer.

Buyer affirms by acceptance of this Bill of Sale that Buyer has inspected to its full satisfaction all of the Property conveyed pursuant to this Bill of Sale and has full knowledge of its condition and location. This sale is made on an "AS-IS, WHERE-IS BASIS" WITHOUT REPRESENTATION OR WARRANTY BY SELLER, EXPRESS OR IMPLIED, REGARDING THE HABITABILITY, CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR USE OR PURPOSE of the Property conveyed hereby. This sale does not include any title in, or any right to use, any advertising, trade names, trade marks, trade dress, service marks, signs, sign poles, slogans identifications, copyrights or copyrighted materials of the Seller and its affiliates, parents and subsidiaries.

Buyer acknowledges that any underground storage tanks and associated product piping systems ("USTs") included in, on or under the Property may contain explosive gases and may have been used for the storage of motor fuels containing tetraethyl, lead or other "antiknock" compounds which have made such USTs unfit for the storage of water or any other article or commodity intended for human or animal contact or consumption. Buyer expressly agrees not to use or permit the use of such USTs for such purpose.

BUYER IS WARNED THAT USTs MAY DEVELOP LEAKS AT ANY TIME AND THAT ANY LEAKAGE THEREFROM MAY CAUSE SERIOUS DAMAGE TO PERSONS AND PROPERTY WITHIN AND BEYOND THE CONFINES OF THE IMMEDIATE AREA. BUYER AGREES THAT ANY LEAK DISCOVERED AT ANY TIME HEREAFTER SHALL BE BUYER'S RESPONSIBILITY AND SHALL BE DEEMED TO HAVE OCCURRED AFTER SUCH OWNERSHIP HAS PASSED TO BUYER.

As of the Effective Date, as defined below, Buyer hereby agrees to assume and hereby waives, releases, indemnifies, defends and holds harmless Seller and its directors, officers, employees, contractors, agents, representatives successors and assigns, from and against any and all claims, demands, damages, costs and expenses, including attorneys' fees, court costs, awards, settlements, judgments, penalties, fines, liens or causes of action, at law or in equity, including without limitation actions under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. 9601, et seq., as amended, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, et seq., and any other applicable environmental laws, statutes, ordinances, rules, regulations or orders ("Laws"), arising out of or relating to the physical condition of the Property or other property abandoned thereon by Seller, or arising out or relating to the ownership or use of the Property after the date hereof.

The provisions of the Bill of Sale shall be effective as of <u>12:01 A.M on November 1, 2007</u> ("Effective Date").

IN WITNESS WHEREOF, this Bill of Sale has been duly executed by the undersigned this ___ day of _____, 2007, having first read and understood the terms contained herein and the purpose, intent and effects hereof.

DEALER:                                    ConocoPhillips Company, a Delaware
                                           corporation

By: _____                 By: _____

Name __Houtan Petroleum__                  Name ____R. L. Mathews____
                                           Contractor, ConocoPhillips Real Estate
                                           Department

WITNESSED:

By: _____                 By: _____

Name: _____                 Name: _____

## SCHEDULE 1 ("Property") at
## Site No. 255661
### 101 E. El Camino Real, Mountain View, CA

| | |
|---|---|
| Service station building (1,624 sq. ft.) | 1 |
| MPD dispensers with CRIND | 6 |
| UST's – gasoline (With associated piping for all UST's) | |
|     12,032 gallon Double Steel | 1 |
|     12,032 gallon Double Steel | 1 |
| UST – waste oil (550 gallon) | 1 |
| Canopy | 2 |
| Monument sign | 1 |
| G-Site | 1 |

Any/all moveable equipment, air compressor and hoists.

Asphalt and concrete paving, landscaping and trash enclosure.

Site No. 255661
101 E. El Camino Real, Mountain View, CA

# ATTACHMENT "A" TO BILL OF SALE

## UNDERGROUND STORAGE TANK INFORMATION
## PAGE ONE OF ONE
### EXHIBIT D
### UNDERGROUND STORAGE TANK INFORMATION
Site No. 255661

To Seller's Actual Knowledge, information about the UST's and monitoring system are as follows:

| Tank | 1 | 2 | 3 |
|---|---|---|---|
| Product | UNLEADED | PREMIUM UNLEADED | WASTE OIL |
| Approximate Capacity | 12032 | 12032 | 550 |
| Approximate Tank Install Date | 1/1/1988 | 1/1/1988 | 1/1/1988 |
| DW or SW Tank | DOUBLE | DOUBLE | DOUBLE |
| Tank Material | STEEL - FG CLAD | STEEL - FG CLAD | STEEL - FG CLAD |
| Tank Monitoring Method | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED |
| Approximate Piping Install Date | 1/1/1994 | 1/1/1994 | N/A |
| DW or SW Piping | DOUBLE | DOUBLE | N/A |
| Piping Material | FIBERGLASS | FIBERGLASS | N/A |
| Line Monitoring Method | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED | N/A |
| ATTACH ADDITIONAL PAGES IF NECESSARY | | | |

1298                            Page 1                            UST-1L

*EXHIBIT B*





Case 3:07-cv-05627-SC    Document 12    Filed 11/09/2007    Page 14 of 14

