Thomas P. Bleau, Esq., SBN 152945
Gennady L. Lebedev, Esq., SBN 179945
BLEAU / FOX, A P.L.C.
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, California 90068
Telephone   : (323) 874-8613
Facsimile   : (323) 874-1234
e-mail:   bleaushark@aol.com
e-mail:   glebedev@bleaufox.com

Attorneys for Plaintiff,
HOUTAN PETROLEUM, INC.

UNITED STATES DISTRICT COURT IN AND FOR

THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUTAN PETROLEUM, INC. <br><br> Plaintiff, <br> vs. <br><br> CONOCOPHILLIPS COMPANY, a Texas Corporation and DOES 1 through 10, Inclusive <br><br> Defendants. | CASE NO. 07-CV-5627 SC <br><br> **PLAINTIFF, HOUTAN PETROLEUM, INC.'S REPLY TO CONOCOPHILLIPS COMPANY'S RESPONSE TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

TO DEFENDANT, CONOCOPHILLIPS COMPANY AND TO ITS ATTORNEYS OF RECORD:

Plaintiff, Houtan Petroleum, Inc., hereby replies to Defendant, ConocoPhillips Company's Response to Order to Show Cause Re: Preliminary Injunction as follows.

In deciding whether to issue the Preliminary Injunction, the Court must answer the following three questions:

(1) Has ConocoPhillips has attempted to terminate Plaintiff's franchise;

(2) Do sufficiently serious questions exist going to the merits to make such questions a fair ground for litigation; and

(3) On balance, will the hardships imposed upon the franchisee, Houtan Petroleum, Inc., if such preliminary injunctive relief were not granted, be greater than the hardships imposed upon the franchisor, ConocoPhillips, by the issuance of such

preliminary injunctive relief?

If the answer to each of these questions is in the affirmative, then the Court is required to issue the preliminary injunction. 15 U.S.C. §2805(b)(2)(A)(i), (ii), (iii).

### 1. ConocoPhillips Has Attempted To Terminate Plaintiff's Franchise.

It is undisputed that the first prong of 15 U.S.C. §2805(b)(2)(A)(i) has been met, otherwise, this Application would not be necessary.

### 2. Sufficiently Serious Questions Going To The Merits Of Plaintiff's Case To Make Such Questions Fair Ground For Litigation Exist.

The second and the most important prong, has also been met in this case. As addressed in Plaintiff's Application for Temporary Restraining Order/Preliminary Injunction, a franchisor may only terminate a franchise if it complies with the express requirements for termination. In the case of a third party lease, the franchisor may terminate if (1) it furnishes notification of such termination "in the manner described in this section" and "not less than 90 days prior to the date of such termination." 15 U.S.C. §2804(a)(1), (2). Consequently, if these initial requirements are not met, the attempted termination is invalid because it fails to comply with the PMPA. As such, the franchisor must continue the franchise relationship as previously agreed pursuant to the terms of the existing franchise agreement.

ConocoPhillips does not dispute that it failed to give Plaintiff the requisite 90 days notice, but argues that it should be excused from the 90 day requirement because it "it would have been impossible for ConocoPhillips to provide 90 days' notice after commencement of the Franchise Agreement" which was executed on September 1, 2007. (ConocoPhillips' Response, p.9, ln.17-22). This argument, however, is nothing more than a "red herring" or distraction from the unavoidable conclusion that ConocoPhillips simply failed to comply with the 90 day requirement.

First, it is important to note that Houtan Petroleum has been in a continual and ongoing franchise relationship as a Union 76 franchisee for almost 10 years, since September 1997. (Haddad Decl., ¶¶ 3, 4). Consequently, Houtan Petroleum's franchise agreement was continually renewed throughout that period pursuant to the requirements of the PMPA. It was

ConocoPhillips that chose to present Plaintiff with a new franchise agreement with an expiration date of August 31, 2010, despite it's knowledge of the fact that the master lease was due to expire on October 31, 2007. After, the expiration date of Plaintiff's previous franchise agreement ConocoPhillips could have simply continued the franchise on a month to month basis, until it lost the right of possession of the master lease. Instead, ConocoPhillips unilaterally decided to present Plaintiff with a new three year franchise agreement.[1] Now, ConocoPhillips is attempting to use the new agreement as an excuse for its failure to comply with the express provisions of the PMPA.

Regardless, there is no question that ConocoPhillips was aware of the fact that the master lease was due to expire and that it was due to lose its right to grant possession, long before 90 days prior to its intended termination date and could have provided notice of termination of the franchise relationship within that time frame.

