UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HOUTAN PETROLEUM, INC., ) | Case No. 07-5627 SC |
| Plaintiff, ) | |
| ) | ORDER DENYING |
| v. ) | PLAINTIFF'S MOTION |
| ) | FOR PRELIMINARY |
| CONOCOPHILLIPS COMPANY, a Texas ) | INJUNCTION |
| Corporation and DOES 1 through 10, ) | |
| Inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. INTRODUCTION

This matter comes before the Court on the Ex Parte Application for a Temporary Restraining Order and Preliminary Injunction ("Application") by the plaintiff Houtan Petroleum, Inc. ("Plaintiff" or "Houtan"). See Docket No. 3. The Court issued a Temporary Restraining Order and an Order to Show Cause regarding the preliminary injunction on November 6, 2007. See Docket No. 8 ("TRO"). The defendant ConocoPhillips Company ("Conoco" or "Defendant") then filed a Response and Plaintiff submitted a Reply. See Docket Nos. 11, 16. For the following reasons, the Court DENIES Plaintiff's Application for Preliminary Injunction.

## II. BACKGROUND

Houtan operated a Union 76 gas station ("the Station") as a

Conoco franchisee at the same location for approximately 10 years. Compl., Docket No. 1, at 1; Haddad Decl. ¶ 3.[1] Conoco did not own the Station property but instead leased it from a third-party, V.O. Limited Partners ("V.O. Limited").[2] Mathews Decl. ¶ 3.[3] Conoco owns the structures, equipment and improvements at the Station. Id.

The previous franchise agreement between Houtan and Conoco was set to expire on August 31, 2007.[4] Pellegrino Decl. ¶ 3.[5] The Master Lease between Conoco and V.O. Limited was set to expire on October 31. Id. On July 6, Houtan and Conoco executed a new franchise agreement ("the Franchise Agreement") that would begin September 1. Haddad Decl. Ex. A.[6] The Franchise Agreement was to be for a term of three years, expiring on August 31, 2010. Resp. at 3. The Franchise Agreement was executed, however, with the understanding by both Houtan and Conoco that Conoco's Master Lease for the Station property was set to expire on October 31, just two months after the new Franchise Agreement was set to begin. Resp.

---

[1] Ed Haddad is the President of Houtan. His declaration was submitted with Houtan's Application.

[2] This lease will be referred to as the Master Lease.

[3] Richard Mathews is an independent contractor for the Real Estate Department of Conoco. His declaration was submitted with Conoco's Response.

[4] Unless otherwise noted, all further dates are from 2007.

[5] Dan Pellegrino is an Account Representative for Conoco. His declaration was submitted with Conoco's Response.

[6] Although Haddad states in his declaration that the Agreement was executed on March 30, the dates contained in the actual agreement all reflect that it was executed on July 6. See Haddad Decl. Ex. A at 80.

1  at 2.  Thus, if Conoco was unable to renew the Master Lease with
2  V.O. Limited, the Franchise Agreement would terminate as Conoco
3  would lose any right to occupy or sublease the Station.
4  Pellegrino Decl. ¶ 3.  As Pellegrino stated:  "In the event
5  ConcoPhillips was unable to renew its underlying lease [the Master
6  Lease] of the Station property, there was obviously no way it
7  would be able to continue to sublease the Station to Houtan
8  Petroleum.  ConocoPhillips had no further right to renew or extend
9  the underlying property lease."  Id.
10    Not only did Conoco explain this situation to Houtan as early
11 as May, but the Agreement itself, which was executed on July 6,
12 contained express language putting Houtan on notice that Conoco's
13 inability to renew the Master Lease with V.O. Limited would
14 necessarily result in termination of the Agreement.  The Agreement
15 states, in part:

> There is a possibility that the term of
> the underlying lease [the Master Lease]
> to the Station might expire and not be
> renewed upon the underlying lease's
> expiration date.  DEALER [Houtan] hereby
> acknowledges CONOCOPHILLIPS' disclosure
> to DEALER that this Agreement and the
> Station herein are subject to all terms
> and conditions of an underlying lease
> held by CONOCOPHILLIPS in the property
> and premises, which underlying lease
> expires on **October 31, 2007** and that such
> underlying lease may expire and may not
> be renewed during the Term of this
> Agreement.  Thereby, the DEALER [Houtan]
> is hereby on notice that this Agreement
> is hereby terminated on the date the
> underlying lease expires  . . . .

