1   GLYNN & FINLEY, LLP
    CLEMENT L. GLYNN, Bar No. 57117
2   ADAM FRIEDENBERG, Bar No. 205778
    One Walnut Creek Center
3   100 Pringle Avenue, Suite 500
    Walnut Creek, CA 94596
4   Telephone: (925) 210-2800
    Facsimile: (925) 945-1975
5   Email: cglynn@glynnfinley.com
           afriedenberg@glynnfinley.com
6
    Attorneys for Defendant
7   ConocoPhillips Company

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12   HOUTAN PETROLEUM, INC.,            )   Case No. 07-CV-5627 SC
                                        )
13              Plaintiff,              )   **DECLARATION OF RICHARD L.**
                                        )   **MATHEWS IN SUPPORT OF**
14        vs.                           )   **DEFENDANT CONOCOPHILLIPS**
                                        )   **COMPANY'S RESPONSE TO ORDER**
15   CONOCOPHILLIPS COMPANY, A Texas    )   **TO SHOW CAUSE RE PRELIMINARY**
     corporation and DOES 1 through 10, )   **INJUNCTION**
16   Inclusive,                         )
                                        )   **Date:**   **November 16, 2007**
17              Defendants.             )   **Time:**   **10:00 a.m.**
                                        )   **Judge:**  **Hon. Samuel Conti**
18

19        I, Richard L. Mathews, say:

20        1.    I am an independent contractor for the Real Estate Department of

21   ConocoPhillips Company ("ConocoPhillips"). I have personal knowledge of the facts hereinafter

22   set forth, and if called as a witness could and would competently testify thereto.

23        2.    Among my responsibilities is the administration of ConocoPhillips real

24   estate transactions. Accordingly, I was responsible for real estate matters involving the Union 76

25   station operated by Houtan Petroleum at 101 East El Camino Real in Mountain View, California

26   (the "Station").

27        3.    ConocoPhillips owns the structures, equipment and improvements at the

28   Station. However, ConocoPhillips does not own the real property on which the Station lies.

---

                              - 1 -
                DECLARATION OF RICHARD L. MATHEWS

1   ConocoPhillips' predecessor in interest formerly leased the property from a third-party pursuant to

2   a written lease agreement (the "Ground Lease"). A true and correct copy of the Ground Lease is

3   attached hereto as Exhibit A. My understanding is that V.O. Limited Partners ("V.O. Limited")

4   subsequently acquired all rights and interest held by the original landlord.

5          4.    The Ground Lease was for a 25 year term, commencing on March 1, 1966,

6   and expiring on February 28, 1991. (Ex. A at ¶ 2.) A subsequent modification extended the

7   expiration date to October 31, 2002, and granted ConocoPhillips an option for one additional five

8   year term. A true and correct copy of that Modification is attached hereto as Exhibit B.

9   ConocoPhillips exercised that option, and the Ground Lease expired on October 31, 2007.

10         5.    My understanding is that Houtan Petroleum wished to continue to operate

11  the Station as a ConocoPhillips franchisee after October 31, 2007. Accordingly, as early as 2004,

12  and throughout 2007, I attempted to engage V.O. Limited in discussions regarding an extension or

13  renewal of the Ground Lease. V.O. Limited never provided a substantive response to

14  ConocoPhillips' request to extend the Ground Lease. Eventually, it ceased responding to my

15  communications entirely.

16         6.    Accordingly, on September 17, 2007, I wrote V.O. Limited and advised that

17  if V.O. Limited did not respond by September 21, 2007, to ConocoPhillips' request to extend the

18  Ground Lease, ConocoPhillips would consider such silence a rejection. A true and correct copy of

19  my September 17, 2007 letter to V.O. Limited is attached hereto as Exhibit C. V.O. Limited never

20  responded to my September 17 letter.

21         7.    Although Mr. Hadad sent ConocoPhillips a letter dated October 18, 2007,

22  advising for the first time that Houtan Petroleum had leased the Station property directly from V.O.

23  Limited, Houtan Petroleum did not send ConocoPhillips a copy of the lease agreement or any

24  written verification from V.O. Limited confirming the existence of such an agreement.

25  Nevertheless, on October 22, 2007, ConocoPhillips made a written offer to sell all such structures,

26  improvements and equipment to Houtan Petroleum for $340,022.00 (the "Bona Fide Offer"). A

27  true and correct copy of the Bona Fide Offer is attached hereto as Exhibit D. The Bona Fide Offer

28  was based on an independent appraisal ConocoPhillips obtained from a licensed third-party

1   appraiser, Valuation Research Corporation.  A true and correct copy of this appraisal is attached

2   hereto as <u>Exhibit E</u>.

3           8.      Houtan Petroleum rejected the Bona Fide Offer on October 29, 2007.  By

4   this time, under the Ground Lease, ConocoPhillips had less than two weeks left to remove its

5   structures, improvements and equipment from the Station premises.  Removal was not simply a

6   matter of demolishing existing structures.  Rather, the equipment and improvements include

7   underground storage tanks, fuel dispensers, piping and other salvageable items with significant

8   reuse or resale value to ConocoPhillips.  The only reason why ConocoPhillips believed it was

9   necessary to begin removing its property was its 10 day deadline to do so.  As V.O. Limited

10   refused to respond to my correspondence and telephone calls, it was not possible to secure V.O.

11   Limited's agreement to waive or extend the 10 day deadline.

12

13         I declare under penalty of perjury, under the laws of the State of California, that the

14   foregoing is true and correct.  Executed this 9th day of November, 2007, at Sacramento, California.

15

16

17                           Richard L. Mathews

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF RICHARD L. MATHEWS

*EXHIBIT A*

SERVICE STATION SITE LEASE

THIS LEASE, made this 13th day of August, 1965, by and between

MT. VIEW SHOPPING CENTER, a limited partnership, Lessor and UNION OIL COMPANY

OF CALIFORNIA, a corporation, Lessee;

WITNESSETH:

1.  Lessor does hereby lease to Lessee all that certain real property

situate in the City of Mountain View, County of Santa Clara, State of California,

described as follows:

BEGINNING at the Westernmost corner of that certain 0.18 acre tract of
land described in the Deed to the State of California, recorded June 6,
1930 in Book 523 of Official Records, page 172, Santa Clara County
Records in the Southeasterly line of Grant Road (60 feet in width);
thence from said point of beginning South 31° 59' West along said
Southeasterly line of Grant Road, 133.01 feet; thence South 61° 34' 10"
East 170.00 feet; thence North 31° 59' East 180.00 feet to the South-
westerly line of said 0.18 acre tract of land, also being the South-
westerly line of El Camino Real (as exists 100.00 feet in width); thence
North 61° 34' 10" West along said Southwesterly line of El Camino Real
123.01 feet; thence Westerly along a cruve to the left with a radius of
50.00 feet, tangent to the preceding course, with a central angle of
86° 26' 50", and an arc distance of 75.44 feet to the point of
beginning.

