# EXHIBIT "C"

000084

# LEASE

## 101 East El Camino Real
## Mountain View, California

### VO Limited Partnership

### as Landlord

### and

### Houtan Petroleum, Inc.
### a California corporation
### as Tenant

000085

# INDEX

| | | Page(s) |
|---|---|---|
| ARTICLE 1 | PREMISES, BUILDING, AND COMMON AREAS | 1 |
| ARTICLE 2 | LEASE TERM | 3 |
| ARTICLE 3 | BASE RENT | 5 |
| ARTICLE 4 | ADDITIONAL RENT | 6 |
| ARTICLE 5 | USE OF PREMISES | 8 |
| ARTICLE 6 | SERVICES AND UTILITIES | 13 |
| ARTICLE 7 | REPAIRS | 14 |
| ARTICLE 8 | ADDITIONS AND ALTERATIONS | 14 |
| ARTICLE 9 | COVENANT AGAINST LIENS | 16 |
| ARTICLE 10 | INSURANCE | 16 |
| ARTICLE 11 | DAMAGE AND DESTRUCTION | 19 |
| ARTICLE 12 | NONWAIVER | 20 |
| ARTICLE 13 | CONDEMNATION | 21 |
| ARTICLE 14 | ASSIGNMENT AND SUBLETTING | 21 |
| ARTICLE 15 | SURRENDER OF PREMISES; OWNERSHIP AND REMOVAL OF TRADE FIXTURES | 25 |
| ARTICLE 16 | HOLDING OVER | 27 |
| ARTICLE 17 | ESTOPPEL CERTIFICATES | 27 |
| ARTICLE 18 | SUBORDINATION | 28 |
| ARTICLE 19 | DEFAULTS; REMEDIES | 28 |
| ARTICLE 20 | COVENANT OF QUIET ENJOYMENT | 30 |
| ARTICLE 21 | SECURITY DEPOSIT | 30 |
| ARTICLE 22 | SUBSTITUTION OF OTHER PREMISES | 30 |
| ARTICLE 23 | SIGNS | 31 |
| ARTICLE 24 | COMPLIANCE WITH LAW | 31 |
| ARTICLE 25 | LATE CHARGES | 31 |

000086

Page(s)

ARTICLE 26  LANDLORD'S RIGHT TO CURE DEFAULT; PAYMENTS BY
              TENANT ...........................................................................................32

ARTICLE 27  ENTRY BY LANDLORD.................................................................32

ARTICLE 28  TENANT PARKING.........................................................................33

ARTICLE 29  MISCELLANEOUS PROVISIONS.................................................33

EXHIBITS

A      LEGAL DESCRIPTION OF PREMISES

A-1    OUTLINE OF PREMISES

B      DESCRIPTION OF ADJACENT PROPERTY

C      TENANT IMPROVEMENT WORK LETTER

D      NOTICE OF LEASE TERM DATES

E      RULES AND REGULATIONS

F      FORM OF TENANT'S ESTOPPEL CERTIFICATE

G      FORM OF HAZARDOUS MATERIALS DISCLOSURE CERTIFICATE

H.    Guaranty of Lease

000087

# LEASE

This Lease (the "**Lease**"), dated for reference purposes only as of the date set forth in Section 1 of the Summary of Basic Lease Information (the "**Summary**"), below, is made by and between V.O. Limited Partners, a California limited partnership ("**Landlord**"), and ~~Hedia~~ Houtan Petroleum, Inc., a California corporation ("**Tenant**").

## SUMMARY OF BASIC LEASE INFORMATION

| TERMS OF LEASE | DESCRIPTION |
|---|---|
| 1.    Date: | September ___, 2007 |
| 2.    Premises | As described in Article 1 |
| 3.    Lease Term (Article 2). | |
|    3.1   Interim Term Commencement Date | The date Landlord delivers to Tenant possession of the Premises.  Target Interim Term Commencement Date is November 1, 2007 |
|    3.2   Primary Term Commencement Date | The first to occur of (i) completion of Tenant's Work; (ii) Tenant opens for business; and (iii) the first anniversary of the Interim Term Date  or |
|    3.3   Lease Expiration Date: | 12:00 midnight on the last day of the fifteenth Lease Year, subject to extension pursuant to Lease Section 2.4 |
|    3.4   Option Term | 2 options to extend the Term for 5 years each |

4.   Base Rent (Article 3):

| **Period** | **Interim Monthly Base Rent** |
|---|---|
| Interim Term Commencement Date through date Tenant begins physical demolition of improvements on the Premises ("**Demolition Commencement Date**") | $7,000 |
| Demolition Commencement Date through 150th day thereafter | $0 |
| 151st day after Demolition | |

000088

Commencement Date through Primary
Term Commencement Date                          $7,000
**Period**

                                                **Monthly Base Rent**

Primary Term Commencement Date
through the end of the first Lease Year          $15,000

Annual Adjustments on each CPI                   Monthly Base Rent increases in accordance with
Adjustment Date (at the beginning of             Section 3.1
each Lease Year, commencing with the
first day of the second Lease Year)

Option Term Rent                                 See Section 2.4.2

5.      Tenant's Share
        (Article 4):                             NA

6.      Permitted Use                            Retail sale of gasoline and diesel fuel for passenger
        (Article 5):                             cars and light trucks; Mini-market retail store

7.      Security Deposit                         None
        (Article 21):

8.      Address of Tenant
                                                 [tenant to provide]

9.      Address of Landlord                      c/o DeAnza Properties
                                                 920 Fremont Street
                                                 S/vale Mountain View, Ca 94087
12.     Guarantor                                Ali Bozorghadad

000089

# ARTICLE 1
## PREMISES AND COMMON AREAS

1.1     Premises and Common Areas.

1.1.1    **The Premises**.  Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the premises described on Exhibit A attached hereto (the **"Premises"**), including all buildings and improvements owned by Landlord and located thereon. "Premises" includes any improvements owned by or constructed by or for Tenant during the Term. The outline of the Premises is set forth in Exhibit A-1 attached hereto. The lease of the Premises is upon and subject to the terms, covenants and conditions herein set forth, and Tenant covenants as a material part of the consideration for this Lease to keep and perform each and all of such terms, covenants and conditions by it to be kept and performed and that this Lease is made upon the condition of such performance. Landlord shall not be obligated to provide or pay for any improvement work or services related to the Premises or the improvements on the Premises.

1.1.2    **As Is Lease**.

A.     The Premises has been leased for a period of approximately forty two years to third parties who have operated gasoline service stations and related businesses thereon during that period. The current tenant occupies the Premises pursuant to that certain Primary Lease dated August 13, 1965, as amended October 20, 1987 (the **"Existing Lease"**). For the past 10 years Tenant, or an entity related to Tenant, has operated the service station business on the Premises pursuant to agreements with ConocoPhillips Company, the current tenant (**"Existing Tenant"**). This Lease will commence on the termination of the Existing Lease and Existing Tenant's vacation of the Premises. Under the Existing Lease the Existing Tenant has certain rights to remove the improvements, fixtures and personal property existing on the Premises. Additionally, the Existing Tenant may be obligated to perform certain "closure" activities with regard to the existing business on the Premises. Tenant will accept possession of the Premises on the Interim Term Commencement Date in their existing condition as of the Interim Term Commencement Date, which Tenant acknowledges may, or may not, include some or any of the existing improvements (including the underground tanks, piping, or above ground improvements). To the extent the Existing Tenant elects not to remove some, or all, of its improvements (and/or is not required to do so under Applicable Law (as defined below)), Landlord shall have no obligation to do so, and Landlord shall deliver to Tenant possession of the Premises with such improvements as the Existing Tenant leaves on the Premises. Tenant acknowledges that neither Landlord nor any agent of Landlord has made any representation or warranty regarding the condition of the Premises or with respect to the suitability of the Premises for the conduct of Tenant's business. Tenant is in possession of the Premises as of the date this Lease is signed, is knowledgeable regarding the condition of the Premises, and has taken such steps as Tenant has deemed necessary to determine from the Existing Tenant the condition in which the Existing Tenant will leave the Premises on the termination of the Existing Lease.

B.     Except for any representations set forth herein in writing, there are no warranties or representations, express or implied, by Landlord to Tenant and Tenant

000090

acknowledges that the execution of this Lease is and will be based solely upon Tenant's knowledge of, inspection and investigation of the Premises. Tenant acknowledges that Landlord has not made any representations or warranties other than as contained herein as to any matters concerning the Premises. Tenant independently has satisfied itself regarding the following characteristics of the Premises: topography, availability of utilities, general plan designation, zoning, soil, subsoil, presence or absence of fill, presence or absence of Hazardous Materials (as defined below) location of existing underground appurtenances, the purposes for which the Premises or any part thereof may be used, drainage, flood zone designation, access to public roads, and applicable environmental laws, rules, or regulations. The failure on the part of the Tenant to procure in writing express warranties or representations regarding Premises characteristics shall constitute a conclusive admission that Tenant has relied on its investigation and judgment as to all matters relating to the Premises. Tenant represents that it has, prior to the execution of this Lease, made investigations and tests of the Premises, including inquiry from governmental agencies and quasigovernmental agencies having jurisdiction over the Premises, soils testing, tests and inspection for presence of Hazardous Materials and such other examination of the Premises as Tenant has deemed necessary to determine the condition of the Premises and that Tenant, except as specifically set out in this Lease, by execution hereof accepts the Premises in the condition and state in which they exist, as of the Interim Term Commencement Date, "as is." The taking of possession of the Premises by Tenant shall conclusively establish that the Premises and the Building were at such time in condition and repair acceptable to Tenant.

          C.    Tenant understands that the Premises has been used for the storage and dispensing of Hazardous Materials (as defined below) during the term of the Existing Lease and that during that period the Premises may have been contaminated by Hazardous Materials.

          1.1.3  **The Shopping Center**. The Premises are a part of a shopping center project known as Mountain View Shopping Center. The property described on Exhibit B attached hereto (the **"Adjacent Property"**) is operated by Landlord as a shopping center. The term "**Shopping Center**," as used in this Lease, shall mean (i) the Premises and any improvements Tenant constructs thereon, (ii) the Adjacent Property, (iii) the Common Areas (defined below) on the Premises and the Adjacent Property, and (iv) at Landlord's discretion, any additional real property, areas, land, buildings or other improvements added thereto.

          1.1.4  **Common Areas**. "**Common Areas**" means those portions of the Premises and the Adjacent Property that are used in common, from time to time, by the owners, tenants, customers, suppliers, vendors and contractors of the Shopping Center, such as, for example, driveways for vehicular ingress and egress, walkways for pedestrian ingress and egress. Landlord and Landlord's tenants, customers of tenants, vendors, suppliers and contractors shall have the non-exclusive right to use the driveways and walkways over the Premises for ingress and egress to the Adjacent Property. Tenant and Tenant's customers, vendors, suppliers and contractors shall have the non-exclusive right to use the driveways and walkways over the Adjacent Property for ingress and egress to the Premises. Landlord reserves the right to close temporarily, make alterations or additions to, or change the location of elements on the Adjacent Property Common Areas.

000091

## ARTICLE 2
## LEASE TERM

2.1 __Interim Term__. The terms and provisions of this Lease shall be effective as of the date of this Lease. The Interim Term shall be that period between the Interim Term Commencement Date set forth in <u>Section 3.1</u> of the Summary ("**Interim Term Commencement Date**") and the Primary Term Commencement Date set forth in <u>Section 3.2</u> of the Summary ("**Primary Term Commencement Date**").

2.2 __Primary Term__. The Primary Term shall be that period between the Primary Term Commencement Date set forth in <u>Section 3.2</u> of the Summary ("**Primary Term Commencement Date**") and the Lease Expiration Date set forth in <u>Section 3.3</u> of the Summary ("**Lease Expiration Date**").

2.3 __Term__. The term of this Lease (the "**Term**") shall commence on the Interim Term Commencement Date (the "**Lease Commencement Date**"), and shall terminate on the **Lease Expiration Date** unless this Lease is sooner terminated as hereinafter provided or unless extended pursuant to <u>Section 2.4</u>. "**Lease Termination Date**" means the last day of the Term, or any date of earlier Lease termination. For purposes of this Lease, the term "**Lease Year**" shall mean each consecutive twelve (12) month period during the Primary Term, as extended, if applicable; provided, however, that if the Primary Term Commencement Date is not the first day of a month, then the first Lease Year shall include that fractional portion of the calendar month in which the Primary Term Commencement Date occurs and the first full twelve calendar months thereafter. At any time during the Lease Term, Landlord may deliver to Tenant a notice in the form as set forth in <u>Exhibit D</u>, attached hereto, as a confirmation only of the information set forth therein, which Tenant shall execute and return to Landlord within five (5) days after receipt.

2.4 __Option to Extend Term__. Tenant shall have the option to extend the Term for two consecutive periods of five years each, commencing at the expiration of the initial Lease Term, or the first extended term, as the case may be. The manner of Tenant's right to exercise its options to extend the Term and the rent determination for any extended term are set out below. "Term" includes any extended term.

2.4.1 __Option Exercise__. Tenant may exercise an option to extend the Term (as previously extended, if applicable), only if at the time of exercise and at commencement date of the applicable extended Term, Tenant is not in default, after notice and the expiration of any applicable cure period, under this Lease. In order to exercise an option, Tenant must deliver to Landlord written notice of exercise to extend not later than the one hundred eightieth (180th) day before, and no sooner than the two hundred seventieth (270th) day before, the expiration of the initial Term, or the first extended Term, as the case may be. If Tenant fails to deliver timely notice to Landlord of Tenant's exercise of its option, then the option right (and the right to exercise any successive option) shall automatically expire and be of no further force or effect. If Tenant properly exercises its option to extend the Term, then the Term shall be extended for the described period on all the same terms and conditions as set out in this Lease, except the Base Rent for the extended Term shall be determined in accordance with <u>Section 2.4.2</u> below.

000092

2.4.2  **Option Term Rent**.  On the first day of each extended Term, (each a "**Market Rent Adjustment Date**"), the Base Rent shall be increased to the "Market Rental Value" of the Premises ("**MRV**"), or in accordance with Section 2.4.2(2), as the case may be, as follows:

.1)  Six months prior to each Market Rent Adjustment Date, Landlord and Tenant shall attempt to agree upon what the new MRV will be on the adjustment date. If agreement cannot be reached within thirty days, then:

    a)  Within thirty days after the expiration of the period in (1) above, Landlord and Tenant shall immediately appoint a mutually acceptable appraiser or broker to establish the new MRV. Any associated costs will be split equally between the parties. If the parties are able to agree upon a single appraiser or broker, that person shall determine the new MRV, subject to the limitations in Section 2.4.2(2). If Landlord and Tenant are unable to agree upon a mutually acceptable appraiser or broker within the thirty day period, then

    b)  Both Landlord and Tenant shall each immediately make a reasonable determination of the MRV and submit such determination, in writing, to arbitration in accordance with the following provisions:

        i)  Within 15 days thereafter, Landlord and Tenant shall each select a broker ("**Consultant**") of their choice to act as an arbitrator. The two Consultants so appointed shall immediately select a third mutually acceptable Consultant to act as a third arbitrator.

        ii)  The 3 Consultants shall within thirty days of the appointment of the third arbitrator reach a decision as to what the actual MRV for the Premises is, and whether Landlord's or Tenant's submitted MRV is the closest thereto. The decision of a majority of the arbitrators shall be binding on the parties. Subject to the limitations in Section 2.4.2(2), the submitted MRV which is determined to be the closest to the actual MRV shall be the MRV for the option period following the Market Rent Adjustment Date.

        iii)  If either of the parties fails to appoint an arbitrator within the specified 15 days, the arbitrator timely appointed by one of them shall reach a decision on his or her own, and said decision shall be binding on the parties.

        iv)  The entire cost of such arbitration shall be paid by the party whose submitted MRV is not selected, ie. The one that is NOT the closest to the actual MRV.

2)  Notwithstanding the foregoing, the new MRV shall not be less than the rent payable for the month immediately preceding the commencement of the relevant option term. Upon the establishment of each Market Rental Value:

        a)  the new MRV will become the new "Base Rent" for the purpose of calculating any further adjustments, and

-4-

000093

b) the first month of each option term shall become the new "Base Month" for the purpose of calculating any further adjustments.

    2.4.3 **Option Not Assignable**. The option to extend the Term is personal to Tenant and may not be assigned to any third party.

    2.5 **Delay in Delivery of Possession**. Notwithstanding the Target Commencement Date, for any reason if Landlord is unable to deliver possession of the Premises to Tenant on the Target Commencement Date, Landlord shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease or the obligations of Tenant hereunder, but in such case, the Term shall not commence until Landlord has delivered possession of the Premises to Tenant. Tenant understands that the Premises is subject to the Existing Lease and that Landlord will deliver possession of the Premises to Tenant promptly upon the Existing Tenant's vacation of the Premises and compliance with all of its duties and obligations with regard to the surrender condition of the Premises and the Existing Tenant's compliance with Applicable Law related to the cessation of its operation on the Premises.

