1   GLYNN & FINLEY, LLP
    CLEMENT L. GLYNN, Bar No. 57117
2   ADAM D. FRIEDENBERG, Bar No. 205778
    One Walnut Creek Center
3   100 Pringle Avenue, Suite 500
    Walnut Creek, CA 94596
4   Telephone: (925) 210-2800
    Facsimile: (925) 945-1975
5   Email: cglynn@glynnfinley.com
           afriedenberg@glynnfinley.com
6
    Attorneys for Defendant
7   ConocoPhillips Company

8
                    UNITED STATES DISTRICT COURT
9
          NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION
10

11  HOUTAN PETROLEUM, INC.            )  Case No. 3:07-cv-5627
                                      )
12              Plaintiff,            )  **DECLARATION OF ADAM**
                                      )  **FRIEDENBERG IN SUPPORT OF**
13      vs.                           )  **CONOCOPHILLIPS COMPANY'S**
                                      )  **APPLICATION FOR WRIT OF**
14  CONOCOPHILLIPS COMPANY, a Texas   )  **POSSESSION AND PRELIMINARY**
    corporation and DOES 1 through 10,)  **INJUNCTION**
15  Inclusive                         )
                                      )  Date:      **January 25, 2008**
16              Defendants.           )  Time:      **10:00 a.m.**
                                      )  Courtroom: **1**
17  ──────────────────────────────────)  Before:    **Hon. Samuel Conti**

18      I, Adam Friedenberg, say:

19      1.      I am an attorney licensed to practice in the State of California, and I am a member

20  of the bar of this Court. I know the following facts of my own personal knowledge and if called

21  upon could and would competently testify thereto.

22      2.      After the Court denied injunctive relief, Houtan Petroleum indicated that it was

23  interested in a continuing fuel supply arrangement with ConocoPhillips. Attached hereto as

24  **Exhibit A** is a true and correct copy of an email to this effect from Houtan Petroleum's counsel

25  of record, Gennady Lebedev. I received this email on or about November 16, 2007.

26      3.      ConocoPhillips thereafter proposed potential terms of a ten-year fuel supply

27  agreement with Houtan Petroleum. Attached hereto as **Exhibit B** is a true and correct copy of

28  my November 21, 2007 correspondence to Mr. Lebedev.

- 1 -

1       4.      Houtan Petroleum rejected ConocoPhillips' fuel supply proposal.  Attached hereto

2  as **Exhibit C** is a true and correct copy of Mr. Lebedev's November 28, 2007 correspondence to

3  me communicating this rejection.

4       5.      Attached hereto as **Exhibit D** is a true and correct copy of my December 3, 2007

5  correspondence to Mr. Lebedev.  Attached hereto as **Exhibit E** is a true and correct copy of Mr.

6  Lebedev's response to my December 3 correspondence.

7       6.      Attached hereto as **Exhibit F** is a true and correct copy of my December 13, 2007

8  correspondence to Mr. Lebedev.

9       7.      Attached hereto as **Exhibit G** is a true and correct copy of *Maintanis v. Shell Oil*

10  *Co.*, Bus. Franchise Guide (CCH) ¶ 8160 (D. Mass. 1984).

11       8.      Attached hereto as **Exhibit H** is a true and correct copy of the Court's November

12  16, 2007 Order Denying Plaintiff's Motion for Preliminary Injunction.

13       I declare under penalty of perjury, under the laws of the State of California, that

14  the foregoing is true and correct.  Executed this 20 th day of December, 2007, at Walnut Creek,

15  California.

16

17                      Adam Friedenberg

18

19

20

21

22

23

24

25

26

27

28

FRIEDENBERG DECL. IN SUPPORT OF CONOCOPHILLIPS' APPLICATION FOR WRIT OF POSSESSION

# EXHIBIT A

## Adam Friedenberg

**From:**    Gennady [glebedev@bleaufox.com]
**Sent:**    Friday, November 16, 2007 4:24 PM
**To:**    Adam Friedenberg
**Cc:**    bleaushark@aol.com
**Subject:** RE: Houtan v. ConocoPhillips

To avoid customer inconvenience, before Conoco shuts everything off, Houtan may be willing to sign a 3 month supply agreement on the condition of paying a reasonable rent and being fully responsible for all environmental issues after date of termination.

Let me know what you propose.


Gennady L. Lebedev
BLEAU FOX, A P.L.C.
3575 Cahuenga Bl. West, Suite 580
Los Angeles, CA 90068
Tel.:(323) 874-8613
Fax: (323) 874-1234
GLebedev@BleauFox.com

This e-mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone or return e-mail and delete the e-mail from your server. Thank you.


**From:** Adam Friedenberg [mailto:afriedenberg@glynnfinley.com]
**Sent:** Friday, November 16, 2007 3:37 PM
**To:** bleaushark@aol.com; glebedev@bleaufox.com; tbleau@bleaufox.com
**Subject:** Houtan v. ConocoPhillips

Tom and Gennady,

I trust that by now you have had an opportunity to review Judge Conti's order. Given the Court's denial of injunctive relief, and the Court's explicit findings that the agreement was property terminated and Houtan Petroleum no longer has any right to use the Union 76 marks, ConocoPhillips will terminate all further fuel deliveries and credit card sales, and will take steps to remove its trademarks and trade dress from the station premises. Please ensure that your client does not interfere with ConocoPhillips' efforts to remove its marks and trade dress.

With that said, ConocoPhillips of course remains interested in exploring a mutually agreeable resolution of this matter. We recognize that the relationship has been economically productive for both parties, and are certainly willing to consider ways by which the parties may resume the relationship. If you have any thoughts in this regard, please let me know.

I am out of the office today, so if you would like to discuss further, please feel free to try me at 415-793-9406.

Adam


12/19/2007

# EXHIBIT B

GLYNN & FINLEY, LLP

ONE WALNUT CREEK CENTER
SUITE 500
100 PRINGLE AVENUE
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE: (925) 210-2800

FACSIMILE: (925) 945-1975

WRITER'S DIRECT DIAL NUMBER
(925) 210-2809
e-mail:  afriedenberg@glynnfinley.com

November 21, 2007

ConocoPhillips/Houtan Petroleum

**VIA FACSIMILE AND U.S. MAIL**

Gennady Lebedev, Esq.
Bleau, Fox & Fong
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, CA 90068-1336

Dear Gennady:

Thank you for your email of Friday afternoon.  The short-term supply arrangement you have suggested is not acceptable to ConocoPhillips Company.  As the Court has now recognized, the parties' previous agreement has terminated and cannot be resurrected.  Thus, if the relationship is to continue, ConocoPhillips is interested in a new long term agreement.

To that end, ConocoPhillips would instead propose, subject to management approval, that in addition to reaching a mutually-agreeable resolution to the value of the improvements and equipment, the parties enter into a 10-year branded reseller agreement at the Mountain View station.  Such an agreement would be subject to ConocoPhillips' standard Branded Reseller Agreement and the following terms:

- An estimated volume of 300,000 gallons per month;

- Three cent per gallon facility allowance;

- A $250,000 self-amortizing loan to assist Houtan in rebuilding the station;

- Houtan Petroleum will not be required to make any rent payment to ConocoPhillips (i.e., for the use of ConocoPhillips' equipment and improvements) during the life of the agreement;

Gennady Lebedev, Esq.
November 21, 2007
Page 2

- Houtan Petroleum alone will be responsible for all lease-related obligations, including but not limited to maintenance, repair, environmental and real estate property tax obligations;

- Houtan Petroleum and De Anza Properties / V.O. Limited agree that ConocoPhillips shall have access to the station premises for a reasonable period after expiration or termination of the agreement to conduct any environmental or other necessary work and to remove its buildings, equipment and improvements (to the extent the parties are unable to agree on terms of a purchase by Houtan of such buildings, equipment and improvements) should ConocoPhillips elect to do so; and

- Houtan Petroleum agrees to dismiss the litigation with prejudice, and to provide a complete release of any claims asserted or which could have been asserted in the litigation.

The agreement would be subject to a liquidated damages provision in the event the site is debranded prior to the end of the 10 year contract term. Again, these proposed terms are all subject to ConocoPhillips management approval, so if they are of interest to your client please let me know and we will endeavor to seek such approval.

