1  Thomas P. Bleau, Esq., SBN 152945
   Gennady L. Lebedev, Esq., SBN 179945
2  BLEAU / FOX, A P.L.C.
   3575 Cahuenga Boulevard West, Suite 580
3  Los Angeles, California 90068
   Telephone    :  (323) 874-8613
4  Facsimile    :  (323) 874-1234
   e-mail:       bleaushark@aol.com
5  e-mail:       glebedev@bleaufox.com

6  Attorneys for Plaintiff,
   HOUTAN PETROLEUM, INC.
7

8              UNITED STATES DISTRICT COURT IN AND FOR

9              THE NORTHERN DISTRICT OF CALIFORNIA

10  HOUTAN PETROLEUM, INC.            )   CASE NO.  3:07-CV-05627-SC
                                      )
11            Plaintiff,              )
    vs.                               )   PLAINTIFF, HOUTAN PETROLEUM,
12                                    )   INC.'S OPPOSITION TO
    CONOCOPHILLIPS COMPANY, a Texas   )   CONOCOPHILLIPS COMPANY'S
13  Corporation  and DOES 1 through 10, )  APPLICATION FOR WRIT OF
    Inclusive                         )   POSSESSION AND PRELIMINARY
14                                    )   INJUNCTION
              Defendants.             )
15                                    )   Date:       January 11, 2008
                                      )   Time:       10:00 a.m.
16                                    )   Courtroom:  1
                                      )   Before:     Hon. Samuel Conti
17  _____  )

18

19

20

21

22

23

24

25

26

27

28

-1-

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

I.    INTRODUCTION...................................................................................................1

II    ARGUMENT............................................................................................................3

    A.    INJUNCTIVE RELIEF RESULTING IN A COMPLETE
        DEMOLITION OF PLAINTIFF'S STATION SHOULD BE
        DENIED AS IT WILL SERVE TO IMPROPERLY GRANT
        AN ULTIMATE REMEDY THAT SHOULD BE RESOLVED
        BY WAY OF TRIAL...............................................................................................3

    B.    CONOCOPHILLIPS HAS NOT, BECAUSE IT CANNOT,
        DEMONSTRATE A PROPER SHOWING FOR INJUNCTIVE
        RELIEF UNDER THE TRADITIONAL TEST FOR GRANTING
        INJUNCTIVE RELIEF..........................................................................................5

        1.    ConocoPhillips Has Not Demonstrated That It Has A Likelihood
            Of Success On The Merits......................................................................7

            a.    Plaintiff Did Request In Writing That ConocoPhillips Sell
                Its Property At The Station To Plaintiff Within 30 Days
                After The Loss Of The Right Of The Franchisor To Grant
                Possession.......................................................................................9

            b.    ConocoPhillips Waived The Right To Contend and/or
                Should Be Estopped From Contending That It Is Not
                Required To Make A Bona Fide Offer Under The PMPA............12

        2.    ConocoPhillips Has Not Established Any Significant Threat
            Of Irreparable Injury..........................................................................14

        3.    ConocoPhillips Has Failed To Demonstrate That The Balance Of
            Hardships Weigh In Its Favor.............................................................15

        4.    ConocoPhillips Has Failed To Demonstrate How The Public Interest
            Would Be Served By Completely Demolishing Plaintiff' Station
            Before A Trial On The Merits Of Plaintiff's Complaint............................16

    C.    CONOCOPHILLIPS HAS FAILED TO DEMONSTRATE THAT
        IT IS ENTITLED TO IMMEDIATE POSSESSION
        OF THE PROPERTY.............................................................................................16

III.    CONCLUSION.........................................................................................................17

PLAINTIFF'S OPPOSITION TO CONOCOPHILLIPS' APPLICATION FOR PRELIMINARY INJUNCTION

1                            **TABLE OF AUTHORITIES**

2

3    ***Federal Cases***

4    *Ajir v. Exxon Corp.* 855 F.Supp.294, 297 (N.D.Cal. 1994)....................................................9

5    *Doebereiner v. Sohio Oil Company*

6            880 F.2d 329 (11 Cir. 1989)........................................................................................7

7    *Dollar Rent A Car v. Travelers Indem. Co.*

8            774 F.2d 1371 (9th Cir. 1985)....................................................................................5

9    *DuFresne's Auto Service, Inc. v. Shell Oil Company*

10           992 F.2d 920 (9th Cir. 1993)..............................................................................7, 17

11   *Ellis v. Mobil Oil* 969 F.2d 784, 788 (9th Cir. 1992).................................................7, 8, 9

12   *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir. 1987)..............................6

13   *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365 (2000)................9, 10, 11

14   *Khorenian v. Union Oil Company of California*

15           761 F.2d 533, 535 (9th Cir. 1985)............................................................................15

16   *Lea v. Vasco Products, Inc.* 81 F.2d 1011 (5th Cir. 1936)................................................5

17   *Maison Dorin Societe Anonyme v. Arnold* 296 F.387 (2nd Cir. 1924)...............................5

18   *May-Som Golf Inc. v. Chevron USA* 869 F.2d 917 (6th Cir. 1989).....................................9

19   *Mobil Oil Corporation v. Virginia Gasoline Marketers and Automotive*

20       *Repair Association*, 34 F.3d 220 (4th Cir. 1994).......................................................7

21   *National Center for Immigrant Rights, Inc. v. I.N.S.*

22           743 F.2d 1365 (9th Cir. 1984). .................................................................................6

23   *Persaud v. Exxon Corporation,*

24           867 F.Supp. 128 (E.D.N.Y. 1994)...........................................................................16

25   *Secker v. Star Enterprise* 124 F.3d 1399 (11th Cir. 1997)...............................................9

26   *Sierra On-Line, Inc. v. Phoenix Software, Inc.* 739 F.2d 1415 (9th Cir. 1984)...............4, 5

27   *Slatky v. Amoco Oil Co.* 830 F.2d 476 (3rd Cir. 1987).....................................................8

28   *State of Alaska v. Native Village of Venetie*, 856 F.2d 1384 (9th Cir. 1988)......................6

