

ACE American Insurance Company

# TANK SAFE(SM) - Storage Tank Liability Insurance Policy

This Policy is issued by the stock insurance company listed above (herein called "the Insurer").

**COVERAGE A OF THIS POLICY PROVIDES BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD. COVERAGE B OF THIS POLICY PROVIDES CORRECTIVE ACTION COSTS COVERAGE ON AN INCIDENT-REPORTED BASIS.**

**PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND WILL ERODE A SEPARATE AGGREGATE LIMIT OF LIABILITY.**

Throughout this Policy the words "the Insurer" shall refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meanings and are defined in Section IV. – Definitions.

In consideration of the payment of the Premium and in reliance upon all statements made in the Application including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions, and limitations of this Policy, the Insurer agrees to provide insurance coverage to the "Insured" as described herein.

## I. INSURING AGREEMENTS

The Insurer agrees to pay on behalf of the "insured" for:

A. Monetary award, judgment, or settlement of compensatory damages, in excess of the Deductible amount shown in Item 5. of the Declarations, resulting from a "claim" for "bodily injury" or "property damage" arising from a "storage tank incident", if:

  1. The "bodily injury" or "property damage" is caused by a "storage tank incident" that takes place on or after the Retroactive Date shown in the Declarations and before the end of the "Policy Period"; and

  2. Such "claim" is first made against the "insured" during the "Policy Period" and reported to the Insurer, in writing, during the "Policy Period" or any applicable "extended reporting period".

B. "Corrective action costs" in excess of the Deductible amount shown in Item 5. of the Declarations resulting from, "pollution conditions" arising from a "storage tank incident", if such:

  1. "Storage tank incident" takes place on or after the Retroactive Date shown in Item 3. of the Declarations and before the end of the "Policy Period"; and

  2. "Storage tank incident" is reported to the Insurer, in writing, during the "Policy Period" or any applicable "extended reporting period".

C. "Legal defense expense" necessarily incurred to respond to a "claim" under Section I. Insuring Agreement A. above, to which this Policy applies. Any amounts incurred under this provision shall reduce the Aggregate Legal Defense Expense Limit shown in Item 4.c. of the Declarations.

## II. LIMITS OF LIABILITY AND DEDUCTIBLE

A. The Aggregate Limit shown in Item 4.b. of the Declarations shall be the maximum liability of the Insurer under this Policy with respect to all "claim(s)" for monetary award, judgment or settlement of compensatory damages and "corrective action cost(s)" during the "Policy Period" irrespective of the time of payment by the Insurer.

B. Subject to Paragraph A. above, the Per Storage Tank Incident Limit shown in Item 4.a. of the Declarations is the most the Insurer shall pay per "claim" for monetary award, judgment or settlement of compensatory damages and "corrective action costs", in excess of the Deductible amount shown in Item 5. of the Declarations, arising from the same or related "storage tank incident".

The Insurer's obligation to pay "claims" for monetary award, judgment or settlement of compensatory damages or "corrective action costs" shall be reduced by the Deductible amount shown in the Declarations. If the sum of such monetary award, judgment or settlement of compensatory damages or "corrective action costs" is less than the Per Storage Tank Incident Limit, the Insurer may pay all or part of the Deductible amount to effect settlement of any "claim". Upon notification of payment of such Deductible amount, the "Insured" shall promptly reimburse the Insurer the Deductible amount paid by the Insurer.

C. Subject to the Deductible, the Legal Defense Expense Limit shown in Item **4.c.** of the Declarations shall be the maximum liability of the Insurer under this Policy with respect to "legal defense expense" necessarily incurred for all "claim(s)" during the "Policy Period" irrespective of the time of payment by the Insurer.

D. If the Insurer, or an affiliate, has issued a Tank Safe Policy, or similar coverage for a "Covered Underground Storage Tank" or a "Covered Aboveground Storage Tank" in one or more "Policy Period(s)" and:

1. The discovery of "pollution conditions" is reported to the Insurer in accordance with the terms and conditions of this Policy, all of the same, continuous, repeated, related, or resultant "pollution conditions" reported to the Insurer under a subsequent Tank Safe Policy (or similar policy) shall be deemed to have been discovered during this "Policy Period"; or

2. A "claim" for "bodily injury" or "property damage" is first made against the "insured" and reported to the Insurer, in writing, in accordance with the terms and conditions of this Policy, all "claims" arising out of the same "storage tank incident" shall be deemed to have been first made and reported during this "Policy Period",

provided that the "insured" has maintained a Tank Safe Policy (or similar policy) with the Insurer or an affiliate on a continuous, uninterrupted basis since the discovery of such "pollution condition" or the first such "claim" was made against the "insured", and reported to the Insurer.

