1  Thomas P. Bleau, Esq., SBN 152945
   Gennady L. Lebedev, Esq., SBN 179945
2  BLEAU / FOX, A P.L.C.
   3575 Cahuenga Boulevard West, Suite 580
3  Los Angeles, California 90068
   Telephone    : (323) 874-8613
4  Facsimile    : (323) 874-1234
   e-mail:        bleaushark@aol.com
5  e-mail:        glebedev@bleaufox.com

6  Attorneys for Plaintiff,
   HOUTAN PETROLEUM, INC.

7

8

9              UNITED STATES DISTRICT COURT IN AND FOR

10             THE NORTHERN DISTRICT OF CALIFORNIA

11
   HOUTAN PETROLEUM, INC.            )   CASE NO.  3:07-CV-05627-SC
12                                   )
                Plaintiff,           )
13 vs.                               )   PLAINTIFF, HOUTAN PETROLEUM,
                                     )   INC.'S OPPOSITION TO
14 CONOCOPHILLIPS COMPANY, a Texas   )   CONOCOPHILLIPS COMPANY'S
   Corporation  and DOES 1 through 10, )  MOTION TO DISMISS COMPLAINT
15 Inclusive                         )
                                     )   Date:        January 25, 2008
16             Defendants.           )   Time:        10:00 a.m.
                                     )   Courtroom:   1
17 _____ )   Before:      Hon. Samuel Conti

18 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

19        PLEASE TAKE NOTICE that Plaintiff, Houtan Petroleum, Inc., hereby opposes

20 ConocoPhillips Company's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of

21 Civil Procedure 12(b)(6) as follows.

22                                   I

23                            INTRODUCTION

24        By now the Court is well familiar with the procedural history and underlying facts of this case.

25 This introduction will therefore be brief.

26        ConocoPhillips moves to dismiss the underlying action based on its contention that this Court

27 has already found in its Order denying Plaintiff's application for preliminary injunction that

28 ConocoPhillips has fully complied with termination requirements under the PMPA and that Plaintiff

-1-

1   failed to demand a "bona fide offer" from ConocoPhillips within the time required by the PMPA.

2   As will be shown below, neither of these arguments have merit.  Consequently, the instant Motion

3   must be summarily denied.

4                                                  **II**

5                                    **LEGAL DISCUSSION**

6   **A.     STANDARDS GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS FOR
            FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE**

7   **GRANTED.**

8          A Rule 12(b)(6) motion is similar to the common law general demurrer: i.e., it tests the legal

9   sufficiency of the claim or claims stated in the complaint. The court must decide whether the facts

10  alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is

11  unequivocally "no," the motion must be denied. *Conley v. Gibson* (1957) 355 U.S. 41, 45-46; *De La*

12  *Cruz v. Tormey* (9th Cir. 1978)  582 F.2d 45, 48; *SEC v. Cross Fin'l Services, Inc.* (CD CA 1995)

13  908 F.Supp. 718, 726-727 (quoting text); *Beliveau v. Caras* (CD CA 1995) 873 F.Supp. 1393, 1395

14  (citing text); *United States v. White* (CD CA 1995)  893 F.Supp. 1423, 1428 (citing text).

15         A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal

16  theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

17  *Pacifica Police Dept.* (9th Cir. 1990) 901 F.2d 696, 699; *Graehling v. Village of Lombard, Ill.* (7th

18  Cir. 1995) 58 F.3d 295, 297 ("A suit should not be dismissed if it is possible to hypothesize facts,

19  consistent with the complaint, that would make out a claim.")  Thus, a motion to dismiss should not

20  be granted unless it appears that the plaintiff can prove no set of facts in support of his claim that

21  would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

22         In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light

23  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3)

24  determine whether plaintiff can prove any set of facts to support a claim that would merit relief.

25  *Cahill v. Liberty Mut. Ins. Co.* (9th Cir. 1996) 80 F.3d 336, 337-338; *Vector Research, Inc. v. Howard*

26  *& Howard Attorneys P.C.* (6th Cir. 1996) 76 F.3d 692, 697.  The Court must also accept as true all

27  reasonable inferences to be drawn from the material allegations in the complaint. Pareto v. F.D.I.C.,

28  139 F.3d 696, 699 (9th Cir. 1998).  For purposes of Rule 12(b)(6), "claim" means a set of facts which,

1   if established, gives rise to one or more enforceable legal rights. *Goldstein v. North Jersey Trust Co.*

2   (SD NY 1966) 39 F.R.D. 363, 366; *In re Baker* (BK D NV 1986) 66 B.R. 652, 653).

