GLYNN & FINLEY, LLP
CLEMENT L. GLYNN, Bar No. 57117
ADAM FRIEDENBERG, Bar No. 205778
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
Telephone: (925) 210-2800
Facsimile: (925) 945-1975
Email: cglynn@glynnfinley.com
       afriedenberg@glynnfinley.com

Attorneys for Defendant
ConocoPhillips Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| HOUTAN PETROLEUM, INC. | Case No. 3:07-cv-5627 |
|---|---|
| Plaintiff, | **CONOCOPHILLIPS COMPANY'S REPLY IN SUPPORT OF ITS APPLICATION FOR WRIT OF POSSESSION AND PRELIMINARY INJUNCTION** |
| vs. | |
| CONOCOPHILLIPS COMPANY, a Texas corporation and DOES 1 through 10, Inclusive | Date:       January 11, 2008<br>Time:       10:00 a.m.<br>Courtroom: 1<br>Before:     Hon. Samuel Conti |
| Defendants. | |

Defendant ConocoPhillips Company ("ConocoPhillips") submits this reply in support of its application for writ of possession and preliminary injunction.

**I.   INTRODUCTION**

Almost two months after this Court denied Houtan Petroleum's request for temporary injunctive relief to remain in possession of ConocoPhillips' equipment and improvements, Houtan Petroleum's refusal to return or pay for ConocoPhillips' property continues. Its Opposition fails to demonstrate any legitimate basis for this intransigence. Instead, Houtan Petroleum renews and restates arguments the Court has already rejected, effectively seeking reconsideration of its earlier application for injunctive relief.

In denying Houtan's request for an injunction, the Court recognized that such provisional relief was unnecessary because ConocoPhillips was willing to rent the property to Houtan

Petroleum for the duration of the litigation. ConocoPhillips made such an interim rental proposal and invited Houtan Petroleum to make a counterproposal. In defiance of the Court's ruling and ConocoPhillips' rights, Houtan Petroleum, has retained ConocoPhillips' property while refusing to pay rent. Houtan Petroleum claims it is under no obligation to agree to any interim rental, and that it can continue to use ConocoPhillips property for as long as it likes. Showing a startling contempt for this Court and its Order, Houtan Petroleum has helped itself to the very relief this Court has already denied.

Enough is enough. Houtan Petroleum's refusal to return ConocoPhillips' property is unjustifiable and unlawful. Under the PMPA, ConocoPhillips is entitled to immediate and summary repossession of all station property upon termination of the franchise agreement. The Court here has already found that the termination was proper. Issuance of a writ of possession and/or preliminary injunction authorizing ConocoPhillips to remove its property is therefore required.

## II.   ARGUMENT

### A.   Plaintiff's Opposition Fails To Demonstrate Any Basis For Denial Of A Writ Of Possession.

Houtan Petroleum's 18-page "Opposition" fails substantively to address ConocoPhillips' request for issuance of a writ of possession -- the primary focus of ConocoPhillips' application. It makes no attempt to demonstrate that Houtan Petroleum has a property right sufficient to warrant denial of the writ. Instead, Houtan Petroleum uses its brief to make a renewed request that the Court preserve the status quo, and order ConocoPhillips to leave its property at the station pending the litigation, a request unaccompanied by new facts or law, and without obtaining leave of Court as required by the Rules. *See* Local Rule 7-9. Houtan Petroleum has failed to show any legitimate basis for denial of a writ of possession, and the writ must therefore issue.

#### 1.   ConocoPhillips has demonstrated the factors required for issuance of a writ of possession.

As shown in ConocoPhillips' moving brief, issuance of a writ of possession is *mandatory*

where the applicant demonstrates: 1) the probable validity of a claim for immediate repossession of property; and 2) the property is being withheld. Cal. Code Civ. Proc. § 512.010; *Ford Motor Credit Co. v. Sebastopol Ford, Inc.*, 2007 WL 1545187, *6 (N.D. Cal. May 27, 2007). That Houtan Petroleum is withholding the property is beyond dispute. Thus, denial of a writ of possession would be appropriate only upon a showing that ConocoPhillips has no right to reclaim its property. *See* Cal. Code Civ. Proc. § 511.090; *Ford Motor Credit*, 2007 WL 1545187 at *6.

