# EXHIBIT A

SERVICE STATION SITE LEASE

THIS LEASE, made this 13th day of August, 1965, by and between MT. VIEW SHOPPING CENTER, a limited partnership, Lessor and UNION OIL COMPANY OF CALIFORNIA, a corporation, Lessee;

WITNESSETH:

1. Lessor does hereby lease to Lessee all that certain real property situate in the City of Mountain View, County of Santa Clara, State of California, described as follows:

BEGINNING at the Westernmost corner of that certain 0.18 acre tract of land described in the Deed to the State of California, recorded June 6, 1930 in Book 523 of Official Records, page 172, Santa Clara County Records in the Southeasterly line of Grant Road (60 feet in width); thence from said point of beginning South 31° 59' West along said Southeasterly line of Grant Road, 133.01 feet; thence South 61° 34' 10" East 170.00 feet; thence North 31° 59' East 180.00 feet to the Southwesterly line of said 0.18 acre tract of land, also being the Southwesterly line of El Camino Real (as exists 100.00 feet in width); thence North 61° 34' 10" West along said Southwesterly line of El Camino Real 123.01 feet; thence Westerly along a cruve to the left with a radius of 50.00 feet, tangent to the preceding course, with a central angle of 86° 26' 50", and an arc distance of 75.44 feet to the point of beginning.

EXCEPTING THEREFROM that certain tract of land described in the Deed from Bank of America National Trust and Savings Association, and Victor H. Owen, Jr., as co-trustees under the Will of Victor H. Owen, Sr., deceased, to the State of California, dated January 26, 1962, recorded April 26, 1962 in Book 5552 Official Records, page 336, Santa Clara County Records, described as follows:

A portion of that 40.980 acre tract of land, which tract is shown upon that certain Map entitled, "Record of Survey, Lands of Victor H. Owen Jr., et al, Ptn. Sec. 27, T. 6 S., R. 1 W., M.D.B. & M., Santa Clara County, Calif.", which Map was filed for record in the office of the Recorder of the County of Santa Clara on August 13, 1959 in Book 110 of Maps, at page 41, more particularly described as follows:

Beginning for reference on the Southeasterly line of Grant Road at the most Westerly corner of said tract; thence along the Northwesterly line of said tract North 32° 54' 10" East 965.24 feet and along a tangent curve to the right with a radius of 50.00 feet, through an angle of 2° 00' 31", an arc length of 1.75 feet to the true point of commencement; thence from a tangent that bears North 57° 54' 44" East along a curve to the right, with a radius of 75.00 feet, through an angle of 50° 18' 39", an arc length of 65.86 feet to a point of compound curvature; thence from a tangent that bears South 71° 46' 37" East along a curve to the right with a radius of 392.00 feet, through an angle of 11° 09' 59", an arc length of 76.40 feet to the Northeasterly line of said tract; thence along last said



BEGINNING at the Westernmost corner of that certain 0.18 acre tract of land described in the Deed to the State of California, recorded June 6, 1930 in Book 523 of Official Records, page 172, Santa Clara County Records in the Southeasterly line of Grant Road (60 feet in width); thence from said point of beginning, South 31° 59' West along said Southeasterly line of Grant Road, 133.01 feet; thence South 61° 34' 10" East 170.00 feet; thence North 31° 59' East 180.00 feet to the Southwesterly line of said 0.18 acre tract of land, also being the Southwesterly line of El Camino Real (as exists 100.00 feet in width); thence North 61° 34' 10" West along said Southwesterly line of El Camino Real 123.01 feet; thence Westerly along a curve to the left with a radius of 50.00 feet, tangent to the preceding course, with a central angle of 86° 26' 50" and an arc distance of 75.44 feet to the point of beginning.

Together with non-exclusive easements for the passage of persons and vehicles across the following described parcels:

Easement A: Commencing at a point on a prolongation of the Northwesterly line of the above described real property that is S 31° 59' W 25 feet from the true point of beginning of said property, thence N 31° 59' E 25 feet; thence S 61° 34' 10" E 45 feet; thence in a straight line Westerly to the point of commencement.

Easement B: Commencing at a point on a prolongation of the Northeasterly line of the above described real property that is S 61° 34' 10" E 25 feet from the Southeasterly corner of said property, thence N 61° 34' 10" W 25 feet; thence S 31° 59' W 85 feet; thence in a straight line Northeasterly to the point of commencement.

2. TERM: The term of this lease shall commence the 1st day of March, 1966, and end the 28th day of February, 1991, which term shall be extended as provided in paragraph 2-a of this lease. If Lessee shall hold over after the expiration of the term or any extension thereof with Lessor's

express or implied consent, it shall be on a month to month tenancy in accordance with the terms hereof.

