Thomas P. Bleau, Esq., SBN 152945
Gennady L. Lebedev, Esq., SBN 179945
BLEAU / FOX, A P.L.C.
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, California 90068
Telephone   : (323) 874-8613
Facsimile   : (323) 874-1234
e-mail:   bleaushark@aol.com
e-mail:   glebedev@bleaufox.com

Attorneys for Plaintiff,
HOUTAN PETROLEUM, INC.

# UNITED STATES DISTRICT COURT IN AND FOR

# THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUTAN PETROLEUM, INC. <br><br> Plaintiff, <br><br> vs. <br><br> CONOCOPHILLIPS COMPANY, a Texas Corporation and DOES 1 through 10, Inclusive <br><br> Defendants. | CASE NO. 3:07-CV-05627-SC <br><br> **PLAINTIFF, HOUTAN PETROLEUM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE COUNTERCLAIMS OF CONOCOPHILLIPS COMPANY** <br><br> Date:      February 6, 2008 <br> Time:      10:00 a.m. <br> Courtroom: 1 <br> Before:    Hon. Samuel Conti |

Plaintiff, Houtan Petroleum, Inc. ("Houtan Petroleum"), submits this memorandum of points and authorities in support of its motion to dismiss the Counterclaims of ConocoPhillips Company ("ConocoPhillips").

## I.

## INTRODUCTION

On November 5, 2007, Houtan Petroleum filed its Complaint against ConocoPhillips, alleging violations of the Petroleum Marketing Practices Act ("PMPA") (15 U.S.C. §2801, et seq.) arising out of ConocoPhillips' termination of its franchise relationship with Houtan Petroleum. On January 18,

2008, Defendant ConocoPhillips filed its Answer to Houtan Petroleum's Complaint in this case, along with Counterclaims consisting of three counts: (1) Breach of Contract, (2) Conversion and (3) Unjust Enrichment.

These counterclaims must be dismissed because they arise out of California law that is preempted by the Petroleum Marketing Practices Act which preempts all state law claims that are inconsistent with the terms of the Act. 15 U.S.C. §2806(a); *Millet v. Union Oil Company of California*, 24 F.3d 10, 12-13 (9th Cir.1994).

ConocoPhillips' counterclaims assert that the Court has jurisdiction pursuant to 28 U.S.C. §1367 because "ConocoPhillips' counterclaims are so closely related to the claims asserted by Houtan Petroleum that they form the same case or controversy." (Counterclaims, ¶62). ConocoPhillips also alleges that "[p]rior to the expiration of the Ground Lease, Houtan Petroleum operated the Station as a ConocoPhillips franchisee under a succession of franchise agreements." (Counterclaims, ¶69 & Exh. B). ConocoPhillips also alleges that it terminated its franchise agreement with Houtan Petroleum as of October 31, 2007. (Counterclaims, ¶75). ConocoPhillips offered to sell its "structures, improvements and equipment" to Houtan Petroleum for $340,000.00 after Houtan Petroleum requested such an offer pursuant to the PMPA. (Counterclaims, ¶77).

ConocoPhillips' First Claim for Relief alleges that Houtan Petroleum "has breached the Franchise Agreement by, "*inter alia*, failing to case using the Union 76 Marks on October 31, 2007, as required, and failing to surrender the Station Property to ConocoPhillips so that ConocoPhillips could remove its structures, equipment and improvements from Station Property." (Counterclaims, ¶87). However, as will be addressed below, the franchise agreement cannot supercede or excuse the ConocoPhillips' obligations mandated by Congress under the PMPA.

ConocoPhillips Second Claim for Relief alleges that Houtan Petroleum's conduct of "refusing to allow ConocoPhillips to remove its structures, improvements and equipment from the Station Property, constitutes conversion..." (Counterclaims, ¶91). Once again, however, a claim for conversion under California law is preempted by Houtan Petroleum's right to a *bona fide* offer from ConocoPhillips for the equipment and improvements under the PMPA.

Finally, ConocoPhillips' Third Claim for Relief for unjust enrichment is likewise preempted

1  by the PMPA because Houtan Petroleum's obligations to allow removal of the equipment and
2  improvements are governed by the PMPA, just as ConocoPhillips' rights with regard to such
3  equipment and improvements.
4      In summary, as will be addressed below, all of the rights and obligations between Houtan
5  Petroleum and ConocoPhillips that are raised in ConocoPhillips' counterclaims arise out of the
6  parties' preexisting relationship as franchisee and franchisor and the termination thereof.
7  Consequently, any dispute with regard to such rights and obligations is governed by the PMPA, which
8  preempts all conflicting California state law.
9      As such, ConocoPhillips' counterclaims must be summarily dismissed as a matter of law.

