Thomas P. Bleau, Esq., SBN 152945
Gennady L. Lebedev, Esq., SBN 179945
BLEAU / FOX, A P.L.C.
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, California 90068
Telephone   : (323) 874-8613
Facsimile   : (323) 874-1234
e-mail:      bleaushark@aol.com
e-mail:      glebedev@bleaufox.com

Attorneys for Plaintiff,
HOUTAN PETROLEUM, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOUTAN PETROLEUM, INC. | CASE NO. 07-cv-5627 SC |
| Plaintiff, | PLAINTIFF, HOUTAN PETROLEUM, INC.'S, OPPOSITION TO CONOCOPHILLIPS COMPANY'S MOTION TO STRIKE PLAINTIFF'S JURY DEMAND |
| vs. | |
| CONOCOPHILLIPS COMPANY, a Texas Corporation and DOES 1 through 10, Inclusive | Date:  February 6, 2008<br>Time:  10:00 a.m.<br>Courtroom: 1 |
| Defendants. | Before:  Hon. Samuel Conti |
| | Trial Date:  February 11, 2008 |
| | **Accompanying Document:** |
| | **Declaration of Thomas P. Bleau In Support of Opposition to ConocoPhillips Company's Motion to Strike Plaintiff's Jury Demand** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff, Houtan Petroleum, Inc., hereby opposes the motion of ConocoPhillips Company to Strike Plaintiff's Jury Demand in the above-captioned matter, as follows.

**I**

**FACTUAL SUMMARY/ARGUMENT**

ConocoPhillips relies heavily on the Court's Order denying Plaintiff's motion for preliminary injunction for its arguments of why this case should not be tried by a jury. However, discovery has now revealed evidence that was not available at the time of Plaintiff's motion, from

-1-
PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE JURY DEMAND

1  which a trier of fact could reasonably find that it was not reasonable for ConocoPhillips to provide
2  Plaintiff with less than 90 days Notice of Termination as required by the PMPA, and that Plaintiff
3  suffered damages as a result.

4  Additionally, as further explained below fact intensive questions such as the
5  reasonableness of ConocoPhillips' Notice of Termination on a shortened basis and whether its
6  offer to Plaintiff approaches fair market value should be properly decided by a jury.

7  ConocoPhillips knew as early as March 2006 that the landowner of the subject property
8  was not interested in renewing its lease. ConocoPhillips also admitedly knew that it was required
9  to provide a Notice of Termination to Houtan Petroleum at least 90 days prior to October 31,
10  2007, if it was unable to negotiate a new lease with the landowner.

11  In an e-mail dated March 21, 2007, ConocoPhillips' real estate manager, Richard L.
12  Mathews communicated to the property manager for the landowner the following:

> **My management is becoming very disenchanted.** Since early in 2006, I have sent dozens of e-mails and at least two formal letters (just since December, 2006) following your initial requests to express our willingness to stay and under what terms, and not one piece of correspondence has been responded to with anything material, such as what lease terms and what rent you want.
>
> What does ConocoPhillips need to do to get a "response"? Do you want a face to face meeting - then tell me when and where and I will be there. Please, just give me some definitive response to our proposal.
>
> If you do not want ConocoPhillips as a tenant after our current lease expires on 10/31/07, then just please say so and we will move on. (Bleau Decl., Exh. "B," pg. COP 00013, emphasis added).

In a letter dated April 12, 2007, Mr. Mathews writes:

> I am concerned that we have not had any material response to our good faith effort and proposal sent in December, 2006. I'm further perplexed because we have been a tenant of yours for several years, and I suggest we have been a reasonably good tenant, and COP is a solid company financially. I am more than willing to pursue the entitlements but before we do we need to finalize the basic ground lease extension terms and conditions, as well as rent, in order to ensure the proposed project meets our economic hurdles. I do not think this is an unreasonable position for COP to take. **Time, however, is now a real concern as the current ground lease expires on October 31, 2007.** (Bleau Decl., Exh. "C," pg. COP 00010, emphasis added).

Still, on September 17, 2007, Mr. Mathews wrote:

> I am still hopeful that ConocoPhillips ("COP") might still have an opportunity to secure a long-term lease with you for the above-referenced location. **Since there**

-2-
PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE JURY DEMAND

1 | **has been no response since your brief letter dated May 24th, 2007, however, I appreciate this might not be possible**.  Please understand that we are still interested if you are willing to discuss this issue with COP.

**In the meantime, there are notice obligations we must make to our franchise dealer that make it necessary for us to request a short-term extension.**  To this end, this letter serves as a formal request to extend the expiration date to the ground lease for a period of **ninety (90) days**, under the same terms and conditions.  If you concur, the revised expiration date will be January 31, 2008.

