1  GLYNN & FINLEY, LLP
   CLEMENT L. GLYNN, Bar No. 57117
2  ADAM FRIEDENBERG, Bar No. 205778
   One Walnut Creek Center
3  100 Pringle Avenue, Suite 500
   Walnut Creek, CA 94596
4  Telephone: (925) 210-2800
   Facsimile: (925) 945-1975
5  Email: cglynn@glynnfinley.com
          afriedenberg@glynnfinley.com
6
   Attorneys for Defendant and Counter-Plaintiff
7  ConocoPhillips Company

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11 HOUTAN PETROLEUM, INC.          )  **Case No. 3:07-cv-5627**
                                   )
12          Plaintiff,             )  **DEFENDANT AND COUNTER-**
                                   )  **PLAINTIFF CONOCOPHILLIPS**
13     vs.                         )  **COMPANY'S REPLY BRIEF IN**
                                   )  **SUPPORT OF ITS MOTION TO STRIKE**
14 CONOCOPHILLIPS COMPANY, a Texas )  **PLAINTIFF'S JURY DEMAND**
   corporation and DOES 1 through 10, )
15 Inclusive                       )  **Date:       February 6, 2008**
                                   )  **Time:       10:00 a.m.**
16          Defendants.            )  **Courtroom:  1**
                                   )  **Before:     Hon. Samuel Conti**
17 _____)
                                      **Trial Date:  February 11, 2008**
18

19 **I.    INTRODUCTION**

20         Houtan Petroleum is unable to cite any PMPA case that finds a right to a jury trial for

21 PMPA claims seeking only *equitable* relief, nor does it address the PMPA cases cited by

22 ConocoPhillips in its moving papers. Instead, Houtan Petroleum relies on unrelated Supreme

23 Court cases that stand for the general, and undisputed, proposition that *legal* claims, as opposed

24 to *equitable* claims, are tried by a jury, not a judge. The applicable law is unequivocal: Houtan

25 Petroleum is not entitled to a jury trial because its only remedies are equitable in nature. Claims

26 in equity are properly tried by a judge not a jury. Houtan Petroleum's eleventh hour claim of

27 actual damages related to ConocoPhillips' "surprise" termination of the franchise agreement has

28 already been adjudicated against it by this Court. Houtan Petroleum's failure to adequately

1   prepare for the termination of the franchise despite more than <u>117 days</u> notice does not provide a

2   basis for seeking damages from ConocoPhillips.  Because Houtan Petroleum makes no other

3   claims for *legal* relief, its *equitable* claims are to be tried by this Court, not a jury.

4   **II.    ARGUMENT**

5        Houtan Petroleum makes three arguments in its opposition.  First, it argues that it is

6   entitled to a jury trial on whether ConocoPhillips gave it adequate notice under the PMPA and its

7   equitable claims because they require fact-finding.  Second, it argues that it is entitled to a jury

8   trial on its claim for actual damages related to ConocoPhillips' cancellation of credit card

9   transactions on the day *after* the franchise agreement terminated.  Finally, it argues that it is

10  entitled to a jury trial on its *equitable* claims because ConocoPhillips requested a jury trial on its

11  counterclaims, which are *legal* in nature.  None of Houtan Petroleum's arguments have merit.

12       **A.    Houtan Petroleum is not entitled to a jury trial on the issue of notice, which**
           **has already been decided by the Court, or its equitable claims.**
13

14       Plaintiff lists three claims that are properly tried by the Court, not a jury:  (1) the

15  reasonableness of ConocoPhillips' notice; (2) whether ConocoPhillips' offer approaches fair

16  market value; and (3) the price for which ConocoPhillips should be compelled to offer the

17  property to Houtan Petroleum if its offer does not approach fair market value.  (Opp. at p. 6:5-

18  10.)  The first relates to notice under the PMPA, which was already decided in ConocoPhillips'

19  favor during the hearing on Houtan Petroleum's request for a preliminary injunction (see Docket

20  No. 18 at pp. 8:20-12:18); and the second and third relate to the determination of whether

21  ConocoPhillips' offer was bona fide under the PMPA for which Houtan Petroleum requests

22  equitable relief (i.e., an injunction compelling ConocoPhillips to make a bona fide offer) (see

