1    GLYNN & FINLEY, LLP
     CLEMENT L. GLYNN, Bar No. 57117
2    ADAM FRIEDENBERG, Bar No. 205778
     One Walnut Creek Center
3    100 Pringle Avenue, Suite 500
     Walnut Creek, CA 94596
4    Telephone: (925) 210-2800
     Facsimile: (925) 945-1975
5    Email: cglynn@glynnfinley.com
            afriedenberg@glynnfinley.com
6
     Attorneys for Defendant and Counter-Plaintiff
7    ConocoPhillips Company

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11   HOUTAN PETROLEUM, INC.              )   **Case No. 3:07-cv-5627 SC**
                                         )
12              Plaintiff,               )   **DEFENDANT AND COUNTER-**
                                         )   **PLAINTIFF CONOCOPHILLIPS**
13        vs.                            )   **COMPANY'S TRIAL BRIEF**
                                         )
14   CONOCOPHILLIPS COMPANY, a Texas     )   **Trial Date:   February 11, 2008**
     corporation and DOES 1 through 10,  )   **Time:         10:00 a.m.**
15   Inclusive                           )   **Courtroom:    1**
                                         )   **Before:       Hon. Samuel Conti**
16              Defendants.              )
                                         )
17   _____ )

18   I.    **INTRODUCTION**

19            This case requires resolution of three questions:  (1) did ConocoPhillips provide

20   Houtan Petroleum required notice of the termination of the parties' franchise agreement when it

21   put its notice of termination in the franchise agreement that was signed, and the specific

22   provision initialed, 117 days before the termination? (2) did Houtan Petroleum request an offer

23   to purchase ConocoPhillips' equipment and improvements within 30 days after receiving that

24   notice of termination in the franchise agreement? and (3) if so, was ConocoPhillips' offer "bona

25   fide" under the PMPA?

26            The Court has already answered yes to the first question.  In denying Plaintiff's

27   request for preliminary injunctive relief, the Court found that the notification of termination *in*

28   *the franchise agreement itself*, which Houtan Petroleum's president specifically initialed,

                              - 1 -

1    constituted effective and timely notification of termination.  As a matter of law, therefore,

2    Houtan Petroleum was entitled to a bona fide offer, only if it requested the offer within 30 days

3    after receiving the franchise agreement.  This is a pure question of law; it is undisputed that

4    Houtan Petroleum did not request a bona fide offer until at least two months after the statutory

5    (30 day) deadline had passed.  Plaintiff's claims thus fail, and this action should be dismissed.

6          Even were the Court to find that Houtan Petroleum was entitled to a bona fide

7    offer to purchase ConocoPhillips' equipment and improvements, ConocoPhillips voluntarily

8    provided one.  Houtan Petroleum disputes that the offer was in fact bona fide, but this contention

9    is based entirely on the opinion of its litigation appraiser.  Plaintiff's appraiser admits, however,

10   that his methodology and conclusions are based on his assumption that the improvements will be

11   demolished and equipment destroyed within 3-5 years so that Plaintiff may rebuild a new station.

12    It is undisputed, however, that this property will be commercially usable for many more years

13   than that.  Thus, Plaintiff's true request is not for an offer that is fair but for one it cannot refuse.

14    The PMPA requires no such thing of ConocoPhillips.

15          ConocoPhillips' counterclaims seek only the return of its property and the lost

16   rental value resulting from Houtan Petroleum's wrongful refusal to return this property.  In

17   denying Houtan Petroleum's request for injunctive relief, the Court explicitly declined to order

18   ConocoPhillips to leave this property at the station absent payment of fair rental.  Houtan

19   Petroleum, displaying a cavalier and casual contempt for the Court and its orders, has refused to

20   purchase, pay rent or return the property.

21   **II.    FACTUAL BACKGROUND**

22        **A.    The Ground Lease**

23          ConocoPhillips does not own the Station property.  (Docket No. 13 ¶ 3.)  Rather,

24   ConocoPhillips formerly leased the property from a third-party, V.O. Limited Partners ("V.O.

25   Limited"), pursuant to a lease ("the Ground Lease") that expired on October 31, 2007.  (*Id.* ¶ 4.)

26   ConocoPhillips owns the structures, equipment and improvements at the Station.  (*Id.* ¶ 3.)

27   Under the Ground Lease, ConocoPhillips was entitled "to place and maintain [on the Station

28   Premises] all structures, improvements and equipment which [ConocoPhillips] may desire . . .

1    and to remove [such] structures, improvements or equipment . . . *at any time during the term*

2    *hereof or within ten (10) days after termination of this lease.*" (*Id.*, Ex. A at ¶ 6 (emphasis

3    added).)

