Thomas P. Bleau, Esq., SBN 152945
Gennady L. Lebedev, Esq., SBN 179945
BLEAU / FOX, A P.L.C.
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, California 90068
Telephone   :  (323) 874-8613
Facsimile    :  (323) 874-1234
e-mail:        bleaushark@aol.com
e-mail:        glebedev@bleaufox.com

Attorneys for Plaintiff,
HOUTAN PETROLEUM, INC.

**UNITED STATES DISTRICT COURT IN AND FOR**

**THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOUTAN PETROLEUM, INC. | CASE NO. 07-CV-5627 SC |
| Plaintiff, | |
| vs. | PLAINTIFF, HOUTAN PETROLEUM, INC.'S, TRIAL BRIEF |
| CONOCOPHILLIPS COMPANY, a Texas Corporation and DOES 1 through 10, Inclusive | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

1.  SUMMARY OF FACTS AND ARGUMENT.........................................................1
2.  SUMMARIZED PROCEDURAL HISTORY.........................................................7
3.  BURDEN OF PROOF..............................................................................................8
4.  FURTHER APPLICABLE LAW............................................................................8
5.  ELEMENTS OF PROOF.......................................................................................11
6.  PLAINTIFF'S REMEDIES...................................................................................11
    A.  Damages......................................................................................................12
    B.  Injunctive Relief.........................................................................................12

**TABLE OF AUTHORITIES**

*Federal Cases*

*Ajir v. Exxon Corp.* 855 F.Supp.294, 297 (N.D.Cal. 1994).................................................................9

*Arnold v. Amoco Oil Co.* 872 F.Supp. 1493 (W.D. Va. 1995)............................................................12

*Davy v. Murphy Oil*, 488 F. Supp. 1013 (W.D.Mich.1980)..................................................................8

*Ellis v. Mobil Oil* 969 F.2d 784, 788 (9th Cir. 1992)....................................................................9, 11

*Hazara Enterprises, Inc. v. Motiva Enterprises, LLC*, 126 F.Supp.2d 1365 (2000)......................9, 10

*Hilo v. Exxon Corp.*, 997 F.2d 641 (9th Cir. 1993)............................................................................13

*May-Som Golf Inc. v. Chevron USA,* 869 F.2d 917 (6th Cir. 1989)....................................................9

*Oparaocha v. Sun Co.*, 3 F. Supp. 2d 4, 7 (D.D.C. 1998)................................................................8, 9

*Pruitt v. New Eng. Petroleum L.P.,*
    2006 U.S. Dist. LEXIS 85961 (D. Conn. 2006)............................................................................8

*Roberts v. Amoco Oil Co.,* 740 F.2d 602 (8th Cir. 1984)....................................................................11

*Secker v. Star Enterprise*, 124 F.3d 1399 (11th Cir. 1997)..................................................................9

*Slatky v. Amoco Oil Co.* 830 F.2d 476 (3rd Cir. 1987)................................................................11, 12

*Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d 54, 60 (2d Cir. 1984)....................................................8

*Zipper v. Sun Co., Inc.* 947 F. Supp. 62, 68 (E.D.N.Y. 1996)..............................................................8

*Federal Statutes*

15 U.S.C. §2801...................................................................................................................................2

15 U.S.C. §2802(c).........................................................................................................1, 2, 9, 10, 11, 13

15 U.S.C. §2804............................................................................................................2, 5, 6, 11, 12

15 U.S.C. §2805.....................................................................................................................8, 12, 13

1. **SUMMARY OF FACTS AND ARGUMENT**

On July 6, 2007, Houtan Petroleum, Inc., signed a renewed franchise agreement with ConocoPhillips, with an expiration date of August 31, 2010 that contained the following provision.

