1  Thomas P. Bleau, Esq., SBN 152945
   Gennady L. Lebedev, Esq., SBN 179945
2  BLEAU / FOX, A P.L.C.
   3575 Cahuenga Boulevard West, Suite 580
3  Los Angeles, California 90068
   Telephone   :  (323) 874-8613
4  Facsimile    :  (323) 874-1234
   e-mail:       bleaushark@aol.com
5  e-mail:       glebedev@bleaufox.com

6  Attorneys for Plaintiff,
   HOUTAN PETROLEUM, INC.

7

8              UNITED STATES DISTRICT COURT IN AND FOR

9              THE NORTHERN DISTRICT OF CALIFORNIA

10  HOUTAN PETROLEUM, INC.            )  CASE NO.  07-CV-5627 SC
                                      )
11              Plaintiff,            )
    vs.                               )  PLAINTIFF, HOUTAN PETROLEUM, INC.'S,
12                                    )  OPPOSITION  TO  CONOCOPHILLIPS
                                      )  COMPANY'S MOTION IN LIMINE NO. 2
13  CONOCOPHILLIPS COMPANY, a Texas   )
    Corporation   and DOES 1 through 10, )  RE:  EXCLUSION  OF  EVIDENCE  THAT
14  Inclusive                         )  CONOCOPHILLIPS'  OFFER  TO  SELL  ITS
                                      )  EQUIPMENT  AND  IMPROVEMENTS  TO
15              Defendants.           )  HOUTAN  PETROLEUM  WAS  NOT  BONA
                                      )  FIDE
16  _____  )

17  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

18      PLEASE TAKE NOTICE that Plaintiff and Counter-Defendant, Houtan Petroleum, Inc.

19  ("Houtan Petroleum"), hereby opposes Motion In Limine No. 2, filed by Defendant and Counter-

20  Plaintiff, ConocoPhillips Company ("ConocoPhillips") as follows:

21      ConocoPhillips has filed its Motion in Limine No. 2 seeking an order excluding evidence that

22  ConocoPhillips' offer to sell its equipment and improvements to Houtan Petroleum was not bona fide

23  under the PMPA.

24      Plaintiff opposes such Motion on the grounds that it is ConocoPhillips, rather than

25  HoutanPetroleum's, burden to prove that its offer to sell its equipment and improvements to Houtan

26  Petroleum was bona fide under the PMPA, which has not been conclusively decided as a factual

27  matter.

28      ConocoPhillips' motion is based on the argument that Houtan Petroleum's request for such

-1-

HOUTAN PETROLEUM'S OPPOSITION TO CONOCOPHILLIPS' MOTION IN LIMINE

1   an offer was made more than 30 days after ConocoPhillips' Notice of Termination to Houtan

2   Petroleum under section 2804 of the PMPA. ConocoPhillips contention is incorrect for two reasons.

3       First, ConocoPhillips' argument is moot in light of the fact that it did, in fact, tender to Houtan

4   Petroleum an offer on October 22, 2007 that explicitly indicates that it is an "OFFER TO SELL

5   IMPROVEMENTS" along with a Bill of Sale for $340,000.00, also allegedly "[i]n accordance with

6   the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq." (See,

7   Haddad Decl., Docket No. 5, Exh. "E," p. 000157).  On September 18, 2007, ConocoPhillips sent

8   Plaintiff a notice, entitled "NOTICE OF TERMINATION" indicating:

9       ConocoPhillips Company ("CONOCOPHILLIPS"), **pursuant to the requirements
        of the Petroleum Marketing Practices Act ("PMPA") provides you with this
10      written notice** that your franchise relationship with CONOCOPHILLIPS and the
        above referenced Agreement shall terminate at 12:00 noon on October 31, 2007
11      ("Termination Date").

12      The reason for the termination is that the Station you operate is leased to
        CONOCOPHILLIPS by a third party, and said lease shall expire on October 31, 2007.
13      The existence of an underlying lease was fully disclosed to you. Termination of the
        franchise relationship as a result of the loss of the franchisor's right to grant
14      possession of the lease marketing premises because of the expiration of an underlying
        lease is an event that is of material significance to the franchise relationship for which
15      termination is reasonable... Enclosed with this Notice is a copy of the Department of
        Energy revised Summary Of Title I of the PMPA, **which we are required by the
16      PMPA** to provide you... (Haddad Decl. in support of Houtan Petroleum's Application
        for Temporary Restraining Order and Preliminary Injunction, Docket No. 5, Exh. "B,"
17      p. 000082-83, emphasis added).

