1  GLYNN & FINLEY, LLP
   CLEMENT L. GLYNN, Bar No. 57117
2  ADAM D. FRIEDENBERG, Bar No. 205778
   JONATHAN A. ELDREDGE, Bar No. 238559
3  One Walnut Creek Center
   100 Pringle Avenue, Suite 500
4  Walnut Creek, CA 94596
   Telephone: (925) 210-2800
5  Facsimile: (925) 945-1975
   Email: cglynn@glynnfinley.com
6         afriedenberg@glynnfinley.com
          jeldredge@glynnfinley.com
7
   Attorneys for Defendant
8  ConocoPhillips Company

9

10                    UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12  HOUTAN PETROLEUM, INC.              )   Case No. 3:07-cv-5627
                                        )
13              Plaintiff,              )   **DECLARATION OF JONATHAN A.**
                                        )   **ELDREDGE IN SUPPORT OF**
14      vs.                             )   **CONOCOPHILLIPS COMPANY'S**
                                        )   **MOTION FOR SUMMARY JUDGMENT**
15  CONOCOPHILLIPS COMPANY, a Texas     )   **OF PLAINTIFF'S COMPLAINT**
    corporation and DOES 1 through 10,  )
16  Inclusive                           )   Date:       **May 9, 2008**
                                        )   Time:       **10:00 a.m.**
17              Defendants.             )   Courtroom:  **1**
                                        )   Before:     **Hon. Samuel Conti**
18  _____ )

19

20      I, Jonathan A. Eldredge, say:

21      1.      I am an attorney licensed to practice in the State of California, and I am a member

22  of the bar of this Court. I know the following facts of my own personal knowledge and if called

23  upon could and would competently testify thereto.

24      2.      Attached as **Exhibit A** is a true and correct copy of Houtan Petroleum's

25  President's, Ed Bozorghadad, April 19, 2007 letter to John Vidovich, a partner of De Anza

26  Properties, requesting a lease for the station property in Mountain View, California. Mr.

27  Bozorghadad's letter was produced by De Anza Properties in response to ConocoPhillips'

28  January 17, 2008 subpoena.

- 1 -

1      3.      Attached as **Exhibit B** is a true and correct copy of this Court's November 16,

2    2007 "Order Denying Plaintiff's Motion for Preliminary Injunction." The Order was filed as

3    Document No. 18 on the Court's docket.

4

5      I declare under penalty of perjury, under the laws of the State of California, that the

6    foregoing is true and correct. Executed this ___4___ th day of April, 2008, at Walnut Creek,

7    California.

8                                                  _____

9                                                  Jonathan A. Eldredge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JONATHAN A. ELDREDGE

# EXHIBIT A

**Ed Bozorghadad**
700 S Bernardo Ave, Suite 103
Sunnyvale, CA 94087
Tel: 408-691-7971
Fax: 408-736-2503
Email: hadad@sbcglobal.net

April 19, 2007

Mr. John Vidovich
920 W Fremont Ave
Sunnyvale, CA 94087

Dear Mr. Vidovich,

I appreciate your taking the time to talk to me.  I would like to elaborate on the plan I have for 101 E El Camino Real, Mountain View, CA 94040.

My plan is to raze and rebuild the site for a car wash, snack shop and gas.  If the city does not agree with the plans, we will have to eliminate the car wash and just go for gas and snack shop.  The underground tanks and piping will be double-walled and have state of the art monitoring technology.  The approximate cost is between $2.5 to $3.1 million.  I would like to ask you to consider 15-20 years lease and 2 5-years option.

Thank you once again for your time and I look forward to hearing from you.

Thank you.

Regards,

Ed Bozorghadad
President

# EXHIBIT B

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOUTAN PETROLEUM, INC.,          )      Case No. 07-5627 SC
                                 )
          Plaintiff,             )
                                 )      ORDER DENYING
     v.                          )      PLAINTIFF'S MOTION
                                 )      FOR PRELIMINARY
CONOCOPHILLIPS COMPANY, a Texas  )      INJUNCTION
Corporation and DOES 1 through 10, )
Inclusive,                       )
                                 )
          Defendants.            )
                                 )
_____)

I.  **INTRODUCTION**

    This matter comes before the Court on the Ex Parte
Application for a Temporary Restraining Order and Preliminary
Injunction ("Application") by the plaintiff Houtan Petroleum, Inc.
("Plaintiff" or "Houtan").  See Docket No. 3.  The Court issued a
Temporary Restraining Order and an Order to Show Cause regarding
the preliminary injunction on November 6, 2007.  See Docket No. 8
("TRO").  The defendant ConocoPhillips Company ("Conoco" or
"Defendant") then filed a Response and Plaintiff submitted a
Reply.  See Docket Nos. 11, 16.  For the following reasons, the
Court DENIES Plaintiff's Application for Preliminary Injunction.

