1  Thomas P. Bleau, Esq., SBN 152945
   Gennady L. Lebedev, Esq., SBN 179945
2  BLEAU / FOX, A P.L.C.
   3575 Cahuenga Boulevard West, Suite 580
3  Los Angeles, California 90068
   Telephone     : (323) 874-8613
4  Facsimile     : (323) 874-1234
   e-mail:        bleaushark@aol.com
5  e-mail:        glebedev@bleaufox.com

6  Attorneys for Plaintiff,
   HOUTAN PETROLEUM, INC.

7

8

9              UNITED STATES DISTRICT COURT IN AND FOR

10             THE NORTHERN DISTRICT OF CALIFORNIA

11
   HOUTAN PETROLEUM, INC.              )   CASE NO.  3:07-CV-05627-SC
12                                     )
                    Plaintiff,         )   **PLAINTIFF, HOUTAN PETROLEUM,**
13 vs.                                 )   **INC.'S OPPOSITION TO**
                                       )   **CONOCOPHILLIPS COMPANY'S**
14 CONOCOPHILLIPS COMPANY, a Texas     )   **MOTION FOR SUMMARY JUDGMENT;**
   Corporation  and DOES 1 through 10, )   **MEMORANDUM OF POINTS AND**
15 Inclusive                           )   **AUTHORITIES IN SUPPORT THEREOF**
                                       )
16                  Defendants.        )   Date:      May 9, 2008
                                       )   Time:      10:00 a.m.
17                                     )   Courtroom: 1
                                       )   Before:    Hon. Samuel Conti
18 _____    )

19 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20         PLEASE TAKE NOTICE that, Plaintiff, Houtan Petroleum, Inc., hereby Opposes the Motion

   for Summary Judgment brought by ConocoPhillips Company ("ConocoPhillips") against it in the
21
   above-captioned matter on the grounds that genuine questions of material fact exist with regard to
22
   whether ConocoPhillps complied with the Petroleum Marketing Practices Act and that
23
   ConocoPhillips failed to meet its burden of proof on a motion for summary judgment.  This
24
   Opposition is based on this Notice of Opposition and Opposition, accompanying Memorandum of
25
   Points and Authorities, Request for Judicial Notice, the pleadings on file with this Court and any
26
   ///
27
   ///
28

                                     -1-

1  argument that may be offered at the hearing of this matter.

2                                                          Respectfully submitted,

3  Dated: April 18, 2008                                   BLEAU / FOX, a P.L.C.

4                                                          By:     /s/ Thomas P. Bleau
                                                                 Thomas P. Bleau, Esq.
5                                                                Attorneys for Plaintiff
                                                                 Houtan Petroleum, Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO CONOCOPHILLIPS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

I.      INTRODUCTION.............................................................................................1

II      ARGUMENT......................................................................................................2

A.      **The Federal Rules Governing Summary Judgment Motions Require
        Denial of ConocoPhillips' Motion**......................................................................2

B.      **ConocoPhillips Has The Burden Of Proving That It Complied With The PMPA
        In All Respects**.......................................................................................................4

C.      **ConocoPhillips' Reliance On The Court's Order Denying Plaintiff's
        Application For Preliminary Injunction As Its Sole Basis For Summarily
        Adjudicating Plaintiff's Claims Is Improper**.....................................................4

D.      **ConocoPhillips' Arguments Improperly Ignore The Purpose
        And Intent Of The PMPA**.....................................................................................5

        a.      **Plaintiff Did Request In Writing That ConocoPhillips Sell Its Property
                At The Station To Plaintiff Within 30 Days After The Loss Of The Right
                Of The Franchisor To Grant Possession**...............................................7

        b.      **ConocoPhillips Waived The Right To Contend and/or Should Be
                Estopped From Contending That It Is Not Required To Make A
                Bona Fide Offer Under The PMPA**.......................................................10

III.    CONCLUSION................................................................................................15

1

## TABLE OF AUTHORITIES

2

3
*Federal Cases*

4
*Ajir v. Exxon Corp.* (N.D.Cal. 1994) 855 F. Supp.294...................................................................7

5
*Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 256 (1986)..........................................................3

6
*Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)..................4

7
*British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978)........................................2

8
*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).................................................3

9
*Celotex Cop. v. Catrett*, 477 U.S. 317, 323 (1986).....................................................................3

10
*Doebereiner v. Sohio Oil Company*, 880 F.2d 329, 331-332 (11 Cir. 1989)............................5

11
*DuFresne's Auto Service, Inc. v. Shell Oil Company*, 992 F.2d 920, 925 (9th Cir. 1993)..........6

12
*Ellis v. Mobil Oil*, 969 F.2d 784, 788 (9th Cir. 1992)...............................................................5,7

13
*Fremont Indemnity Co. v. California Nat'l Physician's Insurance Co.*

14
        954 F. Supp. 1399, 1402 (C.D. Cal. 1997)........................................................................2

15
*Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365 (2000)...........7,8,9

16
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)......2,3

17
*May-Som Golf Inc. v. Chevron USA*, 869 F.2d 917 (6th Cir. 1989)............................................7

18
*Mobil Oil Corporation v. Virginia Gasoline Marketers and Automotive Repair Association*

