# EXHIBIT "1"

Case 3:07-cv-05627-SC Document 9-5 Filed 11/05/2007 Page 1 of 6

Thomas P. Bleau, Esq., SBN 152945
Gennady L. Lebedev, Esq., SBN 179945
BLEAU / FOX, A P.L.C.
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, California 90068
Telephone : (323) 874-8613
Facsimile : (323) 874-1234
e-mail: bleaushark@aol.com
e-mail: glebedev@bleaufox.com

Attorneys for Plaintiff,
HOUTAN PETROLEUM, INC.

**UNITED STATES DISTRICT COURT IN AND FOR**

**THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOUTAN PETROLEUM, INC.<br><br>Plaintiff,<br>vs.<br><br>CONOCOPHILLIPS COMPANY, a Texas Corporation and DOES 1 through 10, Inclusive<br><br>Defendants. | CASE NO.<br><br>**DECLARATION OF ED HADDAD IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION OF HOUTAN PETROLEUM, INC.** |

I, Ed Haddad, declare and state as follows:

1. If called upon to testify to the facts stated herein I could and would do so fully and competently based upon my personal knowledge of same.

2. I am over 18 years of age and the President of Plaintiff, Houtan Petroleum, Inc., which company owns and operates the Union 76 branded service station, located at 101 E. El Camino Real, Mountain View, California 94040 (hereinafter referred to as the "Premises").

3. Houtan Petroleum, Inc. purchased the Union 76 branded franchise at the Premises in approximately September 1997 for approximately $500,000 and has

operated such station pursuant a Union 76 Dealer Station Lease and Motor Fuel Supply Agreement (hereinafter referred to as the "Franchise Agreement") with franchisor ConocoPhillips Company continuously thereafter.

4. The latest Franchise Agreement was entered into with ConocoPhillips Company, on March 30, 2007, the term of the agreement commencing on September 1, 2007 and expiring on August 31, 2010. Attached hereto as **Exhibit "A"** is a true and correct copy of such latest Franchise Agreement.

5. Until October 31, 2007, ConocoPhillips Company leased the subject Premises on which the filling station is located from a third party owner of the premises, pursuant to an "Underlying Lease" which by its terms, expired on October 31, 2007.

6. On or about September 18, 2007, ConocoPhillips Company sent Houtan Petroleum, Inc. a "Notice of Termination" indicating that it has decided to terminate its Franchise Agreement, effective 12:00 noon on October 31, 2007 ("Termination Date") because the Underlying Lease with the third party owner expired on October 31, 2007. Attached hereto as **Exhibit "B"** is a true and correct copy of such Notice of Termination.

8. On October 16, 2007, Houtan Petroleum, Inc. and the landlord of the subject Premises, V.O. Limited Partners, a California limited partnership ("Landlord"), entered into a long term lease agreement with the effective date of November 1, 2007, pursuant to which Houtan Petroleum, Inc. acquired legal possession of the subject station Premises. A true and correct copy such lease is attached hereto as **Exhibit "C."**

9. On October 18, 2007, I sent ConocoPhillips Company a letter indicating that Houtan Petroleum would be acquiring possession of the premises from the landlord and demanding that ConocoPhillips sell its improvements and equipment to Houtan Petroleum. Attached hereto as **Exhibit "D"** is a true and correct copy of such letter.

10. On or about October 22, 2007, in response to my letter, ConocoPhillips

sent Houtan Petroleum an "Offer to Sell Improvements." This offer indicated that Houtan Petroleum could buy ConocoPhillips' improvements and equipment at the Premises for $340,000, but only if the offer is accepted by October 29, 2007 and is provided with a certified check for the full purchase price no later than 12:00 noon on October 31, 2007. Attached hereto as **Exhibit "E"** is a true and correct copy of such letter and the Bill of Sale that was included with the letter.

11. On October 29, 2007, my attorney, Thomas P. Bleau of the Bleau Fox firm sent ConocoPhillips a letter addressing Houtan Petroleum's position with regard to this matter. A true and correct copy of such letter is attached hereto as **Exhibit "F."**

12. Despite these communications, on October 30, 2007, ConocoPhillips notified the Landlord through its management company, De Anza Properties, that it intended to start removing its equipment and improvements from the subject Premises on November 1, 2007. Attached hereto as **Exhibit "G"** is a true and correct copy of ConocoPhillips' letter indicating this intention to De Anza Properties.

