1    GLYNN & FINLEY, LLP
     CLEMENT L. GLYNN, Bar No. 57117
2    ADAM D. FRIEDENBERG, Bar No. 205778
     JONATHAN A. ELDREDGE, Bar No. 238559
3    One Walnut Creek Center
     100 Pringle Avenue, Suite 500
4    Walnut Creek, CA 94596
     Telephone: (925) 210-2800
5    Facsimile: (925) 945-1975
     Email: cglynn@glynnfinley.com
6           afriedenberg@glynnfinley.com
            jeldredge@glynnfinley.com
7
     Attorneys for Defendant
8    ConocoPhillips Company

9

10                       UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12   HOUTAN PETROLEUM, INC.            )   Case No. 3:07-cv-5627
                                       )
13              Plaintiff,             )   **REPLY MEMORANDUM IN SUPPORT OF**
                                       )   **DEFENDANT CONOCOPHILLIPS**
14        vs.                          )   **COMPANY'S MOTION FOR SUMMARY**
                                       )   **JUDGMENT OF PLAINTIFF'S**
15   CONOCOPHILLIPS COMPANY, a Texas   )   **COMPLAINT**
     corporation and DOES 1 through 10,)
16   Inclusive                         )   **Date:      May 9, 2008**
                                       )   **Time:      10:00 a.m.**
17              Defendants.            )   **Courtroom: 1**
                                       )   **Before:    Hon. Samuel Conti**
18   ——————————————————————————————————)

19          Defendant ConocoPhillips Company ("ConocoPhillips") submits this reply in support of

20   its motion for summary judgment of the Complaint of Plaintiff Houtan Petroleum, Inc.

21   ("Plaintiff" or "Houtan Petroleum").

22   **I.      INTRODUCTION**

23          Plaintiff commenced this action in November 2007, seeking a preliminary injunction to

24   prevent ConocoPhillips' termination of the parties' franchise agreement. The Court denied

25   injunctive relief, finding that the termination was proper and timely under the PMPA, and that

26   Plaintiff had failed even to demonstrate a "fair ground for litigation" of these issues. (Indeed,

27   ConocoPhillips had no choice but to terminate the franchise when Plaintiff entered an agreement

28   to lease the station property directly from its owner, a third-party.) More than five months later,

                                         - 1 -

1    Plaintiff remains in possession of ConocoPhillips' equipment and improvements without any

2    legal right and in direct defiance of this Court's order denying injunctive relief.

3        The Court has already found that ConocoPhillips' termination of the franchise agreement

4    was proper, and that ConocoPhillips provided timely notice of the termination in the franchise

5    agreement itself. The only issue remaining for adjudication is whether Plaintiff has a right to

6    purchase ConocoPhillips' equipment and improvements.[1]  The PMPA provides such a right only

7    when the franchisee requests an offer within 30 days after notice of termination. That Plaintiff

8    failed to make a request within this period is undisputed.

9        Faced with this reality, Plaintiff argues it was not required to comply with the

10   requirement. However, the argument is based entirely on a tortured and internally inconsistent

11   misreading of the relevant PMPA provision. Alternatively, Plaintiff argues that by voluntarily

12   offering to sell Plaintiff its property, ConocoPhillips somehow waived a defense of Plaintiff's

13   statutory non-compliance, but this argument likewise lacks any support in law or logic.

14       Plaintiff thus fails to raise any triable issue. The Court should therefore grant

15   ConocoPhillips' motion, and enter summary judgment in its favor on Plaintiff's Complaint.

16   **II.    ARGUMENT**

17       **A.    ConocoPhillips' Motion Is Supported By Competent Evidence.**

18       Plaintiff argues that ConocoPhillips' motion "has failed to present any competent

19   evidence." (Docket No. 97 at 3:11.) The assertion is false. In reality, the motion is amply

20   supported by citations to evidence, including the declarations of Ed Hadad (Docket No. 5), Dan

21   Pellegrino (Docket No. 12), Richard L. Matthews (Docket No. 13) and Jonathan A. Eldredge

22   (Docket No. 96), and exhibits submitted with these declarations.[2]  Plaintiff's claim is simply part

23   of the "see what sticks" approach that has characterized Plaintiff's previous filings in the case.

