1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7
8

9   HOUTAN PETROLEUM, INC.,              )   Case No. 07-5627 SC
                                         )
10           Plaintiff,                  )
                                         )   ORDER GRANTING IN
11       v.                              )   PART AND DENYING IN
                                         )   PART DEFENDANT'S
12   CONOCOPHILLIPS COMPANY, a Texas     )   MOTION FOR SUMMARY
     Corporation and DOES 1 through 10,  )   JUDGMENT
13   Inclusive,                          )
                                         )
14           Defendants.                 )
                                         )
15   _____  )

16

17   **I.    <u>INTRODUCTION</u>**

18         This matter comes before the Court on the Motion for Summary

19   Judgment ("Motion") filed by the defendant Conocophillips Company

20   ("Defendant" or "Conoco").  Docket No. 94.  The plaintiff Houtan

21   Petroleum, Inc. ("Plaintiff" or "Houtan") submitted an Opposition

22   and Conoco filed a Reply.[1]  Docket Nos. 97, 100.  For the

23   following reasons, Conoco's Motion is GRANTED in part and DENIED

24   in part.

25   _____

26        [1]  Houtan also submitted a Request for Judicial Notice
     pursuant to Federal Rule of Evidence 201.  Docket No. 98.  As
     Houtan states in the Request, however, all of the documents for
27   which it seeks judicial notice have already been filed with this
     Court in this case and are already part of the record.  Houtan's
28   Request is therefore DENIED.

United States District Court
For the Northern District of California

1

**II.  BACKGROUND**[2]

2

The following facts are not in dispute.  Houtan operated a

3

Union 76 gas station ("the Station") as a Conoco franchisee at the

4

same location for approximately 10 years.  Compl., Docket No. 1,

5

at 1; Haddad Decl. ¶ 3.[3]  Conoco did not own the Station property

6

but instead leased it from a third-party, V.O. Limited Partners

7

("V.O. Limited").[4]  Mathews Decl. ¶ 3.[5]  Conoco owns the

8

structures, equipment and improvements at the Station.  <u>Id.</u>

9

The previous franchise agreement between Houtan and Conoco

10

was set to expire on August 31, 2007.[6]  Pellegrino Decl. ¶ 3.[7]  The

11

Master Lease between Conoco and V.O. Limited was set to expire on

12

October 31.  <u>Id.</u>  On July 6, Houtan and Conoco executed a new

13

franchise agreement ("the Franchise Agreement") that would begin

14

15

16

17

[2]  This Court's Order Denying Plaintiff's Motion for
Preliminary Injunction, issued on November 16, 2007, exhaustively

18

detailed the facts of this case.  Docket No. 18.  The Court
therefore adopts and incorporates that Background section into this
Order, unless otherwise noted.

19

20

[3]  Ed Haddad is the President of Houtan.  His first
declaration was submitted with Houtan's Application for Preliminary

21

Injunction.  Docket No. 5.

22

[4]  This lease will be referred to as the Master Lease.

23

[5]  Richard Mathews is an independent contractor for the Real
Estate Department of Conoco.  His declaration was submitted with

24

Conoco's Response to Order to Show Cause on the Preliminary
Injunction.  Docket No. 13.

25

26

[6]  Unless otherwise noted, all further dates are from 2007.

27

[7]  Dan Pellegrino is an Account Representative for Conoco.
His declaration was submitted with Conoco's Response.  Docket No.
12.

28

2

United States District Court
For the Northern District of California

1    September 1.  Supp. Haddad Decl., Docket No. 32, Ex. A.[8]  The

2    Franchise Agreement was to be for a term of three years, expiring

3    on August 31, 2010.  Resp. to Order to Show Cause, Docket No. 11,

4    at 3.  The Franchise Agreement was executed, however, with the

5    understanding by both Houtan and Conoco that Conoco's Master Lease

6    for the Station property was set to expire on October 31, just two

7    months after the new Franchise Agreement was set to begin.  Id. at

8    2.  Thus, if Conoco was unable to renew the Master Lease with V.O.

