1  GLYNN & FINLEY, LLP
   CLEMENT L. GLYNN, Bar No. 57117
2  ADAM FRIEDENBERG, Bar No. 205778
   One Walnut Creek Center
3  100 Pringle Avenue, Suite 500
   Walnut Creek, CA 94596
4  Telephone: (925) 210-2800
   Facsimile: (925) 945-1975
5  Email: cglynn@glynnfinley.com
          afriedenberg@glynnfinley.com
6
   Attorneys for Defendant and Counter-Plaintiff
7  ConocoPhillips Company

8                                    `

9                UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11 HOUTAN PETROLEUM, INC.            )  **Case No. 3:07-cv-5627 SC**
                                     )
12              Plaintiff,           )  **DEFENDANT AND COUNTER-**
                                     )  **PLAINTIFF CONOCOPHILLIPS**
13      vs.                          )  **COMPANY'S TRIAL BRIEF**
                                     )
14 CONOCOPHILLIPS COMPANY, a Texas   )  **Trial Date:   August 18, 2008**
   corporation and DOES 1 through 10,)  **Time:         10:00 a.m.**
15 Inclusive                         )  **Courtroom:    1**
                                     )  **Before:       Hon. Samuel Conti**
16              Defendants.          )
                                     )
17 ─────────────────────────────────  )

18          Pursuant to the Court's July 25, 2008 Order, Defendant and Counter-Plaintiff

19 ConocoPhillips Company ("ConocoPhillips") submits this trial brief.

20 **I.     INTRODUCTION**

21          Plaintiff's Complaint alleges a claim for relief under the Petroleum Marketing

22 Practices Act, 15 U.S.C. § 2801, *et seq.* ("PMPA"), and a redundant declaratory relief claim.  On

23 both counts, Plaintiff Houtan Petroleum ("Houtan") contends that ConocoPhillips violated the

24 PMPA by:  1) terminating the parties' franchise relationship for an improper reason; 2) providing

25 untimely notice of termination; 3) imposing an impermissibly short time for acceptance in its

26 offer to sell its equipment and improvements at the station to Houtan; and 4) making an offer that

27 was not "bona fide" under the PMPA.  The Court has granted summary judgment in

28 ConocoPhillips' favor on the first three of these claims; only the fourth remains for trial.

─────────────────────────────────────────────

1    The evidence will show that ConocoPhillips made a "bona fide" offer to sell its

2    equipment and improvements under the PMPA (i.e., an offer for a price that "approached fair

3    market value"). The offer was based on a competent appraisal prepared in advance of the offer

4    by an independent, third-party appraisal firm. ConocoPhillips will establish by this appraisal, as

5    well as the expert opinion testimony of a second appraiser, that the offer amount indeed

6    approached fair market value as required under the PMPA.

7    Houtan contends that the offer was not bona fide. But this contention is based

8    entirely on the opinion of Houtan's litigation appraiser, who opines that market and

9    neighborhood conditions require that the improvements be demolished and the equipment

10    destroyed within 3-5 years so that Plaintiff may rebuild a new station. Houtan's appraiser admits,

11    however, that the current property will be commercially usable for many more years than that.

12    Thus, Plaintiff's true request is not for an offer that is fair but for one it cannot refuse. The

13    PMPA requires no such thing of ConocoPhillips.

14    ConocoPhillips' counterclaims seek only the return of its property and the lost

15    rental value resulting from Houtan's wrongful refusal to return this property, and other

16    appropriate remedies. In denying Houtan's request for injunctive relief, the Court explicitly

17    declined to order ConocoPhillips to leave this property at the station absent payment of fair

18    rental. Yet, displaying a cavalier contempt for the Court and its orders, Houtan has refused to

19    purchase, pay rent or return the property. Instead, it has resorted to self-help in defiance of the

20    law.

21    **II.    FACTUAL BACKGROUND**

22    ConocoPhillips has elsewhere briefed the full factual history of this matter and the

23    parties' relationship (see, e.g., Docket Nos. 11, 28, 95.) We address here only those facts directly

24    relevant to the issues remaining for trial.

