1   Thomas P. Bleau, Esq., SBN 152945
    Gennady L. Lebedev, Esq., SBN 179945
2   BLEAU / FOX, A P.L.C.
    3575 Cahuenga Boulevard West, Suite 580
3   Los Angeles, California 90068
    Telephone    : (323) 874-8613
4   Facsimile    : (323) 874-1234
    e-mail:      bleaushark@aol.com
5   e-mail:      glebedev@bleaufox.com

6   Attorneys for Plaintiff,
    HOUTAN PETROLEUM, INC.

7

8              UNITED STATES DISTRICT COURT IN AND FOR

9                THE NORTHERN DISTRICT OF CALIFORNIA

10  HOUTAN PETROLEUM, INC.          )  CASE NO.  07-CV-5627 SC
                                    )
11              Plaintiff,          )
    vs.                             )  PLAINTIFF, HOUTAN PETROLEUM, INC.'S,
12                                  )  TRIAL BRIEF
                                    )
13  CONOCOPHILLIPS COMPANY, a Texas )  Trial Date:    August 18, 2008
    Corporation   and  DOES 1 through 10, )  Time:          10:00 a.m.
14  Inclusive                      )  Courtroom:     1
                                    )  Before:        Hon. Samuel Conti
15              Defendants.         )
                                    )
16  _____ )

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   **TABLE OF AUTHORITIES**................................................................................................ii

3   **1.    SUMMARY OF FACTS AND ARGUMENT**....................................................1

4   **2.    SUMMARIZED PROCEDURAL HISTORY**..................................................2

5   **3.    BURDEN OF PROOF**........................................................................................3

6   **4.    APPLICABLE LAW**...........................................................................................4

7   **5.    ELEMENTS OF PROOF**....................................................................................6

8   **6.    PLAINTIFF'S REMEDIES**...............................................................................6

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

*Federal Cases*

3

*Ajir v. Exxon Corp.* 855 F.Supp.294, 297 (N.D.Cal. 1994)................................................4

4

*Arnold v. Amoco Oil Co.* 872 F.Supp. 1493 (W.D. Va. 1995)..........................................6

5

*Ellis v. Mobil Oil* 969 F.2d 784, 788 (9th Cir. 1992)....................................................4, 6

6

*Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir. 1994).........................7

7

*Hazara Enterprises, Inc. v. Motiva Enterprises, LLC*, 126 F.Supp.2d 1365 (2000).....................4, 5

8

*Hilo v. Exxon Corp.*, 997 F.2d 641 (9th Cir. 1993)..........................................................7

9

*Jones v. Crew Distributing Co., Inc.*, 984 F.2d 405 (11th Cir. 1993)..............................7

10

*Ketterle v. B.P. Oil, Inc.*, 909 F.2d 425 (11th Cir. 1990)..............................................8

11

*Lippo v. Mobil Oil Corporation*, 776 F.2d 706 (7th Cir. 1985).....................................8

12

*May-Som Golf Inc. v. Chevron USA*, 869 F.2d 917 (6th Cir. 1989)...............................4

13

*Pruitt v. New Eng. Petroleum L.P.*, 2006 U.S. Dist. LEXIS 85961 (D. Conn. 2006)..........................3

14

*Roberts v. Amoco Oil Co.*, 740 F.2d 602 (8th Cir. 1984)................................................6

15

*Secker v. Star Enterprise*, 124 F.3d 1399 (11th Cir. 1997)............................................4

16

*Slatky v. Amoco Oil Co.* 830 F.2d 476 (3rd Cir. 1987)..................................................4

17

18

*Federal Statutes*

19

15 U.S.C. §2801.................................................................................................................1

20

15 U.S.C. §2802(c)...................................................................................................4, 5, 6, 7

21

15 U.S.C. §2804................................................................................................................4

22

15 U.S.C. §2805.........................................................................................................3, 6, 7

23

24

25

26

27

28

**1.     SUMMARY OF FACTS AND ARGUMENT**

In light of the Court's findings contained in its Order Granting In Part and Denying In Part Defendant's Motion For Summary Judgment, filed on July 21, 2008, Docket No. 103, plaintiff Houtan Petroleum, Inc. ("Houtan") amends its previous trial brief (Docket No. 76) with discussion regarding remaining issues as follows:

On September 18, 2007, ConocoPhillips sent Houtan Petroleum a "NOTICE OF TERMINATION" allegedly "pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA")."