ConocoPhillips cannot hide behind the general statement in the franchise agreement itself that:

> There is a **possibility** that the term of the underlying lease to the Station **might expire** and not be renewed upon the underlying lease's expiration date. DEALER hereby acknowledges CONOCOPHILLIPS' disclosure to DEALER that this Agreement and the Station herein are subject to all the terms and conditions of an underlying lease held by CONOCOPHILLIPS in the property and premises, which underlying lease expires on **October 31, 2007** and that such underlying lease **may expire** and **may not** be renewed during the Term of this Agreement. Thereby, the DEALER is hereby on notice that this Agreement is hereby terminated on the date the underlying lease expires or on a prior date in the event CONOCOPHILLIPS' lessor terminates the underlying lease or the underlying lease otherwise requires early termination.
>
> CONOCOPHILLIPS is under no obligation to seek an extension or renewal, or exercise any renewal options it may have, of such underlying lease, but **may do so** at its discretion. (Haddad Decl., Exh. A at 000063 (original and added emphasis)).

This is hardly equivalent to the "notification of termination" that is contemplated by Section 2804 of the PMPA, partly because it fails to provide for a definitive date on which termination takes effect. Rather, it continually repeats that there is a "possibility" that the underlying lease "might" or "may" expire and "may not be renewed" and that ConocoPhillips

---

[1] Had Plaintiff refused to sign the new agreement, ConocoPhillips would have had grounds for nonrenewal of the franchise under 15 U.S.C. §2802(b)(3)(A).

"may" seek an extension or renewal or exercise options of the underlying lease "at its discretion." Rather, a definitive notice of termination was not provided to Plaintiff until after September 18, 2007. (Haddad Decl., Exh. B at 000082-83).

ConocoPhillips' reliance on two cases, *Hutchens v. Eli Roberts Oil Co.* and *Desfosses v. Wallace Energy, Inc.*, for its contention that it should be excused from the 90 day requirement is likewise of no consequence. As these cases point out, the PMPA provides for two (2) independent notice requirements. The first is found in 15 U.S.C. §2802(c)(4)(A), mandating that in the case of loss of the franchisor's right to grant possession:

> the franchisee be notified in writing, prior to the commencement of the term of the then existing franchise of the duration of the underlying lease, and of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal). 15 U.S.C. §2802(c)(4)(A)(i), (ii).

This requirement is separate and independent from the second notice requirement contained in Section 2804(a), requiring that notice of termination be at least 90 days prior to the effective date of termination.

In the instant case, the statement contained in the Addendum 1 to the franchise agreement, although satisfying the first notice requirement under Section 2802, does nothing to satisfy the second requirement under Section 2804.

The two cases relied upon by ConocoPhillips primarily deal with the notice requirement under Section 2802, rather than 2804. Moreover, at least one court has indicated that *Hutchens v. Eli Roberts Oil Co.*, 838 F.2d 1138 (11th Cir. 1988) has been superceded by the 1994 Amendment to the PMPA, which added the right of first refusal requirement and therefore "may be of questionable continued vitality." See, *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365, 1371 (D. Fla. 2000). Moreover, the *Hutchens* court did not even deal with the issue of notice under Section 2804 and solely concentrated on notice under Section 2802.[2]

---

[2] "Hutchens does not challenge Robert Oil's compliance with the notice provisions of section 2804. He argues, however, that Roberts Oil failed to meet the notice requirements of both section 2802(b)(2)(C) and section 2802(c)(4)."

Likewise, ConocoPhillips attempts to mislead this Court with its reliance on *Desfosses v. Wallace Energy, Inc.*, 836 F.2d 22 (1st Cir. 1987) for the proposition that when a notice of termination is provided at the time of entry into the franchise agreement it is sufficient to satisfy the independent 90 day requirement under Section 2804. Instead, the discussion regarding this topic in *Desfosses* pertains to the first notice requirement under Section 2802, rather than Section 2804.[3] In fact, in a separate discussion of the 90 notice requirement under Section 2804, the *Desfosses* court explained that the franchisor was excused from complying with the 90 day notice requirement for reasons that had absolutely nothing to do with the franchisee's actual knowledge or the notice that was given at the beginning of the franchise term. Rather, the reasons for excusing compliance with the 90 day requirement in *Desfosses* were solely based on the franchisor, Wallace's, reliance on the franchisee, Desfosses, to arrange financing in order to purchase the underlying property from the third party landlord and to so notify Wallace, pursuant to an existing agreement between Desfosses and Wallace. Desfosses' failure to arrange for financing and to so notify Wallace, resulted in Wallace missing the deadline to exercise the option to renew the underlying lease and its loss of right to grant possession, less than 90 days before the termination. *Desfosses v. Wallace Energy, Inc.*, 836 F.2d 22, 28 (1st Cir. 1987). Consequently, in the *Desfosses* case, the franchisor's failure to give the minimum 90 days notice of termination was caused by the franchisee's own failure to comply with its obligations under an express agreement with the franchisor on which the franchisor relied.