26 Haddad Decl., Ex. A at 63 (emphasis in original).  Houtan
27 acknowledged this language in the Agreement by placing initials

3

immediately following the above-cited language. See id. In addition, Conoco, on several occasions, verbally advised Houtan of the ramifications of nonrenewal of the Master Lease. See Pellegrino Decl. ¶ 4 (stating "Throughout 2007, I explained all of this to Mr. Hadad [sic] in numerous conversations during routine meetings and visits to the Station. Mr. Hadad [sic] told me that Houtan Petroleum still wanted to continue its franchise relationship with Conoco . . . ."). With this understanding, the parties executed the Franchise Agreement on July 6. Haddad Decl., Ex. A at 80.

The Master Lease between Conoco and V.O. Limited for the Station property was initially for a 25 year term, beginning March 1, 1966, and expiring February 28, 1991. Mathews Decl. ¶ 4. A subsequent modification extended the expiration date to October 31, 2002, and granted Conoco an option for an additional five year term. Id. Conoco exercised that option and the Master Lease expired October 31, 2007. Id. Conoco has submitted evidence indicating that it made several attempts to renew or extend the Master Lease beyond the October 31 date. Id. ¶ 5. According to a sworn declaration submitted by Conoco, V.O. Limited never provided a substantive response to Conoco's request to extend the Master Lease and V.O. Limited eventually stopped responding to Conoco's communications. Id. On September 17, Conoco advised V.O. Limited that if V.O. did not respond by September 21 to Conoco's request to extend the Master Lease, Conoco would consider such silence a rejection. Id. V.O. Limited did not respond to this letter. Id.

4

On September 18, Conoco informed Houtan in writing that it would be terminating the Franchise Agreement effective October 31. Haddad Decl., Ex. B. The letter stated that the reason Conoco was terminating the Franchise Agreement was because of Conoco's inability to renew the Master Lease with V.O. Limited. Id. On October 16, Houtan entered into an agreement with V.O. Limited to lease the Station property beginning November 1, the day after Conoco's Master Lease ended. Haddad Decl. ¶ 8. On October 18, Houtan sent Conoco a letter indicating that Houtan had entered into a lease agreement with V.O. Limited for the Station property. Id. ¶ 9; Ex. C, Ex. D. In the same letter Houtan demanded that Conoco sell its improvements and equipment on the Station property to Houtan. Id.

On October 22, Conoco sent a letter to Houtan stating that Conoco would sell the improvements and equipment to Houtan for $340,000 if the offer was accepted by October 29, and if Houtan paid the full amount by certified check by October 31. Haddad Decl., Ex. E. Houtan refused to make this payment, believing it to be in excess of fair market value. Haddad Decl. ¶ 21.

On October 31, Conoco sent bulldozers to the premises to begin removal of its equipment and improvements. Id. ¶ 12. Houtan refused to permit Conoco to enter the premises and Conoco subsequently cut off fuel to the Station. Id. ¶ 15. Houtan was able to obtain a fuel supply from another supplier. Pellegrino Decl. ¶ 7.

On November 5 Houtan filed a Complaint in this Court seeking

5

damages, injunctive relief, equitable relief and declaratory relief pursuant to the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, et seq. On the same day Houtan filed an Ex Parte Motion for a Temporary Restraining Order and Application for Preliminary Injunction. On November 6 the Court granted the Temporary Restraining Order and enjoined Conoco from taking further action to interfere with Houtan's immediate assumption of control of the Station. See TRO. The TRO prevented Conoco from removing any equipment or improvements and compelled Conoco to resume its franchise relationship with Houtan by supplying fuel and processing credit card sales from the Station. Id.

The Court now addresses whether to issue a preliminary injunction. For the following reasons, the Court finds that a preliminary injunction is not "necessary to remedy the effects of any failure to comply with the requirements of section 2802 or 2803 . . . ." 15 U.S.C. § 2805(b).

### III. DISCUSSION

#### A. Legal Standard

"The PMPA is intended to protect gas station franchise owners from arbitrary termination or nonrenewal of their franchises with large oil corporations and gasoline distributors . . . ." DuFresne's Auto Serv., Inc. v. Shell Oil Co., 992 F.2d 920, 925 (9th Cir. 1993). The PMPA states that if "a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the franchisor may maintain a civil action against such franchisor." 15 U.S.C. § 2805. The PMPA also provides for

6

preliminary injunctions, stating:

> [T]he court shall grant a preliminary injunction if (A) the franchisee shows: (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

Id. "The franchisee bears 'the burden of proving the termination of the franchise . . . .' The franchisor then bears 'the burden of going forward with evidence to establish as an affirmative defense that such termination . . . was permitted under section 2802(b) or 2803.'" BP W. Coast Prods. LLC v. May, 447 F.3d 658, 663 n.1 (9th Cir. 2006) (citing 15 U.S.C. § 2805(c)).