EXCEPTING THEREFROM that certain tract of land described in the Deed
from Bank of America National Trust and Savings Association, and
Victor H. Owen, Jr., as co-trustees under the Will of Victor H. Owen,
Sr., deceased, to the State of California, dated January 26, 1962,
recorded April 26, 1962 in Book 5552 Official Records, page 336, Santa
Clara County Records, described as follows:

A portion of that 40.980 acre tract of land, which tract is shown upon
that certain Map entitled, "Record of Survey, Lands of Victor H. Owen Jr.,
et al, Ptn. Sec. 27, T. 6 S., R. 1 W., M.D.B. & M., Santa Clara County,
Calif.", which Map was filed for record in the office of the Recorder of
the County of Santa Clara on August 13, 1959 in Book 110 of Maps, at
page 41, more particularly described as follows:

Beginning for reference on the Southeasterly line of Grant Road at the
most Westerly corner of said tract; thence along the Northwesterly line
of said tract North 32° 54' 10" East 965.24 feet and along a tangent curve
to the right with a radius of 50.00 feet, through an angle of 2° 00' 31",
an arc length of 1.75 feet to the true point of commencement; thence
from a tangent that bears North 57° 54' 44" East along a curve to the
right, with a radius of 75.00 feet, through an angle of 50° 18' 39", an
arc length of 65.86 feet to a point of compound curvature; thence from a
tangent that bears South 71° 46' 37" East along a curve to the right with
a radius of 392.00 feet, through an angle of 11° 09' 59", an arc length of
76.40 feet to the Northeasterly line of said tract; thence along last said

BEGINNING at the Westernmost corner of that certain 0.18 acre tract of land described in the Deed to the State of California, recorded June 6, 1930 in Book 523 of Official Records, page 172, Santa Clara County Records in the Southeasterly line of Grant Road (60 feet in width); thence from said point of beginning, South 31º 59' West along said Southeasterly line of Grant Road, 133.01 feet; thence South 61º 34' 10" East 170.00 feet; thence North 31º 59' East 180.00 feet to the Southwesterly line of said 0.18 acre tract of land, also being the Southwesterly line of El Camino Real (as exists 100.00 feet in width); thence North 61º 34' 10" West along said Southwesterly line of El Camino Real 123.01 feet; thence Westerly along a curve to the left with a radius of 50.00 feet; tangent to the preceding course, with a central angle of 86º 26' 50" and an arc distance of 75.44 feet to the point of beginning.

Together with non-exclusive easements for the passage of persons and vehicles across the following described parcels:

Easement A:  Commencing at a point on a prolongation of the Northwesterly line of the above described real property that is S 31º 59' W 25 feet from the true point of beginning of said property, thence N 31º 59' E 25 feet; thence S 61º 34' 10" E 45 feet; thence in a straight line Westerly to the point of commencement.

Easement B:  Commencing at a point on a prolongation of the Northeasterly line of the above described real property that is S 61º 34' 10" E 25 feet from the Southeasterly corner of said property, thence N 61º 34' 10" W 25 feet; thence S 31º 59' W 85 feet; thence in a straight line Northeasterly to the point of commencement.

2.  TERM:  The term of this lease shall commence the 1st day of March, 1966, and end the 28th day of February, 1991, which term shall be extended as provided in paragraph 2-a of this lease.  If Lessee shall hold over after the expiration of the term or any extension thereof with Lessor's

express or implied consent, it shall be on a month to month tenancy in ac-
cordance with the terms hereof.

2-a.  It is hereby mutually agreed that the term set forth in
Paragraph 2 of this lease shall be extended for the period of time equal to
that elapsing between commencement date specified in said Paragraph 2 and the
first day of the calendar month following the date the service station to be
constructed on demised real property is completed upon said property and
Lessee first offers gasoline for sale therefrom, but in no event shall the
term as set forth in said Paragraph 2 of this lease be extended under the
provisions of this Paragraph 2-a beyond the 28th day of February, 1993.

3.  RENTAL:  Lessee agrees to pay Lessor each calendar month as rental
for said premises, commencing on the date gasoline is first sold from the
service station to be constructed on said premises, a sum equivalent to TWO
CENTS ($.02) per gallon for each gallon of Lessee's gasoline delivered at
or upon said premises, or, at Lessee's option, dispensed therefrom during
such month within the term of this lease, said rental to be paid on or
before the 20th day of the following month; provided, however, that in no
event shall such rental as so computed for any one calendar month of the
term of this lease following the date gasoline is first sold on demised
premises after completion of said service station, be less than ONE THOUSAND
FIVE HUNDRED DOLLARS ($1,500.00), except for the calendar month within which
gasoline is first sold from said completed service station and the calendar
month within which this lease expires or terminates, for which the minimum
rental shall be prorated respectively in the same ratio that the number of
days of Lessee's operation of said completed service station during such
month bears to the full calendar month.

4.  OPTION TO PURCHASE:  Lessee shall have the preferential right
to purchase said property during the term of this lease or any extension
thereof and Lessor agrees not to sell all or any portion of said property

therein the price and other terms and conditions thereof. Upon any such
notice Lessee shall have the preferential right to purchase said property
at the price and upon the terms and conditions set forth in such notice
and Lessee shall have thirty (30) days after receipt of such notice within
which to notify Lessor that Lessee elects to exercise such right and
purchase said property. In the event Lessee exercises its right to purchase
said property, Lessor agrees to promptly convey said property to Lessee
free and clear of all liens and encumbrances by good and sufficient deed,
and concurrently therewith Lessee shall pay Lessor the purchase price upon
the terms and conditions set forth in such notice. Taxes and rentals
shall be prorated as of the date title to said property is vested in Lessee.
If Lessee does not exercise its preferential right to purchase said property
in any such case, this lease shall remain in full force and effect and any
sale by Lessor to a third party shall be made subject to all the terms
and conditions of this lease.