## ARTICLE 3
## BASE RENT

    3.1 **Base Rent**. Tenant shall pay, without prior notice or demand, to Landlord or, at Landlord's option, at such other place as Landlord may from time to time designate in writing, by a check for currency which, at the time of payment, is legal tender for private or public debts in the United States of America, base rent ("**Base Rent**") as set forth in Section 4 of the Summary.

    3.1.1 **CPI Adjustment**. Except for any Market Rent Adjustment Date on which Base Rent shall be adjusted pursuant to Section 2.4.2, during the Term on the first day of each Lease Year after the first Lease Year (each, a "**CPI Adjustment Date**"), the Base Rent shall be subject to upward adjustment based upon any increase in the Applicable CPI (as defined below) over the Applicable CPI for the immediately prior CPI Adjustment Date (except that the first adjustment after the Primary Term Commencement Date and the first adjustment after each Market Rate Adjustment Date shall reflect the increase from the Applicable CPI for the preceding Primary Term Commencement Date, or the applicable Market Rent Adjustment Date, as the case may be). "**CPI**" or "**CPI Index**" means the "Consumer Price Index for All Urban Consumers (1982-84= 100), in San Francisco-Oakland Metropolitan Area, All Items" published by the United States Department of Labor, Bureau of Labor Statistics. If the present base of the CPI Index is changed, the new base shall be converted to the base now used. If the Bureau of Labor Statistics fails to publish the CPI Index throughout the Term, the then most similar index published by the Bureau or by any other branch or department of the U.S. Government shall be used, and if none is so published, then another index using the most closely comparable statistics on the purchasing power of the consumer dollar and published by a responsible financial authority shall be used. The first adjustment shall occur effective on the first day of the second Lease Year. The "**Applicable CPI**" for the Primary Term Commencement Date means the CPI published nearest to, and before, the Primary Term Commencement Date and the Applicable CPI for each CPI Adjustment Date means the CPI published nearest to, and before, the applicable

000094

CPI Adjustment Date. On the first CPI Adjustment Date, the Base Rent shall be increased by the percentage increase, if any, in the CPI as of that CPI Adjustment Date as compared to the Applicable CPI as of the Primary Term Commencement Date. On each CPI Adjustment Date thereafter, the Base Rent shall be increased by the percentage increase, if any, in the CPI as of that CPI Adjustment Date as compared to the Applicable CPI for the same date one year earlier.

    3.1.2 **Landlord Calculation**. Landlord shall compute the applicable CPI increase, if any, in Base Rent effective for each 12-month period following an Adjustment Date under this Lease and shall provide to Tenant a copy of such calculation. Any delay by Landlord in computing or delivering the information hereunder shall not relieve Tenant from its obligation to pay Base Rent or any increase hereunder and Landlord shall not be deemed to have waived any right to collect such rent by reason of any delay by Landlord hereunder.

    3.1.3 **Minimum and Maximum CPI Increase**. Notwithstanding the foregoing, if the percentage change in the CPI determined above is less than 3% per annum, the Base Rent shall be increased by 3% per annum of the Base Rent as of the Adjustment Date. If the percentage change in the CPI determined above is more than 6%, per annum the Base Rent shall be increased by 6% per annum of the Base Rent as of the Adjustment Date.

    3.2 **Payment**. Base Rent shall be paid in equal monthly installments in advance on or before the first day of each and every calendar month during the Lease Term, without any setoff or deduction whatsoever. The Interim Base Rent for the first full month of the Lease Term shall be paid at the time Tenant signs this Lease. For any Rent payment for a partial month at the commencement of the Term or the last month of the Term, at the time the Primary Term Commencement occurs, or on early termination, the Rent for the fractional month shall accrue on a daily basis for the period from the date such payment is due to the end of such calendar month or to the end of the Term at a rate per day which based on a 30 day month.

## ARTICLE 4
## ADDITIONAL RENT

    4.1    **General Terms**. In addition to paying the Base Rent specified in Article 3 of this Lease, during the Term Tenant shall pay those items described in this Lease as obligation of Tenant. Such payments by Tenant, together with any and all other amounts payable by Tenant to Landlord pursuant to the terms of this Lease, are hereinafter collectively referred to as the "**Additional Rent**", and the Base Rent and the Additional Rent are herein collectively referred to as "**Rent.**" All amounts due under this Article 4 as Additional Rent shall be payable beginning on the Interim Term Commencement Date and in the same manner as the Base Rent. Without limitation on other obligations of Tenant which survive the expiration of the Term, the obligations of Tenant to pay the Additional Rent provided for in this Article 4 shall survive the expiration of the Term.

    4.2    **Taxes**.

    4.2.1 **Definition**. "Taxes" shall mean all federal, state, county, or local governmental or municipal taxes, fees, charges or other impositions of every kind and nature, whether general, special, ordinary or extraordinary, (including, without limitation, real estate

000095

taxes, general and special assessments, transit taxes, taxes on improvements installed by Tenant, leasehold taxes or taxes based upon the receipt of Rent, including gross receipts or sales taxes applicable to the receipt of rent, unless required to be paid by Tenant, personal property taxes imposed upon the fixtures, machinery, equipment, apparatus, systems and equipment, appurtenances, furniture and other personal property used in connection with the Premises, or any portion thereof), which shall be paid or accrued during the Term because of or in connection with the ownership, leasing and operation of the Premises, or any portion thereof. Taxes shall include: (i) Any tax on the rent, right to rent or other income from the Premises, or any portion thereof, or as against the business of leasing the Premises, or any portion thereof; (ii) Any assessment, tax, fee, levy or charge in addition to, or in substitution, partially or totally, of any assessment, tax, fee, levy or charge previously included within the definition of real property tax, it being acknowledged by Tenant and Landlord that Proposition 13 was adopted by the voters of the State of California in the June 1978 election ("**Proposition 13**") and that assessments, taxes, fees, levies and charges may be imposed by governmental agencies for such services as fire protection, street, sidewalk and road maintenance, refuse removal and for other governmental services formerly provided without charge to property owners or occupants, and, in further recognition of the decrease in the level and quality of governmental services and amenities as a result of Proposition 13. Taxes shall also include any governmental or private assessments or the Premises contribution towards a governmental or private cost-sharing agreement for the purpose of augmenting or improving the quality of services and amenities normally provided by governmental agencies; (iii) Any assessment, tax, fee, levy, or charge allocable to or measured by the area of the Premises or the Rent payable hereunder, including, without limitation, any business or gross income tax or excise tax with respect to the receipt of Rent, or upon or with respect to the possession, leasing, operating, management, maintenance, alteration, repair, use or occupancy by Tenant of the Premises, or any portion thereof; and (iv) any increase in taxes as a result or any "change in ownership" with regard to the Premises. Notwithstanding anything to the contrary contained in this Section, "**Taxes**" shall not include any excess profits taxes, franchise taxes, gift taxes, capital stock taxes, inheritance and succession taxes, estate taxes, federal and state income taxes, and other taxes to the extent applicable to Landlord's general or net income (as opposed to rents, receipts or income attributable to operations at the Premises).

4.2.2   **Tenant's Obligation.**  Commencing on the Interim Term Commencement Date, Tenant shall be responsible for payment of all Taxes. Upon receipt of the bill for the Taxes, Landlord shall forward a copy to Tenant and Tenant shall pay amount to Landlord the full amount (both installments) within 15 days from receipt.  Landlord will make payment to the Santa Clara Tax Collector prior to the delinquency date. It is the intention of the parties that Tenant shall pay any Taxes and other governmental impositions or charges of any kind or nature with regard to the Premises accruing beginning with the Interim Term Commencement Date and ending on the Lease Termination Date.

4.2.3   **Appeals; Refunds.**   Any costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in attempting to protest, reduce or minimize Taxes shall be included in Taxes.  Tax refunds shall be credited against Taxes and refunded to Tenant regardless of when received, based on the fiscal year to which the refund is applicable, provided that in no event shall the amount to be refunded to Tenant exceed the total amount paid under this Article 4 by Tenant as Taxes for such period.

000096

4.2.4    **Personal Property Taxes**.  Throughout the Term, Tenant shall be liable for and shall pay 10 days before delinquency, taxes levied against all Tenant Improvements (as defined in Exhibit C), equipment, leasehold improvements, structure or improvements located on the Premises and owned by Tenant, furniture, fixtures or any other personal property located in or about the Premises (including any Existing Tenant's personal property that is left on the Premises).  If any taxes on Tenant's equipment, Tenant Improvements, leasehold improvements, furniture, fixtures, structures or improvements and any other personal property are levied against Landlord or if the assessed value of Landlord's property is increased by the inclusion therein of a value placed upon such items and if Landlord pays the taxes based upon such increased assessment, Tenant shall upon demand repay to Landlord the taxes so levied against Landlord or the proportion of such taxes resulting from such increase in the assessment, as the case may be.

4.2.5    **General**.  During any partial tax fiscal year(s) at the beginning or end of the Term, Taxes shall be equitably prorated and Tenant shall pay only the prorated amount allocated to the portion of the Term that is included within the applicable fiscal tax year.  Promptly following request by Landlord, Tenant shall furnish to Landlord proof satisfactory to Landlord evidencing payment of Taxes to be paid directly by Tenant.

# ARTICLE 5
## USE OF PREMISES

5.1    **Permitted Use**.  Tenant shall use the Premises solely for the Permitted Use set forth in Section 6 of the Summary and Tenant shall not use or permit the Premises to be used for any other purpose or purposes whatsoever without the prior written consent of Landlord, which may be withheld in Landlord's sole discretion.

5.2    **Prohibited Uses**.  The uses prohibited under this Lease shall include, without limitation, use of the Premises or a portion thereof for (i) automotive repair, (ii) oil changing, (iii) smog inspection, (iv) vehicle washing, waxing or detailing, (v) any drug store use or so called prescription pharmacy or any purpose requiring a qualified pharmacist; (vi) sale of health and beauty aids; (vii) photo-finishing services; (viii) sale of alcoholic beverages; (ix) food preparation, (x) sale of: prepared food for on-site or off-site consumption, produce, coffee drinks (except the sale of brewed coffee, excluding expresso type drinks, that is not a "branded" coffee is permitted), smoothies, prepared fruit drinks, or prepared ice cream drinks; (xi) restaurant use; (xii) any pool table or billiards table; (xiii) discount sales; distress sales, or "going out of business" sales; (xiv) a cinema, a video store or a bookstore any of which are selling, renting or exhibiting primarily material of a pornographic or adult nature; an adult entertainment bar or club or (xv) an arcade. Tenant further covenants and agrees that Tenant shall not use, or suffer or permit any person or persons to use, the Premises or any part thereof for any use or purpose contrary to the provisions of the Rules and Regulations set forth in Exhibit E, attached hereto, or in violation of the laws of the United States, the State of California, or the ordinances, regulations or requirements of the local municipal or county governing body or other lawful authorities having jurisdiction over the Shopping Center (collectively, "**Applicable Laws**") including any Applicable Laws relating to Hazardous Materials (as defined below) or as hazardous materials or substances are defined by Applicable Laws now or hereafter in effect. Tenant shall not do or permit anything to be done in or about the Premises which will in any way damage the reputation of the Shopping Center or obstruct or interfere with the rights of other

000097

tenants or occupants of the Shopping Center, or injure or annoy them or use or allow the Premises to be used for any improper, unlawful or objectionable purpose, nor shall Tenant cause, maintain or permit any nuisance in, on or about the Premises. Tenant shall comply with all recorded covenants, conditions, and restrictions now or hereafter affecting the Premises.

5.3    **Hazardous Substances.**

5.3.1    **Tenant to Comply with Environmental Laws.** Tenant shall comply, at its sole cost, with all Environmental Laws (as defined below). Tenant shall have the obligation to obtain any permits and approvals required with regard to the Premises and Tenant's business operations thereon pursuant to the Environmental Laws.

**"Environmental Laws"** means the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C §9601, et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. §1801 et seq.; the Resource Conservation and Recovery Act of 1976, 42 U.S.C. 6901, et seq.; The Clean Water Act, 33 U.S.C. §466, et seq.; the Safe Drinking Water Act, 14 U.S.C §1401, et seq.; the Superfund Amendment and Reauthorization Act of 1986, Public Law 99-499, 100 State. 1613; the Toxic Substances Control Act, 15 U.S.C §2601, et seq.; as amended; those substances defined as "hazardous waste" "extremely hazardous waste," "restricted hazardous waste" or "hazardous substances" in the Hazardous Waste Control Act, §25100 et. seq. of the California Health and Safety Code; and those materials and substances similarly described in the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. §136 et seq., as amended; the Atomic Energy Act of 1954, 42 U.S.C. §2011 et seq., as amended; the Porter Cologne Water Quality Control Act, §1300 et seq. of the California Health and Safety Code; and in the regulations adopted and publications promulgated pursuant to said laws and any other laws or regulations adopted hereafter regulating the presence, nature, quantity, or use of Hazardous Materials or regulating public health and safety.

**"Hazardous Materials"** means any oil or other petroleum products, flammable explosives, asbestos, polychlorinated biphenyls, lead and lead containing materials, urea formaldehyde insulation, radioactive materials, hazardous wastes, toxic or contaminated substances or similar materials, including any substances which are "hazardous substances," hazardous wastes," or "toxic substances" under any Environmental Law and/or other applicable environmental laws, ordinances or regulations.

5.3.2    **Delivery of Hazardous Materials Disclosure Certificate.** Prior to the commencement of this Lease and at any time during the Term within 10 days after receipt of request from Landlord, Tenant shall complete, execute and deliver to Landlord a Hazardous Materials Disclosure Certificate in the form attached hereto as <u>Exhibit G</u>, or such other form as required by Landlord. Tenant shall not be required to disclose any Hazardous Materials that are used in ordinary office operations and are not present on the Premises in sufficient quantities to subject Tenant to reporting requirements with regard thereto.

5.3.3    **Landlord's Consent Required.** Except for, and to the extent of, the type and quantities of Hazardous Materials specified in the Hazardous Materials Disclosure Certificate, Tenant shall not be entitled to use or store any Hazardous Materials on, in or about

000098

the Premises without obtaining Landlord's prior written consent. If Landlord consents to any such usage or storage, then Tenant shall be permitted to use and/or store only those Hazardous Materials that are necessary to Tenant's business and to the extent disclosed in the then applicable Hazardous Materials Disclosure Certificate and then only to the extent expressly approved by Landlord in writing. As to those items disclosed in the then applicable Hazardous Materials Disclosure Certificate and expressly approved by Landlord, Tenant's usage and storage shall be only to the extent of the quantities as expressly approved by Landlord and such usage and storage shall at all times be in full compliance with any and all Environmental Laws currently existing and as amended. Tenant agrees that any changes to the type and/or quantities of Hazardous Materials specified in the most recent Hazardous Materials Disclosure Certificate may be implemented only with the prior written consent of Landlord, which consent may be given or withheld in Landlord's sole discretion. Tenant shall not be entitled nor permitted to install any tanks under, on or about the Premises for the storage of Hazardous Materials without the prior written consent of Landlord, which may be given or withheld in Landlord's sole discretion. Tenant may maintain any existing underground gasoline and diesel fuel storage tanks (to the extent not removed by the Existing Tenant) on the Premises provided at all times Tenant maintains the same in compliance with Environmental Laws. Landlord shall have the right at any time during the Term (i) to inspect the Premises and (ii) to conduct tests and investigations to determine whether Tenant is in compliance with the provisions of this Section. The costs of such inspections, tests and investigations shall be borne solely by Tenant, if Landlord reasonably believes they are necessary. The rights granted to Landlord herein shall not create (a) a duty on Landlord's part to inspect, test, investigate, monitor or otherwise observe the Premises and the activities of Tenant with respect to Hazardous Materials, including without limitation Tenant's operation, use and any remediation related thereto, or (b) liability on the part of Landlord for Tenant's use, storage, disposal or remediation or Hazardous Materials, it being understood that Tenant shall be solely responsible for all liability in connection therewith.

5.3.4 **Tenant's Business Plan.** Prior to occupying the Premises, Tenant shall give written notification to Landlord that the business in question is subject to the business plan requirements, that the business is in compliance with the provisions of California Health and Safety Code Section 25,500, et. seq., and shall deliver to Landlord a copy of the plan. So long as Tenant's operations on the Premises require the establishment and implementation of a business plan pursuant to California Health and Safety Code §§ 25,500 et. seq. concerning the handling of Hazardous Materials, Tenant shall deliver to Landlord, within thirty (30) days following the filing thereof, a copy of any amendment to the plan. A copy of any amendment to Tenant's hazardous material inventory statement shall also be submitted to Landlord within ten (10) days of submittal to the applicable governmental agency.