Finally, in the event the parties do not enter a fuel supply agreement, ConocoPhillips remains willing to leave its equipment and improvements in place pending the litigation, subject to appropriate conditions (including those outlined in our opposition to your motion for preliminary injunction). If Houtan Petroleum is truly interested in purchasing this property, however, then it would make sense for both parties to attempt to agree to sale terms now, rather than at the end of continued and costly litigation. If you are interested in making a reasonable proposal to purchase ConocoPhillips' fixtures, we would encourage you to do so now.

Obviously, it is in both parties' interest to resolve these issues as soon as possible. Accordingly, please let me have your response no later than close of business on Monday, November 26. Thank you.

Very truly yours,

Adam Friedenberg

# EXHIBIT C

# BLEAU FOX
A PROFESSIONAL LAW CORPORATION

3575 CAHUENGA BLVD. WEST, SUITE 580
LOS ANGELES, CALIFORNIA 90068
(323) 874-8613
FACSIMILE (323) 874-1234

November 28, 2007

Adam Friedenberg, Esq.
Glynn & Finley, LLP
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596

VIA FACSIMILE TRANSMISSION AND U.S. MAIL
Fax No.: 925-945-1975

RE:    My client:        Houtan Petroleum, Inc.
       Station Location:  101 E. El Camino Real, Mountain View, CA 94040
       Station #:         255661

Dear Adam:

This is in response to your letter dated November 27, 2007

Houtan Petroleum is not currently in a position to enter into a long term supply agreement under the terms proposed in your November 21, 2007 letter. As you are aware, the value of the equipment and improvements at the station is still in dispute, as well as ConocoPhillips' termination of the franchise. While the District Court denied Houtan's application for a preliminary injunction with respect to supply, it noted that the valuation of the property remains to be determined as a question of fact and that the injunction with respect to the improvements was moot. Thus, until the propriety of ConocoPhillips' offer is conclusively determined, there is no legal basis for your contention that ConocoPhillips has any right to remove the property from the site during the pendency of the underlying litigation. If ConocoPhillips intends to take any action to disturb the property, that would seem to create grounds for a renewed application for injunctive relief.

Very truly yours,

BLEAU / FOX, A P.L.C.

By: Gennady L. Lebedev, Esq.

# EXHIBIT D

GLYNN & FINLEY, LLP
ONE WALNUT CREEK CENTER
SUITE 500
100 PRINGLE AVENUE
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE: (925) 210-2800

FACSIMILE: (925) 945-1975

WRITER'S DIRECT DIAL NUMBER
(925) 210-2809
e-mail: afriedenberg@glynnfinley.com

December 3, 2007

ConocoPhillips/Houtan Petroleum

**VIA FACSIMILE AND U.S. MAIL**

Gennady Lebedev, Esq.
Bleau, Fox & Fong
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, CA 90068-1336

Dear Gennady:

This responds to your letter of November 28.

Your claim that ConocoPhillips has no right to remove its property from the station premises during the pendency of the litigation is incorrect. The Court has denied the preliminary injunctive relief sought by Houtan Petroleum, and declined to order ConocoPhillips to leave its property at the station site. The Court specifically found that ConocoPhillips, if compelled to leave its property at the station,

> would suffer some hardship. Conoco[Phillips] would be forced to leave its fuel storage and dispensation system at a station site over which it has no control and no right of entry. In light of the environmental issues associated with a gas station, Conoco[Phillips] would be exposed to risks if it were unable to supervise or ensure prudent station practices and compliance with applicable regulations.

(Docket No. 18 at 18:21-27.)

Moreover, under the PMPA, Houtan Petroleum was required to request that ConocoPhillips make a bona fide offer to sell its improvements and equipment within 30 days after receipt of notice of termination of the franchise agreement. 15 U.S.C. § 2804(c)(4)(C). The Court found that ConocoPhillips provided notice of termination in the most recent franchise agreement. ConocoPhillips provided that agreement to Houtan Petroleum in May 2007. Houtan Petroleum executed the agreement, including by separately initialing the notice of termination, on July 6, 2007.

Gennady Lebedev, Esq.
December 3, 2007
Page 2

However, Houtan Petroleum did not request a bona fide offer until October 18, 2007, months after the statutory deadline passed.  These facts are evident on the face of the Complaint and documents referenced therein.  Accordingly, ConocoPhillips intends to move to dismiss the Complaint on the ground that Plaintiff's request for a bona fide offer was untimely as a matter of law and the Complaint thus fails to state a claim under the PMPA.

      In light of Houtan Petroleum's failure to comply with the clear requirements of the PMPA, ConocoPhillips was, and is, under no legal obligation to offer to sell its equipment and improvements to your client.  ConocoPhillips nonetheless made such an offer, in the interest of allowing your client to continue to operate the station.  The offer was based on an independent appraisal prepared by a qualified appraiser.  You have claimed that the appraisal was somehow deficient, but you have never explained the basis for your assertion.  Moreover, we have made numerous requests that you provide any appraisal or other alternative evidence of valuation, and have repeatedly advised that ConocoPhillips would consider a reasonable proposal to purchase the equipment and improvements.  You have declined to provide any such evidence or make any reasonable proposal, and instead continue to maintain that your client is entitled to use ConocoPhillips' property indefinitely, without paying rent, and without any contractual agreement authorizing such use.  Your client has no such right, and the Court has not made such a finding.  If your client truly has an interest in acquiring ConocoPhillips' property, he need only negotiate such a purchase in good faith, and promptly.

      Alternatively, ConocoPhillips remains willing to enter an appropriate interim agreement to leave its property at the station pending the litigation.  As the Court explicitly recognized in its order denying injunctive relief, however, such an agreement would necessarily require "Houtan's and V.O. Limited's agreement to several issues, including an appropriate interim rental payment, allocation of responsibility for environmental compliance and an appropriate manner and time for removal in the event Houtan ultimately decides not to purchase the equipment and improvements."  (Docket No. 18 at 16:9-14.)  Accordingly, subject to ConocoPhillips management approval, any interim agreement to leave the equipment and improvements at the station premises pending the litigation would necessarily be subject to the following terms:

- Houtan Petroleum will pay ConocoPhillips a monthly rent of $4,000 (rent based on a 14% capitalization rate, using the appraised value of $340,000), with rent for the first and last months to be paid in advance;

- Rent will be assessed retroactive to November 1, 2007, the date on which the franchise agreement (and thus Houtan Petroleum's right to use the improvements) terminated;

Gennady Lebedev, Esq.
December 3, 2007
Page 3

- Houtan Petroleum will pay a security deposit of $8,000;

- The lease term would be month-to-month, and terminable by either party at any time upon 30 days' notice;

- Additionally, ConocoPhillips may terminate the lease on 10 days' notice upon dismissal of Houtan Petroleum's pending PMPA claim;

- Houtan Petroleum alone will be responsible for all lease-related obligations, including but not limited to maintenance, repair, environmental and real estate property tax obligations;

- Houtan Petroleum and De Anza Properties / V.O. Limited agree that ConocoPhillips shall have access to the station premises during the interim lease period to conduct any necessary certification, testing, auditing, monitoring or investigation;

- Houtan Petroleum and De Anza Properties / V.O. Limited agree that ConocoPhillips shall have access to the station premises for a reasonable period after expiration or termination of the agreement to conduct any environmental or other necessary work and to remove its buildings, equipment and improvements (to the extent the parties are unable to agree on terms of a purchase by Houtan Petroleum of such buildings, equipment and improvements) should ConocoPhillips elect to do so;

- Houtan Petroleum, at its sole expense, shall obtain a satisfactory UST Tightness Test within 10 days after execution of a written interim lease agreement from an independent party approved by ConocoPhillips; and

- Houtan Petroleum and De Anza Properties / V.O. Limited agree to and execute a standard ConocoPhillips access agreement.

    If Houtan Petroleum is interested in such an interim rental agreement, please advise and we will submit such terms for approval by ConocoPhillips management. These terms are all reasonable and reflect the Court's previous recognition that ConocoPhillips' property rights require that it have adequate entry rights and the ability to monitor environmental issues, and to supervise and ensure prudent station practices and compliance with applicable regulations. Accordingly, if these terms are not acceptable to Houtan Petroleum, and Houtan Petroleum remains unwilling to discuss in good faith its purchase of ConocoPhillips' property, then ConocoPhillips will remove its

Gennady Lebedev, Esq.
December 3, 2007
Page 4

property without further delay, as it is entitled to do under both the PMPA and the parties' previous franchise agreement.  The choice is your client's.