1    *Tanner Motor Livery, Ltd v. Avis, Inc.* 316 F.2d 804 (9th Cir. 1963)................................4, 5

2    *Unocal Corp. V. Kaabipour*, 177 F.3d 755 (9th Cir. 1999)......................................17

3    *Westinghouse Elec. Corp. V. Free Sewing Mach. Co.* 256 F.2d 806 (7th Cir. 1958)..........................5

4    **Federal Statutes**

5    Fed. Rule Civ. Proc. 65......................................................................................5, 6

6    15 U.S.C. §2801.............................................................................................13

7    15 U.S.C. §2802(c).......................................................................7, 8, 9, 10, 11, 13

8    15 U.S.C. §2804(a).......................................................................................10

9    15 U.S.C. §2806(a)....................................................17

10   **Other Authority**

11   Schwarzer, et al., *Federal Civil Procedure Before*

12       *Trial* ¶ 13:44 at 13-14 (1999)..........................................................................5, 6

13   Shwarzer, et al., *Federal Civil Procedure Before*

14       *Trial* ¶ 13:46 at 13-15 (1999)...........................................................................6

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO CONOCOPHILLIPS' APPLICATION FOR PRELIMINARY INJUNCTION

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that Plaintiff, Houtan Petroleum, Inc., hereby opposes

3    ConocoPhillips Company's Application for Writ of Possession and Preliminary Injunction as follows.

4                    **MEMORANDUM OF POINTS AND AUTHORITIES**

5                                        **I**

6                                 **INTRODUCTION**

7         On September 18, 2007, ConocoPhillips sent Plaintiff a "NOTICE OF TERMINATION"

8    allegedly "pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA")"

9    (Haddad Decl. in support of Houtan Petroleum's Application for Temporary Restraining Order and

10   Preliminary Injunction[1], Exh. "B," p. 000082-83, emphasis added).

11        On October 18, 2007, Plaintiff notified ConocoPhillips in writing that it will be acquiring

12   possession of the premises from the landlord and demanded that ConocoPhillips forward a bona fide

13   offer to sell its equipment and improvements.  (Haddad Decl. #1, Exh. "D," p. 000155).

14        On October 22, 2007, ConocoPhillips sent Plaintiff an "OFFER TO SELL

15   IMPROVEMENTS" along with a Bill of Sale for $340,000.00, also allegedly "[i]n accordance with

16   the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq." (See,

17   Haddad Decl. #1, Exh. "E," p. 000157, emphasis added).

18        The same equipment and improvements that ConocoPhillips offered to sell for $340,000.00

19   was appraised by an MAI appraiser retained on Plaintiff's behalf for a total amount of $145,000.00.

20   Consequently, ConocoPhillips' offered price exceeds the fair market value of the property by seventy-

21   four percent (74%).[2]  (Plaine Declaration, ¶5).

22        Effective November 1, 2007, Plaintiff began leasing the premises directly from the landlord.

23   (Haddad Decl. #1, Exh. "C").

24   _____

25   [1]    Hereinafter, the declaration of Ed Haddad originally filed in support of Houtan
            Petroleum's Application for Temporary Restraining Order and Preliminary Injunction
26          and presently filed in support of ConocoPhillips' instant Application for Injunctive
            Relief, shall be referred to at the "Haddad Decl. #1".
27

28   [2]    Calculated by subtracting appraised value of $145,000.00 from ConocoPhillips' offer
            of $340,000.00 and dividing $145,000.00 by the difference of $195,000.

On November 5, 2007, Plaintiff filed the instant action along with an application for a Temporary Restraining Order and Preliminary Injunction. Although the Temporary Restraining Order was initially granted, Plaintiff's application for a Preliminary Injunction was denied pursuant to the Court's Order dated November 16, 2007[3].

Between the time of the Court's November 5, 2007 Order and the filing of the instant application, ConocoPhillips has demanded that Plaintiff pay monthly rent of $4,000 "based on a 14% capitalization rate" using ConocoPhillips' offer of "$340,000.00" as the base, with rent for first and last months to be paid in advance and with the rent assessed retroactive to November 1, 2007[4]. (Friedenberg Decl., Exh. "D," p. 12-13). ConocoPhillips also demanded payment of a security deposit of $8,000.00. (Id.). It should be noted that the franchise agreement provided for a single monthly rent for Plaintiff's use of the station property, the Union 76 trademarks and the equipment and improvements and the value on which the rent sought by ConocoPhillips' is sought is substantially higher than the appraised value of the items. (Plaine Decl., ¶5).

Plaintiff responded with an offer to be responsible for all environmental obligations regarding the equipment and improvements at the property during the pendency of the action, but rejected ConocoPhillips demand for payment of rent. (Friedenberg Decl., Exh. "E," p. 16-18; Haddad declaration filed in support of the instant Opposition to ConocoPhillips' application for writ of possession and preliminary injunction[5], ¶4).

Thereafter, ConocoPhillips filed the instant application claiming that it will suffer irreparable harm if it is not allowed to remove its equipment and improvements from the property. As of this time, ConocoPhillips has not filed any action against Houtan Petroleum for affirmative relief. Rather,

---

[3]    Hereinafter, the Court Order Denying Plaintiff's Application for Preliminary Injunction shall be referred to as the "November 17, 2007 Order."

[4]    Although settlement discussions between ConocoPhillips and Plaintiff are objectionable and inadmissible under Federal Rule of Evidence 408, given the discussion of such communications in the moving papers, they are referenced by Plaintiff.

[5]    Hereinafter, the Haddad declaration filed in support of the instant application for writ of possession and preliminary injunction shall be referred to as the "Haddad Decl. #2.

PLAINTIFF'S OPPOSITION TO CONOCOPHILLIPS' APPLICATION FOR PRELIMINARY INJUNCTION

1   ConocoPhillips filed a motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure

2   12(b)(6), which is set for hearing on January 25, 2008.

3        Plaintiff opposes ConocoPhillips' instant application on a variety of grounds, including but

4   not limited to the fact that, by its own actions and admissions during the course of this case,

5   ConocoPhillips admittedly would not suffer any irreparable harm if injunctive relief is denied and that

6   any possibility of harm would be solely monetary in nature.