## III. DEFENSE AND SETTLEMENT

A. The Insurer will have the right and the duty to defend the "insured" against a "claim" to which this insurance applies and to pay or reimburse for "legal defense expense" as provided for under Section **I.** Insuring Agreement **C.** However, such duty to defend ends:

1. Once the Limits of Liability applicable to **I.** Insuring Agreements **A.** and **B.** are:

   a. Exhausted or are tendered into a court of applicable jurisdiction; or

   b. Once the "insured" refuses a settlement offer as provided in Paragraph **C.** below; or

2. When the Limit of Liability applicable to **I.** Insuring Agreement **C.** is exhausted,

whichever occurs first.

B. The Insurer will have the right, but not the duty to select legal counsel for the investigation, adjustment, and defense of any "claim" covered under this Policy, which will not be done without the consent of the "insured".

C. The Insurer will present all settlement offers to the "insured". If the Insurer recommends a settlement which is acceptable to a claimant, exceeds any applicable Deductible, and is within the Limits of Liability, and the "insured" refuses to consent to such settlement offer, then the Insurer's duty to defend shall end. The "insured" shall defend such "claim" independently and the Insurer's liability shall not exceed the amount for which the "claim" could have been settled if our recommendation had been accepted, exclusive of the Deductible.

## IV. DEFINITIONS

A. "Bodily injury" means physical injury or illness, disease, mental anguish, or emotional distress sustained by any person, including death resulting therefrom.

B. "Claim" means the assertion of a legal right, including but not limited to, suits or other actions alleging responsibility or liability on the part of the "insured" for damages arising out of a "storage tank incident".

C. "Corrective action costs" means expenses necessarily incurred by the insured to investigate, quantify, assess, monitor, abate, remove, dispose, treat, neutralize or immobilize "pollution conditions" to the extent required by 40 CFR Sections 280.60-280.67 and 40 CFR Section 280.72 promulgated by the Federal Environmental Protection Agency, or other "environmental law". "Corrective action cost" shall also include "replacement costs".

D. "Covered Aboveground Storage Tank" means a stationary petroleum product containing tank, and associated piping and appurtenances connected thereto with less than 10% of its volume below ground, if such tank is listed in the Schedule of Covered Aboveground Storage Tanks shown in Item **9.** of the Declarations.

E. "Covered Underground Storage Tank" means a petroleum product containing tank and associated piping and appurtenances connected thereto with more than 10% of its volume below ground, if such tank is listed in the Schedule of Covered Underground Storage Tanks shown in Item **8.** of the Declarations.

F. "Emergency response" means actions taken, and "corrective action costs" necessarily incurred by the "insured" to abate and/or respond to an imminent and substantial threat to human health or the environment arising from a "storage tank incident".

G. "Environmental laws" means any federal, state, provincial, municipal or other local laws, statutes, ordinances, regulations, and all amendments thereto, including state voluntary cleanup or risk-based corrective action guidance, governing the liability of the "insured" with respect to "pollution conditions".

H. "Extended reporting period" means the additional period of time in which to report a "claim" first made against the "insured" subsequent to the end of the "Policy Period", arising from a "storage tank incident" to which this insurance applies. Such "storage tank incident" must commence subsequent to any applicable Retroactive Date shown in Item **3.** but before the end of the "Policy Period".

I. "Government action" means action taken or liability imposed by any federal, state, provincial, municipal or other local government agency or body acting under the authority of "environmental laws".

J. "Hostile acts" means:

   1. Use or threat of force or violence; or

   2. The commission of or threat to commit a dangerous act; or

   3. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; or

   4. Intimidation or coercion of a government or the civilian population or any segment thereof, or the disruption of the economy, or any segment of the economy; or

   5. The release of pathogenic or poisonous biological or chemical materials, if such release was intentionally caused.

K. "Insured" means the "Named Insured", any additional "insured" specifically endorsed onto this Policy, and any director, officer, partner, or employee of the "Named Insured" while acting within the scope of his or her duties as such.