3       The defect must appear on the face of the complaint.  Unless the court converts the Rule

4   12(b)(6) motion into a summary judgment motion, the court cannot consider material outside the

5   complaint (e.g., facts presented in briefs, affidavits or discovery materials). *Levine v. Diamanthuset,*

6   *Inc.* (9th Cir. 1991) 950 F.2d 1478, 1483; see *McCalden v. California Library Ass'n* (9th Cir. 1990)

7   955 F.2d 1214, 1219;  *Beliveau v. Caras* (CD CA 1995)  873 F.Supp. 1393, 1395 (citing text).

8       **B.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR DAMAGES,**
        **INJUNCTIVE RELIEF AND EQUITABLE RELIEF FOR VIOLATIONS OF**
9       **THE PMPA**

10      Plaintiff has plead violations of the PMPA with enough specificity to place ConocoPhillips

11  on sufficient notice of the claims being alleged in order to Answer the Complaint.  The facts alleged,

12  if proven true, would entitle plaintiff to some form of legal remedy.  Thus, the Motion under F.R.C.P.

13  12(b)(6) must be denied.  *Conley v. Gibson* (1957) 355 U.S. 41, 45-46; *De La Cruz v. Tormey* (9th

14  Cir. 1978)  582 F.2d 45, 48; *SEC v. Cross Fin'l Services, Inc.* (CD CA 1995)  908 F.Supp. 718,

15  726-727 (quoting text); *Beliveau v. Caras* (CD CA 1995) 873 F.Supp. 1393, 1395 (citing text);

16  *United States v. White* (CD CA 1995)  893 F.Supp. 1423, 1428 (citing text).

17      ConocoPhillips contends that Plaintiff's First Claim for Relief for PMPA violations should

18  fail because termination is permitted under the PMPA.  However, such contention is of no

19  consequence to the instant Motion since Plaintiff is not alleging that franchises cannot be terminated

20  under any circumstances.  Rather, Plaintiff's allegations in the complaint arise out of ConocoPhillips'

21  failure to comply with the PMPA during the course of its attempted termination of the franchise

22  relationship.

23      ConocoPhillips' argument that it is not required to present Houtan with a *bona fide* offer to

24  sell the improvements and equipment at the station is unfounded.  ConocoPhillips relies upon the

25  PMPA section 2802(c)(4)(C) which provides that termination of the agreement is reasonable where

26  "the franchisor (if requested in writing by the franchisee not later than 30 days after notification was

27  given pursuant to §2804...)... made a bona fide offer to sell, transfer, or assign [its] interest in any

28  improvements or equipment on the premises."  15 U.S.C. §2802(c)(4)(C).

1    Plaintiff's response to this contention is twofold.  Plaintiff has alleged that it **did** request that

2    ConocoPhillips sell its interest in the property to him within 30 days after ConocoPhillips' loss of

3    right to grant possession as required by the PMPA.  Additionally, sufficient facts are alleged from

4    which, if proven, the Court could find that ConocoPhillips has waived the right to contend and/or

5    should be estopped from contending that it is not required to make a bona fide offer under the PMPA.

6    Plaintiff has alleged that it has "acquired legal possession of the subject station Premises by

7    entering into a long term lease with the landowner, effective immediately upon CONOCOPHILLIPS'

8    loss of the right to grant possession as of November 1, 2007 and has advised ConocoPhillips of doing

9    so on October 18, 2007." (Complaint ¶18).  Plaintiff also alleged that it requested to purchase the

10   improvements and equipment from ConocoPhillips, "[i]n accordance with Plaintiff's statutory rights."

11   (Complaint ¶21).  Plaintiff also alleged that on or about October 22, 2007, ConocoPhillips sent

12   Plaintiff an "Offer to Sell Improvements." (Complaint ¶22).  Plaintiff also alleged that this offer was

13   not "bona fide" under the PMPA, partially because it exceeded and failed to approach fair market

14   value.  (Complaint ¶¶ 23, 35).

15   ConocoPhillips contends that Plaintiff should have requested that the property be sold to it

16   within 30 days after having signed the latest version of the franchise agreement, executed on July 6,

17   2007, which was seventy-four (74) days before the September 18, 2007 Notice of Termination and

18   one hundred and eighteen (118) days before the October 31, 2007 termination date.  However, there

19   is no support for this proposition within the PMPA.

20   The overriding purpose of the PMPA dictates that the time to request the sale of

21   improvements and equipment on the property does not begin until after the franchisee acquires

22   possession of the property, immediately after the franchisor's loss of the right to grant such

23   possession.  Plaintiff acquired possession on November 1, 2007 and its time to request such an offer

24   therefore did not expire until December 1, 2007.