Houtan Petroleum has made no such showing. Its right to possess and use ConocoPhillips' equipment and improvements was derived solely from the Franchise Agreement. That agreement has been lawfully terminated as this Court has already found. ConocoPhillips has offered to rent its property to Houtan Petroleum for the duration of the litigation, but Houtan Petroleum has rejected the offer. Instead, in direct contravention of the preliminary injunction ruling, Houtan Petroleum claims it can grant itself the relief the Court denied. Houtan Petroleum has no right to continued possession of ConocoPhillips' fixtures. *See Persaud v. Exxon Corp.*, 867 F.Supp. 128, 141 (E.D.N.Y. 1994). Issuance of a writ of possession authorizing ConocoPhillips to remove its property from the station is therefore required.[1]

### 2. No undertaking should be required.

"If the court finds that the defendant has no interest in the property, the court *shall waive* the requirement of the plaintiff's undertaking. . . ." Cal. Code Civ. Proc. § 515.010(b) (emphasis added). As shown, Houtan Petroleum points to no legitimate property interest, but instead reiterates its once-rejected argument that the mere existence of its PMPA claim justifies interference with ConocoPhillips' legitimate property rights. No authority supports the position. The Court must therefore waive the bond requirement.

---

[1] Houtan Petroleum contends that the requested relief is inappropriate because "ConocoPhillips has not even initiated an action against Houtan Petroleum." (Opp. (Docket No. 36) at 3:27-4:1.) ConocoPhillips' interest, however, is in recovering its property, not multiplying the proceedings (to the extent such can be avoided). To be sure, Houtan Petroleum's wrongful retention of ConocoPhillips' property would support affirmative counterclaims by ConocoPhillips, including for conversion and breach of the parties' Franchise Agreement, which explicitly requires that upon termination Houtan Petroleum surrender the premises to ConocoPhillips. (First Haddad Decl. (Docket No. 32), Ex. A at 33 (¶ 32).)

Houtan Petroleum requests that the writ be conditioned on a bond of not less than $1,000,000, but provides no authority for its argument that the bond amount should be determined by reference to its rent and business overhead -- costs Houtan Petroleum will incur regardless of the Court's ruling on ConocoPhillips' application -- and likewise fails to quantify or show any legal basis for indemnity against any its potential loss of business income. As Houtan Petroleum has no *present* right to use ConocoPhillips' property, regardless of the Court's ultimate decision on the merits it could suffer no recoverable loss from the return of this property to ConocoPhillips.

### 3. The PMPA does not preempt ConocoPhillips' application.

Houtan Petroleum argues that "ConocoPhillips' reliance on California law is unfounded in light of the fact that the PMPA preempts state law in situations arising out of termination or nonrenewal of a petroleum marketing franchise." (Opp. (Docket No. 36) at 16:19-22.) ConocoPhillips readily concedes that the PMPA provides the exclusive remedy for Houtan Petroleum's claim of improper termination. The PMPA, however, does not dissolve a franchisor's legitimate property rights. It simply governs the manner and grounds of franchise termination and nonrenewal.

At any rate, ConocoPhillips' request for a writ of possession does not seek to displace the requirements of the PMPA. Rather, it is the PMPA itself that warrants such relief. Because the Franchise Agreement has properly terminated, Houtan Petroleum has no further right to possess and use ConocoPhillips' property under the PMPA or otherwise, and ConocoPhillips is entitled to its immediate return *under the PMPA. Persaud*, 867 F.Supp at 141. Thus, even were Plaintiff's preemption argument theoretically applicable, it would not prevent the relief ConocoPhillips seeks.

### B. Plaintiff's Opposition Fails To Demonstrate Any Basis For Denial Of The Injunctive Relief ConocoPhillips Requests.