2-a. It is hereby mutually agreed that the term set forth in Paragraph 2 of this lease shall be extended for the period of time equal to that elapsing between commencement date specified in said Paragraph 2 and the first day of the calendar month following the date the service station to be constructed on demised real property is completed upon said property and Lessee first offers gasoline for sale therefrom, but in no event shall the term as set forth in said Paragraph 2 of this lease be extended under the provisions of this Paragraph 2-a beyond the 28th day of February, 1993.

3. RENTAL: Lessee agrees to pay Lessor each calendar month as rental for said premises, commencing on the date gasoline is first sold from the service station to be constructed on said premises, a sum equivalent to TWO CENTS ($.02) per gallon for each gallon of Lessee's gasoline delivered at or upon said premises, or, at Lessee's option, dispensed therefrom during such month within the term of this lease, said rental to be paid on or before the 20th day of the following month; provided, however, that in no event shall such rental as so computed for any one calendar month of the term of this lease following the date gasoline is first sold on demised premises after completion of said service station, be less than ONE THOUSAND FIVE HUNDRED DOLLARS ($1,500.00), except for the calendar month within which gasoline is first sold from said completed service station and the calendar month within which this lease expires or terminates, for which the minimum rental shall be prorated respectively in the same ratio that the number of days of Lessee's operation of said completed service station during such month bears to the full calendar month.

4. OPTION TO PURCHASE: Lessee shall have the preferential right to purchase said property during the term of this lease or any extension thereof and Lessor agrees not to sell all or any portion of said property without first giving Lessee written notice of each proposed sale, stating

-2-

express or implied consent, it shall be on a month to month tenancy in accordance with the terms hereof.

2-a. It is hereby mutually agreed that the term set forth in Paragraph 2 of this lease shall be extended for the period of time equal to that elapsing between commencement date specified in said Paragraph 2 and the first day of the calendar month following the date the service station to be constructed on demised real property is completed upon said property and Lessee first offers gasoline for sale therefrom, but in no event shall the term as set forth in said Paragraph 2 of this lease be extended under the provisions of this Paragraph 2-a beyond the 28th day of February, 1993.

3. RENTAL: Lessee agrees to pay Lessor each calendar month as rental for said premises, commencing on the date gasoline is first sold from the service station to be constructed on said premises, a sum equivalent to TWO CENTS ($.02) per gallon for each gallon of Lessee's gasoline delivered at or upon said premises, or, at Lessee's option, dispensed therefrom during such month within the term of this lease, said rental to be paid on or before the 20th day of the following month; provided, however, that in no event shall such rental as so computed for any one calendar month of the term of this lease following the date gasoline is first sold on demised premises after completion of said service station, be less than ONE THOUSAND FIVE HUNDRED DOLLARS ($1,500.00), except for the calendar month within which gasoline is first sold from said completed service station and the calendar month within which this lease expires or terminates, for which the minimum rental shall be prorated respectively in the same ratio that the number of days of Lessee's operation of said completed service station during such month bears to the full calendar month.

4. OPTION TO PURCHASE: Lessee shall have the preferential right to purchase said property during the term of this lease or any extension thereof and Lessor agrees not to sell all or any portion of said property

therein the price and other terms and conditions thereof. Upon any such notice Lessee shall have the preferential right to purchase said property at the price and upon the terms and conditions set forth in such notice and Lessee shall have thirty (30) days after receipt of such notice within which to notify Lessor that Lessee elects to exercise such right and purchase said property. In the event Lessee exercises its right to purchase said property, Lessor agrees to promptly convey said property to Lessee free and clear of all liens and encumbrances by good and sufficient deed, and concurrently therewith Lessee shall pay Lessor the purchase price upon the terms and conditions set forth in such notice. Taxes and rentals shall be prorated as of the date title to said property is vested in Lessee. If Lessee does not exercise its preferential right to purchase said property in any such case, this lease shall remain in full force and effect and any sale by Lessor to a third party shall be made subject to all the terms and conditions of this lease.