## II.

## ARGUMENT

**A.  Standard Under Rule 12(b)(6).**

A Rule 12(b)(6) dismissal is proper where there is a "failure to state a claim upon which relief can be granted." If there is no "cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police dept.* 901 F.2d 696, 699 (9th Cir. 1990).

The Court need not assume that a counter-claimant can prove facts different from those it has alleged. *Associated Gen. Contractor of California v. California State Council of Carpenters* 459 U.S. 519, 526 (1983). Also, the Court need not accept as true, conclusionary allegations, legal characterizations, unreasonable inferences or unwarranted deductions of fact. *In re Delorean Motor Co.* 991 F.2d 1236 (6th Cir. 1993); *Beliveau v. Caras* 873 F. Supp. 1393, 1395-1396 (1995); *Transphase Systems, Inc. v. Southern California Edison Co.* 839 F. Sup. 711, 718 (1993).

**B.  ConocoPhillips' Claims Under California Law Should Be Dismissed As Preempted By The PMPA.**

The claims and issues in this case must be decided in the context of the overriding purpose of the PMPA. In *Doebereiner v. Sohio Oil Company*, 880 F.2d 329, 331-332 (11 Cir. 1989), the Court set forth the purpose behind the PMPA:

> The legislative history of the PMPA reveals that the Act was designed to protect franchisees from arbitrary or discriminatory termination or non-renewal. (Citation omitted.) Congress sought to equalize

> the obvious disparity in bargaining power between major oil companies and service station operators. (Citations omitted.) ... To attain these ... goals, Congress specifically set forth the permissible grounds for termination or non-renewal of franchise relationships, and bestowed on federal courts jurisdiction to remedy violations of the Act. *Id.*

This case is precisely the type of case which Congress had in mind when it enacted the PMPA. The PMPA is intended to protect gas station franchise owners from arbitrary and discriminatory termination of their franchises with large oil corporations and gasoline distributors, and to remedy the disparity in bargaining power between the parties to gasoline franchise contracts. *DuFresne's Auto Service, Inc. v. Shell Oil Company*, 992 F.2d 920, 925 (9th Cir. 1993) and *Mobil Oil Corporation v. Virginia Gasoline Marketers and Automotive Repair Association*, 34 F.3d 220, 223 (4th Cir. 1994).

The PMPA provides in relevant part as follows:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, **no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination** (or the furnishing of notification with respect thereto) of any such franchise or the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter. 15 U.S.C. §2806(a)(1) (emphasis added).

The primary purpose of the PMPA is to govern the termination and nonrenewal of franchise relationships by franchise owners. *DuFresne's Auto Serve., Inc. v. Shell Oil Co.,* 992 F.2d 920 (9th Cir. 1993). "In enacting the PMPA, Congress attempted to provide national uniformity of petroleum franchise termination law." *Unocal Corp. v. Kaabipour*, 177 F.3d 755, 768 (9th Cir. 1999) (internal quotations and citations omitted). That uniformity would be frustrated if the PMPA did not preempt all inconsistent state law. *Id.* Section 2806(a) of the PMPA provides for preemption of all state law with respect to termination or nonrenewal of a petroleum franchise which is inconsistent with the PMPA. *Id.*; 15 U.S.C. §2806(a); *Millet v. Union Oil Company of California*, 24 F.3d 10, 12-13 (9th Cir.1994). Thus, to the extent that application of California law to each of ConocoPhillips' counterclaims would frustrate the federal objective of uniformity related to petroleum franchise termination law, the state will be preempted by the PMPA. *Humbolt Oil Co. v. Exxon Co., U.S.A.*, 823 F.2d 373, 374-75 (9th Cir. 1987), citing *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158 (1978).

Additionally, California courts have further held that the preemption under the PMPA extends to California "common law rights and remedies." *Mobil Oil Corp. v. Superior Court,* 189 Cal.App.3d 485, 489 (1978). Thus, ConocoPhillips conversion and unjust enrichment claims are preempted to the extent they would allow ConocoPhillips to circumvent PMPA obligations to make a *bona fide* offer to Houtan Petroleum.