In addition, I would like to also request that the period by which we must raze all improvements following the terms of the lease be extended from 10 days to 30 days.

**Timing is of the essence**, so may we please have your response to our **90-day** extension request by **September 21, 2007**? (emphasis in original) Should I not hear from you by September 21st, I will take your silence as your unwillingness to extend the lease as requested.  (Bleau Decl., Exh. "D," pg. COP 00132, emphasis added except where indicated).

ConocoPhillips issued its "NOTICE OF TERMINATION" allegedly "pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA")" on the next day, September 18, 2008.    (Haddad Decl. in support of Houtan Petroleum's Application for Temporary Restraining Order and Preliminary Injunction, Docket No. 5[1], Exh. "B," p. 000082-83, emphasis added).

The May 24, 2007 letter from the landlord referred to by Mr. Mathews merely states:

> I apologize for not getting back to you earlier.  I know your present lease expires in October of 2007.
>
> At this time we are exploring some alternatives.  (Bleau Decl., Exh. "E," pg. COP 00143).

On October 18, 2007, Plaintiff notified ConocoPhillips in writing that it will be acquiring possession of the premises from the landlord and demanded that ConocoPhillips forward a bona fide offer to sell its equipment and improvements.  (Haddad Decl. #1, Exh. "D," p. 000155).

On October 22, 2007, ConocoPhillips sent Plaintiff an "OFFER TO SELL IMPROVEMENTS" along with a Bill of Sale for $340,000.00, also allegedly "[i]n accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq."

---

[1]   Hereinafter, the declaration of Ed Haddad originally filed in support of Houtan Petroleum's Application for Temporary Restraining Order and Preliminary Injunction, Docket No. 5, shall be referred to at the "Haddad Decl. #1".

-3-
PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE JURY DEMAND

1  (See, Haddad Decl. #1, Exh. "E," p. 000157, emphasis added).

2  The same equipment and improvements that ConocoPhillips offered to sell for
3  $340,000.00 was appraised by an MAI appraiser retained on Plaintiff's behalf for a total amount
4  of $145,000.00. (Plaine Declaration in support of Plaintiff's Opposition to ConocoPhillips
5  Company's Application for Writ of Possession and Preliminary Injunction, Docket No. 39, ¶5).
6  Consequently, the jury will need to decide whether ConocoPhillips' offered price exceeds and
7  fails to approach the fair market value of the property.

8  Effective November 1, 2007, Plaintiff began leasing the premises directly from the
9  landlord. (Haddad Decl. #1, Exh. "C").

10  On November 5, 2007, Plaintiff filed the instant action along with an application for a
11  Temporary Restraining Order and Preliminary Injunction. Although the Temporary Restraining
12  Order was initially granted, Plaintiff's application for a Preliminary Injunction was denied
13  pursuant to the Court's Order dated November 16, 2007. (Docket No. 18).

14  In light of the fact that ConocoPhillips did not issue its Notice of Termination to Houtan
15  Petroleum until September 18, 2007, the above-described letters and especially the September 17,
16  2007 letter is telling of ConocoPhillips' true state of mind with regard to the termination of
17  Houtan Petroleum's franchise. First, ConocoPhillips' "disenchantment" with the landlord's lack
18  of response to its multiple requests to extend the master lease are indicative of ConocoPhillips'
19  realization that the landlord was unwilling to continue its relationship with ConocoPhillips.
20  Given the landlord's lack of response to ConocoPhillips' requests since May 24, 2007,
21  ConocoPhillips' plea of ignorance of the fact that the landlord was not interested in extending the
22  master lease amounted to wilful blindness at best.

23  Second, in its September 17, 2007 letter, ConocoPhillips acknowledges and admits that
24  "there are notice obligations [it] must make to [its] franchise dealer that make it necessary for
25  [ConocoPhillips] to request a short-term extension" of the lease for 90 days for which "[t]iming is
26  of the essence." (Bleau Decl., Exh. "D," pg. COP 00132). Clearly, this amounts to an
27  undisputable admission of ConocoPhillips' awareness that it must comply with the 90 day notice
28  requirement of the PMPA. 15 U.S.C. §2804(a)(2). However, this awareness did not manifest as

Case 3:07-cv-05627-SC    Document 60    Filed 01/30/2008    Page 5 of 9

late as September 17, 2007. Rather, it existed all along, as evidenced by ConocoPhillips' ongoing concern that it is running out of time before the October 31, 2007 expiration of the master lease, as well as the reference to the PMPA in its Notice of Termination and the Offer To Sell Improvements themselves.