23  Docket No. 1 at 11:2-6).  Neither affords Houtan Petroleum a right to a jury.

24       **1.    ConocoPhillips gave Houtan Petroleum adequate notice of**
             **termination, as the Court has already determined.**
25

26       In its request for a preliminary injunction, Houtan Petroleum argued that ConocoPhillips

27  violated the PMPA because it did not (1) terminate the franchise agreement in good faith or in

28  the normal course of business under 15 U.S.C. section 2802; (2) give 90 days notice as required

1    under 15 U.S.C. section 2804; and (3) make a bona fide offer as required by 15 U.S.C. section

2    2802.  The Court rejected the first two arguments and saved the last for trial.  (See Docket No.

3    18 at p. 14:13-15 ["Thus, the issue that remains in this action is whether the price contained in

4    the offer was reasonable, and, therefore, whether the offer was bona fide."].)

5        For the first argument (i.e., that ConocoPhillips did not have a sufficient reason to

6    terminate the franchise agreement), the Court found that "Conoco terminated the Franchise

7    Agreement based on the fact that Conoco was unable to renew the Master Lease with V.O.

8    Limited for the Station property."  (Docket No. 18 at p. 8:22-24.)  This is a sufficient reason for

9    termination under 15 U.S.C. section 2802(c)(4) if certain conditions are met.  (*Id.* at pp. 8:25-

10    9:13.)  The Court found that such conditions were met by ConocoPhillips.  (*Id.* at p. 9:14-27 ["In

11    the present case, Conoco has satisfied both of these requirements."].)

12        As to the second argument (i.e., that ConocoPhillips failed to give adequate notice), the

13    Court found that "Houtan was on notice as early as July 6 that the Franchise Agreement would

14    be terminated in the event that Conoco was unable to secure a renewal of the Master Lease" and

15    that "the Agreement contained express language indicating that Conoco's inability to renew the

16    Master Lease would necessarily require termination of the Franchise Agreement."  (Docket No.

17    18 at p. 11:2-9.)  In the alternative, the Court stated, "[o]n September 18 Conoco sent notice to

18    Houtan indicating that the Franchise Agreement would not be renewed.  This qualifies as 'the

19    earliest date on which furnishing of such notification is reasonably practicable.'  Id.  Thus, even

20    if Conoco's notice was not within the 90 day statutory period, it very likely was within the

21    alternative statutory period of § 2804(b)(1)."  (*Id.* at pp. 11:25-12:3.)

22        Houtan Petroleum does not dispute that these issues have already been adjudicated

23    against it by the Court.  Instead, it argues that "discovery has now revealed evidence that was not

24    available at the time of Plaintiff's motion, from which a trier of fact could reasonably find that it

25    was not reasonable for ConocoPhillips to provide Plaintiff with less than 90 days Notice of

26    Termination as required by the PMPA . . . ."  (Opp. at pp. 1:28-2:2.)  In summary, Houtan

27    / / /

28    / / /

CONOCOPHILLIPS' REPLY BRIEF

1    Petroleum's "new" evidence is that "ConocoPhillips knew as early as March 2006 [sic] that the

2    landowner of the subject property was not interested in renewing its lease."[1]  (*Id.* at p. 2:7-8.)

3            Even were we to assume that Houtan Petroleum's factual assertions are accurate, they are

4    irrelevant.  Where a franchisor relies on the expiration of an underlying lease to terminate a

5    franchise agreement, it must fulfill the requirements of 15 U.S.C. section 2802(c)(4)(A).  The

6    Court has already found that ConocoPhillips satisfied these requirements in its franchise

7    agreement with Houtan Petroleum, dated July 6, 2007, which notified Houtan Petroleum of the

8    expiration of the underlying lease and the termination of the franchise agreement on October 31,

9    2007.  (Docket No. 18 at p. 9:14-27.)  The allegation that ConocoPhillips knew on March 21,

10   2007 (or even in 2006) that the underlying lease would not be renewed is irrelevant to

11   ConocoPhillips' obligations under the PMPA.  Regardless of when ConocoPhillips first learned

12   that the underlying lease would not be renewed, it was only required to notify Houtan Petroleum