4         **B.    The Franchise Agreement**

5              Houtan Petroleum has operated the Station as a ConocoPhillips franchisee for

6    several years. Pursuant to successive three-year franchise agreements, ConocoPhillips granted

7    Houtan Petroleum a limited license to use its Union 76 trademarks, trade dress and other

8    symbols (the "Union 76 Marks"), and subleased the Station premises to Houtan Petroleum.

9    (Docket No. 12 ¶ 2) The governing agreement immediately preceding that at issue was for a

10   three year term; it expired on August 31, 2007. (*Id.* ¶ 3.) As the Ground Lease was scheduled to

11   expire less than two months later, on October 31, 2007, ConocoPhillips could not offer Houtan

12   Petroleum another three year sublease of the Station premises. (*Id.*)

13             Houtan Petroleum nonetheless wished to continue its franchise relationship with

14   ConocoPhillips as long as possible, even though Houtan Petroleum was fully aware that a new

15   agreement with a September 1, 2007, effective date would likely terminate less than two months

16   later. (*Id.* ¶ 4.) ConocoPhillips explicitly advised Houtan Petroleum that ConocoPhillips had no

17   further right to renew or extend the Ground Lease, and that if ConocoPhillips was unable to

18   negotiate an extension, the Ground Lease would expire on October 31, 2007. By the time of

19   these discussions, Houtan Petroleum was already negotiating with V.O. Limited for its own

20   direct lease of the Station. (*Id.* ¶¶ 3-4.) Expiration and non-renewal of the Ground Lease would

21   result in ConocoPhillips losing any right to occupy the Station, much less sublease it to Houtan

22   Petroleum, just weeks after commencement of the proposed new Franchise Agreement, as

23   ConocoPhillips advised Houtan Petroleum. (*Id.*)

24             Notwithstanding this risk, and with full knowledge of its potential consequences,

25   Houtan Petroleum still wished to renew its franchise relationship with ConocoPhillips. (*Id.* ¶ 4.)

26   Thus the parties entered a new Union 76 Dealer Station Lease and Motor Fuel Supply

27   Agreement (the "Franchise Agreement"). (Docket No. 5, Ex. A.) The Franchise Agreement

28   provided that it would terminate with the Ground Lease (*Id.* ¶ 2(a)) and included the following

- 3 -

1    explicit notice of termination pursuant to the PMPA:

2        There is a possibility that the term of the underlying lease to the Station
        might expire and not be renewed upon the underlying lease's expiration
3        date. DEALER hereby acknowledges CONOCOPHILLIPS' disclosure to
        DEALER that this Agreement and the Station herein are subject to all the
4        terms and conditions of an underlying lease held by CONOCOPHILLIPS
        in the property and premises, **which underlying lease expires on**
5        **October 31, 2007** and that such underlying lease may expire and may not
        be renewed during the Term of this Agreement. Thereby, the DEALER is
6        hereby on notice that this Agreement **is hereby terminated** on the date
        the underlying lease expires or on a prior date in the event
7        CONOCOPHILLIPS' lessor terminates the underlying lease or the
        underlying lease otherwise requires early termination.

8
        CONOCOPHILLIPS is under no obligation to seek an extension or
9        renewal, or exercise any renewal options it may have, of such underlying
        lease, but may do so at its discretion.
10

11   (*Id.* at 000063 (Addendum 1) (original and added emphasis).)

12        ConocoPhillips provided Houtan Petroleum a copy of the Franchise Agreement

13   and notice of termination in May 2007, more than five months prior to the termination. (Docket

14   No. 12 ¶ 5.) Houtan Petroleum acknowledged the termination notice by executing the Franchise

15   Agreement, and specifically initialing the included notice of termination on July 6, 2007, 117

16   days prior to the termination. (Docket No. 5, Ex. A at pp. 3, 29.)

17        **C.    ConocoPhillips Voluntarily Seeks an Extension of the Ground Lease**

18        The Franchise Agreement specifically provided that ConocoPhillips had no

19   contractual obligation to seek extension or renewal of the Ground Lease. (*Id.*, Addendum 1.)

20   Nevertheless, ConocoPhillips *did* attempt to secure such an extension, so that termination of the

21   Franchise Agreement would not be necessary and Houtan Petroleum could continue to operate

22   the Station without interruption. (Docket No. 3 ¶ 5.) Throughout, and in fact even prior to,

23   2007, ConocoPhillips attempted to engage V.O. Limited in discussions or negotiations regarding

24   an extension or renewal of the Ground Lease. (*Id.*) These efforts were unsuccessful because

25   V.O. Limited eventually ceased responding to ConocoPhillips' communications. (*Id.*)

26        As the Ground Lease was to expire on October 31, 2007, ConocoPhillips was left

27   with no choice but to proceed with the termination to which Houtan Petroleum had already

28   agreed. On September 18, 2007, 17 days after the Franchise Agreement became effective,