> There is a possibility that the term of the underlying lease to the Station might expire and not be renewed upon the underlying lease's expiration date. DEALER hereby acknowledges CONOCOPHILLIPS' disclosure to DEALER that this Agreement and the Station herein are subject to all the terms and conditions of an underlying lease held by CONOCOPHILLIPS in the property and premises, which underlying lease expires on **October 31, 2007** and that such underlying lease may expire and may not be renewed during the Term of this Agreement. Thereby the DEALER is hereby on notice that this Agreement is hereby terminated on the date the underlying lease expires or on a prior date in the event CONOCOPHILLIPS' lessor terminates the underlying lease or the underlying lease otherwise requires early termination.
>
> CONOCOPHILLIPS is under no obligation to seek an extension or renewal, or exercise any renewal options it may have, of such underlying lease, but may do so at its discretion.
>
> If no dates are filled in above, then CONOCOPHILLIPS does not have possession of the Station, property and premises, under or through an underlying lease.

Houtan Petroleum, does not dispute that this provision complies with the first of two notice requirements under the Petroleum Marketing Practices Act ("PMPA") found in 15 U.S.C. §2802(c), providing in relevant part that:

> 2802(c) "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as -
>
> 2802(c)(4) loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if -
>
> 2802(c)(4)(A) the franchisee was notified in writing, **prior to the commencement of the term of the then existing franchise** -
>
> 2802(c)(4)(A)(i) **of the duration of the underlying lease**, and
>
> 2802(c)(4)(A)(ii) **of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination)** or at the end of such term (in the case of nonrenewal) (emphasis added).

However, as explained below Houtan Petroleum <u>does</u> dispute ConocoPhillips' contention that it has complied with its other obligations and conditions precedent to termination of a franchise, as mandated elsewhere in the PMPA.

On September 18, 2007, ConocoPhillips sent Houtan Petroleum a "NOTICE OF

-1-
HOUTAN PETROLEUM'S TRIAL BRIEF

TERMINATION" allegedly "pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA")." This Notice was sent to Houtan Petroleum less than 90 days prior to the termination date of the franchise of October 31, 2007. Houtan Petroleum contends that ConocoPhillips was required to provide this Notice of Termination at least 90 days prior to the termination date of October 31, 2007. As further explained below, this contention is based on the second notice requirement mandated by the PMPA under 15 U.S.C. §2804(a), providing in relevant part:

> 2804(a) General requirements applicable to the franchisor. Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor **shall furnish notification of such termination** or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship -
>
> 2804(a)(1) in the manner described in subsection (c) of this section; and
>
> 2804(a)(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

On October 18, 2007, Houtan Petroleum notified ConocoPhillips in writing that it will be acquiring possession of the premises from the landlord and demanded that ConocoPhillips forward a bona fide offer to sell its equipment and improvements. Houtan Petroleum contends that this request was in full compliance with the express language of the PMPA §2802(c)(4)(C), indicating that in a situation where the franchisor loses the underlying lease, a termination of a franchise relationship is not effective until,

> in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately **after the loss of the right of the franchisor to grant possession** (through an assignment [of an option to extend the underlying lease] pursuant to subparagraph (B) or by obtaining a new lease or purchasing the marketing premises from the landowner), the franchisor (if requested in writing by the franchisee not later than 30 days after notification was given pursuant to section 2804 of this title), during the 90 - day period after notification was given pursuant to section 2804 of this title –   (i)    made a bona fide offer to sell, transfer, or assign to the franchisee the interest of the franchisor in any improvements or equipment located on the premises..." 15 U.S.C. §2802(c)(4)(C) (emphasis added).

In response to Houtan Petroleum's request for a bona fide offer, on October 22, 2007, ConocoPhillips sent Plaintiff an "OFFER TO SELL IMPROVEMENTS" along with a Bill of Sale for $340,000.00, also allegedly "[i]n accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq."