18      Thus, ConocoPhillips' own Notice of Termination acknowledges the fact that it was required

19  to provide such notice "by the PMPA." Although Houtan disputes the timeliness of this Notice, there

20  is no dispute that ConocoPhillips' reference to the PMPA in the Notice pertains to the notice

21  requirement under Section 2804(a).

22      Within 30 days of such Notice of Termination, on October 18, 2007, Plaintiff notified

23  ConocoPhillips in writing that it will be acquiring possession of the premises from the landlord and

24  demanded that ConocoPhillips forward a bona fide offer to sell its equipment and improvements.

25  (Haddad Decl., Docket No. 5, Exh. "D," p. 000155).

26      On October 22, 2007, ConocoPhillips sent Plaintiff a document entitled "OFFER TO SELL

27  IMPROVEMENTS" along with a Bill of Sale for $340,000.00 which in relevant part provides in

28  substantial part as follows:

-2-

1
2
3
4

By hand delivered letter on September 18, 2007, **you were notified** of the Notice of Termination ("Notice") of the Union 76 Dealer Station Lease and Motor Fuel Supply Agreement, with an effective date of September 1, 2007, , 2007 ("Agreement"), **which Notice terminates your franchise relationship with CONOCOPHILLIPS COMPANY**, a Delaware corporation ("COP") for the above referenced Station. The termination of the Agreement shall be effective 12:00 noon on October 31, 2007 ("Termination Date").

5
6
7
8

The reason for the termination is that, despite COP's efforts to get additional tenancy at the Station you operate, the underlying ground lease between COP the third party landlord shall expire on October 31, 2007. The duration of the lease and the fact it **might expire** during the term of the franchise were disclosed to you. Under these facts, it would not have been reasonable for COP to furnish not less than 90 days notice.

9
10

You have informed COP on October 18, 2007 that you have obtained a lease with the third party landlord for the Station and have requested from COP a bona fide offer to purchase the improvements and equipment at the Station.

11
12

**In accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq.**, COP offers to sell you our interest in the improvements and equipment located on the marketing premises... (See, Haddad Decl., Docket No. 5, Exh. "E," p. 000157, emphasis added).

13    Thus, ConocoPhillips acknowledged once again the fact that the September 18, 2007 Notice

14    of Termination was issued pursuant to Section 2804(a) as the Notice that "terminates [Plaintiff's]

15    franchise relationship with CONOCOPHILLIPS COMPANY." With this Offer to Sell Improvements

16    ConocoPhillips also acknowledged in no uncertain terms the fact that such Offer was made "[i]n

17    accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801

18    et seq."

19    Additionally, ConocoPhillips expressed this waiver several times in correspondence to the

20    landlord for the property. For example, on September 17, 2007, ConocoPhillips' real estate manager,

21    Richard L. Mathews wrote:

22
23
24

I am still hopeful that ConocoPhillips ("COP") might still have an opportunity to secure a long-term lease with you for the above-referenced location. **Since there has been no response since your brief letter dated May 24th, 2007, however, I appreciate this might not be possible**. Please understand that we are still interested if you are willing to discuss this issue with COP.

25
26
27

**In the meantime, there are notice obligations we must make to our franchise dealer that make it necessary for us to request a short-term extension.** To this end, this letter serves as a formal request to extend the expiration date to the ground lease for a period of **ninety (90) days**, under the same terms and conditions. If you concur, the revised expiration date will be January 31, 2008.

28    In addition, I would like to also request that the period by which we must raze all

-3-

1     improvements following the terms of the lease be extended from 10 days to 30 days.

2     **Timing is of the essence**, so may we please have your response to our **90-day** extension request by **September 21, 2007**? (emphasis in original) Should I not hear

3     from you by September 21st, I will take your silence as your unwillingness to extend the lease as requested. (Bleau Decl., Docket No. 61, Exh. "D," p. COP 00132,

4     emphasis added except where indicated).

5        Thus, ConocoPhillips has expressly waived any argument that it was not required to make the

6 offer that it has already made or that such offer need not have complied with the *bona fide*

7 requirement of the PMPA.   Moreover, after expressly stating that such offer is in compliance with

8 and made pursuant to the PMPA, for ConocoPhillips to now contend that such offer did not need to

9 comply with the PMPA and that it was not required to make it in the first place is a bad faith act in

10 and of itself and disingenuous.