II.  **BACKGROUND**

    Houtan operated a Union 76 gas station ("the Station") as a

United States District Court
For the Northern District of California

1    Conoco franchisee at the same location for approximately 10 years.

2    Compl., Docket No. 1, at 1; Haddad Decl. ¶ 3.[1]  Conoco did not own

3    the Station property but instead leased it from a third-party,

4    V.O. Limited Partners ("V.O. Limited").[2]  Mathews Decl. ¶ 3.[3]

5    Conoco owns the structures, equipment and improvements at the

6    Station.  Id.

7         The previous franchise agreement between Houtan and Conoco

8    was set to expire on August 31, 2007.[4]  Pellegrino Decl. ¶ 3.[5]  The

9    Master Lease between Conoco and V.O. Limited was set to expire on

10   October 31.  Id.  On July 6, Houtan and Conoco executed a new

11   franchise agreement ("the Franchise Agreement") that would begin

12   September 1.  Haddad Decl. Ex. A.[6]  The Franchise Agreement was to

13   be for a term of three years, expiring on August 31, 2010.  Resp.

14   at 3.  The Franchise Agreement was executed, however, with the

15   understanding by both Houtan and Conoco that Conoco's Master Lease

16   for the Station property was set to expire on October 31, just two

17   months after the new Franchise Agreement was set to begin.  Resp.

18

19   [1]  Ed Haddad is the President of Houtan.  His declaration was
     submitted with Houtan's Application.

20   [2]  This lease will be referred to as the Master Lease.

21   [3]  Richard Mathews is an independent contractor for the Real
     Estate Department of Conoco.  His declaration was submitted with
22   Conoco's Response.

23   [4]  Unless otherwise noted, all further dates are from 2007.

24   [5]  Dan Pellegrino is an Account Representative for Conoco.
     His declaration was submitted with Conoco's Response.
25

26   [6]  Although Haddad states in his declaration that the
     Agreement was executed on March 30, the dates contained in the
27   actual agreement all reflect that it was executed on July 6.  See
     Haddad Decl. Ex. A at 80.

28                                    2

1   at 2.  Thus, if Conoco was unable to renew the Master Lease with

2   V.O. Limited, the Franchise Agreement would terminate as Conoco

3   would lose any right to occupy or sublease the Station.

4   Pellegrino Decl. ¶ 3.  As Pellegrino stated:  "In the event

5   ConcoPhillips was unable to renew its underlying lease [the Master

6   Lease] of the Station property, there was obviously no way it

7   would be able to continue to sublease the Station to Houtan

8   Petroleum.  ConocoPhillips had no further right to renew or extend

9   the underlying property lease."  Id.

10      Not only did Conoco explain this situation to Houtan as early

11   as May, but the Agreement itself, which was executed on July 6,

12   contained express language putting Houtan on notice that Conoco's

13   inability to renew the Master Lease with V.O. Limited would

14   necessarily result in termination of the Agreement.  The Agreement

15   states, in part:

16              There is a possibility that the term of
                the underlying lease [the Master Lease]
17              to the Station might expire and not be
                renewed  upon  the  underlying  lease's
18              expiration date.  DEALER [Houtan] hereby
                acknowledges CONOCOPHILLIPS' disclosure
19              to DEALER that this Agreement and the
                Station herein are subject to all terms
20              and  conditions  of  an  underlying  lease
                held by CONOCOPHILLIPS in the property
21              and  premises,  which  underlying  lease
                expires on **October 31, 2007** and that such
22              underlying  lease  may  expire  and  may  not
                be  renewed  during  the  Term  of  this
23              Agreement.  Thereby, the DEALER [Houtan]
                is hereby on notice that this Agreement
24              is  hereby  terminated  on  the  date  the
                underlying lease expires  . . . .
25