19
        34 F.3d 220, 223 (4th Cir. 1994).......................................................................................6

20
*Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1371 (10th Cir. 1998)..............................................4

21
*Secker v. Star Enterprise*, 124 F.3d 1399 (11th Cir. 1997).......................................................7

22
*Slatky v. Amoco Oil Co.*, 830 F.2d 476, 485 (9th Cir. 1987)......................................................5

23
*Federal Statutes*

24
Fed.R. Civ.Proc. 56.................................................................................................................2,3, 4

25
 Fed.R. Civ.Proc. 56(c)................................................................................................................2

26
15 U.S.C. 2802(c)........................................................................................................................7

27
15 U.S.C. 2802(c)(4)...................................................................................................................7

28

1    15 U.S.C. 2802(c)(4)(A)......................................................................................7

2    15 U.S.C. 2802(c)(4)(A)(i)..................................................................................7

3    15 U.S.C. 2802(c)(4)(A)(ii).................................................................................8

4    15 U.S.C. 2802(c)(4)(B).................................................................................8, 12

5    15 U.S.C. §2802(c)(4)(C)....................................................................6, 7, 8, 9, 11

6     15 U.S.C. §2802(c)(4)(C)(i).............................................................................5

7    15 U.S.C. 2804(a)......................................................................................8,10, 11

8    15 U.S.C. §2804(a)(1)..................................................................................8, 10

9    15 U.S.C. §2804(a)(2)............................................................................8, 10, 14

10   15 U.S.C. § 2805(b)...........................................................................................4

11   15 U.S.C. § 2805(b)(1)....................................................................................15

12   15 U.S.C. § 2805(c)...........................................................................................4

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO CONOCOPHILLIPS' MOTION FOR SUMMARY JUDGMENT

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.**

3

**INTRODUCTION**

4      On September 18, 2007, ConocoPhillips sent Plaintiff a "NOTICE OF TERMINATION"

5  allegedly "pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA")" (See,

6  Request for Judicial Notice[1], Exhibit "1," Docket No. 5: Haddad Decl., Exh. "B," p. 000082-83,

7  emphasis added).

8      On October 18, 2007, Plaintiff notified ConocoPhillips in writing that it will be acquiring

9  possession of the premises from the landlord and demanded that ConocoPhillips forward a bona fide

10  offer to sell its equipment and improvements.  (RJN, Exh. "1," Docket No. 5: Haddad Decl., Exh.

11  "D," p. 000155).

12      On October 22, 2007, ConocoPhillips sent Plaintiff an "OFFER TO SELL

13  IMPROVEMENTS" along with a Bill of Sale for $340,000.00, also allegedly "[i]n accordance with

14  the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq." (RJN, Exh.

15  "1," Docket No. 5:  Haddad Decl., Exh. "E," p. 000157, emphasis added).

16      The same equipment and improvements that ConocoPhillips offered to sell for $340,000.00

17  was appraised by an MAI appraiser retained on Plaintiff's behalf for a total amount of $145,000.00.

18  Consequently, ConocoPhillips' offered price exceeds the fair market value of the property by seventy-

19  four percent (74%).[2]  (RJN, Exh. "3," Docket No. 39: Plaine Declaration, ¶5).

20      Effective November 1, 2007, Plaintiff began leasing the premises directly from the landlord.

21  (RJN, Exh. "1," Docket No. 5: Haddad Decl., ¶8).

22      On November 5, 2007, Plaintiff filed the instant action along with an application for a

23  Temporary Restraining Order and Preliminary Injunction.  Although the Temporary Restraining

24  Order was initially granted, Plaintiff's application for a Preliminary Injunction was denied pursuant

25

26  [1]      Hereinafter, Plaintiff's Request for Judicial Notice filed concurrently herewith shall
        be referred to as "RJN."

27

28  [2]      Calculated by subtracting appraised value of $145,000.00 from ConocoPhillips' offer
        of $340,000.00 and dividing $145,000.00 by the difference of $195,000.

1    to the Court's Order dated November 16, 2007[3].

2         Since then, ConocoPhillips filed an Application for Writ of Possession (Docket No. 27) to gain

3    possession of its equipment and improvements at the subject property and a Motion to Dismiss

4    (Docket No. 26) pursuant to Rule 12(b)(6), on substantially the same legal grounds as the instant

5    Motion for Summary Judgment. Both the Application and the Motion to Dismiss were summarily

6    denied and the matter was set for trial. (RJN, Exh. "4," Docket No. 43: Minute Order filed on

7    1/11/08).

8         Now, ConocoPhillips seeks to summarily adjudicate this case on the discrete argument that

9    it allegedly did not violate the PMPA in the course of its termination of Plaintiff's franchise because

10   Plaintiff was not entitled to receive a "bona fide offer" from ConocoPhillips. ConocoPhillips fails

11   to present any evidence in support of the instant Motion, but merely relies on a one page letter from

12   Plaintiff's principal to his ConocoPhillips representative (ConocoPhillips' Exhibit A) and the findings

13   contained in the Court's Order Denying Plaintiff's Motion for Preliminary Injunction

14   (ConocoPhillips' Exhibit B).