13. On October 31, 2007, ConocoPhillips sent bulldozers to the station Premises to begin removal of its equipment and improvements. Houtan Petroleum refused to cooperate with such activities and prevented them for the time being. This was followed up by a letter from Bleau Fox to ConocoPhillips' attorneys, dated October 31, 2007, indicating our intention to seek injunctive relief from the Court. A true and correct copy such letter is attached hereto as **Exhibit "H."**

14. On November 1, 2007, the Landlord, through De Anza Properties confirmed with ConocoPhillips of the Landlord's lease agreement with Houtan Petroleum and the fact that it cannot authorize ConocoPhillips to remove the improvements and equipment from the Premises. A true and correct copy of such letter is attached hereto as **Exhibit "I."**

15. As of 12:00 noon on October 31, 2007, ConocoPhillips cut off supply of fuel to the subject station and stopped processing all credit card sale transactions at

the station. This has already resulted in significant damages to Houtan Petroleum and stands to result in substantial irreparable harm to its goodwill if the franchise relationship is not resumed.

16. The subject filling station is located in a busy intersection of an upper scale neighborhood. It has built up considerable goodwill at its present location over the last ten years, a significant portion of which is due to the fact that it sells branded gasoline, specifically the Union 76 brand. Virtually all of the goodwill at the station is associated with being a Union 76 branded station.

17. In an attempt to preserve this goodwill, Houtan Petroleum is currently in the process of engaging in discussions with independent suppliers of Union 76 branded gasoline ("Jobbers"), as well as with suppliers of other branded gasoline, to resume supply of branded fuel after ConocoPhillips' termination of its franchise relationship with Houtan Petroleum. Forcing Houtan Petroleum to sell unbranded/independent gasoline would cause it to suffer irreparable harm in the form of substantial detriment and loss of its business goodwill.

18. The extremely short notice that ConocoPhillips provided to Houtan Petroleum prior to its effective date of termination, was not enough time to secure a fuel supply agreement with such a branded supplier of gasoline.

19. Additionally, the mere nine (9) days that ConocoPhillips gave Houtan Petroleum to come up with $340,000 to purchase its equipment and improvements was grossly inadequate.

20. Additionally, Houtan Petroleum is currently in the process of obtaining an appraisal from an MAI appraiser of all such equipment and improvements, which it was not able to obtain on such short notice prior to executing this declaration.

21. Nevertheless, I have been involved in the business of operating gasoline service stations for approximately 20 years. In the last 20 years, I have operated over fifteen (15) different gasoline service stations. I am currently operating 9 different gasoline service stations. Consequently, I have substantial experience and knowledge

regarding the market value of equipment and improvements at gasoline stations, such as the subject station located at 101 E. El Camino Real, Mountain View, California.

22. As Attachment "A" to the Bill of Sale (attached to this declaration as part of Exhibit "E") indicates, the 2 underground storage tanks at the Premises are almost twenty (20) years old, installed on January 1, 1988. The piping a the Station are almost 13 years old, installed on January 1, 1994. The dispensers at the Station are also very old and will likely have to be replaced in 2009 due to governmental requirements of having to change to a new system. Likewise, the rest of the equipment and improvements at the station, including the canopies and the building are extremely old and in poor physical condition. Consequently, based on my extensive experience with gasoline service stations, it is my opinion that the fair market value of the equipment and improvements identified on ConocoPhillips' Bill of Sale, which are located at the subject Premises, does not exceed $120,000.

23. Regardless, I am currently willing to exercise my PMPA rights to purchase the improvements and equipment at the Premises for a price that approaches fair market value. However, I believe that ConocoPhillips' Offer fails to comply with the PMPA and that it has failed to convey a truly "bona fide" offer to me. I therefore request that the Court grant my Application for a Preliminary Injunction preventing ConocoPhillips from terminating its Franchise Agreement and ordering it to resume supply of gasoline and processing of credit card transactions during the pendency of this lawsuit.

24. Unless this honorable Court enjoins ConocoPhillips from terminating its franchise relationship and orders it to continue such relationship during the pendency of this case, Houtan Petroleum, will lose a substantial amount of its goodwill that it has built up over the last 10 years.