24

25   [1] If the Court finds such a right, Plaintiff must further establish that ConocoPhillips' offer was
26   not "bona fide" under the PMPA. ConocoPhillips' motion does not address this issue because
     Plaintiff cannot make the threshold showing of a statutory entitlement to such an offer.

27   [2] Of course, ConocoPhillips did not physically attach these documents to its moving papers, as
28   they were already part of the Court's electronic record. ConocoPhillips' notice of motion
     specifically stated that it was relying on "all orders, pleadings and papers on file in this action."

REPLY IN SUPPORT OF CONOCOPHILLIPS COMPANY'S MOT. FOR SUMMARY JUDGMENT

1    **B.    The Franchise Termination Complied With The PMPA.**

2         **1.    The termination was for a legitimate reason under the PMPA.**

3         Plaintiff claims that "[t]his case is precisely the type of case which Congress had in mind

4    when it enacted the PMPA." (Docket No. 97 at 6:6.) We find this difficult to imagine, and

5    indeed Plaintiff does not cite a single case (or other authority) to support the assertion. In reality,

6    although a "chief purpose of the PMPA is . . . to protect the franchisee's reasonable expectation

7    of continuing the franchise relationship . . . the PMPA is not 'a oneway statute, which should

8    single-mindedly be construed to favor franchisee positions.'" *BP West Coast Products LLC v.*

9    *Greene* 318 F.Supp.2d 987, 994 (E.D.Cal. 2004) quoting *Unocal Corp. v. Kaabipour* 177 F.3d

10   755, 762-63 (9th Cir. 1999). In enacting the PMPA, "Congress recognized the 'importance of

11   providing adequate flexibility so that franchisors may initiate changes in their marketing

12   activities to respond to changing market conditions and consumer preferences.'" *Southern*

13   *Nevada Shell Dealers Ass'n v. Shell Oil Co.*, 634 F. Supp. 65, 68 (D. Nev. 1985).

14        Thus, the PMPA does not immunize franchisees against franchise termination under

15   appropriate circumstances. To the contrary, the PMPA provides numerous circumstances under

16   which termination is permitted -- including the expiration of a franchisor's underlying property

17   lease. 15 U.S.C. § 2802(c)(4). The parties' franchise agreement itself provided explicit notice

18   that the agreement "shall terminate" upon termination of ConocoPhillips' lease with the property

19   owner. (Docket No. 5, Ex. A at 11-12 (¶ 2(a)) and 63 (Addendum 1).) Accordingly, this Court

20   has already found that the termination (including ConocoPhillips' notice thereof) was proper

21   under the PMPA. (Docket No. 18 at 8:3-11:13.)

22        **2.    ConocoPhillips provided timely notice of termination.**

23        Plaintiff argues that "Notice [of termination] was sent to Houtan Petroleum less than 90

24   days prior to the termination date of the franchise of October 31, 2007 as mandated by 15 U.S.C.

25   §2804(a)(1) and (2)." (Docket No. 97 at 10:22-23.) This is rank distortion. In reality, the Court

26   has already found the notice of termination in the Franchise Agreement was timely pursuant to

27   the PMPA (i.e., 90 days prior to termination) as ConocoPhillips provided it to Plaintiff in May

28   2007, and Plaintiff signed and initialed the notice on July 6, 2007 (117 days prior to

1   termination).[3] (Docket No. 18 at 10:18-11:13; Docket No. 12 at ¶ 5; Docket No. 5, Ex. A at p.

2   37 and p. 63 (Addendum 1).)