9    Limited, the Franchise Agreement would terminate, as Conoco would

10   lose any right to occupy or sublease the Station.  Pellegrino

11   Decl. ¶ 3.  As Pellegrino stated:  "In the event ConcoPhillips was

12   unable to renew its underlying lease [the Master Lease] of the

13   Station property, there was obviously no way it would be able to

14   continue to sublease the Station to Houtan Petroleum.

15   ConocoPhillips had no further right to renew or extend the

16   underlying property lease."  Id.

17       Not only did Conoco explain this situation to Houtan as early

18   as May, but the Agreement itself, which was executed on July 6,

19   contained express language putting Houtan on notice that Conoco's

20   inability to renew the Master Lease with V.O. Limited would

21   necessarily result in termination of the Agreement.  The Agreement

22   states, in part:

23               There is a possibility that the term of
                 the underlying lease [the Master Lease]
24               to the Station might expire and not be

25   ─────────────────────

26       [8]  Although Haddad states in his declaration that the
     Agreement was executed on March 30, the dates contained in the
     actual agreement all reflect that it was executed on July 6.  See
27   Supp. Haddad Decl. Ex. A at 80.

28                                  3

United States District Court
For the Northern District of California

renewed upon the underlying lease's expiration date. DEALER [Houtan] hereby acknowledges CONOCOPHILLIPS' disclosure to DEALER that this Agreement and the Station herein are subject to all terms and conditions of an underlying lease held by CONOCOPHILLIPS in the property and premises, which underlying lease expires on **October 31, 2007** and that such underlying lease may expire and may not be renewed during the Term of this Agreement. Thereby, the DEALER [Houtan] is hereby on notice that this Agreement is hereby terminated on the date the underlying lease expires . . . .

Supp. Haddad Decl. Ex. A at 63 (emphasis in original). Houtan acknowledged this language in the Agreement by placing initials immediately following the above-cited language. See id. In addition, Conoco, on several occasions, verbally advised Houtan of the ramifications of nonrenewal of the Master Lease. See Pellegrino Decl. ¶ 4 (stating "Throughout 2007, I explained all of this to Mr. Hadad [sic] in numerous conversations during routine meetings and visits to the Station. Mr. Hadad [sic] told me that Houtan Petroleum still wanted to continue its franchise relationship with Conoco . . . ."). With this understanding, the parties executed the Franchise Agreement on July 6. Supp. Haddad Decl. Ex. A at 80.

The Master Lease between Conoco and V.O. Limited for the Station property was initially for a 25 year term, beginning March 1, 1966, and expiring February 28, 1991. Mathews Decl. ¶ 4. A subsequent modification extended the expiration date to October 31, 2002, and granted Conoco an option for an additional five year term. Id. Conoco exercised that option and the Master Lease

4

expired October 31, 2007.  <u>Id.</u>  Conoco has submitted evidence indicating that it made several attempts to renew or extend the Master Lease beyond the October 31 date.  <u>Id.</u> ¶ 5.  According to a sworn declaration submitted by Conoco, V.O. Limited never provided a substantive response to Conoco's request to extend the Master Lease and V.O. Limited eventually stopped responding to Conoco's communications.  <u>Id.</u>  On September 17, Conoco advised V.O. Limited that if V.O. did not respond by September 21 to Conoco's request to extend the Master Lease, Conoco would consider such silence a rejection.  <u>Id.</u>  V.O. Limited did not respond to this letter.  <u>Id.</u>

On September 18, Conoco informed Houtan in writing that it would be terminating the Franchise Agreement effective October 31. Supp. Haddad Decl. Ex. B.  The letter stated that the reason Conoco was terminating the Franchise Agreement was because of Conoco's inability to renew the Master Lease with V.O. Limited. <u>Id.</u>  On October 16, Houtan entered into an agreement with V.O. Limited to lease the Station property beginning November 1, the day after Conoco's Master Lease ended.  Supp. Haddad Decl. ¶ 8. On October 18, Houtan sent Conoco a letter indicating that Houtan had entered into a lease agreement with V.O. Limited for the Station property.  <u>Id.</u> ¶ 9; Ex. D.  In the same letter Houtan demanded that Conoco sell its improvements and equipment on the Station property to Houtan.  <u>Id.</u> Ex. D.