25    **A.    The Bona Fide Offer**

26    On October 18, Houtan demanded that ConocoPhillips offer to sell Houtan all of

27    the structures, improvements and equipment at the Station. (Docket No. 5, Ex. D.) Five days

28    later, on October 23, 2007, ConocoPhillips hand delivered such an offer to Houtan (the "Bona

1  Fide Offer"). The Bona Fide Offer was based on an independent appraisal prepared by a licensed

2  third-party appraiser. (Docket No. 3, ¶ 7, Ex. E.) This appraisal was prepared not in anticipation

3  of litigation -- as was the appraisal on which Plaintiff will rely solely -- but as part of

4  ConocoPhillips' evaluation of service station assets in the ordinary course of business.

5       **B.**     **Houtan Prevents ConocoPhillips From Complying With Its Obligations Under the Ground Lease**

6

7       Houtan rejected the Bona Fide Offer on October 29, 2007. (Docket No. 3, ¶ 8.)

8  Under the Ground Lease, ConocoPhillips had less than two weeks left to remove its structures,

9  improvements and equipment from the Station premises. (*Id.*) It was therefore critical that

10  ConocoPhillips promptly commence removal operations to ensure timely removal and prevent a

11  forfeiture of its property. Houtan, however, refused to allow ConocoPhillips to access the Station

12  Property for this purpose.

13       **C.**     **The Court Denies Plaintiff's Request For Preliminary Injunctive Relief**

14       Shortly thereafter, Houtan commenced this action, seeking a preliminary

15  injunction to compel ConocoPhillips to continue to supply fuel to the Station and to refrain from

16  removing its equipment and improvements. The Court denied injunctive relief, finding "that

17  there are not sufficiently serious questions going to the merits of Houtan's claim that Conoco

18  failed to give the requisite notice of termination" (Docket No. 18 at 12:15-18) and that "the

19  parties' disagreement as to the value of the equipment and improvements is not grounds for a

20  preliminary injunction" (*Id.* at 14:11-12).

21       **D.**     **ConocoPhillips Makes, And Plaintiff Rejects, Several Offers To Leave The Equipment And Improvements At The Station *Pendente Lite***

22

23       Prior to the litigation, ConocoPhillips offered to leave its equipment and

24  improvements at the Station pending the parties' resolution or litigation of their value. Even

25  after Plaintiff moved for injunctive relief, ConocoPhillips remained willing to make such an

26  accommodation, as it made clear in its opposition and as the Court recognized in its order

27  denying injunctive relief. (Docket No. 18 at 16:7-14, 18:12-15.) As the Court acknowledged,

28  however, ConocoPhillips' willingness to enter such an interim agreement was contingent on the

1  parties' agreement to: (1) an appropriate interim rental payment by Houtan; (2) an allocation of

2  responsibility for environmental compliance and other maintenance and repair obligations; and

3  (3) an appropriate manner and time for removal in the event Houtan ultimately declines to

4  purchase this property. (Docket No. 18 at 16:7-14.) Houtan has refused to enter into such an

5  interim agreement, but instead retains and continues to use ConocoPhillips' equipment without

6  paying rent. Houtan has issued itself the very injunctive relief this Court denied.[1]

7  **III.    ISSUES FOR TRIAL: Houtan's Claim For Relief**

8          The Court has already ruled that "[t]he only issue remaining in this case is

9  whether the price at which Conoco offered to sell the equipment and improvements to Houtan

10  was bona fide" (and, if so, whether Houtan is liable to ConocoPhillips for damages). (Docket

11  No. 103 at 20:3-8.) The Court has granted summary judgment in ConocoPhillips' favor on all

12  other issues. (*Id.* at 11:8-11, 13:2-6, 19:11-13.)

13      **A.    The Evidence Will Show That ConocoPhillips Made A "Bona Fide Offer" To**
        **Sell Its Equipment and Improvements To Houtan.**
14

15          The standard for determining whether an offer is "bona fide" under the PMPA

16  was addressed in *Anand v. BP West Coast Products LLC* 484 F. Supp. 2d 1086 (C.D. Cal. 2007).

17      Whether a bona fide offer has been made is measured by an objective market
        standard. To be objectively reasonable, an offer must **approach** fair market
18      value. To that end, the offering price should reflect what a willing purchaser
        would pay for the fee title of the land, the improvements and the equipment of a
19      terminated franchise. The offering price **need not be the actual fair market**
        **value of the property**, however, because if courts had to determine whether the
20      distributor's offer *actually* was at fair market value, distributors could rarely rest
        comfortably that their offer would eventually be determined by the court to be fair
21      market value. Accordingly, the fair market value of any one property is a flexible
        concept, and **a range of prices** may have a reasonable claim to being [i.e.,
22      approaching] fair market value. . . .