On October 18, 2007, Houtan Petroleum notified ConocoPhillips in writing that it will be acquiring possession of the premises from the landlord and demanded that ConocoPhillips forward a bona fide offer to sell its equipment and improvements.

On October 22, 2007, in response to Houtan Petroleum's request for a bona fide offer, ConocoPhillips sent Plaintiff an "OFFER TO SELL IMPROVEMENTS" along with a Bill of Sale for $340,000.00, also allegedly "[i]n accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq."

The same equipment and improvements that ConocoPhillips offered to sell for $340,000.00 was appraised by an MAI appraiser, Andrew C. Plaine, retained on Plaintiff's behalf for a total amount of $145,000.00, as of the time of ConocoPhillips' offer. Consequently, the evidence will show that ConocoPhillips' offered price exceeded the fair market value of the property by seventy-four percent (74%).[1]

Effective November 1, 2007, Plaintiff began leasing the premises directly from the landlord.

Pursuant to the Court's Order (Docket No. 103), ConocoPhillips must prove that it's offer was "bona fide," in that it approached fair market value at the time it was made. If the trier of fact determines that ConocoPhillips' offer did not approach fair market value, then the Court must find that ConocoPhillips failed to comply with the PMPA in its termination of Plaintiff's franchise.

Although ConocoPhillips has filed three Counterclaims against Houtan Petroleum, each

---

[1]     Calculated by subtracting appraised value of $145,000.00 from ConocoPhillips' offer of $340,000.00 and dividing $145,000.00 by the difference of $195,000.

1    counterclaim is based on California state law, rather than the PMPA. Although the Court refrained

2    from making a conclusive finding on the issue, it indicated that if ConocoPhillips is successful in

3    proving that it's offer was "bona fide," it may be entitled to recover "damages resulting from Houtan's

4    continued use of Conoco's equipment and improvements." (Order, Docket No. 103, p. 20 of 20, ln.6-

5    9).

6          Regardless, it cannot be reasonably disputed that if ConocoPhillips fails to prove that its offer

7    was "bona fide" then it ma y not recover any damages because of it's failure to comply with one of

8    its material obligations under the PMPA. Moreover, nothing in the franchise and lease agreement

9    between Plaintiff and ConocoPhillips entitles it to collect any rental value for its equipment after

10    termination, nor does any agreement between the parties specify what such rental value should be.

11    Additionally, nothing in the PMPA entitles ConocoPhillips to collect any rental value for its property

12    after termination of the franchise relationship and ConocoPhillips has not cited any law to the contrary.

13    Under the PMPA, ConocoPhillips is required to make a bona fide offer as a condition precedent to its

14    rights vis a vis the property. If ConocoPhillips is found to have satisfied such requirement, Plaintiff

15    will have the opportunity to purchase the equipment and improvements at the offered price of

16    $340,000. If, however, Plaintiff prevails on the merits, ConocoPhillips will be found to have failed

17    to comply with the PMPA and would therefore not be entitled to collect any rental value for its

18    equipment and improvements, which it was required to offer for a price that approaches fair market

19    value. Instead, ConocoPhillips will be required to make another offer to Plaintiff for a price that does

20    approach fair market value. Only if Plaintiff eventually rejects a bona fide offer from ConocoPhillips

21    to sell the items for a price that approaches fair market value will ConocoPhillips have the right to

22    remove its items.

23    **2.**      **SUMMARIZED PROCEDURAL HISTORY**

24          On November 5, 2007, Plaintiff filed the instant action along with an application for a

25    Temporary Restraining Order and Preliminary Injunction. Although the Temporary Restraining Order

26    was initially granted, Plaintiff's application for a Preliminary Injunction was denied pursuant to the

27    Court's Order dated November 16, 2007.

28          On December 21, 2007, ConocoPhillips filed its Motion to Dismiss Houtan Petroleum's

1  Complaint under Rule 12(b)(6).  On the same day, ConocoPhillips filed an Application for Writ of

2  Possession and Preliminary Injunction to recover its equipment and improvements prior to trial of the

3  matter.

4  On January 11, 2008, the Court summarily denied both ConocoPhillips' Motion to Dismiss

5  and Application for Writ of Possession and Preliminary Injunction.  On the same day, the Court

6  advanced the jury trial date previously set for June 13, 2008 to February 11, 2008.