The situation in the present matter before this Court, however, is starkly different. In

---

*Hutchens v. Eli Roberts Oil Co.*, 838 F.2d 1138, 1141 (11th Cir. 1988).

[3] "Because, as discussed below, Wallace delivered sufficient written notice to Desfosses at the beginning of the franchise term, we need not address whether Desfosses' actual knowledge fo the relevant facts satisfies sections 2802(b)(2) and 2802(c)(4) in the absence of any writing. We do note, however, that under proper circumstances a court could hold that actual notice may suffice to terminate or nonrenew a franchise because of the loss of the underlying lease." *Desfosses v. Wallace Energy, Inc.*, 836 F.2d 22, 27 (1st Cir. 1987).

-5-
PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO OSC RE PRELIMINARY INJUNCTION

the present case, the franchisee Houtan Petroleum, did absolutely nothing to prevent ConocoPhillips' ability to provide it with the requisite 90 days notice under Section 2804. Moreover, ConocoPhillips does not allege any reliance on any actions taken by Plaintiff and admits that "[i]n the event ConocoPhillips was unable to renew its underlying lease of the Station property, **there was obviously no way** it would be able to continue to sublease the Station to Houtan Petroleum." (Pellegrino Decl., ¶3, ln. 6-8). Therefore, ConocoPhillips knew that the underlying lease was due to expire on October 31, 2007 and that it had not secured the right to grant possession beyond that date, more than 90 days prior to the franchise termination date. Consequently, there is absolutely no excuse or credible rationale that ConocoPhillips can or has put forth for its failure to comply with the 90 days notice requirement under Section 2804(a) of the PMPA, which is strictly interpreted.[4]

Additionally, both of these cases relied on by ConocoPhillips were decided after trial of all issues on their merits, rather than on a petition for preliminary injunctive relief. Consequently, this Court should preserve the status quo by issuing the Preliminary Injunction, which is mandated by the relaxed PMPA standard, as well as the traditional standard for injunctive relief under Rule 65.

Finally, as addressed in Plaintiff's Application for Temporary Restraining Order/Preliminary Injunction, although ConocoPhillips' failure to comply with the notice requirement under Section 2804 is dispositive and no further analysis is necessary to grant relief, ConocoPhillips is also required to comply with the *bona fide* offer requirement under 15 U.S.C. §§ 2804(a)(1) and 2802(b)(4)(C)(i). In light of Mr. Haddad's declaration, serious questions going to the merits of Plaintiff's case to make such questions fair ground for

---

[4] Courts construe the PMPA notice requirements strictly. *Pruitt v. New Eng. Petroleum L.P.*, 2006 U.S. Dist. LEXIS 85961 (D. Conn. 2006) (*citing, Ceraso, 326 F.3d at 314* and *Escobar v. Mobil Oil Corp.*, 678 F.2d 398, 400 n.2 (2d Cir. 1982); *see also, Davy v. Murphy Oil*, 488 F. Supp. 1013, 1016 (W.D.Mich.1980) (Failure to comply with the notice provision, even if the defect is only a minor or technical one, is grounds to enjoin the termination or nonrenewal of the franchise relationship).

litigation exist with regard to whether the $340,000 price offered by ConocoPhillips approaches fair market value. Although it is ConocoPhillips that has the "burden of going forward with the evidence"[5], the one page schedule attached as Exhibit E to the declaration of Richard Mathews is no more dispositive of the issue of fair market value than the opinion of Mr. Haddad. Thus, another ground for injunctive relief exists because there is a legitimate dispute over the purchase price itself. ConocoPhillips, unsupported contention that Houtan Petroleum initiated this action, merely to negotiate a better price for the equipment and improvements is nothing more than another attempt to distract this Court from the central issue of whether sufficient evidence exists to make the question of whether ConocoPhillips complied with its obligations under the PMPA a "fair ground for litigation."