**B.   Analysis**

**1.   Termination of Franchise Agreement**

Both parties concede that the Franchise Agreement was terminated on October 31.

**2.   Sufficiently Serious Questions Going to the Merits**

Houtan alleges that Conoco violated PMPA in three respects: (1) terminating the Franchise Agreement without good faith or in the normal course of business, as required by § 2802; (2) failing to give 90 days notice before terminating the franchise, as required by § 2804(a)(2); and (3) failing to make a bona fide offer to sell the equipment and improvements of the Station to

7

Houtan, as required by § 2802(c)(4)(C)(i). The Court addresses the merits of each claim in turn.

### a. Termination of Agreement

Houtan alleges that Conoco has "wrongfully terminated the Plaintiff's Franchise Agreement and that said termination was not made in good faith and/or in the normal course of business." Compl. ¶ 27. "Section 2802(b)(2) of the PMPA provides several permissible grounds for termination or nonrenewal of a franchise." Hifai v. Shell Oil Co., 704 F.2d 1425, 1428 (9th Cir. 1983). Specifically, § 2802 states that "the following are grounds for termination of a franchise or nonrenewal of a franchise: . . .(C) [t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable . . . ." 15 U.S.C. § 2802(b)(2)(C). "Section 2802(c)(4) provides that the term 'event' as used in section 2802(b)(2)(C) includes 'loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease.'" Hifai, 704 F.2d at 1428 (citing 15 U.S.C. § 2802(c)(4)).

Under the evidence submitted by the parties, the Court cannot conclude that Conoco's termination of the Franchise Agreement was not in good faith. To the contrary, Conoco terminated the Franchise Agreement based on the fact that Conoco was unable to renew the Master Lease with V.O. Limited for the Station property. As § 2802 states, "loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease," is grounds for termination of a franchise.

8

1  15 U.S.C. § 2802.

2  Nonetheless, a franchisor must adhere to certain statutory
3  requirements in terminating a franchise agreement based on the
4  loss of the underlying lease for the land.  "A franchisor can rely
5  on section 2802(c)(4) to justify nonrenewal only if:

> [T]he franchisee was notified in writing, prior to the commencement of the term of the then existing franchise-
> (A) of the duration of the underlying lease, and
> (B) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of the term (in case of nonrenewal)."

Hutchens v. Eli Roberts Oil Co., 838 F.2d 1138, 1142-43 (11th Cir. 1988) (citing 15 U.S.C. § 2802(c)(4)).

In the present case, Conoco has satisfied both of these requirements.  As noted above, the Franchise Agreement signed by both parties on July 6 contains the following language:

> There is a possibility that the term of the underlying lease [the Master Lease] to the Station might expire and not be renewed upon the underlying lease's expiration date.  DEALER [Houtan] hereby acknowledges CONOCOPHILLIPS' disclosure to DEALER that this Agreement and the Station herein are subject to all terms and conditions of an underlying lease held by CONOCOPHILLIPS in the property and premises, which underlying lease expires on **October 31, 2007** and that such underlying lease may expire and may not be renewed during the Term of this Agreement.  Thereby, the DEALER [Houtan] is hereby on notice that this Agreement is hereby terminated on the date the underlying lease expires . . . .

Haddad Decl., Ex. A at 63 (emphasis in original).

9

1    In addition, Conoco has submitted evidence indicating that it
2 repeatedly attempted to renew the Master Lease with V.O. Limited.
3 See Mathews Decl. ¶ 5.  Furthermore, as Conoco was attempting to
4 renew the Master Lease, Houtan was in contact with V.O. Limited
5 and eventually negotiated a direct lease for the Station property.
6 The Franchise Agreement provided a single monthly rent for
7 Houtan's use of the Station property, the Union 76 trademarks and
8 the equipment and improvements.  Haddad Decl. Ex. A.  Considering
9 that the Franchise Agreement between Houtan and Conoco was
10 premised on Conoco's Master Lease with V.O. Limited, Houtan could
11 reasonably have expected that by negotiating directly with V.O.
12 Limited to take over the Master Lease, the Franchise Agreement
13 with Conoco would be terminated.  For the foregoing reasons, the
14 Court finds that there are not sufficiently serious questions
15 going to the merits of Houtan's claim that termination of the
16 Agreement was not made in good faith such that a preliminary
17 injunction is warranted.