    5. TAXES: Lessee shall pay all taxes on all personal property
and improvements of Lessee, and shall pay all ad valorem taxes on said
land and improvements and personal property, if any, of Lessor on said
land during the term of this lease; provided, however, that said ad valorem
taxes on said land and said improvements and personal property, if any,
of Lessor for the fiscal years within which the term of this lease commences
or expires or terminates, shall be prorated respectively as of the date
the term of this lease commences or expires or terminates, as the case may
be. Lessee shall have the right to contest in good faith any such taxes
and, in such event, shall indemnify and hold harmless Lessor from any cost,
expense or penalties in connection therewith. Lessor shall authorize and
instruct the assessing authority to forward to Lessee all tax bills on said
land and improvements and personal property, if any. If Lessor shall pay
any taxes agreed to be paid by Lessee, then upon presentation of a receipted

6.  POSSESSION:  Said premises shall be used for a motor vehicle service station and for such other related uses as Lessee, at its option, may determine.  Lessee shall have the right to place and maintain thereon all structures, improvements and equipment which Lessee may desire for such purposes and to remove the same and any structures, improvements or equipment heretofore or hereafter placed upon said premises by Lessee or which have been purchased or owned by Lessee, at any time during the term hereof or within ten (10) days after termination of this lease, or any extension or renewal thereof.  Lessee shall also have the right to remove trees and other vegetation from and to alter said premises and the side-walks and curbing about the same.

Lessee shall not use said premises for the storage, rental or sale of trailers or used cars; nor for performing major overhaul or repair work on automobile engines; nor shall used tires be stored or displayed for sale in the yard area outside the service station building.

7.  OPERATION:  Lessee shall conduct its business on said premises in compliance with all applicable laws, ordinances and regulations of governmental authorities.

8.  CANCELLATION:  In the event the sale of gasoline or other petroleum products be prohibited by, or the use of the premises for the conduct or operation of a service station is prevented by any law, ordinance, rule or regulation of any state or local governmental authority having jurisdiction over the premises, or if access to the demised premises, in whole or in part, be cut off, other than temporarily, resulting in a substantial interference with the ingress and egress to and from the demised premises, then Lessee shall have the right at its option, to terminate this lease at any time upon sixty (60) days' prior written notice to Lessor without any liability to Lessor therefor.  No change in traffic regulations or patterns and no installation of stop signs,

police purposes shall be deemed to affect access to premises within the meaning of this Clause 8.

9. CONDEMNATION: In the event the leased premises or any part thereof shall be taken for public purposes by condemnation as a result of any action or proceeding in eminent domain or shall be transferred in lieu of condemnation to any authority entitled to exercise the power of eminent domain, the interests of Lessor and Lessee in the award or consideration for such transfer and the effect of the taking or transfer upon this lease shall be as follows:

(a) In the event of a taking or transfer of only a part of the leased premises, leaving the remainder of said premises in such location and in such form, shape and size as to be used effectively and practicably by Lessee for the same use and purposes as prior to such taking or transfer, this lease shall terminate and end as to the portion of the premises so taken or transferred as of the date title to such portion vests in the condemning authority but shall continue in full force and effect as to the portion of the leased premises not so taken or transferred. The minimum rental provided in Clause 3 hereof shall be reduced in the same proportion that the amount of leased premises so taken or transferred bears to the entire leased premises. In such event, Lessee shall not be entitled to any award or compensation except for the taking of buildings, fixtures, equipment and improvements owned by Lessee or by reason of the relocation of the same. ~~If, in order for Lessee to use said premises, following any such taking or transfer, any building improvement, facility or equipment must be, or, in the judgment of Lessee should be relocated, Lessor agrees to relocate the same without cost or expense to Lessee.~~ At the time of executing this lease, Lessee understands that the City of

widening of Grant Road and a strip of land 10 feet in width for
the widening of El Camino Real, and Lessee agrees that the dedicat-
ion of those two strips of land for street purposes shall not
result in any reduction in the minimum rental as provided in
Clause 3 hereof.

(b)    In the event the entire leased premises are taken or so transferred,
or in the event of a taking or transfer of only a part of the leased
premises, leaving the remainder of said premises in such location or
in such form, shape or reduced size as to render the same not
effectively and practicably usable by Lessee for the same use and
purposes as prior to such taking or transfer, this lease and all
right, title and interest thereunder shall cease on the date title
to said premises or the portion thereof so taken or transferred
vests in the condemning authority.  In such event, Lessee shall not
be entitled to any award or compensation except for the taking of
buildings, fixtures, equipment and improvements owned by Lessee
or by reason of the relocation of the same.

    10.  CONSTRUCTION:

(a)  Lessor agrees to remove all structures existing on said premises
within six (6) months after the commencement of the term of this
lease; and at its sole cost and expense to install all curbs,
gutters and sidewalks abutting said demised premises, do all
necessary street grading and paving, install all utilities up to the
property line of, and rough grade, demised premises.  In the event
Lessor fails to perform said work within a period not to exceed
six (6) months after commencement of the term of this lease, Lessee
may perform said work for Lessor, Lessor hereby authorizing Lessee
to perform such work for the account of Lessor.  If Lessee performs
said work for Lessor, Lessor agrees to reimburse Lessee for the

thirty (30) days after receipt of a statement from Lessee setting forth the actual cost of completing said work. If Lessor fails to reimburse Lessee as provided herein, Lessee shall have the right, and Lessor hereby authorizes Lessee to withhold minimum rental as set forth in Clause 3 hereof and apply the same to reimburse itself for the actual cost of performing said work. Within ninety (90) days after completion thereof, Lessee shall provide Lessor with an itemized statement setting forth the actual cost of completing said work.

(b) Subject ot its ability to secure all necessary permits, Lessee agrees to commence construction of its service station on the leased premises within ninety (90) days after Lessor delivers possession of said property to Lessee cleared of all structures.

(c) Lessee agrees not to erect any building or structure within the 20' building setback area as indicated on Exhibit C attached.

(d) Lessee and Lessor agree not to erect, place or cause to be erected any fence, bumper, obstruction or dividing barrier of any kind on or near the property lines between the property demised herein and Lessor's adjacent property, except by mutual consent of Lessee and Lessor.

11. ASSIGNMENT AND SUBLETTING: Lessee shall have the privilege of subletting the entire demised premises, or any part thereof. Lessee may not assign any or all of its rights under this lease without the written consent of Lessor first had and obtained, which consent shall not be unreasonably withheld. In the event of any subletting or assigning by Lessee, Lessee shall not be released thereby from any of its rental or other liabilities hereunder, and any such sublease or assignment shall be subject to each and all of the terms and provisions of this lease.