5.3.5 **Tenant Indemnity.** Tenant shall be solely responsible for and shall indemnify, protect, defend (by counsel approved by Landlord) and hold harmless Landlord and its agents and employees (collectively the "**Landlord Indemnitees**") from and against any and all claims, costs, penalties, fines, losses which arise during or after the Term as a result of receiving, handling, use, storage, accumulation, transportation, generation, spillage, migration, discharge, or disposal (collectively "**Hazardous Material Act**") of Hazardous Materials in, upon or about the Premises, by Tenant or its agents, employees, contractors, licensees, invitees, subtenants or assignees ("**Tenant's Parties**") including (i) diminution in value of the Premises or

000099

the Adjacent Property; (ii) damages from the loss or restriction on use of rentable or usable space or of any amenity of the Premises or the Adjacent Property; (iii) damages arising from any adverse impact on marketing of the Premises or the Adjacent Property; and (iv) sums paid in settlement of claims, attorneys' fees, consultants' fees, costs of investigation, damages, injuries, causes of action, judgments and expenses. This indemnification of the Landlord Indemnities by Tenant includes without limitation any and all costs incurred in connection with any investigation of site conditions and any clean up, remediation, removal or restoration work required by and federal, state or local governmental agency or political subdivision because of Hazardous Materials present in the soil, sub-soils, groundwater or elsewhere in, on, under or about the Premises or the Adjacent Property as a result of an act or omission by Tenant or Tenant's Parties. This indemnification by Tenant shall survive the termination of this Lease.

5.3.6  **Tenant Remediation.**  If Tenant or its agents, employees, contractors, licensees, or invitees causes, or if the Existing Tenant, or its operation on the Premises has caused, contamination or deterioration of air, water or soil resulting in a level of contamination greater than the maximum levels established from time to time during the Term by any governmental authority having jurisdiction over such contamination, then Tenant shall promptly take any and all action necessary to clean up such contamination in the manner as required by law; provided, however, that  Tenant shall not take any remedial action in response to the presence of any Hazardous Materials in or about the Premises, nor enter into any settlement agreement, consent decree, or other compromise in respect to any claims relating to any Hazardous Materials in any way connected with the Premises, without first notifying the Landlord of Tenant's intention to do so and affording the Landlord ample opportunity to appear, intervene, or otherwise appropriately assert and protect Landlord's interest with respect thereto. If Tenant fails to take such action, Landlord may, but shall not be obligated to, take such action. In such event, all costs incurred by Landlord with respect to such clean up activities shall be for the account of Tenant.

5.3.7  **Tenant Notice to Landlord.**  Tenant shall immediately provide Landlord with telephonic notice, which shall later be confirmed by written notice, of any and all accumulation, spillage, discharge, and disposal of Hazardous Materials onto or within the Premises, and any injuries or damages resulting directly or indirectly there from. Further, Tenant shall deliver to Landlord a copy of each and every notice or order received from governmental agencies concerning Hazardous Materials and the possession, use and/or disposal thereof promptly upon receipt of each such notice or order. In addition, Tenant shall immediately notify Landlord in writing of (i) any enforcement, cleanup, removal, or other governmental or regulatory action instituted, completed, or threatened pursuant to any Environmental Laws, (ii) any claim made or threatened by any person against Tenant or the Premises relating to damage, contribution, cost recovery, compensation, loss or injury resulting from or claimed to result from any Hazardous Materials, and (iii) any reports made to any local, state or federal environmental agency arising out of or in connection with any Hazardous Materials in or removed from the Premises, including any complaints, notices, warnings, or asserted violations relating in any way to the Premises, or Tenant's use thereof.  Tenant shall promptly deliver to Landlord copies of hazardous waste manifests reflecting the legal and proper disposal of all Hazardous Materials removed from the Premises. Landlord shall have the right to enter on the Premises upon twenty-

000100

four (24) hours oral notice to Tenant for the purpose of inspecting the Premises for compliance with all environmental requirements.

5.3.8  **Storage of Hazardous Materials**.  Tenant shall store in appropriate leak-proof containers, double wall underground tanks, or in any other manner approved or prescribed by law, any and all Hazardous Materials permitted within the Premises pursuant to this Agreement, which if discharged or emitted into the atmosphere, upon the ground or into or on any body of water will or may (1) pollute or contaminate the same, or (2) adversely affect (a) the health, safety or welfare of persons, whether on the Premises, or elsewhere, or (b) the condition, use or enjoyment of the Premises, or any real or personal property whether on the Premises or anywhere else, or (c) the Premises or any of the improvements thereto or thereon.

5.3.9  **Tenant's Disposal of Hazardous Materials**.  Notwithstanding anything to the contrary contained in this Section 5.3, Tenant shall not dispose of any Hazardous Materials, regardless of the quantity of concentration, within the drains and plumbing facilities within the Premises or other property of Landlord.  The disposal of Hazardous Materials shall be in approved containers and removed from the Premises only by duly licensed carriers.  If Tenant becomes aware of or suspects the presence of any Hazardous Materials existing within or coming onto the Premises in violation of law, Tenant shall immediately give written notice of such condition to Landlord as required by California Health and Safety Code Section 25359.7.

5.3.10  **Material Safety Data Sheets**.  Tenant shall maintain a Material Safety Data Sheet for each and every Hazardous Material brought into the Premises.  Such information shall be kept current at all times and shall be kept in a place accessible to Landlord at any time for inspection and in the event of an emergency.

5.3.11  **Payment of Fines and Penalties**.  Tenant shall pay, prior to delinquency, and all fees, taxes (including excise taxes) and fines that are charged upon or incident to Tenant's activities related to Hazardous Materials, and shall not allow such obligations to become a lien or charge against the Premises or upon Landlord.

5.3.12  **Copies to Landlord**.  Tenant shall deliver to Landlord true and correct copies of the following documents (the "**Documents**") related to the handling, storage, transportation, disposal and emission of Hazardous Materials, concurrently with the receipt from or submission to a governmental agency:

Permits; approvals, reports and correspondence; storage and management plans, notice of violations of any Environmental Laws; plans relating to the installation of any storage tanks to be installed in, under or around the Premises; and all closure plans or any other documents required by any and all federal, state and local governmental agencies and authorities for any storage tanks installed in, or under the Premises.

5.3.13  **Closure on Lease Termination**.  On or before the expiration of this Lease, Tenant shall take any and all action required to be taken under Environmental Laws in order (i) to surrender the Premises to Landlord in a condition which would be completely free of any and all Hazardous Materials brought in, on or under the Premises by Tenant or Tenant's

000101

Parties; and (ii) as required by Environmental Laws, close or remove any storage tanks on the Premises at the Interim Term Commencement Date or subsequently installed with Landlord's prior written consent in, on or under the Premises. Tenant shall submit to Landlord any and all closure plans required by law. Tenant shall complete its closure within a reasonable time after the delivery of its closure plan to Landlord, and in all events Tenant shall complete its closure and/or removal before the termination of this Lease. Tenant shall submit to Landlord prior to Lease termination copies of appropriate documentation evidencing that all requirements of agencies with jurisdiction over Tenant's closure have been satisfactorily met.

5.3.14 **Landlord's Right of Termination**. Should Tenant breach any promise or fail to timely satisfy any of the conditions contained in this Section, Landlord may, for no additional cause whatsoever, terminate this Lease upon ten days written notice to Tenant.

5.3.15 **Prohibited Substances**. The following substances may not be brought onto the Premises:

Arsines                                   Etching
Asbestos                                  Fluorocarbons
Chlorocarbons                             Freon
Dioxins, including dioxin
precursors and intermediates.

Anything contained in the California List of Extremely Hazardous Chemicals.

## ARTICLE 6
## SERVICES AND UTILITIES

6.1 **Tenant to Obtain and Pay**. During the Term, Tenant shall be solely responsible to contract directly for all water, gas, electricity, telephone and data service, trash collection, sewer service and any other utilities or other services Tenant desires to have at the Premises. Prior to delinquency, Tenant shall pay all charges for water, gas, heat, power, electricity, telephone, data lines, other communication service, trash pickup, janitorial service, sewer, and all other services and utilities supplied to or consumed on the Premises, and all taxes, fees, levies or surcharges therefor.

6.2 **Interruption of Use**. Landlord shall not be liable for damages, abatement of Rent or otherwise, for any interruption or delay in any service, or for any diminution in the quality or quantity thereof, when such failure or delay or diminution is occasioned, in whole or in part, by breakage, repairs, replacements, or improvements, by any strike, lockout or other labor trouble, by inability to secure electricity, gas, water, or other fuel at the Premises, by any riot or other dangerous condition, emergency, accident or casualty whatsoever, by act or default of Tenant or other parties, or by any other cause; and such failures or delays or diminution shall never be deemed to constitute an eviction or disturbance of Tenant's use and possession of the Premises or relieve Tenant from paying Rent or performing any of its obligations under this Lease. Landlord shall not be liable under any circumstances for a loss of, or injury to, property or for injury to, or interference with, Tenant's business, including, without limitation, loss of profits, however occurring, through or in connection with or incidental to a failure to furnish any

000102

services or utilities to the Premises. Any service interruption that arises from events covered in Article 11 shall not be subject to this Section, but shall be governed by Article 11.

## ARTICLE 7
## REPAIRS

Tenant shall, at Tenant's own expense, pursuant to the terms of this Lease, including without limitation Article 8 hereof, keep the Premises, including all improvements, fixtures and furnishings therein, in good order, repair and condition at all times during the Term. "Good order, repair and condition" shall mean to a standard customary in the Mountain View area for first class shopping centers. In addition, at Tenant's own expense, but under the supervision and subject to the prior approval of Landlord, and within any reasonable period of time specified by Landlord, pursuant to the terms of this Lease, including Article 8 hereof, Tenant shall promptly and adequately repair all damage to the Premises and replace or repair all damaged, broken, or worn fixtures and appurtenances, except as otherwise provided in 11 hereof (damage or destruction, the responsibility for which shall be governed by that Article). Without limiting the foregoing, Tenant shall maintain, repair and replace, as necessary to keep the same in good order, repair and condition, all landscaping, asphalt surfaces, curbs and gutters, trash areas, and fuel dispensing islands and shall keep all areas free from trash and debris. If Tenant fails to comply with its obligations hereunder, Landlord may, but need not, perform maintenance, and/or make repairs and replacements that otherwise would be Tenant's responsibility, and Tenant shall pay Landlord's cost thereof (including a percentage of the cost thereof sufficient to reimburse Landlord for all overhead, general conditions, fees and other costs or expenses arising from Landlord's involvement with such repairs and replacements) within 10 days after receipt of an invoice for the work. Landlord may, but shall not be required to, enter the Premises at all reasonable times to perform maintenance, or to make repairs, alterations, improvements or additions to the Premises or to any equipment located in the Premises as Landlord shall desire or deem necessary or as Landlord may be required to do by governmental or quasi-governmental authority or court order or decree. Tenant hereby waives any and all rights under and benefits of subsection 1 of Section 1932 and Sections 1941 and 1942 of the California Civil Code or under any similar law, statute, or ordinance now or hereafter in effect. When used in this Lease, the term "maintenance" shall include all repairs, alterations, replacements, maintenance and/or removals deemed necessary by Landlord to keep the Premises in the required condition.

## ARTICLE 8
## ADDITIONS AND ALTERATIONS

8.1    **Landlord's Consent to Alterations**. Tenant may not make any improvements, alterations, additions or changes to the Premises or any mechanical, plumbing or HVAC facilities or systems pertaining to the Premises (collectively, the **"Alterations"**) without first procuring the prior written consent of Landlord to such Alterations, which consent shall be requested by Tenant not fewer than thirty days prior to the commencement thereof, and which consent shall not be unreasonably withheld by Landlord, provided it shall be deemed reasonable for Landlord to withhold its consent to any Alteration which adversely affects the structural portions or the systems or equipment of the building, is incompatible (as determined by Landlord in its discretion) with the elevations, color scheme or style of the improvements on the Adjacent Property, or for which there is inadequate parking on the Premises. The approval process for

-14-

Tenant's initial improvements on the Premises is set out in <u>Exhibit C</u> attached hereto. Any improvements or Alteration placed by Tenant from time to time on the Premises and any buildings, structures and improvements that Tenant has purchased from the Existing Tenant prior to the Interim Term Commencement Date ("**Prior Tenant Improvements**") and any improvements left on the Premises by the Existing Tenant on the Interim Term Commencement Date are referred to as "**Premises Improvements.**"

8.2    <u>**Manner of Construction.**</u>  Landlord may impose, as a condition of its consent to any and all Alterations or repairs of the Premises or about the Premises, such requirements as Landlord in its sole discretion may deem desirable, including, but not limited to, the requirement that Tenant utilize for such purposes only contractors, subcontractors, materials, mechanics and materialmen selected by Tenant from a list provided and approved by Landlord, the requirement that upon Landlord's request, Tenant shall, at Tenant's expense, remove such Alterations upon the expiration or any early termination of the Term. Tenant shall construct the Tenant Improvements and any subsequent Alterations and perform such repairs in a good and workmanlike manner, in conformance with any and all applicable federal, state, county or municipal laws, rules and regulations and pursuant to a valid building permit issued by the City of Mountain View. In performing the Tenant Improvement work and any Alterations, Tenant shall have the work performed in such manner so as not to obstruct access to the Shopping Center or any portion thereof, and so as not to obstruct the business of Landlord or other tenants in the Shopping Center. In addition to Tenant's obligations under <u>Article 9</u> of this Lease, upon completion of the Tenant Improvement work and any Alterations, Tenant agrees to cause a Notice of Completion to be recorded in the office of the Recorder of the County of Santa Clara in accordance with Section 3093 of the Civil Code of the State of California or any successor statute, and Tenant shall deliver to the Landlord a reproducible copy of the "as built" drawings of the Alterations as well as all permits, approvals and other documents issued by any governmental agency in connection with the Alterations.

8.3    <u>**Payment for Improvements.**</u>  Tenant shall protect, defend, indemnify and hold Landlord harmless from any liability, cost, obligation, expense or claim of lien in any manner relating to the installation, placement, removal or financing of any Alterations, improvements, fixtures and/or equipment in, on or about the Premises, which obligations of Tenant shall survive the expiration or earlier termination of this Lease. If payment is made directly to contractors, Tenant shall comply with Landlord's requirements for final lien releases and waivers in connection with Tenant's payment for work to contractors. Whether or not Tenant orders any work directly from Landlord, Tenant shall pay to Landlord a percentage of the cost of such work sufficient to compensate Landlord for all overhead, general conditions, fees and other costs and expenses arising from Landlord's involvement with such work. Before beginning any Alterations, Tenant shall deliver to Landlord reasonably satisfactory evidence that Tenant has funds sufficient to pay in full the cost of the Alterations.

8.4    <u>**Construction Insurance.**</u>  In addition to the requirements of <u>Article 10</u> of this Lease, when Tenant constructs the Tenant Improvements and any Alterations, prior to the commencement of the work, Tenant shall provide Landlord with evidence that Tenant carries "Builder's All Risk" insurance in an amount approved by Landlord covering the construction of such Alterations, and such other insurance as Landlord may require, it being understood and agreed that all Tenant construction shall be insured by Tenant pursuant to <u>Article 10</u> of this

000104

Lease immediately upon completion thereof. In addition, Landlord may, in its discretion, require Tenant to obtain a lien and completion bond or some alternate form of security satisfactory to Landlord in an amount sufficient to ensure the lien-free completion of such Alterations and naming Landlord as a co-obligee.

8.5 **Improvement Ownership During Term**. All improvements constructed or caused to be constructed on the Premises by Tenant as permitted or required by this Lease, subject to the terms of this Lease, shall be and remain the property of Tenant during the Term. At the end of the Term, Landlord may elect to become the owner of any Alterations and any Prior Tenant Improvements, without payment of any sums to Tenant.

8.6 **Removal at Lease Expiration Date**. Landlord may, by written notice to Tenant given: (a) when Landlord gives its approval of any Alteration; or (b) prior to the Lease Termination Date, require Tenant, at Tenant's expense, to remove the Tenant Improvements and/or any Alterations or improvements in the Premises and/or any Prior Tenant Improvements and to repair any damage to the Premises caused by such removal, all in accordance with Section 15.1. Notwithstanding any other provision in this Lease, unless Landlord delivers to Tenant written notice that Tenant may leave some, or all of the same in place, prior to the Lease Termination Date, at Tenant's expense, Tenant shall remove all Prior Tenant Improvements, underground tanks and piping, sumps, fuel pumps and all other fuel dispensing equipment or improvements.