Please let me have your client's response no later than close of business on December 5.

Very truly yours,

Adam Friedenberg

# EXHIBIT E

# BLEAU FOX

A PROFESSIONAL LAW CORPORATION

3575 CAHUENGA BLVD. WEST, SUITE 580
LOS ANGELES, CALIFORNIA 90068
(323) 874-8613
FACSIMILE (323) 874-1234

December 5, 2007

Adam Friedenberg, Esq.
Glynn & Finley, LLP
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596

VIA FACSIMILE TRANSMISSION AND U.S. MAIL
Fax No.: 925-945-1975

RE:    Houtan Petroleum, Inc. v. ConocoPhillips Company

Dear Adam:

This is in response to your letter dated December 3, 2007.

The Court's denial of the application for preliminary injunction is not a conclusive resolution of Houtan's claims asserted in its compliant. Both the propriety of ConocoPhillips' termination and whether its offer to Houtan was bona fide have yet to be adjudicated. As such, ConocoPhillips will not be permitted to remove the property during the pendency of this case.

You have misconstrued the basis for the Court's denial of the preliminary injunction. Your quote regarding Conoco's alleged "hardship" is taken out of context. The Court's discussion of ConocoPhillips' alleged "hardship" must be reviewed in the context of its finding that Houtan would not "face substantial hardships without a preliminary injunction" if the franchise is terminated, because after initial termination "Houtan was able to purchase fuel from another supplier and was able to continue operating the Station." The Court's decision to deny the injunction was based on Conoco's own agreement "to leave its equipment and improvements in place pending party negotiation or judicial determination of an appropriate purchase price" which would allow Houtan to continue operating the Station. In light of ConocoPhillips' agreement to leave the equipment and improvements on the property during the pendency of litigation, the Court found that "[t]he primary hardship to Houtan will be the requirement that it stop operating the station as a Union 76 station." (Docket No. 18, at 18:7-20). Thus, with ConocoPhillips' acknowledgment that the equipment and improvements could remain on the property during the litigation, that issue was rendered moot. Moreover, there is nothing in the Court's decision that can be construed as an order permitting ConocoPhillips to remove the equipment before an adjudication of Houtan's claims on the merits. Thus, the equipment and improvements must remain on the property during the pendency of this case. Otherwise, Houtan will a much more severe hardship than it has already suffered with the cessation of fuel deliveries by ConocoPhillips.

The Court's discussion of the statements regarding the underlying lease contained in the franchise agreement does not address the issue of whether such statements can serve as a trigger for a bona fide offer from ConocoPhillips. As you know, the PMPA provides for two notice requirements. One before the start of the franchise, and a second after the franchise commences.

It is the second notice requirement that triggers the request for an offer (after commencement of the franchise and after the franchisee "acquires possession of the leased marketing premises effective immediately after the loss of the right of the franchisor to grant possession.") Regardless, Houtan did request the offer pursuant to the PMPA and ConocoPhillips made one which was commercially unreasonable and inflated the values of the improvements and equipment. Even if you were correct in your assessment (which we dispute) ConocoPhillips waived the right to argue that it was not required to make the offer or that the offer need not have complied with the PMPA, by virtue of having made it and by contending that such offer was made "[i]n accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801, et seq...." as stated in the offer itself. This fact is buttressed by ConocoPhillips' own arguments that were filed with the Court in opposition to Houtan's application for preliminary injunction.

Furthermore, you must recall that it is ConocoPhillips' burden under the PMPA to justify the *bona fideness* of its offer, rather than Houtan's burden to refute it. Nevertheless, Ed Haddad has explained what he believes to be the fair market value of the equipment and improvements in his declaration filed in connection with Houtan's application for preliminary injunction. However, ConocoPhillips has yet to provide a copy of the complete appraisal for Houtan's evaluation. In any event settlement discussions are premature until after completion of discovery.

Finally, ConocoPhillips' request for rent assumes that its $340,000 valuation of the property is accurate, which is denied by Houtan. If ConocoPhillips is unable to prove that its offer approaches fair market value, it will not be entitled to any rental value by virtue of its failure to comply with the PMPA. Rather, Houtan will be entitled to damages and attorney fees under the PMPA. Regardless, in light of Houtan's agreement to be responsible for all environmental issues, there is no basis for Houtan's contention that it entitled to prematurely remove the equipment and improvements merely on the basis of the parties failure to agree on the issue of rent.

Notwithstanding the foregoing, Houtan will agree to the following:

1.    Houtan will be responsible for all environmental obligations fro the date Houtan acquired possession;

2.    Houtan's responsibility for real estate property taxes will be pursuant to its lease with the landlord;

3.    Houtan will have the right to maintain and repair the equipment and improvements, but shall not be obligated to do so;

4.    ConocoPhillips shall have the right to maintain and repair the equipment and improvements, but shall not be obligated to do so;

5.    ConocoPhillips shall have access to the station premises during the pendency of the litigation to conduct any necessary certification, testing, auditing, monitoring or investigation related to its equipment and improvements only;

6.    ConocoPhillips shall have access to the station premises for a reasonable period

after the conclusion of the litigation to conduct any environmental or other necessary work and to remove its buildings, equipment and improvements (to the extent the parties do not agree on the purchase or the items);

7. Houtan shall not be responsible for any testing of the equipment since it does not own the property yet and the seller is traditionally is required to sell equipment that is good working order;

8. Houtan will execute a mutually acceptable access agreement giving ConocoPhillips access to the property to conduct the above-referenced maintenance, repairs, testing, etc.

Although Houtan is willing to enter into an agreement that incorporates the above terms, absent a court order, Houtan will not permit your client to remove the property during the pendency of this litigation.

Very truly yours,

BLEAU / FOX, A P.L.C.

By:    Gennady L. Lebedev, Esq.



# EXHIBIT F

GLYNN & FINLEY, LLP
ONE WALNUT CREEK CENTER
SUITE 500
100 PRINGLE AVENUE
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE: (925) 210-2800

FACSIMILE: (925) 945-1975
_____

WRITER'S DIRECT DIAL NUMBER
(925) 210-2809
e-mail:  afriedenberg@glynnfinley.com

December 13, 2007

ConocoPhillips/Houtan Petroleum

**VIA FACSIMILE AND U.S. MAIL**

Gennady Lebedev, Esq.
Bleau, Fox & Fong
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, CA 90068-1336

Dear Gennady:

      This responds to your letter of December 5.  First, I was obviously surprised to learn that you now claim to be of the view that "settlement discussions are premature until after completion of discovery."  I have been discussing various settlement concepts and proposals with you -- and with your colleague, Mr. Bleau -- prior to and throughout the pendency of this litigation.  Why only now (after weeks of settlement discussions) have you decided that no further settlement discussions are appropriate prior to the completion of discovery?

      The reality is that ConocoPhillips has made numerous efforts to accommodate your client.  When you advised that Houtan Petroleum was interested in resumption of a supply arrangement with ConocoPhillips, we made such a proposal.  You rejected it.  We have repeatedly offered to consider a reasonable counter-offer by Houtan Petroleum to purchase ConocoPhillips' improvements.  You have refused to make any such proposal.  Accordingly, ConocoPhillips offered to rent its property to your client pending the litigation so that Houtan Petroleum could continue to operate the station.  But now you contend that Houtan Petroleum is entitled to continue to possess and use ConocoPhillips' property without making any rent payment.

      This, however, is precisely what you sought in your motion for preliminary injunctive relief -- a motion the Court has already considered, and denied.  Thus, your true position is that Houtan Petroleum is entitled to help itself to relief the Court has already denied.  Houtan Petroleum obviously has no interest in negotiating any agreement with ConocoPhillips, but seeks only to abuse the Court's processes to interfere with ConocoPhillips' right to recover its property.  We expect Judge Conti will take a

Gennady Lebedev, Esq.
December 13, 2007
Page 2

dim view of such tactics. You claim that the Court's denial of injunctive relief was based on ConocoPhillips' indication that it would attempt to leave the property in place pending the litigation. As you know, however, ConocoPhillips has consistently made clear, and indeed Judge Conti's order explicitly recognized, that any such accommodation would be subject to, among other things, Houtan Petroleum's agreement to an appropriate interim rental payment.