7        Nothing in the PMPA entitles ConocoPhillips to collect any rental value for its property after

8   termination of the franchise relationship and ConocoPhillips has not cited any law to the contrary.

9   Under the PMPA, ConocoPhillips is required to make a bona fide offer as a condition precedent to

10  its rights vis a vis the property.  If ConocoPhillips is found to have satisfied such requirement,

11  Plaintiff will have the opportunity to purchase the equipment and improvements at the offered price

12  of $340,000.  If, however, Plaintiff prevails on the merits, ConocoPhillips will be found to have failed

13  to comply with the PMPA and would therefore not be entitled to collect any rental value for its

14  equipment and improvements, which it was required to offer for a price that approaches fair market

15  value.  Instead, ConocoPhillips will be required to make another offer to Plaintiff for a price that does

16  approach fair market value.  Only if Plaintiff eventually rejects a bona fide offer from ConocoPhillips

17  to sell the items for a price that approaches fair market value will ConocoPhillips have the right to

18  remove its items.

19       In any event, there is no basis for ConocoPhillips to remove the property prematurely before

20  the merits of the underlying action can be decided at trial.

21  **II.**

22  **ARGUMENT**

23  **A.     INJUNCTIVE RELIEF RESULTING IN A COMPLETE DEMOLITION OF
    PLAINTIFF'S STATION SHOULD BE DENIED AS IT WILL SERVE TO
24  IMPROPERLY GRANT AN ULTIMATE REMEDY THAT SHOULD BE RESOLVED
    BY WAY OF TRIAL**

25       ConocoPhillips seeks to deprive Plaintiff's due process right to challenge the merits of its

26  allegations regarding the propriety of its termination and the market value of its equipment and

27  improvements.  At this point, ConocoPhillips has not even initiated an action against Houtan

28

-3-

1  Petroleum for any affirmative relief.  Yet it is already seeking an Order from this Court that would

2  effectively result in ultimate relief.  A preliminary injunction, however, cannot be granted in this case

3  because preliminary injunctions cannot be used to give final relief.  Instead they are used to hold the

4  status quo pending final judgment.

5      A Preliminary Injunction is a provisional remedy issued prior to final disposition of the

6  litigation.  Its function is to preserve the status quo and to prevent irreparable loss of rights prior to

7  judgment.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.* 739 F.2d 1415, 1422 (9th Cir. 1984) ("A

8  preliminary injunction, of course, is not a preliminary adjudication on the merits but rather a device

9  for preserving the status quo and preventing the irreparable loss of rights before judgment ... as in this

10  case, ordinarily our review comes in the early stages of litigation, when the record is insufficiently

11  complete to allow a reliable resolution of the merits. Accordingly, generally we review the propriety

12  of the *injunction*, not the ultimate merits of the case, unless it is clear that the litigation should be

13  terminated.").

14      Thus, possession of the equipment and improvements cannot be given to ConocoPhillips with

15  a preliminary injunction order, which could only issue as part of a final judgment in this action.

16      In *Tanner Motor Livery, Ltd. v. Avis, Inc.* 316 F.2d 804, 808 (9th Cir. 1963), the Ninth Circuit

17  Court of Appeal held that,

18  > It is so well settled as not to require citation of authority that the usual function of a
    > preliminary injunction is to **preserve the status quo ante litem pending a determination**
19  > **of the action on the merits**. The hearing is not to be transformed into a trial of the merits of
    > the action upon affidavits, and **it is not usually proper to grant the moving party the full**
20  > **relief to which he might be entitled if successful at the conclusion of a trial**. This is
    > particularly true where the relief afforded, rather than preserving the status quo, completely
21  > changes it.  Yet this is what Judge Clarke's order does, and it is based upon findings that
    > purport to determine that Tanner breached the contracts, that its breaches could not be cured,
22  > an that Tanner has no substantial defense to the action.

23  > These are matters to be determined at trial, not upon the motion for preliminary injunction.
    > *Id.* (emphasis added).

24

25      This type of ultimate relief is exactly what ConocoPhillips is seeking with its Application.

  Such relief is clearly improper at this early stage of the case.  See, *Sierra On-Line, Inc. v. Phoenix*

26  *Software, Inc.*, *supra* at 1422; *Tanner Motor Livery, Ltd. v. Avis, Inc.*, *supra* at 808.

27

      To grant the injunctive relief requested by ConocoPhillips would clearly be improper because

28

---

-4-

to do so would effectively grant it the full declaratory and injunctive relief to which it could only be entitled if successful on a claim against Houtan Petroleum at the conclusion of a trial.  See, *Tanner Motor Livery, Ltd. v. Avis, Inc.* 316 F.2d 804, 808 (9th Cir. 1963); *Sierra On-Line, Inc. v. Phoenix Software, Inc.* 739 F.2d 1415, 1422 (9th Cir. 1984).

In *Tanner Motor Livery, Ltd. v. Avis, Inc.* the Ninth Circuit overturned an order granting moving party Avis, Inc.'s preliminary injunction, enjoining Tanner Motor Livery, Ltd's, Avis, Inc.'s name or marks, finding it an abuse of discretion.  In overturning the injunction order, the Court explained its reasoning as follows:

> It has been said, and we agree, that: 'The status quo is the last uncontested status which preceded the pending controversy.' Here that status quo is that Tanner was, and had been for many years, an Avis licensee, operating an extensive business from which both Tanner and Avis were realizing profits.  Tanner was endeavoring to continue to so operate. Avis sought to change that status; Judge Clarke's order grants it what it seeks. *Tanner Motor Livery, Ltd. v. Avis, Inc.* 316 F.2d 804, 808 (9th Cir. 1963) (citing, *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.* 256 F.2d 806, 808 (7 Cir., 1958); *Lea v. Vasco Products, Inc.* 81 F.2d 1011 (5th Cir. 1936); *Maison Dorin Societe Anonyme v. Arnold* 296 F. 387 (2nd Cir. 1924)).