L. "Legal defense expense" means reasonable legal costs, charges, and expenses, including expert charges, incurred by the "insured" in the investigation, adjustment, or defense of a "claim".

M. "Named Insured" means the person or entity listed in Item **1.** of the Declarations.

N. "Natural resource damages" means damages for, injury to, destruction of, or loss of fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other similar resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States, any state or local government, any foreign government, or any Indian Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

O. "Policy Period" means the period set forth in Item **2.** of the Declarations, or any shorter period resulting from the cancellation of this Policy.

P. "Pollution condition" means any spilling, leaking, emitting, discharging, dispersing, seeping, escaping or releasing of the contents of any "Covered Underground Storage Tank" or "Covered Aboveground Storage Tank" into surface soils, subsurface soils, surface water, or groundwater.

Q. "Property damage" means:

   1. Physical injury to tangible property, including all resulting loss of use of that property;

   2. Loss of use of tangible property that is not physically injured;

   3. Diminished value of property owned by third-parties; or

   4. "Natural resource damages".

R. "Replacement costs" means those expenses necessarily incurred by the "insured" to repair or replace real property or physical improvements thereto, damaged during the course of responding to a "pollution condition". "Replacement costs" do not include costs associated with improvements or betterments, or any costs associated with the repair, replacement, or upgrading of any "Covered Underground Storage Tank" or "Covered Aboveground Storage Tank".

S. "Responsible insured" means any employee of the "Named Insured" responsible for environmental affairs, control, or compliance or any officer, director, or partner of the "Named Insured".

T. "Storage tank incident" means a "pollution condition" resulting from a "Covered Underground Storage Tank" or a "Covered Aboveground Storage Tank". The entirety of continuous or repeated "pollution conditions" resulting from the same "Covered Underground Storage Tank" or "Covered Aboveground Storage Tank" shall be deemed to be one "storage tank incident".

U. "War" means:

1. "War", including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## V. EXCLUSIONS

This insurance does not apply to "claim(s)", "corrective action costs", or "legal defense expense(s)":

A. Contractual Liability

Arising out of any liability of others assumed by the "insured" through contract or agreement, except if the liability would have attached to the "insured" in the absence of such contract or agreement. This exclusion does not apply to those contracts listed in the Schedule of Insured Contracts endorsed to this Policy, if any.

B. Employers Liability

Arising from "bodily injury" to:

1. An "insured" or an employee of its parent, subsidiary or affiliate

   a. Arising out of and in the course of employment by the "insured" or its parent, subsidiary or affiliate; or

   b. Performing duties related to the conduct of the "Named Insured's" business.

2. The spouse, child, parent, brother or sister of such "insured" or employee of its parent, subsidiary or affiliate as a consequence of Paragraph 1. above.

This exclusion applies:

1. Whether the "insured" may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

C. Fines and Penalties

Based upon, arising out of, or attributable to the payment of fines, penalties, punitive, exemplary or multiplied damages, or injunctive relief, based upon or arising out of any "insured's" knowing, willful or deliberate noncompliance with any statute, regulation, ordinance or administrative complaint.

D. First Party Property Damage

Arising from "property damage" to real or personal property owned, leased, loaned, or rented to the "insured", or otherwise in the care, custody, or control of the "insured". This exclusion does not apply to "replacement costs" or "corrective action costs".

E. Known Conditions

Arising out of "pollution conditions" in existence prior to the "Policy Period" and reported to a "responsible insured", but not disclosed to the Insurer in writing.

F. War or Hostile Acts

"Bodily injury" or "property damage" based upon, arising out of, or attributable to, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "hostile acts" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

G. Insured's Internal Expenses

Arising from expenses incurred by the "insured" for services performed by the salaried staff and employees of the "insured".

H. Intentional Non-Compliance

Based upon, arising out of, or attributable, whether directly or indirectly, to intentional disregard of or knowing, willful or deliberate non-compliance with any statute, regulation, administrative complaint, notice of violation, notice letter, instruction of any governmental agency or body, or executive, judicial or administrative order by any "responsible insured".