25   The overriding purpose of the PMPA "is to protect the franchisee's reasonable expectation

26   of continuing the franchise relationship. [citations omitted].  Therefore, the Act is to be liberally

27   construed consistent with the goal of protecting franchisees." *Ajir v. Exxon Corp.* (N.D.Cal. 1994)

28   855 F.Supp.294, 297, See, also, *Ellis v. Mobil Oil* (9th Cir. 1992) 969 F.2d 784, 788.  Further, the

PMPA must be liberally construed to effect its overriding remedial purpose of protecting the franchisee from arbitrary or discriminatory acts of the franchisor. *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365, 1372 (2000) (citing, *Secker v. Star Enterprise*, 124 F.3d 1399 (11th Cir. 1997); *May-Som Golf Inc. v. Chevron USA,* 869 F.2d 917 (6th Cir. 1989)).

The PMPA provides for two (2) independent notice requirements. The first is found in 15 U.S.C. §2802(c), providing in relevant part that:

> 2802(c) "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as -
>
>> 2802(c)(4) loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if -
>>
>>> 2802(c)(4)(A) the franchisee was notified in writing, **prior to the commencement of the term of the then existing franchise** -
>>>
>>>> 2802(c)(4)(A)(i) of the duration of the underlying lease, and
>>>>
>>>> 2802(c)(4)(A)(ii) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal);
>>>
>>> 2802(c)(4)(B) during the 90-day period **after** notification was given **pursuant to section [2804]**, the franchisor offers to assign to the franchisee any option to extend the underlying lease or option to purchase the marketing premises that is held by the franchisor... (emphasis added).

This requirement is separate and independent from the second notice requirement contained in Section 2804(a), requiring that notice of termination be at least 90 days prior to the effective date of termination, in relevant part as follows:

> 2804(a) General requirements applicable to the franchisor. Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor **shall furnish notification of such termination** or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship -
>
>> 2804(a)(1) in the manner described in subsection (c) of this section; and
>>
>> 2804(a)(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

The express language of the PMPA §2802(c)(4)(C) provides that in a situation where the franchisor loses the underlying lease, a termination of a franchise relationship is not effective until,

in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately **after the loss of the right of the franchisor to grant possession** (through an assignment [of an option to extend the underlying lease] pursuant to subparagraph (B) or by obtaining a new lease or purchasing the marketing premises from the landowner), the franchisor (if requested in writing by the franchisee not later than 30 days after notification was given pursuant to section 2804 of this title), during the 90 - day period after notification was given pursuant to section 2804 of this title –     (i)     made a bona fide offer to sell, transfer, or assign to the franchisee the interest of the franchisor in any improvements or equipment located on the premises..." 15 U.S.C. §2802(c)(4)(C).

Case law supports Plaintiff's position that Plaintiff need not request the sale of improvements and equipment until 30 days after he "acquires possession of the leased marketing premises effective immediately **after** the loss of the right of the franchisor to grant possession."

In *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365 (2000), Motiva voluntarily terminated the underlying ground lease with the landlord, Kathleen Erskine Leutze, effective November 30, 1999 pursuant to a lease term authorizing cancellation upon 180 days notice. On April 8, 1999, Motiva advised its lessee dealer, Hazara Enterprises, Inc., that it did not intend to renew its franchise agreement effective November 30, 1999. Hazara thereafter attempted to negotiate a new lease directly from the landowner, but was unable to accomplish this until November 20, 1999, when it executed a new lease with the landlord. Shortly after Hazara Enterprises, Inc. regained its right of possession of the marketing premises on December 13, 1999, Hazara asked Motiva to sell the underground fuel lines and storage tanks to it. After an evidentiary hearing, the Magistrate Judge found the underground storage tank system at Hazara's station to be "potentially dangerous" and recommended to grant the injunctive relief. *Id.* at 1367-1369.

The Court held, however, that there was "at least an issue of fact as to the timeliness of Hazara's request to purchase the equipment because, as Hazara points out, it did not obtain a new lease on the marketing premises at the same time it was notified of the termination of the franchise relationship (April of 1999), raising a query as to whether it acquired possession of the premises "effective immediately after the loss of the right of the franchisor to grant possession" within the meaning of section 2802(c)(4)(C) on November 29, 1999, triggering the 30 day notification request provision of the statute at that time." *Id.* at 1373. The Court went on to say, however, that this issue of timeliness was a moot point at this juncture in light of the prior finding regarding the potential dangerousness of the equipment. *Id.* Nevertheless, the *Hazara Enterprises, Inc.* Court recognized

1    that the time to request the sale of improvements and equipment under section 2802(c)(4)(C) did not

2    expire until after Plaintiff obtain the possession of the property, immediately upon the franchisor's

3    loss of the right to grant possession.

4         Such an interpretation is certainly consistent with the overriding purpose of the PMPA.  In

5    a situation such as the one at bar, the PMPA sets forth a requirement that the franchisee make a

6    request to purchase the equipment and improvements within a specified time frame after it gains

7    possession of the property, "effective immediately" after the franchisor's loss of the right to grant

8    same.