ConocoPhillips' request for preliminary injunctive relief is alternative to its application a writ of possession. As shown, Houtan Petroleum has failed to articulate any basis for denial of such a writ, and its issuance is therefore mandatory. The Court's analysis need go no further.

Nevertheless, Houtan Petroleum has likewise failed to demonstrate any basis for denial of preliminary injunctive relief. Houtan Petroleum engages in a lengthy discussion of the traditional standards for such relief, but ConocoPhillips is not required to establish these elements. Under the PMPA, ConocoPhillips is entitled to summary repossession of its property upon termination of the Franchise Agreement. Even were ConocoPhillips' request subject to the traditional equitable analysis, injunctive relief would be warranted.

### 1. ConocoPhillips is entitled to return of its property without satisfying the traditional elements for a preliminary injunction.

As shown in ConocoPhillips' motion, upon termination of a franchise agreement under the PMPA, the franchisee is required immediately to cease using and return all property owned by the franchisor. This is particularly the case where a franchisee seeks, but is denied, injunctive relief forestalling termination. In such a case, the franchisor is entitled to *automatic repossession* of the station premises. *Persaud*, 867 F. Supp. at 141;[2] *Loomis v. Gulf Oil Corp.*, 567 F.Supp. 591, 597-98 (M.D. Fla. 1983); *Maintanis v. Shell Oil Co.*, Bus. Franchise Guide (CCH) ¶ 8160 (D. Mass. 1984).[3] As the Court in *Maintanis* recognized, "the fact that [Congress] carefully delineated" the uniquely lenient PMPA injunctive standard for a franchisee seeking to stay in possession of a station pending litigation "implies that franchisees not meeting the standard are not so protected." *Id.* Thus, where the Court denies a franchisee's request for

---

[2] Plaintiff argues that *Persaud* is inapplicable because that case involved no dispute over the value of the equipment and improvements at issue. (Opp. (Docket No. 36) at 16:12-18.) However, this Court has already found that such a dispute does not alone warrant interference with ConocoPhillips' property rights, particularly in light of ConocoPhillips' offer to rent its equipment to Houtan Petroleum. (Docket No. 18 at 14:11-12, 16:7-14.) In fact, *Persaud* is directly on point. There, as here, the franchisor sought a preliminary injunction to require return of its property and equipment upon termination of the franchise agreement. *Persaud*, 867 F.Supp at 141. The Court granted such relief, finding: "without a preliminary injunction, Exxon will suffer irreparable harm before the Court can rule on its claim. Plaintiff's continued occupation of Exxon's property and use of its equipment deprives Exxon of the ability to make productive use of this site. In addition, in the absence of a court order, Exxon would face substantial risks through its immediate inability to exercise control and supervision over the gasoline tanks, pumps and related equipment located at the service station. Further, a denial of injunctive relief would expose Exxon to liability resulting from plaintiff's continued use of its equipment and property." *Id.*

[3] A copy of *Maintanis* is attached to the Friedenberg Decl. (Docket No. 33) as Exhibit G.

preliminary injunction, the franchisor is not required to establish traditional injunctive criteria to recover station property.

Houtan Petroleum contends the "purpose of the PMPA" justifies denial of ConocoPhillips' application, arguing in effect that a franchisee is entitled to hold over after termination of a franchise agreement indefinitely, so long as it files an action under the PMPA. To state this proposition is to refute it. The PMPA's purpose is to provide both franchisors and franchisees some degree of certainty in franchise duration and termination procedures, so that both parties may adequately plan for the post-franchise relationship. It does not, however, create an expectation of a perpetual franchise.

As the Court has recognized, if Houtan Petroleum wishes to continue using ConocoPhillips' property pending determination of this dispute, it can enter a reasonable interim rental agreement. Houtan Petroleum has not only rejected ConocoPhillips' good faith rental offer, but has made no counter-offer. Instead, it again asks the Court to order ConocoPhillips to subsidize its operations by requiring ConocoPhillips to leave its property at the station for no compensation and in the absence of any agreement between the parties. There is no legal basis for such a request, as the Court has already found.