   5. TAXES: Lessee shall pay all taxes on all personal property and improvements of Lessee, and shall pay all ad valorem taxes on said land and improvements and personal property, if any, of Lessor on said land during the term of this lease; provided, however, that said ad valorem taxes on said land and said improvements and personal property, if any, of Lessor for the fiscal years within which the term of this lease commences or expires or terminates, shall be prorated respectively as of the date the term of this lease commences or expires or terminates, as the case may be. Lessee shall have the right to contest in good faith any such taxes and, in such event, shall indemnify and hold harmless Lessor from any cost, expense or penalties in connection therewith. Lessor shall authorize and instruct the assessing authority to forward to Lessee all tax bills on said land and improvements and personal property, if any. If Lessor shall pay any taxes agreed to be paid by Lessee, then upon presentation of a receipted

6. POSSESSION: Said premises shall be used for a motor vehicle service station and for such other related uses as Lessee, at its option, may determine. Lessee shall have the right to place and maintain thereon all structures, improvements and equipment which Lessee may desire for such purposes and to remove the same and any structures, improvements or equipment heretofore or hereafter placed upon said premises by Lessee or which have been purchased or owned by Lessee, at any time during the term hereof or within ten (10) days after termination of this lease, or any extension or renewal thereof. Lessee shall also have the right to remove trees and other vegetation from and to alter said premises and the sidewalks and curbing about the same.

Lessee shall not use said premises for the storage, rental or sale of trailers or used cars; nor for performing major overhaul or repair work on automobile engines; nor shall used tires be stored or displayed for sale in the yard area outside the service station building.

7. OPERATION: Lessee shall conduct its business on said premises in compliance with all applicable laws, ordinances and regulations of governmental authorities.

8. CANCELLATION: In the event the sale of gasoline or other petroleum products be prohibited by, or the use of the premises for the conduct or operation of a service station is prevented by any law, ordinance, rule or regulation of any state or local governmental authority having jurisdiction over the premises, or if access to the demised premises, in whole or in part, be cut off, other than temporarily, resulting in a substantial interference with the ingress and egress to and from the demised premises, then Lessee shall have the right at its option, to terminate this lease at any time upon sixty (60) days' prior written notice to Lessor without any liability to Lessor therefor. No change in traffic regulations or patterns and no installation of stop signs,

police purposes shall be deemed to affect access to premises within the meaning of this Clause 8.

9. CONDEMNATION: In the event the leased premises or any part thereof shall be taken for public purposes by condemnation as a result of any action or proceeding in eminent domain or shall be transferred in lieu of condemnation to any authority entitled to exercise the power of eminent domain, the interests of Lessor and Lessee in the award or consideration for such transfer and the effect of the taking or transfer upon this lease shall be as follows:

(a) In the event of a taking or transfer of only a part of the leased premises, leaving the remainder of said premises in such location and in such form, shape and size as to be used effectively and practicably by Lessee for the same use and purposes as prior to such taking or transfer, this lease shall terminate and end as to the portion of the premises so taken or transferred as of the date title to such portion vests in the condemning authority but shall continue in full force and effect as to the portion of the leased premises not so taken or transferred. The minimum rental provided in Clause 3 hereof shall be reduced in the same proportion that the amount of leased premises so taken or transferred bears to the entire leased premises. In such event, Lessee shall not be entitled to any award or compensation except for the taking of buildings, fixtures, equipment and improvements owned by Lessee or by reason of the relocation of the same. ~~If, in order for Lessee to use said premises, following any such taking or transfer, any building improvement, facility or equipment must be, or in the judgment of Lessee should be relocated, Lessor agrees to relocate the same without cost or expense to Lessee.~~ At the time of executing this lease, Lessee understands that the City of

widening of Grant Road and a strip of land 10 feet in width for the widening of El Camino Real, and Lessee agrees that the dedication of those two strips of land for street purposes shall not result in any reduction in the minimum rental as provided in Clause 3 hereof.

(b) In the event the entire leased premises are taken or so transferred, or in the event of a taking or transfer of only a part of the leased premises, leaving the remainder of said premises in such location or in such form, shape or reduced size as to render the same not effectively and practicably usable by Lessee for the same use and purposes as prior to such taking or transfer, this lease and all right, title and interest thereunder shall cease on the date title to said premises or the portion thereof so taken or transferred vests in the condemning authority. In such event, Lessee shall not be entitled to any award or compensation except for the taking of buildings, fixtures, equipment and improvements owned by Lessee or by reason of the relocation of the same.

10. CONSTRUCTION:

(a) Lessor agrees to remove all structures existing on said premises within six (6) months after the commencement of the term of this lease; and at its sole cost and expense to install all curbs, gutters and sidewalks abutting said demised premises, do all necessary street grading and paving, install all utilities up to the property line of, and rough grade, demised premises. In the event Lessor fails to perform said work within a period not to exceed six (6) months after commencement of the term of this lease, Lessee may perform said work for Lessor, Lessor hereby authorizing Lessee to perform such work for the account of Lessor. If Lessee performs said work for Lessor, Lessor agrees to reimburse Lessee for the

thirty (30) days after receipt of a statement from Lessee setting forth the actual cost of completing said work. If Lessor fails to reimburse Lessee as provided herein, Lessee shall have the right, and Lessor hereby authorizes Lessee to withhold minimum rental as set forth in Clause 3 hereof and apply the same to reimburse itself for the actual cost of performing said work. Within ninety (90) days after completion thereof, Lessee shall provide Lessor with an itemized statement setting forth the actual cost of completing said work.