Moreover, to maintain a conversion action the complaining party "must show that she was entitled to immediate possession at the time of conversion." *Messerall v. Fulwider*, 199 Cal.App.3d 1324, 1329 (3rd Dist. 1988) (quoting, *Bastanchury v. Times-Mirror Co.* (1945) 68 Cal.App.2d 217, 236).

The express language of the PMPA §2802(c)(4)(C) provides that in a situation where the franchisor loses the underlying lease, a termination of a franchise relationship is not effective until,

> in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately **after the loss of the right of the franchisor to grant possession** (through an assignment [of an option to extend the underlying lease] pursuant to subparagraph (B) or by obtaining a new lease or purchasing the marketing premises from the landowner), the franchisor (if requested in writing by the franchisee not later than 30 days after notification was given pursuant to section 2804 of this title), during the 90 - day period after notification was given pursuant to section 2804 of this title –    (i)   **made a bona fide offer to sell, transfer, or assign to the franchisee the interest of the franchisor in any improvements or equipment located on the premises**..." 15 U.S.C. §2802(c)(4)(C) (emphasis added).

Consequently, Houtan has a right to purchase ConocoPhillips' equipment and improvements pursuant to a *bona fide* offer that approaches fair market value.

Whether a bona fide offer has been made "is measured by an objective market standard. To be objectively reasonable, an offer must 'approach [] fair market value.'" *Ellis*, *supra* 969 F.2d at 787 (quoting *Slatky*, *supra*, 830 F.2d at 485); *Arnold v. Amoco Oil Co.* 872 F.Supp. 1493, 1500 (W.D. Va. 1995). Accordingly, the offer should reflect what a willing purchaser would pay for the items. "The offer to buy at fair market value... assur[es] the franchisee an opportunity to continue to earn a livelihood from the property while permitting the distributor to recover the fair market value of the property sold and to end the franchise relationship." *Ellis, supra*, 969 F.2d at 788. What constitutes a bona fide offer is determined on a case-by-case basis. *Id.*

In *Rhodes v. Amoco Oil Company* (supra) the Court underscored the language in *Sadlin v. Texaco Refining and Marketing* 900 F.2d 1480, 1481 (1990) and *Slatky v. Amoco Oil Co.* 830 F.2d

476, 484 (1987) as follows:

> the bona fide offer provision therefore serves as a second, and distinct, layer of protection, assuring the franchisee an opportunity to continue to earn a livelihood from the property while permitting the distributor to end the franchise relationship." *Rhodes v. Amoco Oil Company* 143 F.3d at 1371 (quoting, *Sadlin v. Texaco Refining and Marketing* 900 F.2d at 1481 (quoting, *Slatky v. Amoco Oil Co.* 830 F.2d at 484)).

Thus, the *Rhodes* court held that:

> [T]he franchisor is not automatically entitled to immunity from having its offer scrutinized and from that offer's bona fides being tested against other evidence as to what "approached fair market value." Hence the franchisor may not avoid the raising of a genuine issue of fact concerning his offer, and may not obtain a summary judgment merely because he has based the offer in question on the results of an independent appraisal. That approach would not protect the franchisee in a case, which we would hope would be the unusual one, in which the appraisal is flawed "through sloppiness or mere error." *Rhodes v. Amoco Oil Company* 143 F.3d at 1372.

ConocoPhillips offer was not "bona fide" if the offered sale price was above and did not approach the fair market value. See, *Rhodes v. Amoco Oil Company* 143 F.3d 1369, 1372 (1998) (holding that while a bona fide offer was not necessarily the equivalent of the property's fair market value, an offer was required to approach fair market value in order to be considered bona fide).

Given that the PMPA expressly provides for a franchisee's right to purchase the equipment and improvements so that it could continue operating its business, California law that would provide for an alternative result is contrary to that purpose and is therefore preempted.

## III.
## CONCLUSION

Since ConocoPhillips' counterclaims are based on claims that solely arise out of California law of contracts and equity, all of which are preempted by the PMPA in the factual context of this case, Houtan Petroleum's instant motion under Rule 12(b)(6) should be granted without leave to amend.

Respectfully submitted,

Dated: January 24, 2008                    BLEAU/FOX, A P.L.C.

_____
By:   Thomas P. Bleau, Esq.
      Gennady L. Lebedev, Esq.
      Attorneys for Plaintiff and Counterclaimant, Houtan Petroleum, Inc.