In light of its own admissions, in its correspondence with Plaintiff and the landlord, ConocoPhillips' contention that it was not required give Houtan Petroleum a 90 day Notice of Termination that it ultimately did provide on September 18, 2007, is false and disingenuous. The truth of the matter is that ConocoPhillips knew all along that it was required to provide such notice. Moreover, its failure to provide such notice at least 90 days prior to termination, caused Plaintiff to request that it make a *bona fide* offer for sale its equipment and improvements on October 18, 2007, which in turn, resulted in ConocoPhillips making such offer on October 22, 2007 (merely 9 days prior to the October 31, 2007 franchise termination date).

Plaintiff intends to prove that as a result of this condensed time frame, the cause for which falls solely on ConocoPhillips, Houtan Petroleum was placed in a position where it was unable to sell fuel through credit card transactions for a period of five days, until the Court granted Plaintiff's application for temporary restraining order and Plaintiff's station was placed back online by ConocoPhillips, resulting in estimated gross sales of $75,250.00 and lost gross profits in the amount of $25,090.00. (Bleau Decl. filed in support of the instant Opposition, ¶7, Exh. "F"). But for ConocoPhillips' delay in issuing the Notice of Termination and making its offer, Plaintiff could have prepared for the October 31, 2007 termination date sooner and could have avoided the five days of down time. ConocoPhillips has no reasonable excuse for its failure to comply with the 90 day notice requirements of the PMPA because, by its own admission, "the earliest day on which furnishing such notification [was] reasonably practicable" was clearly much earlier than September 18, 2007. 15 U.S.C. 2804(b)(1).

Certainly, Plaintiff cannot be denied the opportunity to present this evidence of damages and causation thereof to the trier of fact at the time of trial.

In addition to the issue of damages caused by ConocoPhillips' untimely notice, one of the central issues in this case is whether ConocoPhillips' Offer to Plaintiff complies with the PMPA.

Plaintiff contends that ConocoPhillips failed to extend a "bona fide" offer to Plaintiff under the PMPA because the purchase price was in excess of and did not approach fair market value.

Thus, the jury should be allowed to determine any and all questions of fact that are at issue in this case, including but not limited to, the following:

1.  The reasonableness of ConocoPhillips shortened Notice of Termination of less than 90 days;

2.  Whether the price contained in ConocoPhillips' Offer to Plaintiff "approaches" fair market value;

3.  The price at which ConocoPhillips should be compelled to offer the subject property to Plaintiff;

4.  Plaintiff's damages as caused by ConocoPhillips' violations of the PMPA, including, Plaintiff's lost profits arising out of ConocoPhillips' failure to provide notice of termination and an offer for the sale of its equipment and improvements in a timely manner.

Additionally, both in its Answer and Counterclaims (Docket No. 46, pg. 16), as well as in its initial disclosures pursuant to Rule 26, ConocoPhillips claims that it is entitled to $4,000 in monthly rental value of its equipment and improvements. (Bleau Decl. filed in support of the instant Opposition, Exh. "A" (p.3, ln. 15-19)). If it is found to be entitled to rental value for its equipment and improvements (which Plaintiff respectfully denies), the fair market rental value is, nevertheless, clearly a factual matter that should be decided by a jury.

Moreover, ConocoPhillips' instant Motion is disingenuous in light of the fact that its' own Answer and Counterclaims sets forth a demand for jury trial. (See, ConocoPhillips' Answer and Counterclaims, Docket No. 46, pg. 16).

## II.

## LEGAL ARGUMENT

As the United States Supreme Court has held, the right of jury trial is not eliminated by virtue of the fact that under the United States' modern unified system, the equitable relief of an injunction also is sought. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962).

In order to determine whether the Seventh Amendment right to jury trial "in Suits at

common law" (U.S. Const., Amdt. 7) confers such right to a jury in civil actions, a court must first look to the "nature of the statutory action." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998). The United States Supreme Court in *Feltner* stated the Court has understood:

> "Suits at common law" to refer "not merely [to] suits, which the *common* law recognized among its old and settled proceedings, but [to] suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." [citation omitted] The Seventh Amendment thus applies not only to common-law causes of action, but also to "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." [citation omitted] To determine whether a statutory action is more analogous to cases tried in courts of law than to suits tried in courts of equity or admiralty, we examine both the nature of the statutory action and the remedy sought. Feltner v. Columbia Pictures Television, Inc., 523 U.S. at 348 (1998) (emphasis in original) (Quoting, Parsons v. Bedford, 3 Peters 433, 447 (1830); Granfinanciera, S. A. v. Nordberg, 492 U.S. 33, 42 (1989)).

In the instant case, Plaintiff's statutory action is the PMPA. To the extent that there is no common law precisely like the PMPA, common law regarding contracts is analogous. For years, juries have determined issues of breach of contract and the remedies for same. Plaintiff's claim for violation of the PMPA is more analogous to a state statutory claim for violation of California *Business and Professions Code* §20999.1, which contains no explicit reference to court or jury trials, but ensures the right to jury trial where damages are sought.