13   of the termination in the July 6, 2007 franchise agreement, which it did.  The Court has already

14   decided the notice issue against Houtan Petroleum and Houtan Petroleum is not entitled to have

15   a jury rehear the issue based on "new" irrelevant facts.  As a matter of law, ConocoPhillips

16   complied with the notice requirements of the PMPA.[2]

17           **2.    Houtan Petroleum is not entitled to a jury on its request for an
                      injunction compelling ConocoPhillips to give it a bona fide offer.**
18

19           Cases interpreting the right to a jury trial under the PMPA are unequivocal:  a franchisee

20   is not entitled to a jury trial on its equitable claims.  *See Chevron U.S.A., Inc. v. El-Khoury,* 2002

21   WL 31256160, *2 (C.D. Cal. 2002).  This is in line with the bedrock legal principle that

22   equitable claims are tried by a judge, not a jury.  *See Tull v. United States,* 481 U.S. 412, 417-18

23   (1987).

24   _____

25   [1]    The e-mail Houtan Petroleum relies on is dated March 21, 2007, not 2006.

26   [2]    Houtan Petroleum also argues that "ConocoPhillips also admittedly knew that it was required
         to provide a Notice of Termination to Houtan Petroleum at least 90 days prior to October 31,
27       2007, if it was unable to negotiate a new lease with the landowner."  (Opp. at p. 2:8-10.)  This
         argument is without merit.  ConocoPhillips' employee's erroneous belief of what is required
28       under the PMPA is irrelevant to whether ConocoPhillips complied with the requirements of the
         PMPA.  Further, ConocoPhillips provided notice 117 days before termination.

1    In the present case, Houtan Petroleum is requesting that the trier of fact decide whether

2    ConocoPhillips' offer was bona fide under the PMPA, and, if not, it requests that the Court grant

3    it *equitable* relief in the form of a new offer that complies with the PMPA. (*See* Docket No. 18

4    at p. 11:2-6.)  Plaintiff does not dispute that he is seeking equitable relief for his PMPA claims in

5    the form of an injunction compelling ConocoPhillips to make a bona fide offer.  (Opp. at p. 7:18-

6    19.)  Rather, Houtan Petroleum's argument is that the determination of whether ConocoPhillips'

7    offer was bona fide requires "highly fact intensive questions" that should be determined by a

8    jury, not a judge.  (Opp. at p. 8:14-17; see also *id.* at p. 9:6-7 [Houtan Petroleum argues that "a

9    jury is warranted on issues of fact (i.e., whether the Offer 'approached fair market value') even if

10   Plaintiff has not suffered damages."].)

11   Houtan Petroleum confuses "trier of fact" with "jury."  Whether the offer was bona fide

12   is indeed a factual issue.  But because the relief Houtan Petroleum seeks is equitable, the Court,

13   not a jury, makes that factual determination.  *See El-Khoury, supra,* 2002 WL 31256160 at p. *3

14   ("[T]he right to a jury trial depends on the nature of the remedies sought.").  The role of the

15   judge as a fact-finder in equity cases was addressed by the Supreme Court in *Atlas Roofing Co.,*

16   *Inc. v. Occupational Safety and Health Review Commission,* 430 U.S. 442, 458-459 (1977):

17       The question whether a particular case was to be tried in a court of equity without a jury
         or a court of law with a jury did not depend on whether the suit involved factfinding or
18       on the nature of the facts to be found.  Factfinding could be a critical matter either at law
         or in equity. . . .  Thus, suits for damages for breach of contract, for example, were suits
19       at common law with the issues of the making of the contract and its breach to be decided
         by a jury; but specific performance was a remedy unavailable in a court of law and where
20       such relief was sought the case would be tried in a court of equity with the facts as to
         making and breach to be ascertained by the court.
21

22   The PMPA does not provide for a right to a jury where the franchisee seeks only

23   equitable remedies.  As discussed below, Houtan Petroleum has no basis for actual damages and

24   the only relief it could be entitled under the PMPA is equitable.  Thus, Houtan Petroleum is not

25   entitled to a jury trial on its PMPA claims, which are properly decided by the Court alone.