- 4 -

1  ConocoPhillips sent Houtan Petroleum a reminder notice that the termination would proceed as

2  Houtan Petroleum agreed in the Franchise Agreement.  This correspondence did not convey any

3  new information to Houtan Petroleum.  Rather, it reminded Houtan Petroleum of what

4  ConocoPhillips had expressly advised in May 2007 and Houtan Petroleum had acknowledged in

5  writing on July 6, 2007:  that due to the imminent expiration of the Ground Lease, and

6  ConocoPhillips' consequent loss of its right to grant possession of the Station property, the

7  Franchise Agreement would terminate on October 31, 2007 at 12:00 p.m.  (*Id.*)

8        **D.**    **Houtan Petroleum's Negotiations with V.O. Limited**

9        While ConocoPhillips was attempting to secure an extension of the Ground

10  Lease, Houtan Petroleum was independently negotiating directly with V.O. Limited.  Houtan

11  Petroleum and V.O. Limited apparently executed a lease on October 16, 2007, but their

12  negotiations started at least six months earlier.  Houtan Petroleum, however, had not advised

13  ConocoPhillips prior to October 16 that a lease agreement was imminent.  On October 18,

14  Houtan Petroleum advised ConocoPhillips for the first time that it had leased the Station

15  property directly from V.O. Limited.  (Docket No. 3, ¶ 7.)  Houtan Petroleum still did not

16  provide ConocoPhillips with a copy of the lease or any confirmation from V.O. Limited that it

17  had entered such an agreement.  (*Id.*)  (In fact, Houtan Petroleum did not provide a copy of the

18  lease agreement to ConocoPhillips at any time prior to commencing this litigation.)

19        **E.**    **The Bona Fide Offer**

20        Also on October 18, Houtan Petroleum demanded that ConocoPhillips sell

21  Houtan Petroleum all of ConocoPhillips' structures, improvements and equipment at the Station.

22  (Docket No. 5, Ex. D.)  Significantly, Houtan Petroleum did not then advise ConocoPhillips that

23  it believed the termination was untimely because ConocoPhillips did not provide it more than 90

24  days prior to the termination date.  (*Id.*)  Moreover, Houtan Petroleum made its request almost

25  six months after receiving notification of termination in May 2007.  The PMPA required that

26  Houtan Petroleum make such a request within 30 days after such notice.

27  / / /

28  / / /

1          Nevertheless, on October 23, 2007, just five days after Houtan Petroleum's

2    demand, ConocoPhillips hand delivered the Bona Fide Offer to Houtan Petroleum.[1]  The Bona

3    Fide Offer was based on an independent appraisal prepared by a licensed third-party appraiser.

4    (Docket No. 3, ¶ 7, Ex. E.)  It required Houtan Petroleum's acceptance by October 29 and full

5    performance no later than October 31.  (*Id.*)  The purpose of these short time windows was not to

6    impede Houtan Petroleum's ability to close a purchase.  Rather, these constraints were

7    unavoidable as the Ground Lease obligated ConocoPhillips either to remove the structures,

8    improvements and equipment no later than November 10 (10 days after expiration of the Ground

9    Lease) or forfeit them.  (Docket No. 3, Ex. A.)  ConocoPhillips could not have made the Bona

10   Fide Offer any earlier because Houtan Petroleum did not tell ConocoPhillips it had secured a

11   lease of the Station premises until October 18.

12   **F.    Houtan Petroleum Prevents ConocoPhillips From Complying With Its**
13   **      Obligations Under the Ground Lease**

14         Houtan Petroleum rejected the Bona Fide Offer on October 29, 2007.  (Docket

15   No. 3, ¶ 8.)  Under the Ground Lease, ConocoPhillips had less than two weeks left to remove its

16   structures, improvements and equipment from the Station premises.  (*Id.*)  It was therefore

17   critical that ConocoPhillips promptly commence removal operations to ensure timely removal

18   and prevent a forfeiture of its property.  Houtan Petroleum, however, refused to allow

19   ConocoPhillips to access the Station Property for this purpose.

20   **G.    The Court Denies Plaintiff's Request For Preliminary Injunctive Relief**

21         The Court found that ConocoPhillips' termination was for a permissible reason

22   (the expiration of ConocoPhillips' underlying property lease) and that the notice of termination

23   included in the Franchise Agreement itself (which Houtan Petroleum executed 117 days prior to

24   termination) was timely under the PMPA.  (Docket No. 18 at 8:20-11:13.)  Thus, the Court

25   found "that there are not sufficiently serious questions going to the merits of Houtan's claim that

26   Conoco failed to give the requisite notice of termination."  (*Id.* at 12:15-18.)  The Court

27   _____

28   [1] As Houtan Petroleum's request for the offer was late, the offer was entirely voluntary.
     ConocoPhillips made the offer solely to accommodate Houtan Petroleum's desire to continue
     operating the station.