The same equipment and improvements that ConocoPhillips offered to sell for $340,000.00

1   was appraised by an MAI appraiser, Andrew C. Plaine, retained on Plaintiff's behalf for a total
2   amount of $145,000.00.  Consequently, the evidence will show that ConocoPhillips' offered price
3   exceeds the fair market value of the property by seventy-four percent (74%).[1]

4   Effective November 1, 2007, Plaintiff began leasing the premises directly from the landlord.

5   ConocoPhillips now contends, that despite having issued a Notice of Termination on
6   September 18, 2007 and despite having made an allegedly *bona fide* PMPA offer to Houtan
7   Petroleum on October 22, 2007, it was not required to do so.  More importantly, ConocoPhillips
8   contends that neither its September 18, 2007 Notice of Termination, nor the October 22, 2007 offer
9   can be analyzed in the context of the PMPA because they need not comply with the PMPA.  The
10  evidence will show, that such contentions are ludicrous and disingenuous in light of ConocoPhillips
11  own actions and admissions and the PMPA itself.

12  The evidence will also show that it was not reasonable for ConocoPhillips to provide Plaintiff
13  with less than 90 days Notice of Termination as required by the PMPA, and that Plaintiff suffered
14  damages as a result.

15  ConocoPhillips knew as early as March 2006 that the landowner of the subject property was
16  not interested in renewing its lease.  ConocoPhillips also <u>admitedly</u> knew that it was required to
17  provide a Notice of Termination to Houtan Petroleum at least 90 days prior to October 31, 2007, if
18  it was unable to negotiate a new lease with the landowner.

19  In an e-mail dated March 21, 2007, ConocoPhillips' real estate manager, Richard L. Mathews
20  communicated to the property manager for the landowner the following:

> **My management is becoming very disenchanted.**  Since early in 2006, I have sent dozens of e-mails and at least two formal letters (just since December, 2006) following your initial requests to express our willingness to stay and under what terms, and not one piece of correspondence has been responded to with anything material, such as what lease terms and what rent you want.
>
> What does ConocoPhillips need to do to get a "response"? Do you want a face to face meeting - then tell me when and where and I will be there.  Please, just give me some definitive response to our proposal.
>
> If you do not want ConocoPhillips as a tenant after our current lease expires on

---

[1]   Calculated by subtracting appraised value of $145,000.00 from ConocoPhillips' offer of $340,000.00 and dividing $145,000.00 by the difference of $195,000.

-3-
HOUTAN PETROLEUM'S TRIAL BRIEF

1         10/31/07, then just please say so and we will move on.

2 In a letter dated April 12, 2007, Mr. Mathews writes:

> I am concerned that we have not had any material response to our good faith effort and proposal sent in December, 2006. I'm further perplexed because we have been a tenant of yours for several years, and I suggest we have been a reasonably good tenant, and COP is a solid company financially. I am more than willing to pursue the entitlements but before we do we need to finalize the basic ground lease extension terms and conditions, as well as rent, in order to ensure the proposed project meets our economic hurdles. I do not think this is an unreasonable position for COP to take. **Time, however, is now a real concern as the current ground lease expires on October 31, 2007.**

Still, on September 17, 2007, Mr. Mathews wrote:

> I am still hopeful that ConocoPhillips ("COP") might still have an opportunity to secure a long-term lease with you for the above-referenced location. **Since there has been no response since your brief letter dated May 24th, 2007, however, I appreciate this might not be possible**. Please understand that we are still interested if you are willing to discuss this issue with COP.
>
> **In the meantime, there are notice obligations we must make to our franchise dealer that make it necessary for us to request a short-term extension.** To this end, this letter serves as a formal request to extend the expiration date to the ground lease for a period of **ninety (90) days**, under the same terms and conditions. If you concur, the revised expiration date will be January 31, 2008.
>
> In addition, I would like to also request that the period by which we must raze all improvements following the terms of the lease be extended from 10 days to 30 days.
>
> **Timing is of the essence**, so may we please have your response to our **90-day** extension request by **September 21, 2007**? (emphasis in original) Should I not hear from you by September 21st, I will take your silence as your unwillingness to extend the lease as requested.

ConocoPhillips issued its "NOTICE OF TERMINATION" allegedly "pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA")" on the next day, September 18, 2008.

The May 24, 2007 letter from the landlord referred to by Mr. Mathews merely states:

> I apologize for not getting back to you earlier. I know your present lease expires in October of 2007.
>
> At this time we are exploring some alternatives.