11        Second, in making its argument ConocoPhillips assumes that the disclosure contained in the

12 subject franchise agreement is what triggered Houtan Petroleum's obligation to request a bona fide

13 offer from ConocoPhillips.  This, however, is not the case.

14        The Court also recognized that "'[i]t is settled law that a bona fide offer under the PMPA is

15 measured by an objective market standard.'... 'To be objectively reasonable, an offer must approach

16 fair market value'... '[t]he facts of each case will set the terms of what constitutes a bon a fide

17 offer.'" (November 16, 2007 Order,  13:13-27 (quoting, *Ellis*, *supra* at 787 & 788 and *Slatky v.*

18 *Amoco Oil Co.*, 830 F.2d 476, 485 (9th Cir. 1987)).

19        The Court ultimately held:

20     The Court cannot conclude from the evidence before it whether the price contained in the offer by Conoco was bona fide.  That said, the parties' disagreement as to the

21     value of the equipment and improvements is not grounds for a preliminary injunction. Thus, the issue that remains in this action is whether the price contained in the offer

22     was reasonable, and, therefore, whether the offer was bona fide. **This is a factual dispute and, as such, is a question for the jury.** (November 16, 2007 Order, Docket

23     No. 18, 14:9-16, emphasis added).

24        In denying Plaintiff's application for a preliminary injunction, the Court emphasized as

25 follows:

26     The Court emphasizes that in reaching these conclusions regarding the offer, the Court does not hold that the offer was necessarily reasonable. Instead, the Court finds

27     that the issue of the offer is not, by itself, sufficient justification for a preliminary injunction. (November 16, 2007 Order, Docket No. 18, 16:3-7).

28

-4-

1    Additionally, The express language of the PMPA §2802(c)(4)(C) provides that in a situation

2  where the franchisor loses the underlying lease, a termination of a franchise relationship is not

3  effective until,

4       in a situation in which the franchisee acquires possession of the leased marketing premises
        effective immediately **after the loss of the right of the franchisor to grant possession**
5       (through an assignment [of an option to extend the underlying lease] pursuant to subparagraph
        (B) or by obtaining a new lease or purchasing the marketing premises from the landowner),
6       the franchisor (if requested in writing by the franchisee not later than 30 days after notification
        was given pursuant to section 2804 of this title), during the 90 - day period after notification
7       was given pursuant to section 2804 of this title –    (i)    made a bona fide offer to sell,
        transfer, or assign to the franchisee the interest of the franchisor in any improvements or
8       equipment located on the premises..."  15 U.S.C. §2802(c)(4)(C).

9    Case law supports Plaintiff's position that Plaintiff need not request the sale of improvements

10  and equipment until 30 days after he "acquires possession of the leased marketing premises effective

11  immediately **after** the loss of the right of the franchisor to grant possession."

12    In *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365 (2000), Motiva

13  voluntarily terminated the underlying ground lease with the landlord, Kathleen Erskine Leutze,

14  effective November 30, 1999 pursuant to a lease term authorizing cancellation upon 180 days notice.

15  On April 8, 1999, Motiva advised its lessee dealer, Hazara Enterprises, Inc., that it did not intend to

16  renew its franchise agreement effective November 30, 1999.  Hazara thereafter attempted to negotiate

17  a new lease directly from the landowner, but was unable to accomplish this until November 20, 1999,

18  when it executed a new lease with the landlord.  Shortly after Hazara Enterprises, Inc. regained its

19  right of possession of the marketing premises on December 13, 1999, Hazara asked Motiva to sell

20  the underground fuel lines and storage tanks to it.  After an evidentiary hearing, the Magistrate Judge

21  found the underground storage tank system at Hazara's station to be "potentially dangerous" and

22  recommended to grant the injunctive relief.  *Id*. at 1367-1369.

23    The Court held, however, that there was "at least an issue of fact as to the timeliness of

24  Hazara's request to purchase the equipment because, as Hazara points out, it did not obtain a new

25  lease on the marketing premises at the same time it was notified of the termination of the franchise

26  relationship (April of 1999), raising a query as to whether it acquired possession of the premises

27  "effective immediately after the loss of the right of the franchisor to grant possession" within the

28  meaning of section 2802(c)(4)(C) on November 29, 1999, triggering the 30 day notification request

1    provision of the statute at that time." *Id.* at 1373. The Court went on to say, however, that this issue

2    of timeliness was a moot point at this juncture in light of the prior finding regarding the potential

3    dangerousness of the equipment. *Id.* Nevertheless, the *Hazara Enterprises, Inc.* Court recognized

4    that the time to request the sale of improvements and equipment under section 2802(c)(4)(C) did not

5    expire until after Plaintiff obtain the possession of the property, immediately upon the franchisor's

6    loss of the right to grant possession.