26   Haddad Decl., Ex. A at 63 (emphasis in original).  Houtan

27   acknowledged this language in the Agreement by placing initials

28                                    3

United States District Court
For the Northern District of California

1   immediately following the above-cited language.  See id.  In

2   addition, Conoco, on several occasions, verbally advised Houtan of

3   the ramifications of nonrenewal of the Master Lease.  See

4   Pellegrino Decl. ¶ 4 (stating "Throughout 2007, I explained all of

5   this to Mr. Hadad [sic] in numerous conversations during routine

6   meetings and visits to the Station.  Mr. Hadad [sic] told me that

7   Houtan Petroleum still wanted to continue its franchise

8   relationship with Conoco . . . .").  With this understanding, the

9   parties executed the Franchise Agreement on July 6.  Haddad Decl.,

10  Ex. A at 80.

11       The Master Lease between Conoco and V.O. Limited for the

12  Station property was initially for a 25 year term, beginning March

13  1, 1966, and expiring February 28, 1991.  Mathews Decl. ¶ 4.  A

14  subsequent modification extended the expiration date to October

15  31, 2002, and granted Conoco an option for an additional five year

16  term.  Id.  Conoco exercised that option and the Master Lease

17  expired October 31, 2007.  Id.  Conoco has submitted evidence

18  indicating that it made several attempts to renew or extend the

19  Master Lease beyond the October 31 date.  Id. ¶ 5.  According to a

20  sworn declaration submitted by Conoco, V.O. Limited never provided

21  a substantive response to Conoco's request to extend the Master

22  Lease and V.O. Limited eventually stopped responding to Conoco's

23  communications.  Id.  On September 17, Conoco advised V.O. Limited

24  that if V.O. did not respond by September 21 to Conoco's request

25  to extend the Master Lease, Conoco would consider such silence a

26  rejection.  Id.  V.O. Limited did not respond to this letter.  Id.

27

28                                    4

United States District Court
For the Northern District of California

1    On September 18, Conoco informed Houtan in writing that it

2    would be terminating the Franchise Agreement effective October 31.

3    Haddad Decl., Ex. B.  The letter stated that the reason Conoco was

4    terminating the Franchise Agreement was because of Conoco's

5    inability to renew the Master Lease with V.O. Limited.  Id.  On

6    October 16, Houtan entered into an agreement with V.O. Limited to

7    lease the Station property beginning November 1, the day after

8    Conoco's Master Lease ended.  Haddad Decl. ¶ 8.  On October 18,

9    Houtan sent Conoco a letter indicating that Houtan had entered

10   into a lease agreement with V.O. Limited for the Station property.

11   Id. ¶ 9; Ex. C, Ex. D.  In the same letter Houtan demanded that

12   Conoco sell its improvements and equipment on the Station property

13   to Houtan.  Id.

14   On October 22, Conoco sent a letter to Houtan stating that

15   Conoco would sell the improvements and equipment to Houtan for

16   $340,000 if the offer was accepted by October 29, and if Houtan

17   paid the full amount by certified check by October 31.  Haddad

18   Decl., Ex. E.  Houtan refused to make this payment, believing it

19   to be in excess of fair market value.  Haddad Decl. ¶ 21.

20   On October 31, Conoco sent bulldozers to the premises to

21   begin removal of its equipment and improvements.  Id. ¶ 12.

22   Houtan refused to permit Conoco to enter the premises and Conoco

23   subsequently cut off fuel to the Station.  Id. ¶ 15.  Houtan was

24   able to obtain a fuel supply from another supplier.  Pellegrino

25   Decl. ¶ 7.

26   On November 5 Houtan filed a Complaint in this Court seeking

27

28                                      5

damages, injunctive relief, equitable relief and declaratory

relief pursuant to the Petroleum Marketing Practices Act ("PMPA"),

15 U.S.C. § 2801, et seq.  On the same day Houtan filed an Ex

Parte Motion for a Temporary Restraining Order and Application for

Preliminary Injunction.  On November 6 the Court granted the

Temporary Restraining Order and enjoined Conoco from taking

further action to interfere with Houtan's immediate assumption of

control of the Station.  See TRO.  The TRO prevented Conoco from

removing any equipment or improvements and compelled Conoco to

resume its franchise relationship with Houtan by supplying fuel

and processing credit card sales from the Station.  Id.

The Court now addresses whether to issue a preliminary

injunction.  For the following reasons, the Court finds that a

preliminary injunction is not "necessary to remedy the effects of

any failure to comply with the requirements of section 2802 or

2803 . . . ."  15 U.S.C. § 2805(b).

## III. DISCUSSION

### A.    Legal Standard

"The PMPA is intended to protect gas station franchise owners

from arbitrary termination or nonrenewal of their franchises with

large oil corporations and gasoline distributors . . . ."