15        As will be explained below, ConocoPhillips has failed to meet its burden of proof and its

16   Motion should be summarily denied.

17                                          **II.**

18                                      **ARGUMENT**

19   **A.    The Federal Rules Governing Summary Judgment Motions Require Denial of**

20          **ConocoPhillips' Motion**

21        Pursuant to Federal Rule of Civil Procedure 56, summary judgment or summary adjudication

22   is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file,

23   together with the affidavits, if any, show that there is no issue as to any material fact and that the

24   moving party is entitled to judgment as a matter of law." Fed.R. Civ.Proc. 56(c); *see British Airways*

25   *Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978); *Fremont Indemnity Co. v. California Nat'l*

26   *Physician's Insurance Co.*, 954 F.Supp. 1399, 1402 (C.D. Cal. 1997); *see also Matsushita Elec.*

27   _____

28   [3]    Hereinafter, the Court Order Denying Plaintiff's Application for Preliminary
        Injunction shall be referred to as the "November 17, 2007 Order."

1    *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

2    ConocoPhillips has failed to present anything of the kind, but is only relying on the Court's

3    prior Order denying Plaintiff's Motion for Preliminary Injunction. As ConocoPhillips puts it, "the

4    Court has already adjudicated the first of these allegations..." and "must therefore again adjudicate

5    this issue in ConocoPhillips' favor." (Moving Papers, p.2, ln.1-7). ConocoPhillips' fails to explain,

6    however, why the Court would have to adjudicate an issue for a second time, if it had already been

7    adjudicated as ConocoPhillips contends. That is because the Court has not conclusively adjudicated

8    any issues. It merely denied a Motion for Preliminary Injunction based on the evaluation of the

9    equities before it at the time. Moreover, it would have been improper for the Court to adjudicate

10    factual issues and a violation of due process without formal motion for summary judgment before it.

11    In any event, given that ConocoPhillips has failed to present any competent evidence that is

12    required by Federal Rule of Civil Procedure 56 in support of its instant Motion, the Motion should

13    be summarily denied on that basis alone.

14    Next, if the moving party has the burden of proof at trial, the moving party must make a

15    "showing sufficient for the court to hold that no reasonable trier of fact could find other than for the

16    moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Thus, to the extent

17    ConocoPhillps has the burden of establishing its affirmative defense that its termination complied

18    with the PMPA, it has the burden of proving such affirmative defense.

19    On summary judgment, the moving party bears the initial burden of demonstrating the absence

20    of a genuine issue of material fact. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 256 (1986);

21    *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585-87. The movant's burden is met by pointing out

22    that there is an absence of evidence to support the other party's case. *Celotex Cop. v. Catrett*, 477

23    U.S. 317, 323 (1986). The non-movant must go beyond the pleadings and by its own affidavits, or

24    by deposition, interrogatories and admissions on file, designate specific facts showing that there is

25    a genuine issue for trial. *Celotex Corp*, 477 U.S. at 322-23. The evidence of the non-movant is to

26    be believed, and all justifiable inferences are to be drawn in favor of the non-movant. *Anderson*, 477

27    U.S. at 248.

28    Ultimately, the standard for determining whether summary judgment is appropriate is

1    "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

2    it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson*

3    *Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989).

4         ConocoPhillips has failed to present any such evidence in support of its instant Motion.

5    **B.**    **ConocoPhillips Has The Burden Of Proving That It Complied With The PMPA In All**

6           **Respects**

7         Under the PMPA, the only items which a franchisee such as Plaintiff is required to establish

8    is that there has been a termination of its franchise and its damages caused by the franchisor's failure

9    to comply with the PMPA.  Given that damages are not the subject of this Motion and that there is

10   no dispute that ConocoPhillips terminated the franchise, the burden shifts to ConocoPhillips to prove

11   that it has complied with all of the requirements for termination under the PMPA.  15 U.S.C. §

12   2805(c); *Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1371 (10th Cir. 1998).  As explained herein,

13   ConocoPhillips has failed to present any competent evidence in support of such a proposition and has

14   failed to meet its burden of proof.

15   **C.**    **ConocoPhillips' Reliance On The Court's Order Denying Plaintiff's Application For**
      **Preliminary Injunction As Its Sole Basis For Summarily Adjudicating Plaintiff's Claims**

16         **Is Improper**

17        ConocoPhillips' is improperly relying on the findings in the Court's Order denying Plaintiff's

18   application for a preliminary injunction to continue the franchise relationship to circumvent its burden

19   of proof under Rule 56.  In its subject Order the Court specifically held:

20              For the following reasons, the Court finds that a preliminary injunction is not
           "necessary to remedy the effects of any failure to comply with the requirements of

21              section 2802 or 2803 . . . ." 15 U.S.C. § 2805(b).  (November 16, 2007 Order, 6:13-
           16).

22

23   As such, the Court's findings were limited to denial of injunctive relief to Plaintiff based on the issues

    presented in Plaintiff's application under the PMPA.  Nothing in that Order constitutes a conclusive

24   pre-judging or summary adjudication of the factual issues that are still in dispute in this case.  In fact,

25   such a result would be an improper violation of Plaintiff's due process rights because summary

26   adjudication of facts can only be accomplished through trial on the merits or on a motion for

27   summary judgment pursuant to Rule of Civil Procedure 56.