25. Based substantially on the foregoing facts, including but not limited to its failure to provide 90 days notice of the termination, I believe that ConocoPhillips'

decision to terminate its franchise relationship with Houtan Petroleum was not in good faith and in the normal course of business. Likewise, I believe that ConocoPhillips' Offer for the sale of equipment and improvements at the Premises was not bona fide for a variety of reasons, including but not limited to those stated in this declaration.

26. I believe that Houtan Petroleum will be irreparably harmed if ConocoPhillips is not ordered to resume supply of gasoline and processing of credit card transactions and is allowed to remove the equipment and improvements from the Premises because this would put Houtan Petroleum out of business completely.

27. If the equipment and improvements are not removed and ConocoPhillips resumes its franchise relationship, including supply of gasoline and processing of credit card transactions, during the pendency of this lawsuit, Houtan Petroleum will be unable to remain in business and sell gasoline until all of the issues can be resolved on the merits.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 4th day of November, 2007, in Mountain View, California.

Ed Haddad

# EXHIBIT "B"



September 18, 2007

255661
Houtan Petroleum ("DEALER")
101 E. El Camino Real
Mountain View, CA 94040

RE: Union 76 Dealer Station Lease and Motor Fuel Supply Agreement dated March 30, 2007 (Agreement") regarding Site # 255661 ("Station")

**NOTICE OF TERMINATION**
**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Dear DEALER:

ConocoPhillips Company ("CONOCOPHILLIPS"), pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA") provides you with this written notice that your franchise relationship with CONOCOPHILLIPS and the above referenced Agreement shall terminate at **12:00 noon on October 31, 2007** ("Termination Date").

The reason for the termination is that the Station you operate is leased to CONOCOPHILLIPS by a third party, and said lease shall expire on October 31, 2007. The existence of an underlying lease was fully disclosed to you. Termination of the franchise relationship as a result of the loss of the franchisor's right to grant possession of the leased marketing premises because of the expiration of an underlying lease is an event that is of material significance to the franchise relationship for which termination is reasonable.

Termination of the Agreement and the franchise relationship shall not discharge you from any debts and liabilities due and owing by DEALER to CONOCOPHILLIPS under the Agreement. You shall pay to CONOCOPHILLIPS all outstanding debt including, but not limited to, accounts receivable for product previously delivered to the Station, the un-amortized amounts due under any Amortization Agreement(s) and/or amounts owing under any Promissory Note(s) ("Debt") on or before the Termination Date.

As of the Termination Date, CONOCOPHILLIPS will cease motor fuel deliveries to the Station. Please also be advised that CONOCOPHILLIPS will no longer accept transmittals for credit card transactions dated after the Termination Date. Credit card transmittals submitted for transactions after the Termination Date will be returned to you.

We respectfully request that you keep at the Station all the personal property covered by the Security Agreement between us. DO NOT SELL OR REMOVE the secured personal property of fixtures from the Station unless: 1) the property is resalable merchandise sold in the normal course of the Station operation, or 2) CONOCOPHILLIPS has given its express, written consent to sell the secured items.

Enclosed with this Notice is a copy of the Department of Energy revised Summary of Title I of the PMPA, which we are required by the PMPA to provide to you. Should you have any questions regarding this notice please contact your Account Representative.

Sincerely,

ConocoPhillips Company

Ross Davidson
Manager, West Coast & Retail

Cc: Dan Pellegrino
Jay Rollins
Phil Bonina
Dick Mathews
Jack Whalen
File

# EXHIBIT "D"

**Houtan Petroleum**
**101 E. El Camino Real**
**Mountain View, CA 94040**

October 18, 2007

ConocoPhillips
3611 Harbor Blvd., Suite 200
Santa Ana, Ca 92704
Att: Ross Davidson
Phil Bonina

Re: 101 E. El Camino Real, Mountain View, CA 94040
Site #: 255661

Dear Messrs. Davidson and Bonina:

I am in receipt of ConocoPhillips' untimely Notice of Termination of our PMPA franchise. Since we will be acquiring possession of the premises from the landlord, demand is hereby made that you forward us a bona fide offer from ConocoPhillips to sell the improvements and equipment to us.

Further, please be advised that we hereby expressly reserve any and all rights under both state and federal law.

If you have any further questions, please feel free to contact me.

Sincerely,

Ed Haddad

# EXHIBIT "E"



**Dick Mathews**
Real Estate Manager

ConocoPhillips Company
76 Broadway
Sacramento, CA 95818
phone 916-558-7607
fax 916-558-7696

October 22, 2007

Houtan Petroleum ("DEALER")
101 E. El Camino Real
Mountain View, CA 94040

RE: Offer to Sell Improvements at Site #255661, located at
101 E. El Camino Real, Mountain View, California ("Station").