3          Plaintiff blithely ignores these undisputed facts. Instead, it argues that the reminder

4   notice (that ConocoPhillips sent Plaintiff in September 2007 to confirm the termination would

5   proceed) was untimely. The argument makes no sense, however, because by the time of this

6   reminder notice, ConocoPhillips had already complied with the PMPA several months earlier

7   (via the notice set forth in the Franchise Agreement). Indeed, the Court has already thoroughly

8   considered, and rejected, this canard:

9          Houtan argues that because Conoco informed Houtan in writing on September 18
           that it would be terminating the [F]ranchise Agreement on October 31, Conoco
10         failed to provide the requisite 90-day notice of termination. This argument
           ignores the fact that Houtan was on notice as early as July 6 that the Franchise
11         Agreement would be terminated in the event that Conoco was unable to secure a
           renewal of the Master Lease.
12

13  (Docket 18 at 10:26-11:5.)

14         Plaintiff cannot create a triable issue by pretending that the evidentiary record and this

15  Court's prior Order do not exist. Plaintiff identifies no basis for reconsideration of the Court's

16  previous finding.[4] ConocoPhillips is therefore entitled to judgment as a matter of law that its

17  termination of the Franchise Agreement was for a legitimate reason and timely under the PMPA.

18  / / /

19  / / /

20
    ───────────────
21  [3] Plaintiff contends that ConocoPhillips' citations to this Court's previous order denying
    preliminary injunctive relief were somehow improper. (Docket No. 97 at 4:17-19.) Once again,
22  Plaintiff cites no authority for its novel argument. Instead, Plaintiff argues, falsely, that the
    Court's denial of injunctive relief was solely "based on [the Court's] evaluation of the respective
23  equities. . . ." (Docket No. 97 at 5:23-24.) In truth, the Court directly addressed the merits,
    finding that in light of the evidence submitted by the parties, ConocoPhillips' termination of the
24  franchise agreement was appropriate and timely under the PMPA. (Docket No. 18 at 8:3-12:18.)

25  [4] Plaintiff does argue that the PMPA includes two notice requirements, obligating the franchisor
    to provide notice both prior to commencement of the franchise term, and also 90 days prior to
26  termination. But this is precisely what occurred. It is undisputed that ConocoPhillips provided
    the Franchise Agreement to Plaintiff in May, more than 90 days prior to its September 1, 2007
27  effective date. (Docket No. 12 at ¶ 5.) Thus the Franchise Agreement itself constituted notice
    sufficient to comply with both relevant PMPA provisions (15 U.S.C. § 2802(c)(4)(a) and 15
28  U.S.C. § 2804(a)(2)). Indeed, Plaintiff cites no authority holding that the same notice cannot
    satisfy both statutory requirements.

1    **C**    **Plaintiff Failed To Make A Timely Request For A Bona Fide Offer.**

2        **1.**    **The PMPA required that Plaintiff request a bona fide offer within 30 days after ConocoPhillips provided notice of termination.**

3

4        Houtan Petroleum argues that "Plaintiff **did** request that ConocoPhillips sell its interest in

5    the property to him within 30 days after ConocoPhillips' loss of right to grant possession as

6    required by the PMPA." (Docket No. 97 at 6:20-22 (original emphasis).)  There is no such

7    requirement in the PMPA.  As shown in ConocoPhillips' motion, the PMPA obligates a

8    franchisor to sell its equipment and improvements to a franchisee only "if requested in writing by

9    the franchisee not later than 30 days after notification was given pursuant to section 2804 of this

10    title."[5]  (Docket No. 95 at 6:5-16 citing 15 U.S.C. § 2802(c)(4)(C)).  As the Court has already

11    found, ConocoPhillips gave notice of termination in May 2007; Plaintiff signed and initialed the

12    notice on July 6, 2007.  (Docket No. 12 at ¶ 5; Docket No. 5, Ex. A at p. 37 and p. 63

13    (Addendum 1).)  Even using the later of these two dates as the effective notice date, Plaintiff was

14    still required to request a bona fide offer no later than August 5, 2007.  Plaintiff failed to do so,

15    thereby waiving any right to such an offer.