On October 22, Conoco sent a letter to Houtan stating that Conoco would sell the improvements and equipment to Houtan for $340,000 if the offer was accepted by October 29, and if Houtan

United States District Court
For the Northern District of California

1  paid the full amount by certified check by October 31.  Supp.

2  Haddad Decl. Ex. E.  Houtan refused to make this payment,

3  believing it to be in excess of fair market value.  Id. ¶ 21.

4      On October 31, Conoco sent bulldozers to the premises to

5  begin removal of its equipment and improvements.  Id. ¶ 12.

6  Houtan refused to permit Conoco to enter the premises and Conoco

7  subsequently cut off fuel to the Station.  Id. ¶ 15.  Houtan was

8  able to obtain a fuel supply from another supplier.  Pellegrino

9  Decl. ¶ 7.

10     On November 5, Houtan filed a Complaint in this Court seeking

11 damages, injunctive relief, equitable relief and declaratory

12 relief pursuant to the Petroleum Marketing Practices Act ("PMPA"),

13 15 U.S.C. § 2801, et seq.  Docket No. 1.  On the same day, Houtan

14 also filed an Ex Parte Motion for a Temporary Restraining Order

15 and Application for Preliminary Injunction.  Docket No. 3.  On

16 November 6 the Court issued a Temporary Restraining Order and

17 enjoined Conoco from taking further action to interfere with

18 Houtan's immediate assumption of control of the Station.  See TRO,

19 Docket No. 8.  The TRO prevented Conoco from removing any

20 equipment or improvements and compelled Conoco to resume its

21 franchise relationship with Houtan by supplying fuel and

22 processing credit card sales from the Station.  Id.  On November

23 16, 2007, the Court issued an Order Denying Plaintiff's Motion for

24 Preliminary Injunction ("Preliminary Injunction Order").  Docket

25 No. 18.  From all appearances, Houtan continues to maintain

26 control of Conoco's equipment and improvements at the Station

27 property.

28

1    The Court now turns to the merits of Conoco's Motion for

2    Summary Judgment.  The Court notes that much of the analysis from

3    the Preliminary Injunction Motion is directly applicable to the

4    present Motion.[9]

5

6    **III. <u>LEGAL STANDARD</u>**

7    Entry of summary judgment is proper "if the pleadings, the

8    discovery and disclosure materials on file, and any affidavits

9    show that there is no genuine issue as to any material fact and

10   that the movant is entitled to judgment as a matter of law."  Fed.

11   R. Civ. P. 56(c).  "Summary judgment should be granted where the

12   evidence is such that it would require a directed verdict for the

13   moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250

14   (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment

15   . . . against a party who fails to make a showing sufficient to

16   establish the existence of an element essential to that party's

17   case, and on which that party will bear the burden of proof at

18   trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  In

19   addition, entry of summary judgment in a party's favor is

20   appropriate when there are no material issues of fact as to the

21   essential elements of the party's claim.  <u>Anderson</u>, 477 U.S. at

22   247-49.

23   ///

24   ///

25   ///

26   ――――――――――――――

27   [9]  Conoco has filed various objections to evidence submitted
by Houtan.  <u>See</u> Docket No. 102.  These objections are overruled.

28                                    7

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   IV.   <u>DISCUSSION</u>

2        "The PMPA is intended to protect gas station franchise owners

3   from arbitrary termination or nonrenewal of their franchises with

4   large oil corporations and gasoline distributors . . . ."