23      **a range of prices may reasonably be found to approach fair market value**. . . .
        the mere fact that the parties have submitted competing appraisals and/or offers
24      does not necessarily preclude the entry of summary judgment in one party's favor.
        This is because an estimation of value almost always involves a conjecture, a
25      guess, a prediction, a prophecy. Furthermore, in determining the fair market value
        of a property, no one valuation method is required. Instead, the facts of each
26      individual case will determine what constitutes a bona fide offer.

27  ─────────────────────

28  [1] Houtan has indicated a willingness to rent the property for some indefinite period, beyond the
    conclusion of the litigation. Such a resolution is not required or authorized under the PMPA (or
    otherwise).

1    *Id.* at 1096-97 (internal quotation marks, brackets and citations omitted; original and added

2    emphasis). "Congress' use of the term 'bona fide' rather than 'fair market value' in the statute

3    indicates a recognition that the word 'value' almost always involves a conjecture, a guess, a

4    prediction a prophesy. [T]here is no universally infallible index of fair market value." *Harara v.*

5    *ConocoPhillips Co.,* 377 F. Supp. 2d 779, 788 (N.D. Cal. 2005) (internal quotation marks and

6    citations omitted).

7         The "range of prices" that "may reasonably be found to approach fair market

8    value" may reflect a differential of 20 percent or more. *Anand,* 484 F. Supp. 2d at 1096-98

9    ("differences 'as much as 20 percent or more' could separate two competent appraisals"); *see*

10   *also, Rhodes v. Amoco Oil Co.,* 143 F.3d 1369, 1374 n. 5 (10th Cir. 1998) ("properties are often

11   sold at 15% to 20% over the appraised price; . . . two appraisers attempting to estimate fair

12   market value should reach results within 10% to 15% of each other; and . . . the expected

13   variation between appraisals could be greater when using the replacement cost approach")

14   (internal citation omitted). Thus, even where a franchisor's PMPA offer to sell a station property

15   to its franchisee is significantly higher than an alternative competent valuation, the offer may

16   nevertheless *approach* fair market value and be adjudicated "bona fide" as a matter of law.

17         Here, ConocoPhillips made its offer ($340,000) based on an appraisal prepared by

18   an independent, third-party appraiser. Houtan has retained a litigation appraiser, who reaches a

19   different conclusion regarding value ($145,000). That conclusion presumes, however, that the

20   station must be totally demolished and re-built within 3-5 years. The record supports no such

21   conclusion. Rather, as ConocoPhillips will establish by expert and percipient testimony, the

22   equipment and improvements remain commercially valuable and will for many years.

23   **B.    Houtan Cannot Establish Any Recoverable Damages**

24         As noted in ConocoPhillips' Motion in Limine No. 1, Plaintiff has acknowledged

25   that the Court's grant of partial summary judgment in ConocoPhillips' favor precludes any claim

26   for damages by Plaintiff. Even had Plaintiff not so conceded, neither actual nor punitive

27   damages would be recoverable as a matter of law.

28

1        Indeed, the only damage Plaintiff has ever claimed in this case was lost revenue claimed

2  to have been caused by the allegedly unlawful termination of his franchise.  As the Court has

3  already determined, as a matter of law, that the franchise termination was not unlawful, Plaintiff

4  cannot recover damages allegedly caused by the termination.  Moreover, as a matter of law

5  damages are unavailable under the PMPA where, as here, the franchisee remains in possession of

6  the station property pending litigation.  *See, e.g., Chevron U.S.A., Inc. v. El-Khoury*, 202 WL

7  31256160, *2 (C.D. Cal. 2002); *Blankenship v. Knox Oil Co.*, 548 F. Supp. 789 (E.D. Tenn.

8  1982) ("Plaintiff has had possession of the premises and has continued to operate the service

9  station.  He has, therefore, suffered no damages"); *see also Clark v. Mobil Oil Corp.*, 496 F.