7  On January 18, 2008, ConocoPhillips filed its Answer to Houtan Petroleum's Complaint, along

8  with three Counterclaims against Houtan Petroleum for (1) Breach of Contract, (2) Conversion and

9  (3) Unjust Enrichment.

10  On January 23, 2008, ConocoPhillips filed a Motion to Strike Plaintiff's Jury Demand, which

11  is currently pending and set for hearing before this Court on February 6, 2008.

12  On January 24, 2008, Houtan Petroleum filed its Motion to Dismiss ConocoPhillips'

13  Counterclaims, which is currently pending and set for hearing before this Court on February 6, 2008.

14  On January 29, 2008, Houtan Petroleum filed a Motion in Limine to Preclude ConocoPhillips

15  from introducing evidence of settlement discussions at trial, set for hearing on February 6, 2008.

16  On January 29, 2008, ConocoPhillips filed six Motions in Limine against Houtan Petroleum,

17  all of which are set for hearing on February 6, 2008.

18  On January 31, 2008, Houtan Petroleum filed a Motion to Strike ConocoPhillips fact and

19  expert witness designations for failure to comply with Rule 26.

20  **3.     BURDEN OF PROOF**

21  Under the PMPA, the only items which Houtan Petroleum is required to establish is that there

22  has been a nonrenewal of its franchise and its damages caused by ConocoPhillips' failure to comply

23  with the PMPA.  Given that there is no dispute that ConocoPhillips terminated the franchise, effective

24  October 31, 2008, the burden shifts to ConocoPhillips to prove that it has complied with all of the

25  PMPA requirements for termination of the franchise relationship.  15 U.S.C. § 2805(c).

26  Additionally, it is the franchisor who bears the burden of proving that its notice of termination

27  complies with the PMPA.  *Pruitt v. New Eng. Petroleum L.P.*, *supra*, (citing 15 U.S.C. § 2805(c)).

28  ///

1    **4.    APPLICABLE LAW**

2        The overriding purpose of the PMPA "is to protect the franchisee's reasonable expectation of

3    continuing the franchise relationship. [citations omitted].   Therefore, the Act is to be liberally

4    construed consistent with the goal of protecting franchisees." *Ajir v. Exxon Corp.* (N.D.Cal. 1994) 855

5    F.Supp.294, 297, See, also, *Ellis v. Mobil Oil* (9th Cir. 1992) 969 F.2d 784, 788.   Further, the PMPA

6    must be liberally construed to effect its overriding remedial purpose of protecting the franchisee from

7    arbitrary or discriminatory acts of the franchisor.  *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC*

8    126 F.Supp.2d 1365, 1372 (2000) (citing, *Secker v. Star Enterprise*, 124 F.3d 1399 (11th Cir. 1997);

9    *May-Som Golf Inc. v. Chevron USA,* 869 F.2d 917 (6th Cir. 1989)).

10       The express language of the PMPA §2802(c)(4)(C) provides that in a situation where the

11   franchisor loses the underlying lease, a termination of a franchise relationship is not effective until,

12           in a situation in which the franchisee acquires possession of the leased marketing premises
            effective immediately **after the loss of the right of the franchisor to grant possession**
13           (through an assignment [of an option to extend the underlying lease] pursuant to subparagraph
            (B) or by obtaining a new lease or purchasing the marketing premises from the landowner),
14           the franchisor (if requested in writing by the franchisee not later than 30 days after notification
            was given pursuant to section 2804 of this title), during the 90 - day period after notification
15           was given pursuant to section 2804 of this title –      (i)       made a bona fide offer to sell,
            transfer, or assign to the franchisee the interest of the franchisor in any improvements or
16           equipment located on the premises..."  15 U.S.C. §2802(c)(4)(C).

17       Case law supports Plaintiff's position that Plaintiff need not request the sale of improvements

18   and equipment until 30 days after he "acquires possession of the leased marketing premises effective

19   immediately **after** the loss of the right of the franchisor to grant possession."

20       In *Hazara Enterprises, Inc. v. Motiva Enterprises, LLC* 126 F.Supp.2d 1365 (2000), Motiva

21   voluntarily terminated the underlying ground lease with the landlord, Kathleen Erskine Leutze,

22   effective November 30, 1999 pursuant to a lease term authorizing cancellation upon 180 days notice.