3. **Hardships Imposed On Plaintiff Are Greater Than Those That Would Be Imposed On ConocoPhillips.**

Finally, with regard to the third prong, ConocoPhillips has failed to put forth any credible argument as to why it would suffer a greater hardship if injunctive relief does not issue. ConocoPhillips hardship argument is based on its contention that "Houtan Petroleum need only purchase ConocoPhillips' improvements or accept ConocoPhillips' offer to leave this property in place pending party negotiation or judicial determination of an appropriate purchase price." ConocoPhillips' hardship argument is essentially an argument of an alleged lack of hardship to Houtan Petroleum. However, ConocoPhillips is avoiding a very important issue. Even if Houtan Petroleum is able to continue to use ConocoPhillips equipment and improvements that remain on the property, it will still suffer irreparable harm in the form of loss of goodwill which is based on its ability to use the Union 76 trademarks. (Haddad decl., ¶¶ 15, 16, 17). It is also important to note that ConocoPhillips also contends that prior to the termination it was attempting to secure a new lease with the landlord. Consequently, it also concedes that it intended to continue the franchise relationship beyond the expiration of the

---

[5]   15 U.S.C. §2805(c); *Pruitt v. New Eng. Petroleum L.P.*, supra, (citing 15 U.S.C. § 2805(c)); *Khorenian v. Union Oil Company of California*, 761 F.2d 533, 535-536 (9th Cir. 1985);

master lease. Given ConocoPhillips' unclean hands in deliberately failing to comply with the express requirements of the PMPA, it has no credible argument for why it would suffer greater hardship than Plaintiff. Rather, given that ConocoPhillips concedes that it would be appropriate for the equipment and improvements to remain on the property during the pendency of this action and its alleged intent to continue the franchise beyond the expiration of the master lease, there is absolutely no prejudice that it could suffer by continuing the franchise relationship as well. Houtan Petroleum, would preserve its goodwill and ConocoPhillips would continue to get paid handsomely for its gasoline deliveries to the station.

Contrary to ConocoPhillips contention, a continued franchise relationship between it and Houtan Petroleum is not a "legal impossibility" as ConocoPhillips contends. Rather, it is an express requirement of the PMPA. Although it is true that the underlying lease with the third party landlord has expired, it is also true that Plaintiff is in lawful possession of the property as a result of having entered into a new lease with the same landlord. Consequently, although Plaintiff is no longer subleasing the premises from ConocoPhillips, it is still operating a Union 76 branded station and can continue to do so pursuant to its franchise agreement with ConocoPhillips. As far as ConocoPhillips' claim for a rental value of its equipment and improvements, such claim by its very nature cannot result in any irreparable harm to ConocoPhillips and can therefore be preserved for adjudication at the time of trial.

Any contractual issues that ConocoPhillips may have regarding its obligations under the underlying lease, are preempted by the PMPA. 15 U.S.C. §2806(a).

With regard to this preemption provision, the Ninth Circuit has stated:

"In enacting the PMPA, Congress attempted to provide national uniformity of petroleum franchise termination law. The purpose of uniformity would be frustrated if the PMPA was not given its preemptory intent. Accordingly, we find the PMPA preempts all inconsistent state law."

The policy of encouraging nationwide uniformity through preemption is not without consequences to franchisors and franchisees. Without this policy, both franchisors and franchisees would be free to engage in conduct and to pursue state law claims that are now foreclosed to them. By enacting a clear preemption provision, however, Congress has clearly indicated its finding that the policy behind uniformity substantially outweighs any countervailing policies underlying the availability of such conduct or

state law causes of action. Thus, franchisors and franchisees must bear the consequences of potential preemption in mind when conducting business, and must minimize the risks associated with preemption by channeling their behavior so that it conforms to the provisions of the PMPA. *Arabian v. BP America* 898 F.Supp. 703, 707 (D. Cal. 1995) (*quoting, In re Herbert*, 806 F.2d 889, 892 (9th Cir. 1986) and citing, *Millett v. Union Oil Co. of Cal.*, 24 F.3d 10, 13 (9th Cir. 1994)).