18         **b.   90-Day Notice of Termination Under § 2804(a)**

19    Houtan asserts that the notice provided by Conoco was
20 defective under § 2804(a).  Section 2804(a) states, in part:

> Prior to termination of any franchise or
> nonrenewal of any franchise relationship,
> the franchisor shall furnish notification
> of such termination or nonrenewal to the
> franchisee . . . not less than 90 days
> prior to the date on which such
> termination or nonrenewal takes effect.

25 15 U.S.C. § 2804(a).

26    Houtan argues that because Conoco informed Houtan in writing
27 on September 18 that it would be terminating the franchise

10

Agreement on October 31, Conoco failed to provide the requisite 90-day notice of termination. This argument ignores the fact that Houtan was on notice as early as July 6 that the Franchise Agreement would be terminated in the event that Conoco was unable to secure a renewal of the Master Lease. Houtan executed the renewed Franchise Agreement on July 6, and, as detailed above, the Agreement contained express language indicating that Conoco's inability to renew the Master Lease would necessarily require termination of the Franchise Agreement. The Court therefore finds that there are not sufficiently serious questions going to the merits of Houtan's claim that Conoco failed to give 90 days notice of termination such that a preliminary injunction would be warranted.

In the alternative, Conoco also argues that even if the notice did not comply with the 90 day notice requirement of § 2804(a), the notice was in compliance with § 2804(b) and was therefore permissible. Section 2804(b) provides:

> In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination . . . takes effect, as required by subsection (a)(2) of this section, such franchisor shall furnish notification to the franchisee . . . on the earliest date . . . such notification is reasonably practicable.

15 U.S.C. § 2804(b)(1).

In the present case, Conoco was unable to renew the Master Lease. On September 18 Conoco sent notice to Houtan indicating that the Franchise Agreement would not be renewed. This qualifies as "the earliest date on which furnishing of such notification is

11

reasonably practicable." Id. Thus, even if Conoco's notice was not within the 90 day statutory period, it very likely was within the alternative statutory period of § 2804(b)(1).

Finally, the Court's finding that there is not a sufficiently serious question going to the merits of Houtan's notice claim is supported by the decisions of other courts. See, e.g., Harara v. ConocoPhillips Co., 377 F. Supp. 2d 779, 792 (N.D. Cal. April 29, 2005) (finding that "defendant was justified in terminating the franchise with ten days notice"); Murphy Oil USA, Inc. v. Brooks Hauser, 820 F. Supp. 447, 443 (D. Minn. 1993) (stating "14 days notice of termination is not an unreasonable amount of time" given that plaintiff had failed to pay for gasoline and rent); Smoot v. Mobil Oil Corp., 722 F. Supp. 849, 855 (D. Mass. 1989) (holding that four weeks was reasonable notice for termination).

For these reasons, the Court finds that there are not sufficiently serious questions going to the merits of Houtan's claim that Conoco failed to give the requisite notice of termination.

### c. Bona Fide Offer Under § 2802(c)(4)(C)(i)

The heart of Houtan's Complaint is that Conoco did not make a bona fide offer to sell Conoco's equipment and improvements on the Station property to Houtan. "When a franchisor decides for legitimate business reasons not to renew a franchise relationship, the franchisor must give the franchisee a bona fide offer to purchase the station." Ellis v. Mobil Oil, 969 F.2d 784, 788 (9th Cir. 1992). This is premised on § 2802, which states:

> In a situation in which the franchisee

12

>       acquires possession of the leased
>       marketing premises, . . . the franchisor
>       (if so requested) . . . [shall make] a
>       bona fide offer to sell, transfer, or
>       assign to the franchisee the interest of
>       the franchisor in any improvements or
>       equipment located on the premises . . . .

15 U.S.C. § 2802(c)(4)(C)(i).

In the present case, it is undisputed that Conoco made an offer to sell the equipment and improvements of the Station to Houtan. Houtan instead argues that the offer was not bona fide because the price that Conoco asked was too high and because Houtan was given only 7 days to accept the offer and only 9 days to make full payment.