12. EXCLUSIVE RIGHT TO SELL GASOLINE: As material consideration

itself and its successors and assigns, to Lessee and Lessee's successors
and assigns, for the benefit of the demised premises that no building,
structure or other facilities for use as a motor vehicle service station
shall be constructed, maintained or operated upon the land shown heavily
outlined on Exhibit "B" attached hereto and made a part hereof, and more
particularly described in Exhibit "C" also attached hereto and made a part
hereof, and that no motor vehicle service station business shall be con-
ducted upon and no gasoline or other petroleum products shall be dispensed
from said land described in said exhibits during the term of this lease
and any extensions thereof.  The covenants and restrictions set forth herein
shall be appurtenant to and run with said land described in said exhibits
and the demised premises and shall apply to and bind said land described
in said exhibits and shall benefit the demised premises and shall apply
to and bind Lessor and its successors and assigns and shall benefit and
inure to the benefit of Lessee and its successors and assigns.

        As a further material consideration to Lessee for the execution
of this lease Lessor agrees that in the event Lessor acquires the owner-
ship of either or both of Parcels 2 and 3 as shown on Exhibit D attached hereto and made a part hereof and
described on Exhibit B, or should Lessor otherwise control the use of
said Parcels 2 and 3, the restrictions in the preceding paragraph shall
apply also to said Parcels 2 and 3.  Lessor further agrees that if Lessor
acquires ownership of all or any part of said Parcels 2 and 3 during the
term of this lease and should re-sell that land Lessor shall record a
restriction against said land prohibiting its use for the sale of gasoline
to the public until after the expiration of the term of this lease.

        13.  NOTICE:  Any notice or notices required of or given by either
Lessor or Lessee shall be in writing delivered personally from one to the
other or by registered mail, return receipt requested, and delivered or
addressed to Lessor at 231 East Millbrae Avenue, Millbrae, California , or

other address as either party shall designate from time to time by the means herein prescribed for the giving of notice.

All of the terms and conditions hereof shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, successors or assigns of the respective parties hereto.

This lease shall not be binding upon Lessee until duly executed by it and delivered to Lessor.

IN WITNESS WHEREOF, the parties hereto have executed this instrument in quintuplicate as of the day and year first above written.

MOUNTAIN VIEW SHOPPING CENTER,
a limited partnership
By - Mountain View Properties, Inc., General Partner

By _____
President                (LESSOR)

By _____
Secretary                (LESSOR)

UNION OIL COMPANY OF CALIFORNIA

By _____
Vice President - Marketing
(LESSEE)

By _____
Assistant Secretary    (LESSEE)

F. B. Schlageter, Vice-President and Assistant Secretary of Mountain View Properties, Inc., General Partner of Mountain View Shopping Center, a Limited Partnership, hereby acknowledges delivery and receipt of document entitled "Service Station Site Lease" on September 24, 1965, at the offices of the Corporation located at 231 East Millbrae Avenue, Millbrae, California.

_____
F. B. Schlageter
Vice-President and Assistant Secretary

Witness:
_____



EXHIBIT "C" "A"



EXHIBIT "C" 

PARCEL 1:

Land situate in the City of Mountain View, County of Santa Clara, State of California, described as follows:

BEGINNING at the Westernmost corner of that certain 0.18 acre tract of land described in the Deed to the State of California, recorded June 6, 1930 in Book 523 of Official Records, page 172, Santa Clara County Records in the Southeasterly line of Grant Road (60 feet in width); thence from said point of beginning, South 31° 59' West along said Southeasterly line of Grant Road, 133.01 feet to the true point of beginning of this description; thence from said true point of beginning South 61° 34' 10" East 170.00 feet; thence North 31° 59' East 180.00 feet to the Southwesterly line of said 0.18 acre tract of land, also being the Southwesterly line of El Camino Real (as exists 100.00 feet in width); thence South 61° 34' 10" East along said South-westerly line of El Camino Real 727.71 feet to the most Northerly corner of that certain 18.045 acre tract of land described in that certain Owner's Notice of Non-responsibility, recorded May 24, 1962 in Book 5587 of Official Records at Page 530, Santa Clara County Records; thence South 31° 59' West along the Northwesterly line of said 18.045 acre tract of land 463.43 feet to the most Easterly corner of that certain 14.003 acre tract of land described in that certain Lease recorded January 25, 1950 in Book 1915 of Official Records, Page 6, Santa Clara County Records; thence North 58° 18' West along the Northeasterly line of said 14.003 acre tract of land 896 feet to the point of intersection thereof with the Southeasterly line of said Grant Road; thence North 31° 59' East along the Southeasterly line of Grant Road 232.23 feet to the true point of beginning.

PARCEL 2 on Exhibit D:

Assessors Parcels 1 and 13, in Book 195 at Page 38 of maps in the office of the County Assessor, Santa Clara County, California.

PARCEL 3 on Exhibit D:

The most northerly 463.43 feet of Assessors Parcel 17, in Book 195 at Page 38 of maps in the office of the County Assessor, Santa Clara County, California.

STATE OF CALIFORNIA    )
                       ) ss
COUNTY OF LOS ANGELES  )

On this 22nd    day of    SEPTEMBER    in the year
A. D. 19 65 before me    CAROLYN CANTRALL
a Notary Public in and for said County and State, residing therein and
duly commissioned and sworn, personally appeared    C. E. RATHBONE
known to me to be the VICE PRESIDENT    , and    E. W. CAIRNS
known to me to be the ASSISTANT SECRETARY    of UNION OIL COMPANY OF CALIFORNIA
the corporation that executed the within instrument, and known to me to be
the persons who executed the within instrument on behalf of the corporation
therein named, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my
official seal the day and year in this certificate first above written.

*Carolyn Cantrall*
Notary Public in and for said County and State

My Commission expires    APRIL 30, 1969

> CAROLYN CANTRALL
> NOTARY PUBLIC, CALIFORNIA
> PRINCIPAL OFFICE IN
> LOS ANGELES COUNTY

STATE OF CALIFORNIA,
.........County of......... San Mateo        } *ss.*
On this...22nd....day of.....September.......in the year one thousand nine hundred and.......sixty five
before me,......................Marlene A. Gallwitz..........................., a Notary Public,
State of California, duly commissioned and sworn, personally appeared.....................................
..............William D. Baker and Howard C. Alphson..........................
known to me to be the...President and Secretary, Respectively,
of the corporation described in and that executed the within instrument, and also known to me to be
the person...who executed the within instrument on behalf of the corporation therein named, and
acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal in the
.........said.......County of.....San Mateo..........the day and year in this certificate
first above written.