## ARTICLE 9
## COVENANT AGAINST LIENS

Tenant shall keep the Premises free from any liens or encumbrances arising out of the work performed, materials furnished or obligations incurred by or on behalf of Tenant, and shall protect, defend, indemnify and hold Landlord harmless from and against any claims, liabilities, judgments or costs (including, without limitation, reasonable attorneys' fees and costs) arising out of same or in connection therewith. Tenant shall give Landlord notice at least twenty (20) days prior to the commencement of any such work on the Premises (or such additional time as may be necessary under applicable laws) to afford Landlord the opportunity of posting and recording appropriate notices of non-responsibility. Tenant shall remove any lien or encumbrance by bond or otherwise within five days after notice by Landlord, and if Tenant shall fail to do so, Landlord may pay the amount necessary to remove such lien or encumbrance, without being responsible for investigating the validity thereof. The amount so paid shall be deemed Additional Rent under this Lease payable upon demand, without limitation as to other remedies available to Landlord under this Lease. Nothing contained in this Lease shall authorize Tenant to do any act which shall subject Landlord's title to the Premises to any liens or encumbrances whether claimed by operation of law or express or implied contract.

## ARTICLE 10
## INSURANCE

10.1 **Indemnification and Waiver**. Tenant hereby assumes all risk of damage to property or injury to persons in, upon or about the Premises from any cause whatsoever and agrees that Landlord, its partners, and their respective officers, agents, servants, employees, and

000105

independent contractors (collectively, "**Landlord Parties**") shall not be liable for, and are hereby released from any responsibility for, any damage either to person or property or resulting from the loss of use thereof or any Tenant loss of business, which damage is sustained by Tenant or by other persons claiming through Tenant. Tenant shall indemnify, defend, protect, and hold harmless the Landlord Parties from any and all loss, cost, damage, expense and liability (including without limitation court costs and reasonable attorneys' fees) incurred in connection with or arising from any cause in, on or about the Premises, any acts, omissions or negligence of Tenant or of any person claiming by, through or under Tenant, or of the contractors, agents, servants, employees, invitees, guests or licensees of Tenant or any such person, in, on or about the Premises or any breach of the terms of this Lease, either prior to, during, or after the expiration of the Term, provided that the terms of the foregoing indemnity shall not apply to the sole gross negligence or willful misconduct of Landlord. Should Landlord be named as a defendant in any suit brought against Tenant in connection with or arising out of Tenant's occupancy of the Premises, Tenant shall pay to Landlord its costs and expenses incurred in such suit, including without limitation, its actual professional fees such as appraisers', accountants' and attorneys' fees. Further, Tenant's agreement to indemnify Landlord pursuant to this <u>Section 10.1</u> is not intended and shall not relieve any insurance carrier of its obligations under policies required to be carried by Tenant pursuant to the provisions of this Lease, to the extent such policies cover the matters subject to Tenant's indemnification obligations; nor shall any insurance policy supersede any inconsistent agreement of the parties set forth in any other provision of this Lease. The provisions of this <u>Section 10.1</u> shall survive the expiration or sooner termination of this Lease with respect to any claims or liability arising in connection with any event occurring prior to such expiration or termination.

      10.2    **Tenant's Insurance**. During the Term, Tenant shall maintain the following coverages in the following amounts.

      10.2.1 Commercial General Liability Insurance covering the insured against claims of bodily injury, personal injury and property damage (including loss of use thereof) arising out of Tenant's operations, and contractual liabilities (covering the performance by Tenant of its indemnity agreements) including a Broad Form endorsement covering the insuring provisions of this Lease and the performance by Tenant of the indemnity agreements set forth in <u>Section 10.1</u> of this Lease, for limits of liability not less than:

| | |
|---|---|
| Bodily Injury and<br>Property Damage Liability | $5,000,000 each occurrence<br>$5,000,000 annual aggregate |
| Personal Injury Liability | $5,000,000 each occurrence<br>$5,000,000 annual aggregate |

      10.2.2 Physical Damage Insurance covering (i) all office furniture, business and trade fixtures, office equipment, free-standing cabinet work, movable partitions, merchandise and all other items of Tenant's property on the Premises installed by, for, or at the expense of Tenant, (ii) the "Tenant Improvements," as that term is defined in <u>Exhibit C</u>, (iii) and the Prior Tenant Improvements, and (iv) all other improvements, alterations and additions to the Premises. Such insurance shall be written on an "all risks" of physical loss or damage basis, for the full

000106

replacement cost value (subject to reasonable deductible amounts) new without deduction for depreciation of the covered items and in amounts that meet any co-insurance clauses of the policies of insurance and shall include coverage for damage or other loss caused by fire or other peril including, but not limited to, vandalism and malicious mischief, theft, water damage of any type, including sprinkler leakage, bursting or stoppage of pipes, and explosion, and providing business interruption coverage for a period of one year.

10.2.3 Worker's Compensation and Employer's Liability or other similar insurance pursuant to all applicable state and local statutes and regulations.

10.2.4 Pollution Liability coverage with limits of liability of not less than one million dollars per occurrence and two million dollars aggregate for bodily injury, personal injury, property damage and clean up costs (both on the Premises and off the Premises). Any deductibles shall be subject to Landlord's prior written approval, which shall not be unreasonably withheld.

10.3    **Form of Policies**.  The minimum limits of policies of insurance required of Tenant under this Lease shall in no event limit the liability of Tenant under this Lease.  Such insurance shall (i) name Landlord, and any other party the Landlord so specifies, as an additional insured, including Landlord's managing agent, if any; (ii) specifically cover the liability assumed by Tenant under this Lease, including, but not limited to, Tenant's obligations under Section 10.1 of this Lease; (iii) be issued by an insurance company having a rating of not less than A-X in Best's Insurance Guide or which is otherwise acceptable to Landlord and licensed to do business in the State of California; (iv) be primary insurance as to all claims thereunder and provide that any insurance carried by Landlord is excess and is non-contributing with any insurance requirement of Tenant; (v) be in form and content reasonably acceptable to Landlord; and (vi) provide that said insurance shall not be canceled or coverage changed unless thirty (30) days' prior written notice shall have been given to Landlord and any mortgagee of Landlord (whose address has been provided to Tenant).  Tenant shall deliver said policy or policies or certificates thereof to Landlord on or before the Interim Term Commencement Date and at least thirty (30) days before the expiration dates thereof.  In the event Tenant shall fail to procure such insurance, or to deliver such policies or certificate, Landlord may, at its option but shall have no obligation to do so, procure such policies for the account of Tenant, and the cost thereof shall be paid to Landlord within five (5) days after delivery to Tenant of bills therefore.

10.4    **Subrogation**.  Landlord and Tenant intend that their respective property loss risks shall be borne by insurance carriers to the extent above provided or to the extent either party carries insurance with more expansive coverage, and Landlord and Tenant hereby agree to look solely to, and seek recovery only from, their respective insurance carriers in the event of a property loss to the extent that such coverage is agreed to be provided hereunder or is carried by such party.  The parties each hereby waive all rights and claims against each other for such losses, and waive all rights of subrogation of their respective insurers, provided such waiver of subrogation shall not affect the right to the insured to recover thereunder.  The parties agree that their respective insurance policies are now, or shall be, endorsed such that the waiver of subrogation shall not affect the right of the insured to recover thereunder, so long as no material additional premium is charged therefor.

000107

10.5 **Additional Insurance Obligations.** Tenant shall carry and maintain during the entire Lease Term, at Tenant's sole cost and expense, in amounts of the insurance required to be carried by Tenant pursuant to this Article 10 and such other reasonable types of insurance coverage and in such reasonable amounts (including from time to time increases in the coverages required hereunder) covering the Premises and Tenant's operations therein, as may be reasonably requested by Landlord from time to time.

10.6 **Landlord's Insurance.** At its option and in addition to the Tenant insurance required by this Article 10, beginning on the Interim Term Commencement Date Landlord may maintain Commercial General Liability Insurance covering Landlord against claims of bodily injury, personal injury and property damage (including loss of use thereof) including a Broad Form endorsement, for limits of liability not less than:

| | |
|---|---|
| Bodily Injury and Property Damage Liability | $5,000,000 each occurrence<br>$5,000,000 annual aggregate |
| Personal Injury Liability | $5,000,000 each occurrence<br>$5,000,000 annual aggregate |

Tenant shall reimburse Landlord for the cost of Landlord's Insurance within 15 days from receipt of an invoice, provided the cost shall be prorated for any period to which the insurance applies that begins before the Interim Term Commencement Date or ends after the Lease Termination Date.

## ARTICLE 11
## DAMAGE AND DESTRUCTION

11.1 **Damage or Destruction.** If the Premises Improvements are damaged or destroyed, then except as otherwise provided in this Article, Tenant shall restore and rebuild the Premises Improvements as nearly as practicable to their condition immediately prior to such damage or destruction or with such changes or alterations as may be in conformity with the provisions of this Lease relating to changes or alterations. Lack of funds shall not be deemed a reasonable excuse for Tenant's failure to commence or complete the rebuilding, except as otherwise provided in this Article. Upon a damage or destruction, all insurance proceeds paid in respect of the damage or destruction shall be applied to the payment of the costs of the restoration required to be performed by Tenant pursuant to this Lease, and as otherwise provided in this Article. The insurance proceeds shall be held in trust by a financial institution (the "**Insurance Trustee**") agreed upon by Landlord and Tenant, with the costs of such trust to be a first charge against the insurance proceeds. After the completion of the restoration of the Premises Improvements, and expiration of all lien periods without any lien being filed, any remaining insurance proceeds shall be paid to Tenant and Tenant shall be entitled to retain the same.

If the funds deposited with the Insurance Trustee are insufficient to pay all costs and expenses of the restoration, Tenant shall indicate, in its notice of rebuilding, Tenant's source of

000108

funds to pay for costs in excess of the insurance proceeds. Before commencing the restoration Tenant shall deposit with the Insurance Trustee the sum which, when added to the insurance proceeds, will be sufficient to pay all costs, direct and indirect, of rebuilding.

11.2   **Tenant Restoration**.   Tenant shall commence work on the restoration of any damage or destruction of Premises Improvements within one hundred eighty days following the damage or destruction and diligently and continuously shall carry out the restoration to full completion as soon as practicable.   The restoration by Tenant following any damage or destruction shall be in accordance with the provisions of Article 8 above.

11.3   **Disbursement of Funds**.   The Insurance Trustee shall disburse funds only on a periodic basis approved by Landlord and Tenant, and only upon receipt of invoices and other documentation, certified as correct by Tenant's architect, evidencing satisfactory completion of the work for which payment is requested ("**Payment Request**"). Further, the Insurance Trustee shall not disburse any funds unless the payment request is accompanied by (i) signed conditional waiver and release on progress payment in form complying with California law relating to all labor and materials described in the Payment Request and (ii) signed unconditional waiver and release upon progress payment in form complying with California law releasing all claims for labor and materials described in the immediately preceding Payment Request.

11.4   **Notice Required**.   In the event of material damage to or destruction of the Premises Improvements, or any part thereof, Tenant shall promptly give Landlord notice of such occurrence and take all actions reasonably required to protect against hazards caused by such damage or destruction.

11.5   **Commencement of Restoration Defined**.   Tenant shall be deemed to have commenced the restoration process when it engages an architect and is diligently pursuing resolution of claims with Tenant's insurer.

11.6   **Obligation to Continue Paying Rent**.   Tenant's obligation to make payments of Base Rent and Additional Rent and to perform all its other Lease covenants and conditions shall not be affected by any damage or destruction of the Premises Improvements by any cause whatsoever, and Tenant hereby waives the provisions of any contrary statute or law now or hereafter in effect including the provisions of California Civil Code Sections 1932, 1933(3) and (4) and 1942.

## ARTICLE 12
## NONWAIVER

No provision of this Lease shall be deemed waived by either party hereto unless expressly waived in a writing signed thereby. The waiver by either party hereto of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent breach of same or any other term, covenant or condition herein contained. The subsequent acceptance of Rent hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant or condition of this Lease, other than the failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent. No acceptance of a lesser amount

000109

than the Rent herein stipulated shall be deemed a waiver of Landlord's right to receive the full amount due, nor shall any endorsement or statement on any check or payment or any letter accompanying such check or payment be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the full amount due. No receipt of monies by Landlord from Tenant after the termination of this Lease shall in any way alter the length of the Term or of Tenant's right of possession hereunder, or after the giving of any notice shall reinstate, continue or extend the Term or affect any notice given Tenant prior to the receipt of such monies, it being agreed that after the service of notice or the commencement of a suit, or after final judgment for possession of the Premises, Landlord may receive and collect any Rent due, and the payment of said Rent shall not waive or affect any notice, suit or judgment.

## ARTICLE 13
## CONDEMNATION

If the whole or any part of the Premises or Premises Improvements shall be taken by power of eminent domain or condemned by any competent authority for any public or quasi-public use or purpose, this Lease shall continue. If more than twenty-five percent (25%) of the rentable square feet of the Premises is taken, or if access to the Premises is substantially impaired, in each case for a period in excess of one hundred eighty (180) days, either party shall have the option to terminate this Lease effective as of the date possession is required to be surrendered to the authority. Tenant shall not assert any claim against Landlord or the condemning authority for any compensation because of such taking and Landlord shall be entitled to the entire award or payment in connection therewith, except that Tenant shall have the right to file any separate claim available to Tenant for any taking of the Premises Improvements, and for Tenant's personal property and fixtures belonging to Tenant and removable by Tenant upon expiration of the Term pursuant to the terms of this Lease, and for moving expenses, so long as such claims do not diminish the award available to Landlord, and such claim is payable separately to Tenant. Tenant shall not be entitled to recover any so-called "bonus value" of its leasehold interest in this Lease. If the Lease continues following a taking, so long as the taking does not reduce the number of fuel pumps on the Property, Base Rent shall remain unchanged following the taking. If any fuel pump must be permanently removed as a result of the taking, the Base Rent shall be equitably reduced to reflect the loss of use by Tenant as of the date such fuel pump no longer can be used. Tenant hereby waives any and all rights it might otherwise have pursuant to Section 1265.130 of The California Code of Civil Procedure. Notwithstanding anything to the contrary contained in this Article 13, in the event of a temporary taking of all or any portion of the Premises for a period of one hundred and eighty (180) days or less, then this Lease shall not terminate but Tenant shall be entitled to receive the proceeds from the temporary taking.

## ARTICLE 14
## ASSIGNMENT AND SUBLETTING

14.1  **Transfers**.  Tenant shall not, without the prior written consent of Landlord, assign, mortgage, pledge, hypothecate, encumber, or permit any lien to attach to, or otherwise transfer, this Lease or any interest hereunder, permit any assignment, or other transfer of this Lease or any interest hereunder by operation of law, sublet the Premises or any part thereof, or

000110

enter into any license or concession agreements or otherwise permit the occupancy or use of the Premises or any part thereof by any persons other than Tenant and its employees and contractors (all of the foregoing are hereinafter sometimes referred to collectively as "**Transfers**" and any person to whom any Transfer is made or sought to be made is hereinafter sometimes referred to as a "**Transferee**"). If Tenant desires Landlord's consent to any Transfer, Tenant shall notify Landlord in writing, which notice (the "**Transfer Notice**") shall include (i) the proposed effective date of the Transfer, which shall not be fewer than thirty days nor more than one hundred eighty days after the date of delivery of the Transfer Notice, (ii) a description of the portion of the Premises to be transferred (the "**Subject Space**"), (iii) all of the terms of the proposed Transfer and the consideration therefor, including calculation of the "Transfer Premium" (as that term is defined in Section 14.3 below), in connection with such Transfer, the name and address of the proposed Transferee, and a copy of all existing executed and/or proposed documentation pertaining to the proposed Transfer, including all existing operative documents to be executed to evidence such Transfer or the agreements incidental or related to such Transfer, provided that Landlord shall have the right to require Tenant to utilize Landlord's standard Transfer documents in connection with the documentation of such Transfer, (iv) current financial statements of the proposed Transferee certified by an officer, partner or owner thereof, business credit and personal references and history of the proposed Transferee and any other information required by Landlord which will enable Landlord to determine the financial responsibility, character, and reputation of the proposed Transferee, nature of such Transferee's business and proposed use of the Subject Space and (v) an signed estoppel certificate from Tenant in the form of Exhibit F attached hereto. Any Transfer made without Landlord's prior written consent shall, at Landlord's option, be null, void and of no effect, and shall, at Landlord's option, constitute a default by Tenant under this Lease. Whether or not Landlord consents to any proposed Transfer, Tenant shall pay Landlord's review and processing fees, as well as any reasonable professional fees (including, without limitation, attorneys', accountants', architects', engineers' and consultants' fees) incurred by Landlord, within thirty days after written request by Landlord.