Neither the PMPA nor the parties' agreement, and certainly not Judge Conti's order, grants Houtan Petroleum any right to continue to possess and use ConocoPhillips' property. If Houtan Petroleum wishes to continue to use ConocoPhillips' property, it can either rent or purchase it. Houtan Petroleum's continued refusal to do either, and its claim of some right to maintain possession of ConocoPhillips' property, constitutes a conversion and is otherwise unlawful. Accordingly, if you do not respond with an offer of reasonable interim rental payment, by Monday, December 17, then we will have no choice but to seek immediate relief from the court, including a writ of possession and/or preliminary injunction authorizing ConocoPhillips to remove its property from the station.

Very truly yours,

Adam Friedenberg/rc

Adam Friedenberg

# EXHIBIT G

**14,388**      New Developments      50   5-84

attachments with any wholesaler, manufacturer, or distributor of farm implements, machinery, attachments, or repair parts, or automobiles, trucks, or repair parts, and either such wholesaler, manufacturer, or distributor or the retailer desires to cancel or discontinue the contract, such wholesaler, manufacturer, or distributor, shall pay to such retailer unless the retailer should desire to keep such merchandise, a sum equal to one hundred percent of the net cost of all current unused complete farm implements, machinery, attachments, automobiles, and trucks including transportation charges which have been paid by such retailer, and eighty-five percent of the current net prices on repair parts, including superseded parts listed in current price lists or catalogs which parts have previously been purchased from such wholesaler, manufacturer, or distributor, and held by such retailer on the date of the cancellation or discontinuance of such contract or thereafter received by such retailer from the wholesaler, manufacturer, or distributor.

The foregoing provision was intended to remedy the problem which arises when a dealer has been required by the terms of the franchise agreement to invest in purchases of equipment in order to maintain a specified level of inventory parts or machinery and thereby using cash assets that would ordinarily be available for operating expenses. In such instances, the manufacturer shares the fault should the situation arise where the dealer is unable to continue in business. This intent appears to be clear from the language of the statute itself as it becomes operative where under the terms of the written contract the dealer agrees to maintain a stock of parts or complete machines. This is to be contrasted from the situation where the dealer voluntarily purchases equipment and is under no specific obligation to maintain a certain level of parts or whole machines. In this latter situation, the manufacturer is less

at fault should a failure occur in the dealer's business. It is the opinion of this Court that section 51-07-01 of the Code is not applicable in instances where the written agreement does not specifically require a dealer to maintain a stock of parts or whole machines.

*[Inventory Maintenance]*

A review of the agreement entered into between the Debtor and Krause, which was submitted to the Court as a stipulated exhibit, provides, in part:

DEALER agrees to buy for resale and KRAUSE agrees to sell to DEALER for resale KRAUSE Implements, Parts and Accessories upon the conditions herein set forth and as set forth in the "Schedule of Terms to Dealers" as published by KRAUSE and in effect at the date of purchase. Approval of this agreement is not contingent upon purchase by DEALER of any implements, equipment or parts. (Paragraph 1 of Dealer Agreement)

A review of the complete Dealer Agreement does not reveal any specific requirement that the Debtor maintain any particular level of stock of Krause's equipment. It only requires that it purchase various items of equipment from Krause. Thus, the agreement was to be approved regardless of whether the Debtor ever made any purchases from Krause. This is not the type of relationship which was envisioned by the framers of section 51-07-01 of the North Dakota Century Code. Accordingly, and for the reasons above stated, the Court will not apply section 51-07-01 to the situation now before it.

Accordingly,

It Is Ordered that the Debtor's Motion for termination of the Krause Implement Co., Inc. dealer agreement be and the same is hereby Granted. That portion of the Motion as it pertains to application of Chapter 51-07 is Denied.

---

**[¶ 8160] Nonpayment of Rent, Failure to Offer Gasoline Constituted Cause for Termination of Franchise**

Stephen T. Maintanis and S. Maintanis, Inc. v. Shell Oil Co.

U.S. District Court, District of Massachusetts. Civil Action No. 82-3937-Z. Dated January 19, 1984.

¶ 8159      ©1984, Commerce Clearing House, Inc.

©1984, Commerce Clearing House, Inc.   634—50

## Petroleum Marketing Practices Act

**Relationship/Termination—Cause for Termination—Nonpayment of Rent—Failure to Sell Gasoline—Possession of Premises.**—A gasoline franchisee's failure to pay rent for four consecutive months and failure to offer gasoline for sale at the franchise constituted good cause for termination under the Petroleum Marketing Practices Act. Nonpayment of sums due the franchisor was an event for which termination was reasonable under Sec. 102(c)(8) of the Act. Failure to offer gasoline constituted grounds for termination as a breach of a reasonable and material provision of the franchise agreement under Sec. 102(b)(2)(A) and as an event for which termination was reasonable under Sec. 102(c)(8). Given the franchisor's compliance with the federal dealer law, the franchisee would be unlikely to obtain a preliminary injunction allowing continued possession of franchise premises. Thus, the franchisee was ordered to surrender possession and was prohibited from interfering with the franchisor's possession or operation of the service station. **Back reference: ¶ 1550.**

### Memorandum and Order

### [In full text]

ZOBEL, D.J.: This action arises from the efforts of defendant Shell Oil Company ("Shell") to terminate its lease of a service station at 44-48 Madison Street, Worcester, Massachusetts ("the station") and a dealer agreement with plaintiff Stephen T. Maintanis ("Maintanis") expiring December 31, 1982. After Shell notified the plaintiff that it intended to sell the station and would not renew the lease and agreement, plaintiff commenced the action to enjoin Shell in December 1982 claiming that Shell had violated the Petroleum Marketing Practices Act ("PMPA") provisions governing such nonrenewals.[1] In January 1983, Shell withdrew its notice of nonrenewal and continued the franchise on a month-to-month basis. Negotiations between the parties eventually proved fruitless, and on August 5, 1983 Shell notified Maintanis that it would terminate the franchise because of his failure to pay rent due from May on and his failure to offer gasoline for sale at the station. It then moved for a preliminary injunction to restrain plaintiff from occupying the station unless he used the facilities regularly to vend gasoline. After a hearing on September 2, 1983, Judge Garrity denied the motion without prejudice, because Shell had not shown any immediacy of harm to it since use (or nonuse) of the storage and dispensing facilities was not different than it had been for the past several months.[2]

Shell now moves for a preliminary injunction ordering plaintiff to surrender possession of the station, contending that plaintiff's franchise was properly terminated on November 15, 1983 and that under the PMPA plaintiff may not remain in possession without a court order or Shell's consent.

### [Cause for Termination]

Under the lease plaintiff agreed to pay Shell rent of $1,725 per month on the first day of each month during any extension of the lease on a month-to-month basis. (Lease, Articles 3 and 14). The affidavit of Keith Aune and plaintiff's own statement at the hearing establish that plaintiff failed to pay rent due from May 1983 on. Nonpayment of sums to which the franchisor is legally entitled constitutes "an event . . . as a result of which termination of the franchise . . . is reasonable," 15 U.S.C. § 2802(c)(8) and allows such termination under § 2802(b)(2)(C) of the PMPA. Maintanis' failure to sell gasoline is likewise established by affidavit and his own statement, and constitutes grounds for termination under § 2802(b)(2)(A) as well as § 2802(b)(2)(C) as defined in § 2802(c)(9). The Aune affidavit also establishes that Shell gave the notice of termination required by § 2804.

The Court is sympathetic to the plight of Mr. Maintanis who has worked this gas station for many years and who has lost not only his business but who is, as a result of Shell's actions, without a job. It is also cognizant of the difficulties he has had dealing as an individual with a large corporation and faced with a choice among a lease whose rent he felt was unaffordable, or a sale price he felt was unreasonable, or a payment for relinquishment of rights which he felt was inadequate. However, by failing to keep current his rent payments he breached the terms of the agreement and provided Shell with the basis it needed to terminate any obligation to him under the statute. Given Shell's adherence to the letter of the statutory provisions governing termination of the franchise,[3] Maintanis would be unlikely to succeed in obtaining a preliminary injunction enabling him to remain in possession of the station *pendente lite* under § 2805.[4] That section requires the

franchisee to show sufficiently serious questions going to the merits to make such questions a fair ground for litigation. The franchisee has in any event not moved for such an injunction, and Shell contends that therefore Shell is entitled to possession of the station. Otherwise, it reasons, a franchisee could, though it failed to meet the requirements of § 2805, remain in possession until trial of its claims on the merits, circumventing the intent of the statute.