As in the *Tanner* case, ConocoPhillips seeks to change the last uncontested status which preceded the pending controversy (i.e. Plaintiff's ongoing use of the subject equipment and improvements in its continued operation of the gasoline station).  Thus, injunctive relief in the instant case would also be improper in light of the fact that such relief would effectively give ConocoPhillips what it ultimately seeks, without a trial.  By the same token, such an injunctive order would deprive Plaintiff of its right to obtain the injunctive and declaratory relief sought by its own Complaint (i.e. the right to purchase the subject equipment and improvements from ConocoPhillips for a price that approaches fair market value) and would necessarily multiply Plaintiff's monetary damages, as well as result in further irreparable harm through the complete destruction of its station.

**B.    CONOCOPHILLIPS HAS NOT, BECAUSE IT CANNOT, DEMONSTRATE A PROPER SHOWING FOR INJUNCTIVE RELIEF UNDER THE TRADITIONAL TEST FOR GRANTING INJUNCTIVE RELIEF**

Under the Federal *Rule of Civil Procedure* 65, the traditional test for granting injunctive relief requires the moving party to demonstrate: (1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the moving party; and (4) whether any public interest favors granting an injunction.  *See Dollar Rent A Car v. Travelers Indem. Co,*, 774

1  F.2d 1371, 1374 (9th Cir. 1985); *see also* Schwarzer, et al., *Federal Civil Procedure Before Trial*

2  ¶13:44 at 13-14 (1999).

3       The Ninth Circuit also uses an alternative test which requires the moving party to demonstrate

4  either: a combination of probable success on the merits and the possibility of irreparable injury; or

5  serious questions going to the merits and that the balance of hardships tips sharply in the moving

6  party's favor. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987).

7  These two tests are not consistent. Rather they represent a continuum of equitable discretion,

8  whereby "the greater the relative hardship to the moving party, the less probability of success must

9  be shown." *National Center for Immigrant Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1369 (9th Cir. 1984).

10  Or as stated in another case: "The critical element in determining the test is to be applied is the

11  relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the

12  plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less

13  decidedly." *State of Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988); *see also*

14  Schwarzer, et al., *Federal Civil Procedure Before Trial*, ¶ 13:46 at 13-15 (1999).

15       ConocoPhillips has failed to present sufficient evidence to demonstrate any of the requisite

16  elements for the traditional test. Moreover, it has failed to demonstrate that its hardship outweighs

17  Plaintiff's hardship if injunctive relief is granted.

18       ConocoPhillips' reliance on the findings in the Court's Order denying Plaintiff's application

19  for a preliminary injunction to continue the franchise relationship to circumvent its burden under Rule

20  65 is unfounded. The Court specifically held:

21            For the following reasons, the Court finds that a preliminary injunction is not
              "necessary to remedy the effects of any failure to comply with the requirements of
22            section 2802 or 2803 . . . ." 15 U.S.C. § 2805(b). (Order Denying Plaintiff's Motion
              for Preliminary Injunction[6], 6:13-16).
23

24  As such, the Court's findings were limited to denial of injunctive relief to Plaintiff based on the issues

25  presented in Plaintiff's application under the PMPA. Nothing in that Order justifies the issuance of

26  injunctive relief to ConocoPhillips, which application must be analyzed under a completely different

27  ――――――――――――――――――

28  [6]    Hereinafter, the Court's Order Denying Plaintiff's Motion for Preliminary Injunction,
        dated November 16, 2007 shall be referred to as the "November 16, 2007 Order."

-6-

1  legal standard and from a different perspective.

2  Additionally, in deciding the issues in this case, the Court should do so in the context of the

3  overriding purpose of the PMPA. In *Doebereiner v. Sohio Oil Company*, 880 F.2d 329, 331-332 (11

4  Cir. 1989), the Court set forth the purpose behind the PMPA:

5  The legislative history of the PMPA reveals that the Act was
designed to protect franchisees from arbitrary or discriminatory

6  termination or non-renewal. (Citation omitted.) Congress sought to equalize
the obvious disparity in bargaining power between major oil companies and

7  service station operators. (Citations omitted.) ... To attain these ... goals,
Congress specifically set forth the permissible grounds for termination or non-

8  renewal of franchise relationships, and bestowed on federal courts jurisdiction
to remedy violations of the Act. *Id.*

9  
10  This case is precisely the type of case which Congress had in mind when it enacted the PMPA.

11  The PMPA is intended to protect gas station franchise owners from arbitrary and discriminatory

12  termination of their franchises with large oil corporations and gasoline distributors, and to remedy the

13  disparity in bargaining power between the parties to gasoline franchise contracts. *DuFresne's Auto*

14  *Service, Inc. v. Shell Oil Company*, 992 F.2d 920, 925 (9th Cir. 1993) and *Mobil Oil Corporation v.*

15  *Virginia Gasoline Marketers and Automotive Repair Association*, 34 F.3d 220, 223 (4th Cir. 1994).

16  **1.    ConocoPhillips Has Not Demonstrated That It Has A Likelihood Of Success On The Merits.**

17  ConocoPhillips, does not have a reasonable probability of success on the merits, or at least,

18  the Court has already recognized a genuine factual dispute over the value of the equipment and

19  improvements, which cannot be decided on the merits at this early stage of the case. (November 16,

20  2007 Order).

21  As the Court already found, "[t]he heart of Houtan's Complaint is that Conoco did not make

22  a bona fide offer to sell Conoco's equipment and improvements on the Station property to Houtan.

23  'When a franchisor decides for legitimate business reasons not to renew a franchise relationship, the

24  franchisor must give the franchisee a bona fide offer to purchase the station.'" (November 16, 2007

25  Order, 12:20-13:5 (citing *Ellis v. Mobil Oil*, 969 F.2d 784, 788 (9th Cir. 1992) and quoting, 15 U.S.C.

26  §2802(c)(4)(C)(i)).

27  The Court also recognized that "'[i]t is settled law that a bona fide offer under the PMPA is

28  measured by an objective market standard.'... 'To be objectively reasonable, an offer must approach

-7-

1  fair market value'... '[t]he facts of each case will set the terms of what constitutes a bon a fide offer.'"