I. Lead Based Paint and Asbestos

Due to the presence of lead-based paint, asbestos, or asbestos containing materials, in, on, or applied to any structure, including, but not limited to a "Covered Underground Storage Tank" or "Covered Aboveground Storage Tank".

J. Nuclear Hazard

1. To "bodily injury" or "property damage":

    a. With respect to which the "insured" under the Policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limits of liability; or

    b. Resulting from the hazardous properties of nuclear material and with respect to which:

        (1) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

        (2) The "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Resulting from the hazardous properties of nuclear material, if:

    a. The nuclear material

        (1) Is at any nuclear facility owned by, or operated by or on behalf of the "insured"; or

        (2) Has been discharged or dispersed therefrom;

    b. The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the "insured"; or

    c. The "bodily injury" or "property damage" arises out of the furnishing by the "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, located within the United States of America, its territories or possessions or Canada.

3. As used in this exclusion:

    a. Hazardous properties include radioactive, toxic, or explosive properties.

    b. Nuclear material means source material, special nuclear material, or byproduct material.

    c. Source material, special nuclear material, and byproduct material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    d. Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

    e. Waste means any waste material:

        (1) Containing byproduct material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content; and

        (2) Resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility;

    f. Nuclear facility means:

        (1) Any nuclear reactor;

        (2) Any equipment or device designed or used for

            (a) Separating the isotopes of uranium or plutonium;

            (b) Processing or utilizing spent fuel; or

            (c) Handling, processing or packaging waste;

        (3) Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

        (4) Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste;

        (5) The site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

    g. Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

    h. "Property damage" includes all forms of radioactive contamination of property.

K. Storage Tank Contents

Arising out of or in any way related to costs arising out of the loss, removal, replacement, re-use, or recycling of the contents of any "Covered Underground Storage Tank" or "Covered Aboveground Storage Tank".

## VI. REPORTING AND COOPERATION

A. The "insured" must provide the Insurer with immediate notice in the event of a "storage tank incident". Such notice shall be provided as soon as reasonably possible, but in any event, not less than seven (7) days after a "responsible insured" first became aware of, or should have become aware of a "storage tank incident". Such notification, if not provided in writing, must subsequently be provided in writing to the Insurer at the address specified in Item **7.a.**, as soon as possible, and should include reasonably detailed information as to the identity of:

    1. The "insured";

    2. The "Covered Underground Storage Tank" or "Covered Aboveground Storage Tank";

    3. The nature of the "claim" or "pollution condition"; and

    4. Any steps undertaken by the "insured" to respond to the "claim" or "pollution condition".

B. The "insured" must:

    1. Immediately send the Insurer, at the address specified in Item **7.a.** of the Declarations, copies of any demands, notices, summonses or legal papers received in connection with any "claim";

2. Authorize the Insurer to obtain records and other information;

3. Cooperate with the Insurer in the investigation, settlement or defense of the "claim";

4. Assist the Insurer, upon the Insurer's request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this Policy may also apply; and

5. Provide the Insurer with such information and cooperation as it may reasonably require.

C. No "insured(s)" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim" without the written consent of the Insurer. Nor shall the "insured" incur any "corrective action costs" without the express consent of the Insurer, except in the event of an "emergency response".

D. Upon the discovery of a "pollution condition", the "insured" shall make every attempt to mitigate any loss and comply with applicable "environmental laws". The "insured" must cooperate with the Insurer in the selection and retention of qualified contractors or consultants. The Insurer shall have the primary responsibility, but not the duty, to select, retain, and oversee such contractors or consultants, on behalf of the "insured". Any "corrective action costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the Deductible and Limit of Liability shown in the Declarations.

## VII. EXTENDED REPORTING PERIOD

A. The "Named Insured" shall be entitled to a basic "extended reporting period", and may purchase an optional supplemental "extended reporting period", following cancellation, as described in Paragraph A. of Section VIII. Conditions, or nonrenewal.

B. "Extended reporting periods" shall not reinstate or increase the Limits of Liability. "Extended reporting periods" shall not extend the "Policy Period" or change the scope of coverage provided. A "claim" first made and reported to us within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, will be deemed to have been made on the last day of the "Policy Period".