9         The situation that exists in the present case is even stronger in Plaintiff's favor than the one

10   that existed in the *Hazara Enterprises, Inc.* case.  In the present case, Plaintiff has sufficiently alleged

11   that it obtained possession of the premises immediately upon ConocoPhillips' loss of its right to grant

12   possession to Plaintiff.

13        Additionally, even if Plaintiff had not made a request for a bona fide offer, ConocoPhillips

14   waived the right to contend that it is not required to extend a bona fide offer and/or should be

15   estopped from so contending. by virtue of having made the offer.  Plaintiff has sufficiently alleged

16   facts from which the Court could find that ConocoPhillips waived the right to argue and should be

17   estopped from arguing that it was not required to extend a bona fide offer under the PMPA.

18        Thus, ConocoPhillips has waived any argument that it was not required to make the offer that

19   it already has made or that such offer need not have complied with the *bona fide* requirement of the

20   PMPA.   After expressly stating that such offer is in compliance with and made pursuant to the

21   PMPA, for ConocoPhillips to now contend that such offer did not need to comply with the PMPA

22   and that it was not required to make it in the first place is a bad faith act in and of itself and

23   disingenuous at best.

24        Moreover, given that ConocoPhillips was bound by Section 2802(c)(4)(B) to make such offer

25   within 90 days after plaintiff's request for sale of equipment and improvements, it would be futile and

26   impractical for Plaintiff to have requested that ConocoPhillips make such offer within 30 days after

27   executing the franchise agreement, before either Plaintiff or ConocoPhillips knew whether

28   ConocoPhillips would eventually secure a renewal of its lease with the third party landlord.  This is

PLAINTIFF'S OPPOSITION TO CONOCOPHILLIPS COMPANY'S MOTION TO DISMISS COMPLAINT

1    exactly why the PMPA requires that such a request for an offer by be made by the franchisee within

2    30 days "after" the franchisor's loss of the right to grant possession, rather than before such loss.

3          In any event, ConocoPhillips has clearly and expressly waived any right to contend that it is

4    not required to make a bona fide offer under the PMPA.  Furthermore, at a minimum, ConocoPhillips

5    should be estopped from making such argument.

6          Contrary to ConocoPhillips' assertions, however, Plaintiff need not prove such allegations at

7    the pleading stage, and therefore, need not allege additional facts or "substantive evidence" in their

8    support.  The Court need only decide whether the facts alleged, if true, would entitle plaintiff to some

9    form of legal remedy. Unless the answer is unequivocally "no," the motion must be denied. *Conley*

10   *v. Gibson* (1957) 355 U.S. 41, 45-46; *De La Cruz v. Tormey* (9th Cir. 1978)  582 F.2d 45, 48; *SEC*

11   *v. Cross Fin'l Services, Inc.* (CD CA 1995)  908 F.Supp. 718, 726-727 (quoting text); *Beliveau v.*

12   *Caras* (CD CA 1995) 873 F.Supp. 1393, 1395 (citing text); *United States v. White* (CD CA 1995)

13   893 F.Supp. 1423, 1428 (citing text).

14                                           **III**

15                                     **CONCLUSION**

16         Consequently, for the foregoing reasons, the instant Motion should be summarily denied.  In

17   the alternative, Plaintiff should be given the opportunity to amend the complaint to conform to any

18   deficiencies in conformance with the Court's findings.

19                                            Respectfully submitted,

20   Dated: January 4, 2008                   BLEAU / FOX, A
                                              Professional Law Corporation
21
                                              By:_____
22                                               Thomas P. Bleau, Esq.
                                                 Gennady L. Lebedev, Esq.
23                                               Attorneys for Plaintiff,
                                                 HOUTAN PETROLEUM, INC.
24

25

26

27

28

-8-

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action;  my business address is **3575 Cahuenga Boulevard West, Suite 580, Los Angeles, California 90068.**

On **January 4, 2008**, I served the documents described as:

**PLAINTIFF, HOUTAN PETROLEUM, INC.'S OPPOSITION TO CONOCOPHILLIPS COMPANY'S MOTION TO DISMISS COMPLAINT**

on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

      Clement Glynn, Esq.
      Adam Friedenberg, Esq.
      Glynn & Finley, LLP
      One Walnut Creek Center
      100 Pringle Avenue, Suite 500
      Walnut Creek, CA 94596
      Facsimile: (925) 945-1975

/X/   BY ELECTRONIC TRANSMISSION as follows: I sent such documents by e-mail to Adam Friedenberg, Esq. at **afriedenberg@glynnfinley.com**.

/X/  BY EXPRESS MAIL Via Overnight Delivery

/X/ As follows: On such date as indicated above, I deposited such envelope with an express overnight delivery service, **California Overnight**, with delivery fees paid or provided for, addressed as indicated above.

Executed on this **4th day of January,  2008**, at Los Angeles, California.

/X/  (Federal)  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
                 Gennady Lebedev