### 2. ConocoPhillips is entitled to preliminary injunctive relief even under traditional standards.

#### a. Houtan Petroleum failed to demonstrate any likelihood that it will prevail on the merits.

As the Franchise Agreement has properly terminated, Houtan Petroleum's claim of a continued right to use ConocoPhillips' equipment and improvements is without legal support. The Court has already found that the parties' dispute over the equipment value does not justify an order compelling ConocoPhillips to leave its property at the station. (Docket No. 18 at 14:11-12.)

Even had the Court not already resolved this issue, Houtan Petroleum would still be unable to demonstrate any fair ground for litigation, much less a substantial likelihood of success, on the issue of ConocoPhillips' offer to sell its equipment and improvements. ConocoPhillips was, and is, under no legal obligation to make any offer at all. The express

1  statutory language of the PMPA provides that such an offer is required only where "requested in
2  writing by the franchisee not later than 30 days after notification was given pursuant to section
3  2804 of this title." 15 U.S.C. § 2802(c)(4)(C)(i). The Court has already found that
4  ConocoPhillips provided the notice of termination required by section 2804 in the Franchise
5  Agreement itself (which Houtan Petroleum received in May 2007 and signed in July 2007). As
6  Houtan Petroleum did not request a "bona fide offer" until October 18, 2007, several months
7  later, its request was untimely as a matter of law.
8      Faced with this reality, Houtan Petroleum contends that its 30 days in which to request
9  the "bona fide offer" did not start to run until November 1, 2007 (the date on which it began
10 leasing the premises directly from the landowners). In support of the argument, Houtan
11 Petroleum cites *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC*, 126 F. Supp. 2d 1365 (S.D.
12 Fla. 2000). In *Hazara Enterprises*, however, the Court granted summary judgment in favor of
13 the *franchisor*, finding it was not required to sell its equipment and improvements to the
14 franchisee after termination (for expiration of an underlying ground lease) where the subject
15 equipment was "potentially dangerous." *Id.* at 1372-73. Its comment regarding the timing of the
16 franchisee's request for a bona fide offer was therefore moot and irrelevant, as the Court itself
17 recognized. *Id.* In any event, as shown, the PMPA on its face requires the franchisee make such
18 a demand "not later than 30 days after notification" of termination. 15 U.S.C. §2802(c)(4)(C)(i).
19 Thus even had *Hazara Enterprises* purported to hold that the 30 day period commences upon
20 some other event (such as the first day on which the franchisee acquires possession), it would
21 have been incorrect and unpersuasive.
22     Curiously, Houtan Petroleum cites *Hazara Enterprises* as support for its argument that it
23 was justified in waiting until November 1 to request a bona fide offer, and in fact could not have
24 requested the offer prior to that date. But Houtan Petroleum did not wait until November 1 to
25 request the offer. Rather, it made the request on October 16, and was undoubtedly negotiating
26 with the property owner long before. (Indeed, these negotiations were presumably the cause of
27 the property owner's refusal to respond to ConocoPhillips' efforts to secure an extension of its
28 lease -- an extension that would have obviated the franchise termination of which Houtan

Petroleum now complains.)

Houtan Petroleum could have prudently made a timely request for a bona fide offer. The mere request would not have given rise to any obligation to purchase the equipment and improvements in the event Houtan Petroleum failed to reach a lease agreement with the landowner. A "bona fide offer" is just that -- an offer. Houtan Petroleum's decision not to request the offer within the statutory time frame was grounded not in logic or necessity, but was instead part of the bad-faith, eleventh-hour tactics that have characterized its post-termination conduct. Houtan Petroleum was free to pursue such a risky path, but it must live with the consequences of its tactics.

Finally, Houtan Petroleum argues alternatively that by making such an offer in an attempt to accommodate Houtan Petroleum, ConocoPhillips somehow waived its right to raise Houtan Petroleum's non-compliance with the 30-day deadline. The argument makes no sense, of course, and indeed Houtan Petroleum cites no apposite authority. What does control is the plain language of the PMPA, language which clearly conditions the franchisor's obligation to make a "bona fide offer" on the franchisee's demand within 30 days after receipt of notice of termination.