(b) Subject ot its ability to secure all necessary permits, Lessee agrees to commence construction of its service station on the leased premises within ninety (90) days after Lessor delivers possession of said property to Lessee cleared of all structures.

(c) Lessee agrees not to erect any building or structure within the 20' building setback area as indicated on Exhibit C attached.

(d) Lessee and Lessor agree not to erect, place or cause to be erected any fence, bumper, obstruction or dividing barrier of any kind on or near the property lines between the property demised herein and Lessor's adjacent property, except by mutual consent of Lessee and Lessor.

11. ASSIGNMENT AND SUBLETTING: Lessee shall have the privilege of subletting the entire demised premises, or any part thereof. Lessee may not assign any or all of its rights under this lease without the written consent of Lessor first had and obtained, which consent shall not be unreasonably withheld. In the event of any subletting or assigning by Lessee, Lessee shall not be released thereby from any of its rental or other liabilities hereunder, and any such sublease or assignment shall be subject to each and all of the terms and provisions of this lease.

12. EXCLUSIVE RIGHT TO SELL GASOLINE: As material consideration

itself and its successors and assigns, to Lessee and Lessee's successors and assigns, for the benefit of the demised premises that no building, structure or other facilities for use as a motor vehicle service station shall be constructed, maintained or operated upon the land shown heavily outlined on Exhibit B attached hereto and made a part hereof, and more particularly described in Exhibit C also attached hereto and made a part hereof, and that no motor vehicle service station business shall be conducted upon and no gasoline or other petroleum products shall be dispensed from said land described in said exhibits during the term of this lease and any extensions thereof. The covenants and restrictions set forth herein shall be appurtenant to and run with said land described in said exhibits and the demised premises and shall apply to and bind said land described in said exhibits and shall benefit the demised premises and shall apply to and bind Lessor and its successors and assigns and shall benefit and inure to the benefit of Lessee and its successors and assigns.

As a further material consideration to Lessee for the execution of this lease Lessor agrees that in the event Lessor acquires the ownership of either or both of Parcels 2 and 3 as shown on Exhibit D attached hereto and made a part hereof and described on Exhibit B, or should Lessor otherwise control the use of said Parcels 2 and 3, the restrictions in the preceding paragraph shall apply also to said Parcels 2 and 3. Lessor further agrees that if Lessor acquires ownership of all or any part of said Parcels 2 and 3 during the term of this lease and should re-sell that land Lessor shall record a restriction against said land prohibiting its use for the sale of gasoline to the public until after the expiration of the term of this lease.

13. NOTICE: Any notice or notices required of or given by either Lessor or Lessee shall be in writing delivered personally from one to the other or by registered mail, return receipt requested, and delivered or addressed to Lessor at 231 East Millbrae Avenue, Millbrae, California, or

other address as either party shall designate from time to time by the means herein prescribed for the giving of notice.

All of the terms and conditions hereof shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, successors or assigns of the respective parties hereto.

This lease shall not be binding upon Lessee until duly executed by it and delivered to Lessor.

IN WITNESS WHEREOF, the parties hereto have executed this instrument in quintuplicate as of the day and year first above written.

MOUNTAIN VIEW SHOPPING CENTER,
a limited partnership
By - Mountain View Properties, Inc., General Partner

By _____
    President              (LESSOR)

By _____
    Secretary              (LESSOR)

UNION OIL COMPANY OF CALIFORNIA

By _____
    Vice President - Marketing
                           (LESSEE)

By _____
    Assistant Secretary    (LESSEE)

F. B. Schlageter, Vice-President and Assistant Secretary of Mountain View Properties, Inc., General Partner of Mountain View Shopping Center, a Limited Partnership, hereby acknowledges delivery and receipt of document entitled "Service Station Site Lease" on September 24, 1965, at the offices of the Corporation located at 231 East Millbrae Avenue, Millbrae, California.