Plaintiff is not denying that it is requesting equitable relief in the form of an injunction. However, that does not prevent it from seeking monetary damages set forth in the Complaint from ConocoPhillips' violations of the PMPA. In fact, it is well recognized that a party may seek both equitable and legal relief in a lawsuit. *City of Monterey v. Del Monte Dunes at Montery, Ltd.*, 526 U.S. 687, 730 (Justice Scalia concurring in part) (1999).

In addition to Plaintiff's claim for damages, the central inquiry of whether ConocoPhillips violated the PMPA is a highly fact intense question, which Plaintiff is entitled to have answered by a jury.

The United States Supreme Court recently held that claims for "just compensation" are obviously claims for monetary relief, thus making them actions at law. *City of Monterey, supra*, 526 U.S. at pp. 710-711, *citing Feltner, supra*, 523 U.S. at p. 352. Additionally, the United States

Supreme Court has approved the use of juries to determine factual issues while requiring the judge to apply the law to those factual determinations made by the jury. *See Baltimore & Caroline, Inc. v. Redman*, 295 U.S. 654, 657 (1935); *Horstkoetter v. Department of Public Safety,* 159 F.3d 1265, 1271 (10th Cir. 1998).

In *City of Monterey, supra,* the High Court approved the use of a jury to determine some of the factual issues while leaving questions of a legal nature or determinations of the application of law to the factual issues to the court. *City of Monterey* involved a takings case under 42 U.S.C § 1983 in which the plaintiff alleged that the City of Monterey was required to give it just compensation for the taking of its property. The Supreme Court approved the use of a jury to determine issues such as whether the plaintiff was deprived of all economically viable use of its land and whether the city's rejection of plaintiff's building plans advanced a legitimate public interest. But the question of whether the city's asserted basis for its challenged action represented a legitimate state interest was a question of law for the court.

In the instant action, one of Plaintiff's principal contention is that ConocoPhillips' Offer failed to approach fair market value and therefore violated the PMPA. Clearly, whether such Offer did fail to approach fair market value and what the amount of the sale price should be are highly fact intensive questions that should be determined by the jury. Additionally, this Court has previously recognized that in reaching its conclusions, that "the Court does not hold that the offer was necessarily reasonable." (Order Denying Plaintiff's Motion for Preliminary Injunction, Docket No. 18, 16:1-7, quoting 15 U.S.C. §2804(b)(1)). Likewise, this issue of the "reasonableness" of providing a Notice of Termination on a shortened time basis and what was or would have been "reasonably practicable" for ConocoPhillips to have done is clearly a factual matter that would properly be decided by a jury.[2] Under controlling Supreme Court precedent,

---

[2] As presented in prior motions and oppositions before this Court, the PMPA provides for two (2) separate and independent notice requirements. The first is found in 15 U.S.C. §2802(c). The second notice requirement is found in under 15 U.S.C. §2804 which states in pertinent part as follows:

> 2804(a) General requirements applicable to the franchisor. Prior to

1  Plaintiff is entitled to have a jury determine such questions of fact.

2  Finally, ConocoPhillips admits that a case is properly submitted to a jury where a party may be entitled to recover actual damages under the PMPA. (Moving Papers, pg. 3, ln.28 to pg. 4, ln. 2, citing *Chevron U.S.A., Inc. v. El-Khoury*, 2002 WL 31256160, at *1 (C.D. Cal. September 23, 2002)). Although, as explained above, Plaintiff did suffer and does intend prove its damages, a jury is warranted on issues of fact (i.e. whether the Offer "approached fair market value") even if Plaintiff had not suffered damages.

## III.

## CONCLUSION

Based on the foregoing, ConocoPhillips' instant motion to strike Plaintiff's jury demand should be summarily denied.

Respectfully submitted,

Dated: January 28, 2008

BLEAU / FOX, A P.L.C.
//s//
By: _____
Thomas P. Bleau, Esq.
Gennady L. Lebedev, Esq.
Attorneys for Plaintiff
Houtan Petroleum, Inc.

---

termination of any franchise or nonrenewal of any franchise relationship, the franchisor **shall furnish notification of such termination** or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship -

 2804(a)(1)  in the manner described in subsection (c) of this section; and

 2804(a)(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect...

 2804(b)(1) In circumstances in which it would not be **reasonable** for the franchisor to furnish notification, not less than 90 days prior to the date on which termination . . . takes effect, as required by subsection (a)(2) of this section, such franchisor shall furnish notification to the franchisee... on the earliest date... such notification is **reasonably practicable**. (emphasis added)