26   **B.     Houtan Petroleum cannot show any actual damages.**

27   In response to ConocoPhillips' contention that Houtan Petroleum could not have

28   sustained any actual damages because the "status quo" was preserved when Houtan Petroleum

1   wrongfully retained ConocoPhillips' property without paying rent, Houtan Petroleum argues that

2   it was damaged by ConocoPhillips' allegedly tardy notice of termination.  Specifically, Houtan

3   Petroleum argues that it was surprised when ConocoPhillips terminated its franchise, including

4   shutting off credit card transactions, on October 31, 2007 and was unprepared to continue

5   business as usual, which caused it to lose profits.  (Opp. at p. 5:19-21 ["But for ConocoPhillips'

6   delay in issuing the Notice of Termination and making its offer, Plaintiff could have prepared for

7   the October 31, 2007 termination date sooner and could have avoided the five days of down

8   time."].)  This argument is without merit.

9         Houtan Petroleum's damages claim is predicated on the allegation that ConocoPhillips

10   failed to give adequate notice.  However, the Court has already found that Houtan Petroleum

11   received adequate notice of the franchise termination as required by the PMPA.  (Docket No. 18

12   at pp. 8:20-12:18.)  Indeed, on July 6, 2007, Houtan Petroleum signed the applicable franchise

13   agreement, which provided:

> There is a possibility that the term of the underlying lease to the Station might expire and not be renewed upon the underlying lease's expiration date.  DEALER hereby acknowledges CONOCOPHILLIPS' disclosure to DEALER that this Agreement and the Station herein are subject to all the terms and conditions of an underlying lease held by CONOCOPHILLIPS in the property and premises, **which underlying lease expires on October 31, 2007** and that such underlying lease may expire and may not be renewed during the Term of this Agreement.  Thereby, the DEALER is hereby on notice that this Agreement **is hereby terminated** on the date the underlying lease expires or on a prior date in the event CONOCOPHILLIPS' lessor terminates the underlying lease or the underlying lease otherwise requires early termination.
>
> CONOCOPHILLIPS is under no obligation to seek an extension or renewal, or exercise any renewal options it may have, of such underlying lease, but may do so at its discretion.

23   (Declaration of Ed Haddad in support of Plaintiff's Motion for Preliminary Injunction ("Haddad

24   Decl."), Ex. A at Addendum 1 [original and added emphasis].)  Houtan Petroleum's president,

25   Ed Haddad, signed the franchise agreement and initialed Addendum 1 acknowledging this

26   language.  (*Id.*)  In addition, ConocoPhillips explained to Houtan Petroleum before and after July

27   6, 2007 what would happen to the franchise relationship if ConocoPhillips was unable to renew

28   the underlying lease before October 31, 2007.  (Docket No. 18 at p. 4:1-10.)  On September 18,

- 6 -

1    2007, ConocoPhillips sent Houtan Petroleum a reminder notice that the franchise agreement

2    would be terminated on October 31, 2007.[3]  (Haddad Decl., Ex. B.)

3         Houtan Petroleum knew that the underlying lease would terminate on October 31, 2007,

4    and that it would prevent the continuance of the franchise relationship with ConocoPhillips.

5    Indeed, by April 2007, Houtan Petroleum had begun direct negotiations with the landlord to

6    negotiate its own lease, which eventually succeeded.  Thus, by as early as the spring of 2007,

7    Houtan Petroleum knew that ConocoPhillips' ability to maintain a franchise relationship with it

8    beyond October 31, 2007 was unlikely.  In actuality, throughout the middle of 2007, Houtan

9    Petroleum was in competition with ConocoPhillips for the ground lease, and Houtan Petroleum

10   prevailed.  (Opp. at p. 4:8-9.)

11        The undisputed evidence is clear that Houtan Petroleum knew *no later than* July 6, 2007

12   that the underlying lease and franchise agreement would terminate on October 31, 2007.  Thus,

13   its contention that it was surprised by ConocoPhillips' termination of the franchise agreement

14   and was unprepared to continue the service station's business, including credit card transactions,

15   as a result of ConocoPhillips' actions is disingenuous.  Houtan Petroleum had 117 days to

16   prepare for the termination of the franchise agreement (the PMPA only requires ConocoPhillips

17   to give it 90 days notice).  Houtan Petroleum's alleged lost profits related to its inability to

18   conduct credit card transactions for the five days *after* the franchise relationship ended are its

19   sole responsibility.  ConocoPhillips had no obligation to handle credit card transactions at the

20   service station after its franchise ended, and, as the Court already decided in its November 16,

21   2007 ruling, ConocoPhillips gave Houtan Petroleum adequate notice that the franchise was

22   going to end on October 31, 2007.