CONOCOPHILLIPS COMPANY'S TRIAL BRIEF

1   specifically found that "the parties' disagreement as to the value of the equipment and

2   improvements is not grounds for a preliminary injunction." (*Id.* at 14:11-12.) Moreover, the

3   Court recognized that in light of the expiration of ConocoPhillips' Ground Lease and Houtan

4   Petroleum's negotiation of its own lease, "there was no way Conoco could still perform under

5   the Franchise Agreement" (*Id.* at 17:14-15) and that "Houtan is now essentially asking the Court

6   to create a new franchise agreement" (*Id.* at 17:23-24). The Court rejected the request, denying

7   preliminary injunctive relief to prevent the franchise termination.

8   **H.    ConocoPhillips Makes, And Plaintiff Rejects, Several Offers To Leave**
    **The Equipment And Improvements At The Station *Pendente Lite***
9

10          Prior to the litigation, ConocoPhillips offered to leave its equipment and

11   improvements at the Station pending the parties' resolution or litigation of their value. Even

12   after Plaintiff moved for injunctive relief, ConocoPhillips remained willing to make such an

13   accommodation, as it made clear in its opposition and as the Court recognized in its order

14   denying injunctive relief. (Docket No. 18 at 16:7-14, 18:12-15.) As the Court acknowledged,

15   however, ConocoPhillips' willingness to enter such an interim agreement was contingent on the

16   parties' agreement to: (1) an appropriate interim rental payment by Houtan Petroleum; (2) an

17   allocation of responsibility for environmental compliance and other maintenance and repair

18   obligations; and (3) an appropriate manner and time for removal in the event Houtan Petroleum

19   ultimately declines to purchase this property. (Docket No. 18 at 16:7-14.)

20          After the Court denied injunctive relief, Houtan Petroleum indicated that it was

21   interested in a continuing fuel supply arrangement with ConocoPhillips. Accordingly,

22   ConocoPhillips offered to enter a 10-year fuel supply agreement with Houtan Petroleum. As part

23   of that proposal, ConocoPhillips offered to allow Houtan Petroleum to continue to use

24   ConocoPhillips' equipment and improvements, without making any rent payment, for the

25   duration of the fuel supply agreement. It further offered to make a $250,000 loan to Houtan

26   Petroleum to assist in rebuilding the station. Houtan Petroleum rejected the proposal.

27          Although Houtan Petroleum had rejected ConocoPhillips' voluntary offer, Houtan

28   Petroleum remained in possession of, and continued to operate the Station using,

- 7 -

1    ConocoPhillips' equipment and improvements -- a situation which continues today.  As the

2    Court has recognized, however, ConocoPhillips has, "no control and no right of entry" and no

3    ability "to supervise or ensure prudent station practices and compliance with applicable

4    regulations."  (Docket No. 18 at 18:23-27.)  Thus, ConocoPhillips could have reasonably and

5    prudently (and certainly legally) removed its equipment and improvements without further delay.

6     Nevertheless, ConocoPhillips continued its efforts to reach a reasonable interim agreement so

7    that Houtan Petroleum could continue to operate the Station pending the litigation.  Houtan

8    Petroleum has refused all such offers, but instead continues to retain and use ConocoPhillips'

9    equipment without paying rent.  Houtan Petroleum has issued itself the injunctive relief that

10   Court denied.

11   **III.    ISSUES FOR TRIAL**

12       **A.    Houtan Petroleum's Claims For Relief**

13           In its November 16, 2007 order the Court stated, "the issue that remains in this

14   action is whether the price contained in the offer was reasonable, and, therefore, whether the

15   offer was bona fide."  (Docket No. 18 at p. 14:13-15.)  Houtan Petroleum's other arguments

16   were rejected by the Court.

17       **1.    Expiration of the Ground Lease was a proper basis for**
             **termination.**
18

19           Under the PMPA, a franchisor may terminate any franchise upon "[t]he

20   occurrence of an event which is relevant to the franchise relationship and as a result of which

21   termination of the franchise or nonrenewal of the franchise relationship is reasonable. . . ."  15

22   U.S.C. § 2802(b).  Such an event includes "loss of the franchisor's right to grant possession of

23   the leased marketing premises through expiration of an underlying lease. . . ."  15 U.S.C. §

24   2802(c).  That is precisely what occurred here.  The parties knew ConocoPhillips could lose the

25   right to grant possession of the Station Property when the Ground Lease expired, and Houtan

26   Petroleum signed and initialed a notice of termination to this effect in July 2007.

27   / / /

28   / / /

1        **2.     ConocoPhillips gave proper and sufficient notice of termination.**

2          **a.     ConocoPhillips gave timely notice of termination.**

3         The PMPA ordinarily requires a franchisor to provide at least 90 days notice of

4 termination of a franchise agreement. 15 U.S.C. § 2804(a). Here, the Ground Lease was to

5 expire on October 31, 2007, two months after the Franchise Agreement became effective. Thus,

6 it would have been impossible for ConocoPhillips to provide 90 days notice after

7 commencement of the Franchise Agreement. This is precisely why ConocoPhillips provided the

8 required notice of termination as part of the Franchise Agreement itself.