This will be further corroborated by testimony from the landlord itself. Further, in light of the fact that ConocoPhillips did not issue its Notice of Termination to Houtan Petroleum until September 18, 2007, the above-described letters and especially the September 17, 2007 letter is

-4-
HOUTAN PETROLEUM'S TRIAL BRIEF

telling of ConocoPhillips' true state of mind with regard to the termination of Houtan Petroleum's franchise. First, ConocoPhillips' "disenchantment" with the landlord's lack of response to its multiple requests to extend the master lease are indicative of ConocoPhillips' realization that the landlord was unwilling to continue its relationship with ConocoPhillips. Given the landlord's lack of response to ConocoPhillips' requests since May 24, 2007, ConocoPhillips' plea of ignorance of the fact that the landlord was not interested in extending the master lease amounted to wilful blindness at best.

Second, in its September 17, 2007 letter, ConocoPhillips acknowledges and admits that "there are notice obligations [it] must make to [its] franchise dealer that make it necessary for [ConocoPhillips] to request a short-term extension" of the lease for 90 days for which "[t]iming is of the essence." Clearly, this amounts to an undisputable admission of ConocoPhillips' awareness that it must comply with the 90 day notice requirement of the PMPA. 15 U.S.C. §2804(a)(2). However, this awareness did not manifest as late as September 17, 2007. Rather, it existed all along, as evidenced by ConocoPhillips' ongoing concern that it is running out of time before the October 31, 2007 expiration of the master lease, as well as the reference to the PMPA in its Notice of Termination and the Offer To Sell Improvements themselves.

In light of its own admissions, in its correspondence with Plaintiff and the landlord, ConocoPhillips' contention that it was not required give Houtan Petroleum a 90 day Notice of Termination that it ultimately did provide on September 18, 2007, is false and disingenuous. The truth of the matter is that ConocoPhillips knew all along that it was required to provide such notice. Moreover, its failure to provide such notice at least 90 days prior to termination, caused Plaintiff to request that it make a *bona fide* offer for sale its equipment and improvements on October 18, 2007, which in turn, resulted in ConocoPhillips making such offer on October 22, 2007 (merely 9 days prior to the October 31, 2007 franchise termination date).

Plaintiff intends to prove that as a result of this condensed time frame, the cause for which falls solely on ConocoPhillips, Houtan Petroleum was placed in a position where it was unable to sell fuel through credit card transactions for a period of five days, until the Court granted Plaintiff's application for temporary restraining order and Plaintiff's station was placed back online by

ConocoPhillips, resulting in estimated gross sales of $75,250.00 and lost gross profits in the amount of $25,090.00. But for ConocoPhillips' delay in issuing the Notice of Termination and making its offer, Plaintiff could have prepared for the October 31, 2007 termination date sooner and could have avoided the five days of down time. ConocoPhillips has no reasonable excuse for its failure to comply with the 90 day notice requirements of the PMPA because, by its own admission, "the earliest day on which furnishing such notification [was] reasonably practicable" was clearly much earlier than September 18, 2007. 15 U.S.C. 2804(b)(1).

In addition to the issue of damages caused by ConocoPhillips' untimely notice, one of the central issues in this case is whether ConocoPhillips' Offer to Plaintiff complies with the PMPA. Plaintiff contends that ConocoPhillips failed to extend a "bona fide" offer to Plaintiff under the PMPA because the purchase price was in excess of and did not approach fair market value.

Thus, the jury should be allowed to determine any and all questions of fact that are at issue in this case, including but not limited to, the following:

    1.    The reasonableness of ConocoPhillips shortened Notice of Termination of less than 90 days;

    2.    Whether the price contained in ConocoPhillips' Offer to Plaintiff "approaches" fair market value;

    3.    The price at which ConocoPhillips should be compelled to offer the subject property to Plaintiff;

    4.    Plaintiff's damages as caused by ConocoPhillips' violations of the PMPA, including, Plaintiff's lost profits arising out of ConocoPhillips' failure to provide notice of termination and an offer for the sale of its equipment and improvements in a timely manner.