7         Such an interpretation is certainly consistent with the overriding purpose of the PMPA. In

8    a situation such as the one at bar, the PMPA sets forth a requirement that the franchisee make a

9    request to purchase the equipment and improvements within a specified time frame after it gains

10   possession of the property, "effective immediately" after the franchisor's loss of the right to grant

11   same.

12        The situation that exists in the present case is even stronger in Plaintiff's favor than the one

13   that existed in the *Hazara Enterprises, Inc.* case. In the present case, there is no question that

14   Plaintiff obtained possession of the premises immediately upon ConocoPhillips' loss of its right to

15   grant possession to Plaintiff. Its only purpose in remaining on the premises is to continue operating

16   a motor fuel service station.

17        Moreover, in situations where a third party lease is not due to expire at some point in the

18   future, it would not make any sense to require a franchisee to request an offer for the sale of

19   improvements and equipment from the franchisor, within 30 days after having just entered into a

20   franchise agreement. To so hold, would also mean that the franchisor would be required to make

21   such offer "during the 90-day period after notification was given" and to hold such offer open "for

22   at least 45 days" even though the effective date of termination may not come for months or years to

23   come, depending on the expiration of the underlying lease. See, 15 U.S.C. §2802(c)(4)(C) and

24   §2802(c)(4)(C)(ii). So, hypothetically, to accept ConocoPhillips' argument would mean that in a

25   situation where the underlying lease is not due to expire for a year, the franchisee would have to

26   request an offer within 30 days after having just entered into the franchise and the franchisor would

27   have to make an offer within 90 days after that, before anyone could possibly know whether the

28   underlying lease would be renewed and before the franchisee could possibly have obtained the right

HOUTAN PETROLEUM'S OPPOSITION TO CONOCOPHILLIPS' MOTION IN LIMINE

1    to possession of the premises following the expiration of the franchise.  Such a scenario simply would

2    not make any sense.  Rather, as explained above, the more logical and viable interpretation of the

3    PMPA is that the 30 day demand for an offer need not be made until after the franchisee, acquires its

4    right to possession from the third party landlord.

5         Finally, in deciding the issues in this case, the Court should do so in the context of the

6    overriding purpose of the PMPA.  In *Doebereiner v. Sohio Oil Company*, 880 F.2d 329, 331-332 (11

7    Cir. 1989), the Court set forth the purpose behind the PMPA:

8              The legislative history of the PMPA reveals that the Act was
               designed to protect franchisees from arbitrary or discriminatory
9              termination or non-renewal.  (Citation omitted.)  Congress sought to equalize
               the obvious disparity in bargaining power between major oil companies and
10             service station operators.  (Citations omitted.) ... To attain these ... goals,
               Congress specifically set forth the permissible grounds for termination or non-
11             renewal of franchise relationships, and bestowed on federal courts jurisdiction
               to remedy violations of the Act.  *Id*.

12

13        This case is precisely the type of case which Congress had in mind when it enacted the PMPA.

     The PMPA is intended to protect gas station franchise owners from arbitrary and discriminatory
14
     termination of their franchises with large oil corporations and gasoline distributors, and to remedy the
15
     disparity in bargaining power between the parties to gasoline franchise contracts.  *DuFresne's Auto*
16
     *Service, Inc. v. Shell Oil Company*, 992 F.2d 920, 925 (9th Cir. 1993) and *Mobil Oil Corporation v.*
17
     *Virginia Gasoline Marketers and Automotive Repair Association*, 34 F.3d 220, 223 (4th Cir. 1994).
18
          Based upon the foregoing, Houtan Petroleum respectfully requests that the Court deny of
19
     ConocoPhillips' motion in limine.
20
                                   Respectfully submitted,
21
     Dated: February 4, 2008                BLEAU / FOX, A P.L.C.
22
                                       //s//
23                                  By: _____
                                       Thomas P. Bleau, Esq.
24                                     Gennady L. Lebedev, Esq.
                                       Attorneys for Plaintiff
25                                     Houtan Petroleum, Inc.

26

27

28

                                   -7-