DuFresne's Auto Serv., Inc. v. Shell Oil Co., 992 F.2d 920, 925

(9th Cir. 1993).  The PMPA states that if "a franchisor fails to

comply with the requirements of section 2802 or 2803 of this

title, the franchisor may maintain a civil action against such

franchisor."  15 U.S.C. § 2805.  The PMPA also provides for

United States District Court
For the Northern District of California

6

1 preliminary injunctions, stating:

2     [T]he court shall grant a preliminary
3     injunction if (A) the franchisee shows:
    (i) the franchise of which he is a party
    has been terminated or the franchise
4     relationship of which he is a party has
    not been renewed, and (ii) there exist
5     sufficiently serious questions going to
    the merits to make such questions a fair
6     ground for litigation; and (B) the court
    determines that, on balance, the
7     hardships imposed upon the franchisor by
    the issuance of such preliminary
8     injunctive relief will be less than the
    hardship which would be imposed upon such
9     franchisee if such preliminary injunctive
    relief were not granted.

10

11 Id. "The franchisee bears 'the burden of proving the termination

12 of the franchise . . . .' The franchisor then bears 'the burden

13 of going forward with evidence to establish as an affirmative

14 defense that such termination . . . was permitted under section

15 2802(b) or 2803.'" BP W. Coast Prods. LLC v. May, 447 F.3d 658,

16 663 n.1 (9th Cir. 2006) (citing 15 U.S.C. § 2805(c)).

17     B.   **Analysis**

18         1.    **Termination of Franchise Agreement**

19     Both parties concede that the Franchise Agreement was

20 terminated on October 31.

21         2.    **Sufficiently Serious Questions Going to the Merits**

22     Houtan alleges that Conoco violated PMPA in three respects:

23 (1) terminating the Franchise Agreement without good faith or in

24 the normal course of business, as required by § 2802; (2) failing

25 to give 90 days notice before terminating the franchise, as

26 required by § 2804(a)(2); and (3) failing to make a bona fide

27 offer to sell the equipment and improvements of the Station to

28                              7

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  Houtan, as required by § 2802(c)(4)(C)(i). The Court addresses
2  the merits of each claim in turn.

3              **a.    Termination of Agreement**

4        Houtan alleges that Conoco has "wrongfully terminated the
5  Plaintiff's Franchise Agreement and that said termination was not
6  made in good faith and/or in the normal course of business."
7  Compl. ¶ 27. "Section 2802(b)(2) of the PMPA provides several
8  permissible grounds for termination or nonrenewal of a franchise."
9  Hifai v. Shell Oil Co., 704 F.2d 1425, 1428 (9th Cir. 1983).
10 Specifically, § 2802 states that "the following are grounds for
11 termination of a franchise or nonrenewal of a franchise: . . .(C)
12 [t]he occurrence of an event which is relevant to the franchise
13 relationship and as a result of which termination of the franchise
14 or nonrenewal of the franchise relationship is reasonable . . . ."
15 15 U.S.C. § 2802(b)(2)(C). "Section 2802(c)(4) provides that the
16 term 'event' as used in section 2802(b)(2)(C) includes 'loss of
17 the franchisor's right to grant possession of the leased marketing
18 premises through expiration of an underlying lease.'" Hifai, 704
19 F.2d at 1428 (citing 15 U.S.C. § 2802(c)(4)).

20       Under the evidence submitted by the parties, the Court cannot
21 conclude that Conoco's termination of the Franchise Agreement was
22 not in good faith. To the contrary, Conoco terminated the
23 Franchise Agreement based on the fact that Conoco was unable to
24 renew the Master Lease with V.O. Limited for the Station property.
25 As § 2802 states, "loss of the franchisor's right to grant
26 possession of the leased marketing premises through expiration of
27 an underlying lease," is grounds for termination of a franchise.

28                            8

**United States District Court**
For the Northern District of California

1    15 U.S.C. § 2802.

2        Nonetheless, a franchisor must adhere to certain statutory

3    requirements in terminating a franchise agreement based on the

4    loss of the underlying lease for the land.  "A franchisor can rely

5    on section 2802(c)(4) to justify nonrenewal only if:

6            [T]he franchisee was notified in writing,
             prior to the commencement of the term of
7            the then existing franchise-
                 (A)  of  the  duration  of  the
8            underlying lease, and
                 (B) of the fact that such underlying
9            lease  might  expire  and  not  be
             renewed during the term of such
10           franchise   (in   the   case   of
             termination) or at the end of the
11           term (in case of nonrenewal)."

12   <u>Hutchens v. Eli Roberts Oil Co.</u>, 838 F.2d 1138, 1142-43 (11th Cir.

13   1988) (citing 15 U.S.C. § 2802(c)(4)).