28

1    The Court recognized this fact in its own findings contained in the subject November 16, 2007

2    Order. As the Court already found, "[t]he heart of Houtan's Complaint is that Conoco did not make

3    a bona fide offer to sell Conoco's equipment and improvements on the Station property to Houtan.

4    'When a franchisor decides for legitimate business reasons not to renew a franchise relationship, the

5    franchisor must give the franchisee a bona fide offer to purchase the station.'" (November 16, 2007

6    Order, 12:20-13:5 (citing *Ellis v. Mobil Oil*, 969 F.2d 784, 788 (9th Cir. 1992) and quoting, 15 U.S.C.

7    §2802(c)(4)(C)(i)).

8    The Court also recognized that "'[i]t is settled law that a bona fide offer under the PMPA is

9    measured by an objective market standard.'... 'To be objectively reasonable, an offer must approach

10   fair market value'... '[t]he facts of each case will set the terms of what constitutes a bon a fide

11   offer.'" (November 16, 2007 Order, 13:13-27 (quoting, *Ellis*, *supra* at 787 & 788 and *Slatky v.*

12   *Amoco Oil Co.*, 830 F.2d 476, 485 (9th Cir. 1987)).

13   The Court ultimately held:

14       The Court cannot conclude from the evidence before it whether the price contained
         in the offer by Conoco was bona fide. That said, the parties' disagreement as to the
15       value of the equipment and improvements is not grounds for a preliminary injunction.
         Thus, the issue that remains in this action is whether the price contained in the offer
16       was reasonable, and, therefore, whether the offer was bona fide. **This is a factual
         dispute and, as such, is a question for the jury.** (November 16, 2007 Order, 14:9-
17       16, emphasis added).

18   In denying Plaintiff's application for a preliminary injunction, the Court emphasized as

19   follows:

20       The Court emphasizes that in reaching these conclusions regarding the offer, the
         Court does not hold that the offer was necessarily reasonable. Instead, the Court finds
21       that the issue of the offer is not, by itself, sufficient justification for a preliminary
         injunction. (November 16, 2007 Order, 16:3-7).
22
23   Consequently, the Court did not conclusively adjudicate the issues as argued by

24   ConocoPhillips. Rather, the Court merely denied Plaintiff's application based on its evaluation of

     the respective equities of the parties at the time.
25
     **D.    ConocoPhillips' Arguments Improperly Ignore The Purpose And Intent Of The PMPA**
26
     In deciding the issues in this case, the Court should do so in the context of the overriding
27
28   purpose of the PMPA. In *Doebereiner v. Sohio Oil Company*, 880 F.2d 329, 331-332 (11 Cir. 1989),

1    the Court set forth the purpose behind the PMPA:

2           The legislative history of the PMPA reveals that the Act was
             designed to protect franchisees from arbitrary or discriminatory
3            termination or non-renewal. (Citation omitted.) Congress sought to equalize
             the obvious disparity in bargaining power between major oil companies and
4            service station operators. (Citations omitted.) ... To attain these ... goals,
             Congress specifically set forth the permissible grounds for termination or non-
5            renewal of franchise relationships, and bestowed on federal courts jurisdiction
             to remedy violations of the Act. *Id.*

6           This case is precisely the type of case which Congress had in mind when it enacted the PMPA.

7    The PMPA is intended to protect gas station franchise owners from arbitrary and discriminatory

8    termination of their franchises with large oil corporations and gasoline distributors, and to remedy the

9    disparity in bargaining power between the parties to gasoline franchise contracts. *DuFresne's Auto*

10   *Service, Inc. v. Shell Oil Company*, 992 F.2d 920, 925 (9th Cir. 1993) and *Mobil Oil Corporation v.*

11   *Virginia Gasoline Marketers and Automotive Repair Association*, 34 F.3d 220, 223 (4th Cir. 1994).

12          Aside from the fact that ConocoPhillips has failed to present any competent evidence in

13   support of its burden of proof, its argument that summary judgment is warranted because Plaintiff

14   allegedly failed to demand an offer for the equipment and improvements and equipment within 30

15   days is unfounded. ConocoPhillips relies upon the PMPA section 2802(c)(4)(C) which provides that

16   termination of the agreement is reasonable where "the franchisor (if requested in writing by the

17   franchisee not later than 30 days after notification was given pursuant to §2804...)... made a bona fide

18   offer to sell, transfer, or assign [its] interest in any improvements or equipment on the premises." 15

19   U.S.C. §2802(c)(4)(C).

20          Plaintiff's response to this contention is twofold. (1) Plaintiff **did** request that ConocoPhillips

21   sell its interest in the property to him within 30 days after ConocoPhillips' loss of right to grant

22   possession as required by the PMPA and (2) ConocoPhillips waived the right to contend and/or

23   should be estopped from contending that it is not required to make a bona fide offer under the PMPA.

24   January 4, 2008.

25          Thus, Plaintiff is entitled to a bona fide offer for the sale of improvements and equipment at

26   its station.