OFFER TO SELL IMPROVEMENTS

Dear DEALER,

By hand delivered letter on September 18, 2007, you were notified of the Notice of Termination ("Notice") of the Union 76 Dealer Station Lease and Motor Fuel Supply Agreement, with an effective date of September 1, 2007, , 2007 ("Agreement"), which Notice terminates your franchise relationship with CONOCOPHILLIPS COMPANY, a Delaware corporation ("COP") for the above referenced Station. The termination of the Agreement shall be effective at 12:00 noon on October 31, 2007 ("Termination Date").

The reason for the termination is that, despite COP's efforts to get additional tenancy at the Station you operate, the underlying ground lease between COP the third party landlord shall expire on October 31, 2007. The duration of the lease and the fact it might expire during the term of the franchise were disclosed to you. Under these facts, it would not have been reasonable for COP to furnish not less than 90 days notice.

You have informed COP on October 18, 2007 that you have obtained a lease with the third party landlord for the Station and have requested from COP a bona fide offer to purchase the improvements and equipment at the Station.

In accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq., COP offers to sell you our interest in the improvements and equipment located on the marketing premises.

This offer is conditioned upon COP being paid by certified check the sum of Three Hundred Forty Thousand Dollars ($340,000.00) for the improvements and equipment located at the Station (summarized on the attached Bill of Sale, Schedule 1, and Attachment "A" to Bill of Sale).

Please note that under the Lease, COP has only 10 days after expiration of the Lease to remove the improvements and equipment. Thus, your written notification to COP of your acceptance and/or rejection of the offer to purchase COP's interest in the improvements and equipment must be provided to COP no later than 5:00 p.m. PT on

**October 29, 2007**. COP must receive your certified check for the full purchase price no later than 12:00 noon on **October 31, 2007. Escrow information will follow.**

Sincerely,

R. L. (Dick) Mathews
Contractor – ConocoPhillips Real Estate Department

**Acknowledged/agreed to:**

Houtan Petroleum - Dealer

**By:** ____________________

**Its:** ____________________

**Date:** ____________________

Attachments:

Bill of Sale with Schedule 1 ("Property") and Attachment "A" to Bill of Sale.

cc: Dan Pellegrino, Account Representative
Phillip Bonina, Director, Real Estate
David Nash, Contracts Administration
Station File 255661

# BILL OF SALE
(Including Tanks)

In consideration of the covenants and agreements herein contained and in further consideration of Three Hundred Forty Thousand Dollars ($340,000.00) paid to it by Houtan Petroleum, with an address of 101 E. El Camino Real, Mountain View, California 94040 ("Buyer"), the receipt of which is hereby acknowledged, ConocoPhillips Company, successor by merger and name change to Tosco Corporation, having an office at 3611 Harbor Boulevard, Suite 200, Santa Ana, California 92704 ("Seller"), does hereby transfer and convey to Buyer all of Seller's right, title, and interest in and to the personal property described in Schedule 1 attached hereto and made a part hereof located at Site No 255661, 101 E. El Camino Real, Mountain View, CA ("Property").

TO HAVE AND TO HOLD unto Buyer and buyer's representatives, heirs, devisees, successors, and assigns forever. Buyer acknowledges that Seller is selling only such right, title, or interest in the Property as Seller may have without Seller representing or warranting the extent of Seller's right, title or interest therein. Buyer shall pay any federal, state or local sales, use or value added tax which may be due as a result of this transfer.

Buyer affirms by acceptance of this Bill of Sale that Buyer has inspected to its full satisfaction all of the Property conveyed pursuant to this Bill of Sale and has full knowledge of its condition and location. This sale is made on an "AS-IS, WHERE-IS BASIS" WITHOUT REPRESENTATION OR WARRANTY BY SELLER, EXPRESS OR IMPLIED, REGARDING THE HABITABILITY, CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR USE OR PURPOSE of the Property conveyed hereby. This sale does not include any title in, or any right to use, any advertising, trade names, trade marks, trade dress, service marks, signs, sign poles, slogans identifications, copyrights or copyrighted materials of the Seller and its affiliates, parents and subsidiaries.