16        **2.**    **No basis exists for the statutory construction suggested by Plaintiff.**

17        Confronted with its non-compliance, Plaintiff asks the Court to ignore the statutory

18    deadline.  Instead, Plaintiff argues the Court should rewrite the PMPA to create a new rule

19    extending Plaintiff's time to request a bona fide offer until 30 days after commencement of its

20    lease with the land owner.  However, "[i]t is a well-established rule that 'when words are free

21    from doubt they must be taken as the final expression of the legislative intent, and are not to be

22    added to or subtracted from by considerations drawn . . . from any extraneous source.'  [internal

23    citations omitted]  Strict construction is particularly appropriate where, as here, the statute in

24    question is in derogation of common law rights."  *Checkrite Petroleum, Inc. v. Amoco Oil Co.*

25    678 F.2d 5, 8 (2nd Cir. 1982) (construing PMPA provisions).  Here, the language of section

26    2802(c)(4)(C) is unequivocal -- "not later than 30 days after *notification* was given" (emphasis

27    _____

28    [5] The "notification" referred to is the franchisor's notice (to the franchisee) of termination (or nonrenewal) of the franchise agreement.  *See* 15 U.S.C. 2804.

1   added) -- and there is thus no basis in law for expansion of the legislatively mandated deadline.

2   *See Checkrite Petroleum, Inc.*, 678 F.2d at 8.

3          Moreover, any statute must be interpreted so that it is internally consistent. *See Freeman*

4   *v. Gonzles* 444 F.3d 1031, 1039 (9th Cir. 2006) ("In understanding and applying a regulatory

5   scheme, we should interpret statutes to be coherent and internally consistent."). The PMPA

6   generally requires that a franchisor give notice of termination 90 days prior to the date of

7   termination. 15 U.S.C. § 2804. Where, as here, the expiration of a franchisor's underlying lease

8   is the basis for termination, and the franchise termination is contemporaneous with expiration of

9   the underlying property lease, the franchisor is necessarily required to give notice of termination

10  90 days prior to expiration of its underlying property lease. The franchisor must also make a

11  bona fide offer to sell its equipment (if properly requested by the franchisee) during this same 90

12  day period. 15 U.S.C. § 2802(c)(4)(C).

13         Compliance with both provisions would be impossible if the franchisee is permitted to

14  wait to request a bona fide offer until after its new lease with the property owner commences. By

15  that time, the 90 days prior to termination would have already run. Thus, the statutory

16  construction proposed by Plaintiff would result in an absurd and irreconcilable contradiction

17  among the various applicable PMPA provisions. It is a well-settled principle of statutory

18  construction that statutes must be given meanings that avoid such results. *See Arizona State*

19  *Board for Charter Schools v. U.S. Dept. of Education* 464 F.3d 1003, 1008 (9th Cir. 2006)

20  ("well-accepted rules of statutory construction caution us that 'statutory interpretations which

21  would produce absurd results are to be avoided'"). Such is especially true where, as here, the

22  plain statutory language involves no such inconsistency.

23         Plaintiff's untenable statutory interpretation makes even less sense when examined in the

24  context of the case at bar. Under Plaintiff's theory, its statutory window to request a bona fide

25  offer ran from November 1, 2007 (the day on which its lease with the third-party landowner

26  commenced) to December 1, 2007 (30 days thereafter). (Docket No. 97 at 7:8-12.) But Plaintiff

27  did not request the offer during this period. Rather, it made the request on October 16, 2007 --

28

REPLY IN SUPPORT OF CONOCOPHILLIPS COMPANY'S MOT. FOR SUMMARY JUDGMENT

1   two weeks before commencement of the 30 day period during which it posits the request could

2   properly be made.  The argument thus falls of its own weight.