5   <u>DuFresne's Auto Serv., Inc. v. Shell Oil Co.</u>, 992 F.2d 920, 925

6   (9th Cir. 1993).  The PMPA states that if "a franchisor fails to

7   comply with the requirements of section 2802, 2803, or 2807 of

8   this title, the franchisee may maintain a civil action against

9   such franchisor."  15 U.S.C. § 2805.

10       Houtan, in its Complaint, alleges that Conoco violated PMPA

11  in three respects: (1) terminating the Franchise Agreement without

12  good faith or in the normal course of business, as required by §

13  2802; (2) failing to give 90 days notice before terminating the

14  franchise, as required by § 2804(a)(2); and (3) failing to make a

15  bona fide offer to sell the equipment and improvements of the

16  Station to Houtan, as required by § 2802(c)(4)(C)(i).  <u>See</u> Compl.

17  Conoco moves for summary judgment on all three claims.  The Court

18  addresses each in turn.

19       A.   <u>Termination of Agreement</u>

20       Houtan alleges that Conoco has "wrongfully terminated the

21  Plaintiff's Franchise Agreement and that said termination was not

22  made in good faith and/or in the normal course of business."

23  Compl. ¶ 27.  "Section 2802(b)(2) of the PMPA provides several

24  permissible grounds for termination or nonrenewal of a franchise."

25  <u>Hifai v. Shell Oil Co.</u>, 704 F.2d 1425, 1428 (9th Cir. 1983).

26  Section 2802 states that "the following are grounds for

27  termination of a franchise or nonrenewal of a franchise: . . .(C)

28                                      8

United States District Court
For the Northern District of California

1  [t]he occurrence of an event which is relevant to the franchise

2  relationship and as a result of which termination of the franchise

3  or nonrenewal of the franchise relationship is reasonable . . . ."

4  15 U.S.C. § 2802(b)(2)(C). "Section 2802(c)(4) provides that the

5  term 'event' as used in section 2802(b)(2)(C) includes 'loss of

6  the franchisor's right to grant possession of the leased marketing

7  premises through expiration of an underlying lease.'" Hifai, 704

8  F.2d at 1428 (citing 15 U.S.C. § 2802(c)(4)).

9       In light of the evidence submitted by the parties, the Court

10  concludes that there are no issues of triable fact regarding

11  whether Conoco's termination of the Franchise Agreement was in

12  good faith.  Indeed, the evidence demonstrates that the primary

13  reason Conoco terminated the Franchise Agreement was Conoco's

14  inability to renew the Master Lease with V.O. Limited for the

15  Station property.  The Franchise Agreement, while providing Houtan

16  with a limited license to use Union 76 trademarks, was primarily a

17  sublease of the Station property by Conoco to Houtan.  Because the

18  Master Lease expired, Conoco could not continue to sublease the

19  property to Houtan and there was no way that Conoco could still

20  perform under the Franchise Agreement in the absence of the Master

21  Lease.  Thus, there can be no dispute that the termination of the

22  Master Lease was a valid reason for the termination of the

23  Franchise Agreement. See 15 U.S.C. § 2802(c)(4) (stating

24  "termination of the franchise . . . is reasonable . . . [due to]

25  loss of the franchisor's right to grant possession of the leased

26  marketing premises through expiration of an underlying lease . .

27  ."). This does not end the inquiry, however.

28

9

United States District Court
For the Northern District of California

1    If the franchisor seeks to terminate the franchise based on

2    the loss of the underlying lease, the franchisor must still adhere

3    to certain statutory requirements.  "A franchisor can rely on

4    section 2802(c)(4) to justify nonrenewal only if:

5              [T]he franchisee was notified in writing,
             prior to the commencement of the term of
6              the then existing franchise-
                    (A)  of   the   duration   of   the
7                    underlying lease, and
                    (B) of the fact that such underlying
8                    lease  might  expire  and  not  be
                    renewed  during  the  term  of  such
9                    franchise  (in  the  case  of
                    termination) or at the end of the
10                   term (in case of nonrenewal)."