10  Supp. 132, 136 (E.D.Mo. 1980); *Noe v. Mobil Oil Corp.*, 503 F. Supp. 213, 216 (E.D.Mo. 1980).

11        Plaintiff's apparently also acknowledge the absence of any basis for punitive

12  damages.  The PMPA permits such an award only where the franchisor acted in "willful

13  disregard" of the franchisee's rights (i.e., with consciousness, or guilty knowledge, that it was

14  violating the PMPA).  *See* 15 U.S.C. § 2805(d)(1)(B); *Eden v. Amoco Oil Co.*, 741 F. Supp.

15  1192, 1193-95 (D. Md. 1990).  ConocoPhillips' reliance on a legitimate appraisal in making the

16  offer demonstrates that it acted in good faith in ascertaining the offer price.  *Cf. Jones v. Crew*

17  *Distributing Co., Inc.*, 984 F.2d 405, 409 (11th Cir. 1993) (evidence that franchisor sought legal

18  advice prior to termination proof of lack of "willful disregard" of the law).

19  **IV.    ISSUES FOR TRIAL: ConocoPhillips' Counterclaims**

20        ConocoPhillips has asserted three counterclaims: (1) breach of contract; (2)

21  conversion; and (3) unjust enrichment.  Each of these counterclaims are based on the fact that

22  after ConocoPhillips terminated the franchise,  Houtan wrongfully retained possession of

23  ConocoPhillips' pumps, storage tanks, buildings and other property at the service station without

24  paying any rent for their use.  That unauthorized use continues to this moment.

25      **A.    Liability**

26          **1.    Breach of contract**

27        The elements for a breach of contract are:  (1) the existence of a contract, (2)

28  plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages.

1   *Acoustics, Inc. v. Trepte Construction Co.,* 14 Cal.App.3d 887, 913 (1971).  Here, there is no

2   dispute that ConocoPhillips and Houtan entered into the Franchise Agreement.  As the issue has

3   been summarily adjudicated in ConocoPhillips' favor, there can also be no dispute that

4   ConocoPhillips performed all of its obligations under the Franchise Agreement until its

5   termination on October 31, 2007.  Termination of the Franchise Agreement on October 31, 2007

6   based on the nonrenewal of the Ground Lease was specifically provided for in Addendum 1 to

7   the Franchise Agreement, which was initialed by Houtan's President.

8           The Franchise Agreement further provides that "[a]t the expiration, nonrenewal or

9   earlier termination of this Agreement, DEALER shall yield immediate and peaceable possession

10  of the Station to CONOCOPHILLIPS. . . ."  (Docket No. 5 at 25 (¶ 32).)  It is undisputed that

11  Houtan breached this provision of the Franchise Agreement by refusing to permit ConocoPhillips

12  to recover its equipment and improvements.  Houtan's wrongful retention of the property has

13  damaged ConocoPhillips in that it no longer enjoys the use of its property, it is unable to sell the

14  property to third parties, the property continually depreciates in value while it is out of

15  ConocoPhillips' possession and ConocoPhillips is potentially subject to expensive environmental

16  litigation and administrative action because it is unable to monitor the condition and performance

17  of the property, including the underground storage tanks.  Houtan's actions constitute multiple

18  breaches of the Franchise Agreement.

19          **2.    Conversion**

20          "Conversion is the wrongful exercise of dominion over the property of another.

21  The elements of a conversion claim are:  (1) the plaintiff's ownership or right to possession of

22  the property; (2) the defendant's conversion by a wrongful act or disposition of property rights;

23  and (3) damages.  Conversion is a strict liability tort.  The foundation of the action rests neither

24  in the knowledge nor the intent of the defendant.  Instead, the tort consists in the breach of an

25  absolute duty; the act of conversion itself is tortious.  Therefore, questions of the defendant's

26  good faith, lack of knowledge, and motive are ordinarily immaterial."  *Burlesci v. Petersen,* 68

27  Cal.App.4th 1062, 1066 (internal citations omitted) (1998).

28

1    The present case is a hornbook example of conversion. There is no dispute that

2  ConocoPhillips owns the pumps, storage tanks, buildings and other property at the service

3  station.  It is also undisputed that Houtan's wrongful retention of the property has damaged

4  ConocoPhillips, as discussed above.  Houtan attempted to get a preliminary injunction requiring

5  ConocoPhillips to leave the property in place.  Even though the Court denied the injunction

6  Houtan has refused to surrender the property to ConocoPhillips, or to enter into an interim

7  arrangement.  Houtan has simply flouted the Court's order and ConocoPhillips' property rights.