23   On April 8, 1999, Motiva advised its lessee dealer, Hazara Enterprises, Inc., that it did not intend to

24   renew its franchise agreement effective November 30, 1999.  Hazara thereafter attempted to negotiate

25   a new lease directly from the landowner, but was unable to accomplish this until November 20, 1999,

26   when it executed a new lease with the landlord.  Shortly after Hazara Enterprises, Inc. regained its

27   right of possession of the marketing premises on December 13, 1999, Hazara asked Motiva to sell the

28   underground fuel lines and storage tanks to it.  After an evidentiary hearing, the Magistrate Judge

-4-

1  found the underground storage tank system at Hazara's station to be "potentially dangerous" and

2  recommended to grant the injunctive relief. *Id*. at 1367-1369.

3          The Court held, however, that there was "at least an issue of fact as to the timeliness of

4  Hazara's request to purchase the equipment because, as Hazara points out, it did not obtain a new lease

5  on the marketing premises at the same time it was notified of the termination of the franchise

6  relationship (April of 1999), raising a query as to whether it acquired possession of the premises

7  "effective immediately after the loss of the right of the franchisor to grant possession" within the

8  meaning of section 2802(c)(4)(C) on November 29, 1999, triggering the 30 day notification request

9  provision of the statute at that time." *Id*. at 1373.  The Court went on to say, however, that this issue

10 of timeliness was a moot point at this juncture in light of the prior finding regarding the potential

11 dangerousness of the equipment. *Id*. Nevertheless, the *Hazara Enterprises, Inc.* Court recognized that

12 the time to request the sale of improvements and equipment under section 2802(c)(4)(C) did not expire

13 until after Plaintiff obtain the possession of the property, immediately upon the franchisor's loss of

14 the right to grant possession.

15          Such an interpretation is certainly consistent with the overriding purpose of the PMPA.  In a

16 situation such as the one at bar, the PMPA sets forth a requirement that the franchisee make a request

17 to purchase the equipment and improvements within a specified time frame after it gains possession

18 of the property, "effective immediately" after the franchisor's loss of the right to grant same.

19          The situation that exists in the present case is even stronger in Plaintiff's favor than the one

20 that existed in the *Hazara Enterprises, Inc.* case.  In the present case, there is no question that Plaintiff

21 obtained possession of the premises immediately upon ConocoPhillips' loss of its right to grant

22 possession to Plaintiff.  Its only purpose in remaining on the premises is to continue operating a motor

23 fuel service station.

24          Moreover, in situations where a third party lease is not due to expire at some point in the

25 future, it would not make any sense to require a franchisee to request an offer for the sale of

26 improvements and equipment from the franchisor, within 30 days after having just entered into a

27 franchise agreement.  To so hold, would also mean that the franchisor would be required to make such

28 offer "during the 90-day period after notification was given" and to hold such offer open "for at least

1    45 days" even though the effective date of termination may not come for months or years to come,

2    depending on the expiration of the underlying lease.  See, 15 U.S.C. §2802(c)(4)(C) and

3    §2802(c)(4)(C)(ii).  So, hypothetically, to accept ConocoPhillips' argument would mean that in a

4    situation where the underlying lease is not due to expire for a year, the franchisee would have to

5    request an offer within 30 days after having just entered into the franchise and the franchisor would

6    have to make an offer within 90 days after that, before anyone could possibly know whether the

7    underlying lease would be renewed and before the franchisee could possibly have obtained the right

8    to possession of the premises following the expiration of the franchise.  Such a scenario simply would

9    not make any sense.  Rather, as explained above, the more logical and viable interpretation of the

10   PMPA is that the 30 day demand for an offer need not be made until after the franchisee, acquires its

11   right to possession from the third party landlord.

12       Thus, Plaintiff is entitled to a bona fide offer pursuant to the PMPA.

13   **5.    ELEMENTS OF PROOF**

14       Under the Court's recent Order (Docket No. 103), ConocoPhillips must prove that its offer for

15   the sale of its equipment and improvements to Houtan Petroleum was *bona fide* in that it was made

16   in a timely manner and approached fair market value.  15 U.S.C. § 2802(a)(1), (b)(1)(A), (b)(1)(B),

17   (c)(4)(C), Roberts v. Amoco Oil Co. 740 F.2d 602, 606 (8th Cir. 1984). *Ellis v. Mobil Oil* , 969 F.2d

18   784, 787 (9th Cir. 1992) (quoting *Slatky v. Amoco Oil Co.* (3rd Cir. 1987) 830 F.2d 476, 485); *Arnold*

19   *v. Amoco Oil Co.* (W.D. Va. 1995) 872 F.Supp. 1493, 1500.