Even California courts have recognized the validity of such preemption of California law. The preemption doctrine has its roots in the supremacy clause. (U.S. Const., art. VI, cl. 2.) "When Congress expressly states in its enactment which areas of state authority are preempted, a state law will fall if (1) a direct conflict exists between the state and federal regulation such that it is impossible to comply with both laws, . . . or (2) the state regulation 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'. . ., or (3) when Congress has 'taken possession of the field' in a particular area so as to displace all state regulations regardless of whether or not they are compatible." *California Service Station etc. Assn. v. Union Oil Co.*, supra, 232 Cal.App.3d 44, 51 (1991) (citations omitted).

Furthermore, ConocoPhillips' contention that the landlord insists that ConocoPhillips must remove its equipment and improvements no later than November 10, is not supported by any evidence presented by ConocoPhillips and is contradicted by correspondence from the landlord itself.[6] In fact, the very provision in the underlying lease on which ConocoPhillips relies for its argument that it is required to remove its equipment and improvements within 10 days, does not so provide. Rather, the subject provision indicates that:

> Lessee **shall have the right** to place and maintain thereon all structures, improvements and equipment which Lessee may desire for such purposes and to remove the same and any structures, improvements or equipment heretofore or hereafter placed upon said premises by Lessee or which have been purchased or owned by Lessee, at any time during the term hereof or within ten (10) days after termination of this lease, or any extension or renewal thereof. (Haddad Decl., Exh. G at 000168, Mathews Decl., Exh. A at 9 (emphasis added)).

---

[6] "My understanding that Houtan Petroleum is in negotiations directly with ConocoPhillips over the improvements and equipment, which we have consented to. Accordingly, we can not authorize ConocoPhillips to remove the improvements and equipment absent written consent by Houtan Petroleum." (Haddad Decl., Exh. I at 000173).

Thus, although the lease provides that ConocoPhillips has the *right* to remove its equipment and improvements within ten days, it does not impose any *obligation* on it to do so within that time frame. This, combined with the landlord's consent to allow the improvements to remain on the property during the pendency of the dispute between ConocoPhillips and Houtan Petroleum, takes away any such concerns ConocoPhillips may have regarding its obligations to the landlord.

Likewise, ConocoPhillips attempt to argue that injunctive relief is not warranted because Plaintiff allegedly violated its trademark for a few days, is unfounded. Based on ConocoPhillips' own evidence, Plaintiff posted large, visible signs on all of the pumps, indicating that the gas being sold at the station "is not Conoco Phillips gasoline." (Pellegrino Decl., ¶7, Exh. B). This procedure is expressly authorized by California *Business and Professions Code* §21140.1 In any event, such allegations do nothing to address the fact that valid grounds for issuing a Preliminary Injunction exist under both the PMPA's relaxed standard and under the traditional Rule 65 standard.

**4.     Conclusion.**

Thus, based on the moving papers, a Preliminary Injunction must issue to preserve the status quo during the pendency of this action, as stated in the proposed Findings of Fact and Conclusions of Law Granting Plaintiff's Application for Preliminary Injunction and Order submitted concurrently with ths Reply.

Respectfully submitted,

Dated: November 13, 2007

BLEAU / FOX, A
Professional Law Corporation

By: _____
Thomas P. Bleau, Esq.
Gennady L. Lebedev, Esq.
Attorneys for Plaintiff,
HOUTAN PETROLEUM, INC.

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is **3575 Cahuenga Boulevard West, Suite 580, Los Angeles, California 90068.**

On **November 13, 2007**, I served the documents described as:

**PLAINTIFF, HOUTAN PETROLEUM, INC.'S REPLY TO CONOCOPHILLIPS COMPANY'S RESPONSE TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

  Clement Glynn, Esq.
  Adam Friedenberg, Esq.
  Glynn & Finley, LLP
  One Walnut Creek Center
  100 Pringle Avenue, Suite 500
  Walnut Creek, CA 94596
  Facsimile: (925) 945-1975

/X/ BY ELECTRONIC TRANSMISSION as follows: I sent such documents by e-mail to Adam Friedenberg, Esq. at **afriedenberg@glynnfinley.com.**

/X/ BY EXPRESS MAIL Via Overnight Delivery

  /X/ As follows: On such date as indicated above, I deposited such envelope with an express overnight delivery service, **California Overnight**, with delivery fees paid or provided for, addressed as indicated above.

/X/ BY FACSIMILE: I sent a copy via facsimile transmission to the telefax number(s) indicated above. No error was reported by machine. I caused the machine to print a transmission record of the transmission.

  Executed on this **13th day of November, 2007**, at Los Angeles, California.

/X/ (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                                    Gennady Lebedev

PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO OSC RE PRELIMINARY INJUNCTION