### i.  Price

"It is settled law that a bona fide offer under PMPA is measured by an objective market standard." Ellis, 969 F.2d at 787. "To be objectively reasonable, an offer must approach fair market value." Id. (internal quotation marks and alterations omitted). Nonetheless, "Congress' decision not actually to use the term 'fair market value' but instead the term bona fide . . . suggests some degree of deference." Slatky v. Amoco Oil Co., 830 F.2d 476, 485 (9th Cir. 1987). Thus, in deciding "what manner courts should scrutinize the distributor's offer to determine whether it complies with the requirement . . . [Congress's] choice indicates . . . a recognition that the word 'value' almost always involves a conjecture, a guess, a prediction, a prophesy." Id. (internal quotation marks and citations omitted). Accordingly, "[t]he facts of each case will set the terms of what constitutes a bona fide offer." Ellis, 969 F.2d at 788.

13

In the present case, Conoco has offered to sell its equipment and improvements to Houtan for $340,000. Haddad Decl., Ex. E. This price was based on an independent, third-party appraisal prepared by a licensed appraiser. Mathews Decl. ¶ 7; Ex. E. Houtan claims that this amount vastly exceeds fair market value and argues instead that the equipment and improvements are worth no more than $120,000. Haddad Decl. ¶ 22. In support of this Houtan submitted the declaration of its president, Ed Haddad.

The Court cannot conclude from the evidence before it whether the price contained in the offer by Conoco was bona fide. That said, the parties' disagreement as to the value of the equipment and improvements is not grounds for a preliminary injunction. Thus, the issue that remains in this action is whether the price contained in the offer was reasonable, and, therefore, whether the offer was bona fide. This is a factual dispute and, as such, is a question for the jury.

### ii. Time of Offer

Houtan also argues that the offer was not bona fide because the time period given by Conoco to accept the offer was unreasonably short. Conoco sent a letter on September 18 to Houtan stating that the Franchise Agreement would terminate on October 31 because of Conoco's inability to renew the Master Lease. Haddad Decl. ¶ 6; Ex. B. On October 16, Houtan entered into an agreement with V.O. Limited to lease the Station property beginning November 1. Id. ¶ 8; Ex. C. On October 18, Houtan sent Conoco a letter indicating that Houtan had entered into this lease agreement and demanding that Conoco sell its improvements and

14

equipment on the Station property to Houtan. Id. ¶ 9; Ex. C, Ex. D.

According to these facts, Houtan had notice on September 18 that the Franchise Agreement would not be renewed but waited until October 18 to demand an offer for the equipment and improvements.[7] Although unclear, it appears that Houtan waited these 30 days because Houtan was negotiating with V.O. Limited to assume the Master Lease of the Station property. Thus, the fact that Houtan had only 7 days to accept Conoco's offer is, in part, Houtan's doing.[8]

In addition, Conoco had compelling reasons why it needed to complete the sale of the equipment and improvements before November 1. The Master Lease Conoco has with V.O. Limited was set to expire October 31. In the event that Houtan did not buy the equipment and improvements, Conoco wanted the opportunity to remove its improvements and equipment from the Station before the Master Lease expired.

For these reasons the Court finds that, under the circumstances of the case, the time of the offer does not give rise to sufficiently serious questions going to the merits of

---

[7] Section 2802 states that the franchisor must make a bona fide offer only "if requested in writing by the franchisee . . . ." 15 U.S.C. § 2804(c)(4)(C). Section 2802 also states that this request by franchisee must be made "not later than 30 days after notification was given . . . ." Id. In the present case, the request was made exactly 30 days after the September 18 letter.

[8] On October 22, Conoco sent a letter to Houtan stating that Conoco would sell the improvements and equipment if the offer was accepted by October 29, and paid in full by October 31. Haddad Decl. Ex. E.

15

Houtan's claim that Conoco failed to make a bona fide offer such that a preliminary injunction would be warranted.

The Court emphasizes that in reaching these conclusions regarding the offer, the Court does not hold that the offer was necessarily reasonable. Instead, the Court finds that the issue of the offer is not, by itself, sufficient justification for a preliminary injunction. This is especially true given that Conoco has stipulated to leaving in place its equipment and improvements pending the outcome of this action and pending Houtan's and V.O. Limited's agreement to several issues, including an appropriate interim rental payment, allocation of responsibility for environmental compliance and an appropriate manner and time for removal in the event Houtan ultimately decides not to purchase the equipment and improvements.[9]

### 3. Balance of Hardships

The final factor in the determination of whether a preliminary injunction should issue requires the Court to balance the hardships to each party. Section 2805 states:

> [T]he court shall grant a preliminary injunction if . . . the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)(2).