*EXHIBIT B*

SS-5661

## MODIFICATION OF LEASE

THIS AGREEMENT, made this 20th day of October, 1987, by and between ROJAN INVESTMENTS, INC., a Nevada corporation, Lessor, and Union Oil Company of California, dba Unocal, a California corporation, Lessee,

The parties herein recognize that ROJAN INVESTMENTS, INC. occupy said premises by virtue of an underlying lease and this document is actually a Modification of sublease. However, in this Agreement ROJAN INVESTMENTS, INC. will be designated as Lessor and Union Oil Company of California, dba Unocal will be designated as Lessee.

W I T N E S S E T H :

WHEREAS, Mountain View Shopping Center, a limited partnership, leased to Lessee by that certain Service Station Site Lease dated August 13, 1965, and short form of Lease thereof also dated August 13, 1965 and recorded in Book 7161, Page 263, Official Records of Santa Clara County, California and as modified by that certain Modification of Lease dated February 10, 1966 and Recorded May 2, 1966 in

-1-

Book 7365, Page 651 Official Records of Santa Clara County, California that certain real property in the City of Mountain View, County of Santa Clara, State of California more particularly described in Exhibit "A" attached hereto and made a part hereof.

WHEREAS, the interest of Mountain View Shopping Center in to and under said Leases was transferred by mesne assignments to ROJAN INVESTMENTS, INC. by Grant Deed recorded December 31, 1986 in Book 983, Page 1522 official records of Santa Clara County, California; and

WHEREAS, it is the mutual desire of the parties to modify said Service Station Site Lease and said short form of Lease in several respects including extending the term thereof, granting an option to extend, adjusting the monthly rental and revising the legal description therein;

NOW, THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, it is agreed that effective as of November 1, 1987 said leases shall be and the same are hereby modified and amended as follows:

1.   That the term set forth in said Lease and said short form of Lease is extended to October 31, 2002.

2.   Paragraph 3. RENTAL is revised as follows: Lessee agrees to pay Lessor each calendar month as rental the sum of THREE THOUSAND FOUR HUNDRED DOLLARS ($3,400.00)

in advance on the first day of each month of said term except for the calendar month within which the term of this Lease commences, expires or terminates, for which the monthly rental shall be prorated respectively as of the date the term of this Lease commences, expires or terminates as the case may be.

It is the intent and purpose of the parties hereto that the monthly rental of THREE THOUSAND FOUR HUNDRED DOLLARS ($3,400.00) shall throughout the term of this lease or any extension thereof provide approximately the same purchasing power as of August, 1987. For purposes of this Lease, the purchasing power of the dollar shall be determined by fluctuations in the "Consumer Price Index - For all Urban Consumers, San Francisco/Oakland/Bay Area" computed by the Bureau of Labor Statistics of the United States Department of Labor (hereinafter called the "Index").

The parties agree that the index to be used for determining rental changes shall be the index published for the month of August, 1987, computed on the basis of 1967=100 per cent.

At the times and for the periods specified below, said monthly rental to be paid by Lessee shall be increased by the same percentage as said index has increased over the month of August, 1987. For the purposes of this Lease, if,

-3-

in the future, said index shall be published on some basis
other than 1967=100 per cent, it shall be converted to the
basis of 1967=100 per cent.

Said monthly rental shall be recomputed effective
November of each year during the term and any extension of
said Lease based on said index published for the previous
August and shall be effective for the ensuing twelve (12)
month period.  Provided, however, in the event that the
aforementioned index exceeds ten percent (10%) in any
adjustment period then the monthly rental shall be adjusted
by 10%.  If said Index decreases or remains the same during
the recomputation period, said monthly rental payable during
the ensuing 12-month period shall remain the same amount as
rental paid during the preceding 12-month period.  The first
recomputation shall be made effective November, 1988.  In
the event said Index is discontinued or revised during the
term of this lease, such governmental index or computation
with which it is replaced shall be deemed the basis of
recomputation.

3.  Paragraph 13. NOTICE is revised as follows:
Any notice or notices required of or given by either Lessor
or Lessee shall be in writing delivered personally from one
to the other or by registered mail, return receipt
requested, and delivered or addressed to Lessor at ROJAN

-4-

INVESTMENT, INC., 20431 Stevens Creek Blvd., Suite 210,
Cupertino, California 95014, or to Lessee at Union Oil
Company of California, dba Unocal, Attention: Manager Real
Estate, 2175 N. California Blvd., Suite 650, Walnut Creek,
California 94596 or to such other address as either party
shall designate from time to time by the means herein
prescribed for the giving of notices.

    4. Paragraph 14 is hereby added to and made a part of
said Leases.

14. EXTENSION: As a further material consideration for the
execution of this Lease, Lessee is hereby granted the
irrevocable, exclusive right and option to extend the term
of this Lease upon the same terms and conditions and for the
same rental for one (1) additional five-year term. Written
notice to extend the term of this lease shall be given at
least ninety (90) days prior to the expiration of the term
of this Lease then in effect.

    5. The description of the real property set forth in
Service Station Site Lease and said short form of Lease is
amended to read that certain real property situate in the
City Mountain View, County of Santa Clara State of
California more particularly described in Exhibit "B"
attached hereto and made a part hereof.

    As modified herein, all of the terms, covenants and

-5-

agreements of said Lease are hereby reaffirmed by the parties hereto and shall remain in full force and effect.

All of the terms and provisions of this Modification of Lease shall be binding upon and shall inure to the benefit of the successors and assigns of the respective parties hereto.

This agreement shall not be binding upon Lessee until duly executed by it and delivered to Lessor.

IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the day and year first above written.

ROJAN INVESTMENTS, INC.

By _____
                    Secretary/Treasurer

By _____
                              (Lessor)

UNION OIL COMPANY OF CALIFORNIA, dba, UNOCAL

## CORPORATE ACKNOWLEDGMENT

NO. 202

State of California
                                    } SS.
County of Santa Clara

On this the 20 day of January 1988, before me,

Oretha Irene Jeffords
the undersigned Notary Public, personally appeared

Ronald P. Danis

☒ personally known to me
☐ proved to me on the basis of satisfactory evidence
to be the person(s) who executed the within instrument as
Secretary or on behalf of the corporation therein
named, and acknowledged to me that the corporation executed it.
WITNESS my hand and official seal.