14.2    **Landlord's Consent**.   Landlord shall not unreasonably withhold its consent to any proposed Transfer of the Subject Space to the Transferee on the terms specified in the Transfer Notice. Without limitation as to other reasonable grounds for withholding consent, the parties hereby agree that it shall be reasonable under this Lease and under any applicable law for Landlord to withhold consent to any proposed Transfer where one or more of the following apply:

14.2.1 The Transferee is of a character or reputation or engaged in a business which is not consistent with the quality of the Shopping Center, or would be a significantly less prestigious occupant of the Premises than Tenant;

14.2.2 The Transferee intends to use the Subject Space for purposes other than the Permitted Use;

14.2.3 The Transferee is either a governmental agency or instrumentality thereof;

000111

14.2.4 The Transferee is not a party of reasonable financial worth and/or financial stability in light of the responsibilities to be undertaken in connection with the Transfer on the date consent is requested;

14.2.5 Guarantor has not consented, in writing, to the Transfer;

14.2.6 The Transferee does not have sufficient experience and capacity, in Landlord's reasonable judgment, to assure Landlord that the Transferee is likely to operate the Premises, and the Hazardous Materials located thereon, in full compliance with all Applicable Laws and to protect Landlord from the potential liability attendant upon Hazardous Material releases, non-compliance with applicable reporting requirements and lack of experience with such matters; or

14.2.7 The Transferee does not hold a franchise agreement (or other acceptable contractual agreement) with a recognized gasoline refiner or distributor for the sale of gasoline and diesel fuel on the Premises.

If Landlord consents to any Transfer pursuant to the terms of this Section 14.2, Tenant may within six (6) months after Landlord's consent, but not later than the expiration of said six-month period, enter into such Transfer of the Premises or portion thereof, upon substantially the same terms and conditions as are set forth in the Transfer Notice furnished by Tenant to Landlord pursuant to Section 14.1 of this Lease. Tenant shall indemnify, defend and hold harmless Landlord from any and all liability, losses, claims, damages, costs, expenses, causes of action and proceedings involving any third party or parties (including without limitation Tenant's proposed subtenant or assignee) who claim they were damaged by Landlord's wrongful withholding or conditioning of Landlord's consent.

14.3    **Transfer Premium**.    If Landlord consents to a Transfer, as a condition thereto which the parties hereby agree is reasonable, Tenant shall pay to Landlord fifty percent (50%) of any "Transfer Premium," as that term is defined in this Section 14.3, received by Tenant from such Transferee. **"Transfer Premium"** shall mean all rent, additional rent or other consideration payable by such Transferee in connection with the Transfer in excess of the Rent and Additional Rent payable by Tenant under this Lease during the term of the Transfer on a per rentable square foot basis (if fewer than all of the Premises is transferred) after deducting the reasonable expenses incurred by Tenant for (i) any changes, alterations and improvements to the Premises in connection with the Transfer, (ii) any free base rent reasonably provided to the Transferee, and (iii) any brokerage commissions and attorneys' fees in connection with the Transfer. "Transfer Premium" shall also include, but not be limited to, key money, bonus money or other cash consideration paid by Transferee to Tenant in connection with such Transfer, and any payment in excess of fair market value for services rendered by Tenant to Transferee or for assets, fixtures, inventory, equipment, or furniture transferred by Tenant to Transferee in connection with such Transfer.

14.4    **Effect of Transfer**.    If Landlord consents to a Transfer, (i) the terms and conditions of this Lease shall in no way be deemed to have been waived or modified, (ii) such consent shall not be deemed consent to any further Transfer by either Tenant or a Transferee, (iii) Tenant shall deliver to Landlord, promptly after execution, an original executed copy of all

000112

documentation pertaining to the Transfer in form reasonably acceptable to Landlord, (iv) Tenant shall furnish upon Landlord's request a complete statement, certified by an independent certified public accountant, or Tenant's chief financial officer, setting forth in detail the computation of any Transfer Premium Tenant has derived and shall derive from such Transfer, and (v) no Transfer relating to this Lease or agreement entered into with respect thereto, whether with or without Landlord's consent, shall relieve Tenant or any guarantor of the Lease from any liability under this Lease. Landlord or its authorized representatives shall have the right at all reasonable times to audit the books, records and papers of Tenant relating to any Transfer, and shall have the right to make copies thereof.

14.5    **Additional Transfers**. For purposes of this Lease, the term "Transfer" shall also include (i) if Tenant is a partnership, the withdrawal or change, voluntary, involuntary or by operation of law, of fifty percent (50%) or more of the partners, or transfer of fifty percent (50%) or more of partnership interests, within a twelve (12)-month period, or the dissolution of the partnership without immediate reconstitution thereof, and (ii) if Tenant is a closely held corporation (i.e., whose stock is not publicly held and not traded through an exchange or over the counter), (A) the dissolution, merger, consolidation or other reorganization of Tenant or (B) the sale or other transfer of an aggregate of fifty percent (50%) or more of the voting shares of Tenant (other than to immediate family members by reason of gift or death), within a twelve (12)-month period, or (C) the sale, mortgage, hypothecation or pledge of an aggregate of fifty percent (50%) or more of the value of the unencumbered assets of Tenant within a twelve (12)-month period.

14.6    **Occurrence of Default**. Any Transfer hereunder shall be subordinate and subject to the provisions of this Lease, and if this Lease shall be terminated during the term of any Transfer, Landlord shall have the right to: (i) treat such Transfer as cancelled and repossess the Subject Space by any lawful means, or (ii) require that such Transferee attorn to and recognize Landlord as its landlord under any such Transfer. If Tenant shall be in default under this Lease, Landlord is hereby irrevocably authorized, as Tenant's agent and attorney-in-fact, to direct any Transferee to make all payments under or in connection with the Transfer directly to Landlord (which Landlord shall apply towards Tenant's obligations under this Lease) until such default is cured. Such Transferee shall rely on any representation by Landlord that Tenant is in default hereunder, without any need for confirmation thereof by Tenant. Upon any assignment, the assignee shall assume in writing all obligations and covenants of Tenant thereafter to be performed or observed under this Lease. No collection or acceptance of rent by Landlord from any Transferee shall be deemed a waiver of any provision of this Article 14 or the approval of any Transferee or a release of Tenant from any obligation under this Lease, whether theretofore or thereafter accruing. In no event shall Landlord's enforcement of any provision of this Lease against any Transferee be deemed a waiver of Landlord's right to enforce any term of this Lease against Tenant or any other person. If Tenant's obligations hereunder have been guaranteed, Landlord's consent to any Transfer shall not be effective unless the guarantor also consents to such Transfer.

000113

**ARTICLE 15**
**SURRENDER OF PREMISES; OWNERSHIP AND**
**REMOVAL OF TRADE FIXTURES**

15.1    **Ownership During Term**.

15.1.1 **Premises Improvements**.  All Premises Improvements constructed or caused to be constructed on the Premises by Tenant as permitted or required by this Lease, subject to the terms of this Lease, shall be and remain the property of Tenant during the Term.

15.1.2 **Personal Property**.  Tenant shall provide all personal property reasonably required for normal operation of the Premises to the standard required in this Lease.  During the Term, all personal property, furnishings, fixtures and equipment installed by Tenant in, on or around the Premises which are attached to the Premises and can be removed without substantial damage to the Premises Improvements or the Premises shall be the personal property of Tenant (the "**Personal Property**").  At any time during the Term, Tenant shall have the right to remove the Personal Property, provided Tenant shall repair any damage caused by the removal of Personal Property and shall replace the removed Personal Property with property of equal or better quality as and to the extent required for the continued operation of the Premises to the standard required in this Lease.  Personal Property shall exclude any portion or part of major building components or fixtures necessary for the operation of the basic building systems for the Premises (such as carpeting, window coverings, chillers, boilers, plumbing, electrical systems, lighting, sanitary fixtures ,HVAC systems, and all underground tanks and piping), which items shall be deemed part of the Premises Improvements.

15.2    **Ownership at Lease Termination**.

15.2.1 **Premises Improvements**.  Subject to Landlord's right to require their removal, upon Lease termination the Premises Improvements shall unconditionally be and become the property solely of Landlord, and no compensation therefor shall be due or paid by Landlord to Tenant for any part thereof and this Lease shall operate as a conveyance and assignment thereof.  Except as otherwise required in this Lease, upon the Lease Termination Date, Tenant shall surrender to Landlord the Premises and the Premises Improvements in reasonably good condition and repair, reasonable wear and tear excepted, free and clear of all liens, claims, and encumbrances caused by Tenant.  "Reasonable wear and tear," when used in this Lease, shall mean wear and tear caused by aging, use and other conditions which occur notwithstanding the application of standards for maintenance, repair and replacement typical of other similar first class shopping centers of comparable age.  Reasonable wear and tear is not intended, nor shall it be construed, to include items of neglected or deferred maintenance which would have or should have been attended to during the Term if such standards for maintenance, repair and replacement as are typical of similar first class shopping centers in Mountain View, California had been applied.

15.2.2 **Personal Property**.  No later than the Lease Termination Date, Tenant shall remove its Personal Property and leave the Premises in "broom clean" condition. If any of Tenant's Personal Property remains on the Premises for 30 days after the Lease Termination

000114

Date, it shall be deemed abandoned and Landlord may dispose of it in accordance with law, in which case Tenant shall reimburse Landlord for all costs and expenses of the disposal.

15.3    **Lease Termination Activities..**

15.3.1  **Condition of Premises at Lease Termination**.  Landlord has entered this Lease in reliance on the fact that, at Lease Termination, Landlord will receive from Tenant the Premises Improvements in the condition required by Section 15.2.  At any time during the last twenty four (24) months of the Term, Landlord may inspect the Premises Improvements to confirm that the Premises Improvements are being properly maintained as required herein. Following its inspection, Landlord may deliver to Tenant written notification of any portions of the Premises Improvements which Landlord has determined are not being properly maintained and Tenant shall promptly comply with the provisions of this Lease regarding such items; provided, the failure of Landlord to inspect or to notify Tenant of any default hereunder shall not be a waiver of Landlord's right to enforce Tenant's maintenance and repair obligations hereunder.

15.3.2  **Environmental Report**.  Not later than 60 days prior to the expiration of the Term, Tenant shall deliver to Landlord a report, prepared by a reputable environmental consultant, covering the Premises and reflecting the then current environmental status of the Premises.  If the report recommends any testing, magnetic or other imaging or further work to properly assess the environmental status of the Premises, Tenant shall cause such recommended work to be performed and shall deliver to Landlord the results of such report.  In accordance with Section 5.3, Tenant shall perform all work required to place the Premises in condition acceptable to regulatory agencies having jurisdiction, or to remediate the Premises to a status such that all levels of Hazardous Materials are below "reporting levels."

15.4    **Surrender of Premises**.  No act or thing done by Landlord or any agent or employee of Landlord during the Term shall be deemed to constitute an acceptance by Landlord of a surrender of the Premises unless such intent is specifically acknowledged in writing by Landlord.  The delivery of keys to the Premises to Landlord or any agent or employee of Landlord shall not constitute a surrender of the Premises or effect a termination of this Lease, whether or not the keys are thereafter retained by Landlord, and notwithstanding such delivery Tenant shall be entitled to the return of such keys at any reasonable time upon request until this Lease shall have been properly terminated.  The voluntary or other surrender of this Lease by Tenant, whether accepted by Landlord or not, or a mutual termination hereof, shall not work a merger unless Landlord so elects, and at the option of Landlord shall operate as an assignment to Landlord of all subleases or subtenancies affecting the Premises or terminate any or all such sublessees or subtenancies.

15.5    **Landlord Right to Require Removal of Premises Improvements**. Notwithstanding any other provision in this Lease, upon the expiration or any earlier termination of this Lease, Landlord shall have the right to require Tenant to remove some, or all, of the Premises Improvements, to fill any excavations required for such removal with clean fill, to compact any fill and to remove any or all underground and above ground installations and improvements. Tenant shall have the right by delivery to Landlord of written notice not later than 90 days before the end of the Term, to extend this Lease for a period not to exceed 60 days for

000115

sole purpose of completing its removal obligations hereunder (and Tenant shall not operate is business during such period), provided all terms of this Lease, including the obligation to pay Rent, shall remain in full force and effect during the extended term.

## ARTICLE 16
## HOLDING OVER

If Tenant holds over after the expiration of the Lease Term or earlier termination thereof, with or without the express or implied consent of Landlord, such tenancy shall be from month-to-month only, and shall not constitute a renewal hereof or an extension for any further term, and in such case Base Rent shall be payable at a monthly rate equal to one hundred fifty percent (150%) times the Base Rent applicable during the last rental period of the Lease Term under this Lease. Such month-to-month tenancy shall be subject to every other applicable term, covenant and agreement contained herein. Nothing contained in this Article 16 shall be construed as consent by Landlord to any holding over by Tenant, and Landlord expressly reserves the right to require Tenant to surrender possession of the Premises to Landlord as provided in this Lease upon the expiration or other termination of this Lease. The provisions of this Article 16 shall not be deemed to limit or constitute a waiver of any other rights or remedies of Landlord provided herein or at law. If Tenant fails to surrender the Premises upon the termination or expiration of this Lease, in addition to any other liabilities to Landlord accruing therefrom, Tenant shall protect, defend, indemnify and hold Landlord harmless from all loss, costs (including reasonable attorneys' fees) and liability resulting from such failure, including, without limiting the generality of the foregoing, any claims made by any succeeding tenant founded upon such failure to surrender and any lost profits to Landlord resulting therefrom.

## ARTICLE 17
## ESTOPPEL CERTIFICATES

Within ten (10) days following a request in writing by Landlord, Tenant shall execute, acknowledge and deliver to Landlord an estoppel certificate, which, as submitted by Landlord, shall be substantially in the form of Exhibit F, attached hereto (or such other form as may be required by any prospective mortgagee or purchaser of the Premises), indicating therein any exceptions thereto that may exist at that time, and shall also contain any other information reasonably requested by Landlord or Landlord's mortgagee or prospective mortgagee. Any certificate may be relied upon by any prospective mortgagee or purchaser of all or any portion of the Premises. Tenant shall execute and deliver whatever other instruments may be reasonably required for such purposes. At any time during the Term, Landlord may require Tenant to provide Landlord with a current financial statement and financial statements of the two (2) years prior to the current financial statement year. Such statements shall be prepared in accordance with generally accepted accounting principles and, if such is the normal practice of Tenant, shall be audited by an independent certified public accountant. Failure of Tenant to timely execute, acknowledge and deliver such estoppel certificate or other instruments shall constitute an acceptance of the Premises and an acknowledgment by Tenant that statements included in the estoppel certificate are true and correct, without exception.

000116

# ARTICLE 18
## SUBORDINATION

This Lease shall be subject and subordinate to the lien of any mortgage, trust deed or other encumbrances now or hereafter in force against the Premises, and to all renewals, extensions, modifications, consolidations and replacements thereof, and to all advances made or hereafter to be made upon the security of such mortgages or trust deeds, unless the holders of such mortgages, trust deeds or other encumbrances, require in writing that this Lease be superior thereto. Tenant covenants and agrees in the event any proceedings are brought for the foreclosure of any mortgage or deed in lieu thereof, to attorn, without any deductions or set-offs whatsoever, to the lienholder or purchaser or any successors thereto upon any such foreclosure sale or deed in lieu thereof, if so requested to do so by such purchaser or lienholder, and to recognize such purchaser or lienholder as the landlord under this Lease, provided such lienholder or purchaser shall agree to accept this Lease and not disturb Tenant's occupancy, so long as Tenant timely pays the Rent and observes and performs the terms, covenants and conditions of this Lease to be observed and performed by Tenant. Landlord's interest herein may be assigned as security at any time to any lienholder. Tenant shall, within five (5) days of request by Landlord, execute such further instruments or assurances as Landlord may reasonably deem necessary to evidence or confirm the subordination or superiority of this Lease to any such mortgages, trust deeds, ground leases or underlying leases. Tenant waives the provisions of any current or future statute, rule or law which may give or purport to give Tenant any right or election to terminate or otherwise adversely affect this Lease and the obligations of the Tenant hereunder in the event of any foreclosure proceeding or sale.

# ARTICLE 19
## DEFAULTS; REMEDIES

19.1    **Events of Default**. The occurrence of any of the following shall constitute a default of this Lease by Tenant:

19.1.1 Any failure by Tenant to pay any Rent or any other charge required to be paid under this Lease, or any part thereof, when due; or

19.1.2 The failure by Tenant to observe or perform according to the provisions of Article 5 (Use), Article 14 (Assignment and Subletting), Article 17 (Estoppel Certificate) or Article18 (Subordination) of this Lease where such failure continues for more than two (2) business days after notice from Landlord;

19.1.3 Except where a specific time period is otherwise set forth for Tenant's performance in this Lease, in which event the failure to perform by Tenant within such time period shall be a default by Tenant under this Section, any failure by Tenant to observe or perform any other provision, covenant or condition of this Lease to be observed or performed by Tenant where such failure continues for thirty days after written notice thereof from Landlord to Tenant; provided that if the nature of such default is such that the same cannot reasonably be cured within a thirty day period, Tenant shall not be deemed to be in default if it diligently commences such cure within such period and thereafter diligently proceeds to rectify and cure

Q00117

such default, but in no event exceeding a period of time in excess of sixty days after written notice thereof from Landlord to Tenant; or

19.1.4 Abandonment or vacation of all or a substantial portion of the Premises by Tenant.

The notice periods provided herein are in lieu of, and not in addition to, any notice periods provided by law.