Defendant's reasoning is persuasive. The PMPA was designed to protect franchisees from arbitrary or discriminatory termination. Section 2805 reflects the legislative concern for franchisees, expressly providing for injunctive relief against franchisor takeover of facilities pending litigation, if the franchisee meets a given standard. That standard is more easy to satisfy than the traditional equitable one, in that plaintiff need not demonstrate a substantial likelihood of prevailing upon the merits, but only a fair ground for litigation.

Clearly, Congress intended to allow franchisees who met the statutory standard to remain in possession pending litigation, but the fact that it carefully delineated such a standard implies that franchisees not meeting the standard are not so protected.

Accordingly, it is Ordered:

1. Shell Oil Company's motion for possession of Shell's property is granted.

2. Plaintiff S. Maintanis, Inc. is order to surrender possession of the service station located at 44-48 Madison Street, Worcester, Massachusetts, and all property belonging to Shell to Shell Oil Company on or before twelve o'clock in the forenoon, January 31, 1984.

3. Plaintiff S. Maintanis, Inc., its officers and employees are further enjoined and restrained from interfering in any way with the peaceful possession and operation of said service station and property by Shell Oil Company, its employees, franchisees, and customers.

**[Footnotes]**

¹ The parties agree that the lease and dealer agreement constitute a franchise subject to the provisions of the PMPA, 15 U.S.C. §§ 2801-2806. Under § 2802(b)(3)(D) a good faith determination to sell a station is grounds for nonrenewal only of leases with a term of three years or longer; the stated term of the lease was 10 days short of three years.

² At the hearing, the motion of plaintiff's counsel to withdraw was allowed. According to plaintiff's counsel, plaintiff had been unwilling to accept any of the alternatives negotiated by counsel, and in July instructed counsel not to do anything more on his behalf. Since that hearing, plaintiff has acted pro se. In a letter of December 12, 1983 to the court, he stated that he had been

unable to obtain counsel. In response to the Court's inquiry during the hearing on December 15, 1983, plaintiff said that a continuance allowing further time in which to search for counsel would be of no help to him.

³ Section 2806 provides that the PMPA provisions preempt all other law concerning termination.

⁴ Section 2805(b)(2) provides that the court "shall" grant the franchisee a preliminary injunction if it can establish certain factors. Courts have taken these factors to be not only sufficient but necessary to the grant of a preliminary injunction. See *Palmieri v. Mobil Oil Corporation,* 682 F.2d 295 (2d Cir. 1982); *Humboldt Oil Co. v. Exxon Company,* 695 F.2d 386 (9th Cir. 1982).

---

## [¶ 8161]  Franchisor's Alleged Encroachment Did Not Violate Connecticut "Little FTC Act"

**McLaughlin Ford, Inc. v. Ford Motor Co.**

Connecticut Supreme Court. No. 11123. Released April 3, 1984.

**Little FTC Acts—Connecticut—Encroachment—Substantial Injury Requirement—Benefits of Intrabrand Competition.**—An automobile manufacturer's establishment of a dealership within the market area of an existing dealership was not an unfair trade practice under the Connecticut "little FTC Act." The manufacturer's conduct did not violate any statute or public policy, was not unethical or immoral, and did not cause substantial injury within the law. The injury suffered by the dealer was not substantial, since the loss was outweighed by consumer benefits resulting from intrabrand competition.

# EXHIBIT H

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOUTAN PETROLEUM, INC.,          )    Case No. 07-5627 SC
                                 )
          Plaintiff,             )
                                 )    ORDER DENYING
     v.                          )    PLAINTIFF'S MOTION
                                 )    FOR PRELIMINARY
CONOCOPHILLIPS COMPANY, a Texas  )    INJUNCTION
Corporation and DOES 1 through 10, )
Inclusive,                       )
                                 )
          Defendants.            )
                                 )
_____)

## I. INTRODUCTION

This matter comes before the Court on the Ex Parte Application for a Temporary Restraining Order and Preliminary Injunction ("Application") by the plaintiff Houtan Petroleum, Inc. ("Plaintiff" or "Houtan"). See Docket No. 3. The Court issued a Temporary Restraining Order and an Order to Show Cause regarding the preliminary injunction on November 6, 2007. See Docket No. 8 ("TRO"). The defendant ConocoPhillips Company ("Conoco" or "Defendant") then filed a Response and Plaintiff submitted a Reply. See Docket Nos. 11, 16. For the following reasons, the Court DENIES Plaintiff's Application for Preliminary Injunction.

## II. BACKGROUND

Houtan operated a Union 76 gas station ("the Station") as a

Conoco franchisee at the same location for approximately 10 years. Compl., Docket No. 1, at 1; Haddad Decl. ¶ 3.[1] Conoco did not own the Station property but instead leased it from a third-party, V.O. Limited Partners ("V.O. Limited").[2] Mathews Decl. ¶ 3.[3] Conoco owns the structures, equipment and improvements at the Station. Id.

The previous franchise agreement between Houtan and Conoco was set to expire on August 31, 2007.[4] Pellegrino Decl. ¶ 3.[5] The Master Lease between Conoco and V.O. Limited was set to expire on October 31. Id. On July 6, Houtan and Conoco executed a new franchise agreement ("the Franchise Agreement") that would begin September 1. Haddad Decl. Ex. A.[6] The Franchise Agreement was to be for a term of three years, expiring on August 31, 2010. Resp. at 3. The Franchise Agreement was executed, however, with the understanding by both Houtan and Conoco that Conoco's Master Lease for the Station property was set to expire on October 31, just two months after the new Franchise Agreement was set to begin. Resp.

---

[1] Ed Haddad is the President of Houtan. His declaration was submitted with Houtan's Application.

[2] This lease will be referred to as the Master Lease.

[3] Richard Mathews is an independent contractor for the Real Estate Department of Conoco. His declaration was submitted with Conoco's Response.

[4] Unless otherwise noted, all further dates are from 2007.

[5] Dan Pellegrino is an Account Representative for Conoco. His declaration was submitted with Conoco's Response.

[6] Although Haddad states in his declaration that the Agreement was executed on March 30, the dates contained in the actual agreement all reflect that it was executed on July 6. See Haddad Decl. Ex. A at 80.

United States District Court
For the Northern District of California

1   at 2.  Thus, if Conoco was unable to renew the Master Lease with

2   V.O. Limited, the Franchise Agreement would terminate as Conoco

3   would lose any right to occupy or sublease the Station.

4   Pellegrino Decl. ¶ 3.  As Pellegrino stated:  "In the event

5   ConcoPhillips was unable to renew its underlying lease [the Master

6   Lease] of the Station property, there was obviously no way it

7   would be able to continue to sublease the Station to Houtan

8   Petroleum.  ConocoPhillips had no further right to renew or extend

9   the underlying property lease."  Id.

10      Not only did Conoco explain this situation to Houtan as early

11  as May, but the Agreement itself, which was executed on July 6,

12  contained express language putting Houtan on notice that Conoco's

13  inability to renew the Master Lease with V.O. Limited would

14  necessarily result in termination of the Agreement.  The Agreement

15  states, in part:

16          There is a possibility that the term of
            the underlying lease [the Master Lease]
17          to the Station might expire and not be
            renewed upon the underlying lease's
18          expiration date.  DEALER [Houtan] hereby
            acknowledges CONOCOPHILLIPS' disclosure
19          to DEALER that this Agreement and the
            Station herein are subject to all terms
20          and conditions of an underlying lease
            held by CONOCOPHILLIPS in the property
21          and premises, which underlying lease
            expires on **October 31, 2007** and that such
22          underlying lease may expire and may not
            be renewed during the Term of this
23          Agreement.  Thereby, the DEALER [Houtan]
            is hereby on notice that this Agreement
24          is hereby terminated on the date the
            underlying lease expires  . . . .
25