2  (November 16, 2007 Order,  13:13-27 (quoting, *Ellis*, *supra* at 787 & 788 and *Slatky v. Amoco Oil*

3  *Co.*, 830 F.2d 476, 485 (9th Cir. 1987)).

4       The Court ultimately held:

5            The Court cannot conclude from the evidence before it whether the price contained
             in the offer by Conoco was bona fide.  That said, the parties' disagreement as to the
6            value of the equipment and improvements is not grounds for a preliminary injunction.
             Thus, the issue that remains in this action is whether the price contained in the offer
7            was reasonable, and, therefore, whether the offer was bona fide. **This is a factual
             dispute and, as such, is a question for the jury.**  (November 16, 2007 Order, 14:9-
8            16, emphasis added).

9       In denying Plaintiff's application for a preliminary injunction, the Court emphasized as

10  follows:

11           The Court emphasizes that in reaching these conclusions regarding the offer, the Court
             does not hold that the offer was necessarily reasonable.  Instead, the Court finds that
12           the issue of the offer is not, by itself, sufficient justification for a preliminary
             injunction. (November 16, 2007 Order, 16:3-7).
13

14       Furthermore, ConocoPhillips' argument that it stands to prevail because Plaintiff allegedly

15  failed to demand an offer for the equipment and improvements and equipment within 30 days is

16  unfounded.  ConocoPhillips relies upon the PMPA section 2802(c)(4)(C) which provides that

17  termination of the agreement is reasonable where "the franchisor (if requested in writing by the

18  franchisee not later than 30 days after notification was given pursuant to §2804...)... made a bona fide

19  offer to sell, transfer, or assign [its] interest in any improvements or equipment on the premises." 15

20  U.S.C. §2802(c)(4)(C).

21       Plaintiff's response to this contention is twofold. (1) Plaintiff **did** request that ConocoPhillips

22  sell its interest in the property to him within 30 days after ConocoPhillips' loss of right to grant

23  possession as required by the PMPA and (2) ConocoPhillips waived the right to contend and/or

24  should be estopped from contending that it is not required to make a bona fide offer under the PMPA.

25  January 4, 2008.

26       Thus, Plaintiff is entitled to a bona fide offer for the sale of improvements and equipment at

27  its station.

28  ///

---

**a.    Plaintiff Did Request In Writing That ConocoPhillips Sell Its Property At The Station To Plaintiff Within 30 Days After The Loss Of The Right Of The Franchisor To Grant Possession.**

ConocoPhillips contends that Plaintiff should have requested that the property be sold to it within 30 days after having signed the latest version of the franchise agreement, executed on July 6, 2007, which was seventy-four (74) days before the September 18, 2007 Notice of Termination and one hundred and eighteen (118) days before the October 31, 2007 termination date.  However, there is no support for this proposition within the PMPA.

The PMPA dictates that the time to request the sale of improvements and equipment on the property does not begin until after the franchisee acquires possession of the property, immediately *after* the franchisor's loss of the right to grant such possession.  15 U.S.C. §2802(c)(4)(C).  Plaintiff acquired possession on November 1, 2007 and its time to request such an offer therefore did not expire until December 1, 2007.

The overriding purpose of the PMPA "is to protect the franchisee's reasonable expectation of continuing the franchise relationship. [citations omitted].  Therefore, the Act is to be liberally construed consistent with the goal of protecting franchisees." *Ajir v. Exxon Corp.* (N.D.Cal. 1994) 855 F.Supp.294, 297, See, also, *Ellis v. Mobil Oil* (9th Cir. 1992) 969 F.2d 784, 788.  Further, the PMPA must be liberally construed to effect its overriding remedial purpose of protecting the franchisee from arbitrary or discriminatory acts of the franchisor.  *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365, 1372 (2000) (citing, *Secker v. Star Enterprise*, 124 F.3d 1399 (11th Cir. 1997); *May-Som Golf Inc. v. Chevron USA*, 869 F.2d 917 (6th Cir. 1989)).

The PMPA provides for two (2) independent notice requirements.  The first is found in 15 U.S.C. §2802(c), providing in relevant part that:

> 2802(c)  "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as –

> 2802(c)(4) loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if –

> 2802(c)(4)(A) the franchisee was notified in writing, **prior to the commencement of the term of the then existing franchise** –

> 2802(c)(4)(A)(i) of the duration of the underlying lease, and

2802(c)(4)(A)(ii) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal);

2802(c)(4)(B) during the 90-day period **after** notification was given **pursuant to section [2804]**, the franchisor offers to assign to the franchisee any option to extend the underlying lease or option to purchase the marketing premises that is held by the franchisor... (emphasis added).

This requirement is separate and independent from the second notice requirement contained in Section 2804(a), requiring that notice of termination be at least 90 days prior to the effective date of termination, in relevant part as follows:

2804(a) General requirements applicable to the franchisor.  Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor **shall furnish notification of such termination** or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship -

2804(a)(1)  in the manner described in subsection (c) of this section; and

2804(a)(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

The express language of the PMPA §2802(c)(4)(C) provides that in a situation where the franchisor loses the underlying lease, a termination of a franchise relationship is not effective until,

in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately **after the loss of the right of the franchisor to grant possession** (through an assignment [of an option to extend the underlying lease] pursuant to subparagraph (B) or by obtaining a new lease or purchasing the marketing premises from the landowner), the franchisor (if requested in writing by the franchisee not later than 30 days after notification was given pursuant to section 2804 of this title), during the 90 - day period after notification was given pursuant to section 2804 of this title –     (i)      made a bona fide offer to sell, transfer, or assign to the franchisee the interest of the franchisor in any improvements or equipment located on the premises..."  15 U.S.C. §2802(c)(4)(C).

Case law supports Plaintiff's position that Plaintiff need not request the sale of improvements and equipment until 30 days after he "acquires possession of the leased marketing premises effective immediately **after** the loss of the right of the franchisor to grant possession."