C. Provided the "Named Insured" has not purchased any other insurance to replace this insurance, the "Named Insured" shall have a sixty (60) day basic "extended reporting period" without additional charge.

D. The "Named Insured" shall be entitled to purchase a supplemental "extended reporting period" of up to thirty-four (34) months for not more than 200% of the full Policy Premium stated in Item **6.** of the Declarations. Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer will issue an endorsement providing a supplemental "extended reporting period" provided that the "Named Insured":

1. Makes a written request for such endorsement which the Insurer receives prior to the expiration of the "Policy Period"; and

2. Pays the additional Premium when due. If that additional Premium is paid when due, the supplemental "extended reporting period" may not be cancelled, provided that all other terms and conditions of the Policy are met.

## VIII. CONDITIONS

A. Cancellation

1. This Policy may be cancelled by the "Named Insured" by mailing to the Insurer, or through the "insured's" agent, at the notice address shown in Item **7.b.** of the Declarations, written notice stating when such cancellation shall be effective.

2. This Policy may be cancelled by the Insurer for the following reasons:

   a. Non-payment of Premium;

   b. Fraud or misrepresentation on the part of the "insured", such as can be proven in a court of law;

   c. Material change in use or operation of a "Covered Underground Storage tank" or "Covered Aboveground Storage Tank" from the use contemplated in the Application and supporting materials which results in a materially increased likelihood of "claims" or "pollution conditions",

by mailing to the "Named Insured" at the "Named Insured's" last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the Premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "Policy Period".

The Policy Premium shall be 100% minimum earned as of the first day of the "Policy Period".

B. Inspection and Audit

To the extent of the "insured's" ability to provide such access, and with reasonable notice to the "insured", the Insurer shall be permitted, but not obligated, to inspect any "Covered Underground Storage Tank" or "Covered Aboveground Storage Tank". Neither the Insurer's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that any "Covered Underground Storage Tank" or "Covered Aboveground Storage Tank" is safe or in compliance with "environmental law", or any other law.

The Insurer may examine and audit the "insured's" books and records during this "Policy Period" and extensions thereof and within three (3) years after the final termination of this Policy.

C. Legal Action Against the Insurer

No person or organization has a right under this Policy to:

1. Join the Insurer as a party or otherwise bring the Insurer into any suit against any "insured"; or

2. Sue the Insurer in connection with this insurance, unless all of the Policy terms have been fully complied with.

A person or organization may sue the Insurer to recover after an agreed settlement or on a final judgment against an "insured". However, the Insurer will not be liable for amounts that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by the Insurer, the "insured" and the claimant or the claimant's legal representative.

D. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve the Insurer of any of its obligations hereunder.

E. Subrogation

In the event of any payment under this Policy by the Insurer, the Insurer shall be subrogated to all of the rights of recovery against any person or organization, and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The "insured" shall do nothing to prejudice such rights.

F. Representations

By accepting this Policy, each "insured" agrees that:

1. The statements in the Declarations, Schedules, and Application for this Policy are accurate and complete;

2. Those statements are based upon representations the "insured" made to the Insurer;

3. This Policy has been issued in reliance upon the "insured's" representations.

G. Severability

Except with respect to the Limit of Liability shown in the Declarations, this Policy applies:

1. As if each "insured" were the only "insured";

2. Separately to each "insured" against whom a "claim" is made.

H. Other Insurance

If other valid and collectible insurance is available to the "insured" covering a loss also covered by this Policy, other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other insurance.

I. Sole Agent

The "Named Insured" listed in Item 1. of the Declarations shall serve as the sole agent of the "insured(s)" with respect to the return or payment of any Premiums or retained amounts, as well as for any notices required by this Policy.

J. Jurisdiction and Venue

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer and the "insured" will submit to the jurisdiction of the State of New York and will comply with all requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to remove an action to a United States District Court.

K. Choice of Law

All matters arising hereunder including questions relating to the validity, interpretation, performance, and enforcement of this Policy shall be determined in accordance with the law and practices of the State of New York.

L. Changes and Assignment

Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or estop the Insurer from asserting any right under the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest under this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy, signed by the Insurer or its authorized representative.

M. Headings

The descriptions in the headings and sub-headings of this Policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.