At any rate, the claimed dispute over the value of ConocoPhillips' equipment and improvements is more rhetorical than real. Houtan Petroleum claims "the Court has already recognized a genuine factual dispute over the value of the equipment and improvements" (Opp. (Docket No. 36) at 7:18-19) but of course this assertion is false. Moreover, Houtan Petroleum has again failed to submit any *competent* evidence of value. The declaration of Andrew Plaine includes no methodology or factual basis for the expressed opinion and thus wholly lacks foundation. It is pure conclusion, and therefore inadmissible.

          **b.**    **The balance of harms favors recognition of ConocoPhillips' right to reclaim its property.**

Houtan Petroleum contends that it would suffer "devastating irreparable harm, as well as a complete loss of income at the station" were ConocoPhillips permitted to recover its equipment and improvements. (Opp. (Docket No. 36) at 15:23-24.) As the property at issue does not

belong to Houtan Petroleum, its return to ConocoPhillips cannot irreparably harm any legitimate right of Houtan Petroleum. Houtan Petroleum has no such right. To require Houtan Petroleum to return ConocoPhillips' wrongfully withheld property would simply require Houtan Petroleum to comply with the terms of an agreement it freely entered. Houtan Petroleum may have to shut down one of its numerous California service stations while it installs new equipment, but that is a risk the parties bargained for long ago. That Houtan Petroleum regrets its past business judgment does not justify its request that the Court ignore ConocoPhillips' property rights.

In any event, such temporary economic loss -- which Houtan Petroleum does not even attempt to quantify or explain -- is by definition not irreparable, as Houtan Petroleum itself elsewhere admits. (Opp. (Docket No. 36) at 15:2-3 (non-payment of rent "does not constitute irreparable harm") (emphasis removed).) Houtan Petroleum is not an individual franchisee, left with no other source of income, but rather a sophisticated corporation operating at least eight other service stations in California. (First Haddad Decl. (Docket No. 32), ¶ 21.) Moreover, ConocoPhillips has offered to enter a fuel supply agreement with Houtan Petroleum which would give Houtan Petroleum use of ConocoPhillips' equipment and improvements for 10 years under the ConocoPhillips brand. (Friedenberg Decl. (Docket No. 33), Ex. B.) Houtan Petroleum rejected this proposal, preferring instead to disengage from ConocoPhillips. Now it asks the Court to require ConocoPhillips to subsidize its continued independent operations, but neither law nor logic supports such a result.

          **c.**      **The public interest favors injunctive relief.**

Houtan Petroleum apparently argues that the public interest requires that the Court endorse its continued conversion of ConocoPhillips' property because uninterrupted operation of the station is necessary to ensure "a maximum level of competition." Of course, the argument is pure speculation; Houtan Petroleum submits no evidence for (or even any coherent explanation of) the proposition that maximal economic competition requires uninterrupted operation of this particular station. In reality, the only interest served by Houtan Petroleum's continued misappropriation of ConocoPhillips' property is the personal financial interest of Houtan Petroleum.

1    The true public interest compels restoration of ConocoPhillips' property rights for several
2    reasons. As the Court has already recognized, the current situation, in which ConocoPhillips has
3    no ability to supervise station operations and practices, creates considerable environmental risks.
4    *See Persaud*, 867 F. Supp. at 141. Although Houtan Petroleum suggests this concern is resolved
5    by its insurance coverage, the policy of insurance Houtan Petroleum submits provides coverage
6    of only $1,000,000 per incident, an amount far short of what could be required to address
7    potential environmental contamination and remediation.

### III. CONCLUSION

For all the foregoing reasons, ConocoPhillips submits the Court should grant its application, issue a writ of possession or, alternatively, a preliminary injunction directing Houtan Petroleum to permit ConocoPhillips to remove its property without further delay.

Dated: January 8, 2008

GLYNN & FINLEY, LLP
CLEMENT L. GLYNN
ADAM FRIEDENBERG
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA  94596

By _____
Attorneys for Defendant
ConocoPhillips Company