_____
F. B. Schlageter
Vice-President and Assistant Secretary

Witness: _____

EXHIBIT "C" "A"

Hand-drawn plat map showing parcel bounded by Grant Road (north) and El Camino Real (east). Labeled features:
- Grant Road, 60' width
- El Camino Real, 100' width
- Easement "A": 25', 40', hatched triangle at northwest corner
- North boundary: S 31°59' W, 133.01'
- Curve at NE corner: R=50, Δ=86°26'50", L=75.44'
- East boundary: N 61°34'10" W, 123.01'
- West boundary: S 61°34'10" E, 170.00'
- South boundary: N 31°59' E, 130.00', 85', 25'
- Building Setback Line: 20'
- Easement "B": 25', hatched area at southeast

EXHIBIT "A" B

GRANT ROAD

N 31°59' E  232.23'   133.01'

S 61°34'10" E  170.00'

R=50'  75.44'

123.01'

160.00'  N 31°59' E

N 58°18' W  896.00'

PARCEL 1

EL CAMINO REAL

S 61°34'10" E  722.71'

100'

A hand-annotated parcel map showing:
- GRANT ROAD along the top
- EL CAMINO REAL along the right side
- PARCEL 2 (13.939 AC) in upper left
- PARCEL 1 (DESCRIBED ON EX. B) (8.16 AC) in upper right, with N 58° 01' W / 894.5'
- A 0.835 AC parcel at the top between the two larger parcels
- PARCEL 3 below, bounded by S 31° 59' W 463.43'
- 17.99 AC area to the left of Parcel 3
- S.C. FLOOD EASEMENT and creek along the lower diagonal
- Book references: BOOK 157, BOOK 163, BOOK 200
- Stevens Creek labeled along the diagonal waterway

EXHIBIT C 

PARCEL 1:

Land situate in the City of Mountain View, County of Santa Clara, State of California, described as follows:

BEGINNING at the Westernmost corner of that certain 0.18 acre tract of land described in the Deed to the State of California, recorded June 6, 1930 in Book 523 of Official Records, page 172, Santa Clara County Records in the Southeasterly line of Grant Road (60 feet in width); thence from said point of beginning, South 31° 59' West along said Southeasterly line of Grant Road, 133.01 feet to the true point of beginning of this description; thence from said true point of beginning South 61° 34' 10" East 170.00 feet; thence North 31° 59' East 180.00 feet to the Southwesterly line of said 0.18 acre tract of land, also being the Southwesterly line of El Camino Real (as exists 100.00 feet in width); thence South 61° 34' 10" East along said Southwesterly line of El Camino Real 727.71 feet to the most Northerly corner of that certain 18.045 acre tract of land described in that certain Owner's Notice of Non-responsibility, recorded May 24, 1962 in Book 5587 of Official Records at Page 530, Santa Clara County Records; thence South 31° 59' West along the Northwesterly line of said 18.045 acre tract of land 463.43 feet to the most Easterly corner of that certain 14.003 acre tract of land described in that certain Lease recorded January 25, 1950 in Book 1915 of Official Records, Page 6, Santa Clara County Records; thence North 58° 18' West along the Northeasterly line of said 14.003 acre tract of land 896 feet to the point of intersection thereof with the Southeasterly line of said Grant Road; thence North 31° 59' East along the Southeasterly line of Grant Road 232.23 feet to the true point of beginning.

PARCEL 2 on Exhibit D:

Assessors Parcels 1 and 13, in Book 195 at Page 38 of maps in the office of the County Assessor, Santa Clara County, California.

PARCEL 3 on Exhibit D:

The most northerly 463.43 feet of Assessors Parcel 17, in Book 195 at Page 38 of maps in the office of the County Assessor, Santa Clara County, California.

STATE OF CALIFORNIA    )
                       ) ss
COUNTY OF LOS ANGELES  )

On this 22nd day of SEPTEMBER in the year A. D. 19 65 before me CAROLYN CANTRALL, a Notary Public in and for said County and State, residing therein and duly commissioned and sworn, personally appeared C. E. RATHBONE known to me to be the VICE PRESIDENT, and E. W. CAIRNS known to me to be the ASSISTANT SECRETARY of UNION OIL COMPANY OF CALIFORNIA the corporation that executed the within instrument, and known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

[SEAL: CAROLYN CANTRALL NOTARY PUBLIC CALIFORNIA PRINCIPAL OFFICE IN LOS ANGELES COUNTY]

Notary Public in and for said County and State

My Commission expires    APRIL 30, 1969

---

STATE OF CALIFORNIA,
County of San Mateo } ss.

On this 22nd day of September in the year one thousand nine hundred and sixty five before me, Marlene A. Gallwitz, a Notary Public, State of California, duly commissioned and sworn, personally appeared William D. Baker and Howard C. Alphson known to me to be the President and Secretary, Respectively, of the corporation described in and that executed the within instrument, and also known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal in the said County of San Mateo the day and year in this certificate first above written.

# EXHIBIT B