23

24   [3]   Throughout its brief Houtan Petroleum refers to the September 18, 2007 notice as the
     "Notice of Termination" under the PMPA but ignores the notice of termination that was given to
25   Houtan Petroleum in the franchise agreement itself.  Where a franchisor gives a franchisee a
     second notice, it does not supplant the first notice.  *Pugh v. Mobil Oil Corp.,* 533 F.Supp. 169,
26   175-176 (S.D. Tex. 1982).  Thus, where an original notice complies with the PMPA and a
     second notice is sent out that does not comply with the PMPA, "[t]he existence of the second
27   notice [does] not eliminate or affect the validity of the first."  *Id.*  Even were this Court to find
     that the September 18, 2007 reminder notice does not comply with the PMPA, such a finding is
28   irrelevant because the notice in the franchise agreement itself, which was signed and initialed by
     Houtan Petroleum's President 117 days before the termination date, is valid under the PMPA, as
     this Court has already found.

CONOCOPHILLIPS' REPLY BRIEF

1    Because there is no basis in law for Houtan Petroleum's claimed damages that occurred

2    *after* the franchise agreement was terminated and no other claim for damages are asserted in this

3    case, the only remaining relief sought is equitable in nature.  As discussed, equitable claims are

4    tried by a judge, not a jury.  Thus, there is no right to a jury trial.

5    **C.     ConocoPhillips' right to a jury trial on its *legal* claims does not create a right
         to a jury trial on Houtan Petroleum's *equitable* claims.**

6

7    Houtan Petroleum claims that it is entitled to a jury trial because ConocoPhillips

8    requested a jury trial in its answer and for its counterclaims.  (Opp. at p. 6:14-22.)  This

9    argument has no merit.

10   First, ConocoPhillips requested a jury trial in its answer to Houtan Petroleum's PMPA

11   claims to avoid waiver.  Now that ConocoPhillips has had additional time to review Houtan

12   Petroleum's claims, it is clear that there is no right to a jury.  Houtan Petroleum's claims are

13   equitable, and thus neither party is entitled to a jury.

14   Further, ConocoPhillips' request for a jury trial for its own *legal* counterclaims does not

15   create a right to a jury trial on Houtan Petroleum's *equitable* claims.  It is undisputed that

16   ConocoPhillips and Houtan Petroleum are both entitled to a jury to hear ConocoPhillips'

17   counterclaims, which request compensatory damages for Houtan Petroleum's wrongful retention

18   of ConocoPhillips' property.  However, this is irrelevant to Houtan Petroleum's *equitable* claims

19   that must be tried by a judge, not a jury.

20   **III.    CONCLUSION**

21   "In the instant case, the controversy set forth is not of the kind that has traditionally been

22   determined in trial by a jury.  Cases decided under the PMPA in which there are no decisions

23   about liability for actual damages are appropriately decided by the Court."  *El-Khoury, supra,*

24   2002 WL 31256160 at p. *3.  Accordingly, ConocoPhillips respectfully submits that the Court

25   / / /

26   / / /

27   / / /

28   / / /

1    should strike Plaintiff's jury demand; the issue of whether ConocoPhillips' offer to sell its

2    equipment and improvements to Plaintiff was bona fide must be tried to the Court.

3         Dated:  February 1, 2008

4                               GLYNN & FINLEY, LLP
                           CLEMENT L. GLYNN

5                               ADAM FRIEDENBERG
                           One Walnut Creek Center

6                               100 Pringle Avenue, Suite 500
                           Walnut Creek, CA  94596

7

8                               By _____

9                               Attorneys for Defendant and
                           Counter-Plaintiff ConocoPhillips
                           Company

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONOCOPHILLIPS' REPLY BRIEF