9         ConocoPhillips provided this notice to Houtan Petroleum in May 2007, *five*

10 *months* prior to the termination date. (Pellegrino Decl., ¶ 5.) Houtan Petroleum's president

11 executed the Franchise Agreement on July 6, 2007, and separately initialed the notice of

12 termination, 117 days prior to the effective date of termination. (Haddad Decl., Ex. A at 000037,

13 63.) It is thus beyond dispute that ConocoPhillips provided more than the required 90 days'

14 notice, as this Court has already found. *See Hutchens v. Eli Roberts Oil Co.*, 838 F.2d 1138,

15 1143 (11th Cir. 1988) (franchisor provided adequate notice of termination due to expiration of

16 underlying ground lease where franchisee "was fully aware that [a third-party] owned the

17 premises, and the lease between [franchisee] and [franchisor] clearly states that it expires upon

18 the termination of [franchisor's] underlying lease"); *De Fosses v. Wallace Energy, Inc.*, 836 F.2d

19 22, 27 (1st Cir. 1987) (notice of termination due to imminent expiration of underlying property

20 lease provided at time of franchise agreement sufficient). Houtan Petroleum's continued claim

21 that ConocoPhillips failed to provide 90 days' notice of termination raises serious questions

22 under Rule 11.[2]

---

23   [2]   Plaintiff appears to claim that ConocoPhillips violated the PMPA by sending a reminder notice on September 18, 2007. In light of the notice of termination in the Franchise Agreement,

24 Houtan Petroleum has no right to any additional notices. Thus, ConocoPhillips' reminder notice, which it was not required to send, could not have violated the PMPA. Further, where a

25 franchisor gives a franchisee a second notice, it does not supplant the first notice. *Pugh v. Mobil Oil Corp.*, 533 F.Supp. 169, 175-176 (S.D. Tex. 1982). Thus, where an original notice complies

26 with the PMPA and a second notice is sent out that does not comply with the PMPA, "[t]he existence of the second notice [does] not eliminate or affect the validity of the first." *Id.* Even

27 were this Court to find that the September 18, 2007 reminder notice does not comply with the PMPA, such a finding is irrelevant because the notice in the Franchise Agreement itself, which

28 was signed and initialed by Houtan Petroleum's President <u>117 days</u> before the termination date, is valid under the PMPA, as this Court has already found.

1
     **b.**  **The PMPA did not require that ConocoPhillips make a**
**bona fide offer to sell Houtan Petroleum all equipment**
2
        **and improvements at the Station.**

3
    Where a franchisor terminates a franchise agreement due to the loss of its ground

4
lease of the station property, and the franchisee thereafter acquires possession of the property,

5
the franchisor must make a bona fide offer to sell all station equipment and improvements to the

6
franchisee. 15 U.S.C. § 2802(b)(4). The franchisor's obligation to make such an offer, however,

7
arises only upon the franchisee's notification that it has acquired possession of the station

8
premises. 15 U.S.C. § 2802(c)(4)(C)(i). Moreover, the franchisee is required to provide such

9
notice "not later than 30 days after notification" of termination of the franchise agreement. *Id.*

10
Here, Houtan Petroleum was notified of the termination in May 2007 and signed the notice of

11
termination on July 6, 2007, but did not request a "bona fide offer" until October 18, 2007.

12
Thus, ConocoPhillips was under no obligation to make such an offer.

13
     **c.**  **Even were COP required to make a "bona fide offer"**
**under the PMPA, it has done so.**
14

15
    Notwithstanding Houtan Petroleum's failure to comply with the PMPA, and even

16
though Houtan Petroleum refused to provide ConocoPhillips a copy of its claimed lease or even

17
confirmation from V.O. Limited of the existence of such a lease, ConocoPhillips immediately

18
prepared the Bona Fide Offer and hand delivered it to Houtan Petroleum. (Matthews Decl., ¶ 7;

19
Pellegrino Decl., ¶ 6.) The Bona Fide Offer was based on an independent, third-party appraisal,

20
prepared by a licensed appraiser. (Docket No. 3, ¶ 7, Ex. E.)