Although ConocoPhillips has filed three Counterclaims against Houtan Petroleum, each counterclaim is based on California state law, rather than the PMPA. As explained in Houtan Petroleum's pending motion to dismiss the counterclaims under Rule 12(b)(6) (Docket Nos. 49 and 50), each of these counterclaims is preempted by the PMPA.

Additionally, nothing in the PMPA entitles ConocoPhillips to collect any rental value for its property after termination of the franchise relationship and ConocoPhillips has not cited any law to

the contrary. Under the PMPA, ConocoPhillips is required to make a bona fide offer as a condition precedent to its rights vis a vis the property. If ConocoPhillips is found to have satisfied such requirement, Plaintiff will have the opportunity to purchase the equipment and improvements at the offered price of $340,000. If, however, Plaintiff prevails on the merits, ConocoPhillips will be found to have failed to comply with the PMPA and would therefore not be entitled to collect any rental value for its equipment and improvements, which it was required to offer for a price that approaches fair market value. Instead, ConocoPhillips will be required to make another offer to Plaintiff for a price that does approach fair market value. Only if Plaintiff eventually rejects a bona fide offer from ConocoPhillips to sell the items for a price that approaches fair market value will ConocoPhillips have the right to remove its items.

**2.    SUMMARIZED PROCEDURAL HISTORY**

On November 5, 2007, Plaintiff filed the instant action along with an application for a Temporary Restraining Order and Preliminary Injunction. Although the Temporary Restraining Order was initially granted, Plaintiff's application for a Preliminary Injunction was denied pursuant to the Court's Order dated November 16, 2007.

On December 21, 2007, ConocoPhillips filed its Motion to Dismiss Houtan Petroleum's Complaint under Rule 12(b)(6). On the same day, ConocoPhillips filed an Application for Writ of Possession and Preliminary Injunction to recover its equipment and improvements prior to trial of the matter.

On January 11, 2008, the Court summarily denied both ConocoPhillips' Motion to Dismiss and Application for Writ of Possession and Preliminary Injunction. On the same day, the Court advanced the jury trial date previously set for June 13, 2008 to February 11, 2008.

On January 18, 2008, ConocoPhillips filed its Answer to Houtan Petroleum's Complaint, along with three Counterclaims against Houtan Petroleum for (1) Breach of Contract, (2) Conversion and (3) Unjust Enrichment.

On January 23, 2008, ConocoPhillips filed a Motion to Strike Plaintiff's Jury Demand, which is currently pending and set for hearing before this Court on February 6, 2008.

On January 24, 2008, Houtan Petroleum filed its Motion to Dismiss ConocoPhillips'

-7-
HOUTAN PETROLEUM'S TRIAL BRIEF

1  Counterclaims, which is currently pending and set for hearing before this Court on February 6, 2008.

2  On January 29, 2008, Houtan Petroleum filed a Motion in Limine to Preclude ConocoPhillips

3  from introducing evidence of settlement discussions at trial, set for hearing on February 6, 2008.

4  On January 29, 2008, ConocoPhillips filed six Motions in Limine against Houtan Petroleum,

5  all of which are set for hearing on February 6, 2008.

6  On January 31, 2008, Houtan Petroleum filed a Motion to Strike ConocoPhillips fact and

7  expert witness designations for failure to comply with Rule 26.

**3.  BURDEN OF PROOF**

Under the PMPA, the only items which Houtan Petroleum is required to establish is that there has been a nonrenewal of its franchise and its damages caused by ConocoPhillips' failure to comply with the PMPA. Given that there is no dispute that ConocoPhillips terminated the franchise, effective October 31, 2008, the burden shifts to ConocoPhillips to prove that it has complied with all of the PMPA requirements for termination of the franchise relationship. 15 U.S.C. § 2805(c).