14       In the present case, Conoco has satisfied both of these

15   requirements.  As noted above, the Franchise Agreement signed by

16   both parties on July 6 contains the following language:

17           There is a possibility that the term of
             the underlying lease [the Master Lease]
18           to the Station might expire and not be
             renewed  upon  the  underlying  lease's
19           expiration date.  DEALER [Houtan] hereby
             acknowledges CONOCOPHILLIPS' disclosure
20           to DEALER that this Agreement and the
             Station herein are subject to all terms
21           and conditions of an underlying lease
             held by CONOCOPHILLIPS in the property
22           and premises,  which  underlying  lease
             expires on **October 31, 2007** and that such
23           underlying lease may expire and may not
             be  renewed  during  the  Term  of  this
24           Agreement.  Thereby, the DEALER [Houtan]
             is hereby on notice that this Agreement
25           is  hereby  terminated  on  the  date  the
             underlying lease expires  . . . .

26

27   Haddad Decl., Ex. A at 63 (emphasis in original).

28
                                    9

1    In addition, Conoco has submitted evidence indicating that it

2    repeatedly attempted to renew the Master Lease with V.O. Limited.

3    See Mathews Decl. ¶ 5.  Furthermore, as Conoco was attempting to

4    renew the Master Lease, Houtan was in contact with V.O. Limited

5    and eventually negotiated a direct lease for the Station property.

6    The Franchise Agreement provided a single monthly rent for

7    Houtan's use of the Station property, the Union 76 trademarks and

8    the equipment and improvements.  Haddad Decl. Ex. A.  Considering

9    that the Franchise Agreement between Houtan and Conoco was

10   premised on Conoco's Master Lease with V.O. Limited, Houtan could

11   reasonably have expected that by negotiating directly with V.O.

12   Limited to take over the Master Lease, the Franchise Agreement

13   with Conoco would be terminated.  For the foregoing reasons, the

14   Court finds that there are not sufficiently serious questions

15   going to the merits of Houtan's claim that termination of the

16   Agreement was not made in good faith such that a preliminary

17   injunction is warranted.

18             **b.    90-Day Notice of Termination Under § 2804(a)**

19       Houtan asserts that the notice provided by Conoco was

20   defective under § 2804(a).  Section 2804(a) states, in part:

21             Prior to termination of any franchise or
             nonrenewal of any franchise relationship,
22             the franchisor shall furnish notification
             of such termination or nonrenewal to the
23             franchisee . . . not less than 90 days
             prior to the date on which such
24             termination or nonrenewal takes effect.

25   15 U.S.C. § 2804(a).

26       Houtan argues that because Conoco informed Houtan in writing

27   on September 18 that it would be terminating the franchise

28                                  10

*United States District Court*
*For the Northern District of California*

1    Agreement on October 31, Conoco failed to provide the requisite

2    90-day notice of termination.  This argument ignores the fact that

3    Houtan was on notice as early as July 6 that the Franchise

4    Agreement would be terminated in the event that Conoco was unable

5    to secure a renewal of the Master Lease.  Houtan executed the

6    renewed Franchise Agreement on July 6, and, as detailed above, the

7    Agreement contained express language indicating that Conoco's

8    inability to renew the Master Lease would necessarily require

9    termination of the Franchise Agreement.  The Court therefore finds

10   that there are not sufficiently serious questions going to the

11   merits of Houtan's claim that Conoco failed to give 90 days notice

12   of termination such that a preliminary injunction would be

13   warranted.

14       In the alternative, Conoco also argues that even if the

15   notice did not comply with the 90 day notice requirement of §

16   2804(a), the notice was in compliance with § 2804(b) and was

17   therefore permissible.  Section 2804(b) provides:

18           In circumstances in which it would not be
             reasonable for the franchisor to furnish
19           notification, not less than 90 days prior
             to the date on which termination . . .
20           takes effect, as required by subsection
             (a)(2) of this section, such franchisor
21           shall   furnish   notification   to   the
             franchisee . . . on the earliest date . .
22           .  such  notification  is  reasonably
             practicable.
23   15 U.S.C. § 2804(b)(1).

24       In the present case, Conoco was unable to renew the Master

25   Lease.  On September 18 Conoco sent notice to Houtan indicating

26   that the Franchise Agreement would not be renewed.  This qualifies

27   as "the earliest date on which furnishing of such notification is

28                                    11

1  reasonably practicable." <u>Id.</u>  Thus, even if Conoco's notice was

2  not within the 90 day statutory period, it very likely was within

3  the alternative statutory period of § 2804(b)(1).