27   ///

28

-6-
PLAINTIFF'S OPPOSITION TO CONOCOPHILLIPS' MOTION FOR SUMMARY JUDGMENT

1

      a.    **Plaintiff Did Request In Writing That ConocoPhillips Sell Its Property At The Station To Plaintiff Within 30 Days After The Loss Of The Right Of The Franchisor To Grant Possession.**

2

3      ConocoPhillips contends that Plaintiff should have requested that the property be sold to it

4  within 30 days after having signed the latest version of the franchise agreement, executed on July 6,

5  2007, which was seventy-four (74) days before the September 18, 2007 Notice of Termination and

6  one hundred and eighteen (118) days before the October 31, 2007 termination date.  However, there

7  is no support for this proposition within the PMPA.

8      The PMPA dictates that the time to request the sale of improvements and equipment on the

9  property does not begin until after the franchisee acquires possession of the property, immediately

10  <u>after</u> the franchisor's loss of the right to grant such possession.  15 U.S.C. §2802(c)(4)(C).  Plaintiff

11  acquired possession on November 1, 2007 and its time to request such an offer therefore did not

12  expire until December 1, 2007.

13      The overriding purpose of the PMPA "is to protect the franchisee's reasonable expectation

14  of continuing the franchise relationship. [citations omitted].  Therefore, the Act is to be liberally

15  construed consistent with the goal of protecting franchisees."  *Ajir v. Exxon Corp.* (N.D.Cal. 1994)

16  855 F.Supp.294, 297, See, also, *Ellis v. Mobil Oil* (9th Cir. 1992) 969 F.2d 784, 788.  Further, the

17  PMPA must be liberally construed to effect its overriding remedial purpose of protecting the

18  franchisee from arbitrary or discriminatory acts of the franchisor.  *Hazara Enterprises, Inc. v. Motiva*

19  *Enterprises, LLC* 126 F.Supp.2d 1365, 1372 (2000) (citing, *Secker v. Star Enterprise*, 124 F.3d 1399

20  (11th Cir. 1997); *May-Som Golf Inc. v. Chevron USA*, 869 F.2d 917 (6th Cir. 1989)).

21      The PMPA provides for two (2) independent notice requirements.  The first is found in 15

22  U.S.C. §2802(c), providing in relevant part that:

23            2802(c)  "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is

24            reasonable" includes events such as –

25                    2802(c)(4) loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if –

26

                        2802(c)(4)(A) the franchisee was notified in writing, **prior to the**

27                        **commencement of the term of the then existing franchise** –

28                            2802(c)(4)(A)(i) of the duration of the underlying lease, and

2802(c)(4)(A)(ii) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal);

2802(c)(4)(B) during the 90-day period **after** notification was given **pursuant to section [2804]**, the franchisor offers to assign to the franchisee any option to extend the underlying lease or option to purchase the marketing premises that is held by the franchisor... (emphasis added).

This requirement is separate and independent from the second notice requirement contained in Section 2804(a), requiring that notice of termination be at least 90 days prior to the effective date of termination, in relevant part as follows:

2804(a) General requirements applicable to the franchisor.  Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor **shall furnish notification of such termination** or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship -

2804(a)(1)  in the manner described in subsection (c) of this section; and

2804(a)(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

The express language of the PMPA §2802(c)(4)(C) provides that in a situation where the franchisor loses the underlying lease, a termination of a franchise relationship is not effective until,

in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately **after the loss of the right of the franchisor to grant possession** (through an assignment [of an option to extend the underlying lease] pursuant to subparagraph (B) or by obtaining a new lease or purchasing the marketing premises from the landowner), the franchisor (if requested in writing by the franchisee not later than 30 days after notification was given pursuant to section 2804 of this title), during the 90 - day period after notification was given pursuant to section 2804 of this title –    (i)    made a bona fide offer to sell, transfer, or assign to the franchisee the interest of the franchisor in any improvements or equipment located on the premises..." 15 U.S.C. §2802(c)(4)(C).

Case law supports Plaintiff's position that Plaintiff need not request the sale of improvements and equipment until 30 days after he "acquires possession of the leased marketing premises effective immediately **after** the loss of the right of the franchisor to grant possession."

In *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365 (2000), Motiva voluntarily terminated the underlying ground lease with the landlord, Kathleen Erskine Leutze, effective November 30, 1999 pursuant to a lease term authorizing cancellation upon 180 days notice. On April 8, 1999, Motiva advised its lessee dealer, Hazara Enterprises, Inc., that it did not intend to

-8-

renew its franchise agreement effective November 30, 1999. Hazara thereafter attempted to negotiate a new lease directly from the landowner, but was unable to accomplish this until November 20, 1999, when it executed a new lease with the landlord. Shortly after Hazara Enterprises, Inc. regained its right of possession of the marketing premises on December 13, 1999, Hazara asked Motiva to sell the underground fuel lines and storage tanks to it. After an evidentiary hearing, the Magistrate Judge found the underground storage tank system at Hazara's station to be "potentially dangerous" and recommended to grant the injunctive relief. *Id.* at 1367-1369.