Buyer acknowledges that any underground storage tanks and associated product piping systems ("USTs") included in, on or under the Property may contain explosive gases and may have been used for the storage of motor fuels containing tetraethyl, lead or other "antiknock" compounds which have made such USTs unfit for the storage of water or any other article or commodity intended for human or animal contact or consumption. Buyer expressly agrees not to use or permit the use of such USTs for such purpose.

BUYER IS WARNED THAT USTs MAY DEVELOP LEAKS AT ANY TIME AND THAT ANY LEAKAGE THEREFROM MAY CAUSE SERIOUS DAMAGE TO PERSONS AND PROPERTY WITHIN AND BEYOND THE CONFINES OF THE IMMEDIATE AREA. BUYER AGREES THAT ANY LEAK DISCOVERED AT ANY TIME HEREAFTER SHALL BE BUYER'S RESPONSIBILITY AND SHALL BE DEEMED TO HAVE OCCURRED AFTER SUCH OWNERSHIP HAS PASSED TO BUYER.

As of the Effective Date, as defined below, Buyer hereby agrees to assume and hereby waives, releases, indemnifies, defends and holds harmless Seller and its directors, officers, employees, contractors, agents, representatives successors and assigns, from and against any and all claims, demands, damages, costs and expenses, including attorneys' fees, court costs, awards, settlements, judgments, penalties, fines, liens or causes of action, at law or in equity, including without limitation actions under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. 9601, et seq., as amended, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, et seq., and any other applicable environmental laws, statutes, ordinances, rules, regulations or orders ("Laws"), arising out of or relating to the physical condition of the Property or other property abandoned thereon by Seller, or arising out or relating to the ownership or use of the Property after the date hereof.

The provisions of the Bill of Sale shall be effective as of **12:01 A.M on November 1, 2007 ("Effective Date").**

IN WITNESS WHEREOF, this Bill of Sale has been duly executed by the undersigned this ___ day of _______________, 2007, having first read and understood the terms contained herein and the purpose, intent and effects hereof.

DEALER:

By: ______________________________

Name ___Houtan Petroleum_____

WITNESSED:

By: ______________________________

Name: ____________________________

ConocoPhillips Company, a Delaware corporation

By: ______________________________

Name ______R. L. Mathews__________
Contractor, ConocoPhillips Real Estate Department

By: ______________________________

Name: ____________________________

**SCHEDULE 1 ("Property") at**
**<u>Site No. 255661</u>**
**<u>101 E. El Camino Real, Mountain View, CA</u>**

| | |
|---|---|
| Service station building (1,624 sq. ft.) | 1 |
| MPD dispensers with CRIND | 6 |
| UST's – gasoline (With associated piping for all UST's) | |
| 12,032 gallon Double Steel | 1 |
| 12,032 gallon Double Steel | 1 |
| UST – waste oil (550 gallon) | 1 |
| Canopy | 2 |
| Monument sign | 1 |
| G-Site | 1 |

Any/all moveable equipment, air compressor and hoists.

Asphalt and concrete paving, landscaping and trash enclosure.

Site No.255661
101 E. El Camino Real, Mountain View, CA

## ATTACHMENT "A" TO BILL OF SALE

UNDERGROUND STORAGE TANK INFORMATION
PAGE ONE OF ONE

**EXHIBIT D**

**UNDERGROUND STORAGE TANK INFORMATION**

Site No. 255661

To Seller's Actual Knowledge, information about the UST's and monitoring system are as follows:

| Tank | 1 | 2 | 3 |
|---|---|---|---|
| Product | UNLEADED | PREMIUM UNLEADED | WASTE OIL |
| Approximate Capacity | 12032 | 12032 | 550 |
| Approximate Tank Install Date | 1/1/1988 | 1/1/1988 | 1/1/1988 |
| DW or SW Tank | DOUBLE | DOUBLE | DOUBLE |
| Tank Material | STEEL - FG CLAD | STEEL - FG CLAD | STEEL - FG CLAD |
| Tank Monitoring Method | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED |
| Approximate Piping Install Date | 1/1/1994 | 1/1/1994 | N/A |
| DW or SW Piping | DOUBLE | DOUBLE | N/A |
| Piping Material | FIBERGLASS | FIBERGLASS | N/A |
| Line Monitoring Method | CONTINUOUSLY MONITORED | CONTINUOUSLY MONITORED | N/A |
| ATTACH ADDITIONAL PAGES IF NECESSARY | | | |