3           Plaintiff also argues that "it would have been futile and impractical for Plaintiff to have

4   requested that ConocoPhillips make such offer within 30 days after" notice of termination

5   because this was before "either Plaintiff or ConocoPhillips knew whether ConocoPhillips would

6   eventually secure a renewal of its lease with the third party landlord." (Docket No. 97 at 12:5-

7   10.)  This argument is disturbingly disingenuous; it was Plaintiff's negotiation of a lease directly

8   with the landowner that prevented ConocoPhillips from obtaining such a renewal -- a renewal

9   that would have obviated the franchise termination about which Plaintiff now complains.

10  Plaintiff, moreover, began its negotiations with the landowner in April 2007 (Docket No. 96, Ex.

11  A), and thus could have prudently (and timely) requested a bona fide offer at any time after

12  receiving notice of termination.  By making a timely request, Plaintiff would not have obligated

13  itself to purchase the equipment and improvements.  Had Houtan Petroleum failed to reach a

14  lease agreement with the landowner, it would have been free not to accept ConocoPhillips' offer.

15  A "bona fide offer" is just that -- an offer.

16           **3.    *Hazara v. Motiva* does not support Plaintiff's statutory construction.**

17          The only authority Plaintiff cites for its statutory construction is *Hazara Enterprises, Inc.*

18  *v. Motiva Enterprises, LLC*, 126 F. Supp. 2d 1365 (S.D. Fla. 2000).  In *Hazara*, however, the

19  Court granted summary judgment in favor of the *franchisor*, finding it was not required to sell its

20  equipment and improvements to the franchisee.  *Id.* at 1372-73.  The Court's comment regarding

21  the timing of the franchisee's request for a bona fide offer was therefore moot and irrelevant, as

22  the Court itself recognized.  *Id.* at 1373.  Dicta do not have precedential value.  *See, e.g., U.S. v.*

23  *Pinjuv* (9th Cir. 2000) 218 F.3d 1125, 1129 ("[w]e are not bound by dicta in decisions from our

24  court or any other circuit").

25          Moreover, as shown, the PMPA on its face requires the franchisee make such a demand

26  "not later than 30 days after *notification*" of termination.  15 U.S.C. §2802(c)(4)(C)(i) (emphasis

27  added).  Thus, even had *Hazara Enterprises* purported to hold that the 30 day period commences

28  upon some other event it would have been incorrect and unpersuasive.

- 7 -

REPLY IN SUPPORT OF CONOCOPHILLIPS COMPANY'S MOT. FOR SUMMARY JUDGMENT

1       The notice requirements of the PMPA exist to provide both franchisors and franchisees a

2   uniform framework in which to effectuate franchise non-renewals and terminations. *See, e.g.,*

3   *Townsend v. Mobil Oil Corp.* 1992 WL 17252 *3 (D. Mass. 1992). The franchisor is required to

4   provide 90 days notice of termination so that the franchisee has adequate time to prepare for

5   termination. *See, e.g., id.* at *6. The franchisee then must request a bona fide offer to purchase

6   the franchisor's equipment and improvements within 30 days, so that the franchisor has adequate

7   time to prepare a bone fide offer and either sell the property to the franchisee or, in the event the

8   franchisee declines the offer, remove the property from the land before the franchisor's lease

9   terminates. As Plaintiff failed to request a bona fide offer within the statutorily required time,

10   ConocoPhillips was under no obligation to provide one. Thus, summary judgment is appropriate.

11       **E.**    **ConocoPhillips has not waived any defense under the PMPA.**

12       Plaintiff's last gasp argument is that ConocoPhillips somehow waived its right to raise

13   Plaintiff's non-compliance with the 30-day deadline. (Docket No. 97 at 10:2-12:13.) "Waiver is

14   the intentional relinquishment of a known right." *Midwest Petroleum Co. v. Amer. Petrofina*