11   Hutchens v. Eli Roberts Oil Co., 838 F.2d 1138, 1142-43 (11th Cir.

12   1988) (citing 15 U.S.C. § 2802(c)(4)).

13   In the present case, Conoco has satisfied both of these

14   requirements.  As noted above, the Franchise Agreement signed by

15   both parties on July 6 contains the following language:

16             There is a possibility that the term of
             the underlying lease [the Master Lease]
17             to the Station might expire and not be
             renewed  upon  the  underlying  lease's
18             expiration date.  DEALER [Houtan] hereby
             acknowledges CONOCOPHILLIPS' disclosure
19             to DEALER that this Agreement and the
             Station herein are subject to all terms
20             and conditions of an underlying lease
             held by CONOCOPHILLIPS in the property
21             and premises,  which underlying lease
             expires on **October 31, 2007** and that such
22             underlying lease may expire and may not
             be  renewed  during  the  Term  of  this
23             Agreement.  Thereby, the DEALER [Houtan]
             is hereby on notice that this Agreement
24             is  hereby  terminated  on  the  date  the
             underlying lease expires  . . . .

25

26   Supp. Haddad Decl. Ex. A at 63 (emphasis in original).

27   In addition, Conoco has submitted evidence indicating that it

28                                    10

1    repeatedly attempted to renew the Master Lease with V.O. Limited.

2    <u>See</u> Mathews Decl. ¶ 5.  Furthermore, as Conoco was attempting to

3    renew the Master Lease, Houtan was in contact with V.O. Limited

4    and eventually negotiated a direct lease for the Station property.

5    <u>See</u>, <u>e.g.</u>, Eldredge Decl., Docket No. 96, Ex. A (letter from

6    Houtan's president seeking a lease for the Station property, dated

7    April 19, 2007).[10]

8         For the foregoing reasons, the Court finds no triable issues

9    of material fact regarding Houtan's claim that termination of the

10   Agreement was not made in good faith.  Conoco's Motion for Summary

11   Judgment on this claim is therefore GRANTED.

12       **B.    90-Day Notice of Termination Under § 2804(a)**

13        Conoco also moves for summary judgment on Houtan's claim that

14   the notice provided by Conoco was defective under § 2804(a).

15   Section 2804(a) states, in part:

16            Prior to termination of any franchise or
             nonrenewal of any franchise relationship,
17            the franchisor shall furnish notification
             of such termination or nonrenewal to the
18            franchisee . . . not less than 90 days
             prior to the date on which such
19            termination or nonrenewal takes effect.

20   15 U.S.C. § 2804(a).  Houtan argues that because Conoco informed

21   Houtan in writing on September 18 that it would be terminating the

22   franchise Agreement on October 31, Conoco failed to provide the

23   requisite 90-day notice of termination.

24        This argument ignores the fact that Houtan was aware, as

25   early as July 6, that the Franchise Agreement would be terminated

26   _____

27        [10]  Jonathan Eldredge submitted a declaration in support of
     Conoco's Motion.

28                                    11

in the event that Conoco was unable to secure a renewal of the

Master Lease. More importantly, however, Houtan's argument that

the notice did not comply with the 90-day notice requirement of §

2804(a) is essentially irrelevant in light of § 2804(b). Section

2804(b) provides:

> In circumstances in which it would not be
> reasonable for the franchisor to furnish
> notification, not less than 90 days prior
> to the date on which termination . . .
> takes effect, as required by subsection
> (a)(2) of this section, such franchisor
> shall furnish notification to the
> franchisee . . . on the earliest date . .
> . such notification is reasonably
> practicable.

15 U.S.C. § 2804(b)(1).

In the present case, Conoco was unable to renew the Master

Lease. On September 18, Conoco sent notice to Houtan indicating

that the Franchise Agreement would not be renewed. This qualifies

as "the earliest date on which furnishing of such notification is

reasonably practicable." Id. Thus, the notice was in compliance

with § 2804(b) and was therefore permissible.

Such a conclusion is supported by decisions of other courts.