8  Such conduct is a conversion of ConocoPhillips' property.

9          **3.        Unjust enrichment**

10   An individual is required to make restitution where he is unjustly enriched at the

11  expense of another.  *Ghirardo v. Antoniolo,* 14 Cal.4th 39, 51 (1996).  "A person is enriched if

12  he receives a benefit at another's expense. [Citation.]  The term 'benefit' 'denotes any form of

13  advantage.' [Citation.]" *Id.*  Here, Houtan has been unjustly enriched by wrongfully retaining

14  and using ConocoPhillips' property, including pumps, underground storage tanks, etc., without

15  paying any compensation to ConocoPhillips.  Both of these activities caused damage to

16  ConocoPhillips as discussed above.

17      **B.    Remedies**

18          **1.    Breach of contract**.  California Civil Code section 3300 states: "[f]or the

19  breach of an obligation arising from contract, the measure of damages, except where otherwise

20  expressly provided by this code, is the amount which will compensate the party aggrieved for all

21  the detriment proximately caused thereby, or which, in the ordinary course of things, would be

22  likely to result therefrom."

23   Since October 31, 2007, Houtan has wrongfully retained possession of

24  ConocoPhillips' property.  ConocoPhillips is entitled to an injunction forcing Houtan to return

25  the property, and reasonable rent for the period of time Houtan retained the property without

26  paying rent.  ConocoPhillips will present evidence at trial that $4,000 per month is a reasonable

27  amount of rent.  ConocoPhillips will also seek interest on the amount of rent due under

28  California Civil Code section 3287.

1          Paragraph 48 of the Franchise Agreement, entitled "Attorney Fees," provides that

2  "[i]n the event an action is brought to enforce or interpret this Agreement, the prevailing party

3  shall be entitled to reimbursement of all costs including, but not limited to, reasonable attorney

4  fees and costs incurred." (Docket No. 5, Ex. A.) ConocoPhillips will seek its reasonable

5  attorney fees and costs incurred in the prosecution of its counterclaims and defense of Houtan's

6  PMPA claims pursuant to the Franchise Agreement.

7          **2.**    **Conversion.**  California Civil Code section 3336 states:

8      The detriment caused by the wrongful conversion of personal property is presumed to be:

9
10      First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and
11

12      Second—A fair compensation for the time and money properly expended in pursuit of the property.

13          Houtan converted ConocoPhillips' property on October 31, 2007. The value of

14  the property at the time of the conversion was approximately $340,000 based on ConocoPhillips'

15  independent appraisal. Houtan may either pay ConocoPhillips $340,000 plus interest and keep

16  the property, or return the property and pay ConocoPhillips reasonable rent from October 31,

17  2007 to the present to indemnify ConocoPhillips for the conversion. ConocoPhillips will also

18  seek interest on the amount of rent due pursuant to California Civil Code section 3288.

19          In light of the Court's rejection of Houtan's request for injunctive relief, Houtan's

20  conversion of ConocoPhillips' property was willful. ConocoPhillips is therefore entitled to

21  exemplary damages pursuant to California Civil Code section 3294.

22        **3.**    **Unjust enrichment.**  ConocoPhillips is entitled to restitution of the amount

23  Houtan has been unjustly enriched at its expense. *Ghirardo, supra,* 14 Cal.4th at p. 51. Houtan

24  has wrongfully retained and used ConocoPhillips' property since October 31, 2007.

25  ConocoPhillips is entitled to return of its property and reasonable rent, with interest, for the

26  period of time Houtan retained the property without paying rent. Moreover, ConocoPhillips is

27  ///

28  ///

1   entitled to disgorgement of all profits Houtan has received from its use of the equipment and

2   improvements.  *See County of San Bernardino v. Walsh*, 158 Cal.App.4th 533, 542-43 (2007).

3

4        Dated:  August  8 , 2008

5                                                          GLYNN & FINLEY, LLP
                                                           CLEMENT L. GLYNN
6                                                          ADAM FRIEDENBERG
                                                           One Walnut Creek Center
7                                                          100 Pringle Avenue, Suite 500
                                                           Walnut Creek, CA  94596
8

9                                                          By _____
                                                           Attorneys for Defendant and Counter-
10                                                         Plaintiff ConocoPhillips Company

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONOCOPHILLIPS COMPANY'S TRIAL BRIEF