20   **6.    PLAINTIFF'S REMEDIES**

21       Title 15, United States Code Section 2805(a) of the PMPA provides:

22           If a franchisor fails to comply with the requirement of section 2802 or 2803 of this title,
             the franchisee may maintain a civil action against such franchisor.
23

     Title 15, United States Code Section 2805(b) states in pertinent part:
24
             (1) In any action under subsection (a) of this section, the court shall grant such
25           equitable relief as the court determines is necessary to remedy the effects of any failure
             to comply with the requirements of section 2802 or 2803 of this title, including
26           mandatory or prohibitive injunctive relief, and interim equitable relief.

27       The Court should grant a mandatory permanent injunction either preventing ConocoPhillips

28   from interfering with Houtan Petroleum's use of its improvements and equipment until it comes forth

-6-

1    with a *bona fide* offer that approaches fair market value or ordering ConocoPhillips to present Houtan

2    Petroleum with such a bona fide offer for the sale of the subject property, improvements and

3    equipment at a price that approaches fair market value, as demonstrated by the appraised fair market

4    value price of $145,000.

5        The PMPA provides that "the court *shall* grant such equitable relief as the court determines

6    is *necessary* to remedy the effects of any failure to comply with the requirements of §2802 ... including

7    ... *mandatory or prohibitive injunctive relief*, and interim equitable relief."  15 U.S.C. §2805(b)(1)

8    (emphasis added).   The term "shall" indicates that injunctive relief is mandatory if the court

9    determines it is necessary to remedy the effects of a PMPA violation.  *See*, *Hilo v. Exxon Corp.*, 997

10   F.2d 641, 643 (9th Cir. 1993) ("Section 2805(b)(2) of the PMPA makes the grant of preliminary

11   injunction **mandatory** if (A) the franchisee shows that the termination or nonrenewal of its franchise

12   raises questions that are 'sufficiently serious' to provide 'a fair ground for litigation,' and (B) the court

13   determines that the 'balance of hardships' tips in favor of the franchisee." (Emphasis added)).

14       Additionally, if Plaintiff prevails in this action, it would be entitled to recover reasonable

15   attorney fees.

16       Section 2805(d) of the PMPA provides:

17           (1)    If the franchisee prevails in any action under subsection (a) of this section, such
             franchisee shall be entitled–

18
19           (C)    to reasonable attorney and expert witness fees to be paid by the franchisor,
             unless the court determines only nominal damages are to be awarded to such
             franchisee, in which case the court, in its discretion, need not direct that such fees be
20           paid by the franchisor.

21   The general rule stated in Section 2805(d)(1)(C) is that a prevailing franchisee **shall** be entitled

22   to reasonable attorney and expert witness fees, and the circumstance in which the award of fees is in

23   the court's discretion is an exception to this general rule, which must be construed narrowly.  *Jones*

     *v. Crew Distributing Co., Inc.*, 984 F.2d 405, 408 (11th Cir. 1993).  As the Ninth Circuit has stated,
24
     "The purpose of attorney's fees is to deter franchisors from improperly contesting meritorious claims."
25
     *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994).  Consistent with the
26
     PMPA's purpose as remedial legislation that must "be given a liberal construction consistent with its
27
     overriding purpose to protect franchisees," various courts have awarded attorney's fees to the
28

1    prevailing franchisee who stands in the same position as Plaintiff in this action.  *Lippo v. Mobil Oil*

2    *Corporation*, 776 F.2d 706, 720 (7th Cir. 1985); *Ketterle v. B.P. Oil, Inc.*, 909 F.2d 425, 428 (11th Cir.

3    1990).

4                                                    Respectfully submitted,

5    Dated: August 8, 2008                  BLEAU / FOX, A P.L.C.

6                                                        //s//
                                           By: _____
7                                                    Thomas P. Bleau, Esq.
                                                    Gennady L. Lebedev, Esq.
8                                                    Attorneys for Plaintiff
                                                    Houtan Petroleum, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28