---

[9] Under the Master Lease Conoco had 10 days after termination of the lease to remove its equipment and improvements. Mathews Decl. ¶ 8.

16

In the present case Houtan knew as early as July 6 that the Franchise Agreement would end on October 31 if Conoco were unable to renew the Master Lease. On September 18 Houtan received confirmation that Conoco was unable to renew the Master Lease. On October 16 Houtan entered into a lease agreement for the Station property with V.O. Limited.

The Franchise Agreement, while providing Houtan with a limited license to use Union 76 trademarks, was primarily a sublease of the Station property by Conoco to Houtan. Because the Master Lease expired, Conoco has no ability to continue to sublease the property to Houtan. To the contrary, Houtan has negotiated with V.O. Limited to take over this lease. Therefore, there is no dispute that the Franchise Agreement between Houtan and Conoco had terminated, for there was no way that Conoco could still perform under the Franchise Agreement in the absence of the Master Lease.

Given these facts, it is difficult to see how the hardships imposed upon Conoco by the issuance of the preliminary injunction will be less than the hardship imposed upon Houtan if the preliminary injunction were not granted. The Franchise Agreement provided a single monthly payment for Houtan's use of the Station property, the Union 76 trademarks and the equipment and improvements. Haddad Decl., Ex. A. Houtan is now essentially asking the Court to create a new franchise agreement that is identical to the Franchise Agreement at issue save for the fact that Houtan, rather than Conoco, controls the lease to the Station property. The Court is unwilling to do this. The termination of

17

the Master Lease was a valid reason for the termination of the Franchise Agreement. See 15 U.S.C. § 2802(c)(4) (stating "termination of the franchise . . . is reasonable . . . [due to] loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease . . .").

Houtan has not presented compelling evidence that it will face substantial hardships without the preliminary injunction. After the Franchise Agreement terminated but before the Court issued the temporary restraining order, Houtan was able to purchase fuel from another supplier and was able to continue operating the Station. Furthermore, because Conoco has agreed to leave its equipment and improvements in place pending party negotiation or judicial determination of an appropriate purchase price, Houtan will be able to continue operating the Station. The primary hardship to Houtan will be the requirement that it stop operating the station as a Union 76 station, as the Union 76 trademarks were licensed to Houtan by Conoco pursuant to the Franchise Agreement and, as noted above, both parties agree that this agreement terminated on October 31.

Conoco, on the other hand, would suffer some hardship. Conoco would be forced to leave its fuel storage and dispensation system at a station site over which it has no control and no right of entry. In light of the environmental issues associated with a gas station, Conoco would be exposed to risks if it were unable to supervise or ensure prudent station practices and compliance with applicable regulations. Accordingly, the Court cannot conclude

18

that, on balance, the hardships imposed upon Conoco by the issuance of a preliminary injunction will be less than the hardship which would be imposed upon Houtan if the preliminary injunction were not granted.

Because the Court finds that a preliminary injunction is not necessary under the more permissive standard of the PMPA, it need not reach the issue of whether a preliminary injunction would be appropriate under Federal Rule of Civil Procedure 65, which requires a more substantial showing. See Dollar Rent A Car of Wash., Inc. v. Travelers Indem., 774 F.2d 1371, 1374 (9th Cir. 1985) (stating that the granting of a preliminary injunction is discretionary, compared with the mandatory language of § 2805, and that a showing of irreparable injury is an essential prerequisite); see also Khorenian v. Union Oil Co. of Cal., 761 F.2d 533, 535 (9th Cir. 1985) (stating that the "test for the issuance of a preliminary injunction under the PMPA is more liberal than that in the general run of cases").

### 4.  Houtan's Use of Union 76 Trademarks

The Franchise Agreement states, in part:

> Upon expiration, termination, nonrenewal or cancellation of this Agreement, for any reason, DEALER shall immediately cease and discontinue the use of said Union 76 Marks . . . .

Haddad Decl., Ex. A at 20. By these terms, Houtan is no longer entitled to use the Union 76 trademarks.[10]

---

[10] The Court notes that Conoco has not filed a motion for an injunction prohibiting Houtan from using the Union 76 trademarks. The Court, therefore, is not presented with an opportunity to rule on this issue.

19

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Application for a Preliminary Injunction is DENIED and the Temporary Restraining Order issued by the Court on November 6, 2007, is TERMINATED.

IT IS SO ORDERED.

Dated: November 16, 2007

UNITED STATES DISTRICT JUDGE