Notary's Signature

OFFICIAL SEAL
ORETHA IRENE JEFFORDS
Notary Public—California
SANTA CLARA COUNTY
My Comm. Exp. Mar. 31, 1989

<u>EXHIBIT "A"</u>

<u>PARCEL ONE:</u>

A portion of that 40.980 acre tract of land, which tract is shown upon that certain Map entitled, Record of Survey, Lands of Victor H. Owen, Jr., et al, Ptn. Sec. 27, T. 6 S., R. 1 W., M.D.B.&M., Santa Clara County, Calif." which Map was filed for record in the office of the Recorder of the County of Santa Clara on August 13, 1959 in Book 110 of Maps, at page 41, more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Grant Road as said road is shown on the above mentioned map, at the most Westerly corner of that parcel of land, entitled, Exhibit "A", granted to the City of Mountain View, recorded December 24, 1965 in Book 7223 of Official Records at Page 626, in the Office of the County Recorder of the County of Santa Clara, State of California; thence from said point of beginning along said Southeasterly line of Grant Road North 31° 59' East 64.19 feet; thence South 61° 34' 10" East 26.60 feet to the true point of beginning; thence from said true point of beginning South 61° 34' 10" East 143.40 feet; thence North 31° 59' East 169.98 feet to a point 10 feet Southwesterly at right angles from the Southwesterly line of El Camino Real as shown on the above mentioned map: thence along a line parallel with the Southwesterly line of El Camino Real North 61° 34' 10" West 109.68 feet; thence Southwesterly and Southerly along a arc of a curve to the left, tangent to the preceding course, with a radius of 40 feet, through a central angle of 88° 07' 47" for an arc distance of 61.53 feet: thence South 30° 18' 03" West 131.03 feet to the true point of beginning.

<u>PARCEL TWO:</u>

A non exclusive easement over and across Driveways at least 25 feet wide adjacent to the Southeasterly and the Southwesterly boundaries of the above described Parcel One.

EXHIBIT "B"

## PARCEL ONE:

A portion of that 40.980 acre tract of land, which tract is shown upon that certain Map entitled, Record of Survey, Lands of Victor H. Owen, Jr., et al, Ptn. Sec. 27, T.6 S., R. 1 W., M.D.B.&M., Santa Clara County, Calif." which Map was filed for record in the office of the Recorder of the County of Santa Clara on August 13, 1959 in Book 110 of Maps, at page 41, more particularly described as follows:

BEGINNING at a point on the Southeasterly line of Grant Road as said road is shown on the above mentioned map, at the most Westerly corner of that parcel of land, entitled, Exhibit "A", granted to the City of Mountain View, recorded December 24, 1965 in Book 7223 of Official Records at Page 626, in the Office of the County Recorder of the County of Santa Clara, State of California; thence fron said point of beginning along said Southeasterly line of Grant Road North 31° 59' East 64.19 feet; thence South 61° 34' 10" East 26.60 feet to the true point of beginning; thence from said true point of beginning South 61° 34' 10" East 143.40 feet; thence North 31° 59' East 169.98 feet to a point 10 feet Southwesterly at right angles from the Southwesterly line of El Camino Real as shown on the above mentioned map: thence along a line parallel with the Southwesterly line of El Camino Real North 61° 34' 10" West 109.68 feet; thence Southwesterly and Southerly along a arc of a curve to the left, tangent to the preceding course, with a radius of 40 feet, through a central angle of 88° 07' 47" for an arc distance of 61.53 feet: thence South 30° 18' 03" West 131.03 feet to the true point of beginning.

N 197-42-003

together with non-exclusive easements for ingress and egress over and across the following described parcels of land:

## PARCEL TWO

Commencing at a point on the centerline of Grant Road distant South 31° 59' 00" West 230.10 feet from the intersection of the centerlines of Grant Road and El Camino Real; thence leaving said centerline of Grant Road South 61° 34' 10" East 56.66 feet to the southernmost corner of that certain street easement described in that certain deed recorded in the office of the Santa Clara County Recorder in Book 7223 of Official Records at page 624, said southernmost corner being the True Point of Beginning of the lands hereinafter described; thence from said True Point of Beginning South 61° 34' 10" East 45.38 feet; thence North 89° 58' 37" West 52.52 feet to a point on the southeast line of Grant Road; thence along said southeast line North 30° 18' 03" East 25.00 feet to the True Point of Beginning.

EXHIBIT "B" (continued)


PARCEL THREE

Commencing at a point on the centerline of El Camino Real
distant South 61° 34' 10" East 200.06 feet from the intersection
of the centerlines of Grant Road and El Camino Real; thence
leaving said centerline of El Camino Real South 31° 59' 00" West
60.12 feet to a point distant 60.00 feet, measured at right
angles, from said centerline of El Camino Real, said point being
the True Point of Beginning of the lands hereinafter described;
thence from said True Point of Beginning South 31° 59' 00" West
34.62 feet; thence North 66° 35' 02" East 43.94 feet to the
southwesterly line of said El Camino Real; thence along said
southwesterly line North 61° 34' 10" West 25.00 feet to the True
Point of Beginning.

*EXHIBIT C*

Dick Mathews
Real Estate Manager

ConocoPhillips Company
76 Broadway
Sacramento, CA 95818
phone 916-558-7607
fax 916-558-7696



September 17, 2007

De Anza Properties
920 West Fremont Avenue
Sunnyvale, CA 94087

Attn:    John Vidovich, Owner

Re:    Ground Lease
       101 East El Camino Real
       Mountain View, CA
       ConocoPhillips Site #255661

Dear Mr. Vidovich:

I am still hopeful that ConocoPhillips Company ("COP") might still have an opportunity to secure a long-term lease with you for the above referenced location. Since there has been no response since your brief letter of May 24th, 2007, however, I appreciate this might not be possible. Please understand we are still interested if you are willing to discuss this issue with COP.

In the meantime, there are notice obligations we must make to our franchise dealer that make it necessary for us to request a short-term extension. To this end, this letter serves as a formal request to extend the expiration date to the ground lease for a period of ninety (90) days, under the same terms and conditions. If you concur, the revised expiration date will be January 31, 2008.

In addition, I would like to also request that the period by which we must raze all improvements following the terms of the lease be extended from 10 days to 30 days.

Timing is of the essence, so may we please have your response to our 90-day extension request by **September 21, 2007**? Should I not hear from you by September 21st, I will take your silence as your unwillingness to extend the lease as requested.

Very truly yours,

R. L. (Dick) Mathews - Contractor
ConocoPhillips Real Estate Department

cc:    Carla J. Wilkey
       Phil Bonina

1-86 S

# *EXHIBIT D*

Dick Mathews
Real Estate Manager

ConocoPhillips Company
76 Broadway
Sacramento, CA 95818
phone 916-558-7607
fax 916-558-7696



October 22, 2007

Houtan Petroleum ("DEALER")
101 E. El Camino Real
Mountain View, CA 94040

RE:    Offer to Sell Improvements at Site #255661, located at
       101 E. El Camino Real, Mountain View, California ("Station").