19.2 **Remedies Upon Default**. Upon the occurrence of any event of default by Tenant, Landlord shall have, in addition to any other remedies available to Landlord at law or in equity (all of which remedies shall be distinct, separate and cumulative), the option to pursue any one or more of the following remedies, each and all of which shall be cumulative and nonexclusive, without any notice or demand whatsoever.

19.2.1 Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, without prejudice to any other remedy which it may have for possession or arrearages in Rent, Landlord may enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying the Premises or any part thereof, without being liable for prosecution or any claim or damages therefor; and Landlord may recover from Tenant the following:

(i)    The worth at the time of any unpaid rent which has been earned at the time of such termination; plus

(ii)    The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided; plus

(iii)    The worth at the time of award of the amount by which the unpaid rent for the balance of the Term after the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided; plus

(iv)    Any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, specifically including but not limited to, brokerage commissions and advertising expenses incurred, expenses of remodeling the Premises or any portion thereof for a new tenant, whether for the same or a different use, and any special concessions made to obtain a new tenant; and

(v)    At Landlord's election, such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by applicable law.

The term "rent" as used in this Section 19.2 shall be deemed to be and to mean all sums of every nature required to be paid by Tenant pursuant to the terms of this Lease, whether to Landlord or to others. As used in Sections 19.2.1(i) and (ii), above, the "worth at the time of award" shall be computed by allowing interest at the rate set forth in Article 25 of this Lease, but in no case greater than the maximum amount of such interest permitted by law. As used in

-29-

000118

Section 19.2.1(iii) above, the "worth at the time of award" shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%).

19.2.2  Landlord shall have the remedy described in California Civil Code Section 1951.4 (lessor may continue lease in effect after lessee's breach and abandonment and recover rent as it becomes due, if lessee has the right to sublet or assign, subject only to reasonable limitations).  Accordingly, if Landlord does not elect to terminate this Lease on account of any default by Tenant, Landlord may, from time to time, without terminating this Lease, enforce all of its rights and remedies under this Lease, including the right to recover all Rent as it becomes due.

19.2.3  Landlord shall at all times have the right and remedy (which shall be cumulative with each other and cumulative and in addition to those rights and remedies available under Sections 19.2.1 and 19.2.2, above, or any law or other provision of this Lease), without prior demand or notice except as required by Applicable Law, to seek any declaratory, injunctive or other equitable relief, and specifically enforce this Lease, or restrain or enjoin a violation or breach of any provision hereof.

19.3    **Efforts to Relet**.  No re-entry or repossession, repairs, maintenance, changes, alterations and additions, reletting, appointment of a receiver to protect Landlord's interests hereunder, or any other action or omission by Landlord shall be construed as an election by Landlord to terminate this Lease or Tenant's right to possession, or to accept a surrender of the Premises, nor shall same operate to release Tenant in whole or in part from any of Tenant's obligations hereunder, unless express written notice of such intention is sent by Landlord to Tenant.  Tenant hereby irrevocably waives any right otherwise available under any law to redeem or reinstate this Lease.

## ARTICLE 20
## COVENANT OF QUIET ENJOYMENT

On Tenant's paying in a timely manner the Rent, charges for services and other payments herein reserved and on keeping, observing and performing all the other terms, covenants, conditions, provisions and agreements herein contained on the part of Tenant to be kept, observed and performed, during the Term, Landlord covenants that Tenant shall peaceably and quietly have, hold and enjoy the Premises subject to the terms, covenants, conditions, provisions and agreements hereof without interference by any persons lawfully claiming by or through Landlord.  The foregoing covenant is in lieu of any other covenant express or implied.

## ARTICLE 21
## SECURITY DEPOSIT

## [INTENTIONALLY DELETED]

000119

## ARTICLE 22
### SIGNS

22.1    **Pole Sign**. Tenant may maintain the existing pole sign on the Premises, provided any change in the graphics, text, color, size or other aspect of the existing pole sign shall be subject to Landlord's prior written approval (in Landlord's sole discretion) and further approval by the City of Mountain View.

22.2    **Prior Approval of Other Items**. Except as provided in Section 22.1, any signs, notices, logos, pictures, names or advertisements must have the prior written approval of Landlord, in its sole discretion, and then only can be installed in compliance with Applicable Laws. Any such items which are installed and that have not been separately approved by Landlord may be removed without notice by Landlord at the sole expense of Tenant. Tenant may not install any signs on the exterior or roof of any Premises Improvement. Any signs or other items visible from the exterior of the building on the Premises (such as signs on glass or the exterior of the building), and any revision to graphics, colors, style or previously approved signs, shall be subject to the prior approval of Landlord, in its sole discretion. All approved signs must be installed by licensed sign contractors pursuant to plans approved by Landlord and in accordance with City permit requirements. Not later than the Lease Termination Date, Tenant shall remove all its signage from the Premises.

22.3    **Advertising**. Except as approved by Landlord in its sole discretion, no exterior lighting, flashing lights, search lights, amplifiers, devices emitting noise or music, advertising medium visible or audible outside the building on the Premises, loudspeakers or similar distracting devices shall be permitted on the Premises.

## ARTICLE 23
### COMPLIANCE WITH LAW

Tenant shall not do anything or suffer anything to be done in or about the Premises which will in any way conflict with any Applicable Law. At its sole cost and expense, Tenant shall promptly comply with all Applicable Laws. Should any standard or regulation affecting the Premises now or hereafter be imposed on Landlord or Tenant by a state, federal or local governmental body charged with the establishment, regulation and enforcement of occupational, health or safety standards for employers, employees, landlords or tenants, then Tenant agrees, at its sole cost and expense, to comply promptly with such standards or regulations. Tenant shall be responsible, at its sole cost and expense, to make all alterations to the Premises as are required to comply with Applicable Laws, including the Americans with Disabilities Act. The judgment of any court of competent jurisdiction or the admission of Tenant in any judicial action, regardless of whether Landlord is a party thereto, that Tenant has violated any of Applicable Laws, shall be conclusive of that fact as between Landlord and Tenant.

## ARTICLE 24
### LATE CHARGES

If any installment of Rent or any other sum due from Tenant shall not be received by Landlord or Landlord's designee within five (5) days after their due date, then Tenant shall pay to

000120

Landlord a late charge equal to 10% of the overdue amount plus any attorneys' fees incurred by Landlord by reason of Tenant's failure to pay Rent and/or other charges when due hereunder. The late charge shall be deemed Additional Rent and the right to require it shall be in addition to all of Landlord's other rights and remedies hereunder or at law and shall not be construed as liquidated damages or as limiting Landlord's remedies in any manner. In addition to the late charge described above, any Rent or other amounts owing hereunder which are not paid within ten (10) days after the date they are due shall bear interest from the date when due until paid at a rate per annum equal to the lesser of (i) the annual "Bank Prime Loan" rate cited in the Federal Reserve Statistical Release Publication G.13(415), published on the first Tuesday of each calendar month (or such other comparable index as Landlord and Tenant shall reasonably agree upon if such rate ceases to be published) plus four (4) percentage points, and (ii) the highest rate permitted by applicable law.

## ARTICLE 25
## LANDLORD'S RIGHT TO CURE DEFAULT; PAYMENTS BY TENANT

    25.1   **Landlord's Cure**.  All covenants and agreements to be kept or performed by Tenant under this Lease shall be performed by Tenant at Tenant's sole cost and expense and without any reduction of Rent.  If Tenant shall fail to perform any obligation under this Lease, and such failure shall continue in excess of any time allowed under Section 19.1.2, above, unless a specific time period is otherwise stated in this Lease, Landlord may, but shall not be obligated to, make any such payment or perform any such act on Tenant's part without waiving its rights based upon any default of Tenant and without releasing Tenant from any obligations hereunder.

    25.2   **Tenant's Reimbursement**.  Except as may be specifically provided to the contrary in this Lease, Tenant shall pay to Landlord, upon delivery by Landlord to Tenant of statements therefor: (i) sums equal to expenditures reasonably made and obligations incurred by Landlord in connection with the remedying by Landlord of Tenant's defaults pursuant to the provisions of Section 25.1; (ii) sums equal to all losses, costs, liabilities, damages and expenses referred to in Article 10 of this Lease; (iii) a sum to reimburse Landlord for Landlord's overhead and a reasonable management fee attributable to the expenditure and (iv) sums equal to all expenditures made and obligations incurred by Landlord in collecting or attempting to collect the Rent or in enforcing or attempting to enforce any rights of Landlord under this Lease or pursuant to law, including, without limitation, all legal fees and other amounts so expended.  Tenant's obligations under this Section 25.2 shall survive the expiration or sooner termination of the Lease Term.

## ARTICLE 26
## ENTRY BY LANDLORD

    Landlord reserves the right at all reasonable times and upon reasonable notice to Tenant (except in the case of an emergency) to enter the Premises to (i) inspect them; (ii) show the Premises to environmental consultants, prospective purchasers, mortgagees, or to current or prospective mortgagees, or insurers; (iii) post notices of nonresponsibility; or (iv) alter, improve or repair the Premises or the Building, or for structural alterations, repairs or improvements to the Building or the Building's systems and equipment.  Notwithstanding anything to the contrary contained in this Article 26, Landlord may enter the Premises at any time to (A) perform services

000121

that Landlord has elected to perform pursuant to Article 7; (B) take possession due to any breach of this Lease in the manner provided herein; (C) perform any covenants of Tenant which Tenant fails to perform and (D) to perform any environmental assessment, testing, remediation or other work permitted pursuant to Section 5.3. Landlord may make any such entries without the abatement of Rent and may take such reasonable steps as required to accomplish the stated purposes. Tenant hereby waives any claims for damages or for any injuries or inconvenience to or interference with Tenant's business, lost profits, any loss of occupancy or quiet enjoyment of the Premises, and any other loss occasioned thereby. For each of the above purposes, Landlord shall at all times have a key with which to unlock all the doors in the Premises. In an emergency, Landlord shall have the right to use any means that Landlord may deem proper to open the doors in and to the Premises. Any entry into the Premises by Landlord in the manner described shall not be deemed to be a forcible or unlawful entry into, or a detainer of, the Premises, or an actual or constructive eviction of Tenant from any portion of the Premises. No provision of this Lease shall be construed as obligating Landlord to perform any repairs, alterations or decorations except as otherwise expressly agreed to be performed by Landlord herein.

## ARTICLE 27
## TENANT PARKING/COMMON AREA ALTERATIONS

Tenant shall require its customers, vendors, contractors and agents to park only on the Premises and shall prohibit such parties from parking on the Adjacent Property. Landlord specifically reserves the right to change the size, configuration, design, layout and all other aspects of the Adjacent Property Common Areas at any time. Tenant acknowledges and agrees that Landlord may, by providing prior written notice and without incurring any liability to Tenant and without any abatement of Rent under this Lease, from time to time, close off or restrict access to the Adjacent Property Common Area for purposes of facilitating any repair, alteration or improvements to the Adjacent Property.

## ARTICLE 28
## MISCELLANEOUS PROVISIONS

28.1  **Terms; Captions**.  The words "Landlord" and "Tenant" as used herein shall include the plural as well as the singular. The necessary grammatical changes required to make the provisions hereof apply either to corporations or partnerships or individuals, men or women, as the case may require, shall in all cases be assumed as though in each case fully expressed. The captions of Articles and Sections are for convenience only and shall not be deemed to limit, construe, affect or alter the meaning of such Articles and Sections.

28.2  **Binding Effect**.  Subject to all other provisions of this Lease, each of the covenants, conditions and provisions of this Lease shall extend to and shall, as the case may require, bind or inure to the benefit not only of Landlord and of Tenant, but also of their respective heirs, personal representatives, successors or assigns, provided this clause shall not permit any assignment by Tenant contrary to the provisions of Article 14 above.

28.3  **No Air Rights**.  No rights to any view or to light or air over any property, whether belonging to Landlord or any other person, are granted to Tenant by this Lease.

000122

28.4   **Modification of Lease**.   Should any current or prospective mortgagee of the Premises require a modification of this Lease, which modification will not cause an increased cost or expense to Tenant or in any other way materially and adversely change the rights and obligations of Tenant hereunder, then and in such event, Tenant agrees that this Lease may be so modified and agrees to execute whatever documents are reasonably required therefor and to deliver the same to Landlord within ten days following a request therefor.   At the request of Landlord or any mortgagee, Tenant agrees to execute a short form of Lease and deliver the same to Landlord within ten days following Landlord's request.

28.5   **Transfer of Landlord's Interest**.   Tenant acknowledges that Landlord has the right to transfer all or any portion of its interest in the Premises and in this Lease, and Tenant agrees that in the event of Landlord's transfer, Landlord shall automatically be released from all liability under this Lease and Tenant agrees to look solely to the transferee for the performance of Landlord's obligations hereunder after the date of transfer and the transferee shall be deemed to have fully assumed and be liable for all obligations of this Lease to be performed by Landlord, and Tenant shall attorn to such transferee.   Upon Landlord's transfer of interest in this Lease, so long as Landlord either transfers any Security Deposit to the transferee or returns the Security Deposit to Tenant, Landlord shall have no further liability with regard to the Security Deposit. Tenant further acknowledges that Landlord may assign its interest in this Lease to a mortgage lender as additional security and agrees that such an assignment shall not release Landlord from its obligations hereunder and that Tenant shall continue to look to Landlord for the performance of its obligations hereunder.

28.6   **Landlord's Title**.   Landlord's title is and always shall be paramount to the title of Tenant.   Nothing herein contained shall empower Tenant to do any act which can, shall or may encumber the title of Landlord.

28.7   **Relationship of Parties**.   Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third party to create the relationship of principal and agent, partnership, joint venture or any association between Landlord and Tenant.

28.8   **Application of Payments**.   Landlord shall have the right to apply payments received from Tenant pursuant to this Lease, regardless of Tenant's designation of such payments, to satisfy any obligations of Tenant hereunder, in such order and amounts as Landlord, in its sole discretion, may elect.

28.9   **Time of Essence**.   Time is of the essence with respect to the performance of every provision of this Lease in which time of performance is a factor.

28.10   **Partial Invalidity**.   If any term, provision or condition contained in this Lease shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term, provision or condition to persons or circumstances other than those with respect to which it is invalid or unenforceable, shall not be affected thereby, and each and every other term, provision and condition of this Lease shall be valid and enforceable to the fullest extent possible permitted by law.

000123

28.11  **No Warranty**.  In executing and delivering this Lease, Tenant has not relied on any representations, including any representation as to the amount of any item comprising Additional Rent or the amount of the Additional Rent in the aggregate, or any warranty or any statement of Landlord which is not set forth herein.  Landlord has made, and makes, no representation regarding the continued operation of the Adjacent Property as a shopping center or for retail purposes, or that any particular tenant will occupy, or continue to occupy, the Adjacent Property.  Tenant has been granted no "exclusive use" rights with regard to the Adjacent Property and understands that Landlord may, in its sole discretion, permit businesses to operate on the Adjacent Property that are, or may be, competitive with Tenant's business operations.

28.12  **Landlord Exculpation**.  The liability of Landlord or the Landlord Parties to Tenant for any default by Landlord under this Lease shall be limited solely and exclusively to an amount which is equal to the interest of Landlord in the Premises, provided that in no event shall such liability extend to any sales or insurance proceeds received by Landlord or the Landlord Parties in connection with the Premises.  Neither Landlord, nor any of the Landlord Parties shall have any personal liability under this Lease, and Tenant hereby expressly waives and releases any and all personal liability on behalf of itself and all persons claiming by, through or under Tenant.  The limitations of liability contained in this Section 28.13 shall inure to the benefit of Landlord's and the Landlord Parties' present and future partners, beneficiaries, officers, directors, trustees, shareholders, agents and employees, and their respective partners, heirs, successors and assigns.  Under no circumstances shall any present or future partner of Landlord (if Landlord is a partnership), or trustee or beneficiary (if Landlord or any partner of Landlord is a trust), have any liability for the performance of Landlord's obligations under this Lease.  Notwithstanding any contrary provision herein, neither Landlord nor the Landlord Parties shall be liable under any circumstances for injury or damage to, or interference with, Tenant's business, including but not limited to, loss of profits, loss of rents or other revenues, loss of business opportunity, loss of goodwill or loss of use, in each case, however occurring.