26  Haddad Decl., Ex. A at 63 (emphasis in original).  Houtan

27  acknowledged this language in the Agreement by placing initials

28                                  3

United States District Court
For the Northern District of California

1   immediately following the above-cited language. See id. In

2   addition, Conoco, on several occasions, verbally advised Houtan of

3   the ramifications of nonrenewal of the Master Lease. See

4   Pellegrino Decl. ¶ 4 (stating "Throughout 2007, I explained all of

5   this to Mr. Hadad [sic] in numerous conversations during routine

6   meetings and visits to the Station. Mr. Hadad [sic] told me that

7   Houtan Petroleum still wanted to continue its franchise

8   relationship with Conoco . . . ."). With this understanding, the

9   parties executed the Franchise Agreement on July 6. Haddad Decl.,

10  Ex. A at 80.

11       The Master Lease between Conoco and V.O. Limited for the

12  Station property was initially for a 25 year term, beginning March

13  1, 1966, and expiring February 28, 1991. Mathews Decl. ¶ 4. A

14  subsequent modification extended the expiration date to October

15  31, 2002, and granted Conoco an option for an additional five year

16  term. Id. Conoco exercised that option and the Master Lease

17  expired October 31, 2007. Id. Conoco has submitted evidence

18  indicating that it made several attempts to renew or extend the

19  Master Lease beyond the October 31 date. Id. ¶ 5. According to a

20  sworn declaration submitted by Conoco, V.O. Limited never provided

21  a substantive response to Conoco's request to extend the Master

22  Lease and V.O. Limited eventually stopped responding to Conoco's

23  communications. Id. On September 17, Conoco advised V.O. Limited

24  that if V.O. did not respond by September 21 to Conoco's request

25  to extend the Master Lease, Conoco would consider such silence a

26  rejection. Id. V.O. Limited did not respond to this letter. Id.

27

28                                    4

United States District Court
For the Northern District of California

1    On September 18, Conoco informed Houtan in writing that it

2    would be terminating the Franchise Agreement effective October 31.

3    Haddad Decl., Ex. B.   The letter stated that the reason Conoco was

4    terminating the Franchise Agreement was because of Conoco's

5    inability to renew the Master Lease with V.O. Limited.  _Id._  On

6    October 16, Houtan entered into an agreement with V.O. Limited to

7    lease the Station property beginning November 1, the day after

8    Conoco's Master Lease ended.   Haddad Decl. ¶ 8.   On October 18,

9    Houtan sent Conoco a letter indicating that Houtan had entered

10   into a lease agreement with V.O. Limited for the Station property.

11   _Id._ ¶ 9; Ex. C, Ex. D.   In the same letter Houtan demanded that

12   Conoco sell its improvements and equipment on the Station property

13   to Houtan.   _Id._

14       On October 22, Conoco sent a letter to Houtan stating that

15   Conoco would sell the improvements and equipment to Houtan for

16   $340,000 if the offer was accepted by October 29, and if Houtan

17   paid the full amount by certified check by October 31.   Haddad

18   Decl., Ex. E.  Houtan refused to make this payment, believing it

19   to be in excess of fair market value.   Haddad Decl. ¶ 21.

20       On October 31, Conoco sent bulldozers to the premises to

21   begin removal of its equipment and improvements.   _Id._ ¶ 12.

22   Houtan refused to permit Conoco to enter the premises and Conoco

23   subsequently cut off fuel to the Station.   _Id._ ¶ 15.   Houtan was

24   able to obtain a fuel supply from another supplier.   Pellegrino

25   Decl. ¶ 7.

26       On November 5 Houtan filed a Complaint in this Court seeking

27

28                                    5

United States District Court
For the Northern District of California

1  damages, injunctive relief, equitable relief and declaratory

2  relief pursuant to the Petroleum Marketing Practices Act ("PMPA"),

3  15 U.S.C. § 2801, et seq.  On the same day Houtan filed an Ex

4  Parte Motion for a Temporary Restraining Order and Application for

5  Preliminary Injunction.  On November 6 the Court granted the

6  Temporary Restraining Order and enjoined Conoco from taking

7  further action to interfere with Houtan's immediate assumption of

8  control of the Station.  See TRO.  The TRO prevented Conoco from

9  removing any equipment or improvements and compelled Conoco to

10 resume its franchise relationship with Houtan by supplying fuel

11 and processing credit card sales from the Station.  Id.

12      The Court now addresses whether to issue a preliminary

13 injunction.  For the following reasons, the Court finds that a

14 preliminary injunction is not "necessary to remedy the effects of

15 any failure to comply with the requirements of section 2802 or

16 2803 . . . ."  15 U.S.C. § 2805(b).

17

18 III. **DISCUSSION**

19      A.   **Legal Standard**

20      "The PMPA is intended to protect gas station franchise owners

21 from arbitrary termination or nonrenewal of their franchises with

22 large oil corporations and gasoline distributors . . . ."

23 DuFresne's Auto Serv., Inc. v. Shell Oil Co., 992 F.2d 920, 925

24 (9th Cir. 1993).  The PMPA states that if "a franchisor fails to

25 comply with the requirements of section 2802 or 2803 of this

26 title, the franchisor may maintain a civil action against such

27 franchisor."  15 U.S.C. § 2805.  The PMPA also provides for

28

                                    6

preliminary injunctions, stating:

> [T]he court shall grant a preliminary injunction if (A) the franchisee shows: (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

Id. "The franchisee bears 'the burden of proving the termination of the franchise . . . .' The franchisor then bears 'the burden of going forward with evidence to establish as an affirmative defense that such termination . . . was permitted under section 2802(b) or 2803.'" BP W. Coast Prods. LLC v. May, 447 F.3d 658, 663 n.1 (9th Cir. 2006) (citing 15 U.S.C. § 2805(c)).

B.   **Analysis**

1.   **Termination of Franchise Agreement**

Both parties concede that the Franchise Agreement was terminated on October 31.

2.   **Sufficiently Serious Questions Going to the Merits**

Houtan alleges that Conoco violated PMPA in three respects: (1) terminating the Franchise Agreement without good faith or in the normal course of business, as required by § 2802; (2) failing to give 90 days notice before terminating the franchise, as required by § 2804(a)(2); and (3) failing to make a bona fide offer to sell the equipment and improvements of the Station to

7

1    Houtan, as required by § 2802(c)(4)(C)(i).  The Court addresses

2    the merits of each claim in turn.

### a.    Termination of Agreement

4         Houtan alleges that Conoco has "wrongfully terminated the

5    Plaintiff's Franchise Agreement and that said termination was not

6    made in good faith and/or in the normal course of business."

7    Compl. ¶ 27.  "Section 2802(b)(2) of the PMPA provides several

8    permissible grounds for termination or nonrenewal of a franchise."

9    Hifai v. Shell Oil Co., 704 F.2d 1425, 1428 (9th Cir. 1983).

10   Specifically, § 2802 states that "the following are grounds for

11   termination of a franchise or nonrenewal of a franchise: . . .(C)

12   [t]he occurrence of an event which is relevant to the franchise

13   relationship and as a result of which termination of the franchise

14   or nonrenewal of the franchise relationship is reasonable . . . ."

15   15 U.S.C. § 2802(b)(2)(C).  "Section 2802(c)(4) provides that the

16   term 'event' as used in section 2802(b)(2)(C) includes 'loss of

17   the franchisor's right to grant possession of the leased marketing

18   premises through expiration of an underlying lease.'"  Hifai, 704

19   F.2d at 1428 (citing 15 U.S.C. § 2802(c)(4)).

20        Under the evidence submitted by the parties, the Court cannot

21   conclude that Conoco's termination of the Franchise Agreement was

22   not in good faith.  To the contrary, Conoco terminated the

23   Franchise Agreement based on the fact that Conoco was unable to

24   renew the Master Lease with V.O. Limited for the Station property.

25   As § 2802 states, "loss of the franchisor's right to grant

26   possession of the leased marketing premises through expiration of

27   an underlying lease," is grounds for termination of a franchise.

28                                    8

**United States District Court**
For the Northern District of California

1    15 U.S.C. § 2802.

2        Nonetheless, a franchisor must adhere to certain statutory

3    requirements in terminating a franchise agreement based on the

4    loss of the underlying lease for the land.  "A franchisor can rely

5    on section 2802(c)(4) to justify nonrenewal only if:

> [T]he franchisee was notified in writing,
> prior to the commencement of the term of
> the then existing franchise-
>    (A)   of   the   duration   of   the
>    underlying lease, and
>    (B) of the fact that such underlying
>    lease   might   expire   and   not   be
>    renewed during the term of such
>    franchise   (in   the   case   of
>    termination) or at the end of the
>    term (in case of nonrenewal)."