In *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365 (2000), Motiva voluntarily terminated the underlying ground lease with the landlord, Kathleen Erskine Leutze, effective November 30, 1999 pursuant to a lease term authorizing cancellation upon 180 days notice. On April 8, 1999, Motiva advised its lessee dealer, Hazara Enterprises, Inc., that it did not intend to

-10-

1   renew its franchise agreement effective November 30, 1999. Hazara thereafter attempted to negotiate

2   a new lease directly from the landowner, but was unable to accomplish this until November 20, 1999,

3   when it executed a new lease with the landlord. Shortly after Hazara Enterprises, Inc. regained its

4   right of possession of the marketing premises on December 13, 1999, Hazara asked Motiva to sell the

5   underground fuel lines and storage tanks to it. After an evidentiary hearing, the Magistrate Judge

6   found the underground storage tank system at Hazara's station to be "potentially dangerous" and

7   recommended to grant the injunctive relief. *Id.* at 1367-1369.

8       The Court held, however, that there was "at least an issue of fact as to the timeliness of

9   Hazara's request to purchase the equipment because, as Hazara points out, it did not obtain a new

10  lease on the marketing premises at the same time it was notified of the termination of the franchise

11  relationship (April of 1999), raising a query as to whether it acquired possession of the premises

12  "effective immediately after the loss of the right of the franchisor to grant possession" within the

13  meaning of section 2802(c)(4)(C) on November 29, 1999, triggering the 30 day notification request

14  provision of the statute at that time." *Id.* at 1373. The Court went on to say, however, that this issue

15  of timeliness was a moot point at this juncture in light of the prior finding regarding the potential

16  dangerousness of the equipment. *Id.* Nevertheless, the *Hazara Enterprises, Inc.* Court recognized that

17  the time to request the sale of improvements and equipment under section 2802(c)(4)(C) did not

18  expire until after Plaintiff obtain the possession of the property, immediately upon the franchisor's

19  loss of the right to grant possession.

20      Such an interpretation is certainly consistent with the overriding purpose of the PMPA. In a

21  situation such as the one at bar, the PMPA sets forth a requirement that the franchisee make a request

22  to purchase the equipment and improvements within a specified time frame after it gains possession

23  of the property, "effective immediately" after the franchisor's loss of the right to grant same.

24      The situation that exists in the present case is even stronger in Plaintiff's favor than the one

25  that existed in the *Hazara Enterprises, Inc.* case. In the present case, there is no question that Plaintiff

26  obtained possession of the premises immediately upon ConocoPhillips' loss of its right to grant

27  possession to Plaintiff. Its only purpose in remaining on the premises is to continue operating a motor

28  fuel service station.

1    Thus, Plaintiff is entitled to a bona fide offer pursuant to the PMPA.

2          **b.    ConocoPhillips Waived The Right To Contend and/or Should Be Estopped From Contending That It Is Not Required To Make A Bona Fide Offer Under The PMPA.**

3

4    Even if Plaintiff had not made such a request, ConocoPhillips waived the right to contend that

5    it is not required to extend a bona fide offer and/or should be estopped from so contending.

6    On September 18, 2007, ConocoPhillips sent Plaintiff a notice, entitled "NOTICE OF

7    TERMINATION" indicating:

8          ConocoPhillips Company ("CONOCOPHILLIPS"), **pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA") provides you with this written notice** that your franchise relationship with CONOCOPHILLIPS and the above referenced Agreement shall terminate at 12:00 noon on October 31, 2007 ("Termination Date").

9

10

11          The reason for the termination is that the Station you operate is leased to CONOCOPHILLIPS by a third party, and said lease shall expire on October 31, 2007. The existence of an underlying lease was fully disclosed to you.  Termination of the franchise relationship as a result of the loss of the franchisor's right to grant possession of the lease marketing premises because of the expiration of an underlying lease is an event that is of material significance to the franchise relationship for which termination is reasonable... Enclosed with this Notice is a copy of the Department of Energy revised Summary Of Title I of the PMPA, **which we are required by the PMPA** to provide you... (Haddad Decl. in support of Houtan Petroleum's Application for Temporary Restraining Order and Preliminary Injunction[7], Exh. "B," p. 000082-83, emphasis added).

12

13

14

15

16

17    Thus, ConocoPhillips' own Notice of Termination acknowledges the fact that it was required

18    to provide such notice "by the PMPA."  Although Houtan disputes the timeliness of this Notice, there

19    is no dispute that ConocoPhillips' reference to the PMPA in the Notice pertains to the notice

20    requirement under Section 2804(a).

21    Within 30 days of such Notice of Termination, on October 18, 2007, Plaintiff notified

22    ConocoPhillips in writing that it will be acquiring possession of the premises from the landlord and

23    demanded that ConocoPhillips forward a bona fide offer to sell its equipment and improvements.

24    (Haddad Decl. #1, Exh. "D," p. 000155).

25

26

27    [7]    Hereinafter, the declaration of Ed Haddad originally filed in support of Houtan Petroleum's Application for Temporary Restraining Order and Preliminary Injunction and presently filed in support of ConocoPhillips' instant Application for Injunctive Relief, shall be referred to at the "Haddad Decl. #1".

28

-12-

On October 22, 2007, ConocoPhillips sent Plaintiff a document entitled "OFFER TO SELL IMPROVEMENTS" along with a Bill of Sale for $340,000.00 which in relevant part provides in substantial part as follows:

> By hand delivered letter on September 18, 2007, **you were notified** of the Notice of Termination ("Notice") of the Union 76 Dealer Station Lease and Motor Fuel Supply Agreement, with an effective date of September 1, 2007, , 2007 ("Agreement"), **which Notice terminates your franchise relationship with CONOCOPHILLIPS COMPANY**, a Delaware corporation ("COP") for the above referenced Station. The termination of the Agreement shall be effective 12:00 noon on October 31, 2007 ("Termination Date").

> The reason for the termination is that, despite COP's efforts to get additional tenancy at the Station you operate, the underlying ground lease between COP the third party landlord shall expire on October 31, 2007. The duration of the lease and the fact it **might expire** during the term of the franchise were disclosed to you. Under these facts, it would not have been reasonable for COP to furnish not less than 90 days notice.