21
    The standard for determining whether an offer is "bona fide" under the PMPA

22
was addressed in *Anand v. BP West Coast Products LLC* (C.D. Cal. 2007) 484 F.Supp.2d 1086,

23
1096-97 (internal quotation marks, brackets and citations omitted):

24
    Whether a bona fide offer has been made is measured by an objective market standard.
To be objectively reasonable, an offer must approach fair market value. To that end, the
25
    offering price should reflect what a willing purchaser would pay for the fee title of the
land, the improvements and the equipment of a terminated franchise. The offering price
26
    need not be the actual fair market value of the property, however, because if courts had to
determine whether the distributor's offer *actually* was at fair market value, distributors
27
    could rarely rest comfortably that their offer would eventually be determined by the court
to be fair market value. Accordingly, the fair market value of any one property is a
28
    flexible concept, and a range of prices may have a reasonable claim to being [i.e.,
approaching] fair market value.

1    Because a range of prices may reasonably be found to approach fair market value, the
     mere fact that the parties have submitted competing appraisals and/or offers does not
2    necessarily preclude the entry of summary judgment in one party's favor. This is because
     an estimation of value almost always involves a conjecture, a guess, a prediction, a
3    prophecy. Furthermore, in determining the fair market value of a property, no one
     valuation method is required. Instead, the facts of each individual case will determine
4    what constitutes a bona fide offer.

5    (*See also Harara v. ConocoPhillips Company* (N.D. Cal. 2005) 377 F.Supp.2d 779, 788

6    ["Congress' use of the term 'bona fide' rather than 'fair market value' in the statute indicates a

7    recognition that the word 'value' almost always involves a conjecture, a guess, a prediction a

8    prophesy. [T]here is no universally infallible index of fair market value."] (internal quotation

9    marks and citations omitted).)

10            ConocoPhillips made its offer based on an appraisal prepared by an independent,

11   third-party appraiser. Houtan Petroleum has retained a litigation appraiser, who reaches a

12   different conclusion regarding value. This conclusion presumes, however, that the station must

13   be totally demolished and rebuilt. The record supports no such conclusion.

14            **3.        Houtan Petroleum cannot establish any recoverable damages**

15            This issue is fully addressed in ConocoPhillips' motion to strike Houtan

16   Petroleum's jury demand, its supporting reply and its Motion in Limine No. 3. ConocoPhillips

17   directs the Court's attention to those filings, which should dispose this issue. In summary:

18            Although the PMPA permits recovery of damages caused by an improper

19   franchise termination, the Court here has already found that Plaintiff cannot establish an

20   improper termination. ConocoPhillips provided timely notice (117 days) in the franchise

21   agreement itself that the agreement would terminate when ConocoPhillips' underlying property

22   lease expired (a proper ground for termination under the PMPA). (Docket No. 18 at 11:2-13; 15

23   U.S.C. § 2802(c)(4).) As the termination was proper, it is axiomatic that Plaintiff could not

24   demonstrate any damages resulting therefrom.

25            Moreover, where a franchisee asserts a claim under the PMPA to challenge a

26   franchise termination, but remains in possession of the station property pending litigation, the

27   franchisee as a matter of law cannot establish any damages resulting from the termination. *See*,

28   e.g., *Chevron U.S.A., Inc. v. El-Khoury*, 202 WL 31256160, *2 (C.D. Cal. 2002); *Blankenship v.*

- 11 -

1   *Knox Oil Co.*, 548 F. Supp. 789 (E.D. Tenn. 1982) ("Plaintiff has had possession of the premises

2   and has continued to operate the service station. He has, therefore, suffered no damages"); *see*

3   *also Clark v. Mobil Oil Corp.*, 496 F. Supp. 132, 136 (E.D.Mo. 1980) ("inasmuch as plaintiff has

4   continued to operate the filling station [pending resolution of PMPA litigation challenging

5   nonrenewal] he has sustained no actual damages other than nominal"); *Noe v. Mobil Oil Corp.*,

6   503 F. Supp. 213, 216 (E.D.Mo. 1980) (notwithstanding trial verdict resulting in imposition of

7   injunction to prevent franchise termination, franchisee was denied monetary damages where

8   "there was no evidence that plaintiff suffered any actual damages from defendant's attempt to

9   terminate"). Such is the case here. Plaintiff has maintained station operations throughout the

10  litigation, retaining and using -- but without paying any rent for -- ConocoPhillips' pumps,

11  storage tanks, buildings and other property. In reality, the franchise termination has, thus far,

12  resulted in a substantial windfall, not any compensable monetary loss, to Plaintiff.

13              The termination has affected station operations in two ways: 1) Houtan

14  Petroleum may no longer use ConocoPhillips' trademarks and trade dress; and 2) ConocoPhillips

15  no longer supplies gasoline to the station (which instead purchases gasoline from other sources).