Additionally, it is the franchisor who bears the burden of proving that its notice of termination complies with the PMPA. *Pruitt v. New Eng. Petroleum L.P.*, *supra*, (citing 15 U.S.C. § 2805(c)).

**4.  APPLICABLE LAW**

In addition to the law quoted above, courts construe the PMPA notice requirements strictly. *Pruitt v. New Eng. Petroleum L.P.,* 2006 U.S. Dist. LEXIS 85961 (D. Conn. 2006) (*citing, Ceraso, 326 F.3d at 314* and *Escobar v. Mobil Oil Corp.*, 678 F.2d 398, 400 n.2 (2d Cir. 1982); *see also, Davy v. Murphy Oil*, 488 F. Supp. 1013, 1016 (W.D.Mich.1980) (Failure to comply with the notice provision, even if the defect is only a minor or technical one, is grounds to enjoin the termination or nonrenewal of the franchise relationship).

The 90-days notice requirement is an important provision of the PMPA and should not be lightly excused. *Oparaocha v. Sun Co.*, 3 F. Supp. 2d 4, 7 (D.D.C. 1998) (*citing, Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d 54 (2d Cir. 1984)); see also, *Zipper v. Sun Co., Inc.* 947 F. Supp. 62, 68 (E.D.N.Y. 1996) (finding less than 90-days notice to be invalid in a situation where franchisee was delinquent in paying the franchisor for money that was allegedly due) (*quoting*, *Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d 54, 60 (2d Cir. 1984)). In fact, the 90-days notice is so important that

1  failure to comply with the requirement can show a "willful disregard" of the PMPA so as to warrant
2  imposition of exemplary damages. *See e.g., Oparaocha v. Sun Co., supra.*

3        The overriding purpose of the PMPA "is to protect the franchisee's reasonable expectation
4  of continuing the franchise relationship. [citations omitted]. Therefore, the Act is to be liberally
5  construed consistent with the goal of protecting franchisees." *Ajir v. Exxon Corp.* (N.D.Cal. 1994)
6  855 F.Supp.294, 297, See, also, *Ellis v. Mobil Oil* (9th Cir. 1992) 969 F.2d 784, 788. Further, the
7  PMPA must be liberally construed to effect its overriding remedial purpose of protecting the
8  franchisee from arbitrary or discriminatory acts of the franchisor. *Hazara Enterprises, Inc. v. Motiva*
9  *Enterprises, LLC* 126 F.Supp.2d 1365, 1372 (2000) (citing, *Secker v. Star Enterprise*, 124 F.3d 1399
10  (11th Cir. 1997); *May-Som Golf Inc. v. Chevron USA,* 869 F.2d 917 (6th Cir. 1989)).

11        The express language of the PMPA §2802(c)(4)(C) provides that in a situation where the
12  franchisor loses the underlying lease, a termination of a franchise relationship is not effective until,

> in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately **after the loss of the right of the franchisor to grant possession** (through an assignment [of an option to extend the underlying lease] pursuant to subparagraph (B) or by obtaining a new lease or purchasing the marketing premises from the landowner), the franchisor (if requested in writing by the franchisee not later than 30 days after notification was given pursuant to section 2804 of this title), during the 90 - day period after notification was given pursuant to section 2804 of this title –   (i)   made a bona fide offer to sell, transfer, or assign to the franchisee the interest of the franchisor in any improvements or equipment located on the premises..." 15 U.S.C. §2802(c)(4)(C).

18        Case law supports Plaintiff's position that Plaintiff need not request the sale of improvements
19  and equipment until 30 days after he "acquires possession of the leased marketing premises effective
20  immediately **after** the loss of the right of the franchisor to grant possession."