4      Finally, the Court's finding that there is not a sufficiently

5  serious question going to the merits of Houtan's notice claim is

6  supported by the decisions of other courts.  <u>See</u>, <u>e.g.</u>, <u>Harara v.</u>

7  <u>ConocoPhillips Co.</u>, 377 F. Supp. 2d 779, 792 (N.D. Cal. April 29,

8  2005) (finding that "defendant was justified in terminating the

9  franchise with ten days notice"); <u>Murphy Oil USA, Inc. v. Brooks</u>

10 <u>Hauser</u>, 820 F. Supp. 447, 443 (D. Minn. 1993) (stating "14 days

11 notice of termination is not an unreasonable amount of time" given

12 that plaintiff had failed to pay for gasoline and rent); <u>Smoot v.</u>

13 <u>Mobil Oil Corp.</u>, 722 F. Supp. 849, 855 (D. Mass. 1989) (holding

14 that four weeks was reasonable notice for termination).

15     For these reasons, the Court finds that there are not

16 sufficiently serious questions going to the merits of Houtan's

17 claim that Conoco failed to give the requisite notice of

18 termination.

19         **c.    Bona Fide Offer Under § 2802(c)(4)(C)(i)**

20     The heart of Houtan's Complaint is that Conoco did not make a

21 bona fide offer to sell Conoco's equipment and improvements on the

22 Station property to Houtan.  "When a franchisor decides for

23 legitimate business reasons not to renew a franchise relationship,

24 the franchisor must give the franchisee a bona fide offer to

25 purchase the station." <u>Ellis v. Mobil Oil</u>, 969 F.2d 784, 788 (9th

26 Cir. 1992).  This is premised on § 2802, which states:

27         In a situation in which the franchisee

28                            12

1          acquires  possession  of  the  leased
2          marketing premises, . . . the franchisor
           (if so requested) . . . [shall make] a
3          bona fide offer to sell, transfer, or
           assign to the franchisee the interest of
           the franchisor in any improvements or
4          equipment located on the premises . . . .

5     15 U.S.C. § 2802(c)(4)(C)(i).

6          In the present case, it is undisputed that Conoco made an

7     offer to sell the equipment and improvements of the Station to

8     Houtan.  Houtan instead argues that the offer was not bona fide

9     because the price that Conoco asked was too high and because

10    Houtan was given only 7 days to accept the offer and only 9 days

11    to make full payment.

12                    i.    Price

13         "It is settled law that a bona fide offer under PMPA is

14    measured by an objective market standard." Ellis, 969 F.2d at

15    787.  "To be objectively reasonable, an offer must approach fair

16    market value."  Id. (internal quotation marks and alterations

17    omitted).   Nonetheless, "Congress' decision not actually to use

18    the term 'fair market value' but instead the term bona fide . . .

19    suggests some degree of deference." Slatky v. Amoco Oil Co., 830

20    F.2d 476, 485 (9th Cir. 1987).  Thus, in deciding "what manner

21    courts should scrutinize the distributor's offer to determine

22    whether it complies with the requirement . . . [Congress's] choice

23    indicates . . . a recognition that the word 'value' almost always

24    involves a conjecture, a guess, a prediction, a prophesy." Id.

25    (internal quotation marks and citations omitted).  Accordingly,

26    "[t]he facts of each case will set the terms of what constitutes a

27    bona fide offer." Ellis, 969 F.2d at 788.

28                               13

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    In the present case, Conoco has offered to sell its equipment

2    and improvements to Houtan for $340,000.  Haddad Decl., Ex. E.

3    This price was based on an independent, third-party appraisal

4    prepared by a licensed appraiser.  Mathews Decl. ¶ 7; Ex. E.

5    Houtan claims that this amount vastly exceeds fair market value

6    and argues instead that the equipment and improvements are worth

7    no more than $120,000.  Haddad Decl. ¶ 22.  In support of this

8    Houtan submitted the declaration of its president, Ed Haddad.

9    The Court cannot conclude from the evidence before it whether

10    the price contained in the offer by Conoco was bona fide.  That

11    said, the parties' disagreement as to the value of the equipment

12    and improvements is not grounds for a preliminary injunction.

13    Thus, the issue that remains in this action is whether the price

14    contained in the offer was reasonable, and, therefore, whether the

15    offer was bona fide.  This is a factual dispute and, as such, is a

16    question for the jury.