The Court held, however, that there was "at least an issue of fact as to the timeliness of Hazara's request to purchase the equipment because, as Hazara points out, it did not obtain a new lease on the marketing premises at the same time it was notified of the termination of the franchise relationship (April of 1999), raising a query as to whether it acquired possession of the premises "effective immediately after the loss of the right of the franchisor to grant possession" within the meaning of section 2802(c)(4)(C) on November 29, 1999, triggering the 30 day notification request provision of the statute at that time." *Id.* at 1373. The Court went on to say, however, that this issue of timeliness was a moot point at this juncture in light of the prior finding regarding the potential dangerousness of the equipment. *Id.* Nevertheless, the *Hazara Enterprises, Inc.* Court recognized that the time to request the sale of improvements and equipment under section 2802(c)(4)(C) did not expire until after Plaintiff obtain the possession of the property, immediately upon the franchisor's loss of the right to grant possession.

Such an interpretation is certainly consistent with the overriding purpose of the PMPA. In a situation such as the one at bar, the PMPA sets forth a requirement that the franchisee make a request to purchase the equipment and improvements within a specified time frame after it gains possession of the property, "effective immediately" after the franchisor's loss of the right to grant same.

The situation that exists in the present case is even stronger in Plaintiff's favor than the one that existed in the *Hazara Enterprises, Inc.* case. In the present case, there is no question that Plaintiff obtained possession of the premises immediately upon ConocoPhillips' loss of its right to grant possession to Plaintiff. Its only purpose in remaining on the premises is to continue operating a motor fuel service station.

-9-

1    Thus, Plaintiff is entitled to a bona fide offer pursuant to the PMPA.

2    **b.    ConocoPhillips Waived The Right To Contend and/or Should Be Estopped From Contending That It Is Not Required To Make A Bona Fide Offer Under The PMPA.**

3

4    Even if Plaintiff had not made such a request, ConocoPhillips waived the right to contend that

5    it is not required to extend a bona fide offer and/or should be estopped from so contending. At a

6    minimum, genuine issues of material fact exist as to whether ConocoPhillips waived the ability to

7    make such an argument.

8    On September 18, 2007, ConocoPhillips sent Plaintiff a notice, entitled "NOTICE OF

9    TERMINATION" indicating:

10    ConocoPhillips Company ("CONOCOPHILLIPS"), **pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA") provides you with this written notice** that your franchise relationship with CONOCOPHILLIPS and the above referenced Agreement shall terminate at 12:00 noon on October 31, 2007 ("Termination Date").

11

12

13    The reason for the termination is that the Station you operate is leased to CONOCOPHILLIPS by a third party, and said lease shall expire on October 31, 2007. The existence of an underlying lease was fully disclosed to you. Termination of the franchise relationship as a result of the loss of the franchisor's right to grant possession of the lease marketing premises because of the expiration of an underlying lease is an event that is of material significance to the franchise relationship for which termination is reasonable... Enclosed with this Notice is a copy of the Department of Energy revised Summary Of Title I of the PMPA, **which we are required by the PMPA** to provide you... (RJN, Exh. "1," Docket No. 5: Haddad Decl Exh. "B," p. 000082-83, emphasis added).

14

15

16

17

18    Thus, ConocoPhillips' own Notice of Termination acknowledges the fact that it was required

19    to provide such notice "by the PMPA." Although Houtan disputes the timeliness of this Notice, there

20    is no dispute that ConocoPhillips' reference to the PMPA in the Notice pertains to the notice

21    requirement under Section 2804(a).

22    Additionally, this Notice was sent to Houtan Petroleum less than 90 days prior to the

23    termination date of the franchise of October 31, 2007 as mandated by 15 U.S.C. §2804(a)(1) and (2).

24    Within 30 days of such Notice of Termination, on October 18, 2007, Plaintiff notified

25    ConocoPhillips in writing that it will be acquiring possession of the premises from the landlord and

26    demanded that ConocoPhillips forward a bona fide offer to sell its equipment and improvements.

27    (RJN, Exh. "1," Docket No. 5: Haddad Decl., Exh. "D," p. 000155). Which was in full compliance

28

-10-

1    with the express language of PMPA §2802(c)(4)(C).

2        In response to Houtan Petroleum's request for a bona fide offer, on October 22, 2007,

3    ConocoPhillips sent Plaintiff an "OFFER TO SELL IMPROVEMENTS" along with a Bill of Sale

4    for $340,000.00, also allegedly "[i]n accordance with the provisions of the Petroleum Marketing

5    Practices Act, 15 U.S.C. Section 2801 et seq." which in relevant part provides in substantial part as

6    follows:

> By hand delivered letter on September 18, 2007, **you were notified** of the Notice of Termination ("Notice") of the Union 76 Dealer Station Lease and Motor Fuel Supply Agreement, with an effective date of September 1, 2007, , 2007 ("Agreement"), **which Notice terminates your franchise relationship with CONOCOPHILLIPS COMPANY**, a Delaware corporation ("COP") for the above referenced Station. The termination of the Agreement shall be effective 12:00 noon on October 31, 2007 ("Termination Date").

> The reason for the termination is that, despite COP's efforts to get additional tenancy at the Station you operate, the underlying ground lease between COP the third party landlord shall expire on October 31, 2007. The duration of the lease and the fact it **might expire** during the term of the franchise were disclosed to you. Under these facts, it would not have been reasonable for COP to furnish not less than 90 days notice.

> You have informed COP on October 18, 2007 that you have obtained a lease with the third party landlord for the Station and have requested from COP a bona fide offer to purchase the improvements and equipment at the Station.