15   *Inc.*, 603 F. Supp. 1099, 1114 (E.D. Mo. 1985) (citation omitted). "Absent the requisite intent

16   there can be no waiver." *Id.* Moreover, for waiver to be implied from a party's conduct "'there

17   must be a clear, unequivocal and decisive act implying the intent [to release a known right] and

18   the implication must be so consistent with an intention to waive that no other reasonable

19   explanation is possible.'" *Id.* Plaintiff points to no such "clear, unequivocal and decisive act"

20   indicating ConocoPhillips' intent to waive its right to assert PMPA defenses. Neither does it cite

21   any authority to support the argument.

22       The essence of Plaintiff's argument appears to be that ConocoPhillips waived any PMPA

23   defense by: 1) sending Plaintiff a reminder notice (in September 2007) to confirm that the

24   termination would proceed as noticed in the Franchise Agreement; and 2) making a voluntary

25   bona fide offer to Plaintiff (in October 2007) even after Plaintiff waived its PMPA right by

26   failing to make a timely request. The argument makes no sense. By September 2007,

27   ConocoPhillips had already provided a PMPA-compliant notice of termination. Having satisfied

28   the statute, ConocoPhillips was free -- but not required -- to provide any additional notices or

1    reminders it chose.  By failing to demand a bona fide offer by August 5, 2007, it was *Plaintiff*

2    that waived its rights.  "One who waives or foregoes a right is precluded afterward from asserting

3    it." *Weeshoff Construction Co. v. Los Angeles County Flood Control Dist.*, 88 Cal.App.3d 579,

4    592 (1979).  Moreover, as shown in our moving brief, a defendant's conduct occurring *after* a

5    plaintiff has waived a legal right cannot resurrect an otherwise non-viable claim.  *Cf. Aceves v.*

6    *Allstate Insurance Co.* 68 F.3d 1160, 1163 (9th Cir. 1995) citing *Prudential-LMI Ins. Co. v. Sup.*

7    *Ct.* 51 Cal.2d 674, 690 fn. 5 (1990); *see also Vashita v. Allstate Ins. Co.* 989 F.Supp. 1029, 1033

8    (C.D. Cal. 1997) ("it would be impossible for Allstate to waive the notice requirements and/or

9    the statute of limitations for the rental properties *after* the limitations period has already passed").

10           A franchisor is always free to make an offer to sell its property to a franchisee.  However,

11    the PMPA clearly conditions the franchisor's *obligation* to do so on the franchisee's timely

12    demand.  Plaintiff cites no authority holding that where a franchisee fails to request a bona fide

13    offer within the 30 days prescribed by the PMPA, but the franchisor nevertheless makes a

14    voluntary offer, such an accommodation constitutes a waiver of any PMPA defenses.  By failing

15    to make a timely request for a bona fide offer, Plaintiff waived any statutory right to such an

16    offer.  ConocoPhillips' subsequent conduct cannot change this dispositive reality.

17    **III.    CONCLUSION**

18           Plaintiff's decision not to request a bona fide offer within the statutory time frame was

19    grounded not in logic or necessity, but rather was a tactical gambit intended to force

20    ConocoPhillips to accept an unjustifiably low price or defend a groundless lawsuit.  Faced with

21    the consequences of its high-risk business decisions, Plaintiff now asks the Court to dramatically

22    rewrite a clear and unambiguous statutory provision.  The request is without basis.  Plaintiff has

23    failed to demonstrate any triable issue, and summary judgment is therefore appropriate.

24           Dated: April 24, 2008

25                                                    GLYNN & FINLEY, LLP

26

27                                                    By
                                                        Attorneys for Defendant
28                                                      ConocoPhillips Company

REPLY IN SUPPORT OF CONOCOPHILLIPS COMPANY'S MOT. FOR SUMMARY JUDGMENT