See, e.g., Harara v. ConocoPhillips Co., 377 F. Supp. 2d 779, 792

(N.D. Cal. April 29, 2005) (finding that "defendant was justified

in terminating the franchise with ten days notice"); Murphy Oil

USA, Inc. v. Brooks Hauser, 820 F. Supp. 447, 443 (D. Minn. 1993)

(stating "14 days notice of termination is not an unreasonable

amount of time" given that plaintiff had failed to pay for

gasoline and rent); Smoot v. Mobil Oil Corp., 722 F. Supp. 849,

855 (D. Mass. 1989) (holding that four weeks was reasonable notice

United States District Court
For the Northern District of California

1    for termination).

2        For these reasons, the Court finds that there are no triable

3    issues of material fact relating to Houtan's claim that Conoco

4    failed to give the requisite notice for termination of the

5    franchise agreement.  Summary judgment is therefore GRANTED in

6    favor of Conoco on this claim.

7        **C.    Bona Fide Offer Under § 2802(c)(4)(C)(i)**

8        The heart of Houtan's Complaint is that Conoco did not make a

9    bona fide offer to sell Conoco's equipment and improvements on the

10   Station property to Houtan.  "When a franchisor decides for

11   legitimate business reasons not to renew a franchise relationship,

12   the franchisor must give the franchisee a bona fide offer to

13   purchase the station."  Ellis v. Mobil Oil, 969 F.2d 784, 788 (9th

14   Cir. 1992).  Section 2802 of the PMPA states:

15           In a situation in which the franchisee
             acquires possession of the leased
16           marketing premises effective immediately
             after the loss of the right of the
17           franchisor to grant possession . . . the
             franchisor (if requested in writing by
18           the franchisee not later than 30 days
             after notification was given pursuant to
19           section 2804 of this title) . . . [shall
             make] a bona fide offer to sell,
20           transfer, or assign to the franchisee the
             interest of the franchisor in any
21           improvements or equipment located on the
             premises . . . .
22

23   15 U.S.C. § 2802(c)(4)(C)(i) (emphasis added).

24       In the present case, it is undisputed that Conoco made an

25   offer to sell the equipment and improvements of the Station to

26   Houtan.  Houtan argues, however, that the offer was not bona fide

27   because the price that Conoco asked was too high and because

28                                13

Houtan was given only 7 days to accept the offer and only 9 days to make full payment. Conoco, in its Motion, counters by arguing that it was not required to make a bona fide offer in the first place. The Court addresses Conoco's argument first.

### 1. Whether Conoco Was Obligated to Make Bona Fide Offer

Conoco asserts that it was not required to make a bona fide offer to sell Houtan the equipment and improvements on the Station property because Houtan did not request the offer within 30 days of receiving notice that the Franchise Agreement would not be renewed. Conoco argues that the operative date for notice of termination was July 6, not September 18, and that, pursuant to § 2802(c)(4)(C)(i), Houtan did not request an offer from Conoco for the equipment and improvements within 30 days of July 6.

Conoco's argument is undercut by the language of the July 6 Agreement, which merely stated that there was a "possibility that the term of the underlying lease [the Master Lease] to the Station might expire and not be renewed upon the underlying lease's expiration date." Supp. Haddad Decl. Ex. A at 63 (emphasis added). This language did not put Houtan on notice that the Franchise Agreement would necessarily terminate. Rather, it outlined a condition precedent, the occurrence of which would require termination of the Franchise Agreement. At the time the July 6 Agreement was executed, and for the following 30 days, that condition (the termination of the underlying lease) did not occur. It was entirely possible that, up until September 18, a new underlying lease might have been negotiated between Conoco and

14

United States District Court
For the Northern District of California

V.O. Limited, in which case the Franchise Agreement would not have terminated.  Until September 18, therefore, Conoco had not provided Houtan with notice that the Franchise Agreement would be, rather than eventually might be, terminated.