OFFER TO SELL IMPROVEMENTS

Dear DEALER,

By hand delivered letter on September 18, 2007, you were notified of the Notice of Termination ("Notice") of the Union 76 Dealer Station Lease and Motor Fuel Supply Agreement, with an effective date of September 1, 2007, , 2007 ("Agreement"), which Notice terminates your franchise relationship with CONOCOPHILLIPS COMPANY, a Delaware corporation ("COP") for the above referenced Station. The termination of the Agreement shall be effective at 12:00 noon on October 31, 2007 ("Termination Date").

The reason for the termination is that, despite COP's efforts to get additional tenancy at the Station you operate, the underlying ground lease between COP the third party landlord shall expire on October 31, 2007. The duration of the lease and the fact it might expire during the term of the franchise were disclosed to you. Under these facts, it would not have been reasonable for COP to furnish not less than 90 days notice.

You have informed COP on October 18, 2007 that you have obtained a lease with the third party landlord for the Station and have requested from COP a bona fide offer to purchase the improvements and equipment at the Station.

In accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq., COP offers to sell you our interest in the improvements and equipment located on the marketing premises.

This offer is conditioned upon COP being paid by certified check the sum of Three Hundred Forty Thousand Dollars ($340,000.00) for the improvements and equipment located at the Station (summarized on the attached Bill of Sale, Schedule 1, and Attachment "A" to Bill of Sale).

Please note that under the Lease, COP has only 10 days after expiration of the Lease to remove the improvements and equipment. Thus, your written notification to COP of your acceptance and/or rejection of the offer to purchase COP's interest in the improvements and equipment must be provided to COP no later than 5:00 p.m. PT on

1-86 S

<u>October 29, 2007</u>. COP must receive your certified check for the full purchase price no later than 12:00 noon on <u>October 31, 2007</u>. <u>Escrow Information will follow.</u>

Sincerely,

R. L. (Dick) Mathews
Contractor – ConocoPhillips Real Estate Department

**Acknowledged/agreed to:**

Houtan Petroleum - Dealer

**By:** _____

**Its:** _____

**Date:** _____

Attachments:

Bill of Sale with Schedule 1 ("Property") and Attachment "A" to Bill of Sale.

cc:    Dan Pellegrino, Account Representative
       Phillip Bonina, Director, Real Estate
       David Nash, Contracts Administration
       Station File 255661

# BILL OF SALE
## (Including Tanks)

In consideration of the covenants and agreements herein contained and in further consideration of Three Hundred Forty Thousand Dollars ($340,000.00) paid to it by Houtan Petroleum, with an address of 101 E. El Camino Real, Mountain View, California 94040 ("Buyer"), the receipt of which is hereby acknowledged, ConocoPhillips Company, successor by merger and name change to Tosco Corporation, having an office at 3611 Harbor Boulevard, Suite 200, Santa Ana, California 92704 ("Seller"), does hereby transfer and convey to Buyer all of Seller's right, title, and interest in and to the personal property described in Schedule 1 attached hereto and made a part hereof located at Site No 255661, 101 E. El Camino Real, Mountain View, CA ("Property").

TO HAVE AND TO HOLD unto Buyer and buyer's representatives, heirs, devisees, successors, and assigns forever. Buyer acknowledges that Seller is selling only such right, title, or interest in the Property as Seller may have without Seller representing or warranting the extent of Seller's right, title or interest therein. Buyer shall pay any federal, state or local sales, use or value added tax which may be due as a result of this transfer.

Buyer affirms by acceptance of this Bill of Sale that Buyer has inspected to its full satisfaction all of the Property conveyed pursuant to this Bill of Sale and has full knowledge of its condition and location. This sale is made on an "AS-IS, WHERE-IS BASIS" WITHOUT REPRESENTATION OR WARRANTY BY SELLER, EXPRESS OR IMPLIED, REGARDING THE HABITABILITY, CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR USE OR PURPOSE of the Property conveyed hereby. This sale does not include any title in, or any right to use, any advertising, trade names, trade marks, trade dress, service marks, signs, sign poles, slogans identifications, copyrights or copyrighted materials of the Seller and its affiliates, parents and subsidiaries.

Buyer acknowledges that any underground storage tanks and associated product piping systems ("USTs") included in, on or under the Property may contain explosive gases and may have been used for the storage of motor fuels containing tetraethyl, lead or other "antiknock" compounds which have made such USTs unfit for the storage of water or any other article or commodity intended for human or animal contact or consumption. Buyer expressly agrees not to use or permit the use of such USTs for such purpose.

BUYER IS WARNED THAT USTs MAY DEVELOP LEAKS AT ANY TIME AND THAT ANY LEAKAGE THEREFROM MAY CAUSE SERIOUS DAMAGE TO PERSONS AND PROPERTY WITHIN AND BEYOND THE CONFINES OF THE IMMEDIATE AREA. BUYER AGREES THAT ANY LEAK DISCOVERED AT ANY TIME HEREAFTER SHALL BE BUYER'S RESPONSIBILITY AND SHALL BE DEEMED TO HAVE OCCURRED AFTER SUCH OWNERSHIP HAS PASSED TO BUYER.

As of the Effective Date, as defined below, Buyer hereby agrees to assume and hereby waives, releases, indemnifies, defends and holds harmless Seller and its directors, officers, employees, contractors, agents, representatives successors and assigns, from and against any and all claims, demands, damages, costs and expenses, including attorneys' fees, court costs, awards, settlements, judgments, penalties, fines, liens or causes of action, at law or in equity, including without limitation actions under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. 9601, et seq., as amended, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, et seq., and any other applicable environmental laws, statutes, ordinances, rules, regulations or orders ("Laws"), arising out of or relating to the physical condition of the Property or other property abandoned thereon by Seller, or arising out or relating to the ownership or use of the Property after the date hereof.

The provisions of the Bill of Sale shall be effective as of <u>12:01 A.M on November 1, 2007</u> ("Effective Date").

IN WITNESS WHEREOF, this Bill of Sale has been duly executed by the undersigned this ___ day of _____, 2007, having first read and understood the terms contained herein and the purpose, intent and effects hereof.

DEALER:                                    ConocoPhillips Company, a Delaware corporation

By: _____                By: _____

Name __Houtan Petroleum____                Name _____R. L. Mathews_____
                                           Contractor, ConocoPhillips Real Estate Department

WITNESSED:

By: _____                By: _____

Name: _____                Name: _____

## SCHEDULE 1 ("Property") at
## Site No. 255661
## 101 E. El Camino Real, Mountain View, CA

| | |
|---|---|
| Service station building (1,624 sq. ft.) | 1 |
| MPD dispensers with CRIND | 6 |
| UST's – gasoline (With associated piping for all UST's) | |
| 12,032 gallon Double Steel | 1 |
| 12,032 gallon Double Steel | 1 |
| UST – waste oil (550 gallon) | 1 |
| Canopy | 2 |
| Monument sign | 1 |
| G-Site | 1 |

Any/all moveable equipment, air compressor and hoists.