28.13  **Entire Agreement**.  It is understood and acknowledged that there are no oral agreements between the parties hereto affecting this Lease and this Lease constitutes the parties' entire agreement with respect to the leasing of the Premises and supersedes and cancels any and all previous negotiations, arrangements, brochures, agreements and understandings, if any, between the parties hereto, and none thereof shall be used to interpret or construe this Lease.  None of the terms, covenants, conditions or provisions of this Lease can be modified, deleted or added to except in writing signed by Landlord and Tenant.

28.14  **Right to Lease**.  Landlord reserves the absolute right to effect such other tenancies in the Adjacent Property as Landlord in the exercise of its sole business judgment shall determine to best promote the interests of the Adjacent Property.  Tenant does not rely on the fact, nor does Landlord represent, that any specific tenant or type or number of tenants shall, during the Lease Term, occupy any space in the Adjacent Property.

28.15  **Force Majeure**.  Any prevention, delay or stoppage due to strikes, lockouts, labor disputes, acts of God, inability to obtain services, labor, or materials or reasonable substitutes therefor, governmental actions, civil commotions, fire or other casualty, and other causes beyond the reasonable control of the party obligated to perform, except with respect to the obligations

000124

imposed with regard to Rent and other charges to be paid by Tenant pursuant to this Lease and except as to Tenant's obligations under Articles 5 and 23 of this Lease (collectively, a "**Force Majeure**"), notwithstanding anything to the contrary contained in this Lease, shall excuse the performance of such party for a period equal to any such prevention, delay or stoppage and, therefore, if this Lease specifies a time period for performance of an obligation of either party, that time period shall be extended by the period of any delay in such party's performance caused by a Force Majeure.

28.16  **Waiver of Redemption by Tenant**.  Tenant hereby waives, for Tenant and for all those claiming under Tenant, any and all rights now or hereafter existing to redeem by order or judgment of any court or by any legal process or writ, Tenant's right of occupancy of the Premises after any termination of this Lease.

28.17  **Notices**.  All notices, demands, statements, designations, approvals  or other communications (collectively, "Notices") given or required to be given by either party to the other hereunder or by law shall be in writing, shall be (A) sent by United States certified or registered mail, postage prepaid, return receipt requested ("**Mail**"), (B) transmitted by facsimile, if delivery of such facsimile is confirmed by the sending machine, (C) delivered by a nationally recognized overnight courier, or (D) delivered personally.  Any Notice shall be sent, transmitted, or delivered, as the case may be, to Tenant at the appropriate address set forth in Section 8 of the Summary, or to such other place as Tenant may from time to time designate in a Notice to Landlord, or to Landlord at the addresses set forth below, or to such other places as Landlord may from time to time designate in a Notice to Tenant.  Any Notice will be deemed given (i) three (3) days after the date it is posted if sent by Mail, (ii) the date the facsimile is transmitted, (iii) the business day upon which the overnight courier delivery is made, or (iv) the business day upon which personal delivery is made or attempted to be made.  If Tenant is notified of the identity and address of Landlord's mortgagee, Tenant shall give to Landlord's mortgagee written notice of any default by Landlord under the terms of this Lease by registered or certified mail, and the mortgagee shall be given a reasonable opportunity to cure any Landlord default prior to Tenant's exercising any remedy available to Tenant.  As of the date of this Lease, any Notices to Landlord must be sent, transmitted, or delivered, as the case may be, to the address set forth in Section 9 of the Summary.

28.18  **Joint and Several**.  If there is more than one Tenant, the obligations imposed upon Tenant under this Lease shall be joint and several.

28.19  **Authority**.  If Tenant is a corporation, trust or partnership, each individual executing this Lease on behalf of Tenant hereby represents and warrants that Tenant is a duly formed and existing entity qualified to do business in California and that Tenant has full right and authority to execute and deliver this Lease and that each person signing on behalf of Tenant is authorized to do so.  In such event, Tenant shall, within ten (10) days after execution of this Lease, deliver to Landlord satisfactory evidence of such authority and, if a corporation, upon demand by Landlord, also deliver to Landlord satisfactory evidence of (i) good standing in Tenant's state of incorporation and (ii) qualification to do business in California.

28.20  **Attorneys' Fees**.  In the event that either Landlord or Tenant should bring suit for the possession of the Premises, for the recovery of any sum due under this Lease, or because of

000125

the breach of any provision of this Lease or for any other relief against the other, then all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party therein shall be paid by the other party, which obligation on the part of the other party shall be deemed to have accrued on the date of the commencement of such action and shall be enforceable whether or not the action is prosecuted to judgment.

28.21 **Governing Law; WAIVER OF TRIAL BY JURY.** This Lease shall be construed and enforced in accordance with the laws of the State of California. IN ANY ACTION OR PROCEEDING ARISING HEREFROM, LANDLORD AND TENANT HEREBY CONSENT TO (I) THE JURISDICTION OF ANY COMPETENT COURT WITHIN THE STATE OF CALIFORNIA, (II) SERVICE OF PROCESS BY ANY MEANS AUTHORIZED BY CALIFORNIA LAW, AND (III) IN THE INTEREST OF SAVING TIME AND EXPENSE, TRIAL WITHOUT A JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER OR THEIR SUCCESSORS IN RESPECT OF ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE PREMISES, AND/OR ANY CLAIM FOR INJURY OR DAMAGE, OR ANY EMERGENCY OR STATUTORY REMEDY. IN THE EVENT LANDLORD COMMENCES ANY SUMMARY PROCEEDINGS OR ACTION FOR NONPAYMENT OF BASE RENT OR ADDITIONAL RENT, TENANT SHALL NOT INTERPOSE ANY COUNTERCLAIM OF ANY NATURE OR DESCRIPTION (UNLESS SUCH COUNTERCLAIM SHALL BE MANDATORY) IN ANY SUCH PROCEEDING OR ACTION, BUT SHALL BE RELEGATED TO AN INDEPENDENT ACTION AT LAW.

28.22 **Submission of Lease.** Submission of this instrument for examination or signature by Tenant does not constitute a reservation of, option for or option to lease, and it is not effective as a lease or otherwise until execution and delivery by both Landlord and Tenant.

28.23 **Brokers.** Landlord and Tenant hereby warrant to each other that they have had no dealings with any real estate broker or agent in connection with the negotiation of this Lease, and that they know of no real estate broker or agent who is entitled to a commission in connection with this Lease. Each party agrees to indemnify and defend the other party against and hold the other party harmless from any and all claims, demands, losses, liabilities, lawsuits, judgments, costs and expenses (including without limitation reasonable attorneys' fees) with respect to any leasing commission or equivalent compensation alleged to be owing on account of any dealings with any real estate broker or agent occurring by, through, or under the indemnifying party.

28.24 **Independent Covenants.** This Lease shall be construed as though the covenants herein between Landlord and Tenant are independent and not dependent and Tenant hereby expressly waives the benefit of any statute to the contrary and agrees that if Landlord fails to perform its obligations set forth herein, Tenant shall not be entitled to make any repairs or perform any acts hereunder at Landlord's expense or to any setoff of the Rent or other amounts owing hereunder against Landlord.

000126

28.25  **Counterparts**.  This Lease may be executed in counterparts with the same effect as if both parties hereto had executed the same document.  Both counterparts shall be construed together and shall constitute a single lease.

28.26  **Confidentiality**.  Tenant acknowledges that the content of this Lease and any related documents are confidential information.  Tenant shall keep such confidential information strictly confidential and shall not disclose such confidential information to any person or entity other than Tenant's financial, legal, and construction consultants.

28.27  **No Violation**.  Tenant hereby warrants and represents that neither its execution of nor performance under this Lease shall cause Tenant to be in violation of any agreement, instrument, contract, law, rule or regulation by which Tenant is bound, and Tenant shall protect, defend, indemnify and hold Landlord harmless against any claims, demands, losses, damages, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and costs, arising from Tenant's breach of this warranty and representation.

28.28  **Interpretation**.  The words "includes" and "including" are not limiting and shall be read as if followed by the words "without limitation."

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be executed to be effective as of the date this Lease is signed by the last signatory.

End of text

SIGNATURES APPEAR ON FOLLOWING PAGE

000127

"LANDLORD":

V. O. Limited Partners, a California limited partnership

_____, 2007

By: _____

Its:  General Partner

Date: \_\_10 - 16\_\_, 2007

"TENANT":

Houtan Petroleum, Inc., a California corporation

By: _____

Its:

By: _____

Its:

(2 corporate officers required to sign)

-41-

000128

## EXHIBIT A

## LEGAL DESCRIPTION OF PREMISES

Parcel A, as shown on that map recorded June 3, 1996, in Book 210, at page 45, Official Records of Santa Clara County, California.

**EXHIBIT A-1**

**OUTLINE OF PREMISES**

000130

**EXHIBIT B**

Description of Adjacent Property

000131

# EXHIBIT C

## WORK LETTER AGREEMENT

This Work Letter Agreement ("Agreement") is made pursuant to and as a part of that certain lease agreement ("Lease") by and between V. O. Limited Partners, a California limited partnership, and Aleda Petroleum, Inc., a California corporation ("Tenant") covering certain premises ("Premises") more particularly described in the Lease. In consideration of the mutual covenants contained below, Landlord and Tenant hereby agree as follows:

    1.    <u>Construction of Tenant Improvements</u>.  Tenant desires to demolish certain existing improvements on the Premises and to construct one mini-mart retail store/gas dispensing building, replace the asphalt surface on the Premises, replace the side walks, exterior lighting and landscaped areas and irrigation system, upgrade the in-ground tanks to meet current environmental standards, and replace the above ground gas dispensers ("**Tenant Improvements**") on the Premises in conformance with the Approved Plans described below, subject to all the terms and conditions contained in this Agreement. Tenant shall pay all costs of Tenant Improvements, and Landlord shall incur no cost or expense of any nature with respect to the Tenant Improvements.

    2.    <u>Demolition</u>. Tenant agrees, at its sole cost and expense, to perform the work to construct and complete the Tenant Improvements in accordance with this <u>Exhibit C</u>. Landlord hereby consents to Tenant's demolishing the existing gas station building ("**Existing Building**"), provided Tenant promptly replaces the Building with a replacement building as described in <u>Section 3</u> below. Further, as part of its Tenant Improvements, Tenant agrees to remove the existing hydraulic lifts and any sumps from the Premises and to perform all necessary work to comply with Environmental Laws in performing such work.

    3.    <u>Preparation of Preliminary and Final Plans</u>.

    (a)    <u>Preliminary Plans</u>. Within 30 days after the Tenant signs this Agreement, Tenant will deliver to Landlord its preliminary concept and site plan for the Tenant Improvements. The site plan shall delineate the location of the building, the gasoline dispensers and ingress and egress for the Premises. Landlord shall approve, or disapprove, the preliminary concept and site plan within 30 days after its receipt. Once the preliminary site plan has been approved, Tenant shall diligently pursue preparation (and submit to Landlord) preliminary plans and specifications for the Tenant Improvements, including the exterior elevations, color scheme, sign program, landscape plan and parking lot replacement specifications. Tenant's preliminary plans and specifications shall be esthetically compatible with the improvements on the Adjacent Property and all improvements on the Premises shall be internally consistent and esthetically compatible. Tenant shall deliver complete preliminary plans, specifications and elevations to Landlord no later than ___ days after Tenant signs this Agreement. Landlord shall have 30 days after receipt of the preliminary plans and specifications within which to approve, or disapprove, the preliminary plans and specifications, which approval Landlord shall not unreasonably

1

withhold so long as they are consistent and a logical evolution from the preliminary concept and site plan. If Landlord disapproves the preliminary plans and specifications, Landlord shall notify Tenant in writing of the reasons for the disapproval and Landlord and Tenant shall cooperate to arrive at a satisfactory solution to Landlord's concerns.    Once the parties have approved preliminary plans and specifications for the Tenant Improvements ("**Preliminary Plans**"), Tenant shall develop final plans and working drawing to submit to the City of Mountain View.

(b)    Final Plans.    Within 15 days after the delivery of the Final Plans to Landlord, Landlord shall approve the Final Plans or inform Tenant of Landlord's specific objections to such plans, which objections must be reasonable.    Provided that the final plans are logical evolutions of the Preliminary Plans and incorporate the parties' agreement regarding revisions thereto, Landlord shall not withhold its approval of the final plans.    The parties shall use their best efforts to reach agreement regarding changes to the final plans as soon as it is reasonably practicable.    Once the parties have approved the final plans ("**Final Plans**"), Tenant shall submit them to the City of Mountain View and other governmental entities with approval authority for approval.

(c)    Governmental Approvals.    If any changes are required by governmental authorities, Landlord and Tenant shall cooperate to incorporate such changes.    Immediately after all governmental approvals have been obtained, Landlord and Tenant shall initial and date a copy of the approved Final Plans ("**Approved Plans**"), which shall then become a part of this Agreement as though fully set forth herein. Before beginning construction, Tenant shall obtain all necessary approvals and permits and shall deliver to Landlord a copy of each approval and permit, for Landlord's files.

(d)    Completion.    Tenant's work shall be deemed to have been completed at such time as the City of Mountain View has accepted the Tenant's Improvements as complete and is prepared to issue its certificate of occupancy (or temporary certificate or occupancy) to permit Tenant to occupy the Premises for its business purposes.

4.    Construction.    Once the City has approved the Final Plans, Tenant promptly shall cause a licensed contractor to undertake construction of the Tenant Improvements, in accordance with the provisions of Lease Article 8.

5.    Change Orders.    No material changes, modifications or alternations in the Approved Plans or in the Tenant Improvement work pursuant thereto shall be made by Tenant without Landlord's prior written consent, which consent shall not be unreasonably withheld or delayed.

6.    Tenant to Complete Construction.    Upon obtaining all necessary governmental approvals, Tenant shall cause the Contractor to commence construction of and diligently pursue the completion of the Tenant Improvements substantially in compliance with the Approved Plans and this Agreement.

2

Miscellaneous.

(a)    Time of the Essence. Time is of the essence of each and every provision of this Lease.

(b)    No Partnership.  Nothing in this Agreement shall cause Landlord and Tenant to be partners or joint venturers.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the Effective Date of the Lease.

"LANDLORD"

V. O. Limited Partners, a California limited partnership

By: _____

Its  General Partner

"TENANT"

Houtan Petroleum, Inc.

a California corporation

By: _____

Its: Ed Bozorghadad, President

By: _____

Its: Parisa Bozorghadad, Secretary

(2 corporate officers signatures required)

3

Q00134

**EXHIBIT D**

**NOTICE OF LEASE TERM DATES**

To: _____
_____
_____
_____

Re:    Lease dated _____, 2007 between _____, a _____ ("Landlord"), and _____, a _____ ("Tenant") concerning premises located at _____, Mountain View, California.

Gentlemen:

In accordance with the Lease (the "Lease"), we wish to advise you and/or confirm as follows:

1.    The Interim Term Commencement Date is _____.

2.    The Primary Term Commencement Date is _____.

3.    The first Lease Year expires on _____.

4.    The Term ends on _____ (the last day of the 15th Lease Year).

5.    Your rent checks should be made payable to _____ at _____.

"LANDLORD":

_____,

Agreed to and Accepted
as of _____, 20__.

"TENANT":

_____

a

Q00135

by: _____

000136

## EXHIBIT E

## RULES AND REGULATIONS

Tenant shall faithfully observe and comply with the following Rules and Regulations. In the event of any conflict between the Rules and Regulations and the other provisions of this Lease, the latter shall control.

1.    No sign, advertisement, notice or handbill shall be exhibited, distributed, painted or affixed by Tenant on any part of the Premises or the building on the Premises without the prior written consent of the Landlord, which Landlord shall not unreasonably withhold.

2.    Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in or on the Premises, or permit or allow the Premises to be occupied or used in a manner offensive or objectionable to Landlord or other occupants of the Shopping Center by reason of noise, odors, or vibrations, or interfere with other tenants or those having business therein, whether by the use of any musical instrument, radio, phonograph, or in any other way.

3.    Tenant shall not bring into or keep within the Premises or any building on the Premises any animals, birds, aquariums, or, except in areas designated by Landlord, bicycles or other vehicles (other than customers vehicles temporarily on the Premises during the period of their patronage of the business conducted at the Premises). Tenant will not permit loitering on the Premises by persons other than patrons during their actual purchase of merchandise, or fuel, from the Premises.

4.    No cooking (except for micro wave cooking customary in similar "mini-mart" stores) shall be done or permitted on the Premises, nor shall the Premises be used for the storage of merchandise, for lodging or for any improper, objectionable or immoral purposes. Any permitted micro wave or other heating equipment shall be Underwriters' laboratory-approved equipment, provided that such use is in accordance with all applicable federal, state, county and city laws, codes, ordinances, rules and regulations.

5.    The Premises shall not be used for the storage of merchandise except as such storage may be incidental to the use of the Premises provided for in the Summary. All storage must be inside of the building. No merchandise, carts or portable signs shall be permitted outside the building. Tenant shall not occupy or permit any portion of the Premises to be occupied as an office for a messenger-type operation or dispatch office, public stenographer or typist, or for the manufacture or sale of liquor or narcotics.