12   Hutchens v. Eli Roberts Oil Co., 838 F.2d 1138, 1142-43 (11th Cir.

13   1988) (citing 15 U.S.C. § 2802(c)(4)).

14       In the present case, Conoco has satisfied both of these

15   requirements.  As noted above, the Franchise Agreement signed by

16   both parties on July 6 contains the following language:

> There is a possibility that the term of
> the underlying lease [the Master Lease]
> to the Station might expire and not be
> renewed upon the underlying lease's
> expiration date. DEALER [Houtan] hereby
> acknowledges CONOCOPHILLIPS' disclosure
> to DEALER that this Agreement and the
> Station herein are subject to all terms
> and conditions of an underlying lease
> held by CONOCOPHILLIPS in the property
> and premises, which underlying lease
> expires on **October 31, 2007** and that such
> underlying lease may expire and may not
> be renewed during the Term of this
> Agreement. Thereby, the DEALER [Houtan]
> is hereby on notice that this Agreement
> is hereby terminated on the date the
> underlying lease expires  . . . .

27   Haddad Decl., Ex. A at 63 (emphasis in original).

9

**United States District Court**
For the Northern District of California

In addition, Conoco has submitted evidence indicating that it repeatedly attempted to renew the Master Lease with V.O. Limited. See Mathews Decl. ¶ 5. Furthermore, as Conoco was attempting to renew the Master Lease, Houtan was in contact with V.O. Limited and eventually negotiated a direct lease for the Station property. The Franchise Agreement provided a single monthly rent for Houtan's use of the Station property, the Union 76 trademarks and the equipment and improvements. Haddad Decl. Ex. A. Considering that the Franchise Agreement between Houtan and Conoco was premised on Conoco's Master Lease with V.O. Limited, Houtan could reasonably have expected that by negotiating directly with V.O. Limited to take over the Master Lease, the Franchise Agreement with Conoco would be terminated. For the foregoing reasons, the Court finds that there are not sufficiently serious questions going to the merits of Houtan's claim that termination of the Agreement was not made in good faith such that a preliminary injunction is warranted.

> **b.    90-Day Notice of Termination Under § 2804(a)**

Houtan asserts that the notice provided by Conoco was defective under § 2804(a). Section 2804(a) states, in part:

> Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or nonrenewal to the franchisee . . . not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

15 U.S.C. § 2804(a).

Houtan argues that because Conoco informed Houtan in writing on September 18 that it would be terminating the franchise

10

United States District Court
For the Northern District of California

1   Agreement on October 31, Conoco failed to provide the requisite

2   90-day notice of termination.  This argument ignores the fact that

3   Houtan was on notice as early as July 6 that the Franchise

4   Agreement would be terminated in the event that Conoco was unable

5   to secure a renewal of the Master Lease.  Houtan executed the

6   renewed Franchise Agreement on July 6, and, as detailed above, the

7   Agreement contained express language indicating that Conoco's

8   inability to renew the Master Lease would necessarily require

9   termination of the Franchise Agreement.  The Court therefore finds

10  that there are not sufficiently serious questions going to the

11  merits of Houtan's claim that Conoco failed to give 90 days notice

12  of termination such that a preliminary injunction would be

13  warranted.

14      In the alternative, Conoco also argues that even if the

15  notice did not comply with the 90 day notice requirement of §

16  2804(a), the notice was in compliance with § 2804(b) and was

17  therefore permissible.  Section 2804(b) provides:

18          In circumstances in which it would not be
            reasonable for the franchisor to furnish
19          notification, not less than 90 days prior
            to the date on which termination . . .
20          takes effect, as required by subsection
            (a)(2) of this section, such franchisor
21          shall   furnish   notification   to   the
            franchisee . . . on the earliest date . .
22          .  such  notification  is  reasonably
            practicable.
23  15 U.S.C. § 2804(b)(1).

24      In the present case, Conoco was unable to renew the Master

25  Lease.  On September 18 Conoco sent notice to Houtan indicating

26  that the Franchise Agreement would not be renewed.  This qualifies

27  as "the earliest date on which furnishing of such notification is

28                                11

United States District Court
For the Northern District of California

reasonably practicable." Id. Thus, even if Conoco's notice was not within the 90 day statutory period, it very likely was within the alternative statutory period of § 2804(b)(1).

Finally, the Court's finding that there is not a sufficiently serious question going to the merits of Houtan's notice claim is supported by the decisions of other courts. See, e.g., Harara v. ConocoPhillips Co., 377 F. Supp. 2d 779, 792 (N.D. Cal. April 29, 2005) (finding that "defendant was justified in terminating the franchise with ten days notice"); Murphy Oil USA, Inc. v. Brooks Hauser, 820 F. Supp. 447, 443 (D. Minn. 1993) (stating "14 days notice of termination is not an unreasonable amount of time" given that plaintiff had failed to pay for gasoline and rent); Smoot v. Mobil Oil Corp., 722 F. Supp. 849, 855 (D. Mass. 1989) (holding that four weeks was reasonable notice for termination).

For these reasons, the Court finds that there are not sufficiently serious questions going to the merits of Houtan's claim that Conoco failed to give the requisite notice of termination.

### c.   Bona Fide Offer Under § 2802(c)(4)(C)(i)

The heart of Houtan's Complaint is that Conoco did not make a bona fide offer to sell Conoco's equipment and improvements on the Station property to Houtan. "When a franchisor decides for legitimate business reasons not to renew a franchise relationship, the franchisor must give the franchisee a bona fide offer to purchase the station." Ellis v. Mobil Oil, 969 F.2d 784, 788 (9th Cir. 1992). This is premised on § 2802, which states:

> In a situation in which the franchisee

12

United States District Court
For the Northern District of California

> acquires possession of the leased
> marketing premises, . . . the franchisor
> (if so requested) . . . [shall make] a
> bona fide offer to sell, transfer, or
> assign to the franchisee the interest of
> the franchisor in any improvements or
> equipment located on the premises . . . .

15 U.S.C. § 2802(c)(4)(C)(i).

In the present case, it is undisputed that Conoco made an offer to sell the equipment and improvements of the Station to Houtan. Houtan instead argues that the offer was not bona fide because the price that Conoco asked was too high and because Houtan was given only 7 days to accept the offer and only 9 days to make full payment.

### i.    Price

"It is settled law that a bona fide offer under PMPA is measured by an objective market standard." Ellis, 969 F.2d at 787. "To be objectively reasonable, an offer must approach fair market value." Id. (internal quotation marks and alterations omitted). Nonetheless, "Congress' decision not actually to use the term 'fair market value' but instead the term bona fide . . . suggests some degree of deference." Slatky v. Amoco Oil Co., 830 F.2d 476, 485 (9th Cir. 1987). Thus, in deciding "what manner courts should scrutinize the distributor's offer to determine whether it complies with the requirement . . . [Congress's] choice indicates . . . a recognition that the word 'value' almost always involves a conjecture, a guess, a prediction, a prophesy." Id. (internal quotation marks and citations omitted). Accordingly, "[t]he facts of each case will set the terms of what constitutes a bona fide offer." Ellis, 969 F.2d at 788.

13

United States District Court

For the Northern District of California

1    In the present case, Conoco has offered to sell its equipment

2    and improvements to Houtan for $340,000.  Haddad Decl., Ex. E.

3    This price was based on an independent, third-party appraisal

4    prepared by a licensed appraiser.  Mathews Decl. ¶ 7; Ex. E.

5    Houtan claims that this amount vastly exceeds fair market value

6    and argues instead that the equipment and improvements are worth

7    no more than $120,000.  Haddad Decl. ¶ 22.  In support of this

8    Houtan submitted the declaration of its president, Ed Haddad.

9    The Court cannot conclude from the evidence before it whether

10   the price contained in the offer by Conoco was bona fide.  That

11   said, the parties' disagreement as to the value of the equipment

12   and improvements is not grounds for a preliminary injunction.

13   Thus, the issue that remains in this action is whether the price

14   contained in the offer was reasonable, and, therefore, whether the

15   offer was bona fide.  This is a factual dispute and, as such, is a

16   question for the jury.