> You have informed COP on October 18, 2007 that you have obtained a lease with the third party landlord for the Station and have requested from COP a bona fide offer to purchase the improvements and equipment at the Station.

> **In accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq.**, COP offers to sell you our interest in the improvements and equipment located on the marketing premises... (See, Haddad Decl. #1, Exh. "E," p. 000157, emphasis added).

Thus, ConocoPhillips acknowledged once again the fact that the September 18, 2007 Notice of Termination was issued pursuant to Section 2804(a) as the Notice that "terminates [Plaintiff's] franchise relationship with CONOCOPHILLIPS COMPANY." With this Offer to Sell Improvements ConocoPhillips also acknowledged in no uncertain terms the fact that such Offer was made "[i]n accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq."

Thus, ConocoPhillips has expressly waived any argument that it was not required to make the offer that it has already made or that such offer need not have complied with the *bona fide* requirement of the PMPA. Moreover, after expressly stating that such offer is in compliance with and made pursuant to the PMPA, for ConocoPhillips to now contend that such offer did not need to comply with the PMPA and that it was not required to make it in the first place is a bad faith act in and of itself and disingenuous.

Moreover, given that ConocoPhillips was bound by Section 2802(c)(4)(B) to make such offer

-13-

within 90 days after plaintiff's request for sale of equipment and improvements, it would have been futile and impractical for Plaintiff to have requested that ConocoPhillips make such offer within 30 days after executing the franchise agreement, before either Plaintiff or ConocoPhillips knew whether ConocoPhillips would eventually secure a renewal of its lease with the third party landlord.  This is exactly why the PMPA requires that such a request for an offer by  be made by the franchisee within 30 days "after" the franchisor's loss of the right to grant possession, rather than before such loss.

In any event, ConocoPhillips has clearly and expressly waived any right to contend that it is not required to make a bona fide offer under the PMPA.  Furthermore, at a minimum, ConocoPhillips should be estopped from making such argument.

**2.     ConocoPhillips Has Not Established Any Significant Threat Of Irreparable Injury.**

Although ConocoPhillips argues that it will suffer irreparable harm if the injunctive relief is denied, this is not the case.  As explained above, ConocoPhillips created the situation of which it now complains by making an offer to Plaintiff that substantially exceeds and fails to approach the fair market value of the equipment and improvements at the station.

ConocoPhillips argues that it stands to be irreparably harmed by Plaintiff's continued to use of its equipment and improvements.  Yet, it admits that it was willing to "rent its equipment and improvements to Houtan Petroleum, for the duration of the litigation, subject to ConocoPhillips' right to inspect and maintain the property." (Moving Papers, 5:23-25).  However, Plaintiff has both agreed to permit ConocoPhillips' access to inspect and maintain the property and has added ConocoPhillips as an additional insured to the Underground Storage Tank liability policy that it has obtained. (Haddad Decl. #2, ¶ ¶ 4 and 5, Exh. "J" and "K").  Consequently, ConocoPhillips' argument that it stands to be irreparably harmed or suffer any sort of irreparable hardship simply because the issue of value and rent will remain in dispute over the course of this case, is disingenuous at best.

ConocoPhillips' stated basis for the instant application is its contention that "Houtan Petroleum is using ConocoPhillips' fuel tanks, pumps and other equipment, without any maintenance or environmental compliance supervised by ConocoPhillips and without payment."  Even if true, this is not a sufficient basis for disturbing the status quo by allowing the removal of all equipment and

1    improvements, essentially devastating Plaintiff's entire business, before the case can be decided on

2    the merits after trial.  Clearly, failure to pay rent is not a valid basis for injunctive relief because such

3    does not constitute **irreparable** harm.  Rather, if it is ultimately found that ConocoPhillips was

4    entitled to rental payments, this can be addressed by a monetary judgment.  Likewise, in light of

5    Plaintiff's agreement to grant ConocoPhillips access to the property and provide Underground Storage

6    Tank liability insurance, ConocoPhillips' alleged inability to monitor environmental compliance is

7    not supported by the evidence and is without merit.

8        3.    **ConocoPhillips Has Failed To Demonstrate That The Balance Of Hardships Weighs In Its Favor.**

9
10       In balancing the hardships between the parties, this Court previously found that "because

11   Conoco has agreed to leave its equipment and improvements in place pending party negotiation or

12   judicial determination of an appropriate purchase price, Houtan will be able to continue operating the

13   Station."  (November 16, 2007 Order, 18:12-15).  This explanation was one of the Court's stated

14   reasons for finding that ConocoPhillips stood to suffer a greater hardship than Plaintiff if Plaintiff's

15   application for a preliminary injunction were to be granted.  At this point, however, if ConocoPhillips

16   were to be allowed to remove its equipment and improvements before a judgment on the merits

17   regarding the purchase price, Plaintiff would clearly suffer a substantially greater hardship through

     the loss of its business than ConocoPhillips would.

18       As the Ninth Circuit has noted, for "the franchisee [to] establish [] that he will incur the

19   greater hardship ... should not be difficult in most PMPA cases." *Khorenian v. Union Oil Company*

20   *of California, supra,* 761 F.2d 533, 535.

21       If the instant application is granted, ConocoPhillips would remove all equipment and demolish

22   every structure, including the paving on the property.  Plaintiff would be left with an empty dirt lot.

23   This would clearly cause Plaintiff to suffer devastating irreparable harm, as well as a complete loss

24   of income at the station.  (Haddad Decl. #2, ¶6).  On the other hand, if this application is denied,

25   ConocoPhillips would have every right to access and monitor its equipment and, at most, could not

26   claim to suffer any losses beyond monetary damages in the form of rent.