16  Under the Franchise Agreement, however, Plaintiff had no reasonable expectation that it would

17  continue to use ConocoPhillips' trademarks or receive a fuel supply from ConocoPhillips after

18  October 31, 2007. The plain language of the agreement made clear that it would terminate, and

19  with it Plaintiff's right to use ConocoPhillips' intellectual property, upon expiration of

20  ConocoPhillips' underlying property lease. (Docket No. 5, Ex. A at ¶¶ 2(a), 10(d), Addendum

21  1.) Moreover, it was Houtan Petroleum's agreement to lease the property directly from the

22  property owner (V.O. Limited), and not any act by ConocoPhillips, that necessitated termination.

23  Plaintiff thus cannot show "termination or non-renewal of the franchise on terms other than

24  those permitted" (*El-Khoury*, 2002 WL 31256160 at *2), much less any resulting injury.

25              Houtan Petroleum's sole argument for damages under the PMPA is that because

26  ConocoPhillips allegedly failed to provide it sufficient notice of the termination, it was

27  unprepared to take over operations after October 31, 2007 and as a result it lost profits when its

28  ability to conduct credit card transactions ceased for five days. This argument is predicated on

1    the claim that ConocoPhillips' notice, which occurred 117 days before the termination of the

2    franchise, was defective under the PMPA, which only requires 90 days notice.  Houtan

3    Petroleum's argument is without merit as this Court has already adjudicated in denying

4    injunctive relief.  Houtan Petroleum makes no other claim for damages.

5        **B.    ConocoPhillips' Counterclaims**

6            ConocoPhillips has asserted three counterclaims:  (1) breach of contract; (2)

7    conversion; and (3) unjust enrichment.  Each of these counterclaims are based on the fact that

8    after the franchise terminated Houtan Petroleum wrongfully maintained possession of

9    ConocoPhillips' pumps, storage tanks, buildings and other property at the service station without

10   paying any rent for their use.

11       **1.    Liability**

12           **a.    Breach of contract**

13           The elements for a breach of contract are:  (1) the existence of a contract, (2)

14   plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages.

15   *Acoustics, Inc. v. Trepte Construction Co.,* 14 Cal.App.3d 887, 913 (1971).  Here, there is no

16   dispute that ConocoPhillips and Houtan Petroleum entered into the Franchise Agreement.  There

17   can also be no dispute that ConocoPhillips performed all of its obligations under the Franchise

18   Agreement until its termination on October 31, 2007.  Termination of the Franchise Agreement

19   on October 31, 2007 based on the nonrenewal of the Ground Lease was specifically provided for

20   in Addendum 1 to the Franchise Agreement, which was initialed by Houtan Petroleum's

21   President.

22           The Franchise Agreement further provides that "[a]t the expiration, nonrenewal or

23   earlier termination of this Agreement, DEALER shall yield immediate and peaceable possession

24   of the Station to CONOCOPHILLIPS. . . ."  (Docket No. 5 at 25 (¶ 32).)  It is undisputed that

25   Houtan Petroleum breached this provision of the Franchise Agreement by refusing to permit

26   ConocoPhillips to recover its equipment and improvements.  Houtan Petroleum's wrongful

27   retention of the property has damaged ConocoPhillips in that it no longer enjoys the use of its

28   property, it is unable to sell the property to third parties, the property continually depreciates in

1    value while it is out of ConocoPhillips' possession and ConocoPhillips is potentially subject to

2    considerable environmental litigation and administrative action because it is unable to monitor

3    the condition and performance of the property, including the underground storage tanks.  Houtan

4    Petroleum's actions constitute multiple breaches of the Franchise Agreement.

5                                    **b.    Conversion**

6           "Conversion is the wrongful exercise of dominion over the property of another.

7    The elements of a conversion claim are:  (1) the plaintiff's ownership or right to possession of

8    the property; (2) the defendant's conversion by a wrongful act or disposition of property rights;

9    and (3) damages.  Conversion is a strict liability tort.  The foundation of the action rests neither

10   in the knowledge nor the intent of the defendant.  Instead, the tort consists in the breach of an

11   absolute duty; the act of conversion itself is tortious.  Therefore, questions of the defendant's

12   good faith, lack of knowledge, and motive are ordinarily immaterial." *Burlesci v. Petersen,* 68

13   Cal.App.4th 1062, 1066 (internal citations omitted) (1998).

14          Here, there is no dispute that ConocoPhillips owns the pumps, storage tanks,

15   buildings and other property at the service station.  It is also undisputed that Houtan Petroleum's

16   wrongful retention of the property has damaged ConocoPhillips, as discussed above.  Houtan

17   Petroleum has attempted, but failed, to get a preliminary injunction requiring ConocoPhillips to

18   leave the property in place, but still remains in possession of the property and will not return it to

19   ConocoPhillips.  Such is a conversion of ConocoPhillips' property.

20                                   **c.    Unjust enrichment**

21          An individual is required to make restitution where he is unjustly enriched at the

22   expense of another.  *Ghirardo v. Antoniolo,* 14 Cal.4th 39, 51 (1996).  "A person is enriched if