21        In *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365 (2000), Motiva
22  voluntarily terminated the underlying ground lease with the landlord, Kathleen Erskine Leutze,
23  effective November 30, 1999 pursuant to a lease term authorizing cancellation upon 180 days notice.
24  On April 8, 1999, Motiva advised its lessee dealer, Hazara Enterprises, Inc., that it did not intend to
25  renew its franchise agreement effective November 30, 1999. Hazara thereafter attempted to negotiate
26  a new lease directly from the landowner, but was unable to accomplish this until November 20, 1999,
27  when it executed a new lease with the landlord. Shortly after Hazara Enterprises, Inc. regained its
28  right of possession of the marketing premises on December 13, 1999, Hazara asked Motiva to sell

1  the underground fuel lines and storage tanks to it. After an evidentiary hearing, the Magistrate Judge
2  found the underground storage tank system at Hazara's station to be "potentially dangerous" and
3  recommended to grant the injunctive relief. *Id*. at 1367-1369.

4        The Court held, however, that there was "at least an issue of fact as to the timeliness of
5  Hazara's request to purchase the equipment because, as Hazara points out, it did not obtain a new
6  lease on the marketing premises at the same time it was notified of the termination of the franchise
7  relationship (April of 1999), raising a query as to whether it acquired possession of the premises
8  "effective immediately after the loss of the right of the franchisor to grant possession" within the
9  meaning of section 2802(c)(4)(C) on November 29, 1999, triggering the 30 day notification request
10 provision of the statute at that time." *Id.* at 1373. The Court went on to say, however, that this issue
11 of timeliness was a moot point at this juncture in light of the prior finding regarding the potential
12 dangerousness of the equipment. *Id*. Nevertheless, the *Hazara Enterprises, Inc.* Court recognized
13 that the time to request the sale of improvements and equipment under section 2802(c)(4)(C) did not
14 expire until after Plaintiff obtain the possession of the property, immediately upon the franchisor's
15 loss of the right to grant possession.

16       Such an interpretation is certainly consistent with the overriding purpose of the PMPA. In
17 a situation such as the one at bar, the PMPA sets forth a requirement that the franchisee make a
18 request to purchase the equipment and improvements within a specified time frame after it gains
19 possession of the property, "effective immediately" after the franchisor's loss of the right to grant
20 same.

21       The situation that exists in the present case is even stronger in Plaintiff's favor than the one
22 that existed in the *Hazara Enterprises, Inc.* case. In the present case, there is no question that
23 Plaintiff obtained possession of the premises immediately upon ConocoPhillips' loss of its right to
24 grant possession to Plaintiff. Its only purpose in remaining on the premises is to continue operating
25 a motor fuel service station.

26       Moreover, in situations where a third party lease is not due to expire at some point in the
27 future, it would not make any sense to require a franchisee to request an offer for the sale of
28 improvements and equipment from the franchisor, within 30 days after having just entered into a

franchise agreement. To so hold, would also mean that the franchisor would be required to make such offer "during the 90-day period after notification was given" and to hold such offer open "for at least 45 days" even though the effective date of termination may not come for months or years to come, depending on the expiration of the underlying lease. See, 15 U.S.C. §2802(c)(4)(C) and §2802(c)(4)(C)(ii). So, hypothetically, to accept ConocoPhillips' argument would mean that in a situation where the underlying lease is not due to expire for a year, the franchisee would have to request an offer within 30 days after having just entered into the franchise and the franchisor would have to make an offer within 90 days after that, before anyone could possibly know whether the underlying lease would be renewed and before the franchisee could possibly have obtained the right to possession of the premises following the expiration of the franchise. Such a scenario simply would not make any sense. Rather, as explained above, the more logical and viable interpretation of the PMPA is that the 30 day demand for an offer need not be made until after the franchisee, acquires its right to possession from the third party landlord.

Thus, Plaintiff is entitled to a bona fide offer pursuant to the PMPA.