17                    **ii.  Time of Offer**

18    Houtan also argues that the offer was not bona fide because

19    the time period given by Conoco to accept the offer was

20    unreasonably short.  Conoco sent a letter on September 18 to

21    Houtan stating that the Franchise Agreement would terminate on

22    October 31 because of Conoco's inability to renew the Master

23    Lease.  Haddad Decl. ¶ 6; Ex. B.  On October 16, Houtan entered

24    into an agreement with V.O. Limited to lease the Station property

25    beginning November 1.  Id. ¶ 8; Ex. C.  On October 18, Houtan sent

26    Conoco a letter indicating that Houtan had entered into this lease

27    agreement and demanding that Conoco sell its improvements and

28                              14

1   equipment on the Station property to Houtan.  <u>Id.</u> ¶ 9; Ex. C, Ex.

2   D.

3       According to these facts, Houtan had notice on September 18

4   that the Franchise Agreement would not be renewed but waited until

5   October 18 to demand an offer for the equipment and improvements.[7]

6   Although unclear, it appears that Houtan waited these 30 days

7   because Houtan was negotiating with V.O. Limited to assume the

8   Master Lease of the Station property.  Thus, the fact that Houtan

9   had only 7 days to accept Conoco's offer is, in part, Houtan's

10  doing.[8]

11      In addition, Conoco had compelling reasons why it needed to

12  complete the sale of the equipment and improvements before

13  November 1.  The Master Lease Conoco has with V.O. Limited was set

14  to expire October 31.  In the event that Houtan did not buy the

15  equipment and improvements, Conoco wanted the opportunity to

16  remove its improvements and equipment from the Station before the

17  Master Lease expired.

18      For these reasons the Court finds that, under the

19  circumstances of the case, the time of the offer does not give

20  rise to sufficiently serious questions going to the merits of

21

22      [7]  Section 2802 states that the franchisor must make a bona
    fide offer only "if requested in writing by the franchisee . . . ."
23  15 U.S.C. § 2804(c)(4)(C).  Section 2802 also states that this
    request by franchisee must be made "not later than 30 days after
24  notification was given . . . ."  <u>Id.</u>  In the present case, the
    request was made exactly 30 days after the September 18 letter.
25

26      [8]  On October 22, Conoco sent a letter to Houtan stating that
    Conoco would sell the improvements and equipment if the offer was
27  accepted by October 29, and paid in full by October 31.  Haddad
    Decl. Ex. E.
28
                                    15

**United States District Court**
For the Northern District of California

1    Houtan's claim that Conoco failed to make a bona fide offer such

2    that a preliminary injunction would be warranted.

3         The Court emphasizes that in reaching these conclusions

4    regarding the offer, the Court does not hold that the offer was

5    necessarily reasonable.  Instead, the Court finds that the issue

6    of the offer is not, by itself, sufficient justification for a

7    preliminary injunction.  This is especially true given that Conoco

8    has stipulated to leaving in place its equipment and improvements

9    pending the outcome of this action and pending Houtan's and V.O.

10   Limited's agreement to several issues, including an appropriate

11   interim rental payment, allocation of responsibility for

12   environmental compliance and an appropriate manner and time for

13   removal in the event Houtan ultimately decides not to purchase the

14   equipment and improvements.[9]

15              **3.   Balance of Hardships**

16        The final factor in the determination of whether a

17   preliminary injunction should issue requires the Court to balance

18   the hardships to each party.  Section 2805 states:

19              [T]he court shall grant a preliminary
                injunction if . . . the court determines
20              that, on balance, the hardships imposed
                upon the franchisor by the issuance of
21              such preliminary injunctive relief will
                be less than the hardship which would be
22              imposed upon such franchisee if such
                preliminary injunctive relief were not
23              granted.

24   15 U.S.C. § 2805(b)(2).

25
     _____

26        [9]  Under the Master Lease Conoco had 10 days after termination
     of the lease to remove its equipment and improvements.  Mathews
27   Decl. ¶ 8.

28                              16

**United States District Court**
For the Northern District of California

1    In the present case Houtan knew as early as July 6 that the

2  Franchise Agreement would end on October 31 if Conoco were unable

3  to renew the Master Lease.   On September 18 Houtan received

4  confirmation that Conoco was unable to renew the Master Lease.   On

5  October 16 Houtan entered into a lease agreement for the Station

6  property with V.O. Limited.