> **In accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq.**, COP offers to sell you our interest in the improvements and equipment located on the marketing premises... (RJN, Exh. "1," Docket No. 5: Haddad Decl., Exh. "E," p. 000157, emphasis added).

19        Thus, ConocoPhillips acknowledged once again the fact that the September 18, 2007 Notice

20    of Termination was issued pursuant to Section 2804(a) as the Notice that "terminates [Plaintiff's]

21    franchise relationship with CONOCOPHILLIPS COMPANY." With this Offer to Sell Improvements

22    ConocoPhillips also acknowledged in no uncertain terms the fact that such Offer was made "[i]n

23    accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801

24    et seq." In other words, this response essentially acknowledged and ratified Plaintiff's right to receive

25    a *bona fide* offer as required by the PMPA.

26        Thus, ConocoPhillips has expressly waived any argument that it was not required to make the

27    offer that it has already made or that such offer need not have complied with the *bona fide*

28    requirement of the PMPA.   Moreover, after expressly stating that such offer is in compliance with

1   and made pursuant to the PMPA, for ConocoPhillips to now contend that such offer did not need to

2   comply with the PMPA and that it was not required to make it in the first place is a bad faith act in

3   and of itself and disingenuous.

4       Moreover, given that ConocoPhillips was bound by Section 2802(c)(4)(B) to make such offer

5   within 90 days after plaintiff's request for sale of equipment and improvements, it would have been

6   futile and impractical for Plaintiff to have requested that ConocoPhillips make such offer within 30

7   days after executing the franchise agreement, before either Plaintiff or ConocoPhillips knew whether

8   ConocoPhillips would eventually secure a renewal of its lease with the third party landlord.  This is

9   exactly why the PMPA requires that such a request for an offer by  be made by the franchisee within

10  30 days "after" the franchisor's loss of the right to grant possession, rather than before such loss.

11      In any event, ConocoPhillips has clearly and expressly waived any right to contend that it is

12  not required to make a bona fide offer under the PMPA.  Furthermore, at a minimum, ConocoPhillips

13  should be estopped from making such argument.

14      ConocoPhillips now contends, that despite having issued a Notice of Termination on

15  September 18, 2007 and despite having made an allegedly *bona fide* PMPA offer to Houtan

16  Petroleum on October 22, 2007, it was not required to do so.  More importantly, ConocoPhillips

17  contends that neither its September 18, 2007 Notice of Termination, nor the October 22, 2007 offer

18  can be analyzed in the context of the PMPA because they need not comply with the PMPA.  The

19  evidence will show, that such contentions are ludicrous and disingenuous in light of ConocoPhillips

20  own actions and admissions and the PMPA itself.

21      However, the evidence shows that it was not reasonable for ConocoPhillips to provide

22  Plaintiff with less than 90 days Notice of Termination as required by the PMPA, and that Plaintiff

23  suffered damages as a result.

24      ConocoPhillips knew as early as March 2006 that the landowner of the subject property was

25  not interested in renewing its lease.  ConocoPhillips also admitedly knew that it was required to

26  provide a Notice of Termination to Houtan Petroleum at least 90 days prior to October 31, 2007, if

27  it was unable to negotiate a new lease with the landowner.

28      In an e-mail dated March 21, 2007, ConocoPhillips' real estate manager, Richard L. Mathews

-12-

1    communicated to the property manager for the landowner the following:

2         **My management is becoming very disenchanted.** Since early in 2006, I have sent
          dozens of e-mails and at least two formal letters (just since December, 2006)
3         following your initial requests to express our willingness to stay and under what
          terms, and not one piece of correspondence has been responded to with anything
4         material, such as what lease terms and what rent you want.

5         What does ConocoPhillips need to do to get a "response"? Do you want a face to face
          meeting - then tell me when and where and I will be there. Please, just give me some
6         definitive response to our proposal.

7         If you do not want ConocoPhillips as a tenant after our current lease expires on
          10/31/07, then just please say so and we will move on. (RJN, Exh. "2," Docket No.
8         61: Bleau Decl., Exh. "B," pg. COP 00013, emphasis added).

9    In a letter dated April 12, 2007, Mr. Mathews writes:

10        I am concerned that we have not had any material response to our good faith effort and
          proposal sent in December, 2006. I'm further perplexed because we have been a
11        tenant of yours for several years, and I suggest we have been a reasonably good tenant,
          and COP is a solid company financially. I am more than willing to pursue the
12        entitlements but before we do we need to finalize the basic ground lease extension
          terms and conditions, as well as rent, in order to ensure the proposed project meets our
13        economic hurdles. I do not think this is an unreasonable position for COP to take.
          **Time, however, is now a real concern as the current ground lease expires on
14        October 31, 2007.** (RJN, Exh. "2," Docket No. 61: Bleau Decl., Exh. "C," pg. COP
          00010, emphasis added).
15
     Still, on September 17, 2007, Mr. Mathews wrote:
16
17        I am still hopeful that ConocoPhillips ("COP") might still have an opportunity to
          secure a long-term lease with you for the above-referenced location. **Since there has
18        been no response since your brief letter dated May 24th, 2007, however, I
          appreciate this might not be possible.** Please understand that we are still interested
          if you are willing to discuss this issue with COP.
19
20        **In the meantime, there are notice obligations we must make to our franchise
          dealer that make it necessary for us to request a short-term extension.** To this
21        end, this letter serves as a formal request to extend the expiration date to the ground
          lease for a period of **ninety (90) days**, under the same terms and conditions. If you
22        concur, the revised expiration date will be January 31, 2008.