Moreover, the language Conoco used in both its Notice of Termination and its Offer to Sell Improvements indicates that Conoco was aware of its obligations under the PMPA, including that of making a bona fide offer.  The September 18 Notice of Termination sent to Houtan stated:

> Dear Dealer [Houtan]: Conoco[] . . ., pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA") provides you with this written notice that your franchise relationship with Conoco[] and the above referenced Agreement shall terminate at 12:00 noon on October 31, 2007.
> The reason for the termination is that the Station you operate is leased to Conoco[] by a third party, and said lease shall expire on October 31, 2007.  The existence of an underlying lease was fully disclosed to you.

Supp. Haddad Decl. Ex. B.

Conoco's Offer to Sell Improvements, sent to Houtan on October 22 in response to Houtan's written letter seeking to buy the improvements, states:

> Dear Dealer: By hand delivered letter on September 18, 2007, you were notified of the Notice of Termination ("Notice") of the Union 76 Dealer Station Lease and Motor Fuel Supply Agreement . . . .
> The reason for the termination is that, despite [Conoco's] efforts to get additional tenancy at the Station you operate, the underlying ground lease between [Conoco] and the third party

15

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8

> landlord shall expire on October 31,
> 2007. . . .
>         You have informed [Conoco] on
> October 18, 2007[,] that you have
> obtained a lease with the third party
> landlord for the station and have
> requested from [Conoco] a bona fide offer
> to purchase the improvements and
> equipment at the Station.
>         In accordance with the provisions of
> the Petroleum Marketing Practices Act, 15
> U.S.C. Section 2801 et seq., [Conoco]
> offers to sell you our interest in the
> improvements and equipment located on the
> marketing premises.

9  Id. Ex. E.  It is clear from these letters that Conoco itself

10  believed that September 18 was the operative date for the notice

11  of termination and that Conoco believed that it was required to

12  make a bona fide offer on the equipment and improvements.

13  Although Conoco's belief about its obligations under the PMPA at

14  the time the letters were sent is not dispositive to the legal

15  issues now before the Court, it nonetheless provides further

16  evidence that September 18 was in fact the date understood by both

17  parties on which notice of termination was given and that both

18  parties were operating under the assumption that Conoco was

19  required by the PMPA to make a bona fide offer to sell the

20  equipment and improvements to Houtan.

21      It is therefore clear that on September 18, Conoco provided

22  notice of termination for purposes of Houtan's ability to solicit

23  a bona fide offer to sell.  It is also clear that on October 18,

24  Houtan made a written request that Conoco make a bona fide offer

25  to sell Houtan the equipment and improvements on the Station

26  property.  As this request was made within the 30-day statutory

27  period of § 2802(c)(4)(C)(i), Conoco was required to make a bona

28

                                    16

United States District Court
For the Northern District of California

1   fide offer.

2       For the reasons stated above, the Court finds that Conoco was

3   required to make a bona fide offer to sell the equipment and

4   improvements to Houtan.  Conoco's Motion for Summary Judgment on

5   this issue is DENIED.

6               **2.   Whether Offer Was Bona Fide**

7       "It is settled law that a bona fide offer under PMPA is

8   measured by an objective market standard."  Ellis, 969 F.2d at

9   787.  "To be objectively reasonable, an offer must approach fair

10  market value."  Id. (internal quotation marks and alterations

11  omitted).  Nonetheless, "Congress' decision not actually to use

12  the term 'fair market value' but instead the term bona fide . . .

13  suggests some degree of deference."  Slatky v. Amoco Oil Co., 830

14  F.2d 476, 485 (9th Cir. 1987).  Thus, in deciding "what manner

15  courts should scrutinize the distributor's offer to determine

16  whether it complies with the requirement . . . [Congress's] choice

17  indicates . . . a recognition that the word 'value' almost always

18  involves a conjecture, a guess, a prediction, a prophesy."  Id.

19  (internal quotation marks and citations omitted).  Accordingly,

20  "[t]he facts of each case will set the terms of what constitutes a

21  bona fide offer."  Ellis, 969 F.2d at 788.