Asphalt and concrete paving, landscaping and trash enclosure.

Site No.255661
101 E. El Camino Real, Mountain View, CA

# ATTACHMENT "A" TO BILL OF SALE

## UNDERGROUND STORAGE TANK INFORMATION
### PAGE ONE OF ONE
### EXHIBIT D
### UNDERGROUND STORAGE TANK INFORMATION
Site No. 255661
To Seller's Actual Knowledge, information about the UST's and monitoring system are as follows:

| Tank Product | UNLEADED | PREMIUM UNLEADED | WASTE OIL |
|---|---|---|---|
| Approximate Capacity | 12032 | 12032 | 550 |
| Approximate Tank Install Date | 1/1/1988 | 1/1/1988 | 1/1/1988 |
| DW or SW Tank | DOUBLE | DOUBLE | DOUBLE |
| Tank Material | STEEL - FG CLAD | STEEL - FG CLAD | STEEL - FG CLAD |
| Tank Monitoring Method | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED |
| Approximate Piping Install Date | 1/1/1994 | 1/1/1994 | N/A |
| DW or SW Piping | DOUBLE | DOUBLE | N/A |
| Piping Material | FIBERGLASS | FIBERGLASS | N/A |
| Line Monitoring Method | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED | N/A |
| ATTACH ADDITIONAL PAGES IF NECESSARY | | | |

*EXHIBIT E*



**VRC**

Valuation Research Corporation

50 California Street
San Francisco, CA 94111

# Summary Exhibits of
# Leasehold Interest Appraisal

## 255661 – Mountain View, CA

### Exhibits

Exhibit 1    Valuation Summary

Exhibit 2    Valuation Summary 2006 -- Value of Land and Improvements

Exhibit 3    Valuation Summary 2006 -- Value of Improvements
Adjusted for Remaining Term of Lease

Exhibit 4    Discounted Cash Flow Analysis -- Land Lease and Permits/Entitlements

Exhibit 2

**Valuation Summary - 2007 Value of Land & Improvements**
ConocoPhillips Cost Center 255661 - Mountain View, CA

### Building Improvements

| | | | |
|---|---|---|---|
| Base Cost (Sec 64/Pg 1, Class S, Average) | | $95.03 | |
| Multipliers: | | | |
| Area/Perimeter | 0.956 | | |
| Height | 1.000 | | |
| Current Cost | 1.030 | | |
| Local | 1.210 | | |
| Total | | 1.191 | |
| Adjusted Base Cost | | $113.18 | |
| Building Area (SF) | | 1,624 | |
| Subtotal Replacement Cost New (RCN) | | $183,804 | |
| Less Physical Deterioration @     60% | | (110,283) | |
| Subtotal RCN Less Physical Deterioration | | 73,521 | |
| Add Soft Costs (Permitting and Entitlements) | | 202,500 | |
| Total RCN Less Physical Deterioration - Building | | | $276,021 |

### Site Improvements

| Description | Units | Unit Cost | Total RCN | Effective Age | Economic Life | % Physical Deterioration | RCNLD |
|---|---|---|---|---|---|---|---|
| Grading | 24,700 SF | $0.29 | 7,163 | - - | - - | - - | 7,163 |
| Asphalt Paving | 12,000 SF | $2.44 | 29,280 | 9 | 10 | 60% | 11,712 |
| Concrete Paving | 8,000 SF | $6.69 | 53,520 | 9 | 16 | 56% | 23,549 |
| Concrete Curbing | 370 LF | $9.00 | 3,330 | 11 | 20 | 55% | 1,499 |
| Landscaping | - - | | * * | - * | - - | - - | 5,000 |
| Miscellaneous (Fencing, etc.) | 120 LF | $25.00 | 3,000 | 0 | 25 | 0% | 3,000 |
| Trash Enclosure | 80 SF | $5.65 | 452 | 15 | 25 | 60% | 181 |
| Lighting | 3 Fix | $1,815 | 5,445 | 9 | 16 | 56% | 2,396 |

Total Replacement Cost New Less Physical Deterioration - Site Improvements                     54,499

### Gasoline Related Improvements

| Description | Units | Unit Cost | Total RCN | Effective Age | Economic Life | % Physical Deterioration | RCNLD |
|---|---|---|---|---|---|---|---|
| Canopy | 1,012 SF | $29.44 | 29,793 | 9 | 16 | 56% | 13,109 |
| Canopy | 1,012 SF | $29.44 | 29,793 | 9 | 16 | 56% | 13,109 |
| Signage | 1 Fix | $7,879 | 7,879 | | | 50% | 3,940 |
| Machinery and Equipment: | | | | | | | |
| UST  12,032 Gal | 1 | $41,689 | 41,689 | | | 46% | 22,512 |
| UST  12,032 Gal | 1 | $39,120 | 39,120 | | | 46% | 21,125 |
| UST     550 Gal | 1 | $11,151 | 11,151 | | | 46% | 6,022 |
| Dispensers | 6 | $18,255 | 109,530 | | | 42% | 63,527 |
| Control Console | 1 | $14,002 | 14,002 | | | 42% | 8,121 |
| Piping | - - | $4,278 | 25,668 | | | 32% | 17,454 |
| Spill Containment | - - | $24,530 | 24,530 | | | 44% | 13,737 |
| Additional Installation | - - | $51,341 | 51,341 | | | 57% | 22,077 |
| Lift | 3 | $6,441 | 19,323 | | | 71% | 5,604 |
| Air Compressor | 1 | $4,273 | 4,273 | | | 61% | 1,666 |

Total Replacement Cost New Less Physical Deterioration - Gasoline Related Improvements                     212,002

| | | |
|---|---|---|
| Subtotal Replacement Cost New of Improvements Less Physical Deterioration | | $542,522 |
| Less Functional Obsolescence | | 0 |
| Less External Obsolescence | | 0 |
| Total Replacement Cost New of Improvements Less Physical Deterioration | | $542,522 |
| Add Land Value | | 1,729,000 |
| Total Estimated Value by the Cost Approach | | $2,271,522 |
| Rounded | | $2,270,000 |

542,522
- 202,500
340,022

| | |
|---|---|
| Land | |
| Permitting and Entitlements | |
| Leasehold Improvements | |