6.    Landlord reserves the right to exclude or expel from the Premises any person who, in the judgment of Landlord, is intoxicated or under the influence of liquor or drugs, or who shall in any manner do any act in violation of any of these Rules and Regulations.

7.    Tenant, its employees, agents and customers shall not loiter in or on the sidewalks or any Common Areas for the purpose of smoking tobacco products or for any other purpose, nor in any way obstruct such areas, and shall use them only as a means of ingress and egress for the Premises.

000137

8.    Tenant shall store all its trash and garbage within the interior of the Premises. No material shall be placed in the trash boxes or receptacles if such material is of such nature that it may not be disposed of in the ordinary and customary manner of removing and disposing of trash and garbage in Mountain View, California without violation of any law or ordinance governing such disposal. Trash must be stored within an enclosed trash area with appropriately frequent collection to permit the trash enclosure area to be maintained in a neat and orderly manner. If the Premises is or becomes infested with vermin as a result of the use or any misuse or neglect of the Premises by Tenant, its agents, servants, employees, contractors, visitors or licensees, Tenant shall forthwith, at Tenant's expense, cause the Premises to be exterminated from time to time to the satisfaction of Landlord and shall employ such licensed exterminators as shall be approved in writing in advance by Landlord.

9.    Tenant shall comply with all safety, fire protection and evacuation procedures and regulations established by Landlord or any governmental agency.

10.    Tenant hereby acknowledges that Landlord shall have no obligation to provide guard service or other security measures for the benefit of the Premises or the Adjoining Property. Tenant hereby assumes all responsibility for the protection of Tenant and its agents, employees, contractors, invitees and guests, and the property thereof, from acts of third parties. Tenant shall cooperate in any reasonable safety or security program developed by Landlord or required by law.

11.    No tenant shall use or permit the use of any portion of the Premises for living quarters, sleeping apartments or lodging rooms.

## EXHIBIT F

## FORM OF TENANT ESTOPPEL CERTIFICATE

The undersigned as Tenant under that certain Office Lease (the "Lease") made and entered into as of _____, _____ by and between _____, as Landlord, and the undersigned as Tenant, for Premises located at 101 East El Camino Real, Mountain View, California, certifies as follows:

1.    Attached hereto as Exhibit A is a true and correct copy of the Lease and all amendments and modifications thereto.  The documents contained in Exhibit A represent the entire agreement between the parties as to the Premises.

2.    The undersigned currently occupies the Premises described in the Lease, the Interim Term Commencement Date is _____, the Primary Term Commencement Date is _____, and the initial Lease Term expires on _____. Tenant has _____ options to extend the Lease Term each for a ___ year period. The undersigned has no option to terminate or cancel the Lease or to purchase all or any part of the Premises, the Building and/or the Shopping Center.

3.    Base Rent became payable on _____.

4.    The Lease is in full force and effect and has not been modified, supplemented or amended in any way except as provided in Exhibit B.

5.    Tenant has not transferred, assigned, or sublet any portion of the Premises nor entered into any license or concession agreements with respect thereto except as follows: _____

6.    Tenant shall not modify the documents contained in Exhibit A without the prior written consent of Landlord's mortgagee.

7.    All monthly installments of Base Rent, all Additional Rent and all monthly installments of estimated Additional Rent have been paid when due through _____.  The current monthly installment of Base Rent is $_____.

8.    All conditions of the Lease to be performed by Landlord necessary to the enforceability of the Lease have been satisfied and Landlord is not in default thereunder.  In addition, the undersigned has not delivered any notice to Landlord regarding a default by Landlord thereunder.

9.    No rental has been paid more than thirty (30) days in advance and no security has been deposited with Landlord except as provided in the Lease.

10.    As of the date hereof, there are no existing defenses or offsets, or, to the undersigned's knowledge, claims or any basis for a claim, that the undersigned has against Landlord.

11.    If Tenant is a corporation or partnership, each individual executing this Estoppel Certificate on behalf of Tenant hereby represents and warrants that Tenant is a duly formed and

000139

existing entity qualified to do business in California and that Tenant has full right and authority to execute and deliver this Estoppel Certificate and that each person signing on behalf of Tenant is authorized to do so.

12.    There are no actions pending against the undersigned under the bankruptcy or similar laws of the United States or any state.

13.    Tenant has received notice from no governmental agency or environmental agency that it (the agency) considers Tenant to be in default of any law, or is contemplating commencing, or has commenced, any investigation regarding the Premises.

The undersigned acknowledges that this Estoppel Certificate may be delivered to Landlord or to a prospective mortgagee or prospective purchaser, and acknowledges that said prospective mortgagee or prospective purchaser will be relying upon the statements contained herein in making the loan or acquiring the property of which the Premises are a part and that receipt by it of this certificate is a condition of making such loan or acquiring such property.

Executed at _____ on the _____ day of _____, 2 ___.

"TENANT":

_____, a _____

By: _____

Its: _____

Exhibit F
-2-

000140

Exhibit A to Estoppel Certificate

List lease description and description of any and all documents that amend, modify, revise or otherwise alter the terms of the lease.

000141

Exhibit B to Tenant Estoppel Certificate

List all items of exception to paragraph 4.  If no exceptions are listed, Tenant shall be deemed to certify that the lease is in full force and effect and has not been modified, supplemented or amended.

000142

## EXHIBIT G

## HAZARDOUS MATERIALS DISCLOSURE SHEET

This questionnaire is designed to solicit information regarding Tenant's proposed use, generation, treatment, storage, transfer or disposal of hazardous or toxic materials, substances or wastes. If this Questionnaire is attached to or provided in connection with a lease, the reference herein to any such items shall include all items defined as "Hazardous Materials," "Hazardous Substances," "Hazardous Wastes," "Toxic Materials," "Toxic Substances, "Toxic Wastes," or such similar definitions contained in the lease. Please complete the questionnaire and return it to Landlord for evaluation. If your use of materials or substances, or generation of wastes is considered to be significant, further information may be requested regarding your plans for hazardous and toxic materials management. Your cooperation in this matter is appreciated. If you have any questions, do not hesitate to call us for assistance.

1. **PROPOSED TENANT**

   Name (Corporation, Individual, Corporate or Individual DBA, or Public Agency): _____

   _____

   Standard Industrial Classification Code (SIC): _____

   Street Address:        _____

   City, State, Zip Code:   _____

   Contact Person & Title:  _____

   Telephone Number:   (___) _____

   Facsimile Number:    (___) _____

000143

2.  **LOCATION AND ADDRESS OF PROPOSED LEASE**

Street Address: _____

City, State, Zip Code: _____

Bordering Streets: _____

Streets to which Premises has Access: _____

3.  **DESCRIPTION OF PREMISES**

Floor Area: _____

Number of Parking Spaces: _____

Date of Original Construction: _____

Past                    Uses                    of                    Premises:

_____

Dates and Descriptions of Significant Additions, Alterations or Improvements: _____

_____

Proposed Additions, Alterations or Improvements, if any: _____

4.  **DESCRIPTION OF PROPOSED PREMISES USE**   Describe proposed use and
operation of Premises including (i) services to be performed, (ii) nature and types of
manufacturing or assembly processes, if any, and (iii) the materials or products to be
stored at the Premises. _____

_____

_____

000144

_____

_____

Will the operation of your business at the Premises involve the use, generation, treatment, storage, transfer or disposal of hazardous wastes or materials?   Do they now?   Yes _____  No _____    If the answer is "yes," or if your SIC code number is between 2000 to 4000, please complete Section V.

5.  **PERMIT DISCLOSURE**

Does or will the operation of any facet of your business at the Premises require any permits, licenses or plan approvals from any of the following agencies?

| | |
|---|---|
| U.S. Environmental Protection Agency | Yes _____  No _____ |
| City or County Sanitation District | Yes _____  No _____ |
| State Department of Health Services | Yes _____  No _____ |
| U.S. Nuclear Regulatory Commission | Yes _____  No _____ |
| Air Quality Management District | Yes _____  No _____ |
| Bureau of Alcohol, Firearms and Tobacco | Yes _____  No _____ |
| City or County Fire Department | Yes _____  No _____ |
| Regional Water Quality Control Board | Yes _____  No _____ |
| Other Governmental Agencies (if yes, identify: _____) | Yes _____  No _____ |

If the answer to any of the above is "yes," please indicate permit or license numbers, issuing agency and expiration date or renewal date, if applicable.

_____

_____

_____

If your answer to any of the above is "yes," please complete Sections VI and VII.

6.  **HAZARDOUS MATERIALS DISCLOSURE**

Will any hazardous or toxic materials or substances be stored on the Premises?

Yes _____    No _____    If the answer is "yes," please describe the materials or substances to be stored, the quantities thereof and the proposed method of storage of the same (i.e., drums, aboveground or underground storage tanks, cylinders, other), and whether the material is a Solid (S), Liquid (L) or Gas (G):

| Material/Quantity to be Stored | Amount to be Stored | Method of Storage S/L/G |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | | |

Attach additional sheets if necessary.

Is any modification of the Premises improvements required or planned to mitigate the release of toxic or hazardous materials substance or wastes into the environment?

000146

Yes _____    No _____    If the answer is "yes," please describe the proposed Premises modifications:

_____

_____

_____

## 7. HAZARDOUS WASTE DISCLOSURE

Will any hazardous waste, including recyclable waste, be generated by the operation of your business at the Premises?  Yes _____  No _____  If the answer is "yes," please list the hazardous waste which is expected to be generated (or potentially will be generated) at the Premises, its hazard class and volume/frequency of generation on a monthly basis.

| Waste Name | Hazard Class | Volume/Month | Maximum Period of Premises Storage |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

Attach additional sheets if necessary.


If the answer is "yes," please also indicate if any such wastes are to be stored within the Premises and the proposed method of storage (i.e., drums, aboveground or underground storage tanks, cylinders, other).

| Waste Name | Storage Method |
|---|---|
| _____ | _____ |
| _____ | _____ |

000147

Attach additional sheets if necessary.

If the answer is "yes," please also describe the method(s) of disposal for each waste. Indicate where disposal will take place including the methods, equipment and companies to be used to transport the waste:

_____

_____

_____

Is any treatment or processing of hazardous wastes to be conducted at the Premises? Yes _____ No _____ If the answer is "yes," please describe proposed treatment/processing methods:

_____

_____

_____

Which agencies are responsible for monitoring and evaluating compliance with respect to the storage and disposal of hazardous materials or wastes at or from the Premises? (Please list all agencies):

_____

_____

_____

000148

Have there been any agency enforcement actions regarding Tenant (or any affiliate thereof), or any existing Tenant's (or any affiliate's) facilities, or any past, pending or outstanding administrative orders or consent decrees with respect to Tenant or any affiliate thereof?  Yes _____  No _____  If the answer is "yes," have there been any continuing compliance obligations imposed on Tenant or its affiliates as a result of the decrees or orders?  Yes ___ No ___  If the answer is "yes," please describe:

_____

_____

_____


Has Tenant or any of its affiliates been the recipient of requests for information, notice and demand letters, cleanup and abatement orders, or cease and desist orders or other administrative inquiries?   Yes ____  No _____   If the answer is "yes," please describe:

_____

_____

_____


Are there any pending citizen lawsuits, or have any notices of violations been provided to Tenant or its affiliates or with respect to any existing facilities pursuant to the citizens suit provisions of any statute?  Yes _____  No _____   If the answer is "yes," please describe:

_____

000149

_____

_____

Have there been any previous lawsuits against the company regarding environmental concerns? . Yes _____ No _____    If the answer is "yes," please describe how these lawsuits were resolved:

_____

_____

_____

Has an environmental audit ever been conducted at any of your company's existing facilities? Yes _____ No _____    If the answer is "yes," please describe:

_____

_____

_____

Does your company carry environmental impairment insurance? Yes _____ No _____    If the answer is "yes," what is the name of the carrier and what are the effective periods and monetary limits of such coverage?

_____

_____

_____

000150

8. **EQUIPMENT LOCATED OR TO BE LOCATED AT THE PREMISES**

Is (or will there be) any electrical transformer or other equipment containing polychlorinated biphenyls located at the Premises? Yes _____ No _____ If the answer is "yes," please specify the size, number and location (or proposed location):

_____

_____

_____

Is (or will there be) any tank for storage of a petroleum product located at the Premises? Yes _____ No _____ If the answer is "yes," please specify capacity and contents of tank; permits, licenses and/or approvals received or to be received therefor and any spill prevention control or conformance plan to be taken in connection therewith:

_____

_____

_____

9. **ONGOING ACTIVITIES (APPLICABLE TO TENANTS IN POSSESSION)**

Has any hazardous material, substance or waste spilled, leaked, discharged, leached, escaped or otherwise been released into the environment at the Premises? Yes _____ No _____ If the answer is "yes," please describe including (i) the date and duration of each such release, (ii) the material, substance or waste

000151

released, (iii) the extent of the spread of such release into or onto the air, soil and/or water, (iv) any action to clean up the release, (v) any reports or notifications made of filed with any federal, state, or local agency, or any quasi-governmental agency (please provide copies of such reports or notifications) and (vi) describe any legal, administrative or other action taken by any of the foregoing agencies or by any other person as a result of the release:

_____

_____

_____

This Hazardous Materials Questionnaire is certified as being true and accurate and has been completed by the party whose signature appears below on behalf of Tenant as of the date set forth below.

DATED: _____

Signature  _____

Print Name  _____

Title  _____

000152

# GUARANTY OF LEASE - EXHIBIT H

WHEREAS, V. O. Limited Partnership hereinafter "Landlord", and Houtan Petroleum, Inc., hereinafter "Tenant", are about to execute a document entitled "Lease" dated October __, 2007 concerning the premises commonly known as 101 E El Camino Real, Mountain View, California wherein Landlord will lease the premises to Tenant, and WHEREAS, Landlord would not execute the Lease if Guarantor did not execute and deliver to Landlord this Guarantee of Lease.

NOW THEREFORE, in consideration of the execution of the foregoing Lease by Landlord and as a material inducement to Landlord to execute said Lease, Guarantor hereby jointly, severally, unconditionally and irrevocably guarantee the prompt payment by Tenant of all rents and all other sums payable by Tenant under said Lease and the faithful and prompt performance by Tenant of each and every one of the terms, conditions and covenants of said Lease to be kept and performed by Tenant.

It is specifically agreed that the terms of the foregoing Lease may be modified by agreement between Landlord and Tenant, or by a course of conduct, and said Lease may be assigned by Tenant or any assignee of Tenant without consent or notice to Guarantor and that this Guaranty shall guarantee the performance of said Lease as so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Landlord to enforce any of the rights or remedies of the Landlord under said Lease whether pursuant to the terms thereof or at law or in equity.

No notice of default need be given to Guarantor, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Landlord may proceed immediately against Tenant and /or against Guarantor following any breach or default by Tenant or for the enforcement of any rights which Landlord may have as against Tenant under the terms of the Lease or at law or in equity.

Landlord shall have the right to proceed against Guarantor hereunder following any breach or default by Tenant without first proceeding against Tenant and without previous notice to or demand upon either Tenant or Guarantor.

Guarantor hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c)all right to assert or plead any statue of limitations relating to this Guaranty or the Lease, (d) any right to require the Landlord to proceed against the Tenant or any other Guarantor or any other person or entity liable to Tenant, (e) any right to require Landlord to apply to any default, any security deposit or other security it may hold under the Lease, (f) any right to require Landlord to proceed under any other remedy Landlord may have before proceeding against Guarantor, (g) any right of subrogation.

Guarantor does hereby subrogate all existing or future indebtedness of Tenant to Guarantor to the obligations owed to Landlord under the Lease and this Guaranty.

If a Guarantor is married, such Guarantor expressly agrees that recourse may be had against his or her separate property for all of the obligations hereunder.

The obligations of Tenant under the Lease to execute and deliver estoppel statements and financial statements, as therein provided, shall be deemed to also require the Guarantor hereunder to do and provide the same.

The term "Landlord" refers to and means the Landlord named in the Lease and also Landlord's successor and assigns.  So long as Landlord's interest in the Lease, the leased premises or the rents, issues and profits therefrom, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantor of the Landlord's interest shall affect the continuing obligation of Guarantor under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment and their successors and assigns.

The term "Tenant" refers to and means the Tenant named in the Lease and also Tenant's successors and assigns.

In the event any action be brought by said Landlord against Guarantor hereunder to enforce the obligation of Guarantor hereunder, the unsuccessful party in such action shall pay to the prevailing party herein a reasonable attorney's fee which shall be fixed by the court.

Executed in Santa Clara County California

Address _____

Date: _____            _____

                                                    Ali Bozorghadad  " GUARANTOR"

000153