17                       **ii.  Time of Offer**

18   Houtan also argues that the offer was not bona fide because

19   the time period given by Conoco to accept the offer was

20   unreasonably short.  Conoco sent a letter on September 18 to

21   Houtan stating that the Franchise Agreement would terminate on

22   October 31 because of Conoco's inability to renew the Master

23   Lease.  Haddad Decl. ¶ 6; Ex. B.  On October 16, Houtan entered

24   into an agreement with V.O. Limited to lease the Station property

25   beginning November 1.  Id. ¶ 8; Ex. C.  On October 18, Houtan sent

26   Conoco a letter indicating that Houtan had entered into this lease

27   agreement and demanding that Conoco sell its improvements and

28                                  14

1 equipment on the Station property to Houtan.  <u>Id.</u> ¶ 9; Ex. C, Ex.

2 D.

3     According to these facts, Houtan had notice on September 18

4 that the Franchise Agreement would not be renewed but waited until

5 October 18 to demand an offer for the equipment and improvements.[7]

6 Although unclear, it appears that Houtan waited these 30 days

7 because Houtan was negotiating with V.O. Limited to assume the

8 Master Lease of the Station property.  Thus, the fact that Houtan

9 had only 7 days to accept Conoco's offer is, in part, Houtan's

10 doing.[8]

11     In addition, Conoco had compelling reasons why it needed to

12 complete the sale of the equipment and improvements before

13 November 1.  The Master Lease Conoco has with V.O. Limited was set

14 to expire October 31.  In the event that Houtan did not buy the

15 equipment and improvements, Conoco wanted the opportunity to

16 remove its improvements and equipment from the Station before the

17 Master Lease expired.

18     For these reasons the Court finds that, under the

19 circumstances of the case, the time of the offer does not give

20 rise to sufficiently serious questions going to the merits of

21

22     [7]  Section 2802 states that the franchisor must make a bona
fide offer only "if requested in writing by the franchisee . . . ."
23 15 U.S.C. § 2804(c)(4)(C).  Section 2802 also states that this
request by franchisee must be made "not later than 30 days after
24 notification was given . . . ."  <u>Id.</u>  In the present case, the
request was made exactly 30 days after the September 18 letter.
25

26     [8]  On October 22, Conoco sent a letter to Houtan stating that
Conoco would sell the improvements and equipment if the offer was
27 accepted by October 29, and paid in full by October 31.  Haddad
Decl. Ex. E.

28

1    Houtan's claim that Conoco failed to make a bona fide offer such

2    that a preliminary injunction would be warranted.

3         The Court emphasizes that in reaching these conclusions

4    regarding the offer, the Court does not hold that the offer was

5    necessarily reasonable.  Instead, the Court finds that the issue

6    of the offer is not, by itself, sufficient justification for a

7    preliminary injunction.  This is especially true given that Conoco

8    has stipulated to leaving in place its equipment and improvements

9    pending the outcome of this action and pending Houtan's and V.O.

10   Limited's agreement to several issues, including an appropriate

11   interim rental payment, allocation of responsibility for

12   environmental compliance and an appropriate manner and time for

13   removal in the event Houtan ultimately decides not to purchase the

14   equipment and improvements.[9]

15         **3.**    **Balance of Hardships**

16         The final factor in the determination of whether a

17   preliminary injunction should issue requires the Court to balance

18   the hardships to each party.  Section 2805 states:

19            [T]he court shall grant a preliminary
20            injunction if  . . .  the court determines
            that, on balance, the hardships imposed
21            upon the franchisor by the issuance of
            such preliminary injunctive relief will
22            be less than the hardship which would be
            imposed upon such franchisee if such
23            preliminary injunctive relief were not
            granted.

24   15 U.S.C.  § 2805(b)(2).

25

26       [9]  Under the Master Lease Conoco had 10 days after termination
    of the lease to remove its equipment and improvements.  Mathews
27   Decl. ¶ 8.

28                      16

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    In the present case Houtan knew as early as July 6 that the

2    Franchise Agreement would end on October 31 if Conoco were unable

3    to renew the Master Lease.  On September 18 Houtan received

4    confirmation that Conoco was unable to renew the Master Lease.  On

5    October 16 Houtan entered into a lease agreement for the Station

6    property with V.O. Limited.

7        The Franchise Agreement, while providing Houtan with a

8    limited license to use Union 76 trademarks, was primarily a

9    sublease of the Station property by Conoco to Houtan.  Because the

10   Master Lease expired, Conoco has no ability to continue to

11   sublease the property to Houtan.  To the contrary, Houtan has

12   negotiated with V.O. Limited to take over this lease.  Therefore,

13   there is no dispute that the Franchise Agreement between Houtan

14   and Conoco had terminated, for there was no way that Conoco could

15   still perform under the Franchise Agreement in the absence of the

16   Master Lease.

17       Given these facts, it is difficult to see how the hardships

18   imposed upon Conoco by the issuance of the preliminary injunction

19   will be less than the hardship imposed upon Houtan if the

20   preliminary injunction were not granted.  The Franchise Agreement

21   provided a single monthly payment for Houtan's use of the Station

22   property, the Union 76 trademarks and the equipment and

23   improvements.  Haddad Decl., Ex. A.  Houtan is now essentially

24   asking the Court to create a new franchise agreement that is

25   identical to the Franchise Agreement at issue save for the fact

26   that Houtan, rather than Conoco, controls the lease to the Station

27   property.  The Court is unwilling to do this.  The termination of

28

17

United States District Court
For the Northern District of California

the Master Lease was a valid reason for the termination of the

Franchise Agreement.   See 15 U.S.C. § 2802(c)(4) (stating

"termination of the franchise . . . is reasonable . . . [due to]

loss of the franchisor's right to grant possession of the leased

marketing premises through expiration of an underlying lease . .

.").

Houtan has not presented compelling evidence that it will

face substantial hardships without the preliminary injunction.

After the Franchise Agreement terminated but before the Court

issued the temporary restraining order, Houtan was able to

purchase fuel from another supplier and was able to continue

operating the Station.   Furthermore, because Conoco has agreed to

leave its equipment and improvements in place pending party

negotiation or judicial determination of an appropriate purchase

price, Houtan will be able to continue operating the Station.   The

primary hardship to Houtan will be the requirement that it stop

operating the station as a Union 76 station, as the Union 76

trademarks were licensed to Houtan by Conoco pursuant to the

Franchise Agreement and, as noted above, both parties agree that

this agreement terminated on October 31.

Conoco, on the other hand, would suffer some hardship.

Conoco would be forced to leave its fuel storage and dispensation

system at a station site over which it has no control and no right

of entry.   In light of the environmental issues associated with a

gas station, Conoco would be exposed to risks if it were unable to

supervise or ensure prudent station practices and compliance with

applicable regulations.   Accordingly, the Court cannot conclude

18

United States District Court
For the Northern District of California

that, on balance, the hardships imposed upon Conoco by the
issuance of a preliminary injunction will be less than the
hardship which would be imposed upon Houtan if the preliminary
injunction were not granted.

Because the Court finds that a preliminary injunction is not
necessary under the more permissive standard of the PMPA, it need
not reach the issue of whether a preliminary injunction would be
appropriate under Federal Rule of Civil Procedure 65, which
requires a more substantial showing. See Dollar Rent A Car of
Wash., Inc. v. Travelers Indem., 774 F.2d 1371, 1374 (9th Cir.
1985) (stating that the granting of a preliminary injunction is
discretionary, compared with the mandatory language of § 2805, and
that a showing of irreparable injury is an essential
prerequisite); see also Khorenian v. Union Oil Co. of Cal., 761
F.2d 533, 535 (9th Cir. 1985) (stating that the "test for the
issuance of a preliminary injunction under the PMPA is more
liberal than that in the general run of cases").

### 4.    Houtan's Use of Union 76 Trademarks

The Franchise Agreement states, in part:

> Upon expiration, termination, nonrenewal
> or cancellation of this Agreement, for
> any reason, DEALER shall immediately
> cease and discontinue the use of said
> Union 76 Marks . . . .

Haddad Decl., Ex. A at 20.  By these terms, Houtan is no longer
entitled to use the Union 76 trademarks.[10]

---

[10]    The Court notes that Conoco has not filed a motion for an
injunction prohibiting Houtan from using the Union 76 trademarks.
The Court, therefore, is not presented with an opportunity to rule
on this issue.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Application for a Preliminary Injunction is DENIED and the Temporary Restraining Order issued by the Court on November 6, 2007, is TERMINATED.


IT IS SO ORDERED.


Dated: November 16, 2007

_____
UNITED STATES DISTRICT JUDGE