27   ///

28

1

**4.    ConocoPhillips Has Failed To Demonstrate How The Public Interest Would Be Served By Completely Demolishing Plaintiff's Station Before A Trial On The Merits Of Plaintiff's Complaint.**

2

3    Given Plaintiff's agreement to grant ConocoPhillips access to the property for the purpose of

4    monitoring, Plaintiff's agreement to be responsible for all environmental obligations, as well as

5    Plaintiff's voluntary retention of underground storage tank liability insurance, ConocoPhillips has no

6    public policy argument to justify the removal of all of the equipment and improvements from the

7    property.  Rather, public policy demands that Plaintiff's station remain open for the duration of this

8    litigation.  Certainly, it is more likely that an open station in the "located in a busy intersection of an

9    upper scale neighborhood"[8] will better serve the public and ensure a maximum level of competition

10    in that neighborhood, rather than an empty dirt lot.

11    **C.    CONOCOPHILLIPS HAS FAILED TO DEMONSTRATE THAT IT IS ENTITLED TO IMMEDIATE POSSESSION OF THE PROPERTY.**

12

13    In addition to the reasons already addressed above, ConocoPhillips' reliance on *Persuad v.*

14    *Exxon Corp.* 867 F.Supp. 128, 141 (E.D.N.Y. 1994) for the proposition that it is entitled to immediate

15    possession is likewise unfounded.  In *Persuad*, the franchisor and franchisee executed a mutual

16    termination agreement of the franchise.  Then, the franchisee challenged the termination based on

17    such mutual agreement.  There was no dispute, as there is in the instant case, over the value of any

18    equipment and improvements arising out of the franchisor's obligation to offer same under the

19    PMPA.  Consequently, *Persuad* does not apply to the facts of the present case on its face.

20    Likewise, ConocoPhillips' reliance on California law is unfounded in light of the fact that the

21    PMPA preempts state law in situations arising out of termination or nonrenewal of a petroleum

22    marketing franchise.

23    To the extent that any provision of this subchapter applies to the termination (or the

24    furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the

25    furnishing of notification with respect thereto) of any franchise relationship, no State or any political

26    subdivision thereto may adopt, enforce, or continue in effect any provision of any law or regulation

27    (including any remedy or penalty applicable to any violation thereof) with respect to termination (or

28

---

[8]    See, Haddad Decl. #1, ¶16.

PLAINTIFF'S OPPOSITION TO CONOCOPHILLIPS' APPLICATION FOR PRELIMINARY INJUNCTION

1  the furnishing of notification with respect thereto) of any such franchise or the nonrenewal (or the

2  furnishing of notification with respect thereto) of any such franchise relationship unless such

3  provision of such law or regulation is the same as the applicable provision of this subchapter.  15

4  U.S.C. §2806(a)(1).

5       The primary purpose of the PMPA is to govern the termination and nonrenewal of franchise

6  relationships by franchise owners.  *DuFresne's Auto Serve., Inc. v. Shell Oil Co.,* 992 F.2d 920 (9th

7  Cir. 1993).  "In enacting the PMPA, Congress attempted to provide national uniformity of petroleum

8  franchise termination law."  *Unocal Corp. v. Kaabipour,* 177 F.3d 755, 768 (9th Cir. 1999) (internal

9  quotations and citations omitted).  That uniformity would be frustrated if the PMPA did not preempt

10  all inconsistent state law.  *Id.*  Section 2806(a) of the PMPA provides for preemption of all state law

11  with respect to termination or nonrenewal of a petroleum franchise which is inconsistent with the

12  PMPA.  *Id.*  Consequently, to the extent that ConocoPhillips' instant application is based on

13  California law that is inconsistent with the PMPA, it is preempted.  Given that the PMPA expressly

14  provides for a franchisee's right to purchase the equipment and improvements so that it could

15  continue operating its business, California law that would provide for an alternative result is contrary

16  to that purpose and is therefore preempted.

17                                 **III.**

18                              **CONCLUSION**

19       Based on the foregoing, the instant Application for Injunctive Relief should be summarily

20  denied.

21       However, if the Court is inclined to grant ConocoPhillips application it should condition such

22  order on the posting of a substantial bond of not less than $1,000,000.00 to protect Houtan

23  Petroleum's interests.  Such interests include loss of the ability to purchase equipment and

24  improvements at a price that approaches fair market value, appraised at $145,000, loss of the entirety

25  of Plaintiff's business, the time and expense it will take to obtain local governmental agency permits

26  to rebuild the dirt lot that will remain after demolition by ConocoPhillips and the $15,000 monthly

27

28

1    rent[9] that Houtan Petroleum will continue to pay for the property without the ability to conduct any

2    business on it.

3           Additionally, if the Court is inclined to grant the instant application, Plaintiff requests that it

4    also issue an immediate stay of the enforcement of the Order in order to preserve the status quo, while

5    Plaintiff exercises its right to immediately seek appellate review with a writ of mandate from the

6    Ninth Circuit Court of Appeals.

7                                      Respectfully submitted,

8    Dated: January 4, 2008                  BLEAU / FOX, A

9                                      Professional Law Corporation

                                      By:_____

10                                        Thomas P. Bleau, Esq.

11                                        Gennady L. Lebedev, Esq.
                                        Attorneys for Plaintiff,

12                                        HOUTAN PETROLEUM, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    [9]    See, Haddad Decl. #1, Exh. "C," p. 000089

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action;  my business address is **3575 Cahuenga Boulevard West, Suite 580, Los Angeles, California 90068.**

On **January 4, 2008**, I served the documents described as:

**PLAINTIFF, HOUTAN PETROLEUM, INC.'S OPPOSITION TO CONOCOPHILLIPS COMPANY'S APPLICATION FOR WRIT OF POSSESSION AND PRELIMINARY INJUNCTION**

on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Clement Glynn, Esq.
Adam Friedenberg, Esq.
Glynn & Finley, LLP
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
Facsimile: (925) 945-1975

/X/   BY ELECTRONIC TRANSMISSION as follows: I sent such documents by e-mail to Adam Friedenberg, Esq. at **afriedenberg@glynnfinley.com**.

/X/  BY EXPRESS MAIL Via Overnight Delivery

/X/ As follows: On such date as indicated above, I deposited such envelope with an express overnight delivery service, **California Overnight**, with delivery fees paid or provided for, addressed as indicated above.

Executed on this **4ᵗʰ day of January,  2008**, at Los Angeles, California.

/X/  (Federal)  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Gennady Lebedev