23   he receives a benefit at another's expense.  [Citation.]  The term 'benefit' 'denotes any form of

24   advantage.' [Citation.]" *Id.*  Here, Houtan Petroleum has been unjustly enriched by wrongfully

25   retaining and using ConocoPhillips' property, including pumps, underground storage tanks, etc.,

26   without paying any compensation to ConocoPhillips.  Both of these activities caused damage to

27   ConocoPhillips as discussed above.

28   / / /

1     **2.     Damages**

2          (a)     <u>**Breach of contract**</u>. California Civil Code section 3300 states: "[f]or the

3     breach of an obligation arising from contract, the measure of damages, except where otherwise

4     expressly provided by this code, is the amount which will compensate the party aggrieved for all

5     the detriment proximately caused thereby, or which, in the ordinary course of things, would be

6     likely to result therefrom."

7          Since October 31, 2007, Houtan Petroleum has wrongfully retained possession of

8     ConocoPhillips' property.  ConocoPhillips is entitled to an injunction forcing Houtan Petroleum

9     to return the property, and reasonable rent for the period of time Houtan Petroleum retained the

10    property without paying rent.  ConocoPhillips will present evidence at trial that $4,000 per

11    month is a reasonable amount of rent.  ConocoPhillips will also seek interest on the amount of

12    rent due pursuant to California Civil Code section 3287.

13         Paragraph 48 of the Franchise Agreement, entitled "Attorney Fees," provides that

14    "[i]n the event an action is brought to enforce or interpret this Agreement, the prevailing party

15    shall be entitled to reimbursement of all costs including, but not limited to, reasonable attorney

16    fees and costs incurred." (Docket No. 5, Ex. A.)  ConocoPhillips will seek its reasonable

17    attorney fees and costs incurred in the prosecution of its counterclaims and defense of Houtan

18    Petroleum's PMPA claims pursuant to the Franchise Agreement.

19         (b)     <u>**Conversion.**</u>  California Civil Code section 3336 states:

20         The detriment caused by the wrongful conversion of personal property is presumed to be:

21         First—The value of the property at the time of the conversion, with the interest from that
           time, or, an amount sufficient to indemnify the party injured for the loss which is the
22         natural, reasonable and proximate result of the wrongful act complained of and which a
           proper degree of prudence on his part would not have averted; and
23
           Second—A fair compensation for the time and money properly expended in pursuit of
24         the property.

25         Houtan Petroleum converted ConocoPhillips' property on October 31, 2007.  The

26    value of the property at the time of the conversion was approximately $340,000 based on

27    ConocoPhillips' independent appraisal.  Houtan Petroleum may either pay ConocoPhillips

28    $340,000 plus interest and keep the property, or return the property and pay ConocoPhillips

1  reasonable rent from October 31, 2007 to the present to indemnify ConocoPhillips for the

2  conversion. ConocoPhillips will present evidence at trial that $4,000 per month is a reasonable

3  amount of rent. ConocoPhillips will also seek interest on the amount of rent due pursuant to

4  California Civil Code section 3288.

5            Houtan Petroleum's conversion of ConocoPhillips' property was tortious and

6  ConocoPhillips is entitled to exemplary damages pursuant to California Civil Code section 3294.

7  ConocoPhillips will present evidence at trial that Houtan Petroleum's wrongful conversion of its

8  property was intentional and malicious in that Houtan Petroleum knew it did not have the right to

9  retain the property and was so informed by this Court when it lost its motion for a preliminary

10  injunction, but thereafter refused to return the property or pay any rent.

11            **(c)**    **Unjust enrichment.** ConocoPhillips is entitled to restitution of the

12  amount Houtan Petroleum has been unjustly enriched at its expense. *Ghirardo, supra,* 14

13  Cal.4th at p. 51. Houtan Petroleum has wrongfully retained and used ConocoPhillips' property

14  since October 31, 2007. ConocoPhillips is entitled to return of its property and reasonable rent

15  for the period of time Houtan Petroleum retained the property without paying rent.

16  ConocoPhillips will present evidence at trial that $4,000 per month is a reasonable amount of

17  rent. ConocoPhillips will also seek interest on the amount of rent due. Moreover,

18  ConocoPhillips is entitled to disgorgement of all amounts Houtan Petroleum has received from

19  its use of the equipment and improvements.

20

21            Dated:  February 1, 2008

22            GLYNN & FINLEY, LLP
              CLEMENT L. GLYNN
23            ADAM FRIEDENBERG
              One Walnut Creek Center
24            100 Pringle Avenue, Suite 500
              Walnut Creek, CA  94596

25

26            By _____

27            Attorneys for Defendant and Counter-
              Plaintiff ConocoPhillips Company

28

CONOCOPHILLIPS COMPANY'S TRIAL BRIEF