**5.   ELEMENTS OF PROOF**

ConocoPhillips must prove that it has complied with all of the requirements of the PMPA as follows:

1.   Since ConocoPhillips' provided its Notice of Termination less than 90 days prior to the date on which termination took effect, it must prove that it was not "reasonable" for it to have provided such notice within such time frame and that its Notice of Termination was provided "on the earliest possible date on which furnishing such notification was reasonably practicable." 15 U.S.C. § 2804(a)(1), (2), (c); 15 U.S.C. § 2802(a)(2), (b)(1)(A), (b)(1)(B);

2.   ConocoPhillips must prove that its offer for the sale of its equipment and improvements to Houtan Petroleum was *bona fide* in that it was made in a timely manner and approached fair market value. 15 U.S.C. § 2802(a)(1), (b)(1)(A), (b)(1)(B), (c)(4)(C), Roberts v. Amoco Oil Co. 740 F.2d 602, 606 (8th Cir. 1984). *Ellis v. Mobil Oil*, 969 F.2d 784, 787 (9th Cir. 1992) (quoting *Slatky v. Amoco Oil Co.* (3rd

Cir. 1987) 830 F.2d 476, 485); *Arnold v. Amoco Oil Co.* (W.D. Va. 1995) 872 F.Supp. 1493, 1500.

## 6. PLAINTIFF'S REMEDIES

Title 15, United States Code Section 2805(b) states in pertinent part:

> (1) In any action under subsection (a) of this section, the court shall grant such equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of section 2802 or 2803 of this title, including mandatory or prohibitive injunctive relief, and interim equitable relief.

Also, a franchisee who prevails in an action under the PMPA is entitled to recover actual damages suffered as a result of the franchisor's failure to comply with the Act. 15 U.S.C. § 2805(d)(1)(A)

### A. Damages:

Plaintiff intends to prove that as a result of this condensed time frame, the cause for which falls solely on ConocoPhillips, Houtan Petroleum was placed in a position where it was unable to sell fuel through credit card transactions for a period of five days, until the Court granted Plaintiff's application for temporary restraining order and Plaintiff's station was placed back online by ConocoPhillips, resulting in estimated gross sales of $75,250.00 and lost gross profits in the amount of $25,090.00. But for ConocoPhillips' delay in issuing the Notice of Termination and making its offer, Plaintiff could have prepared for the October 31, 2007 termination date sooner and could have avoided the five days of down time. ConocoPhillips has no reasonable excuse for its failure to comply with the 90 day notice requirements of the PMPA because, by its own admission, "the earliest day on which furnishing such notification [was] reasonably practicable" was clearly much earlier than September 18, 2007. 15 U.S.C. 2804(b)(1).

Plaintiff would also be entitled to recover his reasonable attorney fees and costs incurred in connection with this case.

### B. Injunctive Relief:

The Court should grant a mandatory permanent injunction either preventing ConocoPhillips from interfering with Houtan Petroleum's use of its improvements and equipment until it comes forth with a *bona fide* offer that approaches fair market value or ordering ConocoPhillips to present Houtan

-12-
HOUTAN PETROLEUM'S TRIAL BRIEF

Petroleum with such a bona fide offer for the sale of the subject property, improvements and equipment at a price that approaches fair market value, as demonstrated by the appraised fair market value price of $145,000.

The PMPA provides that "the court *shall* grant such equitable relief as the court determines is *necessary* to remedy the effects of any failure to comply with the requirements of §2802 ... including ... *mandatory or prohibitive injunctive relief*, and interim equitable relief." 15 U.S.C. §2805(b)(1) (emphasis added). The term "shall" indicates that injunctive relief is mandatory if the court determines it is necessary to remedy the effects of a PMPA violation. *See*, *Hilo v. Exxon Corp.*, 997 F.2d 641, 643 (9th Cir. 1993) ("Section 2805(b)(2) of the PMPA makes the grant of preliminary injunction **mandatory** if (A) the franchisee shows that the termination or nonrenewal of its franchise raises questions that are 'sufficiently serious' to provide 'a fair ground for litigation,' and (B) the court determines that the 'balance of hardships' tips in favor of the franchisee." (Emphasis added)).

                                                         Respectfully submitted,

Dated: February 1, 2008                BLEAU / FOX, A P.L.C.

                                                         //s//
                                          By: _____
                                                Thomas P. Bleau, Esq.
                                                Gennady L. Lebedev, Esq.
                                                Attorneys for Plaintiff
                                                Houtan Petroleum, Inc.