7    The Franchise Agreement, while providing Houtan with a

8  limited license to use Union 76 trademarks, was primarily a

9  sublease of the Station property by Conoco to Houtan.   Because the

10  Master Lease expired, Conoco has no ability to continue to

11  sublease the property to Houtan.   To the contrary, Houtan has

12  negotiated with V.O. Limited to take over this lease.   Therefore,

13  there is no dispute that the Franchise Agreement between Houtan

14  and Conoco had terminated, for there was no way that Conoco could

15  still perform under the Franchise Agreement in the absence of the

16  Master Lease.

17    Given these facts, it is difficult to see how the hardships

18  imposed upon Conoco by the issuance of the preliminary injunction

19  will be less than the hardship imposed upon Houtan if the

20  preliminary injunction were not granted.   The Franchise Agreement

21  provided a single monthly payment for Houtan's use of the Station

22  property, the Union 76 trademarks and the equipment and

23  improvements.   Haddad Decl., Ex. A.   Houtan is now essentially

24  asking the Court to create a new franchise agreement that is

25  identical to the Franchise Agreement at issue save for the fact

26  that Houtan, rather than Conoco, controls the lease to the Station

27  property.   The Court is unwilling to do this.   The termination of

28

United States District Court
For the Northern District of California

1   the Master Lease was a valid reason for the termination of the

2   Franchise Agreement.  See 15 U.S.C. § 2802(c)(4) (stating

3   "termination of the franchise . . . is reasonable . . . [due to]

4   loss of the franchisor's right to grant possession of the leased

5   marketing premises through expiration of an underlying lease . .

6   .").

7       Houtan has not presented compelling evidence that it will

8   face substantial hardships without the preliminary injunction.

9   After the Franchise Agreement terminated but before the Court

10   issued the temporary restraining order, Houtan was able to

11   purchase fuel from another supplier and was able to continue

12   operating the Station.  Furthermore, because Conoco has agreed to

13   leave its equipment and improvements in place pending party

14   negotiation or judicial determination of an appropriate purchase

15   price, Houtan will be able to continue operating the Station.  The

16   primary hardship to Houtan will be the requirement that it stop

17   operating the station as a Union 76 station, as the Union 76

18   trademarks were licensed to Houtan by Conoco pursuant to the

19   Franchise Agreement and, as noted above, both parties agree that

20   this agreement terminated on October 31.

21       Conoco, on the other hand, would suffer some hardship.

22   Conoco would be forced to leave its fuel storage and dispensation

23   system at a station site over which it has no control and no right

24   of entry.  In light of the environmental issues associated with a

25   gas station, Conoco would be exposed to risks if it were unable to

26   supervise or ensure prudent station practices and compliance with

27   applicable regulations.  Accordingly, the Court cannot conclude

28

18

**United States District Court**
For the Northern District of California

1  that, on balance, the hardships imposed upon Conoco by the

2  issuance of a preliminary injunction will be less than the

3  hardship which would be imposed upon Houtan if the preliminary

4  injunction were not granted.

5      Because the Court finds that a preliminary injunction is not

6  necessary under the more permissive standard of the PMPA, it need

7  not reach the issue of whether a preliminary injunction would be

8  appropriate under Federal Rule of Civil Procedure 65, which

9  requires a more substantial showing.  See Dollar Rent A Car of

10 Wash., Inc. v. Travelers Indem., 774 F.2d 1371, 1374 (9th Cir.

11 1985) (stating that the granting of a preliminary injunction is

12 discretionary, compared with the mandatory language of § 2805, and

13 that a showing of irreparable injury is an essential

14 prerequisite); see also Khorenian v. Union Oil Co. of Cal., 761

15 F.2d 533, 535 (9th Cir. 1985) (stating that the "test for the

16 issuance of a preliminary injunction under the PMPA is more

17 liberal than that in the general run of cases").

18          **4.  Houtan's Use of Union 76 Trademarks**

19      The Franchise Agreement states, in part:

20          Upon expiration, termination, nonrenewal
            or cancellation of this Agreement, for
21          any reason, DEALER shall immediately
            cease and discontinue the use of said
22          Union 76 Marks . . . .

23 Haddad Decl., Ex. A at 20.  By these terms, Houtan is no longer

24 entitle to use the Union 76 trademarks.[10]

25 _____

26      [10]  The Court notes that Conoco has not filed a motion for an
   injunction prohibiting Houtan from using the Union 76 trademarks.
27 The Court, therefore, is not presented with an opportunity to rule
   on this issue.

28                                19

**United States District Court**
For the Northern District of California

IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Application for a Preliminary Injunction is DENIED and the Temporary Restraining Order issued by the Court on November 6, 2007, is TERMINATED.


IT IS SO ORDERED.


Dated: November 16, 2007

UNITED STATES DISTRICT JUDGE

20