23        In addition, I would like to also request that the period by which we must raze all
          improvements following the terms of the lease be extended from 10 days to 30 days.
24
          **Timing is of the essence**, so may we please have your response to our **90-day**
25        extension request by **September 21, 2007**? (emphasis in original) Should I not hear
          from you by September 21st, I will take your silence as your unwillingness to extend
26        the lease as requested. (RJN, Exh. "2," Docket No. 61: Bleau Decl., Exh. "D," pg.
          COP 00132, emphasis added except where indicated).

27   ConocoPhillips issued its "NOTICE OF TERMINATION" allegedly "pursuant to the

28   requirements of the Petroleum Marketing Practices Act ("PMPA")" on the next day, September 18,

-13-

1    2008.  (RJN, Exh. "1," Docket No. 5: Haddad Decl., Exh. "B," p. 000082-83, emphasis added).

2          The May 24, 2007 letter from the landlord referred to by Mr. Mathews merely states:

3                I apologize for not getting back to you earlier.  I know your present lease expires in
                October of 2007.
4
                At this time we are exploring some alternatives.  (RJN, Exh. "2," Docket No. 61:
5                Bleau Decl., Exh. "E," pg. COP 00143).

6          On October 18, 2007, Plaintiff notified ConocoPhillips in writing that it will be acquiring

7    possession of the premises from the landlord and demanded that ConocoPhillips forward a bona fide

8    offer to sell its equipment and improvements.  (RJN, Exh. "1," Docket No. 5: Haddad Decl., Exh.

9    "D," p. 000155).

10          In light of the fact that ConocoPhillips did not issue its Notice of Termination to Houtan

11   Petroleum until September 18, 2007, the above-described letters and especially the September 17,

12   2007 letter is telling of ConocoPhillips' true state of mind with regard to the termination of Houtan

13   Petroleum's franchise.  First, ConocoPhillips' "disenchantment" with the landlord's lack of response

14   to its multiple requests to extend the master lease are indicative of ConocoPhillips' realization that

15   the landlord was unwilling to continue its relationship with ConocoPhillips.  Given the landlord's lack

16   of response to ConocoPhillips' requests since May 24, 2007, ConocoPhillips' plea of ignorance of

17   the fact that the landlord was not interested in extending the master lease amounted to wilful

18   blindness at best.

19          Second, in its September 17, 2007 letter, ConocoPhillips acknowledges and admits that "there

20   are notice obligations [it] must make to [its] franchise dealer that make it necessary for

21   [ConocoPhillips] to request a short-term extension" of the lease for 90 days for which "[t]iming is

22   of the essence."  (RJN, Exh. "2," Docket No. 61: Bleau Decl., Exh. "D," pg. COP 00132).  Clearly,

23   this amounts to an undisputable admission of ConocoPhillips' awareness that it must comply with

24   the 90 day notice requirement of the PMPA.  15 U.S.C. §2804(a)(2).  However, this awareness did

25   not manifest as late as September 17, 2007.  Rather, it existed all along, as evidenced by

26   ConocoPhillips' ongoing concern that it is running out of time before the October 31, 2007 expiration

27   of the master lease, as well as the reference to the PMPA in its Notice of Termination and the Offer

28   To Sell Improvements themselves.

1    In light of its own admissions, in its correspondence with Plaintiff and the landlord,

2    ConocoPhillips' contention that it was not required give Houtan Petroleum a 90 day Notice of

3    Termination that it ultimately did provide on September 18, 2007, is false and disingenuous.  The

4    truth of the matter is that ConocoPhillips knew all along that it was required to provide such notice.

5    Moreover, its failure to provide such notice at least 90 days prior to termination, caused Plaintiff to

6    request that it make a *bona fide* offer for sale its equipment and improvements on October 18, 2007,

7    which in turn, resulted in ConocoPhillips making such offer on October 22, 2007 (merely 9 days prior

8    to the October 31, 2007 franchise termination date).

9    ConocoPhillips has no reasonable excuse for its failure to comply with the 90 day notice

10    requirements of the PMPA because, by its own admission, "the earliest day on which furnishing such

11    notification [was] reasonably practicable" was clearly much earlier than September 18, 2007.  15

12    U.S.C. 2804(b)(1).

13    As explained above, at a minimum, genuine issues of material fact exist on this issue,

14    regarding denial of the instant motion for summary judgment

15                                        **III.**

16                                   **CONCLUSION**

17    Based on the foregoing, the instant motion for summary judgment must be summarily denied

18                                        Respectfully submitted,

19    Dated: April 18, 2008                BLEAU / FOX, A
                                          Professional Law Corporation

20
                                               /s/ Thomas P. Bleau
21                                        By:_____
                                               Thomas P. Bleau, Esq.
22                                             Gennady L. Lebedev, Esq.
                                               Attorneys for Plaintiff,
23                                             HOUTAN PETROLEUM, INC.

24

25

26

27

28