22      In the present case, Conoco has offered to sell its equipment

23  and improvements to Houtan for $340,000.  Supp. Haddad Decl. Ex.

24  E.  This price was based on an independent, third-party appraisal

25  prepared by a licensed appraiser.  Mathews Decl. ¶ 7; Ex. E.

26  Houtan claims that this amount vastly exceeds fair market value.

27  Houtan's president states that the equipment and improvements are

28
                                  17

United States District Court
For the Northern District of California

1    worth no more than $120,000.  Supp. Haddad Decl. ¶ 22.  Houtan

2    also submitted a sworn affidavit from a professional real estate

3    appraiser who appraised the value of the equipment and

4    improvements to be $145,000.  Plaine Decl. ¶ 5.

5         The Court cannot conclude from the evidence before it whether

6    the price contained in the offer by Conoco was bona fide.

7              **3.   Time of Offer**

8         Houtan also argues that the offer was not bona fide because

9    the time period given by Conoco to accept the offer was

10   unreasonably short.  Conoco sent a letter on September 18 to

11   Houtan stating that the Franchise Agreement would terminate on

12   October 31 because of Conoco's inability to renew the Master

13   Lease.  Supp. Haddad Decl. ¶ 6; Ex. B.  On October 16, Houtan

14   entered into an agreement with V.O. Limited to lease the Station

15   property beginning November 1.  Id. ¶ 8; Ex. C.  On October 18,

16   Houtan sent Conoco a letter indicating that Houtan had entered

17   into this lease agreement and demanding that Conoco sell its

18   improvements and equipment on the Station property to Houtan.  Id.

19   ¶ 9; Ex. D.

20        According to these facts, Houtan had notice on September 18

21   that the Franchise Agreement would not be renewed but waited until

22   October 18 to demand an offer for the equipment and improvements.[11]

23   Although unclear, it appears that Houtan waited these 30 days

24   _____

25        [11]  Section 2802 states that the franchisor must make a bona
     fide offer only "if requested in writing by the franchisee . . . ."
26   15 U.S.C. § 2804(c)(4)(C).  Section 2802 also states that this
     request by franchisee must be made "not later than 30 days after
27   notification was given . . . ."  Id.  In the present case, the
     request was made exactly 30 days after the September 18 letter.

28                                   18

United States District Court
For the Northern District of California

1  because Houtan was negotiating with V.O. Limited to assume the

2  Master Lease of the Station property.  Thus, the fact that Houtan

3  had only 7 days to accept Conoco's offer is, in part, Houtan's

4  doing.[12]

5       In addition, Conoco had compelling reasons why it needed to

6  complete the sale of the equipment and improvements before

7  November 1.  The Master Lease Conoco has with V.O. Limited was set

8  to expire October 31.  In the event that Houtan did not buy the

9  equipment and improvements, Conoco wanted the opportunity to

10 remove its improvements and equipment from the Station before the

11 Master Lease expired.  For these reasons the Court finds that,

12 under the circumstances of the case, the timing of the offer had

13 no bearing on whether or not the offer was bona fide.

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25

26      [12]  On October 22, Conoco sent a letter to Houtan stating that
   Conoco would sell the improvements and equipment if the offer was
27 accepted by October 29, and paid in full by October 31.  Haddad
   Decl. Ex. E.

28
                                  19

1    **V. CONCLUSION**

2         For the foregoing reasons, Defendant's Motion for Summary

3    Judgment is GRANTED in part and DENIED in part.  The only issue

4    remaining in this case is whether the price at which Conoco

5    offered to sell the equipment and improvements to Houtan was bona

6    fide.  Depending on whether the offer was bona fide, Houtan may be

7    liable to Conoco for damages resulting from Houtan's continued use

8    of Conoco's equipment and improvements.  These issues have not

9    been briefed and are not before the Court at this time.

10

11

12        IT IS SO ORDERED.

13

14        Dated: July 21, 2008

15                                          UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28